UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document No.: | 48 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Jeremy Pinson currently is an inmate at ADX Florence, a federal prison located in Colorado. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, the DOJ has asked him to clarify his records requests, told him that it could not find records that are responsive to his request, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that the DOJ improperly withheld numerous records from him in violation of FOIA, as well as that the DOJ and two government officials violated the Privacy Act, 5 U.S.C. § 552a, and certain unspecified provisions in the U.S. Constitution.

In response, the DOJ filed nine pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint. Now before the Court is the DOJ's motion to dismiss or, in the alternative, for summary judgment as to Mr.

Pinson's FOIA claims regarding the DOJ's Criminal Division. Specifically, Mr. Pinson alleges that the Criminal Division wrongly withheld records in response to FOIA requests that he submitted in 2011 (Request No. 11-351-P) and 2012 (Request No. 12-844-P). The DOJ argues that Mr. Pinson's claims must be dismissed for failure to exhaust administrative remedies. In addition, the DOJ argues that it is entitled to summary judgment on the FOIA causes of action because the Criminal Division conducted an adequate search in response to Request No. 11-351-P and correctly refused to respond to Request No. 12-844-P because the request sought records that were exempt under FOIA.

For the reasons explained below, the Court will grant in part and deny in part the DOJ's motion as to Request No. 11-351-P. The Court, however, will grant in full the DOJ's motion for summary judgment as to Request No. 12-844-P on the basis that Mr. Pinson failed to exhaust his administrative remedies.

## II. FACTUAL BACKGROUND

On April 20, 2011, Mr. Pinson sent a FOIA request (Request No. 11-351-P) to the Criminal Division seeking (1) "[a]ll [documents] which mention, reference myself by name, or an identifier assigned to my name," (2) an "[o]rginizational [sic] chart," (3) the Criminal Division's "[m]ission statement," and (4) the Criminal Division's "2011 Budget." (Pinson Letter Ex. 1., Apr. 20, 2011, ECF No. 48.) On May 25, 2011, the Criminal Division responded with a letter asking Mr. Pinson about where he wanted the Criminal Division to search for records referencing his name and giving Mr. Pinson a copy of the "mission statement and organizational chart for the criminal Division." (DOJ Letter Ex. 2, May 25, 2011, ECF No. 48.) On June 1, 2011, Mr. Pinson responded with a letter providing the information requested by the Criminal Division. (*See* Pinson Letter Ex. 3, June 1, 2011, ECF No. 48.)

Upon receipt of Mr. Pinson's letter, the Criminal Division sent Mr. Pinson a new acknowledgment letter (DOJ Letter Ex. 4, June 13, 2011, ECF No. 48) and searched the places Mr. Pinson requested but did not find any documents referencing his name (*see* Cunningham Decl. ¶¶ 21–31, ECF No. 48). Consequently, on July 18, 2011, the Criminal Division informed Mr. Pinson that it was unable to locate records responsive to the request. (*See* DOJ Letter Ex. 5, July 18, 2011, ECF No. 48.) Mr. Pinson, however, alleges that he never received the DOJ's July 18 response. (*See* Pinson Decl. Ex. 1, at ¶ 6, ECF No. 59.) He therefore argues that he could not appeal the DOJ's response to his FOIA request for this reason.

On August 1, 2012, Mr. Pinson submitted a second FOIA request (Request No. 12-844-P) to the Criminal Division, this time requesting "production of all information maintained on Jamil Abdullah Al-Amin." (Pinson Letter Ex. 6, Aug. 1, 2012, ECF No. 48.) The Criminal Division responded with a letter refusing to "confirm or deny the existence of any records responsive to [this] request," and explaining that the release of such records "could reasonably be expected to constitute an unwarranted invasion of [Mr. Al-Amin's] personal privacy" under FOIA Exemptions 6 and 7(C). (DOJ Letter Ex. 7, Oct. 19, 2012, ECF No. 48.) According to Mr. Pinson, he drafted a letter appealing this determination and gave that letter to his prison counselor to mail to the DOJ. (*See* Pinson Decl. ¶ 9.) The Criminal Division, however, has no record of receiving the letter. (*See* Cunningham Decl. ¶ 44.) Mr. Pinson, moreover, has not provided the Court with a copy of the letter or any evidence indicating that the letter was received by the DOJ.[1]

---

[1] In response to the DOJ's motion for summary judgment, Mr. Pinson states that one of the material facts in dispute is "[w]hether [he ever received] defendant's final response to Criminal Division Requests CRM-200700476P." This FOIA request, however, is not listed in the most recent version of his complaint, and it therefore has been removed as an issue in this case. *See Owens v. Republic of Sudan*, 412 F. Supp. 2d 99, 117 (D.D.C. 2006), *aff'd and remanded on*

## III. LEGAL STANDARD

### A. Analyzing the DOJ's Motion Under Rule 12(b)(6) or Rule 56

The DOJ moves for dismissal of Mr. Pinson's FOIA causes of action under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56. In general, exhaustion arguments in FOIA cases are analyzed under Rule 12(b)(6). *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating the district court's summary judgment order and remanding the case with instructions to dismiss the complaint under Rule 12(b)(6) on exhaustion grounds); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012) ("Although FOIA cases 'typically and appropriately are decided on motions for summary judgment,' where an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim." (citations omitted)). If, however, the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003); *see also Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 956 F. Supp. 2d 32, 36–43 (D.D.C. 2013) (granting summary judgment for the government "on the grounds [that] the Plaintiff failed to exhaust his administrative remedies before seeking judicial review"). Here, both the DOJ and Mr. Pinson refer to materials that are not part of the pleadings. Specifically, the DOJ's motion references a declaration written by a Criminal Division employee, who attests that certain searches were conducted by various sections of the Criminal Division in response to Mr. Pinson's FOIA requests. (*See generally* Cunningham Decl.) The DOJ's motion also references several letters

---

*other grounds*, 531 F.3d 884 (D.C. Cir. 2008) (noting that the most recent version of a complaint becomes the operative document upon filing).

that were exchanged between Mr. Pinson and the Criminal Division staff. (*See* Pinson Letter Ex. 1; DOJ Letter Ex. 2; Pinson Letter Ex. 3; DOJ Letter Ex. 4; DOJ Letter Ex. 5; Pinson Letter Ex. 6; DOJ Letter Ex. 6.) And for his part, Mr. Pinson offers a declaration attesting that he never received the DOJ's response to his first FOIA request, and that he drafted a letter appealing the DOJ's response to his second FOIA request, which he gave to a prison counselor to mail. (*See* Pinson Decl. ¶¶ 6–10.) Under these circumstances, the Court will evaluate the DOJ's entire motion under the summary judgment standard.[2]

### B. Summary Judgment Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[2] It is possible that construing the DOJ's motion under Rule 12(b)(6) would make no difference in the end. *Cf. Mendoza v. Perez*, No. 13-5118, 2014 WL 2619844, at *8 n.9 (D.C. Cir. June 13, 2014) ("The standard for resolution of these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment."); *Acosta v. FBI*, 946 F. Supp. 2d 47, 49–50 (D.D.C. 2013) ("In any event, were this Motion considered under the summary judgment standard, the result would be identical."); *Schoenman v. FBI*, No. 04-2202, 2006 WL 1582253, at *8 n.1 (D.D.C. June 5, 2006) ("[T]he Court will treat Defendants' motion as either a Rule 12(b)(6) motion for failure to state a claim or as a motion for summary judgment under Rule 56—either treatment will generate the same legal conclusions."). That being said, analyzing the motion under Rule 12(b)(6) would preclude the Court from considering materials outside the pleadings, *see Acosta*, 946 F. Supp. 2d at 50, which would not be appropriate in a situation like this when both parties reference such materials.

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must avoid "making credibility determinations," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and analyze all underlying facts and inferences in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citation omitted). "In addition, the non-moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the non-moving party must rely on evidence that would arguably be admissible at trial." *Manuel v. Potter*, 685 F. Supp. 2d 46, 58 (D.D.C. 2010) (internal citations and quotation marks omitted).

## IV. ANALYSIS

### A. Request No. 11-351-P

The DOJ argues that it is entitled to summary judgment as to Request No. 11-351-P because there is no genuine dispute of material fact that Mr. Pinson failed to exhaust his administrative remedies for this request, and alternatively, because the agency conducted an adequate search in response to the request. The Court addresses both arguments below.

### 1. Exhaustion of Administrative Remedies

In general, a FOIA requester must exhaust his administrative remedies before filing suit in federal court. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). This means the requester must appeal any adverse determination of his FOIA request to the head of the agency before suing that agency in federal court. *See Hidalgo v. FBI*, 344 F.3d 1256, 1259–60 (D.C. Cir. 2003). If the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency. *See Wilbur*, 355 F.3d at 676–77.

Here, it is undisputed that Mr. Pinson did not appeal the Criminal Division's response to his first FOIA request. In most cases, such an error is grounds for the Court to dismiss the FOIA cause of action. But FOIA's exhaustion requirement is a prudential consideration, rather than a jurisdictional prerequisite. *Wilbur*, 355 F.3d at 677. A court therefore may waive the exhaustion requirement under certain circumstances, *see id.*, such as if an agency failed to respond to the FOIA request within a certain number of days. *See Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i)).

Further, if there is a genuine dispute of material fact on the exhaustion issue, a court may refuse to grant summary judgment for the agency. *See Jones v. DOJ*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008). A court, for example, may deny summary judgment to the agency if a plaintiff attests that he never received the letter that the agency allegedly mailed in response to a FOIA request. *See id.* ("Jones' verified complaint and his subsequent declaration, however, each state that Jones did not receive a response to his FOIA request. The existence of a letter ... does not establish that the letter was actually … received by the intended recipient. Without proof that Jones received the letter, and in the face of Jones' statement under penalty of perjury to the contrary, … it cannot be said that the evidence 'is so one-sided that one party must prevail as a matter of law.' This dispute of material fact is genuine.").

Indeed, that is what appears to have happened in this case. The Criminal Division provides a copy of a second acknowledgment letter verifying receipt of Mr. Pinson's FOIA request and assigning the "11-531-P" file number to the request. (DOJ Letter Ex. 4.) Additionally, the DOJ provides a copy of the letter it allegedly mailed to Mr. Pinson on July 18 as a final response to his FOIA request. (DOJ Letter Ex. 5.) The mere existence of this final response letter, however, does not conclusively "establish that the letter was actually … received by" Mr. Pinson, which leaves open a genuine dispute of material fact. *See Jones,* 576 F. Supp. 2d at 67. In fact, Mr. Pinson attests that he never received this final response letter, although his exact position is somewhat unclear.

Mr. Pinson generically states in his complaint that he received a "response" from the DOJ regarding Request No. 11-351-P on September 16, 2011.[3] (Corr. 2d Am. Compl. 9, ECF 32.) The Court notes, however, that the September 16 "response" receipt date that Mr. Pinson alleges is closer in time to the July mailing date of the DOJ's final response letter than the mailing date of the June acknowledgment letter. It seems unlikely, then, that Mr. Pinson would have received the acknowledgment letter in September but not the final response letter, which was mailed later.[4] Additionally, given the sheer volume of FOIA requests that Mr. Pinson has filed with various government agencies, it may be possible that Mr. Pinson is confused as to if or when he received a final response to this particular request as opposed to his many other similar requests.

---

[3] The Court notes that Mr. Pinson's complaint is "verified" and thereby must be treated as the equivalent of an affidavit since Mr. Pinson affixed his signature to the document under penalty of perjury pursuant to 28 U.S.C. § 1746. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992). This does not cure the ambiguity regarding what "response" letter Mr. Pinson received from the Criminal Division on September 16, 2011.

[4] Mr. Pinson also received the DOJ's initial acknowledgment letter mailed May 25, 2011, which sought clarification on where to search for the requested records. Mr. Pinson responded to this initial DOJ acknowledgment letter on June 1, 2011, and provided the DOJ with the requested clarification.

Nevertheless, Mr. Pinson states in his declaration that he only received the DOJ's acknowledgment letter and never received the final response letter (Pinson Decl. 1, at ¶ 7), creating a genuine dispute of material fact with the DOJ's position. Ultimately, because at summary judgment the Court must view facts in the light most favorable to the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c), and cannot make credibility determinations, *see Fed. Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 66 (D.D.C. 2008) ("[o]n a motion for summary judgment, the Court must 'eschew making credibility determinations or weighing the evidence.'") (quoting *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007)), the Court must accept as true Mr. Pinson's declaration that he never received the DOJ's final response letter. And if it turns out that Mr. Pinson never received the July 18 letter, he cannot "be deemed to have exhausted his administrative remedies" because he was denied the opportunity to file a timely appeal. *Citizens for Responsibility & Ethics*, 711 F.3d at 184 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). Given the factual disputes on this issue, the Court cannot grant summary judgment for the DOJ as to Request No. 11-351-P on the basis of failure to exhaust.

## 2. Adequacy of the DOJ's Search

The Court, however, will grant partial summary judgment for the DOJ as to Request No. 11-351-P on the basis that the agency conducted an adequate search in response to part of the request, but not all of it. Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013). This means that the agency must use some measure of "common sense" in interpreting a FOIA request, *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002), and ambiguities in the request must be interpreted "liberally," *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003). Indeed, the agency does not have to search "every record system" for the requested documents,

but it "must conduct a good faith … search of those systems of records likely to possess the requested records." *Marino v. DOJ*, No. 12-865, 2013 WL 5979753, at *6 (D.D.C. Nov. 12, 2013) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d 1172 (D.C. Cir. 1996)).

When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "relatively detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980). Affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized" are insufficient to support a motion for summary judgment. *Id.* at 371. On the other hand, once the agency has provided a "reasonably detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). Ultimately, "[i]f a review of the record raises substantial doubt as to the reasonableness of a search, especially in light of 'well-defined requests and positive indications of overlooked materials,' then summary judgment may be inappropriate." *Marino*, 2013 WL 5979753, at *6 (quoting *Founding Church of Scientology of Wash., D.C. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

a. Adequacy of the DOJ's Response to the First Portion of Request No. 11-351-P

Here, the DOJ has provided a declaration that is significantly more comprehensive than the affidavit that was rejected in *Weisberg*. Indeed, unlike in *Weisberg*, the DOJ's declaration in

this case details which records the agency maintains, how the agency indexes the records, how the agency responds to FOIA requests, what search terms were used to locate documents that might be responsive to the request, and what documents the agency provided to Mr. Pinson in response to the request. (*See generally* Cunningham Decl.)

More specifically, the declaration states that the Criminal Division sent Mr. Pinson a copy of the agency's mission statement and organizational chart in response to the request. (*See id.* ¶ 17.) In addition, the declaration provides that the Criminal Division searched its Computer Crime and Intellectual Property Section ("CCIPS"), Fraud Section, Gang Unit, Policy and Statutory Enforcement Unit of the Office of Enforcement Operations, and Organized Crime and Racketeering Section for records that might reference Mr. Pinson's name. (*See id.* ¶¶ 18, 21–31.) The agency performed these searches by using targeted keywords in the databases. (*See id.*) After running the searches, the agency did not uncover any documents referencing Mr. Pinson's name. (*Id.* ¶ 34.)

Mr. Pinson, on the other hand, has produced no "countervailing evidence" to create a genuine dispute as to the inadequacy of the agency's searches. *Morley*, 508 F.3d at 1116. Accordingly, the Court grants summary judgment for the DOJ as to this aspect of Request No. 11-351-P because it is undisputed that the agency's response was adequate under FOIA.

b. Adequacy of the DOJ's Response to the Second Portion of Request No. 11-351-P

A genuine dispute of material fact exists, however, as to whether the DOJ conducted an adequate search in response to the remaining aspect of Request No. 11-351-P, namely Mr. Pinson's request for a copy of the Criminal Division's 2011 budget. Indeed, the Criminal Division never responded to this portion of the request, and the agency appears not to have run a search for any responsive records. According to the DOJ, the lack of any search was because Mr.

11

Pinson's June 1 letter "made no mention as to which 2011 Budget the initial request referenced." (Cunningham Decl. ¶ 19.) But the Criminal Division, through its May 25 letter, never asked Mr. Pinson to specify which 2011 Budget he wanted. (*See* DOJ Letter Ex. 2.) Mr. Pinson therefore could not have known that the agency wanted him to clarify which 2011 Budget he sought.

The DOJ might argue that this portion of Mr. Pinson's FOIA request was ambiguous, or that it failed to "reasonably describe" the records sought. Ambiguous FOIA requests, however, must be interpreted "liberally." *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003). And even if Mr. Pinson's request failed to "reasonably describe" the records sought, the DOJ should have informed him "what additional information [wa]s needed or why [his] request [wa]s otherwise insufficient." 28 C.F.R. § 16.3(b). The DOJ did not do that here.

In short, Mr. Pinson's request for a copy of the Criminal Division's 2011 budget was, at worst, "ambiguous," and the summary judgment record raises, at the very least, "substantial doubt" as to the adequacy of the agency's search in light of evidence that the Criminal Division neglected to conduct any search in response to this portion of the request. *See Marino*, 2013 WL 5979753, at *6 (quoting *Founding Church of Scientology of Wash., D.C. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)). Because there is a genuine dispute of material fact about whether the DOJ's response was adequate, the Court must deny the DOJ's motion for summary judgment as to Mr. Pinson's request for a copy of the Criminal Division's 2011 budget.

**B. Request No. 12-844-P**

The DOJ argues that there is no genuine dispute under Request No. 12-844-P as to whether Mr. Pinson failed to exhaust administrative his remedies before bringing this lawsuit.[5] Again, a FOIA requester must "exhaust [his] administrative appeal remedies before seeking judicial redress." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013). "A FOIA requestor bears the burden of producing evidence of a proper appeal." *Lakin v. DOJ*, 917 F. Supp. 2d 142, 144–45 (D.D.C. 2013) (citing *Schoenman v. FBI*, No. 04-2202, 2006 WL 1582253, at *11 (D.D.C. June 5, 2006)). Specifically, the FOIA requester must demonstrate that his appeal was "*received* by the Office of Information and Privacy within 60 days of the date of the letter denying [his FOIA] request." 28 C.F.R. § 16.9(a) (emphasis added). The FOIA requester, on the other hand, may not merely allege that he handed his appeal to a third-party for mailing within the statutory timeframe. *See Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) (stating "[t]he mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency. Even if plaintiff had placed his FOIA requests … in the prison mailbox, nothing in the record establishes that [the] agencies actually received his requests.").

If the requester fails to show that there is a genuine dispute of material fact as to the agency's receipt of his appeal, a court may grant summary judgment for the agency "due to [the] plaintiff's failure to exhaust his administrative remedies." *Arnold v. U.S. Secret Serv.*, No. 05-0450, 2006 WL 2844238, at *2 (D.D.C. Sept. 29, 2006). Thus, courts grant summary judgment to the agency when a plaintiff alleges that he mailed an appeal, yet the agency has no record of

---

[5] Because the Court concludes that Mr. Pinson failed to exhaust his administrative remedies with regard to Request No. 12-844-P, it need not address the DOJ's alternative argument about whether the agency properly issued a *Glomar* response in reply to the FOIA request.

receiving the appeal letter. *See id.* This is especially true when a plaintiff fails to provide "a copy of a stamped envelope showing the mailing of the appeals, or a returned receipt certifying the actual receipt of the request by the agency." *Schoenman*, 2006 WL 1582253, at *12.

As in *Schoenman* and *Arnold*, Mr. Pinson alleges that he mailed an appeal to the DOJ, or at least that he drafted an appeal to the DOJ and gave the letter to his prison counselor to mail. But like in the other cases, Mr. Pinson provides no evidence, such as a return receipt, demonstrating that the letter was "received" by the DOJ within 60 days of the agency's final response, as 28 C.F.R. § 16.9(a) requires. In addition, the DOJ attests that it has no record of receiving the letter, and Mr. Pinson offers no evidence contradicting this claim. In fact, Mr. Pinson never alleges that the DOJ received the letter, but rather only that he put the letter in an envelope and gave it "to [his] prison counselor Richard Madison to mail out." (Pinson Decl. Ex. 1, at ¶ 9.) Under such circumstances, the undisputed facts show that the DOJ never received a letter appealing the denial of Mr. Pinson's FOIA request. As such, the Court finds that Mr. Pinson failed to exhaust his administrative remedies, and the Court therefore grants summary judgment for the DOJ as to Request No. 12-844-P.

## V. CONCLUSION

For the foregoing reasons, the Court grants partial summary judgment for the DOJ as to Request No. 11-351-P on the basis that the Criminal Division conducted an adequate search for records relating to Mr. Pinson's name, the organizational chart, and the mission statement. The Court, however, denies the DOJ's motion for summary judgment as to the remaining portion of Request No. 11-351-P, which seeks a copy of the Criminal Division's 2011 budget. Finally, the Court grants summary judgment for the DOJ as to Request No. 12-844-P on the basis that Mr.

Pinson failed to exhaust administrative remedies. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 24, 2014                                    RUDOLPH CONTRERAS
                                                             United States District Judge