# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document No.: | 45 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Jeremy Pinson currently is an inmate at ADX Florence, a federal prison located in Colorado. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, the DOJ has asked Mr. Pinson to clarify his records requests, told him that it could not find records that are responsive to his requests, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that the DOJ improperly withheld numerous records from him in violation of FOIA. In addition, Mr. Pinson's complaint alleges that the DOJ and two government officials violated the Privacy Act, 5 U.S.C. § 552a, and certain unspecified provisions in the U.S. Constitution. In response, the DOJ filed nine pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

Now before the Court is the DOJ's motion to dismiss or, in the alternative, for summary judgment as to Mr. Pinson's FOIA claims against the Drug Enforcement Administration ("DEA"). (*See* ECF No. 45.) Mr. Pinson's complaint contends that the DEA wrongfully withheld records in response to two FOIA requests that he submitted between 2010 and 2013: (1) a request for records related to himself (Request No. 11-0080-P), and (2) a request for records on Ismael Guzman (Request No. 12-0429-F). The DOJ argues that Mr. Pinson's claims must be dismissed for failure to exhaust administrative remedies. In addition, the DOJ argues that it is entitled to summary judgment because it conducted an adequate search as to Request No. 11-0080-P, and because Request No. 12-0249-F failed to reasonably describe the records sought and was accompanied by a certification of identity that was of questionable authenticity.

For the reasons explained below, the Court grants the DOJ's motion for summary judgment as to FOIA Request No. 11-0080-P but denies the DOJ's motion for summary judgment as to FOIA Request No. 12-0429-F.

## II. FACTUAL BACKGROUND

In 2010, Mr. Pinson submitted an undated FOIA request (Request No. 11-0080-P) to the DEA requesting a copy of "[a]ll records which pertain to, mention, or make reference to myself." (Pinson Letter Ex. A, Nov. 3, 2010, ECF No. 45.) When the DEA received this request, it searched its Investigative Reporting and Filing System (IRFS) for any records pertaining to Mr. Pinson and came up empty-handed. (*See* Little Decl. ¶¶ 20–23, ECF No. 45.) On November 16, 2010, the DEA mailed Mr. Pinson a letter informing him that no records responsive to his request could be located and advising him of his right to appeal. (*See id.* ¶ 23–24. DEA Letter Ex. B, Nov. 16, 2010, ECF No. 45.) Mr. Pinson received the DEA's response letter on November 29, 2010. (Corr. 2d Am. Compl. 9, ECF No. 32.) Although Mr. Pinson's verified complaint asserts

that in all requests in which a response was received he submitted an appeal the following day, (*id.* at 12), the DEA asserts that no record of any such appeal exists (*see* Little Decl. ¶ 15).

On July 8, 2012, Mr. Pinson submitted a second FOIA request (Request No. 12-0429-F) to the DEA. (*See* Pinson Letter Ex. C, July 8, 2012, ECF No. 45.) This second request sought "production of all information, in any format in which it exists regarding, referencing or containing the name Ismael Eduardo Guzman, including investigative reports, transcripts, photographs, records, memorandums, electronic files or data, emails, video or audio recordings, and any other available information." (*Id.*) The DEA sent two letters to Mr. Pinson in response to this request.

First, in a letter dated July 23, 2012, the DEA wrote that it had assigned Mr. Pinson's request a case number and that it would need additional time to make a determination because Mr. Pinson had requested "investigative records." (*See* Little Decl. ¶ 17; DEA Letter Ex. D, July 23, 2012, ECF No. 45.) Then, on February 21, 2013, the DEA sent Mr. Pinson a second letter informing him that his request could not be processed because it was "not a proper request." (DEA Letter Ex. E, Feb. 21, 2013, ECF No. 45.) The letter stated that the request did not reasonably describe the records sought,[1] and that the attached certification of identity, which allegedly provided Mr. Guzman's consent to release information to Mr. Pinson, required an original signature. (*See* Little Decl. ¶¶ 18, 25–32; DEA Letter Ex. E.) Further, the letter informed Mr. Pinson that if the DEA did not receive a reformulated request and original certification form within 30 days, it would be presumed that Mr. Pinson no longer wanted the

---

[1] The DEA maintains approximately 135 record systems, only some of which contain investigative records. (Little Decl. ¶¶ 1–2.) Its other record systems contain "regulatory records, administrative records, program records, financial records and personnel records." (*Id.* ¶ 1). Finally, it keeps its records in 22 field divisions and more than 250 domestic offices. (*Id.* ¶ 3–4.)

DEA to process his request and the request would be administratively closed. (*See* DEA Letter Ex. E.)

Although Mr. Pinson acknowledges receiving some response to Request No. 12-0429-F on December 10, 2012, (*see* Corr. 2d Am. Compl. 10), he also contends that the Bureau of Prisons ("BOP") intercepted and confiscated his mail so that he did not receive either the July 2012 or the February 2013 letter from the DEA, (Pinson Resp. Mot. Dismiss, 2, Mar. 31, 2014, ECF No. 74; Pinson Decl. ¶ 5, Mar 31, 2014, ECF No. 74). DEA records show that Mr. Pinson did not respond to their February 2013 letter. (*See* Little Decl. ¶¶ 19, 33.)

### III. LEGAL STANDARD

#### A. Analyzing the DOJ's Motion Under Rule 12(b)(6) or Rule 56

The DOJ moves for dismissal of Mr. Pinson's causes of action under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56. In general, exhaustion arguments in FOIA cases are analyzed under Rule 12(b)(6). *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating the district court's summary judgment order and remanding the case with instructions to dismiss the complaint under Rule 12(b)(6) on exhaustion grounds); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012) ("Although FOIA cases 'typically and appropriately are decided on motions for summary judgment,' where an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim." (citations omitted)). If, however, the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003); *see also Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 956 F. Supp. 2d 32, 36–43 (D.D.C. 2013) (granting

4

summary judgment for the government "on the grounds [that] the Plaintiff failed to exhaust his administrative remedies before seeking judicial review").

In this case, both the DOJ and Mr. Pinson refer to materials that are not part of the pleadings. Specifically, the DOJ's motion relies on a declaration by a DOJ employee who avers that he conducted a search of the DOJ's records and found no evidence that Mr. Pinson ever appealed the DEA's determination of his two FOIA requests. (*See* Little Decl. ¶¶ 15, 19.) The DOJ's motion also references several letters that were exchanged between Mr. Pinson and the DEA. (*See, e.g.*, Pinson Letter Ex. A; DEA Letter Ex. B; Pinson Letter Ex. C; DEA Letter Ex. E.) For his part, Mr. Pinson offers a declaration averring that he never received either one of the DEA's response letters to FOIA Request No. 12-0429-F. (*See* Pinson Decl. ¶ 5.) Under these circumstances, the Court will evaluate the DOJ's entire motion under the summary judgment standard.[2]

**B. Summary Judgment Standard**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material

---

[2] It is possible that construing the DOJ's motion under Rule 12(b)(6) would make no difference in the end. *Cf. Mendoza v. Perez*, No. 13-5118, 2014 WL 2619844, at *8 n.9 (D.C. Cir. June 13, 2014) ("The standard for resolution of these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment."); *Acosta v. FBI*, 946 F. Supp. 2d 47, 49–50 (D.D.C. 2013) ("In any event, were this Motion considered under the summary judgment standard, the result would be identical."); *Schoenman v. FBI*, No. 04-2202, 2006 WL 1582253, at *8 n.1 (D.D.C. June 5, 2006) ("[T]the Court will treat Defendants' motion as either a Rule 12(b)(6) motion for failure to state a claim or as a motion for summary judgment under Rule 56—either treatment will generate the same legal conclusions."). That being said, analyzing the motion under Rule 12(b)(6) would preclude the Court from considering materials outside the pleadings, *see Acosta*, 946 F. Supp. 2d at 50, which would not be appropriate in a situation like this when both parties reference such materials.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must avoid "making credibility determinations," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and analyze all underlying facts and inferences in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citation omitted). "In addition, the non-moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the non-moving party must rely on evidence that would arguably be admissible at trial." *Manuel v. Potter*, 685 F. Supp. 2d 46, 58 (D.D.C. 2010) (internal citations and quotation marks omitted).

## IV. ANALYSIS

### A. FOIA Request No. 11-0080-P

The DOJ asserts that it is entitled to summary judgment as to FOIA Request No. 11-0080-P because there is no genuine dispute regarding the material fact that Mr. Pinson failed to exhaust his administrative remedies for the request. Alternatively, the DOJ argues that it is entitled to summary judgment because the agency conducted an adequate search in response to the request. Mr. Pinson has failed to respond to either argument.

The DOJ filed its motion for summary judgment as to the two DEA requests on February 19, 2014. Included in the DOJ's motion was language warning Mr. Pinson that his failure to contradict the assertions in the DOJ's declaration and attachments could cause the Court to accept those assertions as true. (*See* ECF No. 45.) On February 24, 2014, this Court issued a *Fox/Neal* Order, which also warned Mr. Pinson that his failure to respond to the DOJ's motion could result in the motion being treated as conceded and his claims being dismissed. (*See* ECF No. 46.) Rather than respond to the DOJ's arguments regarding Request No. 11-0080-P, however, Mr. Pinson abandoned his claims, stating that he "challenges only Request No. 12-429-P." (Pinson Resp. Mot. Dismiss, 2, Mar. 31, 2014, ECF No. 74). As a consequence, this Court finds that Mr. Pinson has effectively conceded that he failed to appeal the DEA's decision and thus failed to exhaust his administrative remedies regarding FOIA Request No. 11-0080-P. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded."); *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("when a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.").

7

Accordingly, this Court grants summary judgment for the government because Mr. Pinson "failed to exhaust his administrative remedies before seeking judicial review." *Rosenberg*, 956 F. Supp. 2d at 36-43.[3]

### B. FOIA Request No. 12-0429-F

The Court now turns to consider the DOJ's motion for summary judgment as to Request No. 12-0429-F. The DOJ contends that Mr. Pinson's failure to respond to the DEA's February 2013 letter and his failure to submit a proper request constitute a failure to exhaust administrative remedies such that summary judgment is appropriate. It notes that DOJ FOIA regulations require that a requester "describe the records that you seek in enough detail to enable Department personnel to locate them with a reasonable amount of effort." *See* 28 C.F.R. § 16.3(b). Mr. Pinson, however, never replied to the DEA's letter dated February 21, 2013 advising him that his request did not contain a reasonable description of the records sought. Additionally, the DOJ argues, Mr. Pinson never responded to the DEA's legitimate questions regarding the validity of the attached certification of identity even though he was warned that the certification he submitted was inadequate. It therefore asks that this Court grant the DOJ summary judgment as to Mr. Pinson's second FOIA request to the DEA. For the reasons set forth below, the Court denies the DOJ's motion for summary judgment as to Request No. 12-0429-F.

---

[3] Because the Court concludes that Mr. Pinson failed to exhaust his administrative remedies with regard to Request No. 11-0080-P, it need not address the DOJ's alternative argument about whether the agency conducted an adequate search. But, because the DEA appears to have conducted a search that was reasonably calculated to uncover all relevant documents, and because Mr. Pinson has not produced any countervailing evidence suggesting that a genuine dispute exists as to the adequacy of the DEA's search, the Court would be inclined to determine that the DEA's search was adequate.

8

### 1. Failure to respond to the February 2013 letter

It is well-established that to prevail on a FOIA cause of action, the plaintiff first must show that he made a FOIA request that reasonably described the records sought and that the request was in accordance with the published rules for the agency from which he seeks records. *See* 5 U.S.C § 552(a)(3)(A); *Davis v. FBI*, 767 F. Supp. 2d 201, 204 (D.D.C. 2011). If a DOJ component determines that a FOIA request does not reasonably describe records, "it shall tell [the requester] either what additional information is needed or why [the] request is otherwise insufficient. The component also shall give [the requester] an opportunity to discuss [his] request so that [he] may modify it to meet the requirements of this section." 28 C.F.R. § 16.3. Where a FOIA requester failed to reasonably describe the records sought, the requester has failed to submit a proper request and therefore failed to exhaust administrative remedies such that summary judgment in favor of the government is appropriate. *Latham v. U.S. Dep't of Justice*, 658 F. Supp. 2d 155, 161–62 (D.D.C. 2009) (citing *Gillin v. Internal Revenue Serv.*, 980 F.2d 819, 822–23 (1st Cir.1992)); *Judicial Watch, Inc. v. F.B.I.*, No. 00-745, 2001 WL 35612541 (D.D.C. Apr. 20, 2001) ("A FOIA requester is deemed to have failed to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under the FOIA, including: (1) failure to provide the required proof of identity; [or] (2) failure to reasonably describe the records being sought . . . .") (citations omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (holding that the requester must exhaust his administrative remedies before filing suit in federal court, barring unusual circumstances).

It is undisputed that Mr. Pinson did not respond to the DOJ's February 21, 2013, letter instructing him to reformulate his request,[4] which in most cases would be automatic grounds for

---

[4] The Court notes that Mr. Pinson was not sent a final determination letter with instructions on his right to appeal the denial of FOIA Request No. 12-0429-F, perhaps because

9

the Court to dismiss Mr. Pinson's cause of action.  *See, e.g.*, *Hidalgo*, 344 F.3d at 1260.

Nevertheless, the exhaustion requirement is a prudential consideration rather than a jurisdictional requirement.  *Wilbur*, 355 F.3d at 677.  A court may waive the exhaustion requirement if doing so will not "undermin[e] the purposes and policies underlying the exhaustion requirement, namely, to prevent premature interference with agency processes, to give the parties and the courts [the] benefit of the agency's experience and expertise[,] and to compile an adequate record for review."  *Id.*  For example, if an agency fails to respond to the plaintiff's FOIA request within the statutory timeline,[5] the plaintiff must "be deemed to have exhausted his administrative remedies."  *Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) (quoting 5 U.S.C. § 552(a)(6)(C)(i)).  Similarly, if the government affirmatively prevents the plaintiff from complying with the exhaustion requirement, the court may waive the exhaustion requirement and allow the plaintiff to proceed with his case.  *See Robinson v. D.C.*, 2007 WL 1948614, *3 (D.D.C. July 2, 2007) ("A prisoner may be excused from the exhaustion requirement where prison officials prevent the inmate from using the administrative process . . . ."), *aff'd sub nom. Robinson v. U.S. Marshals Serv.*, 2010 WL 3521599 (D.C. Cir. Sept. 1, 2010);

---

the government construed its February 21, 2013 letter as not a denial, but rather as an "opportunity to reformulate his request and to provide a Certification of Identity with an original signature."  In any case, while the February 21, 2013 letter did advise Mr. Pinson to reformulate his request, it did not tell him whether or by what means he could challenge the DEA's determination that his request was improper and could not be processed.

    [5]    "The FOIA expressly requires that an agency receiving a request for information (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal."  *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (citing 5 U.S.C. § 552(a)(6)(A)(i),(ii)).

*Bradley v. Washington*, 441 F. Supp. 2d 97, 101 (D.D.C. 2006) (recognizing the possibility of such a waiver of the exhaustion requirement under the Prison Litigation Reform Act where, for example, prison officials refuse to provide a prisoner with the necessary forms).

The latter situation is precisely what Mr. Pinson alleges. He asserts that the BOP, a component of the DOJ, confiscated the DEA's responses to FOIA Request No. 12-0429-F. (Pinson Decl. ¶ 5.) Mr. Pinson alleges that under these circumstances, he could not have exhausted his administrative appeals process before he filed his lawsuit, and thus the exhaustion requirement ought to be waived. (*Id.*) The DOJ does not contest these factual allegations in its opposition or offer evidence to show that Mr. Pinson did receive the DEA's response letters. Instead, the DOJ argues the exhaustion requirement would become meaningless if a FOIA requester could evade it simply by asserting a failure to receive the letter of response.

As a preliminary matter, the Court acknowledges an apparent conflict between Mr. Pinson's assertions in his declaration that he never received the DEA's letters, and his assertion in his complaint that he received a response from the DOJ regarding Request No. 12-0429-F on December 10, 2012.[6] (Corr. 2d Am. Compl. 9, ECF 32.) Given the sheer volume of FOIA requests that Mr. Pinson has filed with various government agencies, it may be that Mr. Pinson is confused as to if or when he received the DOJ's response to this particular request as opposed to his many other similar requests. Although Mr. Pinson does not specify the nature of the response he received, the alleged December 2012 response date undoubtedly precedes the DEA's issuance of the February 2013 letter, which is the only letter materially relevant to Mr. Pinson's claims. Mr. Pinson clearly states in his declaration that he did not receive the DEA's February 2013 letter

---

[6] The Court notes that Mr. Pinson's complaint is "verified" and thereby must be treated as the equivalent of an affidavit since Mr. Pinson affixed his signature to the document under penalty of perjury pursuant to 28 U.S.C. § 1746. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).

asking him to reformulate his request (Pinson Decl. ¶ 5), and his verified complaint does not directly contradict this assertion.

Ultimately, because at summary judgment the Court must view facts in the light most favorable to the non-movant, *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c), and cannot make credibility determinations, *see Fed. Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 66 (D.D.C. 2008) ("[o]n a motion for summary judgment, the Court must 'eschew making credibility determinations or weighing the evidence.'") (quoting *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007)), the Court must accept as true Mr. Pinson's declaration that he never received the DOJ's letter. And if it turns out that the BOP confiscated the February 21, 2013, letter as Mr. Pinson alleges, he cannot "be deemed to have exhausted his administrative remedies" because he was denied the opportunity to reformulate his request or appeal the determination that the request was improper.[7] *Citizens for Responsibility & Ethics*, 711 F.3d at 184 (quoting 5 U.S.C. § 552(a)(6)(C)(i)). Given the factual disputes on this issue, the Court cannot grant the DOJ's motion for summary judgment on exhaustion grounds regarding FOIA Request No. 12-429-F.

The Court now turns to the DOJ's arguments that summary judgment is appropriate because FOIA Request No. 12-0429-F was not a proper request.

### 2. Failure to submit a proper FOIA request

The DOJ next argues that it is entitled to summary judgment on FOIA Request No. 12-0429-F because the language used in the request was overly broad and did not "reasonably" describe the records sought. In addition, the DOJ argues that the request was improper because

---

[7] The Court notes that the DOJ provided Mr. Pinson with information on how to cure his "improper" request but did not explicitly include language in their February 21, 2013, letter allowing Mr. Pinson "an opportunity to discuss [his] request so that [he] may modify it to meet the requirements [for a proper request]." *See* 28 C.F.R. § 16.3(b).

the attached certification of identity was of questionable authenticity and did not appear to contain Mr. Guzman's original signature. Mr. Pinson, on the other hand, points out that his Request No. 11-0080-P, like Request No. 12-0429-F, included only a name and social security number, and yet the DEA found Request No. 11-0080-P sufficiently descriptive to run an adequate search. Mr. Pinson also contends that he watched Mr. Guzman sign the certification of identity, which he argues was properly completed and submitted.

The purpose of the Freedom of Information Act is to give citizens a way to find out "what their Government is up to." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)). To that end, the Freedom of Information Act requires the government to disclose most types of government records to the public upon request. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) (noting that the Act has "broad provisions favoring disclosure"). Courts have held that it is reasonable for a FOIA request to ask the government to pull a large number of investigative records from one specific records system or to produce one specific document out of a large batch of chronologically indexed files. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (holding that it was presumptively reasonable to ask the government to search a set of chronologically indexed files for a specific memo written by a specific person on a specific date); *Yeager v. DEA*, 678 F.2d 315, 322, 326 (D.C. Cir. 1982) (concluding that a request that asked for all of the investigative records contained within a particular computer system "reasonably described" the records sought).

That being said, a records request made under subsection (a)(3)(A) of the FOIA must "reasonably describe" the records sought. 8 U.S.C. § 552(a)(3)(A). This means the records request must enable "a professional agency employee familiar with the subject area to locate the

record with a reasonable amount of effort." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000). If a records request is properly made, the government must conduct a search that is "reasonably calculated to uncover all relevant documents." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C. Cir. 2013). This means the government must use "some semblance of common sense" in interpreting FOIA requests, *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002), and any ambiguous FOIA requests must be interpreted "liberally," *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003). *See also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (noting that "adequacy [for a search responsive to a FOIA request] is measured by the reasonableness of the effort in light of the specific request.")

This Court has previously held that it was unreasonable to ask an agency to locate and produce "any" documents that referenced, related to, or "pertain[ed]" to a certain person, *see Latham v. U.S. Dep't of Justice*, 658 F. Supp. 2d 155, 157, 161 (D.D.C. 2009). In this case, however, the DEA has demonstrated, by interpreting FOIA Request No. 11-0080-P as seeking criminal investigative records, that it is able to perform a FOIA records search in response to a request for "all records which pertain to, mention, or make reference to" a named individual when that request is accompanied by a certification of the individual's social security number and date of birth. After construing FOIA Request No. 11-0080-P "as seeking criminal investigative information related to" Mr. Pinson, the DOJ had a "SARF FOIA specialist" run a search in the DEA record system that contains "all . . . [the] files compiled by [the] DEA for law enforcement purposes," using Mr. Pinson's "name, social security number, and date of birth" to search its system. (Little Decl. ¶¶ 20–23.) The DOJ asserts that the DEA's search was in the one database that contained "all" of its investigative records (and so was most likely to contain records responsive to Mr. Pinson's request) using search terms that corresponded to the very way

14

its files were indexed (and so was most likely to pull up records responsive to Mr. Pinson's request). (*Id.*)

FOIA Request No. 12-0429-F, like FOIA Request No. 11-0080-P, asks for a copy of any and all information relating to a specific person.[8] (Pinson Letter Ex. C.) Both requests were accompanied by a certification of identity that included the named individual's social security number, date of birth, and place of birth. (Pinson Letter Ex. A; Pinson Letter Ex. C.) The DEA interpreted both requests as seeking investigative records. (*See* DEA Letter Ex. B; DEA Letter Ex. D). In response to FOIA Request No. 12-0429-F, however, the DOJ argued that the search would be "overly burdensome" because the DEA maintains approximately 135 record systems, only some of which contain investigative records (Little Decl. ¶¶ 1–2), and its records are kept in 22 field divisions and more than 250 domestic offices (*id.* ¶¶ 3–4).[9] The DOJ alleged that under these circumstances, "[a]bsent some description of … the particular records sought, and any relevant dates and locations," the DEA's "employees would not know where to begin searching" for records relating to Mr. Guzman. *Dale*, 238 F. Supp. 2d at 104.

The Court is unconvinced that there is a rational reason to treat the language used in FOIA Request No. 12-0429-F differently than the language used by Mr. Pinson in requesting information on himself in FOIA Request No. 11-0080-P, where the DOJ was able to construe the records sought as being limited to investigative records. The addition of the words "including

---

[8] FOIA Request No. 12-0429-F asked for a copy of any "information, in any format in which it exists regarding, referencing or containing the name Ismael Eduardo Guzman, including investigative reports, transcripts, photographs, records, memorandums, electronic files or data, emails, video or audio recordings, and any other available information." (Pinson Letter Ex. C.) FOIA Request No. 11-0080-P requested "[a]ll records which pertain to, mention, or make reference to" Mr. Pinson. (Pinson Letter Ex. A.)

[9] The DOJ advises that its other record systems contain "regulatory records, administrative records, program records, financial records and personnel records." (*Id.* ¶ 1.)

investigative reports, transcripts, photographs, records, memorandums, electronic files or data, emails, video or audio recordings, and any other available information" does not unreasonably broaden the search given that the DOJ had the same information for the third party as it did for Mr. Pinson (i.e., name, social security number, and date of birth). The DOJ could have run a reasonable search in response to FOIA Request No. 12-0429-F by interpreting the scope to be limited to criminal investigative records. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (noting that "a search need not be perfect, only adequate, … measured by the reasonableness of the effort in light of the specific request.") Thus, the Court denies the DOJ's motion for summary judgment regarding FOIA Request No. 12-0429-F.

As a final matter, the Court must address the DOJ's concern that the certification of identity submitted for Mr. Guzman was a photocopy containing differing handwriting and was of questionable authenticity. Although Mr. Pinson insists that he witnessed Mr. Guzman sign the certification of identity and that Mr. Pinson's handwriting was on the form per Mr. Guzman's request, it is unclear from Mr. Pinson's declaration whether the certification of identity that he submitted to the DEA contained Mr. Guzman's original signature or whether he submitted a photocopy of the form that Mr. Guzman signed. (*See* Pinson Decl. ¶ 4). In either case, the Court is sympathetic to the DEA's concerns about the document's authenticity.

The DOJ, as the umbrella agency that includes the BOP, should have easier access to Mr. Guzman than Mr. Pinson has given the nature of the ADX Florence facility. Moreover, because the DOJ distrusts Mr. Pinson's assertions, it is unlikely that it will take even an original signature submitted by him at face value. Accordingly, the Court hereby instructs the DOJ to contact Mr. Guzman to determine whether he signed the certification of identity and consented to the release of his information to Mr. Pinson in connection with FOIA Request No. 12-0429-F. *See* 28 C.F.R.

§ 16.41 (requiring that when an individual requests records about himself, he must verify his identity and "must sign [his] request and [his] signature must either be notarized or submitted by [him] under 28 U.S.C. 1746").  After consulting Mr. Guzman, the DOJ should submit further briefing to the Court within 30 days of this Order.

## V.  CONCLUSION

For the foregoing reasons, the Court grants the DOJ's motion for summary judgment regarding FOIA Request No. 11-0080-P, and denies the DOJ's motion for summary judgment regarding FOIA Request No. 12-0429-F.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: September 30, 2014                                                RUDOLPH CONTRERAS
                                                                                          United States District Judge