UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEREMY PINSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 12-1872 (RC) |
| | : | |
| v. | : | Re Document No.: 49 |
| | : | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Jeremy Pinson currently is an inmate at ADX Florence, a federal prison located in Colorado. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, the DOJ has asked Mr. Pinson to clarify his records requests, told him that it could not find records that are responsive to his requests, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that the DOJ improperly withheld numerous records from him in violation of FOIA. In addition, Mr. Pinson's complaint alleges that the DOJ and two government officials violated the Privacy Act, 5 U.S.C. § 552a, and certain unspecified provisions in the U.S. Constitution. In response, the DOJ filed nine pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

This matter comes before the Court on the DOJ's motion to dismiss or in the alternative, for summary judgment, on Mr. Pinson's FOIA claims against the DOJ's National Security Division ("NSD"). The DOJ argues that Mr. Pinson's claims against the NSD must be dismissed because Mr. Pinson failed to exhaust his administrative remedies before bringing this lawsuit. (*See* Def.'s Mot. Dismiss Summ. J. 5–8, ECF No. 49-1.) In addition, the DOJ argues that it is entitled to summary judgment on Mr. Pinson's claims against the NSD because the NSD conducted an adequate search in response to Mr. Pinson's FOIA requests and did not improperly withhold any records from him. (*See id.* at 8–11.)

For the reasons explained below, the Court grants the DOJ's motion for summary judgment as to FOIA Request No. 11-159 but denies the DOJ's motion for summary judgment as to FOIA Request No. 13-010.

## II. FACTUAL BACKGROUND

### A. Request No. 11-159

On April 20, 2011, Mr. Pinson drafted a FOIA request to the NSD, requesting any records that mentioned his name or described the conditions at ADX Florence. (*See* Pinson Letter Ex. 1, Apr. 20, 2011, ECF No. 49-3.) The NSD received Mr. Pinson's request on May 5, 2011. (*See* Mallory Decl. ¶ 3, ECF No. 49-3.) It then searched its paper files, its electronic files, its email accounts, and its Office of Intelligence's correspondence and policy files for any records that might be responsive to Mr. Pinson's request;[1] the NSD did not find any records responsive to Mr. Pinson's request. (*See id.* ¶ 5.) On September 1, 2011, the NSD sent Mr. Pinson a letter informing him of its findings and his right to appeal within sixty days of the date of the letter should Mr.

---

[1] The NSD did not search its Office of Intelligence's classified operations files because any records in those files (whether responsive to Mr. Pinson's request or not) would concern "intelligence activities . . . , intelligence sources or methods, or cryptology" and thus were exempt from disclosure under 5 U.S.C. § 552(b)(1). (See *id.* ¶¶ 5–6.)

Pinson be unsatisfied with the NSD's response to his FOIA request. (*See* NSD Letter Ex. 4, Sept. 1, 2011, ECF No. 49-3.) The NSD has no record of Mr. Pinson appealing this determination to the head of the DOJ, and Mr. Pinson's response does not claim that he did so. (*See* Mallory Decl. ¶ 8; *cf.* Pinson Decl. Ex. 1, at ¶¶ 11–13, Mar. 6, 2014, ECF No. 59.) Mr. Pinson's response only addresses the issue of whether the NSD conducted an adequate search in response to Request No. 11-159.

### B. Request No. 13-010

On September 29, 2012, Mr. Pinson drafted another FOIA request to the NSD, this time requesting "production of all information maintained on Jamil Abdullah Al-Amin or which contain his name or any reference to him." (Pinson Letter Ex. 2, Sept. 29, 2012, ECF No. 49.) The NSD received this request on October 16, 2012. (*See* Mallory Decl. ¶ 4.) The attached Certificate of Identity purported to be signed by Mr. Al-Amin. (*See* Al-Amin Certification of Identity Ex. 2, Sept. 1, 2012, ECF No. 49-3.) Upon closer examination, the NSD believed that the Certificate of Identity had been signed by Mr. Pinson because it appeared to be written and signed in his handwriting. (*See* Mallory Decl. ¶ 4.) On October 25, 2012, the NSD sent Mr. Pinson a letter asking him to provide a notarized statement from Mr. Al-Amin authorizing the release of his records to Mr. Pinson. (*See* NSD Letter Ex. 3, Oct. 25, 2012, ECF No. 49.)

Mr. Pinson alleges that he unsuccessfully attempted to obtain a notarized statement but was told that since he had submitted a signed Form DOJ-361, which is signed under penalty of perjury, notarization was not required. (Pinson Decl. ¶ 12). Mr. Pinson alleges that he subsequently responded to the DOJ by submitting an affidavit from Mr. Al-Amin to the NSD on November 18, 2012. (*See id.* ¶ 13.) This affidavit authorized the release of Mr. Al-Amin's records to Mr. Pinson, was allegedly signed by Mr. Al-Amin, and was purported to have been duly witnessed by Mr. Pinson. (*See* Al-Amin Aff. Attach. B, Nov. 29, 2013, ECF No. 59.) The

3

affidavit was signed on November 29, 2013, more than a year after Mr. Pinson states that he submitted it to the NSD. (*See id.*) The NSD states that it "did not receive the requested notarized statement from Plaintiff" and therefore closed this file on September 29, 2012. (Mallory Decl. ¶ 4.) The NSD states that it has no record of Mr. Pinson filing an administrative appeal for Request No. 13-010. (*See id.* ¶ 8.)

### III.  LEGAL STANDARD

#### A. Analyzing the DOJ's Motion Under Rule 12(b)(6) or Rule 56

The DOJ moves for dismissal of Mr. Pinson's causes of action under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56.  In general, exhaustion arguments in FOIA cases are analyzed under Rule 12(b)(6).  *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating the district court's summary judgment order and remanding the case with instructions to dismiss the complaint under Rule 12(b)(6) on exhaustion grounds); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012) ("Although FOIA cases 'typically and appropriately are decided on motions for summary judgment,' where an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim." (citations omitted)).  If, however, the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(d); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003); *see also Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 956 F. Supp. 2d 32, 36–43 (D.D.C. 2013) (granting summary judgment for the government "on the grounds [that] the Plaintiff failed to exhaust his administrative remedies before seeking judicial review").

In this case, both the DOJ and Mr. Pinson refer to materials that are not part of the pleadings. Specifically, the DOJ's motion relies on a declaration by an NSD employee who avers that she conducted a search of the DOJ's records and found no evidence that Mr. Pinson ever appealed the NSD's determination of his two FOIA requests. (*See* Mallory Decl. ¶ 8.) The DOJ's motion also references several letters that were exchanged between Mr. Pinson and the NSD. (*See, e.g.*, Pinson Letter Ex. 1; Pinson Letter Ex. 2; NSD Letter Ex. 3; NSD Letter Ex. 4.) For his part, Mr. Pinson offers a declaration describing the circumstances of Mr. Al-Amin's completion of the certification of identification for Request No. 13-010. (*See* Pinson Decl. ¶¶ 11–13.) Mr. Pinson has also submitted an affidavit from Mr. Al-Amin for the Court's consideration. (*See* Al-Amin Aff. Attach. B.) Under these circumstances, the Court will evaluate the DOJ's entire motion under the summary judgment standard.[2]

### B. Summary Judgment Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

---

[2] It is possible that construing the DOJ's motion under Rule 12(b)(6) would make no difference in the end. *Cf. Mendoza v. Perez*, No. 13-5118, 2014 WL 2619844, at *8 n.9 (D.C. Cir. June 13, 2014) ("The standard for resolution of these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment."); *Acosta v. FBI*, 946 F. Supp. 2d 47, 50 (D.D.C. 2013) ("In any event, were this Motion considered under the summary judgment standard, the result would be identical."); *Schoenman v. FBI*, No. 04-2202, 2006 WL 1582253, at *8 n.1 (D.D.C. June 5, 2006) ("[T]he Court will treat Defendants' motion as either a Rule 12(b)(6) motion for failure to state a claim or as a motion for summary judgment under Rule 56—either treatment will generate the same legal conclusions."). That being said, analyzing the motion under Rule 12(b)(6) would preclude the Court from considering materials outside the pleadings, *see Acosta*, 946 F. Supp. 2d at 50, which would not be appropriate in a situation like this when both parties reference such materials.

"material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must avoid "making credibility determinations," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and analyze all underlying facts and inferences in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citation omitted). "In addition, the non-moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the non-moving party must rely on evidence that would arguably be admissible at trial." *Manuel v. Potter*, 685 F. Supp. 2d 46, 58 (D.D.C. 2010) (internal citations and quotation marks omitted).

## IV.  ANALYSIS

### A. Request No. 11-159

The DOJ asserts that it is entitled to summary judgment as to Request No. 11-159 because there is no genuine dispute regarding the material fact that Mr. Pinson failed to exhaust

his administrative remedies for the request. Alternatively, the DOJ argues that it is entitled to summary judgment because the agency conducted an adequate search in response to the request. Mr. Pinson has failed to respond to the DOJ's threshold argument of exhaustion.

The DOJ filed its motion for summary judgment as to the two NSD requests on February 26, 2014. Included in the DOJ's motion was language warning Mr. Pinson that his failure to contradict the assertions in the DOJ's declaration and attachments could cause the Court to accept those assertions as true. (*See* ECF No. 49.) On February 26, 2014, this Court issued a *Fox/Neal* Order, which also warned Mr. Pinson that his failure to respond to the DOJ's motion could result in the motion being treated as conceded and his claims being dismissed. (*See* ECF No. 52.) Rather than respond to the DOJ's arguments regarding Request No. 11-159, however, Mr. Pinson abandoned his claims, stating that the material facts in dispute as to the two FOIA Requests he submitted to the NSD was "whether the [NSD] properly withheld third party records." (Pinson Resp. Mot. Dismiss, 2, Mar. 18, 2014, ECF No. 59). The third party records are only part of FOIA Request No. 13-010, which the Court addresses in the following section. As to FOIA Request No. 11-159, Mr. Pinson responds solely to the DOJ's alternative argument about whether the search conducted was reasonable; Mr. Pinson does not address his failure to exhaust administrative remedies.

As a consequence, this Court finds that Mr. Pinson has effectively conceded that he failed to appeal the NSD's decision and thus failed to exhaust his administrative remedies regarding FOIA Request No. 11-159.[3] *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It

---

[3] Even though Mr. Pinson did not concede the DOJ's alternative argument about whether the NSD conducted an adequate search, because the Court finds that Mr. Pinson did not exhaust his administrative remedies, the Court does not reach this issue. But if the Court had reached the issue, it would be inclined to request that the DOJ submit an additional affidavit as the current affidavit describing the search responsive to FOIA Request No. 11-159 does not

7

is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded."); *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.").

Accordingly, this Court grants the DOJ's motion for summary judgment as to FOIA Request No. 11-159 because Mr. Pinson "failed to exhaust his administrative remedies before seeking judicial review." *Rosenberg*, 956 F. Supp. 2d at 36-43.

### B. Request No. 13-010

The DOJ again asserts that it is entitled to summary judgment as to Request No. 13-010 because there is no genuine dispute regarding the material fact that Mr. Pinson failed to exhaust his administrative remedies. Alternatively, the DOJ argues that it is entitled to summary judgment because Mr. Pinson did not submit a proper FOIA request. The DOJ rests its argument that Mr. Pinson failed to submit a proper FOIA request on its assertion that "it appeared that Mr. Pinson signed the statement [because] . . . [t]he letters in Mr. Al-Amin's signature were constructed in the same way as the letters in the words of Mr. Pinson's request." (*See* Mallory Decl. ¶4.)

DOJ FOIA regulations state that "[i]f you are making a request for records about another individual, … a written authorization signed by that individual permitting disclosure of those records to you … will help the processing of your request." 28 C.F.R. § 16.3(a). The DOJ's FOIA

---

provide any description of the NSD searching for documents concerning the conditions at "ADX Florence." *See Weisberg v. Dep't. of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment).

reference guide clarifies that "[a requester] may fulfill this requirement by: (1) completing and signing Form DOJ-361 …, (2) having [the requester's] signature on [the] request letter witnessed by a notary, *or* (3) including the following statement immediately above the signature on [the] request letter: "I declare under penalty of perjury that the foregoing is true and correct. Executed on [date]." *See* The Department of Justice Freedom of Information Act Reference Guide, *IV. How to Make a FOIA Request*, http://www.justice.gov/oip/department-justice-freedom-information-act-reference-guide-january-2010 (emphasis added).

While the Court is sympathetic to the government's concern for a third party's privacy, the law is clear that when an individual submits a certificate of identity signed under penalty of perjury, a substitute to notarization, the agency is required to treat the signature as sworn. To be clear, it is not a requirement that FOIA requests or Certificates of Identity are notarized so long as they are signed under penalty of perjury, as the FOIA request and DOJ Form 361 in this case were. *See Summers v. U.S. Dep't of Justice*, 999 F.2d 570, 573 (D.C. Cir. 1993) ("Since an individual's identity would seem to be a "matter" that FOIA requesters or third parties waiving privacy are asked to establish, the plain language of § 1746 instructs that a person may use an unsworn statement to establish that identity. Any residual doubt on this question is dispelled when § 1746 is considered in conjunction with 18 U.S.C. § 1621, the general federal perjury statute."); *see also* 28 C.F.R. § 16.41(d) ("You must sign your request and your signature must either be notarized *or* submitted by you under 28 U.S.C. 1746, a law that permits statements to be made under penalty of perjury as a substitute for notarization.") (emphasis added).

The DOJ argues that it afforded Mr. Pinson the opportunity to reformulate and bring his FOIA Request No. 13-010 in line with DOJ requirements for a proper request. (*See* Mallory Decl. ¶4.) The DOJ requested that Mr. Pinson submit a notarized statement by Mr. Al-Amin, but

9

received no response from Mr. Pinson. (*Id.*) Mr. Pinson does not dispute receiving the DOJ's letter in response to FOIA Request No. 13-010. Mr. Pinson does, however, assert that he unsuccessfully "attempted to have the statement notarized" but was purportedly advised that "a Form DOJ-361 didnt [sic] require notarization because its [sic] executed under 28 U.S.C. 1746." (Pinson Decl. ¶12). Mr. Pinson asserts he subsequently submitted an affidavit by Mr. Al-Amin to the DOJ on November 18, 2012. (*See* Pinson Decl. ¶13.) Aside from the fact that the affidavit appears to be signed on November 29, 2013, a full year after Mr. Pinson allegedly sent the affidavit, there is no record of the DOJ receiving this affidavit.

The DOJ is correct in asserting that the burden is on the FOIA requester to "demonstrate that he complied with the agency's filing procedures and appeals process." (Def.'s Mot. Dismiss Summ. J. 6.) Specifically, the FOIA requester may not merely allege that he handed his appeal to a third-party for mailing within the statutory timeframe. *See Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) (stating "[t]he mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency. Even if plaintiff had placed his FOIA requests … in the prison mailbox, nothing in the record establishes that [the] agencies actually received his requests.").[4]

In this case, the DOJ erroneously asserts that a notarized statement by Mr. Al-Amin was necessary to make Mr. Pinson's request a properly filed FOIA request. Mr. Pinson asserts he

---

[4] If the requester fails to show that there is a genuine dispute of material fact as to the agency's receipt of his appeal, a court may grant summary judgment for the agency "due to [the] plaintiff's failure to exhaust his administrative remedies." *Arnold v. U.S. Secret Serv.*, No. 05-0450, 2006 WL 2844238, at *2 (D.D.C. Sept. 29, 2006). Thus, courts grant summary judgment to the agency when a plaintiff alleges that he mailed an appeal, yet the agency has no record of receiving the appeal letter. *See id.* This is especially true when a plaintiff fails to provide "a copy of a stamped envelope showing the mailing of the appeals, or a returned receipt certifying the actual receipt of the request by the agency. . . ." *Schoenman*, 2006 WL 1582253, at *12.

submitted an affidavit by Mr. Al-Amin (Pinson Decl. ¶13), but it is clear that because the DOJ distrusts Mr. Pinson's assertions, it is unlikely that it would have taken even an affidavit submitted by him at face value had the DOJ received it. Regardless of the factual inconsistencies surrounding Mr. Al-Amin's affidavit, the Court reiterates that notarization of a Certificate of Identity is not a DOJ requirement for a proper FOIA request if the consent to release records to a third party was signed under penalty of perjury, as it was in this case.

Because the Court finds that FOIA Request No. 13-010 was a properly formulated FOIA request, the DOJ had to make a timely determination as to whether it would grant or deny the request. *See* 5 U.S.C. § 552(a)(6)(A)(i) (instructing agencies to "determine within 20 days . . . after the receipt of any such request whether to comply with such request and . . . [to] immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination"). And because the DOJ failed to do so within the statutorily required time period, Mr. Pinson constructively exhausted his administrative remedies. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 185 (D.C. Cir. 2013) ("If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies.") As such, the Court will deny the DOJ's motion for summary judgment as to FOIA Request No. 13-010.

However, because the Court is sensitive to the DOJ's concern, the Court hereby instructs the DOJ to contact Mr. Al-Amin to determine whether he signed the certification of identity and consented to the release of his information to Mr. Pinson in connection with FOIA Request No. 13-010. *See* 28 C.F.R. § 16.41 (requiring that when an individual requests records about himself, he must verify his identity and "must sign [his] request and [his] signature must either be

notarized or submitted by [him] under 28 U.S.C. 1746"). After consulting Mr. Al-Amin, the DOJ should submit further briefing to the Court within 30 days of this Order.

## V. CONCLUSION

For the foregoing reasons, the Court grants summary judgment for the DOJ as to Request No. 11-159 on the basis that Mr. Pinson failed to exhaust his administrative remedies before bringing suit. The Court, however, denies the DOJ's motion for summary judgment as to FOIA Request No. 13-010, because the initial request was properly submitted. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 30, 2014                                    RUDOLPH CONTRERAS
                                                             United States District Judge