**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JEREMY PINSON,                          :
                                        :
      Plaintiff,                        :      Civil Action No.:    12-1872 (RC)
                                        :
      v.                                :      Re Document No.:    62
                                        :
U.S. DEPARTMENT OF JUSTICE, *et al.*,   :
                                        :
      Defendants.                       :

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Jeremy Pinson is an inmate currently housed at MCFP Springfield, a federal

administrative security medical center located in Missouri.  While in prison, Mr. Pinson has filed

multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different

components of the U.S. Department of Justice ("DOJ").  On several occasions, the DOJ has

asked Mr. Pinson to clarify his records requests, told him that it could not find records that are

responsive to his requests, or informed him that the records he sought were exempt from

disclosure by law.  Mr. Pinson took issue with some of these determinations, so he filed a

complaint claiming that the DOJ improperly withheld numerous records from him in violation of

FOIA.  In response, the DOJ filed several pre-answer motions, each asking the Court to dismiss

or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

Now before the Court is the DOJ's motion to dismiss or, in the alternative, for summary

judgment as to Mr. Pinson's numerous FOIA claims against the DOJ's Office of the Inspector

General ("the OIG").  Def.'s Mot. Dismiss, ECF No. 62.  Mr. Pinson claims that the OIG

1

responded to seven FOIA requests that he submitted between 2010 and 2013,[1] but that it unlawfully "refused to release info" corresponding to those requests. *See* Corr. 2d. Am. Compl. at 8, ECF No. 32. He further claims that the OIG failed to respond at all to six requests that he submitted during the same time period. *See id.* at 9. The DOJ seeks to dismiss Mr. Pinson's claims as to all thirteen FOIA requests, and moves for summary judgment in the alternative, arguing that: (1) as to four of the requests, Mr. Pinson failed to exhaust administrative remedies, (2) as to another four requests, the OIG responded in accordance with FOIA, engaged in reasonable searches for the requested information, and released any non-exempt information to Mr. Pinson, and (3) as to the remaining five requests, the agency never received the requests mentioned in Mr. Pinson's complaint. *See generally* Def.'s Mem. Supp. Mot. Dismiss Summ. J. at 1, ECF No. 62-1 ("Def.'s Mem.").

For the reasons explained below, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

### A. Request No. 11-OIG-15

On November 1, 2011, the OIG received a FOIA request from Mr. Pinson seeking "all documents . . . relevant to myself generated after June 1, 2009," (Part One) and "all documents relevant to the investigation or prosecution of Case No. 07-CR-00273 in the U.S. District Court for the Eastern District of New York" (Part Two). *See* Waller Decl. ¶¶ 8–9, Def.'s Attach. A, ECF No. 62–3; *id.* at Ex. 3. Upon receipt, the OIG consolidated the requests into Request No.

---

[1]     Of the seven FOIA requests, four are stand-alone requests for information and three are consolidated, encompassing multiple requests for documents. Thus, the seven requests correspond to eleven categories of information sought by Mr. Pinson. *See* Corr. 2d. Am. Compl. at 8.

11-OIG-15, *see id.* at Ex. 4, and conducted a search of the agency's investigative records database for records responsive to both parts of Mr. Pinson's request, *see id.* at ¶ 8.

On November 15, 2010, the agency issued a letter to Mr. Pinson stating that it had found "no responsive records" regarding Part Two of his request, but that it was releasing all responsive documents relating to Part One, with redactions made in accordance with FOIA Exemptions 6 and 7(C). *See id.* at ¶ 10; *id.* at Ex. 4. The DOJ contends that the OIG complied with its FOIA duties and is entitled to summary judgment as to Request No. 11-OIG-15. *See* Def.'s Mem. at 13.

Mr. Pinson argues that the agency's search was not adequate as to either part of his request. Pl.'s Resp. Def.'s Mot. Dismiss Summ. J. at 3–4, ECF No. 79 ("Pl.'s Resp."). He contends that the OIG's response to Part One of his request is incomplete because comments on the documents received "indicate the existence of handwritten notes," that were not included in the materials provided to him. Pinson Decl. ¶ 3, Pl.'s Ex. 1, ECF No. 79. Mr. Pinson further contends that the "no records" response to Part Two of his request was improper because public documents indicate the existence of records on the topic. *Id.* at ¶ 2.

## B.  Request No. 11-OIG-49

On December 9, 2010, the OIG received two requests from Mr. Pinson, the first seeking all documents relating to himself located in the agency's Houston and Los Angeles Offices, and the second requesting all complaints filed in 2010 that make reference to the Federal Correctional Institution in Talladega, Alabama. *See* Waller Decl. ¶ 11; *id.* at Ex. 5. OIG consolidated the requests and assigned them Request No. 11-OIG-49. *See id.* at Ex. 6. However, before the OIG responded to Mr. Pinson's request, it received a copy of a letter that the Office of Information Policy ("OIP") had sent to Mr. Pinson, stating that "due to outstanding FOIA fees

with the Bureau of Prisons, no further requests or appeals, including this particular request, could be processed under the FOIA until all fees were paid." *See id.* ¶ 11.  On April 22, 2011, the OIG notified Mr. Pinson that it was administratively closing his request due to outstanding fees.  *See id.*; *id.* at Ex. 6.

Mr. Pinson appealed that decision to the OIP, and on June 21, 2011, the OIG received another letter from the OIP, this time stating that Mr. Pinson had paid his outstanding fees to the Bureau of Prisons ("BOP") and that his request was being remanded to the OIG for processing. *See id.* ¶ 11.  Accordingly, the OIG claims that on June 25, 2012, it sent Mr. Pinson all responsive documents sought in Request No. 11-OIG-49, redacted in part under FOIA exemptions 6 and 7(C).  *Id.*; *id.* at Ex. 9.  The agency acknowledges that the documents did not reach Mr. Pinson, however, and it asserts that its response package was "'returned to sender'" by the BOP institution where Plaintiff had been housed," indicating that Mr. Pinson was no longer located at that facility.  *See id.* ¶ 11.  Mr. Pinson has never received the materials in question, Pinson Decl. ¶ 4, but the DOJ maintains that the agency is entitled to summary judgment because it conducted a reasonable search and properly released records to Mr. Pinson.  *See* Def.'s Mem. at 13.

## C.  Request No. 11-OIG-150

On May 23, 2011, the OIG received a FOIA request from Mr. Pinson seeking "an address directory of all agency departments or offices."  Waller Decl. Ex. 7.  The agency responded to Mr. Pinson by denying his request on May 25, 2011, again due to outstanding fees owed to the BOP.  *See id.* at ¶ 12; *id.* at Ex. 8.  The DOJ seeks to dismiss Mr. Pinson's claim on exhaustion grounds, as he failed to appeal the OIG's May 25, 2011 response.  *See* Def.'s Mem. at 12. Although Mr. Pinson's verified complaint asserts that he received the agency's response to this

request on May 31, 2011,[2] Corr. 2d. Am. Compl. at 9, his opposition to DOJ's motion asserts that "it is beyond dispute that plaintiff never received [a] response[] to" Request No. 11-OIG-150, and thus he could not have been expected to appeal it.  Pl.'s Resp. at 5.

### D.  Request No. 12-OIG-09

On September 19, 2011, the OIG received a request from Mr. Pinson seeking OIG reports concerning "conditions of confinement and/or customs/practices of the Federal Bureau of Prisons written or generated by OIG since 2005."[3]  *See* Waller Decl. ¶ 13, *id.* at Ex. 10.  The agency performed a search in response to this request, but claims that it did not find any responsive information.  *Id.* at ¶ 13.  It claims to have so informed Mr. Pinson by letter dated October 18, 2011, *see id.*; *id.* at Ex. 11, and argues that because Mr. Pinson never appealed the response, the claim has not been administratively exhausted, *see* Def.'s Mem. at 12.

Although Mr. Pinson's verified complaint asserts that he received the agency's response on October 21, 2011, Corr. 2d. Am. Compl. at 9, he now asserts that "it is beyond dispute that plaintiff never received responses to" Request No. 12-OIG-09, and thus he could not have been expected to appeal it, Pl.'s Resp. at 5.

---

[2]     The Court notes that Mr. Pinson's complaint is "verified" and thereby must be treated as the equivalent of an affidavit since Mr. Pinson affixed his signature to the document under penalty of perjury pursuant to 28 U.S.C. § 1746.  *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).

[3]     Mr. Pinson's complaint describes the substance of this request as a request for "reports on audits of Bureau of Prisons," but he lists the request number and dates corresponding to Request No. 12-OIG-09, which the OIG describes as a request for reports on conditions of confinement and BOP customs.  *Compare* Corr. 2d. Am. Compl. at 9, *with* Waller Decl. Ex. 11. Mr. Pinson's declaration makes clear that both parties are discussing the same request, explaining that in Request No. 12-OIG-09, he was seeking "reports of audits/investigations involving conditions, customs and practice of the BOP."  Pinson Decl. ¶ 6.

### E.  Request No. 12-OIG-257

The OIG next received a request from Mr. Pinson dated August 28, 2012, seeking "all information referencing Jamil Abdullah Al-Amin."  Waller Decl. ¶ 6; *id.* at Ex. 16.  The agency issued a "*Glomar*" response on December 4, 2012, neither confirming nor denying the existence of any records pertaining to Mr. Al-Amin, because Mr. Al-Amin had not consented to the release of his investigatory records to a third party.  *See id.* at ¶ 16; *id.* at Ex. 17.  Mr. Pinson argues that the *Glomar* response was erroneous because he sent the OIG a waiver containing Mr. Al-Amin's signature, which was sufficient for the release of the requested records.  Pl.'s Resp. at 4.

### F.  Request Nos. 13-OIG-206[4]

In a FOIA request dated August 10, 2013, Mr. Pinson requested documents relating to the investigation of six deaths at ADX Florence, as well as all e-mails and all correspondence "authored by Denver field office agents during 2011 to 2013" that mention ADX Florence.  *See* Waller Decl. ¶ 21; *id.* at Ex. 25.  The OIG claims to have searched but found no records in response to this request, *id.* at ¶ 21; *id.* at Ex. 26, and it asserts that Mr. Pinson failed to appeal the agency's "no records" response from September 23, 2013.  *See* Def.'s Mem. at 12.  Although Mr. Pinson's verified complaint asserts that he received the agency's response on September 30, 2013, Corr. 2d. Am. Compl. at 9, he now asserts that "it is beyond dispute that plaintiff never received [a] response[]" to Request No. 13-OIG-206, and thus he could not have been expected to appeal it, Pl.'s Resp. at 5.

---

[4]    Mr. Pinson's complaint lists this request as Request No. 13-OIG-243, *see* Corr. 2d Am. Compl. at 8, but his declaration makes clear that the correct request number is 13-OIG-206. *See* Pinson Decl. ¶ 7 (describing Request No. 13-OIG-206 as regarding "records of emails and correspondence mentioning ADX by Denver agents" and "inmate deaths at ADX").

## G.  Request No. 12-OIG-254

On August 27, 2012, Mr. Pinson submitted a request for "information about, relating to, or which mentions myself generated after August 1, 2012."  Waller Decl. ¶ 15; *id.* at Ex. 14.  Mr. Pinson's complaint asserts that this was a request "to which OIG did not respond," *see* Corr. 2d Am. Compl. at 9, but the OIG has identified the request as Request No. 12-OIG-254, to which the agency responded by releasing the requested information, redacted in part, on January 15, 2013.  Waller Decl. ¶ 15; *id.* at Ex. 15.  The DOJ argues that summary judgment is appropriate because the agency did respond properly to Mr. Pinson's request.

## H.  April 2013 Request[5]

On April 11, 2013, Mr. Pinson requested all records pertaining to himself after 2006.  Corr. 2d Am. Compl. at 8.  The request was made months after Mr. Pinson initiated this suit, and it is still pending with the OIG.  Waller Decl. ¶ 20.  The DOJ contends that Mr. Pinson has failed to exhaust administrative remedies as to the request.  *See* Def.'s Mem. Supp. Mot. Dismiss Summ. J. at 12.

## I.  Requests without a Response

Mr. Pinson's complaint asserts that the OIG did not respond to five additional FOIA requests that he submitted, seeking information pertaining to: (1) "All info on Ismael Guzman," (2) "All info on Mikeal Stine," (3) "All info on myself 2/22/12 to 8/1/12," (4) "All complaints re: ADX Florence," and (5) "Homicide at USP Big Sandy."  Corr. 2d Am. Compl. at 9.  The OIG states that it conducted a search but that it has no record of ever receiving these five requests.  *See* Waller Decl. ¶ 22.

---

[5]     Mr. Pinson misidentified this request as Request No. 13-OIG-206 in his complaint.  *See supra* n.4.  Because the OIG has not identified the request by number, the Court refers to it as the "April 2013 Request."

### III.  LEGAL STANDARD

### A. Analyzing the DOJ's Motion Under Rule 12(b)(6) or Rule 56

The DOJ moves for dismissal of Mr. Pinson's causes of action with respect to the OIG under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56.  In general, exhaustion arguments in FOIA cases are analyzed under Rule 12(b)(6).  *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (vacating the district court's summary judgment order and remanding the case with instructions to dismiss the complaint under Rule 12(b)(6) on exhaustion grounds); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012) ("Although FOIA cases 'typically and appropriately are decided on motions for summary judgment,' where an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim." (citations omitted)).  If, however, the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(d); *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003); *see also Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*, 956 F. Supp. 2d 32, 36–43 (D.D.C. 2013) (granting summary judgment for the government "on the grounds [that] the Plaintiff failed to exhaust his administrative remedies before seeking judicial review.").

In this case, both the DOJ and Mr. Pinson refer to materials that are not part of the pleadings.  Specifically, the DOJ's motion relies on a declaration by an OIG employee acknowledging receipt of several of Mr. Pinson's requests, and illustrating the search process and exemptions applied regarding the requested documents.  *See generally* Waller Decl.  For his part, Mr. Pinson offers a declaration comparing those records the OIG did not disclose with those documents he has found on his own or has knowledge of, as the basis for alleging that OIG's

8

disclosures were incomplete or that their findings of "no responsive records" were inaccurate. *See generally* Pinson Decl.  Under these circumstances, the Court will evaluate the DOJ's entire motion under the summary judgment standard.[6]

## B. Summary Judgment Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that

---

[6]     It is possible that construing the DOJ's motion under Rule 12(b)(6) would make no difference in the end.  *Cf. Mendoza v. Perez*, No. 13-5118, 2014 WL 2619844, at *8 n.9 (D.C. Cir. June 13, 2014) ("The standard for resolution of these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment."); *Acosta v. FBI*, 946 F. Supp. 2d 47, 49–50 (D.D.C. 2013) ("In any event, were this Motion considered under the summary judgment standard, the result would be identical."); *Schoenman v. FBI*, No. 04-2202, 2006 WL 1582253, at *8 n.1 (D.D.C. June 5, 2006) ("[T]the Court will treat Defendants' motion as either a Rule 12(b)(6) motion for failure to state a claim or as a motion for summary judgment under Rule 56—either treatment will generate the same legal conclusions.").  That being said, analyzing the motion under Rule 12(b)(6) would preclude the Court from considering materials outside the pleadings, *see Acosta*, 946 F. Supp. 2d at 50, which would not be appropriate in a situation like this when both parties reference such materials.

demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1);

*Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record

that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering

a motion for summary judgment, a court must avoid "making credibility determinations,"

*Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and analyze all underlying facts and

inferences in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not

establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson*, 477 U.S. at 249–50 (internal citation omitted).  "In addition, the non-

moving party cannot rely upon inadmissible evidence to survive summary judgment; rather, the

non-moving party must rely on evidence that would arguably be admissible at trial." *Manuel v.

Potter*, 685 F. Supp. 2d 46, 58 (D.D.C. 2010) (internal citations and quotation marks omitted).

## IV.  ANALYSIS

### A.  Failure to Exhaust Administrative Remedies

The DOJ seeks summary judgment as to Request Nos. 11-OIG-150, 12-OIG-09, and 13-

OIG-206, as well as the April 2013 request, because Mr. Pinson failed to exhaust administrative

appeal remedies before seeking judicial redress in this Court. [7]  *See* Def.'s Mem. at 11–12.

---

[7]  The DOJ also argues in its reply brief that Plaintiff has failed to provide a clear
statement of material facts, putting the government at a disadvantage in knowing how to respond,
and that the "Court should consider DOJ's statement of material facts and arguments as
conceded." Def.'s Reply at 1.  However, "the District Court, in its discretion, may consider a
motion for summary judgment even in the absence of a proper [statement of material facts,]"
which it chooses to do here.  *See Gardeis v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C.
Cir. 1980).  Despite its shortcomings, Mr. Pinson's *pro se* brief was organized clearly by

The DOJ filed its motion for summary judgment as to the four unexhausted requests on March 21, 2014.  Included in the DOJ's motion was language warning Mr. Pinson that his failure to contradict the assertions in the DOJ's declaration and attachments could cause the Court to accept those assertions as true.  *See* Def.'s Mot. for Partial Summ. J. at 1–2.  On March 25, 2014, this Court issued a *Fox/Neal* Order, which also warned Mr. Pinson that his failure to respond to the DOJ's motion could result in the motion being treated as conceded and his claims being dismissed.  *See* Order, ECF No. 64. Rather than respond to the DOJ's arguments regarding the failure to exhaust his April 2013 request, Mr. Pinson abandoned the April 2013 claim entirely, focusing his response solely on Request Nos. 11-OIG-15, 11-OIG-49, 11-OIG-150, 12-OIG-09, 12-OIG-257, and 13-OIG-206.  *See* Pl.'s Resp. at 1–6.

As a consequence, this Court finds that Mr. Pinson has conceded that he failed to exhaust administrative remedies pertaining to his April 2013 request prior to seeking judicial relief, and the Court grants summary judgment to the DOJ as to that request.  *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded."); *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded.").

Mr. Pinson does, however, dispute the DOJ's exhaustion argument as it pertains to Request Nos. 11-OIG-150, 12-OIG-09, and 13-OIG-206.  For those three requests, the OIG has provided the Court with copies of its response letters and with the declaration of an OIG

---

response number and thus was relatively easy to follow; the same cannot be said for the DOJ's motion.

employee who asserts that the OIG sent Mr. Pinson the letters in question.  *See* Waller Decl. ¶¶ 12, 13, 21; *id.* at Exs. 8, 11, 26.  Although Mr. Pinson concedes that he did not appeal any of the three responses at issue, he argues that his "failure to exhaust is OIG's fault."  Pl.'s Resp. at 5. Specifically, Mr. Pinson asserts that it would be inappropriate to award summary judgment to the DOJ based on his failure to appeal responses that he never received.  *Id.*

In general, a FOIA requester must exhaust his administrative remedies before filing suit in federal court.  *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  This means the requester must appeal an adverse determination of his FOIA request to the head of the agency before suing that agency in federal court.  *See Hidalgo*, 344 F.3d at 1259–60. If the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency.  *See Wilbur*, 355 F.3d at 676–77.

But FOIA's exhaustion requirement is a prudential consideration, rather than a jurisdictional prerequisite.  *See Wilbur*, 355 F.3d at 677.  A court therefore may waive the exhaustion requirement under certain circumstances, such as if an agency failed to respond to the FOIA request within a certain number of days.  *See Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i)). Further, if there is a genuine dispute of material fact on the exhaustion issue, a court may refuse to grant summary judgment for the agency.  *See Jones v. DOJ*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008).  A court may, for example, deny summary judgment to an agency that claims to have notified a plaintiff of its response to a FOIA request if the plaintiff attests that he never received it and the agency fails to offer evidence to the contrary.  *See id.* ("If Jones did not receive a response to his FOIA request, then the agency did not comply with its duty to make a

determination within 20 days after receiving Jones' request and 'immediately notify the person making such request' of its determination." (quoting 5 U.S.C. § 552(a)(6)(A)(i)).

Here, there is no question that Mr. Pinson's brief argues that he never received responses to the three requests at issue. Pl.'s Resp. at 5 ("[I]t is beyond dispute that plaintiff never received responses to Req. No's. 13-OIG-206, 11-OIG-150 and 12-OIG-09."). And the last sentence of Mr. Pinson's attached declaration states that he "did not learn of [Request No. 13-OIG-206's] response until reading the Waller Declaration, the same applies to Req. 11-OIG-150, 12-OIG-09 letters." Pinson Decl. ¶ 7. At first glance, it would seem that Mr. Pinson has created a genuine issue of material fact regarding whether he received the OIG's three response letters. *Cf. Jones*, 576 F. Supp. 2d at 67.

The problem for Mr. Pinson, however, is that unlike the plaintiff in *Jones*, his verified complaint directly contradicts the assertion in his declaration that he did not receive the OIG's response letters. *Cf. id.* ("Jones' verified complaint and his subsequent declaration . . . each state that Jones did not receive a response to his FOIA request."). Mr. Pinson's complaint, signed under penalty of perjury on October 10, 2013, states that he *did* receive responses from the OIG as to each of the three requests in question. *See* Corr. 2d. Am. Compl. at 8. In fact, Mr. Pinson has provided the specific dates on which he received each response letter, and comparing those dates with the dates that the OIG asserts it responded shows that Mr. Pinson received each letter within a week of its issuance. *Compare* Corr. 2d. Am. Compl. at 8 *with* Waller Decl. ¶¶ 12, 13, 21.

"Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991). "Virtually every circuit has adopted a form of the so-called 'sham

affidavit rule,' which precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (internal quotation marks omitted).  Previously, this Court has credited statements in Mr. Pinson's declarations asserting that he had not received response letters from various DOJ components – despite the existence of contrary assertions in his verified complaint – where Mr. Pinson explained that he had received acknowledgement letters rather than final response letters, or where the date of receipt listed in Mr. Pinson's verified complaint preceded the date of the agency's response such that it appeared that the contradictory assertion in Mr. Pinson's complaint may have been the result of confusion.  *See Pinson v. U.S. Dep't of Justice*, No. CV 12-1872, 2014 WL 4724379, at *4 (D.D.C. Sept. 24, 2014); *Pinson v. U.S. Dep't of Justice*, No. CV 12-1872, 2014 WL 4825255, at *6 (D.D.C. Sept. 30, 2014).  In this instance, however, Mr. Pinson has not provided the Court with any reason whatsoever "for believing the supposed correction is more accurate than the prior testimony."  *See United States v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 347 (D.D.C. 2012).

In light of the direct contradiction between Mr. Pinson's sworn statements, and in the absence of any reason to believe that the blanket denial of receipt in Mr. Pinson's declaration is more accurate than his prior statements regarding the date he received each response letter from the OIG, the Court finds that Mr. Pinson's prior sworn statement is controlling.  *See Pyramid Sec. Ltd.*, 924 F.2d at 1123.  Accordingly, because Mr. Pinson does not dispute either that he received the OIG's responses or that he failed to appeal them, the Court grants summary

judgment in favor of the DOJ as to Request Nos. 11-OIG-150, 12-OIG-09, and 13-OIG-206 on the grounds that Mr. Pinson failed to exhaust administrative remedies.[8]

## B.  Request No. 11-OIG-15: Adequacy of Search

The DOJ seeks summary judgment as to Request No. 11-OIG-15, which contained two parts, on the grounds that it conducted an adequate search for both portions of the request and that it released responsive documents.  In Part One of his request, Mr. Pinson sought "all documents… relevant to myself generated after June 1, 2009," and in Part Two, he sought "all documents relevant to the investigation or prosecution of Case No. 07-CR-00273 in the U.S. District Court for the Eastern District of New York."  Waller Decl. Ex. 3.  Although the OIG was unable to locate documents responsive to Part Two of the request, it claims to have released those records to Part One of the request to Mr. Pinson after making appropriate redactions.  *Id.* at ¶ 10.

An agency seeking summary judgment has the "burden to demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *See Wilbur*, 355 F.3d at 678 (internal citations omitted).  Accordingly, "the adequacy of a search is not determined by its results, but by the method of the search itself."  *See Negley v. FBI*, 658 F.Supp.2d 50, 56 (D.D.C. 2009) (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.

---

[8]      Because the Court finds that Mr. Pinson failed to exhaust administrative remedies as to these three requests, it will not address Mr. Pinson's arguments as to the merits of each claim.  *See* Pl.'s Resp. at 5–6 (arguing that as to Request No. 11-OIG-150, the BOP did not have the authority to require him to pay fees); *id.* at 6 (arguing that the agency's search in response to Request No. 12-OIG-09 could not have been thorough because he was able to find responsive documents on the agency's website); *id.* at 5 (arguing that the agency's "no records" response to Request No. 13-OIG-206 is incredible because he has personal knowledge that responsive documents exist).  "The FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review," *Hidalgo*, 344 F.3d at 1259, and subjecting Mr. Pinson's unexhausted claims to judicial review would undercut the purposes of exhaustion, "namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review," *id.* (internal quotation marks omitted).

Cir. 1984)).  Agencies are not required to search every record system in which a responsive

record may be found, but neither can they ignore a particular record system that is likely to

produce responsive records.  *See Negley*, 658 F.Supp.2d at 56 (citing *Nation Magazine v. United*

*States Custom Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)).

 To show the reasonableness of a search, an agency must set forth sufficient information

in its affidavits for a court to determine that the search was adequate.  *See Nation Magazine*, 71

F.3d at 890.  The affidavits must be "reasonably detailed, setting forth the search terms and the

type of search performed, and averring that all files likely to contain responsive materials (if such

records exist) were searched."  *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C.

Cir. 1990).  Plaintiff may then provide "countervailing evidence" as to the adequacy of the

search.  *See Founding Church of Scientology of D.C. v. Nat'l Sec. Agency*, 610 F.2d 824, 836

(D.C. Cir. 1979).  However, if an agency successfully establishes the reasonableness of its

search, agency affidavits are accorded a presumption of good faith by the Court, which cannot be

rebutted by "purely speculative claims about the existence and discoverability of other

documents."  *See SafeCard Services Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing

*Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1987)).

### 1.  Part One of the Request: Documents Related to Mr. Pinson

 With respect to Part One of Plaintiff's request, which sought all documents pertaining to

Mr. Pinson that were generated after June 1, 2009, Ms. Waller states that she "conducted an

electronic search of the OIG's investigative records stored in the OIG's case management system

to determine whether the OIG had any documents responsive to Plaintiff's request."  Waller

Decl. ¶ 9.  By way of background, Ms. Waller explained that "[t]he OIG maintains separate

records relating to its investigative, audit and inspection functions."  *Id.* ¶ 2.  OIG's

"Investigative Records System" maintains "investigative records relating to complaints of misconduct received by the OIG…[which] are indexed by names of the individual subject or subjects and/or by the name of the complainant," and can be searched by the names of individuals. *See id.* ¶ 3. Separately, the OIG also maintains records on "OIG audits and inspections," which "focus on broader [DOJ] programs and operations." *Id.* ¶ 4. "[T]he OIG indexes its audit and inspection records by title, and the OIG can search these records by those titles, by audit or inspection number, or by Department component, but not by a particular individual's name or other personal identifier." Waller Decl. ¶ 4.

Ms. Waller further explained that, using Mr. Pinson's name, she searched for responsive documents in the investigative records database because "the OIG cannot search the indexes for its audit and inspection records" by name or personal identifier, and because "OIG audit and inspection records do not focus on the conduct of individuals," so there was "no reasonable likelihood" that those records contained information regarding Mr. Pinson. *Id.* ¶¶ 4, 10. Ms. Waller's search yielded documents responsive to Part One of Mr. Pinson's request and, after making partial redactions of "information pertaining to individuals other than Plaintiff pursuant to Exemptions 6 and 7(c)," the OIG provided those documents to Mr. Pinson. *Id.* ¶ 9.

The Court finds that Ms. Waller's declaration is sufficiently detailed as to Part One of Mr. Pinson's request, and it demonstrates "that the search method was reasonably calculated to uncover all relevant documents." *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) (quoting *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)); *id.* ("Affidavits that include search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient."). Ms. Waller has described with particularity

the database she searched, why it was most likely to contain responsive records, and why she

was unable to search the agency's audits and inspections database with the information that Mr.

Pinson provided.  She further explained that she searched the appropriate database using the

name that Mr. Pinson supplied, and that her search uncovered responsive documents.

Although Mr. Pinson correctly points out that Ms. Waller did not specify the exact date

that she conducted the search or the amount of time the search took, that alone in not enough to

render the declaration insufficiently detailed.  *Cf. Weisberg*, 627 F.2d at 371 (holding that agency

affidavits that "do not denote which files were searched, or by whom, do not reflect any

systematic approach to document location, and do not provide information specific enough to

enable [the requester] to challenge the procedures utilized," are insufficient to support summary

judgment).  Accordingly, the Court finds that Ms. Waller's declaration is sufficiently detailed and

that her description of the search that she performed is "consistent with both the standard of

reasonableness for an adequate search and the requirements of an agency affidavit that is to be

accorded a presumption of good faith."  *Ferranti*, 177 F. Supp. 2d at 47–48 (rejecting plaintiff's

challenge to the adequacy of a search where the agency provided a declaration describing the

databases searched and the results of each search). [9]

---

[9]      Contrary to Mr. Pinson's assertion that the declaration does not identify the
electronic system that Ms. Waller searched, here, as in *Ferranti*, the declaration identified the
database that was searched – the OIG's investigative records database – and provided a brief
description of that database.  *Cf.* 177 F. Supp. 2d at 47.  This does not mean, however, that the
declaration is without shortcomings.  For example, it does not explain whether the investigative
records database contains electronic copies of documents or solely indices that correspond to
paper files.  If the former, do the electronic files in the database also exist in a hard copy form?
If the latter, did Ms. Waller search paper files to obtain the produced documents?  These
questions are not answered by Ms. Waller's declaration.  But neither are they raised by Mr.
Pinson's opposition.  Although the Court will not *sua sponte* deem the declaration inadequate on
the basis of these unanswered questions, *see Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)
(holding that an adequate declaration need not "set forth with meticulous documentation the
details of an epic search for the requested records"), the OIG is warned that if it submits another

Mr. Pinson next argues that even if the agency's declaration is not insufficiently detailed, the search was nevertheless inadequate because it failed to locate certain responsive documents. Specifically, Mr. Pinson asserts that the records he received in response to Part One of his request refer to the existence of messages and handwritten notes that were not produced.[10]  Pinson Decl. ¶ 3.

But the fact that additional documents responsive to Mr. Pinson's requests may exist, or that the agency's searches may have been imperfect, does not mean that the searches were inadequate.  *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986); *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (asserting that the adequacy of a search is not generally determined by "the fruits of the search").  The adequacy of a search is generally determined by the reasonableness of the agency's efforts and not by the results of its search.  *See, e.g., Meeropol*, 790 F.2d at 952–53 (explaining that although undiscovered relevant records may exist, a search is not unreasonable merely because it fails to locate all relevant

---

declaration to support its actions in this case, *see infra* Part IV.B.2 (requiring the agency to conduct a new search in response to Part Two of Mr. Pinson's request), the Court expects that it will answer questions like these regarding the specific efforts that the agency took to locate responsive documents.

[10]      Mr. Pinson makes the same argument in an effort to challenge the adequacy of the agency's search in response to Request No. 12-OIG-110, but that request was not included in Mr. Pinson's complaint.  "It is well-established that a party may not amend its complaint or broaden its claims through summary judgment briefing." *District of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C. 2010); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).  Regardless, even if the Court were to consider the argument that the search as to Request No. 12-OIG-110 was inadequate because the produced materials reference other communications and handwritten notes that were not produced, it would fail. *See infra* Part IV.B.1 (rejecting that same argument as applied to Part One of Request No. 11-OIG-15).

materials); *Media Research Center v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 138 (D.D.C. 2011) ("[a]n agency's search is not presumed unreasonable because it fails to find every potentially responsive document."); *Ferranti*, 177 F. Supp. 2d at 47 ("In assessing the reasonableness of a search, a court is not guided by whether the search actually uncovered every document or whether the search was exhaustive.  The court's inquiry is limited to whether the search itself, and not the results of that search, were reasonable." (internal citation omitted)).

The fact that some disclosed documents may reference other documents that were not produced, standing alone, does not foreclose a grant of summary judgment to the government. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) ("[M]ere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail.").  Aside from stating that records released contained "references to messages sent . . . and comments that indicate the existence of handwritten notes," Pinson Decl. ¶ 3, Mr. Pinson has provided the Court with no information that casts doubt on the adequacy of the agency's search or that rebuts the presumption of good faith afforded to the agency's declaration.  He has not provided the Court with the references or comments in question, or described the documents at issue.

Here, as in *Steinberg*, the mere existence of unspecified "references" to additional documents, without more, in insufficient.  The fact that potentially responsive documents may have existed without being produced does not disturb the Court's finding that the search in question was sufficiently thorough and reasonable under the circumstances.  Accordingly, the

Court will grant the DOJ's motion for summary judgment as to Part One of Request No. 11-OIG-15.

### 2. Part Two of the Request: Records Related to New York Case

As to Part Two of Request No. 11-OIG-15, which requested documents "relevant to investigation or prosecution of Case No. 07-CR-00273 in the U.S. District Court for the Eastern District of New York," Ms. Waller states that she "personally searched OIG's investigative records database using the case number provided by Plaintiff for any information having to do with said case." *See* Waller Decl. ¶ 8.  Ms. Waller claims not to have found any responsive documents after performing "a thorough search," of the agency's investigative records database with the case number that Mr. Pinson provided. *Id. ¶ 8.*

What Ms. Waller does not state, however, is how she could have reasonably expected a database indexed and searchable by the names of individuals to yield any results when searched not by a name, but by a court case number.  Seemingly, Ms. Waller would have needed the names of the defendants in the case in order to have searched the OIG's investigate records database, but that information was not included in Mr. Pinson's request.[11]  *See id.* at Ex. 3.  And the OIG never asked Mr. Pinson to clarify his request or provide the appropriate names, despite the fact that DOJ FOIA regulations require agencies to contact requesters if their requests do "not reasonably describe records," telling them "either what additional information is needed or why [the] request is otherwise insufficient."  28 C.F.R. § 16.3(b) ("The component also shall give you an opportunity to discuss your request so that you may modify it to meet the

---

[11]     Mr. Pinson's FOIA request asked only for "documents relevant to investigation or prosecution of case no. 07-cr-00273 in the U.S. District Court for the Eastern District of New York."  Waller Decl. Ex. 3.  In his declaration, however, Mr. Pinson has provided the names of the defendants in that case: Salvatore Lopresti, Glen Cummings, Elizabeth Torres, and Angel Perez.  Pinson Decl. ¶ 2.

requirements of this section.").

Casting further doubt on the adequacy of the OIG's search, Mr. Pinson has come forward with evidence that the OIG did, in fact, investigate the defendants named in case number 07-00273.  *See Founding Church of Scientology of D.C.*, 610 F.2d at 835 ("The fact that nothing pertinent is found on a file search might suggest, of course, that nothing pertinent was on file, but here there is a countervailing circumstance arguing powerfully the other way.").  When discussing the factual background of the court case on appeal, the Second Circuit explained that corrections officers who used force against a prisoner in New York in 2006 were investigated by the BOP, that the BOP subsequently referred the matter to the OIG for investigation, and that the OIG's investigation "ripened into this criminal proceeding." *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009).

Given the evidence that the OIG actually investigated the defendants in case number 07-00273, that the agency seemingly searched its database in a manner not reasonably calculated to produce results, and that it failed to tell Mr. Pinson that it needed additional information to respond to his request, this Court finds that the OIG has failed to establish that its search was reasonable and adequate under the circumstances.  Accordingly, the Court will deny Defendant's motion for summary judgment as to Part Two of Request 11-OIG-15.  The agency is instructed to search its investigative records database again, this time using the names of the defendants in case number 07-00273, which were provided by Mr. Pinson in his declaration.  *See* Pinson Decl. ¶ 2.

### C.  Production of Documents Responsive to Request No. 11-OIG-49

As to Request No. 11-OIG-49, the OIG does not dispute the fact that Mr. Pinson successfully appealed its initial determination, that the agency subsequently performed a search

that located responsive documents, or that Mr. Pinson has not received those documents. *See* Waller Decl. ¶ 11. According to the DOJ, however, the agency nevertheless fulfilled its obligation to release records to Mr. Pinson because it mailed responsive documents to Mr. Pinson only to receive the package back, with a "return to sender" marking from the BOP, noting that Mr. Pinson was not housed at the listed address. *See id.*

As Mr. Pinson correctly notes, however, the exhibit attached to the OIG's motion for summary judgment purporting to show that the agency's response to Request No. 11-OIG-49 was "returned to sender" is actually a letter from Mr. Pinson related to Request No. 11-OIG-150. *See* Def.'s Mot. at 5; Waller Decl. Ex. 7. A "returned to sender" notification from the BOP is nowhere to be found among the DOJ's exhibits. Mr. Pinson also asserts that his prison address remained unchanged during the period of time in question, and that the BOP never informed him that it rejected any mail from the OIG as required by 28 C.F.R. § 540.13. Pinson Decl. ¶ 4.

The Court finds that there is a genuine issue of material fact regarding the agency's failure to provide Mr. Pinson with its response to his FOIA request. *See* 5 U.S.C. §552(a)(6)(A)(i) (requiring that "[e]ach agency, upon any request for record . . . shall . . . determine within 20 days . . . after the receipt of any such request whether to comply with such request and *shall immediately notify the person making such request* of such determination"); *Jones*, 576 F. Supp. 2d at 67 ("Without proof that Jones received the letter, and in the face of Jones' statement under penalty of perjury to the contrary, and given the number of individuals and agencies involved in the chain of this disputed communication, it cannot be said that the evidence is so one-sided that one party must prevail as a matter of law." (internal quotation marks omitted)).

The OIG admits that it has located documents responsive to Request No. 11-OIG-49, and that Mr. Pinson has yet to receive those documents.  And although the DOJ appears to believe that one attempt at mailing a response package to Mr. Pinson satisfies the agency's obligations under FOIA, it has failed to produce the exhibit on which it relies to show that the mailing ever occurred. [12]  This is particularly troubling in light of the fact that Mr. Pinson's response brief identified the problem with exhibit 7, *see* Pl.'s Resp. at 4, and the DOJ's reply brief offers no argument or explanation on the subject.  *See* Def.'s Reply, ECF No. 82.  Mr. Pinson, however, has declared under penalty of perjury that he not only did not receive the OIG's response package, but also that he received no notification from BOP that the package was rejected.  Pinson Decl. ¶ 4.

On these facts, it is far from clear that the OIG has "properly released records to Plaintiff," *see* Def.'s Mem. at 13, and the Court will deny the DOJ's motion for summary judgment as to Request No. 11-OIG-49.[13]  Moreover, because the DOJ does not dispute that the request was proper or that the OIG's search uncovered documents responsive to FOIA Request No. 11-OIG-49, the agency is instructed to provide those responsive documents to Mr. Pinson.  *See Ogelsby*, 920 F.2d 57, 64 (D.C. Cir. 1990) (explaining that an agency's failure to respond to

---

[12]     Given the agency's failure to produce any evidence showing that the response package was received at Mr. Pinson's address even one time, this Court need not reach the question of how many times an agency is obligated to attempt mailing when its response is returned to sender.  *See Harvey v. Dep't of Justice*, 747 F. Supp. 29, 34 (D.D.C. 1990) (describing an agency that made multiple mailing attempts on its own initiative, but not addressing whether the agency was under a legal obligation to do so).

[13]     This Court is perplexed by the DOJ's decision to litigate a claim where a FOIA requester prevailed on his administrative appeal, the OIG admits that it found documents responsive to the request, and it is undisputed that the agency has yet to provide the requester with those responsive documents.  Mr. Pinson remains incarcerated by the BOP, and his location is hardly a mystery to the government.  Why the agency did not simply re-send the documents to Mr. Pinson upon receiving his complaint is puzzling to say the least.

a FOIA request within the applicable time limits "allows immediate recourse to the courts to compel the agency's response").

### D.  Glomar Response: Request No. 12-OIG-257[14]

With respect to Request No. 12-OIG-257, seeking information regarding Mr. Jamil Abdullah Al-Amin, the OIG contends that it properly denied the request on December 4, 2012, by issuing a "*Glomar*" response, refusing to confirm or deny the existence of records.  Def.'s Mem. at 14–15, 17.  The agency argues that the denial was proper because the request sought investigatory records of a third-party without either Mr. Al-Amin's consent or an overriding public interest justification for release of his records.  *Id.*; *see also* Waller Decl. ¶ 16; *id.* at Ex. 17.  Mr. Pinson protests that the agency's refusal to do a search was improper because "the OIG was provided a From 361," showing Mr. Al-Amin authorized the OIG to disclose his records to Mr. Pinson.  Pl.'s Resp. at 5.

"[D]isclosure, not secrecy, is dominant objective of [FOIA]."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).  "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)).  Under Exemption 7(C), an agency is exempt from producing "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or

---

[14]       The Waller declaration asserts that Mr. Pinson had an appeal of this request pending that was administratively closed on February 8, 2013, due to the filing of his lawsuit. *See* Waller Decl. ¶ 16.  However, the DOJ does not argue that Mr. Pinson failed to exhaust his administrative remedies as to this request.  Because the failure to exhaust administrative remedies is "a prudential consideration, rather than a jurisdictional prerequisite," *Wilbur*, 355 F.3d at 677, it is subject to waiver.  The Court finds that the DOJ has waived any administrative exhaustion argument applicable to Request No. 12-OIG-257 by failing to raise the argument in its motion.

information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As a general rule, the D.C. Circuit has recognized that "the targets of law-enforcement investigations . . . have a substantial interest in ensuring that their relationship to the investigations remains secret." *Roth v. United States*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (quoting *Schrecker v. U.S. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003)) (internal quotation marks omitted). The interest is substantial because "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987). If revealing the existence of records would cause harm cognizable under exemption 7(C), an agency may refuse to confirm or deny the existence of such records by issuing a *Glomar* response. *See Nation Magazine*, 71 F.3d at 894 n.8.

However, personal privacy exemptions are not insurmountable. They may be overcome either by a waiver signed by the third person whose privacy interest is at stake, *see Milton v. U.S. Dep't of Justice*, 596 F. Supp. 2d 63, 65 (D.D.C. 2009), or by showing that the public interest in disclosure outweighs the privacy interest of the third party*, see Martin v. Dep't of Justice*, 488 F.3d 446, 453 (D.C. Cir. 2007). Here, Mr. Pinson does not dispute that if the OIG did in fact investigate Mr. Al-Amin, he is presumed to have a substantial interest in ensuring that the OIG keeps the fact of his investigation a secret. Neither does he suggest that there is any public interest in the disclosure of such records that could outweigh Mr. Al-Amin's privacy interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (requiring a plaintiff to show (1) "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake"; and (2) that "the information is likely to advance that interest"). He does, however, assert that the OIG "improperly refused to do a

search" because "the OIG was provided with a From 361" showing that Mr. Al-Amin authorized release of his records.  Pl.'s Resp. at 5.

To support his assertion that the OIG's *Glomar* response was improper, Mr. Pinson has provided two exhibits.  The first is Mr. Pinson's declaration, which asserts that he "sent OIG a properly executed DOJ Form-361 but they never responded to my request for reprocessing." Pinson Decl. ¶ 5.  The second is an affidavit from Mr. Al-Amin, signed on March 10, 2014, asserting that he submitted a certificate of identity for the request and that he authorized the agency to release his records to Mr. Pinson.  Al-Amin Aff., Pl.'s Ex. 2, ECF No. 79.  However, neither exhibit suggests when Mr. Pinson may have sent the consent form to OIG, when the agency received it, or if receipt preceded the agency's issuance of a *Glomar* response on December 4, 2012.  In fact, Mr. Pinson's declaration describes him sending a properly executed consent form in conjunction with a "request for reprocessing," Pinson Decl. ¶ 5, which suggests that Mr. Pinson did not mail the form to the OIG until after he received the *Glomar* response.

Without any evidence that Mr. Pinson sent Mr. Al-Amin's consent form to the OIG prior to its issuance of a *Glomar* response, let alone any evidence that the agency actually received the form prior to issuing its final response letter, Mr. Pinson has failed to establish that the agency's issuance of a *Glomar* response to Request No. 12-OIG-257 was improper.  *See Military Audit Project v. Case*y, 656 F.2d 724, 738 (D.C. Cir. 1981) ("Summary judgment on the basis of . . . agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.").  Mr. Pinson may again pursue this request by submitting it along with proof of Mr. Al-Amin's consent, but he has failed to establish

a genuine issue of material fact with respect to the propriety of the agency's December 2012 *Glomar* response.   Accordingly, the Court grants summary judgment to the DOJ as to Request No. 12-OIG-257.

### E.  Requests without Responses

Mr. Pinson's complaint lists six FOIA requests that he submitted to the OIG but to which he received no response.  Corr. 2d Am. Compl. at 9.  The first is a request for "information about, relating to, or which mentions myself generated after August 1, 2012."  Waller Decl. ¶ 15; *id.* at Ex. 14.  Although Mr. Pinson's complaint asserts that this was a request "to which OIG did not respond," *see* Corr. 2d Am. Compl. at 9, the OIG identified the request as Request No. 12-OIG-254, to which the agency responded by releasing the requested information on January 15, 2013.  Waller Decl. ¶ 15; *id.* at Ex. 15.  As for the remaining five requests, the OIG searched its "FOIA tracking database and was unable to locate any such requests."  Waller Decl. ¶ 22.  The OIG seeks summary judgment as to the first of the six requests on the ground that it released to Mr. Pinson all responsive records, redacted in accordance with Exemptions (b)(6) and (7)(C), and that he failed to appeal this determination to OIP.  *See* Def.'s Mem. at 15–17.  As to the remaining five requests, the OIG contends that summary judgment is appropriate because it has no record of having received the requests.  *See id.* at 8.

As "federal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records," *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980), if there is "no showing that the agency received the request, the agency has no obligation to respond to it."  *See Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2009) (citing *Hutchins v. Dep't of Justice*, No. 00-2349, 2005 WL 1334941, at *1-2 (D.D.C. June 6, 2005)).  *See also Trupei v. Bureau of Customs & Border Prot.,* No. 07-0475,

2008 WL 249878 at *2 (D.D.C. Jan. 29, 2008) ("[A]n agency's FOIA obligations are not triggered until a request has been received.).  In order to create an issue of material fact, a plaintiff must offer evidence that the requests were received by the agency, rather than merely stating that the requests were placed in the mail.  *See Banks*, 539 F. Supp. 2d at 235 ("The mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency."). Here, not only has Mr. Pinson failed to provide any evidence of receipt of these requests by OIG, Mr. Pinson's opposition fails to mention these requests at all.

The same is true of Request No. 12-OIG-254.  In the face of the OIG's evidence that the request was received, responded to, and not appealed, Mr. Pinson has not only failed to come forward with contradictory evidence, he has abandoned the claim entirely.  *See* Pl.'s Resp. at 5 (arguing that he never received a response to Request Nos. 13-OIG-206, 11-OIG-150, and 12-OIG-09, but making no mention of Request No. 12-OIG-254).

As this Court has explained, "when a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded," *Sykes,* 573 F. Supp. 2d at 202.  The Court therefore deems conceded the DOJ's motion for summary judgment as to these six requests.

### F.  Adequacy of Defendant's Vaughn Index

Mr. Pinson's final argument in opposition to the DOJ's motion for summary judgment is a general complaint that the "[Defendant's] Vaughn Index is vague, nonspecific and conclusory and must be supplemented," and that "the names of DOJ employees are not exempt from disclosure."  Pl.'s Resp. at 6.  The Court disagrees.

A Vaughn Index must "provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular

part of a withheld document to which they apply." *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 146 (D.C. Cir. 2006). Here, the OIG's Vaughn Index does just that. It states a "brief description of the document" at issue, notes the number of pages in the document and the FOIA request to which it applies, identifies the exemptions asserted and provides a "description of the withheld information." *See* Vaughn Index, Def.'s Ex. 27 at 67–75, ECF No. 62-3. For example, the index describes information redacted from one document on the basis of personal privacy pursuant to Exemptions (6) and (7)(c) as "the names of third parties and identifying information such as address, telephone number, date of birth, social security number," and "the name of a lower-level DOJ employee." *Id.* at 67. While the rationale for withholding the information is brief, it suffices under the relevant standard. *See Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979) (holding that so long as a Vaughn index is "one document, complete in itself," it adequately described "each withheld document or deletion," and it states "the exemption claimed" as well as "why it is relevant . . . it does not matter whether the index is presented as a table with entries").

Mr. Pinson also takes issue with the fact that the OIG's Vaughn Index reflects that the agency withheld names of DOJ employees pursuant to Exemption 6. Pl.'s Resp. at 6. According to Mr. Pinson, "names of DOJ employees are not exempt from disclosure," and "this issue was previously litigated and conceded by DOJ in plaintiff's last FOIA case." *Id.* Mr. Pinson directs the Court to *Pinson v. Lappin,* 806 F. Supp. 2d 230, 233 (D.D.C. 2011), where the BOP "'clarified' that the names and titles of BOP employees requested by plaintiff could be released in full." *See id.* While the BOP in that case may have chosen to release employee names, the law of this Circuit makes clear that Exemption 6 can, in fact, extend to the names of agency personnel. *See Judicial Watch Inc.,* 449 F.3d at 152 (holding that agency properly invoked

Exemption 6 in refusing to release the names of certain agency personnel).  To determine whether the OIG's decision to withhold employee names was appropriate in this instance, the Court must balance the privacy interest involved against the public interest in disclosure of the withheld information.

The OIG argues that its employees have significant privacy interests in their names, which appeared in documents concerning "allegations of work-related conduct," the disclosure of which could "subject them to unwanted contact or harassment."  Def.'s Mem. at 16.  It reasoned that "the public's interest in this information is nil," because it "would not reveal anything about the manner in which the agency conducts its activities nor disclose any wrongdoing on the part of the agency."  *Id.*   The concern that agency employees would be harassed if their names were disclosed "tilts the scale" in a case such as this, where the plaintiff has not asserted a significant public interest in the release of the information.  *See Judicial Watch Inc.*, 449 F.3d at 153.  Indeed, Mr. Pinson has not identified any public interest in the release of these names.

As such, the Court finds that the OIG's Vaughn index is adequate, and denies Mr. Pinson's request for supplementation.

## V.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the DOJ's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 19, 2015                                RUDOLPH CONTRERAS
                                                      United States District Judge