# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON,       :
             :
  Plaintiff,       :   Civil Action No.:  12-1872 (RC)
             :
  v.         :   Re Document Nos.: 113, 125, 136
             :            140, 145, 152
U.S. DEPARTMENT OF JUSTICE, *et al.*,  :
             :
  Defendants.      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR A PROTECTIVE ORDER OR APPOINTED COUNSEL AND SANCTIONS, AND DENYING PLAINTIFF'S SECOND MOTION FOR SANCTIONS, PLAINTIFF'S MOTION TO COMPEL PRODUCTION OR TO APPOINT COUNSEL, PLAINTIFF'S MOTION FOR SANCTIONS FOR MISLEADING THE COURT, PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE, AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## I.  INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson is currently an inmate at ADX Florence, a federal maximum-security prison in Colorado.  On November 15, 2012, Mr. Pinson initiated a lawsuit against the U.S. Department of Justice ("DOJ"), alleging that various branches of the DOJ had improperly withheld records from him in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  In the course of litigating his FOIA and Privacy Act claims, Mr. Pinson has filed a series of motions seeking sanctions, a protective order, appointment of counsel, an order to show cause, production of documents, and a preliminary injunction.  For the reasons detailed below, the motions will be denied with the exception of Mr. Pinson's request for appointed counsel.

## II.  FACTUAL BACKGROUND

### A.  September 2014 Motion for Protective Order, Appointment of Counsel, and Sanctions

On September 26, 2014, Mr. Pinson filed a motion seeking to prevent the Bureau of
Prisons ("BOP") from denying him materials relevant to his FOIA litigation and to require the
BOP to deliver withheld correspondence from the Federal Bureau of Investigation ("FBI") and
Office of Inspector General ("OIG").  *See* Pl.'s Mot. for Protective Order or Appointed Counsel,
ECF No. 113, Exs. 1-2.  Mr. Pinson argues that the BOP's refusal to allow him to access these
documents prohibited him from "filing an appeal and exhausting his administrative remedies,"
and he seeks a protective order to correct and prevent such behavior.  Pl.'s Mot. for Protective
Order or Appointed Counsel at 5.  Alternatively, Mr. Pinson requests the appointment of counsel
under 28 U.S.C. § 1915(e), and he seeks sanctions for Defendants' failure to comply with an
Order of this Court that required Defendants to investigate whether another inmate had
consented to the release of his records and to produce an appropriate affidavit.  *See* Mem. Order,
ECF No. 94.

### B.  November 2014 Motion for Sanctions

On November 6, 2014, Mr. Pinson filed a motion for sanctions arguing that Defendants
obstructed his FOIA litigation by failing to attach exhibits to which they referred in their filings
on October 9 and October 10, 2014.  *See* Pl.'s Second Mot. for Sanctions, ECF No. 136, at 1.
While Mr. Pinson admits that he currently has access to the exhibits and that the issue is now
moot, he still demands sanctions because, by virtue of their failure to attach the appropriate
exhibits, Defendants filed a "materially false Certificate of Service with the Court."  Pl.'s Reply
to Defs.' Opp'n to Pl.'s Mot. for Sanctions, ECF No. 146, at 1.  In addition, Mr. Pinson argues
that Defendants have denied him his First Amendment right of access to the courts by

obstructing his ability to research cases to respond to dispositive motions. *See* Pl.'s Second Mot. for Sanctions at 3. He alleges that Defendants have violated the First Amendment by requiring a court order before he can print from prison computers. *See* Pl.'s Second Mot. for Sanctions, Ex. A.

### C. October 2014 Motion to Compel Production or Appoint Counsel & November 2014 Motion for Sanctions for Misleading the Court

On October 20, 2014, Mr. Pinson filed a motion to compel production of his "legal property" that was in his possession before his transfer from ADX Florence to MCFP Springfield, an administrative security federal medical center in Missouri.[1] *See generally* Pl.'s Mot. to Compel Produc. or to Appoint Counsel, ECF No. 125. Mr. Pinson stated that he needed the improperly withheld property to respond to the Defendants' dispositive motions. Alternatively, Mr. Pinson once again requested appointment of counsel under 28 U.S.C. § 1915(e)(1). *Id.*

Seven days later after filing the motion, however, Mr. Pinson obtained his legal files, signing a property record to acknowledge receipt. *See* Krider Decl. ¶ 3, ECF No. 134-1; Property Record, ECF No. 134-1, Ex. A. Mr. Pinson nevertheless argues that he did not obtain all of his possessions because he only had access to one cubic foot of property—the remainder of which prison staff placed in storage bins. *See* Pinson Decl., ECF No. 140, Ex. 1; BOP Program Statement 1315.07, ECF No. 144-1, Ex. A. He therefore filed a motion seeking sanctions against Defendants for misleading the Court by asserting that "the property in question has been

---

[1] Mr. Pinson was first incarcerated at ADX Florence before receiving an emergency commitment to MCFP Springfield on October 8, 2014. He returned to ADX Florence on April 3, 2015.

delivered to [P]laintiff at his new facility." *See* Pl.'s Mot. for Sanctions for Misleading the Ct. (quoting Defs.' Mem. of P. & A. in Opp'n to Pl.'s Mot. to Compel Produc. at 1).

### D.  December 2014 Verified Motion for Order to Show Cause

On December 8, 2014, Mr. Pinson filed a motion asserting that he had not received two of Defendants' motions for partial summary judgment, ECF Nos. 131 and 137, and that he only learned of their existence after Defendants filed a motion for an extension of time concerning these documents on December 3, 2014.  *See* Pl.'s Verified Mot. for Order to Show Cause, ECF No. 145, at 1.  Mr. Pinson asks that the Court order that the documents be served upon him by certified mail, or alternatively, that the Court strike the motions for violating Federal Rule of Civil Procedure 5.  *Id.*

### E.  January 2015 Motion for Preliminary Injunction

On January 5, 2015, Mr. Pinson filed a motion for a preliminary injunction to prevent the BOP from denying him service of FBI correspondence that is responsive to his FOIA applications.  *See* Pl.'s Mot. for Prelim. Inj., ECF No. 152, at 1.  On December 19, 2014, Mr. Pinson received a letter from the FBI stating that some of the records he had requested under FOIA had been returned to the FBI, as they were forbidden within MCFP Springfield.  *See id.*; Hardy Letter, ECF No. 152, Ex. 3; Pinson Decl. ¶ 3, ECF No. 152; Pl.'s Reply to Defs'. Opp'n to Pl.'s Mot. for Prelim. Inj. ¶ 2, ECF No. 159.  As a result, Mr. Pinson claims that Defendants violated FOIA and have impeded his ability to respond to their summary judgment motion, ECF No. 147.  Because he cannot access certain legal materials, Mr. Pinson additionally argues that Defendants have deprived him of his First Amendment right of access to the courts.  *See* Pl.'s Mot. for Prelim. Inj. at 2.  He therefore asks the Court to (1) compel Defendants to deliver all

FBI documents that they previously denied him and (2) to enjoin Defendants from refusing him

access to any future materials without leave of this Court.  *See* Pl.'s Mot. for Prelim. Inj. at 4.

## III.  ANALYSIS

**A.  Mr. Pinson's Request for Protective Order or Appointment of Counsel: ECF No. 113**

In their opposition to Mr. Pinson's September 2014 motion for a protective order, ECF

No. 113, Defendants argue that they may reject any mail classified as "general correspondence"

in order to ensure the security of federal prisons and to preclude criminal activity.  *See* Defs.'

Reply to Pl.'s Mot. for Protective Order or Appointed Counsel, ECF No. 120, at 1-2.  Because

the FBI and OIG documents did not qualify under the BOP's definition as "special mail,"[2] and

instead constituted general correspondence, Warden Hall rejected the materials at issue because

they contained information of an inmate who is not a co-defendant, *see* Hall Decl. ¶¶ 1, 4, 7-9,

Ex. C, and information that could compromise staff at ADX Florence.  *See id.* at Ex. D.  Pursuant

to BOP policy, Warden Hall informed Mr. Pinson, the FBI, and the OIG of the denial of

correspondence.  *Id.* ¶¶ 7-9; BOP Program Statement, ECF No. 120-1, Ex. A, at 13.  As a result,

---

[2] Pursuant to the BOP Program Statement, "special mail" encompasses "correspondence *sent to* the following: President and Vice President of the United States, the U.S. Department of Justice (including the Bureau of Prisons), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement offices, attorneys, and representatives of the news media."  28 C.F.R. § 540.12(c); BOP Program Statement at 9.  "Special mail" also consists of "correspondence *received from* the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts."  28 C.F.R. § 540.12(c); BOP Program Statement at 10.

.

the Defendants argue that the Court should deny Mr. Pinson's motion for a protective order because the BOP's decision was consistent with its security policy.  *See* Defs.' Resp. to Pl.'s Mot. for Protective Order or Appointed Counsel at 6.

Mr. Pinson argues that a protective order is necessary to prevent any unnecessary disruption of his FOIA suit and to allow government agencies to comply with their FOIA obligations.  Pl.'s Mot. Protective Order at 5.  But whether the FBI and OIG correspondence must be disclosed pursuant to FOIA is a separate matter from whether Mr. Pinson, who is incarcerated, is entitled under BOP rules and regulations to possess the correspondence at issue while he is incarcerated.  *See Sample v. Bureau of Prisons*, 466 F.3d 1086, 1089 (D.C. Cir. 2006) (determining that BOP's role as producer of records under FOIA was distinct from its role as a custodian of inmates, and that as long as the necessary records were produced, the BOP's subsequent decision to "prohibit access to the material" was a separate matter).  Accordingly, this Court will not insert itself into the security decisions of BOP personnel in Colorado who determine what information Mr. Pinson may receive according to BOP and institution principles. If Mr. Pinson wishes to challenge those decisions, he must do so in Colorado.

The Court will, however, grant Mr. Pinson's alternative request for the appointment of counsel for the limited purpose of reviewing correspondence withheld by the BOP and determining compliance with FOIA.  Mr. Pinson has explained that because he cannot see those FOIA responses withheld by the BOP, he is unable to identify any possible deficiencies in the responses or problems with asserted exemptions, and he is thus prevented from properly litigating those FOIA claims. Pl.'s Mot. Protective Order at 5.  Defendants agree that Mr. Pinson's assertions are accurate, and argue that appointing counsel for the limited purpose of reviewing the FOIA responses and challenging any alleged deficiencies would be appropriate

and in the interests of justice. Defs.' Reply to Pl.'s Mot. for Protective Order or Appointed

Counsel at 7–8. Defendants explain that because the BOP's mail policy prohibits Mr. Pinson

from accessing some documents responsive to his FOIA requests, it "acts as a bar to the

resolution of the action as to the documents withheld by the BOP," and they suggest that counsel

could also benefit Mr. Pinson by serving as custodian of any documents that the BOP will not

allow him to possess while in prison. *See id.* The Court agrees.

   Although plaintiffs in civil cases do not have a constitutional or statutory right to counsel,

*See Willis v. FBI*, 274 F.3d 531, 532-33 (D.C. Cir. 2001), in "exceptional circumstances" when

the denial of counsel would result in fundamental unfairness, a district court may request counsel

for a plaintiff who cannot afford his own. *May v. Meeks*, No. 05-2116, 2006 WL 890671, at *1

(D.D.C. Apr. 5, 2006) (citing 28 U.S.C. § 1915(e)(1)). Relevant factors to consider in deciding

whether to appoint counsel include "the nature and complexity of the action," "the potential

merit of the pro se party's claims," "the demonstrated inability . . . to retain counsel by other

means," and "the degree to which the interests of justice will be served by appointment of

counsel." D.D.C. LCvR 83.11(b)(3)

   In the instant case, Mr. Pinson's pleadings are coherent and suggest that he is articulate

and capable of representing himself, and he has ably done so thus far in filing and responding to

a variety of motions.[3] Mr. Pinson nevertheless argues – and Defendants agree – that he requires

---

[3] Mr. Pinson has previously represented himself in approximately 180 cases before at
least 20 federal district courts and in more than 60 appeals in at least 7 different circuits. *Pinson
v. Armijo*, No. 13-CV-01567-BNB, 2014 WL 1034992, at *2 (D. Colo. Mar. 18, 2014). In
addition, Pinson states that he "has assisted over 50 BOP inmates to file lawsuits against the
BOP." Pl.'s Corrected Second Am. Compl. at 14, ECF No. 32. *See also Womack v. Berkebile*,
No. 13-CV-01866-BNB, 2013 WL 5937974, at *4 (D. Colo. Nov. 6, 2013). On one occasion,
Mr. Pinson asked a federal district court to allow him to represent another inmate, asserting that
this inmate was "incompetent and not capable of proceeding in a separate case without [his]

counsel because he is unable to see all of the records responsive to his FOIA claims.  The Court agrees that because Mr. Pinson is currently unable to view documents relevant to this litigation, and in light of the fact that a number of his FOIA claims have proven meritorious and survived Defendants' motions for partial summary judgment, appointment of counsel is appropriate and will serve the interests of justice.  *See Johnson v. Howard*, 20 F. Supp. 2d 1128, 1129 (W.D. Mich. 1998) (appointing counsel for pro se prisoner with a colorable claim that survived summary judgment because he was subject to a "prison policy . . . [that] creates an unusual barrier to adequate investigation, preparation and presentation of his claim").  Counsel will be appointed to Mr. Pinson for the limited purpose of receiving correspondence withheld by the BOP and determining compliance with FOIA.[4]

### B.  Mr. Pinson's Motions for Sanctions: ECF Nos. 113, 136

Mr. Pinson's October 2014 motion, ECF No. 113, invoked the Court's inherent power and sought to impose sanctions for the government's failure to comply with a court order.  His second motion for sanctions, ECF No. 136, again asked that sanctions be imposed, this time pursuant to both Federal Rule of Civil Procedure 11 and the Court's inherent powers, because Mr. Pinson had not received two attachments referenced in Defendants' briefs and because he was being prevented from copying cases in the law library.

It is beyond dispute that courts have the inherent power to sanction parties who disobey judicial orders and engage in bad-faith conduct that violates the integrity of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-46 (1991); *see also Shillitani v. United States*,

---

help." *Pinson v. Berkebile*, No. 12-CV-02673-BNB, 2013 WL 1127097, at *1 (D. Colo. Mar. 18, 2013).

[4] Mr. Pinson also requested the appointment of counsel as an alternative form of relief in both his October 2014 motion to compel production, ECF No. 125, and in his January 2015 motion for a preliminary injunction, ECF No. 152.  Those requests will be denied as moot.

384 U.S. 364, 370 (1966) ("[C]ourts have the inherent power to enforce compliance with their

lawful orders through civil contempt.").  Nevertheless, these inherent powers "must be exercised

with restraint and discretion," *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*,

447 U.S. 752, 764 (1980)), and inherent power sanctions are generally appropriate only when the

party seeking the imposition of sanctions has supported the request with clear and convincing

evidence.  *See, e.g.*, *Shepherd v. ABC*, 62 F.3d 1469, 1476–78 (D.C. Cir. 1995) (holding that

clear and convincing evidence is required before a court may exercise its inherent power to

impose a sanction in the form of civil contempt, attorney's fees, or dismissal of claims).  This

heightened standard of proof serves to prevent "the erroneous imposition of criminal

punishments and analogous deprivations of liberty, property, or reputation." *Id.* at 1476.

Additionally, under Federal Rule of Civil Procedure 11(b), the Court may impose

sanctions if "a pleading, written motion, or other paper ... [is] presented for any improper

purpose[;] ... the claims, defenses, and other legal contentions therein are [un]warranted by

existing law[;] ... the allegations and other factual contentions have [no] evidentiary support[; or]

the denials of factual contentions are [un]warranted on the evidence[.]" *See* Fed. R. Civ. P.

11(b).  The Court applies "an objective standard of reasonable inquiry on represented parties

who sign papers or pleadings." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533,

554 (1991).

In the instant case, Defendants admit that they failed to comply with this Court's Order

from July 10, 2014 requiring the DOJ to (1) investigate whether an interested party wanted to

execute an affidavit and to (2) provide the Court with the declaration within thirty days of the

Order's date.  *See* Mem. Order at 3; *see also* First Returned Correspondence Form, ECF No. 113,

Ex. 1.  Because Defendants' current counsel entered her appearance after the Order had issued,

Defendants argue that she was unaware of the pending Court Order.  *See* Defs.' Opp'n to Pl.'s Mot. for Sanctions, ECF No. 121.  Accordingly, Defendants requested to extend the time for compliance with the Order based upon excusable neglect.  *See id.*

On October 10, 2014, DOJ Case Manager Joseph Dunstone executed the third party's affidavit in compliance with the Court's Order and supplied the Court with both the declaration and certificate of identity.  *See generally* Dunstone Decl., ECF No. 121-1; Certification of Identity, ECF No. 121-1, Ex. A.; Al-Amin Aff., ECF No. 121-1.  As a result, even though Mr. Pinson did not receive the affidavit by the Court's specified deadline, he now has it in his possession.  *See id.*  For this reason, this Court will deny Mr. Pinson's motion for sanctions (ECF No. 113) on the basis of noncompliance with a Court Order as moot.  Although Defendants' action was delayed, they complied with this Court's Order.  Such inadvertent tardiness due to Defendants' change of counsel amounts to excusable neglect and, given their subsequent compliance with this Court's order, it does not merit sanctions.  *See Guantanamera Cigar Co. v. Corporacion Habanos, S.A*., 750 F. Supp. 2d 31, 34 (D.D.C. 2010) ("The sole purpose of civil contempt sanctions is to 'coerce compliance or compensate a complainant for losses sustained,' not to punish." (quoting *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C.Cir.2009))).

Likewise, the Court will deny as moot Mr. Pinson's second motion for sanctions, ECF No. 136, to the extent that it is based on Mr. Pinson's failure to receive service copies of two attachments filed with the government's briefs.  While Mr. Pinson argues that he did not receive two attachments to Defendants' October 9 and October 10 filings along with Defendants' briefs, Defendants resolved the issue eleven days after Mr. Pinson filed his motion for sanctions by having a correctional counselor hand deliver the missing documents to him.  Hutchinson Decl. ¶¶ 3-4, ECF No. 139-1, Ex. A; *see* Letter from Damon W. Taaffe, Assistant U.S. Attorney, to

Jeremy Pinson (Nov. 17, 2014), ECF No. 139-1, Ex. A, Attach. A.  Mr. Pinson admits that the issue of service as to the attachments is now moot, and he does not offer any clear evidence that Defendants acted in bad faith by failing to send him two attachments contemporaneously with their brief.  *See generally* Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Sanctions at 1.  And to the extent that Mr. Pinson's motion for sanctions is premised on a Rule 11 violation in the form of a misrepresentation in Defendants' certificate of service, sanctions are inappropriate in light of Defendants' prompt action to correct any misstatement.  *See* Fed. R. Civ. P. 11 (providing that a motion for sanctions must not be filed with the court if the challenged contention "is withdrawn or appropriately corrected within 21 days of service").  Accordingly, the Court finds that sanctions are not warranted.

Mr. Pinson's second motion for sanctions also argues that sanctions are appropriate because a BOP employee told him that he could not copy cases from the law library without a court order, thereby inhibiting his ability to research cases and violating both BOP policy and the First Amendment.  Pl.'s Mot. Sanctions at 2–3.  Defendants argue that Mr. Pinson is only denied copies of case law because he chooses not to pay for them, which is a standard BOP requirement applicable to all prisoners.  *See* Larsen Decl. ¶ 3, ECF No. 139-2, Ex. B.  Since 2010 when MCFP Springfield transitioned to an electronic law library, Defendants maintain that the BOP has required inmates to pay for printouts; thus, those who have insufficient funds are unable to obtain hard copies from the library.  *See id.*  Defendants also show that Mr. Pinson visited the law library at Springfield on five separate occasions, and they maintain that the BOP has not denied Mr. Pinson sufficient access to legal research.  *Id.* ¶ 5; Library Log Book, ECF No. 139-2, Ex. B, Attach. A.

Mr. Pinson protests that Defendants misrepresent the situation in their opposition to his motion because he cannot afford to pay for printouts, and because there is no printer in his law library to receive hard copies of cases, so even if he had money he could not print cases. Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Sanctions at 1-2. He further points out that there is no surface upon which he can take notes. *Id. See* Defs.' Mem. of P. & A. in Opp'n to Pl.'s Second Mot. for Sanctions, ECF No. 139 at 2. Nevertheless, Mr. Pinson's allegations do not satisfy the high burden required to impose sanctions. First, Mr. Pinson's motion invokes *Lewis v. Casey*, 518 U.S. 343, 351 (1996) to suggest that the BOP is violating his First Amendment rights, and that this "flagrant disregard of the law" should be sanctioned, but he never explains why he believes that sanctions are an appropriate remedy for an alleged violation of his First Amendment rights. *See* Pl.'s 2nd Mot. Sanctions at 3. *Lewis*, moreover, explains that inmates do not have "an abstract, freestanding right to a law library," and an inmate must prove that his library's inadequacies "hindered his efforts to pursue a legal claim." *Id.* For instance, an inmate can demonstrate that he was unable to file a complaint or that a court dismissed his complaint because he did not meet a technical requirement due to deficiencies of the prison's library or legal assistance program. *Id.* Prisoners, however, have no constitutional right to "transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The Constitution only necessitates that prisoners be able to voice their complaints with the courts, and it does not afford them the ability to conduct general research for their claims. *Id.* at 360.

In the instant case, Defendants have given Mr. Pinson access to the law library pursuant to *Lewis*. He has no constitutional right to printouts of case law. *See id.* at 360. Mr. Pinson also has not shown that he is being treated differently than any other inmate at MCFP Springfield

who relies upon digital access to cases.  Thus, even if the violation of Mr. Pinson's First
Amendment rights could support a motion for sanctions, the Court finds that Mr. Pinson has
failed to establish a constitutional violation and that sanctions against Defendants are not
warranted.  Moreover, to the extent that Mr. Pinson seeks injunctive relief for this claim, such a
claim is moot because he is no longer held at MCFP Springfield.

### C.  Mr. Pinson's Motion to Compel Production & Motion for Sanctions for Misleading the Court: ECF Nos. 125, 140

Defendants ask the Court to deny Mr. Pinson's October 20, 2014 motion to compel
production of his property, ECF No. 125, as moot because Mr. Pinson obtained the files at issue
on October 27, 2014, and he signed an acknowledgement form as proof of receipt.  *See Krider
Decl.* ¶ 3; *see generally* Property Record.  In response, Mr. Pinson filed another motion for
sanctions on November 20, 2014, ECF No. 140, arguing that Defendants' opposition to his
motion to compel production was misleading because: (1) he only received property that "he was
allowed to have," not all of his property; (2) he could have in his custody a mere one cubic foot
of property, and thus he was not able to possess all of his legal documents; and (3) he signed the
acknowledgement form under duress and in an effort to avoid confrontation.  *Id.* at 1-2.  As a
consequence, Mr. Pinson again seeks sanctions pursuant to Rule 11 and the Court's "inherent
contempt authority."  *Id.* at 1.

Defendants, however, have asserted that BOP policy at MCFP Springfield only permits
inmates in Administrative Detention to keep one cubic foot of legal materials for "security and
housekeeping reasons."  *See* Inmate Personal Property, ECF No. 144-1, Ex. B, at 9; Thrower
Decl. ¶ 3, ECF No. 144-1.  Prisoners are permitted to exchange their legal materials every week
by completing an "Inmate Request to Staff" form.  *See* Thrower Decl. ¶ 4.  And on November

24, 2014, the property officer granted Mr. Pinson's request to rotate his property.  Thrower Decl. ¶¶ 5-6; Inmate Request to Staff, ECF No. 144-1, Ex. C.  If Mr. Pinson wishes to challenge the operative institutional regulations, Defendants argue, he must do so using the administrative process and not via a motion for sanctions.  By way of reply, Mr. Pinson disputes his ability to exchange his legal materials weekly, *see* Thrower Decl. ¶ 4, alleging that the property officer only replied to one of his seven requests to rotate legal materials.  *See* Pinson Decl. ¶ 2, ECF No. 148.

Because Mr. Pinson now has access to his legal materials, the Court will deny the motion to compel production as moot.  As to Mr. Pinson's motion for sanctions, he has not shown clear and convincing evidence of contempt that would warrant the imposition of sanctions pursuant to the Court's inherent powers.  *See United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29 (D.D.C. 2014) (holding that the party moving for a civil contempt finding "bears the initial burden of demonstrating by clear and convincing evidence that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by Defendants; and (3) Defendants failed to comply with that order").

Neither has he shown that the Defendants' statements in opposition to his motion to compel production are sanctionable under Rule 11.  "Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings."  *Brown v. FBI*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (internal quotation marks omitted).  Defendants' statement that Mr. Pinson "received and reviewed" the property at issue is supported by a declaration that further explains that Mr. Pinson "was issued the property that he was allowed to have in his possession, including his legal material."  *See* Defs.' Mem. Opp'n Mot. to Compel at 1; Krider Decl. ¶ 3.  Although Mr. Pinson argues that the statement is misleading because he was not allowed to

possess all of his legal materials at the same time, Defendants' brief does not claim that he was able to do so, and Mr. Pinson has not established that the statement in question has "no basis in law or fact." *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 23 (D.D.C. 2004). Neither has he established what, if any, effects that this alleged misstatement may have had on these judicial proceedings. *See Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 100 (D.D.C. 2007) ("The Court must also take into consideration . . . what effect, if any, the alleged violations may have had on judicial proceedings." (internal quotation marks omitted)). In short, the Court does not find that Defendants' representations in their opposition brief were so lacking in factual support as to warrant sanctions.

To the extent that Mr. Pinson's motion for sanctions is in fact premised on an alleged violation of his constitutional right of access to the courts, that claim also fails. Mr. Pinson has not established how the BOP policy that apparently applied only while Mr. Pinson was housed in Administrative Detention at MCFP Springfield, a place from which he has already been transferred, has hindered his ability to litigate this case. *See* Notice of Change of Address, ECF No. 193. In fact, the record in this case reflects that while incarcerated at MCFP Springfield, Mr. Pinson filed fourteen motions in addition to a dozen other filings. Mr. Pinson has failed to show a violation of his constitutional right of access to courts, and the Court will not award sanctions on that basis.

**D. Mr. Pinson's Verified Motion for Order to Show Cause: ECF No. 145**

In December 2014, Mr. Pinson filed a motion for an order to show cause, ECF No. 145, explaining that he had not been served with copies of two of Defendants' motions, ECF Nos. 131 and 137, and asking that the Court either order that the documents be served, preferably via certified mail, or strike the motions. In response, Defendants assert that they have mailed the

requested documents twice via regular mail to Mr. Pinson, once when they were first filed and

then again after receiving Mr. Pinson's motion alleging that he had not received them. *See*

Defs.' Opp'n to Pl.'s Verified Mot. for Order to Show Cause, ECF No. 149, at 1.  For the second

mailing, Defendants requested and obtained personal service upon Mr. Pinson, and they have

provided a copy of his witnessed signature confirming receipt of both filings. *See* Receipt of

Docs., ECF No. 149-1.  Because Mr. Pinson successfully received the court filings via USPS

regular mail, Defendants argue that re-sending documents through certified mail would be

burdensome, costly, and unnecessary. *See* Defs.' Opp'n to Pl.'s Verified Mot. for Order to Show

Cause at 1.

This Court agrees.  Requiring service on Mr. Pinson via certified mail would be unduly

burdensome when the record reflects that Mr. Pinson is receiving and responding to the vast

majority of the government's pleadings without incident, and when the government has been

quick to correct any deficiencies in service upon receiving notification of the same.  Mr. Pinson

has received the materials at issue, *see* Receipt of Docs., and the record reflects that he has

already responded to one of the government's pleadings, *see* ECF No. 153.  At no time has Mr.

Pinson been prejudiced by any of the government's shortcomings to which he alleges in his

motion.  In fact, the record shows that he has been actively litigating this matter.  Accordingly,

Mr. Pinson's motion for an order to show cause is denied.

### E.  Mr. Pinson's Motion for Preliminary Injunction: ECF No. 152

Mr. Pinson's January 2015 motion for a preliminary injunction, ECF No. 152, asserts that

the BOP has unconstitutionally denied him access to correspondence and documents sent by the

FBI that pertain to this litigation. *See* Pl.'s Mot. Prelim. Inj.  He seeks a Court order that would

allow him to possess the rejected mail and enjoin similar conduct in the future. *Id.* at 4.

Defendants, on the other hand, assert – as previously discussed in Part III.D of this Opinion – that Mr. Pinson has already received the FBI's motion at issue, ECF No. 137, and that when Mr. Pinson indicated he had not received that document, they requested personal service upon him with his witnessed signature confirming receipt. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj., ECF No. 154, at 2; ECF No. 149-1. Defendants also allege that no court filings have been returned as undeliverable. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. at 2. While the BOP rejected some FOIA-related mail as forbidden within MCFP Springfield, Defendants argue that this is a matter of BOP policy separate and apart from Mr. Pinson's FOIA action, and that in any case, the government will provide him with any of these materials if he offers an alternate delivery address. *See* Hardy Letter. In his reply, Mr. Pinson acknowledge receipt of the FBI's motion and concedes that counsel for Defendants have not engaged in any misconduct, but he argues that the BOP has still not allowed him to see certain documents produced by the FBI in response to his FOIA requests, and that it is unconstitutional for the BOP to deny him access to these materials when they are the subject of dispute in this case. Pl.'s Reply, ECF No. 159.

In reviewing a motion for a preliminary injunction, a courts must consider: "(1) the [movant's likelihood] of success on the merits; (2) the threat of irreparable injury in the absence of an injunction; (3) the possibility of substantial harm to other interested parties from the issuance of an injunction; and (4) the interests of the public." *See* Fed. R. Civ. P. 65; *see, e.g.*, *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 48 (D.D.C. 2011) (citing *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987)). As discussed above, when Mr. Pinson alerted Defendants to a deficiency in their service of process, Defendants have been very responsive in correcting it. *See* ECF No. 149-1. Mr. Pinson concedes having received the FBI's dispositive motion, ECF No. 137, and his remaining dispute centers around BOP policy that prevents inmates from receiving

certain FOIA released materials that are prohibited in the facility.  But this FOIA litigation is not the proper vehicle for Mr. Pinson to challenge BOP security policies.

According to Mr. Pinson's own exhibit, the FBI informed him that it was willing to re-send the documents at issue if he gave them an alternate address, and Mr. Pinson has not suggested either that he is unable to designate a non-incarcerated individual to serve as custodian of any such documents or that such an arrangement would unduly interfere with his ability to litigate his claims before this Court.  Once the appointed counsel described above enters his or her appearance, Mr. Pinson can have the previously denied materials sent to his counsel.  As a consequence, the Court finds that Mr. Pinson has not shown a threat of irreparable injury in the absence of an injunction.  However, given Mr. Pinson's concerns about occasional lapses in service, the Court will not deem as conceded any motion without giving him opportunity to respond.  Therefore, the Court will deny Mr. Pinson's motion for a preliminary injunction.

## IV.  CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part Plaintiff's Motion for a Protective Order or Appointed Counsel and Sanctions, and denies Plaintiff's Second Motion for Sanctions, Plaintiff's Motion to Compel Production or to Appoint Counsel, Plaintiff's Motion for Sanctions for Misleading the Court, Plaintiff's Verified Motion in Order to Show Cause, and Plaintiff's Motion for a Preliminary Injunction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 15, 2015                                        RUDOLPH CONTRERAS
                                                            United States District Judge