# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | Re Document No.: | 170 |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson is currently an inmate at ADX Florence, a federal prison located in Colorado. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, DOJ has asked Mr. Pinson to clarify his records requests, told him that it could not find records that are responsive to his requests, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that DOJ improperly withheld numerous records from him in violation of FOIA. In response, DOJ has filed several pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

Now before the Court is DOJ's motion for partial summary judgment as to Mr. Pinson's numerous FOIA claims against DOJ's Executive Office of the United States Attorneys ("EOUSA"). *See generally* Defs.' Mot. Partial Summ. J., ECF No. 170. Mr. Pinson claims that

the EOUSA responded to 21 numbered FOIA requests that he submitted between 2010 and 2013, but that it unlawfully "refused to produce records" corresponding to those requests.  *See* Corr. 2d Am. Compl. at 10–11, ECF No. 32.  Mr. Pinson further claims that the EOUSA failed to respond to 21 unnumbered FOIA requests during the same time period.  *See id*. at 11–12.  DOJ's motion for partial summary judgment addresses 18 of the numbered claims[1] and all 21 unnumbered claims, and argues: (1) as to the 21 unnumbered requests, that there is no record of Mr. Pinson having properly submitted them; (2) as to 15 of the numbered requests, that Mr. Pinson failed to exhaust his administrative remedies; and (3) as to the remaining three requests (and in the alternative for the 15 requests for which DOJ claims Mr. Pinson failed to exhaust his administrative remedies), that the EOUSA responded in accordance with FOIA by conducting an adequate search for responsive documents and releasing any non-exempt information to Mr. Pinson.  *See generally* Defs.' Mem. Supp. Mot. for Partial Summ. J., ECF No. 170–1 (hereinafter "Defs.' Mem. Supp.").

For the reasons stated below, the Court will grant in part and deny in part DOJ's motion for partial summary judgment.

---

[1] Although DOJ states in its motion that it has moved for summary judgment with respect to 19 of the numbered requests, only 18 numbered requests are specifically identified in its memorandum.  *See id.* at 2. The discrepancy seems to arise from the fact that Mr. Pinson's Second Amended Complaint lists Request No. 13-1085 twice.  *See* Corr. 2d Am. Compl. at 10. Thus, only 18 numbered requests are at issue and addressed in this memorandum opinion.  With respect to the three other numbered requests (Request Nos. 12-1754, 12-1764, and 12-3097), DOJ has not moved for summary judgment as part of this motion, *see* Defs.' Mem. Supp. Mot. for Partial Summ. J. at 2 n.1, ECF No. 170–1, nor does the docket currently reflect a separate pending motion for summary judgment as to these three requests.  Because these claims remain as-yet unaddressed, the Court will order DOJ to file a motion for partial summary judgment with respect to Request Nos. 12-1754, 12-1764, and 12-3097 on or before December 11, 2015.

## II.  FACTUAL BACKGROUND[2]

### A.  Request Nos. 12-1757, 12-1758, and 12-1760

On February 26, 2012, Mr. Pinson submitted a FOIA request for the "production of all

documents, emails, or records" for ten different cases, identified by case number, litigated by six

different U.S. Attorneys' Offices.  Luczynski Decl. ¶ 41, ECF No. 170–4.  The EOUSA split this

request into several separate requests, each of which dealt with a separate U.S. Attorney's Office.

*See* Luczynski Decl. ¶¶ 43, 46, 51; *see also* DOJ's Exs. KK, NN, TT, ECF No. 170–5.  At issue

in this memorandum are Request No. 12-1757 (requesting information regarding three cases

from the Middle District of Pennsylvania), Request No. 12-1758 (requesting information

regarding three cases from the Eastern District of Kentucky), and Request No. 12-1760

(requesting information regarding one case from the Northern District of West Virginia).  The

EOUSA sent Mr. Pinson a letter acknowledging these requests on May 23, 2012, *see* Luczynski

Decl. ¶ 42, but did not respond to the requests until sixteen months later, and only after Mr.

Pinson had filed his initial complaint on November 15, 2012, *see* Compl., ECF No. 1.  On

September 25, 2013, the EOUSA informed Mr. Pinson that the documents responsive to each of

these requests contained information concerning third parties, invoking the Privacy Act and

FOIA Exemptions 6 and 7(C).  *See* DOJ's EXs. KK, OO, TT.  The agency explained that such

information generally cannot be released absent express authorization or consent of the third

party, proof that the subject of the request is deceased, or a clear demonstration that the public

---

[2] The Court does not discuss Request Nos. 10-4127, 10-4177, 12-1751, 12-1761, 12-1762, 12-3065, 12-3094, or 12-3096 in any detail because Mr. Pinson has expressly conceded his claims related to those requests.  *See* Pl.'s Resp. at 1, ECF No. 223.   Indeed, Mr. Pinson includes those concessions in a section of his memorandum entitled "Statement of Material Facts Not in Dispute."  *Id.*  Consequently, as there is no genuine dispute as to any material fact, the Court grants DOJ's motion for summary judgment as to these requests.

interest in disclosure outweighs the third party's personal privacy interest. *See* Luczynski Decl.

¶¶ 43, 46, 51.  Mr. Pinson appealed those determinations on October 31, 2013, *id.* at ¶¶ 44, 48,

54, after he had already filed his Second Amended Complaint on October 23, 2013, claiming that

the EOUSA improperly refused to produce these records, *see* Corr. 2d Am. Compl. at 10.

## B.  Request Nos. 12-1748 and 12-1752

On February 22, 2012, Mr. Pinson submitted a request for the "production of all

documents, emails, or records located in the U.S. Attorney's Office related to" the litigation of a

number of cases in the Northern District of Alabama, Eastern District of Virginia, Southern

District of California, and the Central District of California.  Luczynski Decl. ¶ 26.  The EOUSA

acknowledged the request on May 23, 2012, *id.* ¶ 26, and split it into four separate requests.

The EOUSA assigned the request for records from the Northern District of Alabama

Request No. 12-1748, *id.* ¶ 27, but otherwise did not respond before Mr. Pinson filed his initial

complaint.[3]  The EOUSA did eventually respond on September 25, 2013, informing Mr. Pinson

that its search had revealed no responsive records.  *Id.* ¶ 28.  Mr. Pinson filed an administrative

appeal on October 31, 2013.  *Id.* ¶ 29.  Again, Mr. Pinson's appeal was filed only after he had

filed his Second Amended Complaint in this Court.

The request for records from the Southern District of California was assigned Request

No. 12-1752.  *See* DOJ's Ex. GG.  On July 20, 2012, the EOUSA informed Mr. Pinson that its

search for records in the United States Attorney's Office for the Southern District of California

---

[3] The Court does not address the Eastern District of Virginia request (Request No. 12-1751) because Mr. Pinson has expressly conceded his claim related to that request. *See supra* note 2.  Nor does the Court consider the Central District of California request (Request No. 12-1754) because the DOJ has not yet moved for summary judgment with respect to that request. *See supra* note 1.

had identified no responsive records.  Luczynski Decl. ¶ 40.  Mr. Pinson has not filed an appeal

regarding this request.  *Id.*

### C.  Request No. 12-3947

On August 10, 2012, Mr. Pinson submitted a FOIA request for information concerning

several federal cases involving a number of third parties filed in the Northern District of Georgia,

the District of Colorado, the Tenth Circuit, the District for the District of Columbia, and the

Central District of California.  *See* Luczynski Decl. ¶ 79; DOJ's Ex. QQQ.  On September 28,

2012, the EOUSA notified Mr. Pinson that it had denied the request in full, citing the Privacy

Act and FOIA Exemptions 6 and 7(C).  *See id.* ¶ 80; DOJ's Ex. RRR.  Mr. Pinson has not filed

an appeal of this determination.  *See id.*

### D.  Request No. 13-1085

By letter dated March 19, 2013, Mr. Pinson submitted a FOIA request for discovery

material concerning the federal criminal cases of third parties named Garcia and Espudo.

Luczynski Decl. ¶ 81; DOJ's Ex. SSS.  In response to this request, the EOUSA informed Mr.

Pinson that it would not release the information because such third party information was

protected under the Privacy Act and FOIA Exemptions 6 and 7(C).  *See* Luczynski Decl. ¶ 82;

DOJ's Ex. TTT.  Mr. Pinson thereafter agreed to limit the scope of his request to solely public

records.  *See* Luczynski Decl. ¶ 83.  On December 12, 2013, the EOUSA released 100 pages of

public records pertaining to his request free of charge and, upon learning that the records had not

been received, sent the documents to Mr. Pinson a second time on February 11, 2015.  Luczynski

Decl. ¶¶ 84–85.  Mr. Pinson has not filed an appeal.  *Id.* ¶ 85.  Mr. Pinson claims that his

counselor at MCF Springfield seized the records that the EOUSA sent to him on February 11,

2015, reviewed the records' contents, and refused to provide them to him.  *See* Pl.'s Resp. at 2–3,

ECF No. 223; Pinson Decl. ¶ 2, ECF No. 223 at 11.

### E.  Request No. 12-3095

Mr. Pinson submitted a FOIA request on January 16, 2012 requesting information

regarding four criminal cases in four federal districts.  *See* Luczynski Decl. ¶ 67.  The EOUSA

assigned Request No. 12-3095 to Mr. Pinson's request for information about *Chester v.*

*Unknown BOP* in the Western District of Virginia.[4]  *Id.* ¶ 70.  The EOUSA informed Mr. Pinson

on October 31, 2012 that it had conducted a search of the U.S. Attorney's Office for the Western

District of Virginia but had located no responsive records.  *Id.* ¶ 71.  Mr. Pinson filed an appeal

on November 27, 2012, but the EOUSA closed that appeal on January 23, 2013, after Mr. Pinson

had filed his initial complaint in this action.  *Id.* ¶ 72–73.

### F.  Request No. 11-3289

Request No. 11-3289 was originally remanded by DOJ's Office of Information Policy

("OIP") to the EOUSA with instructions to perform an additional search for "records pertaining

to any arrests and/or prosecutions of any federal employees at the Federal Correctional Complex

in Florence, CO and at USP Victorville located within the District of Colorado and the Central

District of California."  Luczynski Decl. ¶ 15; DOJ's Ex. J.  On February 14, 2012, the EOUSA

informed Mr. Pinson that its search for information had revealed no responsive records.

Luczynski Decl. ¶ 17.  Mr. Pinson filed an appeal on March 26, 2012.  Luczynski Decl. ¶ 18.

---

[4] The Court need not address the requests involving the other three federal districts.
Request No. 12-3094 (seeking records from the Eastern District of Kentucky about a case named
*Tomlinson v. Holder*) and Request No. 12-3096 (seeking records from the Eastern District of
North Carolina about a case named *Morris v. Jenkins*) have been conceded by Mr. Pinson.  *See*
*supra* note 2; *see also* Luczynski Decl. ¶¶ 67–68, 74–77.  As for the third request—Request No.
12-3097 (involving a case out of the Southern District of Mississippi)—DOJ has not yet moved
for summary judgment with respect to that request. *See supra* note 1.

### G.  Request No. 11-4508

Mr. Pinson submitted a FOIA request on November 9, 2011 seeking records relating

several cases filed in three federal districts, including a case in the Northern District of West

Virginia.  Luczynski Decl. ¶ 20.  The EOUSA split the request into three separate requests by

district, and the request for documents from the Northern District of West Virginia was assigned

Request No. 11-4508.[5]  *Id.* ¶ 21.  After the EOUSA informed Mr. Pinson that its first search

revealed no responsive documents, Mr. Pinson sent a letter to the EOUSA claiming that the

agency had erroneously searched for records pertaining to *him* and clarifying that he in fact

sought records related to the Bureau of Prison's defense of a federal lawsuit.  *Id.* ¶¶ 22–23;

DOJ's Ex. R.  Thereafter, the EOUSA released in full 205 pages of records.  Luczynski Decl. ¶

25.

### H.  Unnumbered Requests

Mr. Pinson's Second Amended Complaint asserts that the EOUSA did not respond to 21

unnumbered FOIA requests that he submitted between May 20, 2011 and July 30, 2012.  *See*

Corr. 2d. Am. Compl. at 11–12.  The EOUSA states that it has conducted a search of its records

for documentation of these requests, but has no record of ever receiving them.  Luczynski Decl. ¶

86.

## III.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing

---

[5] Mr. Pinson has not included any claims with respect to the other two requests
(numbered 11-4506 and 11-4507 and dealing with cases from the Northern District of Alabama
and the District for the District of Columbia, respectively) in his Second Amended Complaint.
*Compare* Corr. 2d. Am. Compl. at 10–12*, with* DOJ's Ex. P.

*Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents.  *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV.  ANALYSIS

### A.  Failure to Exhaust Administrative Remedies

Generally, a FOIA requester must exhaust his administrative remedies before filing suit. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Therefore, a requester must appeal an adverse response to his FOIA request before suing an agency in federal court.  *See Hildalgo v. FBI.*, 344 F.3d 1256, 1259–60 (D.C. Cir. 2003).  According to the statute, a requester must also allow the agency 20 business days to respond to an appeal before filing suit in federal court.  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  If a requester fails to exhaust his administrative remedies before filing suit, a court may grant summary judgment for the agency.  *See Wilbur*, 355 F.3d at 676–77.

However, because FOIA's exhaustion requirement is a prudential consideration, rather than a jurisdictional prerequisite, *see id.* at 677, a court may waive the exhaustion requirement in certain situations, including if an agency fails to respond to a FOIA request within the required number of days.  *See Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i)).  Moreover, if there is a genuine dispute of material fact on the exhaustion issue, a court may refuse to grant summary judgment for the agency.  *See Jones v. U.S. Dep't of Justice*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008).

### 1.  Request Nos. 12-1748, 12-1757, 12-1758, and 12-1760

DOJ first contends that it is entitled to summary judgment as to Request Nos. 12-1748, 12-1757, 12-1758, and 12-1760 because Mr. Pinson failed to exhaust his administrative remedies.  It is well established that once a plaintiff appeals an agency's FOIA determination, the agency has 20 business days to decide the appeal.  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  With respect to these requests, DOJ notes that Mr. Pinson filed his Second Amended Complaint on October

23, 2013, before appealing these requests roughly a week later on October 31, 2013.  Because Mr. Pinson filed his Second Amended Complaint before appealing the EOUSA's determination, DOJ claims that he deprived OIP of the statutorily-mandated 20 days to review his appeal and therefore failed to exhaust his administrative remedies.  *See* Defs.' Mem. Supp. at 11–14.

Because Mr. Pinson does not respond to this argument or contest this course of events, it would appear, at first glance, that DOJ is entitled to summary judgment as to these requests on exhaustion grounds.  Yet, Mr. Pinson does point out—correctly—that the EOUSA failed to *initially* respond to his requests "within the statutory time frames."  *See* Pl.'s Resp. at 3.  The agency did not respond to these requests until September 25, 2013—over sixteen months after the EOUSA acknowledged those requests on May 23, 2012.  Moreover, on November 15, 2012, and during those intervening months, Mr. Pinson filed his initial complaint which specifically listed Request Nos. 12-1748, 12-1757, 12-1758, and 12-1760 and sought an injunction "compelling production of [the] information sought on each of the 211 FOIA-[Privacy Act] requests referenced" in the complaint.  *See* Compl. ¶¶ 13, 26, ECF No. 1.

While Mr. Pinson does not cite FOIA or any case law, he is correct that the EOUSA's response period far exceeded the statutorily-prescribed 20 day period in which an agency must respond to a FOIA request.  *See Jones*, 576 F. Supp. 2d at 67 (noting that the agency has a "duty to make a determination within 20 days after receiving [a] request" and must "'immediately notify the person making such request' of its determination" (quoting 5 U.S.C. § 552(a)(6)(A)(i))).  FOIA further provides that if an agency "fails to comply with the applicable time limit provisions," any person making a request "shall be deemed to have exhausted his administrative remedies with respect to such request."  5 U.S.C. § 552(a)(6)(C)(i).  Courts refer to this situation as "constructive exhaustion."  *See, e.g.*, *Waldner v. U.S. Dep't of Justice*, 981 F.

Supp. 2d 14, 16 (D.D.C. 2013).  Given DOJ's failure to respond to these requests before Mr.

Pinson filed suit, he has constructively exhausted his administrative remedies with respect to

those requests.

DOJ's reference to the EOUSA's belated responses, and the fact that Mr. Pinson filed his

Second Amended Complaint before administratively appealing those determinations, is of no

moment in this case.  It is true enough that, if an agency "cures its failure to respond within the

statutory period by responding to the FOIA request *before suit is filed*," then "an administrative

appeal is mandatory" and "the requester must exhaust his administrative remedies before seeking

judicial review."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 63–64 (D. C. Cir. 1990)

(emphasis added).  Had the agency responded, albeit belatedly, before Mr. Pinson filed his initial

complaint, his right to "immediate recourse to the courts to compel the agency's response to a

FOIA request" would have evaporated.  *Id.* at 64; *see also Judicial Watch v. Rossotti*, 285 F.

Supp. 2d 17, 26 (D.D.C. 2003) ("If a requester actually receives an agency's untimely response

before filing suit . . . he must utilize the administrative appeals process.").  But because Mr.

Pinson's initial complaint challenged the agency's failure to respond to these requests, it is the

initial complaint, and not the Second Amended Complaint, that governs the constructive

exhaustion inquiry.  Where, as here, the agency belatedly responds only *after* the plaintiff has

filed suit, the plaintiff is nevertheless considered to have constructively exhausted his

administrative remedies.  *See, e.g.*, *Thomas v. Dep't of Health & Human Servs., Food and Drug

Admin.*, 587 F. Supp. 2d 114, 117 (D.D.C. 2008) (holding that a response letter that the agency

sent after plaintiff filed suit and requesting pre-payment of search fees "came too late");

*Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. Civ.A.03-00024, 2006 WL 826070, at

*6 (D.D.C. Mar. 29, 2006) (holding that plaintiff constructively exhausted administrative

remedies when it filed its complaint seven months after the agency received its request even though the agency later responded to it); *accord Pollack v. U.S. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (concluding that the district court erred "[t]o the extent that [it] relied on [the plaintiff's] failure to exhaust administrative remedies once the case was pending in the district court").

DOJ does not respond to this argument in its reply and it provides no evidence that it responded to Mr. Pinson's FOIA requests within the 20-day statutory time frame, or otherwise, before Mr. Pinson filed his initial complaint on November 15, 2012. Indeed, DOJ's reply seems to abandon the exhaustion issue altogether and proceeds to rely on its arguments that it conducted an adequate search and properly invoked FOIA exemptions as to these requests. *See* Defs.' Reply at 5–7, ECF No. 230. Therefore, there is no genuine issue of material fact that Mr. Pinson has constructively exhausted his administrative remedies as to Request Nos. 12-1748, 12-1757, 12-1758, and 12-1760, and the Court will not grant summary judgment on exhaustion grounds as to these requests. Accordingly, the Court will proceed to consider whether the EOUSA's search for these requests was adequate.

### 2. Request Nos. 12-1752 and 12-3947

DOJ next asserts that it is entitled to summary judgment as to Request Nos. 12-1752 and 12-3947 because Mr. Pinson failed to exhaust his administrative remedies by failing to file an appeal. *See* Defs.' Mem. Supp. at 10–11. The EOUSA informed Mr. Pinson that its search for records relevant to Request No. 12-1752 failed to locate any responsive documents and that it had denied Request No. 12-3947 in full because the request sought records concerning third parties. The agency asserts that Mr. Pinson has not appealed either determination.

In order to have fully exhausted his administrative remedies, and before his claim may be heard before this Court, Mr. Pinson must appeal the EOUSA's decision to OIP. *See Seiverding v. U.S. Dep't of Justice*, 910 F. Supp. 2d 149, 154 (D.D.C. 2012) (explaining that a FOIA claim brought before a requester has appealed a determination is "clearly unexhausted and should be dismissed"). Mr. Pinson does not respond to DOJ's exhaustion argument, fails to explicitly reference Request No. 12-1752 at all, and proceeds to attack only the merits of the EOUSA's determination that the records responsive to Request No. 12-3947 were properly withheld. *See* Pl.'s Resp. at 2. Nor has Mr. Pinson disputed DOJ's statement of material facts, including its assertion that he has not appealed the EOUSA's determination as to either of these requests. *See generally* Pl.'s Resp. As a consequence, Mr. Pinson has conceded that he has not yet appealed the EOUSA's decisions. *See Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded."). The Court will grant DOJ's motion for summary judgment as to Request Nos. 12-1752 and 12-3947 due to Mr. Pinson's failure to exhaust administrative remedies.

### 3. Request No. 13-1085

DOJ similarly asserts that it is entitled to summary judgment as to Request 13-1085 because Mr. Pinson has not yet appealed its determination, and has thus failed to exhaust his administrative remedies.

Mr. Pinson does not dispute that he has failed to file an appeal or exhaust his administrative remedies. Instead, he claims that any failure was through no fault of his own, but was the result of interference by the Bureau of Prisons ("BOP"). *See* Pl.'s Resp. at 2–3. He states in a declaration that the records were brought to his cell but that his counselor at MCF

Springfield seized and reviewed the records and then never provided them to Mr. Pinson.  *Id.*; Pinson Decl. ¶ 2.  DOJ has submitted the Declaration of A. Powell, an Attorney-Advisor at MCF Springfield, who admits that Mr. Pinson was restrained and all property was removed from his cell on or around February 11, 2015.  Powell Decl. ¶¶ 1, 4, ECF No. 230 Ex. A.  Mr. Powell attests, however, that all property was returned to Mr. Pinson on February 17, 2015 and that the prison's records "reveal[] no evidence that any staff seized legal materials without returning it." *Id.* ¶ 5.  Based on these conflicting descriptions of events, it is unclear whether the parties are even referencing the same incident.  While Mr. Pinson claims that the responsive documents were consciously taken from him by BOP staff, and that he therefore never received them in the first place, the BOP's versions of events suggests that Mr. Pinson had possessed the documents at one time and seems to assume that Mr. Pinson is claiming only that those documents were not returned to him on February 17, 2015.[6]

Notwithstanding this lack of clarity, the law remains decidedly clear. If there is a genuine dispute of material fact regarding the exhaustion issue, a court may refuse to grant summary judgment for the agency.  *See Jones*, 576 F. Supp. 2d at 67.  The parties' dueling declarations here create a genuine dispute of material fact.  At summary judgment the Court must "view facts in the light most favorable to the non-movant and cannot make credibility determinations." *Pinson v. U.S. Dep't of Justice*, 69 F. Supp. 3d 125, 132 (D.D.C. 2014) (citation omitted).  As a result the Court must accept as true Mr. Pinson's declaration that, through no fault of his own, he never received the EOUSA's response to his requests.  *Id.*  If it turns out that Mr. Pinson did not

---

[6] The Court notes that, because the EOUSA only sent the documents to Mr. Pinson a second time on February 11, 2015, *see* Luczynski Decl. ¶ 85, it is doubtful that the documents would have arrived at MCF Springfield that very same day, and before Mr. Pinson and his belongings were removed from his cell.

receive the documents, then Pinson "cannot 'be deemed to have exhausted his administrative remedies' because he was denied the opportunity to file a timely appeal." *Id.* (quoting *Citizens for Responsibility & Ethics*, 711 F.3d at 184).

Therefore, because Mr. Pinson's declaration made under penalty of perjury raises a genuine dispute of material fact regarding his initial receipt of the documents, the Court denies DOJ's motion for summary judgment as to Request No. 13-1085. In addition, to the extent that Mr. Pinson's description of events is accurate, and that the BOP has withheld the documents because of BOP policies, or for any other reason, the Court will order DOJ to disclose those documents to Mr. Pinson's appointed counsel so that counsel can review them and determine DOJ's compliance with FOIA.

## B. The Adequacy of DOJ's Search

DOJ submits that it is nevertheless entitled to summary judgment as to any unexhausted requests and as to Request Nos. 11-3289, 11-4508, and 12-3095 (which the agency does not claim remain unexhausted)[7] because the EOUSA's search for these requests was adequate. *See* Defs.' Mem. Supp. at 14–16. Mr. Pinson responds that DOJ's motion, which relies heavily on the Luczynski Declaration, fails to establish an adequate search.[8] *See* Pl.'s Resp. at 4.

---

[7] Although Mr. Pinson filed appeals regarding Request Nos. 11-3289 and 12-3095 on March 26, 2012 and November 27, 2012, respectively, the agency did not respond to those appeals within the 20-day period FOIA requires. *See* 5 U.S.C. § 552(a)(6)(A)(ii). The agency closed the appeal for Request No. 12-3095 on January 23, 2013 in light of Mr. Pinson's lawsuit, and it does not claim that Request No. 11-3289—in which an appeal appears to remain pending—is unexhausted.

[8] Mr. Pinson also argues that the Luczynski Declaration contains inadmissible hearsay. *See* Pl.'s Resp. at 3–5. It has long been established, however, that "'declarations that contain hearsay in recounting searches for documents are generally acceptable.'" *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 84 (D.D.C. 2014) (citing *Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997)). Thus, a declaration's admissibility hinges on whether "the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Id.* at 83. Here, Mr. Pinson challenges the declaration only on hearsay grounds and does not allege

Under FOIA, an agency seeking summary judgment has the burden to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *See Wilbur*, 355 F.3d at 678.  While the agency need not search "every record system" for the requested documents, it "must conduct a good faith . . . search of those systems of records likely to possess the requested records." *Marino v. U.S. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby,* 920 F.2d at 68).

When an agency moves for summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 313–14 (D.C. Cir. 2003).  It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" but failed to find anything responsive to the request.  *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 370 (D.C. Cir. 1980).  Affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized" are insufficient to support a motion for summary judgment.  *Id.* at 371.  "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate." *Ogelsby*, 920 F.2d at 68.  Once the agency has provided a "reasonably detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce

---

that the declaration is not reasonably detailed, is contradicted by other evidence, or was made in bad faith.  *See* Pl.'s Resp. at 4-5. Accordingly, the declaration is admissible.

"countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley v. CIA,* 508 F.3d 1108, 1116 (D.C. Cir.2007). Ultimately, "[i]f a review of the record raises substantial doubt as to the reasonableness of a search, especially in light of 'well-defined requests and positive indications of overlooked materials,' then summary judgment may be inappropriate." *Marino,* 993 F. Supp. 2d at 9 (quoting *Founding Church of Scientology of Wash., D.C. v. NSA,* 610 F.2d 824, 837 (D.C.Cir.1979)).

The Lucyznski Declaration DOJ supplies here falls below the level of specificity necessary to establish an adequate search at summary judgment. The Declaration's description that the "FOIA Contacts began a systematic search for records on each given subject and case number when provided, to determine the location of any and all files relating to his requests in order to comply with the FOIA request" is so general that it could describe virtually any search undertaken in response to a FOIA request. Lucyznski Decl. ¶ 87. Although the declaration states that Mr. Pinson's request letters were forwarded to "FOIA Contacts" it fails to state with any particularity which files were searched at each location. *See Weisberg*, 627 F.2d at 370. Furthermore, the Declaration's claim that each U.S. Attorney's Office conducted a "systematic search for records" is merely conclusory and fails to clearly define any iteration of the search methods used, or the search terms employed, to locate responsive documents. *Id.* Moreover, because the DOJ has offered only the Lucyznski Declaration—and a single paragraph of the Declaration, at that—to support the adequacy of the search performed for each request and at each U.S. Attorney's Office, it is impossible to discern what information was found from each respective search, let alone to decipher the distinct search measures used to respond to each of Mr. Pinson's requests. Without this information, the declaration does not provide Mr. Pinson with an "opportunity to challenge the adequacy of the search" nor does it allow the Court "to

determine if the search was adequate." *Ogelsby*, 920 F.2d at 68.  The DOJ's failure to provide a

relatively detailed affidavit raises "substantial doubts as to the reasonableness of the search."

*Marino,* 993 F. Supp. 2d at 9.  Accordingly, the Court finds that there is a genuine issue of

material fact as to the adequacy of the EOUSA's search procedures and denies the DOJ's motion

for summary judgment without prejudice as to Request Nos. 11-3289, 11-4508, and 12-3095,

and as to constructively exhausted Request Nos. 12-1748, 12-1757, 12-1758, and 12-1760.[9]

### C.  Requests without a Response

Mr. Pinson's Second Amended Complaint lists 21 unnumbered FOIA requests that he

claims to have submitted to the EOUSA between May 20, 2011 and August 12, 2012, but to

which he received no response.  *See* Corr. 2d Am. Compl. at 11–12.  DOJ contends that

summary judgment is appropriate because the EOUSA has no record of ever receiving these

requests.  *See* Defs.' Mem. Supp. at 4–6.

As "federal jurisdiction" over a FOIA claim "is dependent upon a showing that an agency

has (1) improperly; (2) withheld; (3) agency records," *Kissinger v. Reporters Comm. for*

*Freedom of the Press*, 445 U.S. 136, 150 (1980) (internal quotation marks omitted), if there is no

---

[9] Because the Court "cannot yet determine" whether the EOUSA's searches were adequate or reasonably calculated to locate all responsive documents, "the agency's request for summary judgment is not yet ripe and must be denied without prejudice as a consequence." *Wiesner v. FBI*, 577 F. Supp. 2d 450, 458 n.4 (D.D.C. 2008).  Therefore, the Court will not yet consider whether information was properly withheld from those documents that were located pursuant to the searches.  Similarly, because the Court has concluded that all other EOUSA requests identified in DOJ's motion were conceded by Mr. Pinson, remain unexhausted, or give rise to a genuine issue of fact as to exhaustion, the Court does not consider the DOJ's arguments concerning the FOIA exemptions or the Privacy Act.  The Court also does not discuss whether the EOUSA complied with FOIA's segregability requirement because Mr. Pinson "concedes that the EOUSA complied with the segregability requirement."  Pl.'s Resp. at 6.  The Court notes, however, that the Declaration's statements concerning the FOIA exemptions applied to responsive documents appear to suffer from the same over-generalization and lack of specificity as do the statements concerning the search for responsive records.

"showing that the agency received the request, the agency has no obligation to respond to it," *see Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2009) (quoting *Hutchins v. U.S. Dep't of Justice*, No. 00-2349, 2005 WL 1334941, at *1–2 (D.D.C. June 6, 2005)); *see also Trupei v. Bureau of Customs & Border Prot.*, No. 07-0475, 2008 WL 249878, at *1 (D.D.C. Jan. 29, 2008) ("[A]n agency's FOIA obligations are not triggered until a request has been received").  In order to create an issue of material fact, a plaintiff must offer evidence that the requests were received by the agency, rather than merely assert that the requests were placed in the mail.  *See Banks*, 539 F. Supp. 2d at 235 ("The mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency.").  Here, not only does Mr. Pinson fail to provide any evidence that the EOUSA received these requests, his opposition to DOJ's motion makes no mention of these requests at all.  Consequently, the Court therefore deems Mr. Pinson to have conceded the EOUSA's claims as to the 21 unnumbered requests, *see Sykes*, 753 F. Supp. 2d at 202, and the Court will grant DOJ's motion for summary judgment as to those requests.

## V.  CONCLUSION

For the foregoing reasons, DOJ's motion for partial summary judgment with respect to the EOUSA (ECF No. 170) is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 10, 2015                                    RUDOLPH CONTRERAS
                                                            United States District Judge