## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON,                                      :
                                                    :
     Plaintiff,                                 :     Civil Action No.:   12-01872 (RC)
                                                    :
     v.                                         :     Re Document No.:   131
                                                    :
U.S. DEPARTMENT OF JUSTICE, *et al.*,               :
                                                    :
     Defendants.                                :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
### FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

*Pro Se* Plaintiff Jeremy Pinson is currently an inmate at ADX Florence, a federal prison

located in Colorado.  While in prison, Mr. Pinson has filed multiple Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice

("DOJ").  On several occasions, the DOJ has asked Mr. Pinson to clarify his records requests,

told him that it could not find records that are responsive to his requests, or informed him that

the records he sought were exempt from disclosure by law.  Mr. Pinson took issue with some of

these determinations, so he filed a complaint claiming that the DOJ improperly withheld

numerous records from him in violation of FOIA.  In response, the DOJ filed several pre-answer

motions, each asking the Court to dismiss or grant summary judgment in its favor on different

portions of Mr. Pinson's complaint.

     Now before the Court is the DOJ's motion for partial summary judgment as to Mr.

Pinson's FOIA claims against the DOJ's Office of Information Policy (OIP).  Def.'s Mot. Partial

Summ. J., ECF No. 131.  Specifically, Mr. Pinson alleges that the OIP refused to produce

records in response to FOIA requests that he submitted in 2010 (Request No. AG/10-R1351),

2011 (Request No. AG/11-0826)[1], and 2012 (Request No. AG/12-0668)[2].  *See* Corr. 2d Am.

Compl. at 9–10, ECF No. 32.  The DOJ argues that it is entitled to summary judgment on these

FOIA requests because the OIP conducted an adequate search for responsive documents,

properly withheld responsive information under applicable FOIA exemptions, and satisfied its

segregation obligations under FOIA.  *See* Mem. P. & A. Supp. Defs.' Mot. Partial Summ. J.

("Defs.' Mem. Supp."), ECF No. 131-1.

　　　　For the reasons explained below, the Court will grant the DOJ's motion for summary

judgment as to Request Nos. AG/10-R1351 and AG/11-0826 (later AG/12-00010).  With respect

to Request No. AG/12-0668, the Court will grant summary judgment concerning the adequacy of

OIP's search, but will require that the responsive documents be re-mailed to Plaintiff and denies

the motion with respect to one redaction concerning the identity of a third-party recommender.

## II. FACTUAL BACKGROUND

### A. FOIA/PA Request No. AG/10-R1351

　　　　By letter dated September 5, 2010, Mr. Pinson submitted a FOIA request to the Attorney

General for "any correspondence or electronic messages generated after January 21, 2009 by the

Attorney General, or staff within the Attorney General's office, addressed to or intended for the

Director of the Federal Bureau of Prisons."  Mr. Pinson specified that he sought no more than

two hours of time spent in searching for responsive records and no more than one hundred pages

of responsive documents.  Brinkmann Decl. ¶ 4 & Ex. A, ECF No. 131-3.

---

[1]  This request was later assigned a new tracking number, AG/12-00010, for administrative purposes.  *See* Brinkmann Decl. ¶ 21 & Ex. J.

[2]  This request was also assigned tracking numbers DAG/12-0669 and ASG/12-0670 because it was processed on behalf of ODAG and OASG as well.  *See* Brinkmann Decl. ¶ 28 & Ex. O.

OIP received Plaintiff's request on September 16, 2010, and assigned FOIA tracking

number AG-10/R1351.  Brinkmann Decl. ¶ 5 & Ex. B.  By letter dated October 13, 2010, the

OIP staff acknowledged receipt of Mr. Pinson's FOIA request and advised him that his request

required a search in another Office (*i.e.* Office of Attorney General (OAG)).  Brinkmann Decl.

¶ 6.

Because Mr. Pinson specifically sought communications from OAG, OIP determined that

the Departmental Executive Secretariat (DES) and OAG files would be those most likely to

maintain any responsive records.  Brinkmann Decl. ¶ 7.  The DES "is the official records

repository of OAG and other senior management offices of the Department, and in particular,

maintains records of official correspondence sent to or from OAG from January 1, 2001 to the

present day."  *Id.* ¶ 10.

A search was initiated in OAG by memorandum dated October 13, 2010.  In response to

OIP's search memorandum, "OAG provided potentially responsive material located by one OAG

official, and identified four other officials within that office who might also have potentially

responsive records."  OAG's FOIA/PA liaison requested that OIP conduct a search of the e-

mails of these four officials. "The FOIA Specialist assigned to [Mr. Pinson's] request

subsequently searched the e-mails of two of the four officials identified by OAG, but was unable

to complete the searches of the other two officials[' e-mails] before exhausting the two hours of

search that [Mr. Pinson] had specifically limited his request to in his request letter."  *Id.* ¶ 9.

"On March 10, 2011, the OIP FOIA Specialist assigned to [Mr. Pinson's] request

conducted a search for records responsive to plaintiff's FOIA request in the electronic database

of the [DES]."  OIP conducted a search of the DES's database using the term "Lappin," with a

date restriction of January 21, 2009 to the date the search was conducted.  Because Harley G.

Lappin was the Director of the Bureau of Prisons (BOP) for the entirety of the time period applicable to Plaintiff's request, DOJ asserts that this search term was reasonably calculated to locate any responsive communications maintained in the electronic database of the DES. *Id.* ¶ 10.

As a result of the above-described searches, OIP identified seventy-two pages of records responsive to Mr. Pinson's FOIA request. "Because the documents contained information of interest to other Department components, and pursuant to Department regulation 28 C.F.R. § 16.4(c)(1), [OIP] conducted consultations with these other [DOJ] components. Pursuant to a consultation with BOP, [BOP] requested that certain information be withheld by OIP on its behalf." *Id.* ¶ 11.

By letter dated November 9, 2012, OIP responded to Mr. Pinson's FOIA request identifying seventy-two pages of responsive material. "[OIP] released thirty-five pages without excision and five pages with excisions, some of which were made on behalf of [BOP], pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552 (b)(6), (7)(C). In addition, thirty-two pages were withheld in full on behalf of BOP pursuant to Exemptions 5, 7(C), and 7(D) of the FOIA, *id.* § (b)(5), (7)(C), (7)(D)."[3] *Id.* ¶ 12 & Ex. C.

By letter dated November 19, 2012, Mr. Pinson administratively appealed OIP's decision. In his appeal letter, Mr. Pinson did not challenge any of the excisions made on the released documents. Instead, he challenged two issues not raised in the instant matter, and the withholding in full of the thirty-two pages withheld on behalf of BOP. *Id.* ¶ 13 & Ex. D.

---

[3] Plaintiff was further advised that some portions of the documents provided in the response were marked as "Nonresponsive." DOJ considered this information as not responsive to Mr. Pinson's FOIA request because it did not consist of communications from OAG to former BOP Director Lappin. Accordingly, those portions were excised and marked accordingly. Brinkmann Decl. ¶ 12 & Ex. C.

In sum, in its response to request number AG/10-1351OIP, OIP redacted portions of five pages it produced to Mr. Pinson, and it withheld in full thirty-two pages. "Each of the five pages withheld in part had only one redaction per page." Three of these redactions, consist of two instances of a cell phone number and the personally-identifying portions of a personal e-mail address. Plaintiff does not challenge these redactions. The fourth redaction consists of a "portion of one sentence consisting of a private remark regarding a personal assessment of a federal employee." But as set forth above, Mr. Pinson did not administratively appeal this redaction. The final redaction, consisting of the name and identifiable information of a third-party, and the withholding of the remaining thirty-two pages withheld in full were withheld on behalf of BOP and, according to DOJ, will be addressed separately by BOP. *Id.* ¶ 15. But the BOP did not provide any such separate explanation with the OIP's motion or as part of its own dispositive motion with respect to FOIA requests directed at the BOP. Instead, upon the request of the Court, *see* Order of August 27, 2015, ECF No. 235 (indicating that the Court has been unable to find such explanation and giving DOJ until September 10, 2015 to specify where in the record the explanation exists or to provide it), on October 1, 2015, BOP provided its separate explanation. ECF No. 239. The Court will treat that justification and Plaintiff's response, ECF No. 261, as a separate dispositive motion.

### B. FOIA/PA Request No. AG/11-0826 (later AG/12-00010)

By letter dated May 26, 2011, Mr. Pinson submitted a FOIA request to the Attorney General for records "maintained by the Dept. of Justice, relevant to the June 8, 2010 decision of the European Court of Human Rights [ECHR] in Application Nos. 24027-/07, 11949/08 and 36742/08." The request was assigned FOIA tracking number AG/11-0826. Mr. Pinson specified

that he sought no more than two hours of time spent in searching for responsive records and no more than one hundred pages of responsive documents.  Brinkmann Decl. ¶¶ 16, 17 & Exs. F, G.

By letter dated June 28, 2011, OIP informed Mr. Pinson that his request did not cover agency files.  *Id.* ¶ 18 & Ex. G.  On July 8, 2011, Mr. Pinson appealed to OIP's Administrative Appeal Staff stating that OIP misconstrued his request and that he was actually seeking records concerning the Attorney General's participation in the referenced ECHR cases.  In particular, Plaintiff specified that he was seeking records regarding the ECHR decision "generated, received or maintained by [the Attorney General's] office."  *Id.* ¶ 19 & Ex. H.  OIP agreed to reopen Mr. Pinson's FOIA request in light of the additional information he provided and it was assigned a new tracking number, AG/12-00010, for administrative purposes.  *Id.* ¶¶ 20, 21 & Exs. I, J.

The FOIA Specialist assigned to Mr. Pinson's request conducted a search of DES.  As set forth above, the DES is the repository of official internal and external DOJ correspondence and, accordingly, OIP contends that it is the most likely repository for records pertaining to Attorney General participation in an international court proceeding.  The search terms used were the names of the individuals whose ECHR applications were cited in Mr. Pinson's request.  As a result of this search, OIP states that no responsive records pertaining to the June 8, 2010, decision of the ECHR were located.  Additionally, the FOIA Specialist reviewed the docket of the ECHR for any indication of Attorney General involvement in the referenced ECHR decisions, as referenced in Mr. Pinson's appeal letter.  But the FOIA Specialist only found references to Attorney General/United States policies in the docket and found no references to direct participation by the Attorney General himself.  *Id.* ¶ 22.

On December 8, 2011, OIP informed Mr. Pinson that it was unable to locate records responsive to his request.  Mr. Pinson submitted an administrative appeal but the OIP's decision

on AG/12-00010 was affirmed.  In sum, OIP contends that it searched all files likely to maintain

responsive materials, but no records responsive to Plaintiff's request number AG/11-0826

(AG/12-00010) were located.  *Id.* ¶¶ 23–26 & Exs. K, L, M.

### C. FOIA/PA Request No. AG/12-0668, DAG/12-0669, and ASG/12-0670

On March 7, 2012, Mr. Pinson submitted a FOIA request to the Attorney General for "all

information related to the selection of Bureau of Prisons Director Charles Samuels and Regional

Director Paul Laird for those positions," and "any reports of deaths of inmates in federal custody

during 2008-2011."  Again, Mr. Pinson specified that no more than two hours be spent searching

for responsive records and that he sought no more than one hundred pages of responsive

documents.  The return address Mr. Pinson provided for this request was ADX Florence,

Florence, Colorado.  OIP initiated processing on behalf of OAG, Office of the Deputy Attorney

General (ODAG), and Office of the Associate Attorney General (OASG) and assigned FOIA

tracking numbers AG/12-0668, DAG/12-0669, and ASG/12-0670.  *Id.* ¶¶ 27, 28 & Exs. N, O.

The FOIA Specialist searched DES for responsive records, specifically searching the

records of OAG, ODAG, and OASG.  OIP determined that the DES is the most likely repository

for records pertaining to "official reports to Department leadership on inmate deaths, as well as

correspondence pertaining to the selection of the BOP Director."  The search terms used for this

search were: "Paul Laird," "Charles Samuels," and "Harley G. Lappin."  *Id.* ¶ 29.   OIP reviewed

the located records and identified 139 pages responsive to Mr. Pinson's request.  The records

required consultation with other DOJ components pursuant to 28 C.F.R. § 16.4(c)(1) and OIP

forwarded the records to BOP for processing.  As a result, BOP requested that certain

information be withheld by OIP on its behalf.  OIP released seventy-two pages without excision

and sixty pages with excisions, some made on behalf of BOP, pursuant to Exemptions 5, 6, and

7(C) of the FOIA, 5 U.S.C. § 552 (b)(5), (6), (7)(C).  OIP also withheld seven pages in full on

behalf of BOP pursuant to Exemptions 5 and 6, *id.* § (b)(5), (6).  OIP also informed Mr. Pinson

that it had located no responsive records within OASG.  Brinkmann Decl. ¶¶ 30–34 & Exs. O, P,

Q.  Although Mr. Pinson's FOIA request had originated in Florence, Colorado, and OIP's

acknowledgement letter of May 3, 2012 had been sent to Florence, Colorado, for reasons not

revealed in the record, the interim response of June 14, 2012 and the Final Response of April 22,

2013 were sent to the Federal Detention Center in Houston, Texas.  *Compare id.* Exs. N, O, *with*

Exs. P, Q.

  In sum, OIP withheld portions of sixty pages from Mr. Pinson, as well as seven pages in

full, in its response to request numbers AG/12-0668 and DAG/12-0669; and found no responsive

records in the office of the Associate Attorney General.  Three of the sixty pages withheld in part

are OAG records.  The redactions in the OAG records, consist of the name and identifying

information of a third party who submitted a letter of recommendation in support of the

consideration of Charles Samuels for the position of BOP Director.  These redactions were made

by OIP.  The remaining fifty-seven pages withheld in part, and seven pages withheld in full, are

ODAG records and were withheld upon the request of BOP.  The redactions in the fifty-seven

pages of ODAG records released in part; and the seven pages of ODAG records withheld in full

consist of: third-parties referenced in the "information memoranda" from the BOP Director

reporting on inmate deaths to the Deputy Attorney General, the identity and curriculum vitae of

a candidate recommended for the position of Director of BOP who was not ultimately selected

for that position, as well as the recommendation of that individual, and the home address of the

Director of BOP.  All of the withholdings in the ODAG records were made on behalf of BOP,

and OIP asserts that those withholdings will be addressed separately by BOP.  *Id.* ¶ 34.  But as

set forth above, that explanation by BOP for these withholdings was not provided until much later in a separate filing and will be treated as a separate dispositive motion.

### III. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.,* 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *see also* Fed. R. Civ. P. 56.

In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA.  5 U.S.C. § 552(a)(4)(B).  The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester. *See Wills v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).  To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  To meet its burden, a defendant may rely on declarations that are reasonably detailed and non-conclusory. *See Citizens for Ethics & Responsibility in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in

declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). Such declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).  Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV. ANALYSIS

### A. FOIA/PA Request No. AG/10-R1351

The DOJ argues that it is entitled to summary judgment as to Request No. AG/10-R1351 because there is no genuine dispute of material fact that OIP conducted an adequate search for responsive records and properly withheld documents pursuant to FOIA Exemptions 6 and 7(C). *See* Defs.' Mem. Supp. at 9–14.  Because the Court agrees, summary judgment is appropriate.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia–Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks and citations omitted); *see Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 ("The

adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." (internal quotation marks and citations omitted)).  To satisfy its burden of showing that its search was calculated to uncover all relevant documents, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed.  *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).  Agency affidavits attesting to a reasonable search "are afforded a presumption of good faith" and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'"  *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

The Court agrees that OIP conducted an adequate search for records in regards to FOIA Request No. AG/10-R1351.  Specifically, Mr. Pinson made a request for any correspondence or electronic messages generated after January 21, 2009 by the Attorney General, or staff within the Attorney General's office, addressed to or intended for the Director of BOP.  *See* ECF No. 131-1 at 2.  In response to this request, OIP identified OAG and DES as the appropriate offices that were likely to contain responsive records to Mr. Pinson's request.  *Id.*  Subsequently, a FOIA specialist conducted searches in both of these locations finding various responsive records prior to exhausting the maximum two hour restriction imposed by Mr. Pinson in his request letter.  Brinkmann Decl. ¶ 9.  Thus, even if OIP could have done more to search for responsive documents, the OIP conducted a reasonable search within the two hours allotted.  Thus, OIP has provided "a reasonably detailed" declaration setting for the search terms and type of search performed.  *See generally* Brinkmann Decl.  The Court finds that OIP's search was reasonably calculated to uncover all relevant documents within the allotted time.

The only challenge Mr. Pinson raises as to the adequacy of the search for this request is his argument that the Brinkmann Declaration is not admissible because it contains hearsay. Pl.'s Opp'n at 2, ECF No. 153. This argument is based on the claim that the declaration contains descriptions of searches conducted by individuals other than the declarant. *Id.* However, the courts in this Circuit have made clear that declarations containing such information are acceptable in FOIA cases. As succinctly stated in *Barnard v. Dep't of Homeland Security*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008):

> Plaintiff misunderstands the personal knowledge requirements for FOIA declarations. Federal Rule of Civil Procedure 56(e) provides that a declaration "must be made on personal knowledge, set out facts that would be admissible as evidence, and show that the [declarant] is competent to testify on the matters stated." Fed.R.Civ.P. 56(e). A declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) " 'if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.' " *Madison Mech., Inc. v. Nat'l Aeronautics and Space Admin.*, No. 99–2854, 2003 WL 1477014, *6, 2003 U.S. Dist. LEXIS 4110 at *17 (D.D.C. Mar. 20, 2003) (quoting *Spannaus v. Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir.1987)). Declarants are not required to participate in the search for records. *See Carter, Fullerton & Hayes LLC v. Federal Trade Commission*, 520 F.Supp.2d 134, 146 (D.D.C.2007) ("[t]he declaration of an agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge requirement"); *Brophy v. U.S. Dep't of Defense*, No. 05–360, 2006 WL 571901, *4, 2006 U.S. Dist. LEXIS 11620 *13 (D.D.C. Mar. 8, 2006) (finding that the D.C. Circuit "long ago recognized the validity of the affidavit of an individual who supervised a search for records even though the affiant has not conducted the search himself") (citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C.Cir.1986)). Consistent with these requirements, hearsay in FOIA declarations is often permissible. *See Brophy*, 2006 WL 571901, *4, 2006 U.S. Dist. LEXIS 11620 at *13 ("[d]eclarations that contain hearsay in recounting searches for documents are generally acceptable").

Accordingly, Plaintiff's hearsay objection lacks merit.

The OIP further argues that it is entitled to summary judgment because it properly withheld responsive records under applicable FOIA exemptions. As a result of the above-referenced search, seventy-two pages of responsive records were located and identified. *See*

Brinkmann Decl. ¶ 11.  Thirty-five pages were released without excision, five pages were released with excisions, and thirty-two pages were withheld in full.  *Id.* at ¶ 12.  With respect to the excisions made by OIP on five pages of records (rather than at the request of BOP which will be dealt with in a forthcoming opinion addressing ECF No. 239), OIP withheld pursuant to FOIA Exemption 6 the following information: two instances of cell phone numbers (occurring on two separate pages); the personally-identifying portion of an e-mail address; and, a private remark in which an OAG employee remarks on his personal assessment of another federal employee.  *See* Brinkmann Decl. ¶¶ 15, 35.  Plaintiff has not challenged the withholding of the cell phone numbers or e-mail address.  Pl.'s Opp'n at 3; *see also Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (finding that defendants withholding of cell phone numbers, home phone numbers, home addresses, medical information, and personal email addresses is proper under Exemption 6).  Accordingly, those withholdings are not addressed further.

Thus, the only remaining withholding at issue with respect to this FOIA request is the private remark by the OAG employee concerning his assessment of another employee.  But, because Plaintiff did not appeal this withholding, the claim has not been exhausted and cannot be challenged here.  *See Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986) ("It is likewise clear that a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request."); *Hall & Assoc. v. EPA*, 77 F. Supp. 3d 40, 45 (D.D.C. 2014) (same).  Consequently, because OIP prevails on its withholdings as well, the Court grants the DOJ's motion for partial summary judgment as to FOIA Request No. AG/10-R1351.

## B. FOIA/PA Request No. AG/11-0826 (later AG/12-00010)

With respect to Request No. AG/11-0826 (later AG/12-00010), OIP asserts that it conducted an adequate search for responsive records and found none.  *See* Defs.' Mem. Supp. at 5–6, 9–14.  In response, Mr. Pinson argues that the search was not adequate pursuant to the requirements imposed by FOIA.  *See* Pl.'s Opp'n at 2.  For the reasons set forth below, however, the Court concludes that the search was adequate because it was reasonably designed to to produce the requested information and, thus, grants summary judgement in favor of defendant.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents."  *Hodge v. FBI*, 730 F.3d 575, 579 (D.C. Cir. 2013).  The agency does not have to search "every record system" for the requested documents, but it "must conduct a good faith search of those systems of records likely to possess the requested records."  *Marino v. U.S. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby*, 920 F.2d at 68).  When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search.  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003).  It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request.  *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980).  On the other hand, once the agency has provided a "reasonably detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search.  *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007).

14

Mr. Pinson's FOIA request sought Attorney General records "relevant to the June 8, 2010 decision of the European Court of Human Rights [ECHR] in Application Nos. 24027-/07, 11949/08 and 36742/08." Brinkmann Decl. ¶ 16 & Ex. F.  OIP identified DES as the most likely repository for records pertaining to the Attorney General's participation in an international proceeding.  *Id.* ¶ 22.  OIP conducted a search of DES using search terms that were the names of the individuals whose ECHR applications were cited in Plaintiff's request.  *Id.*  No responsive records were located.  *Id.*  To further ensure adequacy of the search, OIP reviewed the docket of the ECHR for any indication of Attorney General involvement in these ECHR decisions, as referenced in Mr. Pinson's appeal letter.  *Id.*  There were only references to general Attorney General/United States policies found in the docket and no direct participation by the Attorney General himself.  *Id.*  Thus, DOJ has provided a declaration from the OIP showing an organized and thorough search for the request at issue, and its memorandum canvasses the request in detail, explaining to whom the request was sent, the search terms used, and the specific database searched.  *Id.* ¶¶ 22–23.  Consequently, OIP has demonstrated beyond material doubt that its search was reasonably calculated to uncover all relevant documents.  *Valencia-Lucena*, 180 F.3d at 325.

Mr. Pinson weakly challenges this detailed accounting of the search by speculating that responsive documents must exist because "it is clear from the records on the docket of the European Court of Human Rights that the Dept. Of Justice and the State Dept. were asked for, and provided input, on the extradition requests at issue leading [] the EHCR to decline extradition . . . ."  Pl.'s Opp'n at 2.  But this assertion proves nothing.  First, Plaintiff fails to provide the excerpts from the docket to which he refers so that the Court may assess how "clear" its entries are.  More importantly, even taking Plaintiff's assertion at face value only indicates

that the Department of Justice may have contributed to the proceedings, not the Attorney

General himself (or anyone on his immediate staff).  Thus, Plaintiff's bald assertion does not

persuade the Court that responsive documents may exist in the Attorney General's files that its

thorough search did not uncover.  Plaintiff's argument is therefore clearly insufficient to avoid

summary judgment under FOIA.  *See Safecard Services, Inc., v. SEC*, 926 F.2d 1197, 1200 (D.C.

Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be

rebutted by 'purely speculative claims about the existence and discoverability of other

documents.'" (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Accordingly, this Court finds that OIP conducted an adequate and reasonable search for

records.  Although OIP's search yielded no responsive records, this Court affords OIP's

Brinkmann Declaration a presumption of good faith, absent non-speculative evidence to the

contrary, and grants the DOJ's motion for summary judgment as to FOIA Request No. AG/11-

0826 (later AG/12-00010).

### C. FOIA/PA Request No. AG/12-0668, DAG/12-0669, and ASG/12-0670

As set forth above, Plaintiff submitted a FOIA request seeking "all information related to

the selection of Bureau of Prisons Director Charles Samuels and Regional Director Paul Laird

for those positions and any reports of deaths of inmates in federal custody during 2008-2011."

Brinkmann Decl. ¶ 27 & Ex. N.  DOJ's search located 139 pages responsive to Mr. Pinson's

request.  *Id.* ¶ 32.  OIP released seventy-two pages without excision, sixty pages with excisions,

and withheld seven pages in full.  *Id.* ¶ 33.  Plaintiff challenges the adequacy of the search and

also some aspects of the withholdings made by OIP.  *See* Pl.'s Opp'n at 2–3.  But Plaintiff also

complains that he never received the documents that were produced because they were sent to

the wrong prison.  *Id.* at 1.  For the reasons set forth below, the Court will have DOJ re-send the

documents it previously mailed, grant summary judgment to OIP concerning the adequacy of search, and deny summary judgment to OIP with respect to the one excision it made on its own behalf.

As an initial matter, Plaintiff complains he never received the documents that OIP purports to have sent to him in response to this FOIA request. *Id.* at 1. Plaintiff infers that this occurred because the record reflects that the documents were sent to an institution in Houston, Texas at a time Plaintiff claims he was incarcerated in Florence, Colorado. *Id.*; *see also* Brinkmann Decl. Ex. Q. The record makes clear that the documents were sent on April 22, 2013 to the institution in Houston, *id.*, despite the fact Plaintiff's FOIA request included a return address of Florence, Colorado, *id.* Ex. N, and OIP previously corresponded with Plaintiff for this request at the Florence institution, *id.* Ex. O. The printout that Plaintiff attaches to his Opposition indicates that, at the time the documents were mailed on April 22, 2013, he was incarcerated at the Florence institution. *See* Pl.'s Opp'n, Ex. 1, Attach. A (indicating Plaintiff was held at FLM 11-30-2012 to 06-08-2013). OIP's Reply argues that Plaintiff was held at the Houston institution when OIP sent its interim response, but that OIP was not informed that Plaintiff had been sent back to Florence when it sent the documents to Houston rather than Florence. Defs.' Reply at 4, ECF No. 135. But the problem with OIP's logic is that the record does not reflect that Plaintiff ever told OIP to correspond with him at the Houston institution rather than at Florence the location from which his request originated. Thus, based on the record presented, OIP should have sent the documents to the last location Plaintiff had indicated he was held, *i.e.,* Florence. Alternatively, to the extent that OIP independently took it upon itself to determine that Plaintiff had been moved to Houston when it sent the interim response, it should have made the same independent inquiry later on when it provided its final response and

erroneously mailed the responsive documents to Houston rather than Florence.  Thus, based on the current record, this erroneous mailing of the documents cannot be attributed to Plaintiff's action or inaction.  Accordingly, OIP is ordered to re-mail the responsive documents to Plaintiff's current address.

DOJ has moved for summary judgment arguing that there is no genuine dispute of material fact that OIP conducted an adequate search.  *See* Defs.' Mem. Supp. at 9–13.  In response to Mr. Pinson's FOIA request seeking "all information related to the selection of BOP's Director Charles Samuels and Regional Director Paul Laird for those positions and any reports of deaths of inmates in federal custody during 2008-2011," OIP searched the electronic database of DES for responsive records, specifically searching the records of OAG, ODAG, and OASG. Brinkmann Decl. ¶ 29.  This database was searched because it is the official records repository for OAG, ODAG and OASG and, because DES maintains records of official internal and external Department of Justice correspondence, it was deemed "the most likely repository for records pertaining to official reports to Department leadership on inmate deaths, as well as correspondence pertaining to the selection of the BOP Director."  *Id.*  "The search terms used for this search were: 'Paul Laird,' 'Charles Samuels,' and 'Harley G. Lappin.'" *Id.*[4]  As a result of this search, 139 pages of responsive records were located and identified, but no responsive records were located within OASG.  *Id.* ¶¶ 31, 32.

In response to the detailed information OIP provided in its motion and the Brinkmann Declaration, Plaintiff raises no objection specific to the search made in response to this request.

---

[4] "The terms 'Charles Samuels' and 'Harley G. Lappin' were determined to be the appropriate search terms for located reports of deaths of federal inmates because these reports are submitted to ODAG by the Director of BOP.  Samuels and Lappin were the directors for the time period encompassed by plaintiff's request.  The search terms 'Homicide,' 'Suicide,' 'Prison Suicide,' and 'Prison Homicide' were also initially used but did not locate relevant materials." Brinkmann Decl. ¶ 29 n.6.

Pl.'s Opp'n at 2.   Accordingly, based on a declaration that properly sets forth details of the search terms, locations searched, and type of search performed by OIP, this Court finds that OIP conducted an adequate search in response to Mr. Pinson's FOIA request that was reasonably calculated to uncover the relevant documents in its files.   *See Oglesby,* 920 F.2d at 68 (holding that "reasonably detailed" affidavits or declarations must "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched.").

Finally, OIP has moved for summary judgment on the redactions it made on the records found to be responsive to Plaintiff's FOIA request.   But, as set forth below, only one redaction is appropriately at issue here.   And, for the reasons set forth below, summary judgment is denied on that redaction.

As stated above, OIP's search resulted in the location and identification of 139 pages of responsive records.   Brinkmann Decl. ¶ 32.   Seventy two pages were identified for release without excision, sixty pages were identified for release with excisions, and seven pages were withheld in full.   *Id.* ¶ 33.   The seven pages withheld in full were withheld in full at the request of BOP.   *Id.*   Of the sixty pages that were identified for release with excisions, only three pages contained redactions that were made by OIP on its own behalf.   *Id.* ¶¶ 33, 34.   The only OIP redaction made on the three pages of OAG records consists of "the name and identifying information of a third-party who submitted a letter of recommendation in support of Charles Samuels for the position of BOP Director . . . ."   *Id.* ¶ 34.   The remaining fifty-seven pages of ODAG records that were redacted and the seven pages of ODAG records withheld in full were redacted or withheld in full on behalf of BOP and were not addressed in the Brinkmann declaration or OIP's motion.   Accordingly, as set forth previously, because BOP provided an

explanation for those redactions/withholdings on October 1, 2015, *see* ECF No. 239, the Court

will treat that justification and Plaintiff's response, ECF No. 261, as a separate dispositive

motion.[5]  Consequently, the only withholding addressed here is the name and identifying

information of a third-party who submitted a letter of recommendation in support of Charles

Samuels for the position of BOP Director which OIP withheld pursuant to FOIA Exemption 6.

Under Exemption 6, an agency may withhold "personnel and medical files and similar

files" when the disclosure of such information "would constitute a clearly unwarranted invasion

of personal privacy."  5 U.S.C. § 552(b)(6).  The Supreme Court has interpreted the term

"similar files" broadly so as "to cover detailed Government records on an individual which can

be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S.

595, 602 (1982) (internal quotation marks and citation omitted).  Therefore, not only does the

exemption protect files, "but also bits of personal information, such as names and addresses, the

release of which would create a palpable threat to privacy."  *Prison Legal News v. Samuels*, 787

F.3d 1142, 1147 (D.C. Cir. 2015) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C.

Cir. 2006)) (internal quotation marks and alterations omitted).  "The information in the file 'need

not be intimate' for the file to satisfy the standard, and the threshold for determining whether

information applies to a particular individual is minimal."  *Milton v. U.S. Dep't of Justice*, 783 F.

Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. Nat'l Aeronautics and Space Admin.*,

920 F.2d 1002, 1006 (D.C. Cir. 1990)).  This threshold has been easily met here.

---

[5]  Plaintiff complains that, because he did not receive the documents at issue, he cannot adequately rebut the DOJ's arguments concerning whether the information withheld was appropriately segregated.  Pl.'s Opp'n at 3–4.  This concern has merit.  Accordingly, once Plaintiff receives the sixty pages of documents with excisions, he may within 30 days challenge the segregation of the material withheld by BOP in the context of supplemental briefing to ECF No. 239.

Once this threshold determination is met, a court must next ask whether disclosure would compromise a "substantial" privacy interest, since FOIA requires the release of information "[i]f no significant privacy interest is implicated." *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (alteration in original) (internal quotation marks omitted) (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  This standard, however, "means less than it might seem," as a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id*. at 1229–30.  If a substantial privacy interest exists, a court next tests whether release of such information would constitute a "clearly unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation marks omitted), by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228.  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1493 (citations omitted).

OIP withheld the name and identifying information[6] of a third party who provided a letter of recommendation on behalf of an individual who was a candidate for the position of BOP Director (the eventual selectee Samuels).  OIP released the entirety of the substance of the recommendation letter, the name of the organization that employed the recommender, as well as

---

[6]  The redacted information included this individual's home address but Plaintiff does not challenge that redaction. Pl.'s Opp'n at 3 (noting personal address and phone number would be irrelevant).

the Attorney General's response to the letter. OIP only withheld the recommending individual's identity and identifying information. Brinkmann Decl. ¶ 38. OIP argues that revealing the identifying information invades the recommender's privacy interests and there is no public interest in this limited information to outweigh the privacy interest. OIP is wrong on both counts.

First, OIP argues that, because it revealed the recommender's employer and the substance of his recommendation, there is no public interest in revealing the recommender's identity. *See* Defs.' Mem. Supp. at 11–12. But as Plaintiff aptly notes, BOP incarcerates thousands of individuals, employs thousands more, and wields a very large budget that it uses, in part, to hire private contractors. Pl.'s Opp'n at 3. Thus, there would be great public interest in learning the identity of the person who made a recommendation directly to the Attorney General in order to influence the decision concerning who should be selected to fill such an influential position over such a powerful organization. The fact that the recommender's employer has been revealed provides some important identifying information, but not all of it. The specific person who made the recommendation could potentially have made significant individual political contributions or have some other non-obvious personal or professional connection to the government decision makers at issue that is separate and apart from his or her employer. The revelation of such information would be of significant interest to the public because it would reflect on what the government is up to.

Moreover, other than providing boilerplate language parroting the standard of FOIA Exemption 6, OIP does not identify how revealing this individual's identity (rather than the address) would result in a clearly unwarranted invasion of this person's personal privacy. Although OIP's initial and reply briefs speak of disclosure potentially resulting in harassment,

the Brinkmann Declaration is silent on this point.  There is no factual support whatsoever for

withholding this information.

Nor is there legal support for withholding this information.   The one case cited by OIP

on this point is inapposite.  In *Bonilla v. United States Department of Justice*, the court analyzed

the privacy interests of the subject of the reference letter, not that of the author.  798 F. Supp. 2d

1325, 1331–32 (S.D. Fla. 2011).  Here, Mr. Samuel's privacy interests have not been asserted,

only that of the recommender.  And the cases involving facts more similar to those here have

resulted in the production of such identifying information.  *People for the Am. Way Found. v.*

*Nat'l Park Servs.*, 503 F. Supp. 2d 284, 305–06 (D.D.C. 2007) (ordering disclosure of the

identities of members of the public who submitted unsolicited email comments to the agency

concerning the proposed change of the video on display at the Lincoln Memorial); *Lardner v.*

*U.S. Dep't of Justice*, No. 03-0180, 2005 WL 758267, at *18–19 (D.D.C. 2005) (ordering

disclosure of the names of individuals who wrote letters in support of clemency applications and

holding that "the prevailing rule is that a citizen does not normally have a significant privacy

interest in a viewpoint that he volunteers to the government to support legal change. . . .

Balanced against this modest privacy interest is the considerable public interest in identifying the

actors who are able to exert influence on the pardon application and selection process."); *All. for*

*the Wild Rockies v. U.S. Dep't of Interior*, 53 F. Supp. 2d 32, 35–37 (D.D.C. 1999) (ordering

disclosure of the identities of commenters where the comments were voluntarily submitted in

response to the agency's solicitation for comments to a proposed rulemaking); *see also*

*Electronic Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 639 F.3d 876, 886–88 (9th

Cir. 2010) (requiring disclosure of the identities of the private individuals and entities who

voluntarily sought to engage with and persuade the ODNI and DOJ in connection with policy

positions concerning the FISA amendments).  As these courts have found, '[w]hen a citizen

petitions his government to take some action, courts have generally declined to find the identity

of the citizen to be information that raises privacy concerns under Exemption 6." *Lardner*, 2005

WL 758267, at *18; *see also People for the Am. Way Found.*, 503 F. Supp. 2d at 305–06 quoting

*Lardner*.  And, as set forth above, OIP has provided neither a factual nor a legal basis to depart

from the norm here.  Consequently, because OIP has not met its burden on summary judgment,

its motion is denied and the Court finds that Plaintiff is entitled to the redacted information

pursuant to FOIA.

## V. CONCLUSION

For the foregoing reasons, the Court grants the DOJ's motion for summary judgment

with respect to Request Nos. AG/10-R1351 and AG/11-0826 (later AG/12-00010).  With respect

to Request No. AG/12-0668, the Court grants DOJ's motion for summary judgment with respect

to the adequacy of its search, but will require that the responsive documents be re-mailed to

Plaintiff and denies the motion with respect to one redaction concerning the identity of a

third-party recommender.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued.

Dated:  February 16, 2016                                    RUDOLPH CONTRERAS
                                                            United States District Judge