UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 12–1872 (RC) |
| v. | : | | |
| | : | Re Document No.: | 137 |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson is currently an inmate at ADX Florence, a federal prison located in Colorado. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, the DOJ has asked Mr. Pinson to clarify his records requests, told him that it could not find records that are responsive to his requests, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that the DOJ improperly withheld numerous records from him in violation of FOIA. In response, the DOJ filed several pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

Now before the Court is the DOJ's motion for partial summary judgment as to Mr. Pinson's numerous FOIA requests submitted to the Federal Bureau of Investigation ("FBI").

Defs.' Mot. Summ. J., ECF No. 137.  As to his FOIA requests, Mr. Pinson alleges that the FBI responded improperly to twenty-three numbered requests that he submitted between 2010 and 2013, and that it unlawfully "refused to release" information on those requests.  *See* Corr. 2d Am. Compl. at 6–7, ECF No. 32.  He further claims that the FBI failed to respond altogether to twelve additional, unnumbered requests.[1]  *Id.* at 7–8.  DOJ's motion for partial summary judgment addresses all twenty-three numbered claims and all twelve unnumbered requests, and argues: (1) as to seven of the unnumbered requests, that there is no record of Mr. Pinson having properly submitted them; (2) as to seventeen of the numbered requests and three of the unnumbered requests, that Mr. Pinson failed to exhaust his administrative remedies; and (3) as to thirteen of the numbered requests, that the FBI responded in accordance with FOIA by conducting an adequate search for responsive documents and releasing any non–exempt information to Mr. Pinson.  *See generally* Defs.' Mem. Supp. Mot. Partial Summ. J., ECF No. 137 (hereinafter "Defs.' Mem. Supp.").

For the reasons set forth below, the Court will grant in part and deny in part the DOJ's motion for partial summary judgment.

---

[1] Mr. Pinson's Second Amended Complaint in fact lists twenty-two numbered requests and sixteen unnumbered requests.  *See* Corr. 2d Am. Compl. at 6–8.  As explained *infra* in note 3, however, the DOJ states that four of the unnumbered requests were submitted together and assigned Request No. 1171229.  Accordingly, throughout this opinion the Court refers to Mr. Pinson's claims relevant to the FBI as encompassing twenty-three numbered and twelve unnumbered requests.

## II.  FACTUAL BACKGROUND

### A.  Requests Without Appeals

With respect to several requests that the FBI processed and to which it provided a response, the DOJ claims that Mr. Pinson failed to file an appeal and, therefore, failed to exhaust his administrative remedies.

#### 1.  Request No. 1153107

On August 17, 2010, Mr. Pinson submitted a request to the FBI seeking records from the Alabama field office concerning a referral of a criminal matter for investigation at the Federal Correctional Institution in Talladega, Alabama involving himself.  *See* Corr. 2d Am. Compl. at 6; Hardy Decl. ¶ 6 & Ex. A, ECF No. 137-3.  By letter dated September 1, 2010, the FBI acknowledged receipt of Mr. Pinson's request and assigned the request number 1153107.  Hardy Decl. ¶ 7 & Ex. B.  The FBI responded to Mr. Pinson's request on November 18, 2010, releasing two pages with redactions pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 6 and 7(C).  *See* Hardy Decl. ¶ 8 & Ex. C.

#### 2.  Request No. 1178465

On November 21, 2011, Mr. Pinson submitted a request to the FBI for records "produced as a result of the visit by 2 FBI Agents on Nov. 1, 2011 to the U.S. Penitentiary Max in Florence, Colorado who spoke to me and took notes of my answers to their questions."  Hardy Decl. ¶ 10 & Ex. D.  The FBI acknowledged the request and assigned the request number 1178465 on December 6, 2011.  *Id.* ¶ 11 & Ex. E.  By letter dated April 20, 2012, the FBI released three pages with redactions pursuant to the Privacy Act Exemption (j)(2) and FOIA Exemptions 6 and 7(C).  *Id.* ¶ 12 & Ex. F.

### 3.  Request No. 1186051

On March 4, 2012, Mr. Pinson submitted a request to the FBI seeking access to records relating to "[a]ll criminal matters referred for investigation by the Bureau of Prisons during 2010–2011 arising from the U.S. Penitentiary Administrative Maximum at Florence, CO" and [a]ll . . . records produced in connection with a 12-2-2011 interview of [Mr. Pinson] by Special Agent." Hardy Decl. ¶ 14 & Ex. G.  Mr. Pinson requested that "no more than 2 hours search time and up to 500 pages of information be produced." *Id.*  After acknowledging Mr. Pinson's request on April 5, 2012, and assigning the request number 1186051, the FBI on September 28, 2012, released three pages with redactions pursuant to the Privacy Act Exemption (j)(2) and FOIA Exemptions 6 and 7(C).  *See id.* ¶¶ 15, 16 & Ex. H.

### 4.  Request No. 1192365

On May 17, 2012, Mr. Pinson submitted a request to the FBI seeking access to records from 2006–2010 relating to the "investigations of inmate on inmate assaults at the U.S. Penitentiary in Atwater California involving inmate Edwin Ivan Guzman-Garcia and or inmate on staff assaults," as well as "any other information maintained by [the FBI] about Mr. Guzman located in [the FBI's] California, Los Angeles, or Gadsden, Alabama field/RA offices." Hardy Decl. ¶ 18 & Ex. I.  Mr. Pinson requested "no more than 2 hours search time and 300 pages of information." *Id.*  The FBI acknowledged the request and assigned the request number 1192365. *Id.* ¶ 19 & Ex. J.  In the acknowledgement, the FBI explained that express authorization and consent of the third party, Mr. Guzman, whom the request implicated, was needed to release the information, and the FBI accordingly attached a "Certification of Identity" form for Mr. Guzman to complete.  *Id.*  Around June 21, 2012, Mr. Pinson returned the completed Certification of Identity form to the FBI, and on July 9, 2012, the FBI acknowledged receipt. *Id.* ¶¶ 20–21 &

Exs. K, L.  On November 16, 2012, the FBI advised Mr. Pinson that it had reviewed 263 pages responsive to his request and that all pages were being withheld pursuant to FOIA Exemptions 6, 7(C), and 7(F).  *Id.* ¶ 22 & Ex. M.

### 5.  Request No. 1194851

On July 8, 2012, Mr. Pinson submitted a request to the FBI for records from the Houston field office "regarding, referencing or containing the name Ismael Eduardo Guzman, including investigative reports, transcripts, photographs, records, memorandums, electronic files or data, emails, video or audio recordings, and any other available information."  Hardy Decl. ¶ 38 & Ex. Z.  Mr. Pinson included Mr. Guzman's signed Certification of Identity form authorizing the FBI to release the responsive records to Mr. Pinson.  *Id.*  The FBI acknowledged receipt and assigned the request number 1194851 on July 19, 2012.  *Id.* ¶ 39 & Ex. AA.  By letter dated July 31, 2012, the FBI advised Mr. Pinson that it was unable to identify any main files responsive to his request.  *Id.* ¶ 40 & Ex. BB.  When the letter was returned to the FBI as not deliverable around August 25, 2012, the FBI resent the letter to Mr. Pinson's proper address on February 13, 2013.  *Id.* ¶ 40 n.4.

### 6.  Request No. 1199194

In August 2012, Mr. Pinson submitted a request to the FBI for records "regarding investigations of the California Aryan Brotherhood."  *See* Corr. 2d Am. Compl. at 6; Hardy Decl. ¶ 28 & Ex. Q.  The FBI acknowledged receipt of the request and assigned the request number 1199194 on September 27, 2012.  Hardy Decl. ¶ 29 & Ex. R.  By letter dated October 1, 2012, the FBI informed Mr. Pinson that the information requested on the California Aryan Brotherhood could be accessed free of charge online at the FBI's Vault.  *Id.* ¶ 30 & Ex. S.

### 7.  Request No. 1199202

In August 2012, Mr. Pinson submitted a request to the FBI for records "regarding investigations of the California Mexican Mafia," to which the FBI assigned the request number 1199202.  *See* Corr. 2d Am. Compl. at 6; Hardy Decl. ¶¶ 24, 25 & Exs. N, O.  By two separate letters dated September 27, 2012, the FBI both acknowledged receipt of the request and advised Mr. Pinson that the information requested on the California Mexican Mafia could be accessed free of charge online at the FBI's Vault, the FBI's electronic reading room.  Hardy Decl. ¶¶ 25, 26 & Exs. O, P.

### 8.  Request No. 1202477

By letter dated October 14, 2012, Mr. Pinson submitted a request to the FBI seeking records pertaining to "the death of an individual known as Imam Luqman Abdullah on or about 10–28–10."  Hardy Decl. Ex. NN.  The FBI acknowledged the request and assigned the request number 1202477.  *See id.* ¶ 54 & Ex. OO.  In the acknowledgement, the FBI explained that express authorization and consent of the third party, Mr. Abdullah, whom the request implicates, was needed to release the information, and the FBI accordingly attached a "Certification of Identity" form for Mr. Abdullah to complete.  *Id.*

### 9.  Request No. 1210449

On February 27, 2013, Mr. Pinson submitted a request to the FBI seeking "production of FBI File No. 90–DN–C50642."  *See* Corr. 2d Am. Compl. at 7; Hardy Decl. ¶ 69 & Ex. BBB.  By letter dated March 18, 2013, the FBI acknowledged receipt and assigned the request number 1210449.  Hardy Decl. ¶ 70 & Ex. CCC.  A few weeks later, by letter dated April 4, 2013, the FBI advised Mr. Pinson that it had located pages responsive to his request and he would owe a duplication fee for processing.  *Id.* ¶ 71 & Ex. DDD.  On April 9, 2013, Mr. Pinson agreed to pay

the fees and also requested the release to be sent to "Attorney Edwin Aro" in Denver.  *Id.* ¶ 72 &
Ex. EEE.  The FBI on September 17, 2013, notified Mr. Pinson that the FBI had reviewed 748
pages and released 381 pages to him at the requested address.  *Id.* ¶ 73 & Ex. FFF.  The FBI
asserted FOIA Exemptions 6, 7(C), 7(D), and 7(E) to withhold certain information from these
records.  *Id.*

### 10.  Request No. 1217894

By letter dated June 19, 2013, the FBI opened request number 1217894 to address Mr.
Pinson's June 1, 2013 request for records pertaining to James Martin.  *See* Corr. 2d Am. Compl.
at 7; Hardy Decl. ¶¶ 75, 113, 114 & Exs. PPPP, QQQQ.  On August 22, 2013, the FBI advised
Mr. Pinson that it had located pages responsive to his request and he would owe a duplication fee
for processing.  Hardy Decl. ¶ 115 & Ex. RRRR.  Subsequently on August 30, 2013, Mr. Pinson
agreed to pay and simultaneously requested the release to be sent to "Edwin Aro – Attorney" in
Denver.  *Id.* ¶ 116 & Ex. SSSS.  The FBI on September 17, 2014, notified Mr. Pinson that the
FBI had reviewed 29 pages responsive to his request and released 17 pages to him at the
requested address.  *Id.* ¶ 117 & Ex. TTTT.  The FBI asserted FOIA Exemptions 6 and 7(C) to
withhold certain information from these records.  *Id.*  There is no record of Mr. Pinson filing an
appeal of this decision by November 16, 2014, 60 days from the date of the September 17 letter.
*Id.*

### 11.  Request No. 1217895

By letter dated June 19, 2013, the FBI opened request number 1217895 to address Mr.
Pinson's June 1, 2013 request for records pertaining to Bryan Cook.  *See* Corr. 2d Am. Compl. at
7; Hardy Decl. ¶¶ 75, 118, 119 & Exs. UUUU, VVVV.  On October 4, 2013, the FBI advised
Mr. Pinson that it had located pages responsive to his request and he would owe a duplication fee

for processing.  Hardy Decl. ¶ 120 & Ex. WWWW.  Mr. Pinson subsequently agreed to pay on October 11, 2013, and also requested the release to be sent to "Edwin Aro – Attorney" in Denver.  *Id.* ¶ 121 & Ex. XXXX.  By letter dated April 30, 2014, the FBI released 14 pages to the requested address and withheld certain information pursuant to FOIA Exemptions 6 and 7(C).  *Id.* ¶ 122 & Ex. YYYY.

### 12.  Request No. 1217896

By letter dated June 19, 2013, the FBI opened request number 1217896 to address Mr. Pinson's June 1, 2013 request for records pertaining to Clay Palmer.  Hardy Decl. ¶¶ 86, 87 & Exs. RRR, SSS.  On December 16, 2013, the FBI advised Mr. Pinson that it had located pages responsive to his request and he would owe a duplication fee for processing.  *Id.* ¶ 88 & Ex. TTT.  Mr. Pinson subsequently agreed to pay on December 20, 2013 and also requested the release to be sent to "Edwin Aro" in Denver.  *Id.* ¶ 89 & Ex. UUU.  By letter dated February 4, 2014, the FBI released 115 pages to the requested address and withheld certain information pursuant to FOIA Exemptions 4, 6, 7(C), and 7(D).  *Id.* ¶ 90 & Ex. VVV.

### 13.  Request No. 1217898

By letter dated June 19, 2013, the FBI opened request number 1217898 to address Mr. Pinson's June 1, 2013 request for records pertaining to Gregory Joiner.  Hardy Decl. ¶¶ 108, 109 & Exs. KKKK, LLLL.  On August 22, 2013, the FBI advised Mr. Pinson that it had located pages responsive to his request and he would owe a duplication fee for processing.  *Id.* ¶ 110 & Ex. MMMM.  Subsequently on August 30, 2013, Mr. Pinson agreed to pay and also requested the release to be sent to "Edwin Aro – Attorney" in Denver.  Hardy Decl. ¶ 111 & Ex. NNNN. The FBI on September 17, 2014, notified Mr. Pinson that the FBI had reviewed 85 pages responsive to his request and released 59 pages to him at the requested address.  *Id.* ¶ 112 & Ex.

OOOO.  The FBI asserted FOIA Exemptions 6 and 7(C) to withhold certain information from these records.  *Id.*  There is no record of Mr. Pinson filing an appeal of this decision by November 16, 2014, 60 days from the date of the September 17 letter.  *Id.*

### 14.  Request No. 1217899

By letter dated June 19, 2013, the FBI opened request number 1217899 to address Mr. Pinson's June 1, 2013 request for records pertaining to Mark Baker.  Hardy Decl. ¶¶ 75, 76 & Exs. GGG, HHH.  On July 1, 2013, the FBI advised Mr. Pinson that the information was exempt from disclosure pursuant to FOIA Exemption 7(A).  *Id.* ¶ 77 & Ex. III.  Subsequently, Mr. Pinson filed appeals of the FBI's actions to the Office of Information Policy ("OIP") by letters dated July 9 and August 10, 2013, of which the OIP acknowledged receipt and assigned the appeal number 2013–05004.  *Id.* ¶¶ 78, 79 & Exs. JJJ, KKK.  The OIP affirmed the FBI's response on September 17, 2013.  *Id.* ¶ 80 & Ex. LLL.

Upon learning of this litigation, the FBI by letter June 30, 2014, reviewed and released two pages to Mr. Pinson because the investigation referenced on the responsive records was no longer pending.  *Id.* ¶ 81 & Ex. MMM.  As a result, the documents were no longer exempt from disclosure in their entirety pursuant to Exemption 7(A).  Instead, the FBI asserted FOIA Exemptions 6, 7(C), and 7(E) to withhold certain information from these two pages.  *Id.* Because the Bureau of Prisons ("BOP") returned the response to the FBI,[2] on September 8, 2014, the FBI re-mailed the responsive records to James Ridgeway in Washington, D.C., a designee and address he provided in an August 18, 2014 letter.  Hardy Decl. ¶¶ 83–85 & Exs. OOO, PPP, QQQ.

---

[2] The BOP returned the letter in accordance with a policy on "Correspondence," which prohibits correspondence that contains documents with the name of an inmate that is not a co–defendant of plaintiff's.  *See* Hardy Decl. ¶ 82 & Ex. NNN.

### 15.  Request No. 1217900

By letter dated June 19, 2013, the FBI opened request number 1217900 to address Mr.

Pinson's June 1, 2013 request for records pertaining to Pablo Zuniga-Garcia.  Hardy Decl. ¶¶ 92,

93 & Exs. WWW, XXX.  In a separate letter on June 19, 2013, the FBI advised Mr. Pinson that

it had located pages responsive to his request and he would owe a duplication fee for processing.

*Id.* ¶ 94 & Ex. YYY.  Subsequently on August 30, 2013, Mr. Pinson agreed to pay and also

requested the release to be sent to "Edwin Aro – Attorney" in Denver.  *Id.* ¶ 95 & Ex. ZZZ.  The

FBI on May 14, 2014, reviewed and released 20 pages responsive to his request at his previous

address in Florence.  *Id.* ¶ 96 & Ex. AAAA.  The FBI asserted FOIA Exemptions 6, 7(C), and

7(D) to withhold certain information from these records.  *Id.*

### 16.  Request No. 1217901

By letter dated June 19, 2013, the FBI opened request number 1217901 to address Mr.

Pinson's June 1, 2013 request for records pertaining to Christopher Anderson.  Hardy Decl. ¶¶

98, 99 & Exs. BBBB, CCCC.  On October 2, 2013, the FBI advised Mr. Pinson that the

information requested was exempt from disclosure pursuant to FOIA Exemption 7(A).  *Id.* ¶ 100

& Ex. DDDD.

### 17.  Request No. 1229060

On September 11, 2013, Mr. Pinson submitted a request to the FBI for records "related to

a 9/10/13 FBI interview of [himself] at ADX Florence."  Hardy Decl. ¶ 124 & Ex. ZZZZ.  After

acknowledging receipt of the request and assigning the request number 1229060, the FBI

released two pages to Mr. Pinson and withheld information pursuant to Privacy Act Exemption

(j)(2) and FOIA Exemptions 6, 7(A), 7(C), 7(D), and 7(F).  *Id.* ¶¶ 125, 126 & Exs. AAAAA,

BBBBB.

## B.  Purportedly Exhausted Requests

### 1.  Request No. 1171229[3]

On July 22, 2011, Mr. Pinson submitted a four-part request, which is referred to in the amended complaint as "All records relating to myself from FCI Talladega," "August 2010 Death of Bobby Cowley,"[4] "All records relating to myself from USP Florence, USP Beaumont," and "All records relating to myself from USP Victorville."  Corr. 2d Am. Compl. at 7; *see* Hardy Decl. ¶ 137 & Ex. DDDDD.  The FBI acknowledged receipt of the request and assigned it Request No. 1171229; however, the FBI notified Mr. Pinson that it was unable to identify any responsive records on August 18, 2011.  Hardy Decl. ¶ 138 & Ex. EEEEE.  On September 20, 2011, Mr. Pinson filed an appeal, to which the OIP assigned appeal number AP–2011–03134. *Id.* ¶¶ 139–40 & Ex. FFFFF, GGGGG.  Finally, on December 21, 2011, the OIP affirmed, on partly modified grounds, the FBI's action on Mr. Pinson's request, citing FOIA Exemption 7(E) to the extent the records required confirming or denying an individual's placement on a government watch list.  *Id.* ¶¶ 140–41 & Ex. GGGGG, HHHHH.  The OIP further advised Mr.

---

[3] Mr. Pinson in his Second Amended Complaint and the DOJ in its statement of facts treat this request as four unnumbered requests, *see* Corr. 2d Am. Compl. at 7; Defs.' Mem. Supp. at 17–19, but the DOJ states that these requests were assigned Request No. 1171229 and subsequently refers to these requests as a single request in its argument, *see* Defs.' Mem. Supp. at 17–19, 23–24.  The Court will treat these four unnumbered requests as one single numbered request.

[4] The FBI claims it did not receive this request, even though the FBI believes this request refers to one of the requests made on July 22, 2011, because the name of the request is not specific enough.  *See* Defs.' Mem. Supp. at 18; Hardy Decl. ¶ 142 n.17.  While "Bobby Cowley" is not explicitly referenced in the July 22, 2011 request, the "August 2010 Death of Bobby Cowley" request, to which Mr. Pinson refers in his complaint, is most likely the second of the four-part request because not only do the dates in the request and name of the request align, but Mr. Pinson in his complaint also groups this request with the other three requests.  *See* Corr. 2d Am. Compl. at 7.  Furthermore, it would be peculiar if the FBI only received three requests out of the four-part request.  The Court will accordingly treat the "August 2010 Death of Bobby Cowley" as part of Request No. 1171229.

Pinson that the FBI did not process the first part of his request because Mr. Pinson had already received such records in response to Request No. 1153107, and that the FBI had conducted an adequate search. *Id.* ¶ 141 & Ex. HHHHH.

### 2.  Request No. 1199078

On August 31, 2012, Mr. Pinson submitted a request to the FBI seeking records "relating to any investigation of the March 16, 2000 shooting death of Fulton County, GA deputy sheriff Ricky Kinchen." Hardy Decl. ¶ 42 & Ex. CC.  By letter dated September 26, 2012, the FBI acknowledged the request and assigned the request number 1199078. *Id.* ¶ 43 & Ex. DD.  The FBI also advised Mr. Pinson that records responsive to his request were previously processed and that 350 pages were available for release in hard copy at a cost of $25.00. *Id.*

By letter dated November 9, 2012, the FBI acknowledged receipt of Mr. Pinson's October 2, 2012 $25.00 payment and simultaneously notified Mr. Pinson that the responsive material needed to be reprocessed to make it appropriate for release to a third party. *Id.* ¶¶ 44, 45 & Exs. EE, FF.  By letter dated May 9, 2013, the FBI released 350 out of 555 pages the FBI reviewed responsive to his request and withheld certain information pursuant to FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E). *Id.* ¶ 46 & Ex. GG.

By letter dated June 14, 2013, the FBI instructed Mr. Pinson to provide an alternative address to send the documents because the BOP had previously returned the FBI's 350 page release on May 21, 2013.[5] *Id.* ¶¶ 46–48 & Exs. GG, HH, II.

The FBI re-mailed the documents on July 8, 2013, after Mr. Pinson provided an alternative address on June 17, 2013. *Id.* ¶ 49 & Ex. JJ.  Mr. Pinson subsequently filed an appeal

---

[5] The BOP returned the letter in accordance with a policy on "Correspondence," which prohibits correspondence that contains FBI case documents on other inmates incarcerated at the Administrative Maximum Security Institution. *See* Hardy Decl. ¶ 47 & Ex. HH.

with the OIP around July 9, 2013, which the OIP acknowledged and assigned appeal number 2013–04349.  *Id.* ¶¶ 50, 51 & Exs. KK, LL.  By letter dated September 10, 2013, the OIP notified plaintiff that his appeal was being closed due to this pending litigation.  *Id.* ¶ 52 & Ex. MM.

### 3.  Request No. 1199153

In August 2012, Mr. Pinson submitted a request to the FBI for records regarding "investigations of the Florencia 13 gang in Los Angeles, California."  *See* Corr. 2d Am. Compl. at 6; Hardy Decl. ¶ 32 & Ex. T.  The FBI acknowledged receipt of the request and assigned the request number 1199153 by letter dated September 26, 2012.  Hardy Decl. ¶ 33 & Ex. U.  By letter dated February 19, 2013, the FBI notified Mr. Pinson that it was releasing 100 pages with some information redacted pursuant to FOIA Exemptions 6, 7(A), 7(C), 7(D), and 7(E).  *Id.* ¶ 34 & Ex. V.

Mr. Pinson appealed this decision to the OIP on February 28, 2013.  *Id.* ¶ 35 & Ex. W. On March 20, 2013, the OIP acknowledged receipt of the appeal and assigned it appeal number 2013–02370.  *Id.* ¶ 36 & Ex. X.  By letter dated March 28, 2013, the OIP notified Mr. Pinson that it was closing the appeal due to this pending litigation.  *Id.* ¶ 37 & Ex. Y.

### 4.  Request No. 1203873

On November 5, 2012, Mr. Pinson submitted a request to the FBI seeking records "produced on or after Jan. 1, 2000 that mentions or references Jamil Abdullah Al–Amin, Date of Birth 10–4–1943."  *See* Corr. 2d Am. Compl. at 6; Hardy Decl. ¶ 56 & Ex. PP.  By letter dated December 3, 2012, the FBI acknowledged the request, assigned the request number 1203873, and also attached a "Certification of Identity" form for Mr. Al–Amin to complete.  Hardy Decl. ¶ 57 & Ex. QQ.  The FBI explained that express authorization and consent of the third party Mr.

Al–Amin was needed to release the information because without Mr. Al–Amin's authorization and consent, release of the information would result in an unwarranted invasion of Mr. Al–Amin's personal privacy.  *Id.*

Shortly thereafter, on December 11, 2012, Mr. Pinson filed an appeal, which by letter dated January 9, 2013, the OIP acknowledged and assigned the appeal number 2013–01272.  *Id.* ¶¶ 58, 59 & Exs. RR, SS.  In this appeal Mr. Pinson argued that he submitted a Certification of Identity form from Mr. Al–Amin with the original request and that it was improper to request a second one.  *Id.* ¶ 58 & Ex. RR.  By letter dated February 11, 2013, the OIP informed Mr. Pinson that his appeal was being closed due to this pending litigation.  *Id.* ¶ 60 & Ex. TT.

### 5.  Request No. 1210450

On February 26, 2013, Mr. Pinson submitted a request to the FBI seeking "Los Angeles Field Office File No. 166E–LA–219961–302," and on March 18, 2013, the FBI acknowledged receipt of the request and assigned the request number 1210450.  Hardy Decl. ¶¶ 61, 62 & Exs. UU, VV.  By letter dated April 24, 2013, the FBI notified Mr. Pinson that it located approximately 844 pages that were potentially responsive to his request and that Mr. Pinson would owe the FBI $74.40 for a paper release, which Mr. Pinson agreed to pay on April 30, 2013.  *Id.* ¶¶ 63, 64 & Exs. WW, XX.  After reviewing 760 pages, the FBI released 135 pages and withheld certain information pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(E).  The FBI did not collect payment at this time.  *Id.* ¶ 65 & Ex. YY.  By letter dated June 1, 2014, Mr. Pinson filed an appeal with the OIP claiming that the FBI reviewed and produced irrelevant and an insufficient amount of records and that the FOIA exemptions asserted by the FBI were used too broadly.  *Id.* ¶ 66 & Ex. ZZ.  While the OIP acknowledged receipt of the appeal and assigned

the appeal number 2014–03497, the matter has not yet been adjudicated.  *Id.* ¶¶ 67, 68 & Ex. AAA.

### 6.  Request No. 1217897

By letter dated June 19, 2013, the FBI opened request number 1217897 to address Mr. Pinson's June 1, 2013 request for records pertaining to Manuel Torrez.  Hardy Decl. ¶¶ 102, 103 & Exs. EEEE, FFFF.  On July 1, 2013, the FBI advised Mr. Pinson that the information requested was exempt from disclosure pursuant to FOIA Exemption 7(A).  *Id.* ¶ 104 & Ex. GGGG.  By letters dated July 9 and August 10, 2013, Mr. Pinson appealed the FBI response, which the OIP acknowledged and assigned the appeal number 2013–04612.  *Id.* ¶¶ 105, 106 & Exs. HHHH, IIII.  The OIP affirmed the FBI's actions on October 29, 2013.  *Id.* ¶ 107 & Ex. JJJJ.

### C.  Unnumbered Requests

In his complaint, Mr. Pinson lists twelve unnumbered requests submitted between April 28, 2011 and August 6, 2012, to which he claims, the FBI failed to respond.  *See* Corr. 2d Am. Compl. at 7–8.  The DOJ states that as to seven of these twelve unnumbered requests, it has conducted a search of its records for documentation of these requests, but has no record of ever receiving them.[6]  *See* Hardy Decl. ¶¶ 132–36, 149, 152.  In regards to the FOIA request labeled "Investigations in 2007–08 of Assaults at USP Florence, Victorville," the FBI claims it referred the request to the Bureau of Prisons ("BOP") because the BOP is most likely in possession of such records.  The other four FOIA requests are discussed below.

---

[6] Mr. Pinson refers to these seven unnumbered requests as: (1) "Records on Jamil Al–Amin," (2) "All Criminal Matter Referrals from USP Victorville," (3) "All Criminal Matter Referrals from ADX Florence," (4) "All Criminal Matter Referrals from USP Lewisburg," (5) "All Criminal Matter Referrals from FCI Talladega," (6) "Letters to Wardens of FCI Talladega," and (7) "Documents Related to Lavallee Prosecution."  Corr. 2d Am. Compl. at 7–8.

### 1. Letters to Wardens of USP's Victorville, Florence, Coleman

One June 6, 2011, Mr. Pinson submitted a request seeking "production of all letters written by [the FBI] in California, Colorado to the Wardens of the Federal Correctional Complex or institutions in Florence, CO or/and Victorville, CA for any reason from 2008 to the present." Hardy Decl. ¶ 147 & Ex. IIIII.  The FBI responded on July 5, 2011 that Mr. Pinson's letter did not contain enough information to permit a search of the FBI's records.  *Id.* ¶ 148 & Ex. JJJJJ.

### 2. Investigations of CA AB & Mexican Mafia Since 2005 and All FD–302's of USP Victorville Homicide Investigations

On June 5, 2011, Mr. Pinson submitted a request for all documents "concerning the activities of the California Mexican Mafia and Aryan brotherhood gangs within federal prisons generated since 2007."  Hardy Decl. ¶ 150 & Ex. KKKKK.  In addition, on August 6, 2012, Mr. Pinson submitted a request for "all information, specifically Form–302's, produced during investigations of inmate homicides at the U.S. Penitentiary in Victorville, California between 2004 and 2012."  *Id.* ¶129 & Ex. CCCCC; *see* Corr. 2d Am. Compl. at 7.  The FBI responded to these requests stating that the requests were too vague or not descriptive enough to permit a search of its records on July 5, 2011, and September 25, 2012, respectively.  Hardy Decl. ¶¶ 130, 151 & Ex. LLLLL.

### 3. Addresses of All FBI Offices

On May 6, 2011, Mr. Pinson submitted a request seeking an "[a]ddress directory to all agency departments or field offices."  Hardy Decl. ¶ 153 & Ex. MMMMM.  The FBI responded stating that his request did not contain enough information to conduct a search.  *Id.* ¶ 154 & Ex. NNNNN.  Mr. Pinson subsequently filed an appeal, on June 8, 2011, to which the OIP assigned number 2011–02269.  *Id.* ¶¶ 155–56 & Exs. OOOOO, PPPPP.  In its response on September 26, 2011, the OIP affirmed in part the FBI's actions, and also provided Mr. Pinson with a nine page

document, printed from the FBI's website containing the contact information for all FBI field offices by state. *Id.* ¶157 & Ex. QQQQQ.

## III.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non–movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non–movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non–movant, *see Anderson*, 477 U.S. at 255.  Nevertheless,

conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). To meet its burden, a defendant may rely on declarations that are reasonably detailed and non–conclusory. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV.  ANALYSIS

### A.  Requests Without Responses

Mr. Pinson's complaint lists twelve unnumbered FOIA requests that he submitted to the FBI, for all of which he claims to have never received a response.  *See* Corr. 2d Am. Compl. at 7–8.  In the DOJ's summary of facts and statement of material facts as to which there is no genuine issue, the FBI contends that it has no record of having received seven of these twelve requests,[7] *see* Defs.' Mem. Supp. at 16–20; Hardy Decl. ¶¶ 132–36, 149, 152, and also contends that it referred one unnumbered request, "Investigations in 2007–08 of Assaults at USP Florence, Victorville," to the BOP, *see* Defs.' Mem. Supp. at 21; Hardy Decl. ¶¶ 158–59.

As "[f]ederal jurisdiction over a FOIA claim is dependent upon a showing that an agency improperly withheld agency records," if there is no "'showing that the agency received the request, the agency has no obligation to respond to it.'"  *See Banks v. Lappin*, 539 F. Supp. 2d 228, 235 (D.D.C. 2008) (quoting *Hutchins v. Dep't of Justice*, No. 00–2349, 2005 WL 1334941, at *2 (D.D.C. June 6, 2005)); *see also Trupei v. Bureau of Customs & Border Prot.*, No. 07– 0475, 2008 WL 249878, at *1 (D.D.C. Jan. 29, 2008) ("[A]n agency's FOIA obligations are not triggered until a request has been received.").  In order to create an issue of material fact, a plaintiff must offer evidence that the requests were received by the agency, rather than merely stating that the requests were placed in the mail.  *See Banks*, 539 F. Supp. 2d at 235 ("The mailing of a FOIA request to a federal government agency does not constitute its receipt by the agency.").

---

[7] Mr. Pinson refers to these seven unnumbered requests as: (1) "Records on Jamil Al– Amin," (2) "All Criminal Matter Referrals from USP Victorville," (3) "All Criminal Matter Referrals from ADX Florence," (4) "All Criminal Matter Referrals from USP Lewisburg," (5) "All Criminal Matter Referrals from FCI Talladega," (6) "Letters to Wardens of FCI Talladega," and (7) "Documents Related to Lavallee Prosecution." Corr. 2d Am. Compl. at 7–8.

Here, not only has Mr. Pinson failed to provide any evidence that these requests were received by the FBI, but Mr. Pinson's opposition fails to mention these requests at all.  "In this district, when a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded."  *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008).  Moreover, because Mr. Pinson has not contested the FBI's factual statement that it never received those requests, that fact is deemed conceded.  The Court therefore grants the FBI's motion for summary judgment as to the seven unnumbered requests.

The FBI also contends that it referred one unnumbered request, "Investigations in 2007-08 of Assaults at USP Florence, Victorville," to the BOP because the FBI determined that the BOP is the agency most likely in possession of the requested records.  Hardy Decl. ¶ 159.  The referral of records does not automatically relieve the FBI of its disclosure responsibility. "[A]gencies are 'obligated to account for the responsive materials located in their records, even if the decision to release or withhold information is left to the component where those records originated.'"  *Lea v. Exec. Office for U.S. Attorneys*, 85 F. Supp. 3d 85, 88 (D.D.C. 2015) (quoting *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 296 n.2 (D.D.C. 2014)).  Mr. Hardy has not attested to what happened to the referral, and the "referral of records could constitute an improper withholding if the net effect of the referral procedure is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them."  *Id.* at 88–89 (alterations and internal quotations omitted).  Because the Court has insufficient information to assess whether the referral was proper and whether the referral was sufficiently accounted for, the Court denies

summary judgement as to the unnumbered request "Investigations in 2007-08 of Assaults at USP Florence, Victorville."

## B. Failure to Exhaust Administrative Remedies

The DOJ seeks summary judgment as to twenty of the FOIA requests at issue[8] claiming that Mr. Pinson failed to exhaust administrative appeal remedies before seeking judicial redress in this Court. *See* Defs.' Mem. Supp. at 31–33. Specifically, the DOJ contends that Mr. Pinson failed to exhaust his administrative remedies because, for each of these requests, he did not file an appeal of the agency's decision. *Id.* Mr. Pinson disputes the DOJ's exhaustion argument as it pertains to these requests stating that he did not receive responses and never had a chance to appeal. *See* Pl.'s Resp. at 1–3, ECF No. 241; Pinson Decl. ¶¶ 1–2, ECF No. 241.

In general, a FOIA requester must exhaust his administrative remedies before filing suit in federal court. *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). This means that the requester must appeal an adverse determination of his FOIA request to the head of the agency before suing that agency in federal court. *See Smith v. Fed. Bureau of Prisons*, 517 F. Supp. 2d 451, 453 (D.D.C. 2007). If the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency. *See Wilbur*, 355 F.3d at 676–77.

---

[8] The twenty requests at issue include Request Nos. 1153107, 1178465, 1186051, 1192365, 1194851, 1199194, 1199202, 1202477, 1210449, 1217894, 1217895, 1217896, 1217898, 1217899, 1217900, 1217901, and 1229060, as well as unnumbered requests "Investigations of the CA AB and Mexican Mafia," "FD–302s of USP Victorville Homicide Investigations," and "Addresses of All FBI Offices. *See* Defs.' Mem. Supp. at 31–33. The Court will also discuss exhaustion with respect to the request for "Letters to Wardens of USP's Victorville, Florence, Coleman," which Mr. Pinson refers to in his opposition. *See* Pl.'s Resp. at 1; *infra* Part IV.B.5.

But FOIA's exhaustion requirement is a prudential consideration, rather than a jurisdictional prerequisite. *See id.* at 677. A court therefore may waive the exhaustion requirement under certain circumstances, such as if an agency failed to respond to the FOIA request within a certain number of days. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i)). Further, if there is a genuine dispute of material fact on the exhaustion issue, a court may refuse to grant summary judgment for the agency. *See Jones v. U.S. Dep't of Justice*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008). A court may, for example, deny summary judgment to an agency that claims to have notified a plaintiff of its response to a FOIA request if the plaintiff attests that he never received the agency's response and if the agency fails to offer evidence to the contrary. *See id.* at 67 ("If Jones did not receive a response to his FOIA request, then the agency did not comply with its duty to make a determination within 20 days after receiving Jones' request and 'immediately notify the person making such request' of its determination." (quoting 5 U.S.C. § 552(a)(6)(A)(i))).

**1. Request Nos. 1210449, 1217894, 1217895, 1217896, 1217898, 1217899, and 1217900**

The DOJ first contends that it is entitled to summary judgment as to Request Nos. 1210449, 1217896, 1217894, 1217895, 1217898, 1217899, and 1217900[9] because Mr. Pinson failed to exhaust his administrative remedies. *See* Defs.' Mem. Supp. at 31. More specifically,

___

[9] In fact, the DOJ's memorandum argues that the FBI delivered the records for Request No. 1217901 (not 1217900) to an alternate address designated by Mr. Pinson. *See* Defs.' Mem. Supp. at 31. But the documents in the record indicate that it was with respect to Request No. 1217900 that Mr. Pinson requested the responsive records be delivered to an alternate address. *See* Hardy Decl. Ex. ZZZ. The Court believes the DOJ has confused Request Nos. 1217901 and 1217900, and the Court will alter the numbers throughout this opinion accordingly. In any event, as explained below, the Court denies the DOJ's motion for summary judgment with respect to both requests.

the DOJ argues that Mr. Pinson "was notified that his mail from the FBI was not delivered and the FBI delivered the records to alternate addresses designated by [Mr. Pinson]." *Id.* Mr. Pinson argues that he never received these responses because the BOP rejected his mail, and thus he was unable "to see and evaluate the FOIA responses . . . and perfect an appeal to the Office of Information Policy." Pinson Decl. ¶¶ 1–2; *see* Pl.'s Resp. at 2–3.

At the outset, the Court notes that the FBI only provides evidence to demonstrate that the FBI requested an alternate address to send the material when it was returned by the BOP as to Request No. 1217899. *See* Hardy Decl. ¶¶ 82–84. As to Request Nos. 1210449, 1217894, 1217895, 1217896, 1217898, and 1217900, the DOJ fails to provide evidence to demonstrate that the mail was returned by the BOP or the FBI requested an alternate address. However, the evidence provided does show that Mr. Pinson voluntarily provided an alternative address in his correspondence with the FBI and the FBI delivered responsive records to these alternate addresses for all requests except Request No. 1217900.

For Request Nos. 1210449, 1217894, 1217895, 1217896, and 1217898, Mr. Pinson, after receiving notification from the FBI that he would need to pay a processing fee, wrote to the FBI agreeing to pay the fees and requested the responsive materials to be sent to an alternative address. In all five instances, Mr. Pinson requested the materials be sent to "Edwin Aro" at Arnold & Porter, LLP's Denver Office.[10] *See* Hardy Decl. Exs. EEE, SSSS, XXXX, UUU, NNNN, ZZZ; *See also Denver*, Arnold & Porter, http://www.arnoldporter.com/en/about/offices/denver (last visited Mar. 28, 2016) (displaying the Denver office's address).

---

[10] It is unclear why Mr. Pinson requested these materials to be sent to this address and whether he had expected to be notified when Mr. Aro received the FBI's responses.

For Request No. 1217899, Mr. Pinson provided an alternate address when the FBI notified Mr. Pinson that his mail was not deliverable due to the BOP's regulations.  Per Mr. Pinson's request, the FBI sent the materials to James Ridgeway, Director and Editor of Solitary Watch, a non–profit organization. [11]  *See* Hardy Decl. ¶¶ 82–85 & Ex. PPP; *see also About*, Solitary Watch, http://solitarywatch.com/about/ (last visited Mar. 28, 2016).  For the following reasons, Mr. Pinson fails to create a material issue of fact regarding Request Nos. 1210449, 1217894, 1217895, 1217896, 1217898, and 1217899.

Mr. Pinson does not provide any evidence that Mr. Aro or Mr. Ridgeway, the persons to whom he requested the responses be sent, never received the responses.  Mr. Pinson only claims that he himself never received the material, which would only be natural because the material, upon his request, was sent to Mr. Aro and Mr. Ridgeway, not Mr. Pinson.

The Supreme Court has emphasized that in FOIA cases, courts generally accord government records and official conduct a presumption of legitimacy.  *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991); *see also Schoenman v. FBI*, No. CIV.A.04–2202(CKK), 2006 WL 1582253, at *10 (D.D.C. June 5, 2006).  Here, the DOJ has provided a detailed declaration from Mr. Hardy and provided documents, which include Mr. Pinson's requests and correspondence, as well as the FBI's dated responses to Mr. Pinson's letters.  Mr. Pinson, in contrast, has not only failed to address the government's argument, but also failed to provide counter evidence that either Mr. Aro or Mr. Ridgeway did not receive these responses.  Thus, Mr. Pinson has not rebutted the good faith presumption accorded government action.

---

[11] It is unclear why Mr. Pinson requested these materials to be sent to this address and whether he had expected to be notified when Mr. Ridgeway received the FBI's responses.

Because Mr. Pinson does not address the fact that these responses were requested and actually sent to an alternative address and not to his prison, the Court finds that Mr. Pinson has failed to raise a material issue of fact and the DOJ is entitled to summary judgment as to request numbers 1210449, 1217894, 1217895, 1217896, 1217898, and 1217899.

As to Request No. 1217900, however, Mr. Pinson requested the materials to be sent to an alternate address, specifically to Edwin Aro at Arnold & Porter. *See* Hardy Decl. Ex. ZZZ. Despite this request, the FBI sent the responsive materials to the ADX Florence facility. *Compare* Hardy Decl. Ex. AAAA *with* Hardy Decl. Ex. ZZZ. This erroneous mailing of the document cannot be attributed to Mr. Pinson's action or inaction. Accordingly, summary judgment will be denied as to request No. 1217900, and the FBI will be ordered to re-mail the responsive documents to the address Mr. Pinson provided.

## 2. Request No. 1203873

In its summary of facts and statement of material facts as to which there is no genuine issue, the FBI contends that the OIP closed Mr. Pinson's appeal of Request No. 1203873 due to the pending litigation.[12] Defs.' Mem. Supp. at 9; Hardy Decl. ¶ 60 & Ex. TT. The Court notes that the DOJ does not explicitly raise an argument or move for summary judgment as to Request No. 1203873. The OIP acknowledged Mr. Pinson's December 11, 2012 appeal on January 9, 2013, but failed to make a determination before closing the appeal on February 11, 2013. Hardy Decl. ¶¶ 58–60 & Exs. RR, SS, TT. If Mr. Pinson filed his complaint after his appeal went unanswered for more than twenty days, he would be deemed to have constructively exhausted his administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i) (providing that if an agency "fails to

---

[12] The Court notes that the DOJ does not explicitly raise an argument or move for summary judgment as to Request No. 1203873.

comply with the applicable time limit provisions," any person making a request "shall be deemed to have exhausted his administrative remedies with respect to such request"). Here, the OIP failed to make a determination within twenty days and instead closed the appeal on February 11, 2013, by which time 62 days had lapsed since the appeal was filed on December 11, 2012.[13] Because the OIP failed to make a timely determination and Mr. Pinson included this request number in his verified Second Amended Complaint filed on October 23, 2013, after OIP's close of the appeal, Mr. Pinson is deemed to have constructively exhausted his administrative remedies.

In his administrative appeal, Mr. Pinson claimed that he had "submitted a properly executed Certificate of Identity from Mr. Al–Amin with [his] original request," Hardy Decl. Ex. RR; the FBI, on the other hand, states that it has no record of receiving a Certificate of Identity. Because Mr. Pinson fails to provide any evidence to the contrary and his opposition to the DOJ's motion makes no mention of this request at all, the Court deems Mr. Pinson to have conceded this claim. As a result, with a declaration from the FBI stating it has properly withheld the records and because Mr. Pinson concedes these facts, the Court has no statutory duty to perform, *see Cole v. Dep't of Justice*, 905 F. Supp. 2d 293, 296 (D.D.C. 2012), and finds that there is no genuine issue of material fact. The Court will accordingly grant summary judgment to the DOJ for Request No. 1203873.

### 3. Request Nos. 1153107, 1186051, 1192365, 1194851, and 1202477

The DOJ seeks summary judgment as to Request Nos. 1153107, 1186051, 1192365, 1194851, and 1202477, arguing that Mr. Pinson failed to exhaust his administrative remedies.

---

[13] The Court also notes that Mr. Pinson did not originally enumerate this request in his original or second amended complaint; however, since then this request has been incorporated into this litigation.

*See* Defs.' Mem. Supp. at 32–33.  Mr. Pinson argues that summary judgment should not be granted because he never received these documents and thus was unable to "see and evaluate the FOIA responses . . . and perfect an appeal" to the OIP.  Pl.'s Resp. at 2–3; Pinson Decl. ¶¶ 1–2.

Because Mr. Pinson's verified Second Amended Complaint directly contradicts the assertions he makes in his more recent declaration, the Court finds that Mr. Pinson has failed to raise a material issue of fact and the DOJ is entitled to summary judgment as to these requests. Mr. Pinson's complaint was signed under penalty of perjury on October 10, 2013.  *See* Corr. 2d Am. Compl. at 17.[14]  "Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony."  *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991).  "Virtually every circuit has adopted a form of the so-called 'sham affidavit rule,' which precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony."  *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (quoting *Pyramid Sec. Ltd.*, 924 F.2d at 1123).

Unlike in previous filings where Mr. Pinson clarified the import of the dates listed in his complaints as the dates when he received acknowledgement letters from certain agencies, *see, e.g.*, Pl.'s Part. Resp. to Bureau of Prisons Mot. Summ. J., Exhibit 1 at 2–4, ECF No. 180, Mr. Pinson in his most recent declaration outright denies receiving responses from the FBI, *see* Pinson Decl. ¶ 1.  For example, Mr. Pinson's declaration claims that he "never received from the FBI [a] response[] to FOIA Req. No[]. . . . 1153107."  Pinson Decl. ¶ 1.  In his complaint,

---

[14] The Court notes that Mr. Pinson's complaint is "verified" and thereby must be treated as the equivalent of an affidavit since Mr. Pinson affixed his signature to the document under penalty of perjury pursuant to 28 U.S.C. § 1746.  *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).

however, Mr. Pinson lists receiving a response to that request on November 22, 2010, *see* Corr. 2d Am. Compl. at 6, only a few days after the FBI sent him a response on November 18, 2010, *see* Hardy Decl. ¶ 8 & Ex. C.[15]

Because Mr. Pinson has not clarified the import of the dates listed in his complaint, he has failed to provide the Court with any reason whatsoever, "for believing the supposed correction is more accurate than the prior testimony." *United States v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 347 (D.D.C. 2012) (internal quotation mark omitted) (quoting *Galvin*, 488 F.3d at 1030). In light of the direct contradiction between Mr. Pinson's sworn statements, and in the absence of any reason to believe that the outright denial of receipt in Mr. Pinson's declaration for Request Nos. 1153107, 1186051, 1192365, 1194851 and 1202477 is more accurate than his prior statement that he received a response to the request, the Court finds that Mr. Pinson's prior sworn statement is controlling. *See Pyramid Sec. Ltd.*, 924 F.2d at 1123. Accordingly, the Court finds that Mr. Pinson has not exhausted his administrative remedies and

---

[15] The example of Request No. 1153107 is illustrative. With respect to Request No. 1186051, Mr. Pinson declares he did not receive a response from the FBI, but his complaint lists having received a response on October 2, 2012, *see* Corr. 2d Am. Compl. at 6, a few days after the FBI sent him a response on September 28, 2012, *see* Hardy Decl. ¶ 16 & Ex. H.

Similarly, with respect to Request No. 1192365, Mr. Pinson declares he did not receive a response from the FBI, *see* Pinson Decl. ¶ 1, but his complaint lists having received a response on December 6, 2012, *see* Corr. 2d Am. Compl. at 6, twenty days after the FBI sent him a letter on November 16, 2012, *see* Hardy Decl. ¶ 22 & Ex. M.

With respect to Request No. 1194851, Mr. Pinson declares he did not receive a response from the FBI, *see* Pinson Decl. ¶ 1, but his complaint lists having received a response for the request on February 26, 2013, *see* Corr. 2d Am. Compl. at 6, only thirteen days after the FBI resent the response on February 13, 2013, *see* Hardy Decl. ¶ 40 n.4.

With respect to Request No. 1202477, Mr. Pinson declares he did not receive a response from the FBI, *see* Pinson Decl. ¶ 1, but his complaint lists having received a response for the request on December 13, 2012, *see* Corr. 2d Am. Compl. at 6, sixteen days after the FBI sent him the only letter regarding this request on November 27, 2012, *see* Hardy Decl. ¶ 54 & Ex. OO.

thus grants summary judgment in favor of the DOJ as to Request Nos. 1153107, 1186051, 1192365, 1194851, and 1202477.

### 4.  Request Nos. 1178465, 1199194, 1199202, 1217901, and 1229060

The DOJ seeks summary judgment as to Request Nos. 1178465, 1199194, 1199202, 1217901, and 1229060 arguing that Mr. Pinson failed to appeal the FBI's redacted release and, therefore, did not exhaust his administrative remedies.  Defs.' Mem. Supp. at 31–33.  For these requests, the DOJ has provided the Court with copies of the FBI's final response letters and with the declaration of David M. Hardy who asserts that the FBI sent Mr. Pinson the letters in question.  *See* Hardy Decl. ¶¶ 10–13, 24–26, 28–30, 98–100, 124–26 & Exs. E, F, O, P, R, S, BBBB, CCCC, DDDD, AAAAA, BBBBB.  The mere existence of these final response letters, however, does not conclusively "establish that the letter[s] [were] actually . . . received by" Mr. Pinson, which may leave open a genuine issue of material fact.  *See Jones*, 576 F. Supp. 2d at 67.

As discussed above in Part IV.B.3, it appears that Mr. Pinson's declaration and verified amended complaint directly contradict each other because Mr. Pinson outright denies receiving responses in his declaration, but generally lists the date he received a response for each request in his complaint.  *See* Pinson Decl. ¶ 1; Corr. 2d Am. Compl. at 6–7.  Although the inclusion of those dates in Mr. Pinson's complaint appears to acknowledge that he did receive a response from the FBI with respect to each request, in the past this Court has "credited statements in Mr. Pinson's declarations asserting that he had not received response letters from various DOJ components—despite the existence of contrary assertions in his verified complaint—where Mr. Pinson explained that he had received acknowledgement letters rather than final response letters."  *Pinson v. U.S. Dep't of Justice*, 61 F. Supp. 3d 164, 176 (D.D.C. 2015).  Despite Mr.

Pinson's failure to articulate that he did not receive the final response in either his declaration or verified complaint, the Court faces similar circumstances here.

For example, with respect to Request No. 1178465, Mr. Pinson's complaint states that he received a response from the FBI on December 2, 2011, Corr. 2d Am. Compl. at 6, around the time the FBI sent its initial acknowledgment letter on December 6, 2011, Hardy Decl. ¶ 11 & Ex. E.  It was not until April 20, 2012, that the FBI sent Mr. Pinson a response with the documents he requested.  Hardy Decl. ¶ 12 & Ex. F.  Despite the imprecision of the dates, there remains a question as to whether Mr. Pinson did indeed receive the April 20, 2012 FBI response.[16]

In the case of Request Nos. 1199194 and 1199202, Mr. Pinson's complaint states that he received a response to both requests from the FBI on February 26, 2013, Corr. 2d Am. Compl. at 6, approximately five months after the mailing of either the acknowledgment and final response letters on September 27, 2012 and October 1, 2012, *see* Hardy Decl. ¶¶ 25, 26, 29, 30.  Because there is such a large gap between when the letters were sent and when Mr. Pinson claims he received them, coupled with a history of Mr. Pinson failing to receive mail, *see, e.g.*, *Pinson v. U.S. Dep't of Justice,* No. CV 12–1872 (RC), 2016 WL 29245, at *12-13 (D.D.C. Jan. 4, 2016), ECF No. 259, there remains a question as to which letters he did and did not receive.

---

[16] The claims for Request Nos. 1217901 and 1229060 follow similar lines. For Request No. 1217901, Mr. Pinson's Second Amended Complaint lists a response date of July 8, 2013, *see* Corr. 2d Am. Compl. at 7, around the time the FBI sent its initial acknowledgment letter on June 19, 2013, Hardy Decl. ¶ 99 & Ex. CCCC.  It was not until October 2, 2013, the FBI sent Mr. Pinson a response with the documents he requested.  Hardy Decl. ¶ 100 & Ex. DDDD.  For Request No. 1229060, Mr. Pinson's Second Amended Complaint lists a response date of September 30, 2013, *see* Corr. 2d Am. Compl. at 7, around the time the FBI sent its initial acknowledgment letter on September 25, 2013, Hardy Decl. ¶ 125 & Ex. AAAAA.  It was not until January 15, 2014, the FBI sent Mr. Pinson a response with the documents he requested. Hardy Decl. ¶ 126 & Ex. BBBBB.

Because at summary judgment the Court must view facts in the light most favorable to the non–movant, *see Scott*, 550 U.S. at 380 (citing Fed. R. Civ. P. 56(c)), and cannot make credibility determinations, *see Fed. Ins. Co. v. Olawuni*, 539 F. Supp. 2d 63, 66 (D.D.C. 2008) ("On a motion for summary judgment, the Court must 'eschew making credibility determinations or weighing the evidence.'" (quoting *Czekalski*, 475 F.3d at 363)), the Court must accept as true Mr. Pinson's declaration that he did not receive a response and the December 2, 2011 response referenced in Mr. Pinson's complaint is more likely an acknowledgement letter.  And if it turns out that Mr. Pinson did not receive the FBI's final response letter, he cannot be penalized for having failed to exhaust his administrative remedies because he was denied the opportunity to reformulate his request or appeal the determination that the request was improper.

Therefore, because Mr. Pinson's declaration made under penalty of perjury raises a genuine dispute of material fact regarding his initial receipt of the documents, the Court denies the DOJ's motion for summary judgment as to Request Nos. 1178465, 1199194, 1199202, 1217901, and 1229060.  In addition, assuming Mr. Pinson's description of events is accurate and he did not receive the responses or records purportedly sent to him, the Court orders the DOJ to resend those documents to Mr. Pinson so that he can review them and determine the DOJ's compliance with FOIA.

### 5.  Requests Concerning Investigations of the CA AB and Mexican Mafia Since 2005, All FD–302s of USP Victorville Homicide Investigations, and Letters to Wardens of USP's Victorville, Florence, Coleman [17]

The DOJ seeks summary judgment as to unnumbered requests for "Investigations of the CA AB and Mexican Mafia Since 2005" and for all "FD–302s of USP Victorville Homicide

---

[17] Mr. Pinson claims that he did not receive responses to four unnumbered requests, *see* Pinson Decl. ¶ 1.  Of the twelve unnumbered requests, seven were not received by the DOJ, one was referred to the BOP, and "Addresses of All FBI Offices" is addressed below.  This leaves

Investigations" because Mr. Pinson failed to exhaust his administrative remedies. Defs.' Mot.
Supp. at 32. The DOJ also seeks summary judgment as to unnumbered request for "Letters to
Wardens of USP's Victorville, Florence, Coleman" because there is no genuine issue of material
fact. *See* Defs.' Reply at 1–2; Defs.' Mem. Supp. Ex. 1 ¶¶ 126–27. For these requests, the DOJ
has provided the Court with copies of the FBI's final response letters and with the declaration of
David M. Hardy who asserts that the FBI sent Mr. Pinson the letters in question. *See* Hardy
Decl. ¶¶ 129–30, 147–48, 150–51 & Exs. CCCCC, IIIII, JJJJJ, KKKKK, LLLLL. The mere
existence of these final response letters, however, does not conclusively "establish that the
letter[s] [were] actually . . . received by" Mr. Pinson, which may leave open a genuine issue of
material fact. *See Jones*, 576 F. Supp. 2d at 67.

Both Mr. Pinson's declaration and verified amended complaint deny receiving responses
to these requests. *See* Pinson Decl. ¶ 1; Corr. 2d Am. Compl. at 7–8. Because at summary
judgment the Court must view facts in the light most favorable to the non–movant, *see Scott*, 550
U.S. at 380 (citing Fed. R. Civ. P. 56(c)), and cannot make credibility determinations, *see
Olawuni*, 539 F. Supp. 2d at 66 ("On a motion for summary judgment, the Court must 'eschew
making credibility determinations or weighing the evidence.'" (quoting *Czekalski*, 475 F.3d at
363)), the Court must accept as true Mr. Pinson's declaration and second amended complaint that
he did not receive responses to these requests, and cannot be penalized for having failed to

---

three unnumbered requests, two of which Mr. Pinson explicitly lists in his response as
"Investigation of the CA AB and Mexican Mafia since 2005" and all "FD-302s of USP
Victorville Homicide Investigations." *See* Pl.'s Resp. at 1. The Court assumes that the fourth
unnumbered request to which Mr. Pinson refers is the unnumbered request "Letters to Wardens
of USP's Victorville, Florence, Coleman," and will address it here. *See* Pinson Decl. ¶ 1; Corr.
2d. Am. Compl. at 8.

exhaust his administrative remedies because he was denied the opportunity to reformulate his request or appeal the determination that the request was improper.

Therefore, because Mr. Pinson's declaration made under penalty of perjury raises a genuine dispute of material fact regarding his initial receipt of the documents, the Court denies the DOJ's motion for summary judgment as to the unnumbered requests for "Investigations of the CA AB and Mexican Mafia Since 2005," "All FD–302s of USP Victorville Homicide Investigations," and "Letters to Wardens of USP's Victorville, Florence, Coleman." Assuming Mr. Pinson's description of events is accurate and he did not receive responses or records purportedly sent to him, the Court orders the DOJ to resend those documents to Mr. Pinson so that he can review the documents and determine the DOJ's compliance with FOIA.

### 6.  Request for Addresses of All FBI Offices

The DOJ seeks summary judgment as to a request for the Addresses of All FBI Offices arguing that Mr. Pinson did not file an administrative appeal of the responses. Defs.' Mot. Supp. at 32.  Yet, Mr. Hardy's Declaration and the exhibits the DOJ attaches both plainly demonstrate that Mr. Pinson filed an appeal of this response, and the OIP provided materials that may have been responsive to plaintiff's request.  *See* Hardy Decl. ¶¶ 155–57 & Exs. OOOOO, PPPPP, QQQQQ.  This request was clearly exhausted.

Despite the exhaustion of this request, Mr. Pinson argues that he has not received the response to this request in both his declaration and verified amended complaint.  *See* Pinson Decl. ¶ 1; Corr. 2d Am. Compl. at 6.  Because at summary judgment the Court must view facts in the light most favorable to the non–movant, *see Scott*, 550 U.S. at 380 (citing Fed. R. Civ. P. 56(c)), and cannot make credibility determinations, *see Olawuni*, 539 F. Supp. 2d at 66 ("On a motion for summary judgment, the Court must 'eschew making credibility determinations or

weighing the evidence.'" (quoting *Czekalski*, 475 F.3d at 363)), the Court must accept as true

Mr. Pinson's declaration and second amended complaint that he did not receive a response to this

request, and cannot be penalized for having failed to exhaust his administrative remedies because

he was denied the opportunity to reformulate his request or appeal the determination that the

request was improper.  Thus, the Court denies the DOJ's motion for summary judgment as to the

unnumbered request for "Addresses of All FBI Offices."  Assuming Mr. Pinson's description of

events is accurate and he did not receive the document sent to him, the Court orders the DOJ to

re-mail the responsive document to Mr. Pinson, so that Mr. Pinson can review it and determine

whether his request has been satisfied.

## C.  Adequacy of the FBI's Search

The DOJ seeks summary judgment on the ground that its search for responsive records

was reasonable and adequate with respect to five requests that Mr. Pinson either fully appealed

or (for reasons not stated in the record, and despite no evidence of an appeal by Mr. Pinson)

which the DOJ does not claim remain unexhausted.  These include Request Nos. 1171229,

1199153, 1199078, 1210450, and 1217897.  *See* Defs.' Mem. Supp. at 33–34; *see also* Hardy

Decl. ¶¶ 170, 173–75, 177.[18]

---

[18] Although the DOJ also seeks summary judgment with respect to Request Nos.
1153107, 1186051, 1217894, 1217898, and 1217899 on adequate search grounds, *see* Hardy
Decl. ¶¶ 169, 172, 176, 178–79, this Court has already granted summary judgment to the DOJ
with respect to these requests because Mr. Pinson failed to exhaust his administrative remedies.
Conversely, the DOJ seeks summary judgment with respect to Request No. 1217900, *see id.* ¶
180, but this Court has denied summary judgment as to that request, and ordered the DOJ to re-
mail the responsive materials to the alternate address Mr. Pinson supplied.  Similarly, the DOJ
seeks summary judgment as to Request Nos. 1178465 and 1229060, *see id.* ¶¶ 171, 181, but this
Court has already concluded that there is a genuine issue of material fact regarding whether Mr.
Pinson received the FBI's final response letter for those requests, and that the documents must be
resent to Mr. Pinson.  Therefore, the Court does not reach the adequate search issue with respect
to any of these requests.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The agency does not have to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68).  It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] has requested" and did not find anything responsive to the request. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980).  On the other hand, once the agency has provided a "reasonably detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116.

Here, the DOJ has provided a declaration from Mr. Hardy, which provides an overview of the Central Records System ("CRS") and explains in varying detail the searches for the requests at issue. *See* Hardy Decl. ¶¶ 160–65, 168–81.  In general, the FBI conducted a search of the automated indices to the CRS using various search terms to yield responsive results.

For all of these requests, the declaration's descriptions suffice to provide a "reasonably detailed" account of the scope of the FBI's search for each request.  Mr. Hardy's declaration

describes how the Central Records System stores information and how that information is searchable and identifies the search terms used to locate documents with respect to each of Mr. Pinson's requests. *See, e.g.*, Hardy Decl. ¶ 173. For example, with respect to Request No. 1217897, the FBI conducted a search "utilizing a phonetic breakdown of the name 'Manuel Torrez.' The search results included any variation of first and last name that sounds similar or are spelled differently than the name searched." *Id.* ¶ 177.

Neither Mr. Pinson's responses nor declarations address the DOJ's "adequacy of the search" argument. As this Court has explained, "when a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded." *Sykes*, 573 F. Supp. 2d at 202. Accordingly, the Court deems conceded the DOJ's motion for summary judgment with respect to the adequacy of the FBI's search for Request Nos. 1171229, 1199153, 1199078, 1210450, and 1217897. Regardless, the Court concludes that the information provided in the Hardy Declaration is sufficiently detailed to grant summary judgment in the FBI's favor on this issue.

### D. FOIA Exemptions

The DOJ next argues that the FBI properly withheld records, in whole or in part, responsive to Request Nos. 1171229, 1199153, 1199078, 1210450, and 1217897 pursuant to FOIA Exemptions 3, 6, 7(A), 7(C), 7(D), and 7(E). *See* Defs.' Mem. Supp. at 34–44. Although Mr. Pinson does not respond to the DOJ's argument as a whole, he does contend that the FBI improperly withheld "Employee Names/Titles" in certain requests and challenges the FBI's use of FOIA Exemptions 6 and 7(C).[19] *See* Pl.'s Resp. at 4–6.

---

[19] Mr. Pinson also challenges the use of FOIA Exemption 7(F), *see* Pl.'s Resp. at 6; however, the FBI only invokes Exemption 7(F) in withholding information in Request Nos. 1192365 and 1229060, *see* Hardy Decl. ¶¶ 22, 126, 182–83. The Court has already granted

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliott v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)). And it is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

## 1. Exemption 3

The FBI invoked Exemption 3 to withhold information responsive to Request No. 1199078. *See* Hardy Decl. Ex. GG. The withheld information concerned the identities of the individuals targeted for interception through wiretap, and information obtained through the wiretap pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18. U.S.C. §§ 2510–2520 ("Title III"). *See* Defs.' Mem. Supp. at 34–35. Exemption 3 permits the withholding of information "specifically exempted from disclosure by [other] statute[s]." 5 U.S.C. § 552(b)(3). Withholding information is proper when the statute either "leave[s] no discretion" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* §§ 552(b)(3)(A)(i)–(ii). "Title III falls squarely within the scope of [Exemption 3], as a statute referring to 'particular types of matters to be withheld.'" *Lam Lek Chong v. U.S. Dep't of Drug Enf't Admin.*, 929 F.2d 729, 733 (D.C. Cir. 1991). Title III, as a

---

summary judgment as to Request No. 1192365 for failure to appeal and declined to grant summary judgment as to Request No. 1229060 because there is a genuine issue of material fact regarding whether Mr. Pinson received the FBI's final response letter for this request. Therefore, the Court will not address those requests further.

result, "exempts from disclosure any kind of information that is electronically intercepted . . . solely by virtue of the means by which it is obtained." *Id.*

The DOJ argues that the FBI properly invoked Exemption 3 because the withheld information "consists of the identities of the individuals targeted for interception through wiretap, and information obtained via the Title III wiretap." Defs.' Mem. Supp. at 35; *see, e.g., Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 23 (D.D.C. 2012) (withholding identities of individuals targeted for interception and contents of the intercepted conversations). Mr. Pinson has not contested this argument. Regardless, the FBI has met its burden under FOIA and is entitled to summary judgment.

## 2. Exemption 6

The DOJ argues that the FBI properly invoked Exemption 6 in response to records requested in Request Nos. 1199153, 1199078, and 1210450. Under Exemption 6, an agency may withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the term "similar files" broadly so as "to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (internal quotation mark omitted) (quoting H.R. Rep. No. 1497, at 11 (1966)). Therefore, not only does the exemption protect files, "but also bits of personal information, such as names and addresses, the release of which would 'create a palpable threat to privacy.'" *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation mark omitted) (quoting *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006)). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold

for determining whether information applies to a particular individual is minimal." *Milton v.*

*U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. Nat'l*

*Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

　　　　Once this threshold determination is met, a court must next ask whether disclosure would

compromise a "substantial" privacy interest, since FOIA requires the release of information "[i]f

no significant privacy interest is implicated." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d

1224, 1229 (D.C. Cir. 2008) (alteration in original) (internal quotation mark omitted) (quoting

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  This

standard, however, "means less than it might seem," as a substantial privacy interest is "anything

greater than a *de minimis* privacy interest." *Id.* at 1229–30.  If a substantial privacy interest

exists, a court next tests whether release of such information would constitute a "clearly

unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human*

*Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting 5 U.S.C. § 552(b)(6)), by balancing "the

privacy interest that would be compromised by disclosure against any public interest in the

requested information," *Multi Ag Media*, 515 F.3d at 1228.  "[T]he only relevant public interest

in the FOIA balancing analysis [is] the extent to which disclosure of the information sought

would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens

know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)

(alterations in original) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487,

497 (1994)).  "Information that 'reveals little or nothing about an agency's own conduct' does

not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir.

1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S.

749, 773 (1989)).

The DOJ argues that, with respect to these requests, "the FBI protected the strong privacy interest of government personnel in avoiding disclosure of their personal information." Defs.' Mem. Supp. at 36. Mr. Hardy's Declaration delves into further detail about the various categories of individuals whose privacy interests are implicated and balances those interests against the public's interest in disclosure.[20]

In response to the DOJ's position, Mr. Pinson raises two arguments.[21] First, Mr. Pinson generically argues that the FBI improperly withheld employee names and titles because the DOJ conceded that agency employee names and titles were not exempt under FOIA in *Pinson v. Lappin*, 806 F. Supp. 2d 230, 233 (D.D.C. 2011). Pl.'s Resp. at 4. As discussed in a previous opinion issued in this case regarding the BOP, the BOP's decision in *Lappin* was specific to the documents requested in that case. *See Pinson v. U.S. Dep't of Justice*, No. CV 12–1872 (RC), 2016 WL 29245, at *20–21 (D.D.C. Jan. 4, 2016), ECF No. 259. Furthermore, as discussed in the prior opinion, employee names may be properly withheld if there is no genuine public interest in such information or if the information's release will endanger a staff member's safety. *See id*; *see also Cuban v. Sec. Exch. Comm'n*, 744 F. Supp. 2d 60, 74 (D.D.C. 2010) ("[S]taff names and contact information *may* fall within [FOIA] Exemptions . . . and thus are shielded from disclosure" when "'the material relates to . . . matters of no genuine public interest.'" (emphasis added) (quoting *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990))); *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d at 152 (holding that agency properly invoked Exemption 6 in refusing to release the names of certain agency personnel).

---

[20] The FBI provides balancing for various categories of people simultaneously under Exemptions 6 and 7(C). Hardy Decl. at ¶ 202 n.27.

[21] The Court will also address the public interests Mr. Pinson identifies in his response to the FBI's use of Exemption 7(C) in conjunction with Exemption 6 *infra* Part IV.D.3.c.

While *Lappin* does not bar the FBI's use of Exemption 6 to withhold employee names or titles, the Court must balance the privacy interest of employees against the public interest in disclosure of the information.

The FBI argues that its employees have significant privacy interests, the disclosure of which "may seriously prejudice their effectiveness in conducting other investigations," "could trigger hostility toward him/her," and could make them "targets of harassing inquiries for unauthorized access to investigations."  Hardy Decl. ¶ 204.  According to the FBI, there is no discernible public interest in disclosure because this information "would not shed light on the operations and activities of the FBI."  *Id.*  Where the plaintiff has not asserted a significant public interest in the release of the information, the concern that agency employees would be harassed if their names were disclosed "tilts the scales."  *See Judicial Watch Inc. v. Food & Drug Admin.,* 449 F.3d at 153.  Here, although Mr. Pinson has identified a public interest in the general topics at issue in the various documents, he has not identified any public interest in the release of the specific names.  Thus, the Court finds that the privacy interest of the employees outweighs the public interest in disclosure.

Second, Mr. Pinson claims the FBI "simply categorically excluded 3rd party information," which was prohibited in *Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015).  Pl.'s Resp. at 4.  In *Prison Legal News*, the BOP categorically redacted identifying information without regard to an individual's or groups of individuals' varying degrees of privacy interests or public interests in disclosure.  *See* 787 F.3d at 1149–52.  The court did not foreclose the use of a categorical approach; instead, it suggested that an agency may formulate a different rationale for distinct groups such as one rationale for victims and another for perpetrators.  *Id.* at 1151–52.  Here, the FBI does not provide a blanket rationale for all third

parties.  The FBI categorizes certain classes of individuals and balances the privacy interests of

that group with the public interest in disclosure.[22]  Defs.' Mem. Supp. at 38; *see* Hardy Decl. ¶¶

204–10.  In total, the FBI identifies seven distinct groups and weighs their privacy interest

against the public's interest in disclosure.  *Id.*  The agency identifies "Special Agents and support

personnel, 3rd Parties of Investigative Interest, Information of City, Local, and State Government

Employees, 3rd Parties Merely Mentioned, Foreign Government Representatives, 3rd Party

Crime Victims, and 3rd Parties Who Provide Information to the FBI."  Defs.' Mem. Supp. at 38.

   With respect to the records and classifications at issue in this case, Mr. Pinson has failed

to identify any particular release or particular classification with which he takes issue.  It is not

this Court's role to search through the record to determine which releases and classifications Mr.

Pinson contests.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (explaining that

district courts are not expected to assume the role of advocate for pro se plaintiffs); *Sun v.*

*District of Columbia Gov't*, No. 12–cv–1919, 2015 WL 5726471, at *9 n.6 (D.D.C. Sept. 30,

2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's

position."); *see also Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("[A] court need not act as

an advocate for *pro se* litigants . . . .").  Moreover, the FBI has provided justifications for

nondisclosure for the various categories of individuals.  *See Schoenman v. FBI*, 576 F. Supp. 2d

3, 7 (D.D.C. 2008) ("Summary judgment may be granted on the basis of accompanying agency

affidavits or declarations if they describe 'the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor evidence of

---

[22] The FBI provides balancing for various categories of people simultaneously under
Exemptions 6 and 7(C).  Hardy Decl. ¶ 202 n.27.

agency bad faith.'" (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981)).

Because Mr. Pinson has not controverted the FBI's detailed declaration with contrary evidence,

the Court finds that the DOJ's arguments with respect to Exemption 6 withstands Mr. Pinson's

challenge and grants summary judgment in the FBI's favor.

### 3. Exemption 7

#### a. <u>Threshold Inquiry</u>

The DOJ argues that it properly invoked Exemption 7 in response to documents

requested in Request Nos. 1171229, 1199153, 1199078, and 1210450. Exemption 7 protects

from disclosure "records or information compiled for law enforcement purposes," but only to the

extent that disclosure would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v.

Abramson*, 456 U.S. 615, 622 (1982). "In order to withhold documents under Exemption 7, the

agency must, as a preliminary matter" make a "threshold" showing and demonstrate "that the

records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F. Supp. 23, 37

(D.D.C. 1997). "To show that . . . documents were 'compiled for law enforcement purposes,' the

[agency] need only 'establish a rational nexus between the investigation and one of the agency's

law enforcement duties and a connection between an individual or incident and a possible

security risk or violation of federal law.'" *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011)

(quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

The FBI is the primary investigative agency of the federal government. The plain

language of Mr. Pinson's FOIA requests, all of which pertain to investigations "into various

potential violations of the federal law concerning activities ranging from gang activity to

homicide in a Federal Bureau of Prison's facility," Hardy Decl. ¶ 190, evidence a law

enforcement purpose. *See, e.g.*, Hardy Decl. ¶ 6 & Ex. A. Accordingly, the FBI adequately

establishes—and Mr. Pinson has not disputed—that the responsive records at issue in this case were compiled for law enforcement purposes within the scope of Exemption 7.

b. Exemption 7(A)

The DOJ argues that it properly invoked Exemption 7(A) in response to Request No. 1217897.[23]  Under Exemption 7(A), an agency is exempt from producing "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).  To invoke this exemption, "the DOJ must . . . demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'"  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C.Cir.1993)).  Furthermore, a document–by–document review is unnecessary: "an agency may satisfy its burden of proof 'by grouping documents in categories and offering generic reasons for withholding the documents in each category.'"  *Id.* at 1098 (quoting *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 765 (D.C. Cir. 2000).  The DOJ provides a declaration detailing the pending law enforcement proceeding, categories of exempt documents, and reasons explaining why release of these documents would interfere with the proceedings.  Hardy Decl. ¶¶ 192–99.  Because the FBI has met its burden

---

[23] In its description of the facts, the DOJ also claims that the FBI invoked Exemption 7(A) to withhold certain information responsive to Request No. 1199153; however, neither the DOJ nor the FBI mention using Exemption 7(A) to withhold information responsive to Request No. 1199153.  *Compare* Hardy Decl. ¶ 34 *with* Hardy Decl. ¶¶ 192–99.  Because the DOJ does not adequately detail why Exemption 7(A) was invoked, the Court will deny summary judgment with respect to this request and order the DOJ to justify the withholding of the redacted information pursuant to Exemption 7(A) in the records responsive to Request No. 1199153.

under FOIA and Mr. Pinson has not contested the withholding justification, the Court grants the FBI summary judgment as to Request No. 1217897.

<div align="center">c. Exemption 7(C)</div>

The DOJ argues that it properly invoked Exemption 7(C) in response to Request Nos. 1199153, 1199078, 1210450, and 1217897.  Under Exemption 7(C), an agency is exempt from producing "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In determining whether this exemption applies to particular information, a court must balance the privacy interests of individuals mentioned in the records against the public interest in disclosure.  *See ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011).  The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763–65, and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984).  When balancing an individual's privacy interest against the public interest, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).  It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The DOJ argues that the FBI properly invoked Exemption 7(C) to withhold identifying information of seven classes of individuals because such information could subject [employees]

<div align="center">45</div>

to embarrassment and harassment and other implicated individuals "have a strong interest in not being unfairly associated publicly with alleged criminal activity" while the release of such information "would not add to the public's understanding on how the FBI works or how well it performs its duties." Defs.' Mem. Supp. at 39.

Mr. Pinson responds that the withholding of such information was improper and the FBI's argument "is simply remarkable for its willful blindness to the obvious." Pl's Resp. at 5. To demonstrate, Mr. Pinson posits several public interests that may overcome the individuals' privacy interests. He argues that the documents sought to "shed light on the BOP and the DOJ's statutory duty to 'provide for the safekeeping' of inmates," the documents highlight "DOJ's actions (or lack thereof) to combat" crimes within prisons, or the documents may show "that a foreign government assisted in the capture inside the United States of [an] alleged killer." *Id.* at 5–6.

The potentially substantial public interests Mr. Pinson articulates under Exemption 7(C), also affect the public interests implicated under Exemption 6. As a result, , the Court will balance the privacy interests of the different classes of individuals with the public interests at stake to determine whether the FBI properly withheld this information under the lens of both Exemption 6 and 7(C).[24]

---

[24] Both Exemption 6 and 7(C) require the Court to consider and balance privacy interests and the public interest. *Beck*, 997 F.2d at 1491. Although both require a similar balancing test, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Reporters Comm.*, 489 U.S. at 756. Exemption 6 requires that the invasion of privacy be "clearly unwarranted" and that disclosure "would constitute" an invasion of privacy; on the other hand, Exemption 7(C) only requires that the invasion be "unwarranted" and that disclosure "could reasonably be expected to constitute" an invasion of privacy. *Compare* 5 U.S.C. § 552(b)(6) *with* 5 U.S.C. § 552(b)(7)(C); *see also Reporters Comm.*, 489 U.S. at 756.

*i.  Special Agents and Support Personnel and City, Local, and State Government Employees*

As noted above in Part IV.D.2, the FBI argues that its employees as well as city, local, and state government employees have significant privacy interests, the disclosure of which "may seriously prejudice their effectiveness in conducting other investigations," "could trigger hostility toward him/her," and could make them "targets of harassing inquiries for unauthorized access to investigations."  *See* Hardy Decl. ¶¶ 204, 206.  According to the FBI, there is no discernible public interest in disclosure because this information "would not shed light on the operations and activities of the FBI."  *Id.*  Indeed, there may be a general public interest in the BOP's failure to safeguard inmates and the FBI's failure to investigate.  It is unlikely, however, that the disclosure of individual names and titles of government employees would provide any insight into either the BOP's or the FBI's actions or inactions on these issues.  An employee's name, especially one with a tangential or passing relationship to the request, would merely subject the employee to scrutiny while failing to show how the employee contributed to either of the BOP's or the FBI's failure of their duties.  *See, e.g.*, *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487–88 (D.C. Cir. 1980).

*ii.  Foreign Government Representatives*

The FBI withheld "identifying information of foreign government representatives who assisted the FBI in its investigation into the murder of a Sheriff's Department Deputy."[25]  Hardy Decl. ¶ 208.  The FBI argues that there is no public interest served by disclosure because the identifying information would not demonstrate how the FBI performed its statutory mission.  *Id.*  In contrast, the foreign government representatives, the FBI argues, have a great privacy interest

---

[25] The FBI also asserts Exemption 7(D) to withhold this information.  *See* Hardy Decl. ¶ 215.

because disclosure would "seriously impair their effectiveness in assisting or participating in future FBI investigations" and "trigger hostility towards them." *Id.*

Mr. Pinson argues that there is a great public interest in learning about the participation of foreign government representatives in an FBI investigation. Documents demonstrating that a foreign government's involvement helped resolve a domestic issue would shed light on how the FBI gathers and coordinates information. Indeed, the FBI has already disclosed this information to Mr. Pinson, effectuating the purpose of FOIA. However, the public interest is in the disclosure of the foreign government's participation, not of the identifying information of each individual foreign official. As a result, while the public interest in disclosure of foreign government participation may be substantial, the public interest in the identifying information of law enforcement officials is minimal, *see, e.g.*, *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C 2006), and thus fails to override the privacy interests of the foreign officials' identifying information. Thus, when balancing the public interest with the privacy interests of these government representatives, who play a similar role to government employees, the privacy interests are greater. *See e.g., Lesar*, 636 F.2d at 487–88; *cf. Graff v. F.B.I.*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011) ("[F]oreign nationals are entitled to the privacy protections embodied in FOIA." (citing *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 n.4 (D.D.C. 2007)).

### iii. *Third Parties of Investigative Interest and Third Parties Merely Mentioned*

The FBI withheld the addresses, dates of birth, social security numbers, and other identifying information of individuals of investigative interest as well as the names and identifying information of third parties merely mentioned in investigations. The agency argues that "[b]eing linked with any law enforcement investigation carries a strong negative connotation

and a stigma," and release of identifying information "could subject them to harassment or embarrassment, as well as undue public attention." *See* Hardy Decl. ¶¶ 205, 207. The FBI argues that the public interest in this information is minimal because it does not enlighten the public on how the FBI conducts its internal operations and investigations. *See id.*

Indeed, the stigma of being associated with any law enforcement investigation is a well-established and substantial privacy interest. *See, e.g.*, *Reporters Comm.*, 489 U.S. at 773–75. The disclosure of the names and other identifying information of private individuals would only serve a sufficient public interest "where 'there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity,' and that the information sought 'is necessary in order to confirm or refute that evidence.'" *Concepcion v. FBI*, 606 F. Supp. 2d 14, 40 (D.D.C 2009) (quoting *Davis*, 968 F.2d at 1282). Mr. Pinson suggests in conclusory fashion that revelation of this material would assist in revealing the DOJ's failure to investigate. This rationale fails to rise to the level of uncovering illegal activity in either the DOJ or FBI. Mr. Pinson fails to indicate how the names and other identifying information of individuals of investigative interest, or others merely mentioned, would illuminate one way or the other the effort, or lack thereof, of the DOJ's investigation.

Because Mr. Pinson fails to demonstrate a sufficient public interest with respect to the third parties above, the Court finds that the FBI properly withheld the identifying information of individuals with an investigative interest and individuals merely mentioned.

*iv. Third Party Crime Victims and Informants*

The FBI did not disclose identifying information of individuals who were victims of violent crimes because disclosure "would cause unsolicited and unnecessary attention to be focused on these victims, further traumatizing [] these individuals and their family members."

Hardy Decl. ¶ 209.  The FBI further argues that there is no legitimate public interest to be served because such information would not shed light on the operations and activities of the FBI.  *Id.*

The FBI withheld the identifying information of an individual who provided information to the FBI during the course of the investigation because disclosure may cause the individual to "be harassed, intimidated, or threatened with legal or economic reprisal, or possible physical harm." *Id.* ¶ 210.  The FBI could not identify any public interest because such information would not shed light on the operations and activities of the FBI.  *Id.*

Mr. Pinson has not asserted a public interest in the disclosure of identifying information of either crime victims or informants; therefore, where there is no identifiable public interest, the privacy interest is paramount because "something . . . outweighs nothing every time." *Odland v. Fed. Energy Regulatory Comm'n*, 34 F. Supp. 3d 3, 21 (D.D.C. 2014) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989), *cert. denied sub nom. Nat'l Ass'n of Retired Fed. Emps. v. Newman*, 494 U.S. 1078 (1990)).

*             *             *

After balancing the privacy interests of the identifying information of these different categories of individuals against the public interest in disclosure, the Court determines that the FBI properly withheld identifying information under Exemption 7(C).

### d.  Exemption 7(D)

The DOJ contends that the FBI properly invoked Exemption 7(D) when it withheld information responsive to Request Nos. 1199153, 1199078, and 1210450.  Exemption 7(D) protects law enforcement information that "could reasonably be expected to disclose the identity of a confidential source . . . which furnished information on a confidential basis."  5 U.S.C. § 552(b)(7)(D).  The exemption also "protects the ability of law enforcement agencies to obtain

relevant information from such sources" and "once an informant's confidentiality has been established, almost nothing can eviscerate Exemption 7(D) protection." *Sellers v. U.S. Dep't of Justice*, 684 F. Supp. 2d 149, 161 (D.D.C. 2010) (internal quotations and citations omitted).

The DOJ argues that the FBI properly withheld names, identifying information about, and information provided to the FBI by individuals and a foreign law enforcement authority under "express" and "implied" assurances of confidentiality, as well as source file numbers and source symbol numbers.  Hardy Decl. ¶¶ 214–25.  Because the DOJ has sufficiently supported its claim of informant confidentiality and Mr. Pinson has not controverted this evidence, the Court enters summary judgment in the FBI's favor as to the information withheld pursuant to Exemption 7(D) in response to Request Nos. 1199153, 1199078, and 1210450.

e. Exemption 7(E)

The DOJ also contends that the FBI properly invoked Exemption 7(E) when it withheld information in response to Request Nos. 1171229, 1199153, 1199078, and 1210450.  Exemption 7(E) protects law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The exemption permits the withholding of information "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  "[A]n agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources,

51

and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).

The DOJ argues that the FBI properly withheld information to protect: the application of techniques and procedures used in conducting specific criminal investigations because revelation of this information would enable the targets of these techniques to avoid detection or develop countermeasures, Hardy Decl. ¶ 228, operational plans because the FBI will use similar techniques in future investigations, *id.* ¶ 229, and, FBI internal web addresses because revelation would provide criminals with potential targets for cyber-attacks, *id.* ¶ 230; *see, e.g.*, *Labow v. U.S. Dep't of Justice*, 66 F. Supp. 3d 104, 126-28 (D.D.C. 2014) (withholding investigative strategies and techniques); *Abdeljabbar v. Bureau of Alcohol, Tobacco and Firearms*, 74 F. Supp. 3d 159, 182-83 (D.D.C. 2014) (withholding operational plans); *Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015) (withholding internal web addresses). Because the FBI has met its burden under FOIA and Mr. Pinson has not presented any contrary evidence, the Court grants summary judgment in the FBI's favor with regard to the withholding of information pursuant to Exemption 7(E) in response to Request Nos. 1171229, 1199153, 1199078, and 1210450.

**4. Segregability**

FOIA requires that when a document contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure be released after deleting the exempt portions, unless the non–exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "Agencies are entitled to a presumption that they complied with

the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007), and the declaration the DOJ has supplied here attests that "each responsive page was individually examined to identify non–exempt information that could be reasonably segregated from exempt information for release."  Hardy Decl. ¶ 233.  Because Mr. Pinson has failed to provide any evidence either to overcome the presumption or to contest the DOJ's representations, summary judgment is appropriate in the FBI's favor regarding segregability.

Mr. Pinson requests that the court exercise its authority to conduct *in camera* review of the documents to determine the propriety of the withholdings, or order counsel to do so.  Pl.'s Resp. at 6.  FOIA authorizes the court to examine the contents of withheld agency records "*in camera* to determine whether such records or any part thereof shall be withheld.  5 U.S.C. § 552 (a)(4)(B).  "*In camera* inspection may be appropriate in two circumstances: when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and when evidence of agency bad faith is before the court." *Lam Lek Chong*, 929 F.2d at 735.  Neither situation is presented in this case.  The FBI has also adequately described the segregability analysis undertaken and there are no allegations or evidence in the record to suggest bad faith. Therefore, the Court declines to order an *in camera* review.

## V.  CONCLUSION

For the foregoing reasons, the DOJ's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 29, 2016                                    RUDOLPH CONTRERAS
                                                          United States District Judge