**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEREMY PINSON, | : | |
| Plaintiff, | : | Civil Action No.: 12-1872 (RC) |
| v. | : | Re Document No.: 254 |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson is currently an inmate at USP Allenwood, a federal prison located in Pennsylvania. While in prison, Mr. Pinson has filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, DOJ has asked Mr. Pinson to clarify his records requests, told him that it could not find records that are responsive to his requests, or informed him that the records he sought were exempt from disclosure by law. Mr. Pinson took issue with some of these determinations, so he filed a complaint claiming that DOJ improperly withheld numerous records from him in violation of FOIA. In response, DOJ has filed several pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Mr. Pinson's complaint.

DOJ previously moved for summary judgment as to Mr. Pinson's numerous FOIA claims against DOJ's Executive Office of the United States Attorneys ("EOUSA"). The Court resolved that prior motion by granting summary judgment in part to DOJ and denying summary judgment

in part.  *See Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2015 WL 7008124 (D.D.C. Nov. 10, 2015).  Now before the Court is DOJ's renewed motion for summary judgment addressing those requests for which the Court denied summary judgment or for which DOJ did not previously move for summary judgment.  *See generally* Defs.' 2d Mot. for Summ. J., ECF No. 254.  DOJ's renewed motion addresses eleven numbered requests, and argues that responsive records were properly withheld under the Privacy Act or FOIA and that those searches for responsive records that were conducted were reasonably calculated to identify responsive records.  Defs.' Mem. Supp. 2d Mot. for Summ. J. at 2, ECF No. 254-2 ("Defs.' Mem. Supp.").

For the reasons stated below, the Court will again grant in part and deny in part DOJ's motion for summary judgment.

## II.  FACTUAL BACKGROUND

### A.  Request No. 11-3289

On May 25, 2011, Mr. Pinson submitted a request for records "concerning the arrest[ ] [and] prosecution of federal employees at the Federal Correctional Complex in Florence, Colorado" and "at U.S.P. Victorville located in [the] Central District of California."  Luczynski Decl. ¶ 1, ECF No. 254-3; *see* DOJ's Ex. A, ECF No. 254-4.  After Mr. Pinson appealed the EOUSA's initial denial of his request, DOJ's Office of Information Policy ("OIP") remanded the request to the EOUSA with instructions to perform an additional search for "records pertaining to any arrests and/or prosecutions of any federal employees at the Federal Correctional Complex in Florence, CO and at USP Victorville located within the District of Colorado and the Central District of California."  Luczynski Decl. ¶ 3; *see* DOJ's Ex. D.  On February 14, 2012, the EOUSA informed Mr. Pinson that its search for information had revealed no responsive records.

*See* Moncayo Decl. ¶ 8, DOJ's Ex. I.[1] Mr. Pinson filed an appeal on March 26, 2012, and OIP assigned his appeal number AP-2012-01696. *See* Luczynski Decl. ¶¶ 6–7; DOJ's Exs. G, H. The Court previously denied summary judgment because DOJ failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *8–9. In its renewed motion, DOJ defends the adequacy of the EOUSA's search for responsive records as reasonably calculated to lead to any potentially responsive documents. *See generally* Moncayo Decl., DOJ's Ex. I.

**B. Request No. 11-4508**

Mr. Pinson submitted a FOIA request on November 9, 2011 seeking records relating to several cases filed in three federal districts, including a case in the Northern District of West Virginia. *See* Luczynski Decl. ¶ 9. Mr. Pinson requested that the agency spend "no more than 2 hours search time" and produce no more than "100 pages of information" per case. DOJ's Ex. J. The EOUSA split the request into three separate requests by district, and the request for documents from the Northern District of West Virginia was assigned Request No. 11-4508. *See* Luczynski Decl. ¶ 10; DOJ's Ex. K. After the EOUSA informed Mr. Pinson that its first search revealed no documents responsive to Request No. 11-4508, Mr. Pinson sent a letter to the EOUSA claiming that the agency had erroneously searched for records pertaining to him and clarifying that he in fact sought records related to the Bureau of Prison's defense of a federal lawsuit. *See* Luczynski Decl. ¶ 12; DOJ's Ex. M. Thereafter, the EOUSA released in full 205 pages of records. *See* Luczynski Decl. ¶ 14; DOJ's Ex. O. The Court previously denied

[1] DOJ has attached additional declarations as exhibits to the Luczynski Declaration. When referencing those declarations, the Court will cite directly to the additional declarations, followed by their corresponding exhibit number. All of these additional declarations can be found among DOJ's exhibits to the Luczynski Declaration at ECF No. 254-4.

summary judgment because DOJ failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *8–9. In its renewed motion, however, DOJ claims that "there is no need to consider the adequacy of the search" because Mr. Pinson "received more than twice as many responsive records as he requested, and received them without payment that might have been charged" and, therefore, "his request has been fully satisfied." Defs.' Mem. Supp. at 13.

**C. Request No. 12-1748**

On February 22, 2012, Mr. Pinson submitted a request for the "production of all documents, emails, or records located in the U.S. Attorney's Office related to" the litigation of a number of cases in the Northern District of Alabama, the Eastern District of Virginia, the Southern District of California, and the Central District of California. Luczynski Decl. ¶ 15. The EOUSA acknowledged the request on May 23, 2012, split it into four separate requests, and assigned the request for records from the Northern District of Alabama Request No. 12-1748. *See id.* ¶ 16; DOJ's Ex. Q. The EOUSA responded to Mr. Pinson on September 25, 2013, informing him that its search had revealed no responsive records. *See* Luczynski Decl. ¶ 17; DOJ's Ex. R. On October 31, 2013, Mr. Pinson submitted a letter to the EOUSA stating that the agency had failed to release public records as stated in his original request. *See* DOJ's Ex. T. On November 26, 2013, however, OIP informed plaintiff that since he filed a lawsuit regarding the processing of the case, the appeal had been closed. *See* Luczynski Decl. ¶ 20; DOJ's Ex. V. This Court previously denied DOJ's motion for summary judgment with respect to this request, concluding that Mr. Pinson had constructively exhausted his administrative remedies and that DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *5–6, *8–9. In its renewed motion,

DOJ has included a new declaration detailing the search that was conducted, and again defends the adequacy of the EOUSA's search for responsive records as reasonably calculated to lead to any potentially responsive documents. *See generally* Brown Decl., DOJ's Ex. S.

**D. Request No. 12-1754**

DOJ did not move for summary judgment on Request No. 12-1754 in its prior motion. *See Pinson*, 2015 WL 7008124, at *1 n.1. Like Request No. 12-1748, Request No. 12-1754 was among the four requests that Mr. Pinson submitted on February 22, 2012 that were split into different requests. *See* Luczynski Decl. ¶ 21. Mr. Pinson's request related to the Central District of California was assigned Request No. 12-1754. *See id.*; DOJ's Ex. X. Following a search for responsive records in the United States Attorney's Office for the Central District of California, twenty boxes of records were located concerning twenty-six defendants. *See* Luczynski Decl. ¶ 22. The EOUSA claims that, because the case was still in litigation pending appeal, no documents related to the case could be produced for distribution to Mr. Pinson. *See id.*; *see also* Salazar Decl. ¶ 5, DOJ's Ex. X1. Yet, there is no record that the EOUSA ever informed Mr. Pinson of that determination.

**E. Request No. 12-1757**

On February 26, 2012, Mr. Pinson submitted a FOIA request for the "production of all documents, emails, or records" for ten different cases, identified by case number, litigated by six different U.S. Attorneys' Offices. *See* Luczynski Decl. ¶ 23. This request was split into several requests, and Mr. Pinson's request for information regarding three cases from the Middle District of Pennsylvania was assigned Request No. 12-1757. *See* DOJ's Ex. Z. Initially, the EOUSA responded and asserted that because Mr. Pinson "requested records concerning a third party (or third parties)," pursuant to the Privacy Act those records "cannot be released absent express

authorization and consent of the third party, proof that the subject of [the] request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records." DOJ's Ex. AA. Mr. Pinson appealed, claiming that he sought only "public records" which are not exempt under the Privacy Act. *See* DOJ's Ex. BB. The EOUSA closed Mr. Pinson's appeal after he filed this lawsuit. *See* Luczynski Decl. ¶ 27; DOJ's Ex CC. This Court previously denied DOJ's motion for summary judgment with respect to this request, concluding that Mr. Pinson had constructively exhausted his administrative remedies and that DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *5–6, *8–9. DOJ has now supplied a new declaration detailing the search for records responsive to Mr. Pinson's request and noting that a search located thirty-seven pages of responsive records. *See* Matuszewski Decl. ¶ 13, DOJ's Ex. DD. DOJ claims all of the records concern various third party individuals, and none of records contain information regarding the plaintiff, and were therefore properly withheld pursuant to FOIA Exemption 7(C). *See* Luczynski Decl. ¶ 28; DOJ's Ex. DD1.

**F. Request No. 12-1758**

Request No. 12-1758 was similarly formed from splitting Mr. Pinson's February 26, 2012 request, and concerns Mr. Pinson's request for records from the Eastern District of Kentucky. *See* Luczynski Decl. ¶ 29; DOJ's Ex. EE. The request's history follows similar lines: After the EOUSA claimed that all of the records related to third parties and therefore were exempt, Mr. Pinson appealed asserting that the agency had failed to release public records as stated in his original request, and the EOUSA then closed that appeal in light of Mr. Pinson's lawsuit. *See* Luczynski Decl. ¶¶ 30–33; DOJ's Exs. FF, GG, II. This Court previously denied

DOJ's motion for summary judgment with respect to this request, concluding that Mr. Pinson had constructively exhausted his administrative remedies and that DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *5–6, *8–9. After this Court issued its opinion, the EOUSA informed Mr. Pinson by letter dated December 11, 2015 that 100 pages of public records were being released to him free of charge and that, if he wished to receive more, an additional 705 pages of records were available for a $70.50 fee. *See* Luczynski Decl. ¶ 33; DOJ's Ex. II1. However, the EOUSA has not produced a declaration explaining how those public records were located.

**G. Request No. 12-1760**

Request No. 12-1760 was also formed from splitting Mr. Pinson's February 26, 2012 request, and relates to Mr. Pinson's request for information from the Northern District of West Virginia. *See* Luczynski Decl. ¶ 34. And, again, the EOUSA initially claimed that all of the records related to third parties and thus were exempt, Mr. Pinson appealed seeking public records, and the EOUSA closed that appeal in light of Mr. Pinson's lawsuit. *See id.* ¶¶ 36–38; DOJ's Exs. KK, LL, MM. This Court similarly denied DOJ's motion for summary judgment with respect to this request, concluding that Mr. Pinson had constructively exhausted his administrative remedies and that DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *5–6, *8–9. Now, DOJ has supplied a new declaration describing the agency's search, and claiming that no responsive documents were located. *See* Zumpetta-Parr Decl., DOJ's Ex. NN.

**H. Request No. 12-1764**

DOJ did not previously move for summary judgment with respect to Request No. 12-1764. This request was also formed from splitting Mr. Pinson's February 26, 2012 request, and relates to Mr. Pinson's request for information from the Central District of California. *See* Luczynski Decl. ¶ 40; DOJ's Ex. OO. After a search within the Central District of California, the EOUSA located 420 pages of records responsive to Mr. Pinson's request. Of those records, 120 pages were released to Mr. Pinson in full, free of charge. *See* Luczynski Decl. ¶ 42; DOJ's Ex. PP. The letter also informed Mr. Pinson that there were 300 additional pages of records that he could obtain for a $30.00 copying fee. *See* DOJ's Ex. PP. However, the EOUSA has not produced a declaration to explain how the public records were located.

**I. Request No. 12-3095**

Mr. Pinson submitted a FOIA request on January 16, 2012 requesting information regarding four criminal cases in four federal districts. *See* Luczynski Decl. ¶ 43. The EOUSA assigned Request No. 12-3095 to Mr. Pinson's request for records from the Western District of Virginia. *See* DOJ's Ex. RR. On October 31, 2012, the EOUSA informed Mr. Pinson that it had conducted a search of the U.S. Attorney's Office for the Western District of Virginia but had located no responsive records. *See* Luczynski Decl. ¶ 44; DOJ's Ex. SS. Mr. Pinson filed an appeal on November 27, 2012, but the EOUSA closed that appeal on January 23, 2013 after Mr. Pinson filed his initial complaint in this action. *See* Luczynski Decl. ¶¶ 45–46; DOJ's Ex. VV. The Court previously denied summary judgment because DOJ failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See Pinson*, 2015 WL 7008124, at *8–9. Now, the EOUSA has provided a new declaration which explains that the

EOUSA was unable to locate any records in the Western District of Virginia U.S. Attorney's Office. *See* Brooks Decl. ¶ 5, DOJ's Ex. WW.

**J. Request No. 12-3097**

In its prior motion, DOJ did not move for summary judgment with respect to Request No. 12-3097. Mr. Pinson's request, received by the EOUSA on July 19, 2012, sought records from the United States Attorney's Office for the Southern District of Mississippi concerning "Alba v. Randle, No. 10-cv-49 (S.D. Miss.)." *See* Luczynski Decl. ¶ 48; DOJ's Ex. XX. On August 15, 2012, the EOUSA sent Mr. Pinson a letter informing him that the request had been assigned FOIA No. 12-3097. Luczynski Decl. ¶ 49; DOJ's Ex. YY. On September 18, 2015, the EOUSA informed Mr. Pinson that 100 pages of responsive records were being released to him free of charge, and that the agency had located 1,617 additional pages of records, which he could obtain if he paid $75.85 in copying fees. Luczynski Decl. ¶ 48; DOJ's Ex. ZZ. However, the EOUSA has not produced a declaration explaining how those public records were located.

**K. Request No. 13-1085**

By letter dated March 19, 2013, Mr. Pinson submitted a FOIA request for discovery material concerning the federal criminal cases of third parties named Garcia and Espudo. *See Pinson*, 2015 WL 7008124, at *3. In response to this request, the EOUSA informed Mr. Pinson that it would not release the information because such third party information was protected under the Privacy Act and FOIA Exemptions 6 and 7(C). *See id.* Mr. Pinson thereafter agreed to limit the scope of his request to solely public records, and on December 12, 2013, the EOUSA released 100 pages of public records pertaining to his request free of charge. *See id.* Upon learning that the records had not been received, the EOUSA sent the documents to Mr. Pinson a second time on February 11, 2015. *See id.* When the Court considered DOJ's prior motion for

summary judgment, Mr. Pinson claimed that he never received the records because his counselor at MCF Springfield seized them and refused to provide them to him. *See id.* The Court denied DOJ's motion for summary judgment because there was a genuine dispute of material fact whether or not Mr. Pinson had received the responsive documents. *See id.* at *7. The Court ordered DOJ to resend those documents to Mr. Pinson and, to the extent "the BOP has withheld the documents because of BOP policies, or for any other reason," to also "disclose those documents to Mr. Pinson's appointed counsel so that counsel can review them and determine DOJ's compliance with FOIA." *Id.* DOJ now asserts that the records responsive to this request have been resent to Mr. Pinson and his attorney. *See* Luczynski Decl. ¶ 51; DOJ's Ex. AAA.

## III. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of

material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents.  *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009).  To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  To meet its burden, a defendant may rely on declarations that are reasonably detailed and non-conclusory.  *See Citizens for Ethics & Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v.*

*Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV. ANALYSIS

### A. FOIA Request No. 13-1085

As explained above, the Court previously held that there was a genuine issue of fact regarding whether Mr. Pinson received the records associated with Request No. 13-1085, and the Court ordered DOJ to resend them to Mr. Pinson and his Counsel. *See Pinson*, 2015 WL 7008124, at *3. DOJ now represents that it has resent the responsive documents to both Mr. Pinson and his counsel. Mr. Pinson has not contested that the documents were resent to him or argued that he has not received them. *See generally* Pl.'s Opp'n, ECF No. 263.[2]

But the Court is nevertheless unable to grant summary judgment to DOJ with respect to this request because, beyond asserting that the documents have been resent to Mr. Pinson, DOJ has not gone further to argue for a basis upon which summary judgment might be granted. For example, DOJ might have argued that it conducted an adequate search and attempted to justify any withholdings made. Yet, DOJ has not argued for summary judgment on those grounds. This

[2] Although DOJ's Memorandum and Declaration state that the responsive documents were sent to both Mr. Pinson and his counsel, the exhibits DOJ provided with its renewed motion only specifically reproduce a cover letter showing that those documents were sent to Mr. Pinson's appointed counsel. *See* DOJ's Ex. AAA. In its reply, DOJ included a new exhibit which shows that a package was sent to Mr. Pinson, but that exhibit does not reveal the contents of the package. *See* DOJ's Supp. Ex. A, ECF No. 264-1.

Court declines to make the government's arguments for it. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties."). Therefore, the Court again denies DOJ's motion for summary judgment with respect to Request No. 13-1085.

**B. FOIA Request Nos. 12-1757, 12-1758, and 12-1760**

DOJ next argues that the EOUSA properly refused to conduct a search for documents responsive to Request Nos. 12-1757, 12-1758, and 12-1760—and declined to process those requests entirely—pursuant to FOIA Exemptions 6, 7(A), and 7(C). *See* Defs.' Mem. Supp. at 4–7.

This argument is flawed on many levels, and does not accord with the record. For one thing, with respect to two of the requests, Request Nos. 12-1757 and 12-1760, the Luczynski Declaration and its attachments clearly indicate that a search *was* conducted for records responsive to Mr. Pinson's requests and that DOJ withheld some documents located as part of at least one of those searches. *See* Luczynski Decl. ¶ 28; DOJ's Ex. DD1; Matuszewski Decl. ¶ 13, DOJ's Ex. DD; Zumpetta-Parr Decl., DOJ's Ex. NN. As for the other request, Request No. 12-1758, although there is nothing in the record indicating that a search was conducted (or describing any search), the Luczynski Declaration expressly states that 100 pages of public records were released and that an additional 705 pages were located. *See* Luczynski Decl. ¶ 33. This admission indicates that some type of search obviously was conducted pursuant to Request No. 12-1758 as well.

Another problem is that, even if the Court were to ignore counsel's representations and proceeded to consider the declarations that are contained in the record, those declarations are not nearly sufficient to properly detail the searches conducted for Request Nos. 12-1757 and 12-

1760. For example, the declaration explaining the search conducted for records responsive to Request No. 12-1757 states that the EOUSA "used the search terms that were provided by" Mr. Pinson, but does not indicate the terms to which the EOUSA is referring. *See* Matuszewski Decl. ¶ 10, DOJ's Ex. DD. This statement is especially perplexing because Mr. Pinson's request does not appear to specify any search terms beyond the name and case number for which he requested records. *See* DOJ's Ex. Y. Furthermore, the declaration explaining the search conducted for Request No. 12-1760 indicates that the search was conducted for records specifically referencing Mr. Pinson. *See* Zumpetta-Parr Decl. ¶ 7, DOJ's Ex. NN ("I performed a search on LIONS of all cases relating to Jeremy Pinson. There were no criminal files retrievable by the name of Jeremy Pinson . . . ."). Yet, Mr. Pinson did not limit his request to records specific to him. *See* DOJ's Ex. Y.

Finally, to the extent DOJ seeks to invoke FOIA Exemptions 6, 7(A), or 7(C) on the basis that Mr. Pinson sought records relating to cases involving third parties, Mr. Pinson's joint appeal of these requests explicitly clarifies that he sought public records. *See* DOJ's Ex. T (claiming that "[t]he agency failed to release *public records* in agency records which are not exempt . . . ." (emphasis added)). Indeed, DOJ further claims that the EOUSA made a full disclosure of responsive records for Request No. 12-1758 following that appeal.[3] The fact that the agency did

[3] Additionally, Mr. Pinson argues that the documents responsive to Request Nos. 12-1758 were sent to his former address at a prison in Springfield, Missouri, as opposed to his then-current address at ADX Florence, and that he never received the records. *See* Pl.'s Opp'n at 4; DOJ's Ex. II1. The same is true with respect to Request No. 12-3097, for which the court declines to grant summary judgment as explained below. *See* DOJ's Ex. ZZ. DOJ claims that the EOUSA sent the documents to the proper address, but only reproduces an addressed envelope as evidence of doing so. *See* DOJ's Supp. Ex. A, ECF No. 164-1. In its next renewed motion, DOJ should include the cover letter showing the specific requests included in the mailing to Mr. Pinson's correct address. Alternatively, DOJ could resend to Mr. Pinson's new location at USP Allenwood in Pennsylvania. *See* Pl.'s Notice of Change of Address, ECF No. 273.

produce some records indicates that the documents are *not* confined to third parties, despite the agency's initial claims to the contrary.

For all of these reasons, the Court denies DOJ's motion for summary judgment with respect to Request Nos. 12-1757, 12-1758, and 12-1760.

**C. FOIA Request No. 12-1754**

DOJ next argues that the EOUSA properly withheld records responsive to Request No. 12-1754 under FOIA Exemption 7(A) because those records concern a lawsuit in which litigation is ongoing. The EOUSA provides a declaration describing the search for records responsive to Request No. 12-1754 and stating that it withheld records. *See* Luczynski Decl. ¶ 22; DOJ's Ex. X1. However, nothing in the record indicates that a response was ever sent to Mr. Pinson. Indeed, Request No. 12-1754 is the only request at issue in this motion for which DOJ has failed to produce a letter informing Mr. Pinson of the outcome of his request. And the declaration DOJ has provided concerning the search that was conducted only indicates that "[a]s there is pending litigation in the Vasquez case, no documents related to the case have been produced to EOUSA for distribution to Pinson at this time." Salazar Decl. ¶ 5, Ex. X1. If DOJ never responded to Mr. Pinson, he was unable to file an administrative appeal or otherwise challenge DOJ's justification for withholding all documents while the case is pending. Moreover, because this request was submitted in a single request with those requests just discussed—and for which Mr. Pinson filed a single, joint appeal arguing that he sought only *public* documents—it is reasonable to assume that Mr. Pinson might have made the same argument with respect to Request No. 12-1754. And, if, in fact, Mr. Pinson only seeks public records, it is unclear how such public records can be withheld pursuant to Exemption 7(A). The fact that Request No. 12-1754 was absent from Mr. Pinson's appeal further implies that he never

received an initial response from EOSUA. *See* DOJ's Ex. T. Therefore, the Court declines to grant summary judgment to DOJ at this time with respect to Request No. 12-1754.

**D. FOIA Request Nos. 11-3289, 12-1748, 12-1764, 12-3095, and 12-3097**

DOJ also seeks summary judgment on the ground that its search for responsive records was adequate with respect to Request Nos. 11-3289, 12-1748, 12-1764, 12-3095, and 12-3097. *See* Defs.' Mem. Supp. at 9–16.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)) (internal quotation mark omitted). The agency does not have to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg*, 627 F.2d at 370. On the other hand, once the agency has provided a "reasonably detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116.

For three of the requests—Request Nos. 11-3289, 12-1748, and 12-3095—DOJ has provided declarations from the EOUSA showing an organized and thorough search for the requests at issue, and those declarations canvass each request in detail, explain to whom the request was sent, the search terms used, and the specific databases searched. *See generally* Moncayo Decl., DOJ's Ex. I; Brown Decl., DOJ's Ex. S; Brooks Decl., DOJ's Ex. WW. Generally speaking, Mr. Pinson's FOIA requests were referred to United States Attorney's offices all over the country, but the cases at issue were referred to the following offices: the District of Colorado, the Northern District of Alabama, and the Western District of Virginia. *See* Moncayo Decl. ¶ 1, DOJ's Ex. I; Brown Decl. ¶ 1, DOJ's Ex. R; Brooks Decl. ¶ 1, DOJ's Ex. WW. These three offices each conducted searches using the USAO Case Tracking System, LIONS, and searched additional electronic databases or paper records, where appropriate. *See* Moncayo Decl. ¶¶ 3–4, DOJ's Ex. I; Brown Decl. ¶¶ 4–6, DOJ's Ex. R; Brooks Decl. ¶¶ 4–5, DOJ's Ex. WW. For these three requests, the EOUSA informed Mr. Pinson that it had failed to locate any responsive records. *See* Luczynski Decl. ¶¶ 5, 17, 44.

The declarations' descriptions suffice to provide a "reasonably detailed" account of the scope of the EOUSA's search for each request. The declarations describe to whom the request was forwarded, which specific databases were searched, how those databases store information, how that information is searchable, and, where appropriate, the declarations identify the specific search terms used to locate documents with respect to each of Mr. Pinson's requests. *See* Moncayo Decl. ¶¶ 6–9, DOJ's Ex. I; Brown Decl. ¶¶ 7–9, DOJ's Ex. R; Brooks Decl. ¶¶ 4–5, DOJ's Ex. WW. Mr. Pinson has not responded to DOJ's "adequacy of the search" arguments nor has he challenged the facts upon which those arguments are based. Accordingly, the Court deems conceded the facts supporting DOJ's motion for summary judgment with respect to the

adequacy of the EOUSA's search for Request Nos. 11-3289, 12-1748, and 12-3095. Because no responsive records were found for any of these requests, that conclusion suffices to grant summary judgment in DOJ's favor.

The Court also finds summary judgment warranted with respect to Request Nos. 12-1764 and 12-3097. For each of those requests, the EOUSA released 100 or more pages for free, consistent with DOJ's FOIA regulations. *See* 28 C.F.R. § 16.10(d)(4)(i)–(ii) (stating that "components shall provide without charge" the "first 100 pages of duplication" and the "first two hours of search"). In each case, the EOUSA also informed Mr. Pinson that he could receive additional pages that had been located by paying a fee. *See* DOJ's Ex. PP (explaining that the EOUSA was releasing 120 pages for Request No. 12-1764 "free of charge" and that a fee of $30.00 was required to receive the additional 300 pages located); DOJ's Ex. ZZ (explaining that the EOUSA was releasing 100 pages for Request No. 12-3097 "free of charge" and that a fee of $75.85 was required to receive all 1,617 pages located). Yet, Mr. Pinson never responded to those letters or otherwise sought to receive additional documents responsive to his requests. Nor does Mr. Pinson challenge the responsiveness of the 100-plus pages he did receive. This failure implies that the documents that were released were responsive to his request, and therefore that the EOUSA's search was reasonably calculated to uncover at least the first 100 pages of responsive documents to which Mr. Pinson was entitled. Indeed, Mr. Pinson has not contested the reasonableness of the search conducted with respect to these requests at all. *See generally* Pl.'s Opp'n. Because Mr. Pinson did not seek to obtain more than 100 pages of responsive documents, does not claim that the pages the EOUSA did release are unresponsive to his request, and does not challenge the adequacy of the EOUSA's search resulting in those 100 pages, the Court concludes that the EOUSA's search was adequate for purposes of the present motion for

summary judgment. As Mr. Pinson received all the documents to which he was entitled, the Court need not consider whether the EOUSA's broader search for the additional, withheld documents was adequate. *Cf. Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 64 (D.D.C. 2002) (where the search conducted was limited to two hours because the plaintiff had not paid the fee, explaining that DOJ "conducted a search that actually resulted in the production of documents to the plaintiff" and, therefore, that "the Court is able to conclude that the search conducted was reasonably calculated to uncover such documents").

**E. FOIA Request No. 11-4508**

Finally, with respect to Request No. 11-4508, DOJ argues that because Mr. Pinson "received more than twice as many responsive records as he requested, and received them without payment that might have been charged, his request has been fully satisfied. Consequently, there is no need to consider the adequacy of the search." Defs.' Mem. Supp. at 13. As with Request Nos. 12-1764 and 12-3097, above, the Court agrees. Mr. Pinson explicitly limited his request to "no more than 2 hours search time and 100 pages of information per case." DOJ's Ex. J. The EOUSA produced, in full, 205 pages of responsive records.[4] Yet again, Mr. Pinson does not contend that the pages released were unresponsive or that the search conducted was inadequate. Accordingly, because Mr. Pinson received more than double the number of pages to which he was entitled pursuant to his request and under 28 C.F.R. § 16.10(d)(4) and

---

[4] The letter DOJ has produced as an exhibit refers to Request No. 12-2616. *See* DOJ's Ex. O. This appears to be a typo, as the case listed as the subject of Mr. Pinson's request, *Cuevas v. DOJ et al.*, matches the case for which Mr. Pinson sought documents, and which DOJ had previously referred to as Request No. 11-4508. *Compare* DOJ's Ex. N (discussing Mr. Pinson's "request for access to records concerning Cuevas v. Department of Justice, et al, No. 2:08-cv-00016-REM-JSK," and listing the request number as 11-4508), *with* DOJ's Ex. J (requesting records from the Northern District of West Virginia concerning "Case No. 08-cv-16"). In any event, in his reply Mr. Pinson does not claim any confusion about which request was at issue.

does not claim that the released pages were unresponsive to his request, DOJ has properly fulfilled his request, and the Court will grant summary judgment with respect to Request No. 11-4508. *Cf. Judicial Watch*, 185 F. Supp. 2d at 64.

## V.  CONCLUSION

For the foregoing reasons, DOJ's second motion for summary judgment with respect to the EOUSA (ECF No. 254) is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 1, 2016                                                              RUDOLPH CONTRERAS
                                                                                           United States District Judge