UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON,

      Plaintiff,

      v.                         Civil Action No. 12-1872 (RC)

U.S. DEPARTMENT OF JUSTICE,

      Defendant.

## THIRD DECLARATION OF KARA CHRISTENSON

I, Kara Christenson, do hereby declare and state as follows:

1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons (BOP) as a Paralegal for the North Central Regional Office (NCRO), stationed at the Federal Medical Center in Rochester, Minnesota (FMC Rochester).  I have been assigned to the NCRO since September 2008.  Prior to that time, I was assigned to the Legal Department at FMC Rochester since June 1994.  I have been employed by the BOP since March 1992.  The statements I make hereinafter are made on the basis of my review of the official files and records of the Bureau of Prisons, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

2.      I am familiar with the complaint filed by the above-captioned plaintiff, Jeremy Pinson, Federal Register Number 16267-064, seeking disclosure of the records he sought from the Bureau of Prisons.  I have previously provided declarations in this matter.

3.      The statements I make hereinafter are made on the basis of my review of the official files and records of the Bureau of Prisons, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

4.      It is my understanding that on January 4, 2016, the Court denied summary judgment to the Bureau of Prisons on FOIA Request Nos. 2010-12533, 2011-00843 (now 2016-02374), 2011-01351 (now 2016-02381), 2011-01886 (now 2016-02372), 2011-02366 (now 2016-2371),  2011-07156, 2011-07619, 2012-00040, 2012-00039, 2012-00975, and 2013-01684.  In light of the denial of summary judgment, the Bureau has re-processed these requests.

**FOIA Request 2010-12533**

5.      In FOIA Request No. 2010-12533, Pinson sought (1) the "Admission and Orientation Guide or Inmate Handbook currently issued to inmates at the United States Penitentiary – Administrative Maximum at Florence, Colorado," and (2) "All documents relevant to Calculated Uses of Force in the Special Housing Unit at USP Florece [sic] upon [himself] during November 2007, and any Administrative Remedy Requests or Appeals therefrom related to such uses of force."  He limited his request to no more than two hours search time and no more than 100 pages.  A true and correct copy of FOIA Request 2010-12533 is attached as Exhibit A to this declaration.

6.      Under Program Statement 5290.14, Admission and Orientation Program, each institution is required to develop an Admission and Orientation Handbook advising inmates of the institution's operations, program availability, inmate rights and responsibilities, and the Bureau's disciplinary process.

7.      Because Pinson requested the A&O Handbook from the United States Penitentiary – Administrative Maximum Facility (ADX Florence), the A&O Coordinator of that institution was asked to search for the most recent copy of the A&O Handbook in both paper and electronic files.  Paper files are maintained by subject matter, so a hand search of the subject headings for a subject similar to "A&O Handbook" was conducted.  If an

appropriate subject heading was located, the entire file was then hand searched for a copy of the most recent handbook.  All computer directories accessible by searching staff were searched using the keyword "handbook."  Search results were then reviewed to determine if the results were the most recent handbook.  A copy of the most recent A&O Handbook was located.

8.     Further, Pinson requested documents regarding calculated uses of force at the SHU at USP Florence for November 2007.   Program Statement 5566.06, <u>Use of Force and Application of Restraints</u>, explains that a calculated use of force "occurs in situations where an inmate is in an area that can be isolated (e.g., a locked cell, a range) and where there is no immediate, direct threat to the inmate or others."  Staff will attempt to resolve the situation before using force.  Program Statement 5566.06 indicates that the entire use of force must be documented, and staff memoranda are placed in the inmate's Central File.   However, the staff memoranda, as well as additional documentation, are also compiled as part of an investigative packet and maintained by the Special Investigative Services (SIS) Office at the institution where the calculated use of force occurred.  The documents typically include a Report of Incident, After-Action Review Report, and staff memoranda.  Since Pinson requested "all documents" regarding the uses of force, it was determined a search of the SIS Office would be reasonably calculated to uncover all responsive records rather than just a subset of potentially responsive records.

9.     SIS records are now maintained in a centralized computerized database called TRUINTEL, which is searchable by date range or by inmate register number.  A search by date range will retrieve a list of each case generated during that time frame; a search by register number will also retrieve a list of each case associated with that inmate.  Selecting the case from either search result will retrieve a list of documents associated

with that case.  In turn, selecting the document name will retrieve the document, which can then be saved.

10.     Prior to TRUINTEL, SIS records were maintained in paper format, organized by case number in filing cabinets.  SIS staff would maintain a log book of case numbers, date, the nature of the case, and other relevant information.  To search the case files, staff would have to identify the case numbers for cases in November 2007, and then the physical file associated with the case number would be retrieved from the filing cabinet.  The entire paper file was then provided for processing.

11.     USP Florence SIS staff conducted a search for responsive records using these two methods.  Because Pinson had limited his request to only 100 pages, they stopped searching when they had accumulated over 100 pages of responsive records.

12.     By letter dated April 11, 2016, NCRO released 148 pages of responsive records in full and 32 pages in part.  Fifteen pages were withheld in full.  A true and correct copy of the April 11, 2016, Letter to Pinson is attached as Exhibit B to this declaration.

13.     I prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request 2010-12533, as well as documents withheld in response to other FOIA Requests discussed in this declaration.  The documents are divided within the *Vaughn* Index by FOIA Request, and the documents within each FOIA request are numbered.  In order to provide context for the withholdings, if a document was multiple pages, but withholdings affected only one page of document, like FOIA Request 2010-12533, Document 28, I identified the total number of pages in the document and then described with specificity what page or pages of the document were affected by the withholdings.  Therefore, the total number of pages referenced in the *Vaughn* Index will

be more than the total number of pages withheld in part or in full from Pinson.  A true

and correct copy of the Vaughn Index is attached as Exhibit C to this declaration.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(2)

14.  Exemption (b)(2) provides for the withholding of documents "related solely to the
internal personnel rules and practices of the agency."

15.  Exemption (b)(2) was applied to withhold Documents 12 and 30 in their entirety.
Documents 12 and 30 are the Daily Assignment Rosters for USP Florence, and the
rosters are solely designed to inform Correctional Services staff of their work schedule
and assignment within the institution on a particular day.  The information exempt under
(b)(2) was inextricably intertwined with information that was exempt for other reasons,
and therefore, could not be segregated at this time.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(5)

16.  Exemption (b)(5) provides for the withholding of "inter-agency or intra-agency
memorandums or letters which would not be available by law to a party other than an
agency in litigation with the agency."  See 5 U.S.C. § 552(b)(5).

17.  The deliberative process privilege, through Exemption (b)(5), was applied to withhold in
part Documents 2 and 17.  The "inter-agency or intra-agency" threshold is met as the
document consists of an After-Action Review Report prepared by Bureau staff, and the
Report is reviewed by additional Bureau staff.  The information withheld consists of
recommendations regarding whether a use of force was appropriate and suggestions for
improving uses of force for the future.  It is not clear if these recommendations were
adopted.  Every effort has been made to release all segregable information without
releasing the deliberative process information.

18.    The deliberative process privilege, through Exemption (b)(5), was applied to withhold in part Document 13.  The "inter-agency or intra-agency" threshold is met as the document consists of a memorandum from one Bureau staff member to another Bureau staff member.  The information withheld consists of recommendations regarding whether a use of force was appropriate and suggestions for improving uses of force for the future.  It is not clear if these recommendations were adopted.  Every effort has been made to release all segregable information without releasing the deliberative process information.

19.    The deliberative process privilege, through Exemption (b)(5), was applied to withhold in part Document 28.  The "inter-agency or intra-agency" threshold is met as the document consists of a worksheet shared among multiple staff during a calculated use of force.  The information withheld consists of a plan of action to be followed based on various scenarios that could develop during the calculated use of force.  It is not clear from the document if any of the scenarios in fact developed.  Every effort has been made to release all segregable information without releasing the deliberative process information.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

20.    Exemption (b)(6) provides for the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

21.    Exemption (b)(6) was applied to withhold in part Documents 1, 3-10, 16, and 18-26.  The information withheld consists of the names of staff who participated in calculated uses of force and their role on the team.  While staff generally do not have an expectation of privacy regarding the release of their names in Bureau records, staff have a heightened expectation of privacy in the context of a calculated use of force.  A calculated use of force is a contentious situation between staff and an inmate, and even though the situation

6

may be resolved, the inmate often has continued animosity towards participating staff. Release of the staff names in the context of these records would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest. Every effort has been made to release all segregable information without invading the privacy interests of the staff named in these records.

22.  Exemption (b)(6) was applied to withhold in part Documents 11 and 29. The information withheld consists of the names of third-party inmates and information regarding the correctional management of those inmates. Release of this information would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest. Every effort has been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.

23.  Exemption (b)(6) was applied to withhold Documents 12 and 30 in their entirety. The information withheld consists of the Daily Assignment Rosters for USP Florence, which were part of a calculated use of force investigative packet. As previously mentioned, while staff generally do not have an expectation of privacy regarding the release of their names in Bureau records, staff have a heightened expectation of privacy in the context of a calculated use of force. Release of the staff names in the context of these records would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest. The information exempt under (b)(6) was inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

24.     Exemption (b)(6) was applied to withhold Document 27 in its entirety.  Document 27 consists of an injury assessment for a staff member.  Release of this information would constitute an unwarranted invasion into that staff member's personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.  Every effort has been made to release all segregable information without invading the privacy interests of the staff member named in these records.  However, it was determined the staff member retained a privacy interest in the document itself, and therefore, the document was withheld in full.

Justification for Threshold Requirement for Exemptions under 5 U.S.C.§ 552(b)(7)

25.     As a threshold to applying Exemption 7, an agency has to demonstrate that the "records or information [were] compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).

26.     The Bureau of Prisons is a law enforcement agency.  The term "law enforcement officer" is defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc." *See, e.g.*, 5 U.S.C. § 8401(17)(D)(i).    Furthermore, BOP employees perform law enforcement functions.  They possess the authority to make arrests, 18 U.S.C. § 3015; seize evidence, 18 U.S.C. § 4012; and execute searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14.   Additionally, the BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community.  *See* 18 U.S.C. § 4042(a)(1)-(3) ("The Bureau of Prisons, under the direction of the Attorney General, shall (1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection,

instruction, and discipline of all persons charged with or convicted of offenses against the United States . . . .").

27.     The records at issue in this FOIA request meet the law enforcement threshold of Exemption (b)(7).  Specifically, these exemptions were applied to withhold documents maintained by the SIS office, which compiles investigatory records for potential criminal activity within an institution and investigates potential misconduct by inmates.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

28.     Exemption (b)(7)(C) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

29.     Exemption (b)(7)(C) was applied to withhold in part Documents 1, 3-10, 16, 18-26, and 28.  The information withheld consists of the names of staff who participated in calculated uses of force and their role on the team.  As previously mentioned, while staff generally do not have an expectation of privacy regarding their names in Bureau records, staff have a heightened expectation of privacy in the context of a calculated use of force.  Release of the staff names in the context of these records would constitute an unwarranted invasion into their personal privacy.  Every effort has been made to release all segregable information without invading the privacy interests of the staff named in these records.

30.     Exemption (b)(7)(C) was applied to withhold in part Documents 11 and 29.  The information withheld consists of the names of third-party inmates and information regarding the correctional management of those inmates.  Release of this information would constitute an unwarranted invasion into their personal privacy.  Every effort has

been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.

31.   Exemption (b)(7)(C) was applied to withhold Documents 12 and 30 in their entirety.  The information withheld consists of the Daily Assignment Rosters for USP Florence, which were part of a calculated use of force investigative packet.  As previously mentioned, while staff generally do not have an expectation of privacy regarding the release of their names in Bureau records, staff have a heightened expectation of privacy in the context of a calculated use of force.  Release of the staff names in the context of these records would constitute an unwarranted invasion into their personal privacy.  The information exempt under (b)(7)(C) was inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

32.   Exemption (b)(7)(C) was applied to withhold Documents 14 and 15 in part.  The information withheld consists of the name of an Agent with the Federal Bureau of Investigation (FBI).  Release of this information would constitute an unwarranted invasion into the Agent's personal privacy.  Every effort has been made to release all segregable information without invading the privacy interests of the Agent named in these records.

33.   Exemption (b)(7)(C) was applied to withhold Document 27 in its entirety.  Document 27 consists of an injury assessment for a staff member.  Release of this information would constitute an unwarranted invasion into that staff member's personal privacy.  Every effort has been made to release all segregable information without invading the privacy interests of the staff member named in these records.  However, it was determined the staff member retained a privacy interest in the document itself, and therefore, the document was withheld in full.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

34.  Exemption (b)(7)(E) protects from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

35.  Exemption (b)(7)(E) was applied to withhold in part Documents 1, 2, 16, and 17.  The information withheld consists of the Bureau's monitoring and classification assignments for Pinson.  The BOP uses six different broad Central Inmate Monitoring (CIM) assignments with various specific assignments under each of these six broad categories. Inmates who receive a CIM assignment are advised of their broad assignment but are not provided information concerning the specific assignment. The other internal assignments for classification and monitoring used by the BOP are not disclosed to inmates. Together, these classification and monitoring assignments are utilized within the BOP to identify inmates who have a verified need for enhanced monitoring or protection from other inmates for various reasons, including gang/disruptive group affiliations, cooperation issues, etc.  The BOP will use an inmate's assignments to develop specific procedures for managing the inmate. These assignments are also utilized by the BOP to manage the inmate population to ensure one disruptive group is not overpopulated at any given institution which could jeopardize the safety and security of that institution.  Disclosure of the classification and monitoring criteria, or the assignments themselves, would reveal what types of information have been deemed relevant for monitoring and would assist criminals in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity.

Every effort has been made to release all segregable information without disclosing the classification and monitoring assignments or information supporting the classification and monitoring assignments used by the BOP.

36.     Exemption (b)(7)(E) was applied to withhold in part Document 28.  The information withheld consists of the specific procedures used during a calculated use of force.  A calculated use of force is a law enforcement technique used to gain control of a situation, and there are many steps to a calculated use of force, including the types of less-than-lethal munitions that might be used, and with what frequency, to gain control of the situation.   Disclosure of this information would enable inmates to gain a better understanding of the BOP's decision-making process during a calculated use of force, which in turn would render a calculated use of force less effective in controlling a situation.  Every effort has been made to release all segregable information without disclosing the specific procedures to be used during a calculated use of force.

37.     Exemption (b)(7)(E) was applied to withhold Document 29 in part.  The information withheld consists of law enforcement techniques and tools used by the Bureau to manage the safety and security of an institution's physical infrastructure.  Disclosure of this information would enable inmates to manipulate, and ultimately, defeat the techniques and tools, which in turn renders the institution less safe and secure.  Every effort has been made to release all segregable information without disclosing the law enforcement techniques and tools used by the Bureau to manage the safety and security of an institution.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

38.   Exemption (b)(7)(F) provides for the withholding of information or records compiled for law enforcement purposes, the release of which could endanger the life or physical safety of any individual.  See 5 U.S.C. § 552(b)(7)(F).

39.   Exemption (b)(7)(F) was applied to withhold in part Documents 1, 2, 16, and 17.  The information withheld consists of the BOP's monitoring and classification of Pinson.  As previously discussed, the BOP uses monitoring and classification information to manage the inmate population.  Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public. Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

40.   Exemption (b)(7)(F) was applied to withhold in part Documents 1, 3-10, 16, 18-26, and 28.  The information withheld consists of the names of staff who participated in calculated uses of force and their role on the team.  As previously mentioned, a calculated use of force is a contentious situation between staff and an inmate, and even though the situation may be resolved, the inmate often has continued animosity towards participating staff.  Release of the staff names in the context of these records could reasonably be expected to endanger the life or physical safety of those staff.  Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

41.   Exemption (b)(7)(F) was applied to withhold Documents 11 and 29 in part.  The information withheld consists of information regarding the security procedures of an institution.  Disclosure of this information would enable inmates to manipulate the security procedures which in turn could reasonably be expected to endanger the life or

physical safety of staff, inmates, and general public.  Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

42.     Exemption (b)(7)(F) was applied to withhold in full Documents 12 and 30.   The information withheld consists of the Daily Assignment Roster for USP Florence on two different days.  Release of this information would reveal the institution's staffing levels, including how many correctional officers are present on each shift and where those officers are posted throughout the institution.  This information could assist individuals in planning incidents, including assaults, homicides, and escape attempts, within the institution in order to minimize detection and/or the number of staff who could respond to the incident, and therefore, increasing the likelihood that the incident will succeed.  Every effort to release all segregable information without endangering the life or physical safety of third party.  However, it was determined that no useful information that would shed light on the Bureau's operations remained, and therefore, the documents were withheld in full.

43.     Exemption (b)(7)(F) was applied to withhold in part Document 28.  The information withheld consists of the specific procedures used during a calculated use of force.  A calculated use of force is a law enforcement technique used to gain control of a situation, and there are many steps to a calculated use of force, including the types of less-than-lethal munitions that might be used and with what frequency to gain control of the situation.   Disclosure of this information would enable inmates to gain a better understanding of the BOP's decision-making process, which in turn could reasonably be expected to endanger the life or physical safety of the staff participating in the calculated

use of force.  Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

**FOIA Request No. 2011-00843/2016-02374**

44.     In FOIA Request No. 2011-00843 (2016-02374), Pinson sought the (1) Rated Capacity Computation Form (EMS-36); (2) Site Safety and Control Plan (ICS Form 208); (3) Incident Roster and Activity Log (ICS Form 214); and (4) Incident Action Plan Safety Analysis (ICS Form 215a), all for FCI Talladega.  He limited his request to no more than two hours search time and no more than 100 pages.  A true and correct copy of FOIA Request No. 2011-00843 is attached as Exhibit D to this declaration.

45.     Under Program Statement 1060.11, Rated Capacities for Bureau Facilities, institutions are required to determine and report their rated capacity and total capacity for overall strategic planning.  When required, a Rated Capacity Computation Form (EMS 36) is submitted by an institution's Warden to the Regional Director, who in turn forwards it to the Assistant Director of the Administration Division.  I know from experience that the EMS 36 is typically prepared and/or maintained by the Facilities Departments at the institution, regional office, and Central Office.

46.     As Pinson requested the EMS 36 for FCI Talladega, the Facilities Departments at FCI Talladega, the Southeast Regional Office, and Central Office were asked to conduct a search of their paper and electronic files.  Paper files are organized by subject, so a hand search of the subject headings for a subject similar to "rated capacity" was conducted. If an appropriate subject heading was located, the entire file was then hand searched for documents regarding the EMS 36 for FCI Talladega.  All computer directories accessible by searching staff were searched using the keywords "EMS 36" and "Rate Capacity." Search results were then reviewed to determine if the results were regarding the EMS 36

for FCI Talladega.  The Facilities Office for the Southeast Regional Office located four pages of responsive records; FCI Talladega and Central Office did not locate any responsive records.

47.     Pinson's Request for various "ICS" forms implicates the Incident Command System (ICS), which is an incident management system that allows various facilities, equipment, personnel, procedures, and communications to operate within a common organizational structure.  The Bureau recently adopted ICS procedures.  During a major incident requiring the coordination of resources, ICS forms are intended to be used as tools for supporting and documenting ICS activities.  Specifically, the ICS Form 208 is an optional form outlining safety hazards and precautions to be observed during an incident.  The ICS Form 214 is a log of basic incident activity documentation and serves as a time-line of events.  The ISC Form 215a aids the Safety Officer in conducting an operational risk assessment during the incident.  The ICS forms would be maintained at the institution where the incident occurred.

48.     FCI Talladega staff were consulted to determine if the ICS had been activated since the Bureau's adoption of the system.  They advised it had not been, so no responsive records would exist.  Therefore, no search was conducted.

49.     By letter dated March 25, 2016, the Southeast Regional Office (SERO) released to Pinson 3 pages of records in full and 1 page of records in part.  A true and correct copy of the March 25, 2016, Letter to Pinson, is attached as Exhibit E to this declaration.

50.     I prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request 2011-00843.  See Exhibit C at 8.

Justification for Threshold Requirement for Exemptions under 5 U.S.C. § 552(b)(7)

16

51.     The records at issue in this FOIA request meet the law enforcement threshold of
        Exemption (b)(7).   Specifically, the documents are related to the operation and
        management of the Federal Correctional Institution in Talladega, Alabama, a medium-
        security prison housing male inmates with an adjacent satellite camp.  The documents are
        also relevant to the Bureau's strategic planning related to its mission of protecting staff,
        inmates, and the public.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C) and (b)(7)(F)

52.     Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the phone number a Bureau
        staff member.  Release of this information would constitute an unwarranted invasion into
        the staff member's personal privacy.  Further, disclosure of this phone number could
        reasonably be expected to result in harassing phone calls and potential death threats to the
        staff member. Every effort has been made to release all segregable information without
        invading the privacy interest of the staff member.

**FOIA Request No. 2011-01351/2016-02381**

53.     In FOIA Request No. 2011-01351 (2016-02381), Pinson requested copies of "all After
        Action Review Reports, pertaining to any inmate on inmate assault or homicide,
        occurring at the Federal Correctional Institution in Talladega, Ala. during 2009-2010."
        He limited his request to no more than two hours search time and no more than 100
        pages.  A true and correct copy of FOIA Request No. 2011-01351 is attached as Exhibit F
        to this declaration.

54.     When there is a significant incident at an institution, including but not limited to
        homicides and assaults, BOP staff prepare a Report of Incident (Form 583) describing the
        incident, and the Form 583 is forwarded to the appropriate regional office for review.
        Within two days of the resolution of an incident, the Warden, Associate Warden for

Correctional Services, Health Services Administrator, and the Captain meet and review the incident to assess whether staff adhered to policy. Their review is documented on the "After-Action Report" (Form 586). Copies of both the Form 583 and Form 586 are maintained at the institution by the SIS Department. Each incident is assigned a unique identifying case number. As previously mentioned, the forms are maintained by either case number or date of incident in either a paper file or in TRUINTEL.

55. As Pinson requested the Form 586s from FCI Talladega, FCI Talladega SIS staff were asked to search their paper files and TRUINTEL for responsive records using the methods previously outlined in Paragraphs 8-10. SIS staff located 9 pages of responsive records and forwarded the records for processing.

56. By letter dated May 25, 2016, NCRO released 9 pages of responsive records in part. A true and correct copy of the May 25, 2016, Letter to Pinson is attached as Exhibit G to this declaration.

57. I prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2011-00843. See Exhibit C at 9-11.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(5)

58. The deliberative process privilege, through Exemption (b)(5), was applied to withhold in part Documents 1-4. The "inter-agency or intra-agency" threshold is met as the documents consist of After-Action Review Reports prepared by Bureau staff, and the Report is forwarded for review by additional Bureau staff. The information withheld consists of recommendations regarding whether a use of force was appropriate and suggestions for improving uses of force for the future. It is not clear if these recommendations were adopted. Every effort has been made to release all segregable information without releasing the deliberative process information.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

59.   Exemption (b)(6) was applied to withhold in part Documents 1-4.  The information
      withheld consists of the names of third-party inmates and file names of evidence relied
      upon by staff during the review process as the file names included the names of the
      inmates.  Release of this information would constitute an unwarranted invasion into the
      inmates' personal privacy, and Pinson has not identified any interest that outweighs this
      privacy interest.  Every effort has been made to release all segregable information
      without invading the privacy interests of the third-party inmates named in these records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C. § 552(b)(7)

60.   The records at issue in this FOIA request meet the law enforcement threshold of
      Exemption (b)(7).  Specifically, this exemption was applied to withhold documents
      maintained by the SIS office, which compiles investigatory records for potential criminal
      activity within an institution.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

61.   Exemption (b)(7)(C) was applied to withhold in part Documents 1-4.  The information
      withheld consists of the names of third-party inmates and file names of evidence relied
      upon by staff during the review process which included the names of the inmates.
      Release of this information would constitute an unwarranted invasion into the third-party
      inmates' personal privacy.  Every effort has been made to release all segregable
      information without invading the privacy interests of the third-party inmates named in
      these records.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

62.   Exemption (b)(7)(E) was applied to withhold in part Documents 1-4.  The information
      withheld consists of the Bureau's monitoring and classification assignments for Pinson

and third-party inmates.   The information withheld also includes the correctional management techniques used by the BOP to manage third-party inmates.   As previously mentioned, disclosure of the classification and monitoring criteria, the assignments themselves, and correctional management techniques would reveal what types of information have been deemed relevant for monitoring and would assist criminals in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity.   Every effort has been made to release all segregable information without disclosing the classification and monitoring information and correctional management techniques used by the BOP.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

63.     Exemption (b)(7)(F) was applied to withhold in part Documents 1-4.   The information withheld consists of the Bureau's monitoring and classification assignments for Pinson and third-party inmates.   The information withheld also includes the correctional management techniques used by the BOP to manage third-party inmates.   As previously discussed, the BOP uses monitoring and classification information and correctional management techniques to manage the inmate population.   Disclosure of this information would enable inmates to evade the techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public. Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

**FOIA Request No. 2011-01886 (2016-02372)**

64.     In FOIA Request No. 2011-01886 (2016-02372), Pinson requested all documents associated with his placement referral to the Administrative Maximum Facility in Florence, Colorado (ADX Florence).   He limited his request to no more than two hours

search time and no more than 100 pages.  A true and correct copy of FOIA Request No.

2011-01886 is attached as Exhibit H to this declaration.

65.     Pinson was referred to the ADX in 2010.  At the time, Pinson was housed at the Federal

Correctional Institution in Talladega, Alabama, which is part of the Southeast Region.

66.     After 2010, when an inmate is referred for placement at ADX Florence, Unit Team staff

at his institution of confinement will initiate a packet containing the reasons for referral

and all necessary supporting documentation.  If the Warden concurs with the rationale for

the referral, the packet is sent to the institution's Regional Office for the Regional

Director's approval.  If approved, the referral packet is forwarded to the Designation and

Sentence Computation Center in Grand Prairie, Texas, for further review.  Again, if

approved, a Discipline Hearing Administrator (DHA) will conduct a hearing to determine

if placement is warranted.  The DHA's report will be provided to the Assistant Director

of the Correctional Programs Division for a final decision on placement.

67.     As FCI Talladega would have initiated Pinson's ADX referral, FCI Talladega Unit Team

staff were asked to conduct a search for responsive records.  Once approved by the

Warden, Pinson's ADX referral would have been scanned, saved as a *.pdf file, and

emailed to the regional office.  Therefore, Unit Team staff searched their electronic

records, including *.pdf files, using the search terms of "ADX Referral" and "Jeremy

Pinson."  Responsive records were provided.

68.     Further, as the Southeast Region would have received Pinson's ADX referral, a search of

that office was initiated.  In the Southeast Region, ADX referral packets were received by

the regional Discipline Hearing Administrator's (DHA) Office.  Therefore, the Regional

DHA was asked to conduct a search of his Office's electronic records, including *.pdf

files, using the search terms of "ADX Referral" and "Jeremy Pinson."

69.     These two searches yielded approximately 300 pages of records responsive to Pinson's request.  As he had limited his request to 100 pages of records, no further searches were conducted.

70.     By letter dated June 2, 2016, NCRO released to Pinson 52 pages in full and 48 pages in part.  Thirty-six pages were withheld in their entirety.  A true and correct copy of the April 21, 2016, Letter to Pinson, is attached as Exhibit I to this declaration.

71.     I prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2011-01886/2016-02372.  <u>See</u> Exhibit C at 12-20.

<u>Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(5)</u>

72.     The deliberative process privilege, through Exemption (b)(5), was applied to withhold in part Documents 3, 21-23, 25, and 35.  The "inter-agency or intra-agency" threshold is met as these documents consist of referrals and recommendations made from Bureau staff to other Bureau staff regarding the future correctional management of Pinson.  It is not clear if these recommendations were adopted.  Every effort has been made to release all segregable information without releasing the deliberative process information.

<u>Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)</u>

73.     Exemption (b)(6) was applied to withhold in part Documents 1, 2, 4, 7, 20-25, and 35.  The information withheld consists of the names of third-party inmates, their personal identifying information, and information regarding the correctional management of those inmates.  Release of this information would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.  Every effort has been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.

74.     Exemption (b)(6) was also applied to withhold Document 5 in its entirety. The information withheld consists of the names of third-party inmates, their personal identifying information, and information regarding the correctional management of those inmates.  Release of this information would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.   The information exempt under (b)(6) was inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

75.     Exemption (b)(6) was applied to withhold in part Documents 26-33.  The information withheld consists of the names of staff who participated in calculated uses of force and their role on the team.  As previously mentioned, while staff generally do not have an expectation of privacy regarding the release of their names in Bureau records, staff have a heightened expectation of privacy in the context of a calculated use of force.  Release of the staff names in the context of these records would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.   Every effort has been made to release all segregable information without invading the privacy interests of the staff named in these records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C.§ 552(b)(7)

76.     The records at issue in this FOIA request meet the law enforcement threshold of Exemption (b)(7).  The records were compiled in relation to the law enforcement mission of managing the incarceration of Pinson, including the BOP's decision-making process regarding the appropriate institution of confinement.  The records included in the ADX referral packet also included investigatory records regarding potential criminal activity within the Bureau's institutions.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

77.    Exemption (b)(7)(C) was applied to withhold in part Documents 1, 2, 4, 7, 20-25, and 35.
       The information withheld consists of the names of third-party inmates, their personal
       identifying information, and information regarding the correctional management of those
       inmates.  Release of this information would constitute an unwarranted invasion into their
       personal privacy.  Every effort has been made to release all segregable information
       without invading the privacy interests of the third-party inmates named in these records.

78.    Exemption (b)(7)(C) was also applied to withhold in full Document 5.  The information
       withheld consists of the names of third-party inmates, their personal identifying
       information, and information regarding the correctional management of those inmates.
       Release of this information would constitute an unwarranted invasion into their personal
       privacy.  The information exempt under (b)(7)(C) was inextricably intertwined with
       information that was exempt for other reasons, and therefore, could not be segregated at
       this time.

79.    Exemption (b)(7)(C) was applied to withhold in part Documents 3 and 19.   The
       information withheld consists of the telephone and facsimile numbers and email
       addresses of staff members.  Release of this information would constitute an unwarranted
       invasion into the staff member's personal privacy.  Every effort has been made to release
       all segregable information without invading the privacy interest of the staff member.

80.    Exemption (b)(7)(C) was applied to withhold in part Document 20.  The information
       withheld consists of the name of an Agent with the FBI.  Release of this information
       would constitute an unwarranted invasion into the Agent's personal privacy.  Every effort
       has been made to release all segregable information without invading the privacy
       interests of the Agent named in these records.

81.   Exemption (b)(7)(C) was applied to withhold in part Documents 26-33.  The information
      withheld consists of the names of staff who participated in calculated uses of force and
      their role on the team.  As previously mentioned, while staff generally do not have an
      expectation of privacy regarding their names in Bureau records, staff have a heightened
      expectation of privacy in the context of a calculated use of force.  Release of the staff
      names in the context of these records would constitute an unwarranted invasion into their
      personal privacy.  Every effort has been made to release all segregable information
      without invading the privacy interests of the staff named in these records.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

82.   Exemption (b)(7)(E) was applied to withhold Document 5 in full.  The information
      withheld included discussions of gang and informant activity within the Bureau of
      Prisons.  To manage the inmate population and ensure the safety of inmates, staff, and the
      public, the Bureau limits and tracks information regarding gang activity in its facilities.
      Although the use of informants is well-known to inmates, the specific methods of
      developing informants, how they are identified, and the types of information the Bureau
      learns from them are not well-known.  Revealing the factual information developed from
      the law enforcement techniques of tracking gang and informant activity would reveal the
      techniques themselves.   The information exempt under (b)(7)(E) was inextricably
      intertwined with information that was exempt for other reasons, and therefore, could not
      be segregated at this time.  Exemption (b)(7)(E) was also applied to withhold in part
      Document 22 for these same reasons.  However, the exempt information in Document 22
      was able to be segregated.

83.   Exemption (b)(7)(E) was applied to withhold in part Documents 7, 18-19, 21-25, and 34-
      35.  The information withheld consists of the Bureau's monitoring and classification

assignments for Pinson and third-party inmates.  As previously mentioned, disclosure of the classification and monitoring criteria, or the assignments themselves, would reveal what types of information have been deemed relevant for monitoring and would assist criminals in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity. Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.  Exemption (b)(7)(E) was also applied to withhold in full Document 6 for the same reasons.  The monitoring and classification assignments in that document were inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

84. Exemption (b)(7)(E) was applied to withhold in part Document 23.  The information withheld consisted of a factual summary and conclusions of a law enforcement investigation.  Disclosure of this information would reveal the law enforcement techniques used during the investigation.  The techniques themselves are not generally known, so their disclosure would inhibit their effectiveness at a later date.  Every effort has been made to release all segregable information without disclosing the law enforcement techniques used.

85. Exemption (b)(7)(E) was applied to withhold in part Document 35.  The information withheld consists of the type of a law enforcement investigation conducted by the Bureau.  The Bureau conducts several types of law enforcement investigations, and the guidelines for conducting each investigation vary.  Disclosing the type of a law enforcement investigation would disclose the guidelines for that type of investigation, which in turn will compromise the ability of staff to conduct the investigation.  Every

effort has been made to release all segregable information without disclosing the investigation type or guidelines.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

86. Exemption (b)(7)(F) was applied to withhold in part Documents 1 and 8-17. The information withheld consists of descriptions of evidence used to support Pinson's ADX referral which contain third-party names and opinions by staff-witnesses requested by Pinson regarding whether his placement at ADX was appropriate. Most inmates placed at ADX Florence are dissatisfied with the Bureau's decision to do so. Therefore, the safety of the staff-witnesses or the third-parties is at risk if the inmate learns what information they provided. Every effort has been made to release all segregable information without endangering the life or physical safety of these individuals.

87. Exemption (b)(7)(F) was applied to withhold in part Documents 4 and 22. The information withheld consists of discussions of gang and informant activity within the Bureau. Disclosure of this information could lead to increased tension among the gangs and targeting of the informants, which in turn could lead to fights, assaults, and homicides within Bureau institutions. Every effort has been made to release all segregable information without endangering the life or physical safety of the inmates, staff, and the public. Exemption (b)(7)(F) was also applied to withhold Document 5 in its entirety for the same reasons. However, the information about gang activity and informants in that document was inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

88. Exemption (b)(7)(F) was applied to withhold in part Documents 7, 18-19, 21-25, and 34-35. The information withheld consists of the Bureau's monitoring and classification assignments for Pinson and third-party inmates. As previously discussed, the BOP uses

monitoring and classification information and correctional management techniques to manage the inmate population. Disclosure of this information would enable inmates to evade the techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public. Every effort has been made to release all segregable information without endangering the life or physical safety of individuals. Exemption (b)(7)(F) was also applied to withhold Document 6 in its entirety for the same reasons. However, the monitoring and classification information in that document was inextricably intertwined with information that was exempt for other reasons, and therefore, could not be segregated at this time.

89.   Exemption (b)(7)(F) as applied to withhold in part Documents 20, 23, and 35. The information withheld consists of statements third-parties made to law enforcement officers. Disclosure of the content of the witness statements would jeopardize the physical safety of those witnesses. Every effort has been made to release all segregable information without endangering the life or physical safety of the witnesses.

90.   Exemption (b)(7)(F) was applied to withhold in part Document 21. The information withheld consists of information regarding the victim of a crime. Disclosure of the information could adversely affect the safety of the victim. Every effort has been made to release all segregable information without endangering the life or physical safety of the witnesses.

91.   Exemption (b)(7)(F) was applied to withhold Document 23 in part. The information withheld consisted of a factual summary and conclusions of a law enforcement investigation. Disclosure of the information could result in physical harm to the individuals who cooperated with the investigation, and the identity of those individuals is apparent from the summary and conclusions. Every effort has been made to release all

28

segregable information without endangering the life or physical safety of the cooperating individuals.

92.   Exemption (b)(7)(F) was applied to withhold in part Documents 23 and 35.   The information withheld consists of the type of a law enforcement investigation conducted by the Bureau.   The Bureau conducts several types of law enforcement investigations, and certain investigations are viewed negatively by the inmate population.   Disclosure of the type of investigation could therefore lead to increased hostility towards the subjects and witnesses involved in the investigation, which in turn could jeopardize their physical safety.   Every effort has been made to release all segregable information without endangering the life or physical safety of individuals associated with the investigation.

93.   Exemption (b)(7)(F) was applied to withhold in part Documents 26-33.   The information withheld consists of the names of staff who participated in calculated uses of force and their role on the team.   As previously mentioned, a calculated use of force is a contentious situation between staff and an inmate, and even though the situation may be resolved, the inmate often has continued animosity towards participating staff.   Release of the staff names in the context of these records could reasonably be expected to endanger the life or physical safety of those staff.   Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

94.   Exemption (b)(7)(F) was applied to withhold Document 36 in its entirety.   Document 36 consists of a pre-sentence investigation report (PSR) prepared in United States v. Jeremy Vaughn Pinson, No. CR06-00114-001-R (W.D. Okl.).   As articulated in Program Statement 1351.05, Release of Information, PSRs contain information regarding the defendant's government assistance, financial resources, and/or community affiliations. An inmate is likely to be pressured to provide his PSR to other inmates so they can learn

whether he cooperated with the government, has financial resources, etc.  If the inmate refuses to provide his PSR, he is likely to be threatened and/or assaulted; if he provides his PSR, the information contained in the documents could also lead to his being threatened or assaulted.  <u>See</u> Program Statement 1351.05, p. 15-16.  Although Pinson is seeking his own PSR, the release of this information while Pinson remains incarcerated is nonetheless likely to endanger his life or physical safety if known by other individuals.  If Pinson wishes to review these documents, he may request to do so according to the procedures outlined on pages 12-13 of Program Statement 1351.05.  Every effort to release all segregable information within the PSR was made, but the policy of the Administrative Office of the Courts is that the sentencing court must authorize the release of the PSR.  Therefore, the document was withheld in its entirety.

**FOIA Request No. 2011-02366 (2016-02371)**

95.   In FOIA Request No. 2011-02366 (2016-02371), Pinson sought copies of "any final settlement resulting in a Plaintiff receiving monetary compensation arising from litigation against officers or employees of the Federal Bureau of Prisons in Lewisburg, PA; Oakdale, LA; Talladega, AL from 2006-Present."  He limited his request to no more than two hours search time and no more than 100 pages.  A true and correct copy of FOIA Request No. 2011-02366 is attached as Exhibit J to this declaration.

96.   The Bureau of Prisons' Office of General Counsel created a litigation database called Content Manager – Civil Litigation to track all litigation handled by Bureau attorneys.  Upon receipt of a new case by an attorney, the case will be opened in Content Manager – Civil Litigation, and as the case proceeds, relevant documentation will be uploaded to the database.  Prior to the creation of Content Manager – Civil Litigation, the Office of General Counsel used a database called LawPack to track litigation.  When Content

Manager – Civil Litigation was implemented, data from LawPack was incorporated into the database.

97.     Similarly, the Office of General Counsel has created a separate database called Content Manager – Administrative Tort to track administrative tort claims submitted to the Bureau of Prisons.  When a new administrative tort claim is received by a Legal Office, staff will open a new claim in the database and upload relevant documentation.

98.     Both Content Manager databases are searchable by incident institution, date, and case disposition.  Therefore, individualized searches were conducted in both databases based on the criteria provided by Pinson.  All searches were limited to cases and claims settled after January 1, 2006.  The search was then run by selecting the incident institutions identified by Pinson, and if no results were located, the search was broadened to the Regional Office that included the identified institution.   If the search identified responsive cases, the electronic case file was opened within the database to retrieve any documents showing the amount paid to the inmate.

99.     The Supervisory Attorneys assigned to the United States Penitentiary in Lewisburg, Pennsylvania, Federal Correctional Institution in Talladega, Alabama, and Federal Correctional Complex in Oakdale, Louisiana, were also contacted to see if they could identify additional cases potentially responsive to Pinson's request.   Individual legal offices maintain case tracking logs which include the case name, court number, and potentially, whether the case was settled.  Legal staff reviewed their case tracking logs for any cases identified as settled during the relevant time period of Pinson's request.   If cases were identified as settled, the paper file for that case was pulled from the office's legal files and hand searched for settlement documents.

100.    The search using these methods was stopped at two hours pursuant to Pinson's FOIA request.  Six pages of responsive documents had been located at the time the search efforts were stopped.

101.    By letter dated March 28, 2016, SERO released to Pinson 2 pages of records in full and 4 pages of records in part.  A true and correct copy of the March 28, 2016, Letter to Pinson is attached as Exhibit K to this declaration.  I have prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2011-02366 (2016-02371).  See Exhibit C at 21.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

102.    Exemption (b)(6) was applied to withhold in part Documents 1 and 2.  The information withheld from these documents included the names and addresses of individuals involved in the cases identified during the search.  Further, the information withheld included the case numbers and administrative claim number, as this information could be used to circumvent the withholding of the names and identify the involved individuals.  Release of this information would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.  Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

103.    The records at issue in this FOIA request meet the law enforcement threshold of Exemption (b)(7).  Specifically, the documents were generated pursuant to litigation challenging the Bureau's performance of its law enforcement mission at three correctional institutions identified by Pinson.

104.    Exemption (b)(7)(C) was applied to withhold in part Documents 1 and 2.    The information withheld from these documents included the names and addresses of individuals involved in the cases identified during the search.    Further, the information withheld included the case numbers and administrative claim number, as this information could be used to circumvent the withholding of the names and identify the involved individuals.    Release of this information would constitute an unwarranted invasion into their personal privacy.    Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

**FOIA Request 2011-07156**

105.    In FOIA Request No. 2011-07156, Pinson sought (1) "All ADX Florence placement decisions in which Assistant Director found placement not warranted since Jan. 1, 2009 with inmate names redacted," (2) "emails between Central Office staff regarding [his] ADX referral," (3) "emails between SERO Regional staff regarding [his] ADX referral," (4) "List of psychology treatment programs at ADX Florence," and (5) "All DHO Reports by FCI Talladega DHO created since 2008 which find a BOP employee statement or memorandum to not be credible."    He limited his request to no more than two hours search time and no more than 100 pages.    A true and correct copy of FOIA Request 2011-07156 is attached as Exhibit L to this declaration.

106.    As previously mentioned, when an inmate is referred for placement at ADX Florence, Unit Team staff at his institution of confinement will initiate a packet containing the reasons for referral and all necessary supporting documentation.    If the Warden concurs with the rationale for the referral, the packet is sent to the institution's Regional Office for the Regional Director's approval.

107.    Prior to June 2010, if approved by the referring region, the referral packet was forwarded from the referring region to the NCRO for further review.  Again, if approved by NCRO, a Discipline Hearing Administrator (DHA) would conduct a hearing to determine if placement is warranted.  The DHA's report was then provided to the North Central Regional Director for a final decision on placement.

108.    Since June 2010, if the referring region approves the ADX referral, it is forwarded to the Designation and Sentence Computation Center in Grand Prairie, Texas, for further review.  Again, if approved, a DHA will conduct a hearing to determine if placement is warranted.  The DHA's report will be provided to the Assistant Director of the Correctional Programs Division for a final decision on placement.

109.    As Pinson's request for records for information about ADX placement decisions included the time period the North Central Regional Director approved ADX placement, the North Central Regional Office was asked to conduct a search.  The Correctional Services Department, which includes the DHA's Office, advised that they did not maintain a record of denied ADX referrals.  Therefore, no responsive records would exist.

110.    The DSCC staff member assigned to monitoring ADX referrals was contacted.  He indicated that he maintained a list of ADX referrals that included whether the referrals were denied.  He provided this responsive record to the NCRO for processing.

111.    Regarding Pinson's request for emails between Central Office and SERO staff about his ADX referral, the Bureau has an email archive system in place by which identified staff emails can be searched with specific terms.  However, this email archive system is currently unavailable due to technical issues, and it is not clear when the search capabilities will be restored.  I will request a search of the email archive system for this portion of Pinson's request when it is restored.

112.   I am aware that occasionally, when staff email each other about inmates, they will print the email and place it in the inmate's Central File, which is maintained at the institution of confinement.  I contacted Pinson's institution of confinement, USP Allenwood, to ask that a hand search of his Central File be conducted to look for emails about his ADX placement.

113.   Further, DSCC staff will occasionally save emails about inmates to the inmate's folder on the shared computer network.   Therefore, I asked a DSCC staff member to open and review each document in Pinson's electronic folder to determine if the document was an email about his ADX placement.  They located several responsive documents.

114.   Regarding Pinson's request for a list of psychology treatment programs at ADX Florence, I determined the Psychology Department at ADX Florence was most likely to have responsive records.  They were asked to search the shared Psychology computer directory and their individual computer directories for any lists of Psychology programs offered using the search terms "psychology" and "program."  The documents revealed by the search were then individually reviewed to determine if the document was a list of psychology programs offered at ADX Florence.  They located responsive records.

115.   Finally, regarding Pinson's request for DHO Reports in which the DHO found the employee statement or memorandum to not be credible, I determined the Bureau did not maintain records in a format that would allow a search.  When an inmate receives an incident report, it is logged into SENTRY and assigned an incident report number.  If an incident report is expunged, a notation of the expungement will be made in SENTRY, but the reason for the expungement, such as lack of evidence or credibility of staff, is not documented.  Further, discipline records in SENTRY are primarily searchable by either

the inmate's register number or by the assigned incident report number.  SENTRY cannot be searched to produce a listing of all incident reports expunged at a specific institution.

116.    Even if it was possible to create a list of all incident reports expunged at FCI Talladega, the only way to know if the expunged incident report was responsive to Pinson's request would be locate the documents associated with the incident report and determine why the DHO expunged the incident report.  However, under Program Statement 5270.09, Inmate Discipline Program, the incident report and related documents must be removed from the inmate's Central File when the incident report is expunged.  Therefore, the Bureau does not track the information Pinson requested in the manner that would allow us to retrieve responsive documents with a reasonable amount of effort.

117.    By letter dated May 16, 2016, NCRO released 2 pages of responsive records in full and 7 pages of records in part.  Regarding Pinson's request for all DHO reports by FCI Talladega DHOs wherein a BOP employee's statement was found not credible, Pinson was advised the Bureau does not track the information he requested in a manner that would allow retrieval, and therefore, his request required an unreasonably burdensome search.  Further, Pinson was advised that Bureau could not conduct a search of emails older than a couple months due to technical difficulties.  A true and correct copy of the May 16, 2016, Letter to Pinson is attached as Exhibit M to this declaration.  The Bureau's response to this FOIA request will be supplemented when the technical difficulties regarding the email searches are resolved.

118.    I have prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2011-07156.  See Exhibit C at 22.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

119.   Exemption (b)(6) was applied to withhold in part Documents 1, 2, and 4.   The information withheld consists of the names of third-party inmates and their personal identifying information.   Release of this information would constitute an unwarranted invasion into their personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.   Every effort has been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C.§ 552(b)(7)

120.   Documents 1 and 2 meet the law enforcement threshold of Exemption (b)(7).   The records were compiled in relation to the Bureau's law enforcement mission of managing the incarceration of inmates, including the decision-making process regarding the appropriate institution of confinement.

121.   Documents 3-6 meet the law enforcement threshold of Exemption (b)(7).   The records were compiled in relation to the law enforcement mission of managing the incarceration of Pinson, including the decision-making process regarding the appropriate institution of confinement.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

122.   Exemption (b)(7)(C) was applied to withhold in part Documents 1, 2, and 4.   The information withheld consists of the names of third-party inmates and their personal identifying information.   Release of this information would constitute an unwarranted invasion into their personal privacy.   Every effort has been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.

123.   Exemption (b)(7)(C) was applied to withhold in part Documents 3, 5, and 6.   The information withheld includes the phone numbers of Bureau staff members.   Release of this information would constitute an unwarranted invasion into the staff member's personal privacy.   Every effort has been made to release all segregable information without invading the privacy interest of the staff member.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

124.   Exemption (b)(7)(E) was applied to withhold in part Documents 1 and 4.   The information withheld consists of the Bureau's monitoring and classification assignments for Pinson and third-party inmates.   As previously mentioned, disclosure of the classification and monitoring criteria, including the assignments themselves, would reveal what types of information have been deemed relevant for monitoring and would assist criminals in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity.   Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

125.   Exemption (b)(7)(F) was applied to withhold in part Documents 1 and 4.   The information withheld consists of the Bureau's monitoring and classification assignments for Pinson and third-party inmates.   As previously discussed, the BOP uses monitoring and classification information to manage the inmate population.   Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public.   Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

**FOIA Request 2011-07619**

126.   In FOIA Request No. 2011-07619, Pinson sought (1) "All Report of Incident (Form 583)

regarding homicides within the Bureau of Prisons since 2008," (2) all documents "related

to Report of Incident Tracking #BMP 332.07," (3) "Video recording ECN BMP-07599-

A," (4) "All documents mentioning, involving, or relevant to Incident Report Nos.

1639219, 1639220, 2033413," (5) "Anything related to the removal of televisions from

ADX Special Housing Unit at ADX Florence," and (6) "Anything related to policies,

procedures or guidelines for issuance of a clock radio to SHU inmates at ADX Florence."

He limited his request to no more than two hours search time and no more than 100

pages.   A true and correct copy of FOIA Request 2011-07619 is attached as Exhibit N to

this declaration.

127.   Regarding Pinson's request for all documents regarding Report of Incident #BMP 332.07

and Video Recording ECN BMP-07599-A, the designation "BMP" is the three-letter

abbreviation for USP Beaumont, which indicates that Pinson is requesting records

generated at that institution.   Upon consultation, staff in the SIS Office stated that the

number designations were in the format of evidence control numbers associated with

incidents at the institution.   SIS staff maintain a log of all evidence maintained in the

office, and the log will indicate if the evidence associated with a specific control number

has been disposed of pursuant to routine evidence retention policies.   SIS staff searched

the log for the evidence control numbers indicated by Pinson and determined the

evidence and all information regarding the evidence had been destroyed.   No further

searches were conducted.

128.   Regarding Pinson's request for documents regarding identified incident reports,

documents regarding incident reports are maintained in the inmate's Central File, which

is located at the inmate's last institution of confinement.  Incident Report No. 1639219 was issued to Pinson, and at the time a search was initiated, Pinson was located at USP Allenwood.  Staff at USP Allenwood conducted a hand search of his Central File and provided all records regarding Incident Report No. 1639219.  Incident Report No. 1639220 was issued to third-party inmate located at FCI Pollock – Medium at the time a search was initiated.  Staff at FCI Pollock – Medium conducted a hand search of that inmate's Central File and provided all records regarding Incident Report No. 1639220. Finally, Incident Report No. 2033413 was issued to a third-party inmate last incarcerated at FCI Talladega.  Staff at FCI Talladega conducted a hand search of that inmate's Central File and provided all records regarding Incident Report No. 2033413.

129.    Regarding Pinson's request for information regarding the removal of televisions and the issuing of alarm clocks, he noted both requests related to ADX Florence.  Legal staff at ADX Florence determined that whether inmates could possess televisions or alarm clocks in the Special Housing would be a decision made by the Correctional Services Department in consultation with the Warden.  Staff in the Correctional Services Department and the Warden's Secretary were asked to search their paper and electronic files.  Paper files are organized by subject, so a hand search of the subject headings for subjects similar to "television" and "clock" was conducted.  If an appropriate subject heading was located, the entire file was then hand searched for documents regarding televisions and alarm clocks in SHU.  Electronic files were searched using the search terms "TV," "television," and "clock."  Further, as Education staff supervise inmate programming over institution's CCTV, Education staff were asked to search their paper and electronic files using the same search methods.  Located records were then reviewed for responsiveness to Pinson's request.  The only responsive record located was the

institution supplement on inmate property as it discusses what property may be possessed in the Special Housing Unit.

130.   Regarding Pinson's request for the Form 583s for all homicides within the BOP since 2008, I contacted the Executive Assistant for the Correctional Programs Division in Central Office to obtain a list of homicides occurring at BOP institutions.   As discussed in Paragraphs 8-10, the Form 583s would be maintained in either TRUINTEL or a paper file at the incident institution.   I was able to access TRUINTEL and search for the responsive Form 583 for each homicide on the list provided to me using the homicide victim's register number.   As this search resulted in more than 100 pages of responsive records, search efforts ceased.

131.   By letter dated June 8, 2016, NCRO released 47 pages of records in full and 56 pages of records in part.   Five pages were withheld in full.   Pinson was advised that records regarding Report of Incident #BMP 332.07, and Video Recording ECN BMP-07599-A had been destroyed pursuant to routine evidence retention policies.   A true and correct copy of the June 8, 2016, Letter to Pinson is attached as Exhibit O to this declaration.

132.   I prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2011-07619.   The documents responsive to Pinson's request for Reports of Incident were all drafted in the same format.   As the same exemptions were used to withhold similar information in each document, I grouped these records into one document category.   See Exhibit C at 23-24.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

133.   Exemption (b)(6) was applied to withhold Documents 1-4 in part.   The information withheld consists of the names of third-party inmates and file names of evidence relied upon by staff during the review process as the file names included the names of the

inmates. The information withheld also includes the names and personal identifying information of third-party individuals. Release of this information would constitute an unwarranted invasion into the third-parties' personal privacy, and Pinson has not identified any interest that outweighs this privacy interest. Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C.§ 552(b)(7)

134.    The records at issue in Documents 1-3 meet the law enforcement threshold of Exemption (b)(7). The records were compiled in relation to the law enforcement mission of managing the incarnation of Pinson, including issuing discipline for misconduct.

135.    The records at issue in Document 4 meet the law enforcement threshold of Exemption (b)(7). Specifically, this exemption was applied to withhold documents maintained by the SIS office, which compiles investigatory records for potential criminal activity within an institution.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

136.    Exemption (b)(7)(C) was applied to withhold Documents 1-4 in part. The information withheld consists of the names of third-party inmates and file names of evidence relied upon by staff during the review process as the file names included the names of the inmates. The information withheld also includes the names and personal identifying information of third-party individuals. Release of this information would constitute an unwarranted invasion into the third-parties' personal privacy. Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

137.    Exemption (b)(7)(E) was applied to withhold in part Document 4.   The information withheld consists of the Bureau's monitoring and classification assignments themselves and as applied to third-party inmates.   As previously mentioned, disclosure of the classification and monitoring criteria, or the assignments themselves, would reveal what types of information have been deemed relevant for monitoring and would assist inmates in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity.   Every effort has been made to release all segregable information without disclosing the classification and monitoring information used by the BOP.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

138.    Exemption (b)(7)(F) was applied to withhold in part Document 1.   The information withheld consists of the boxes and check-marks indicating the "Type of Incident" and "Cause of Incident" on Reports of Incident.   Under the Prison Rape Elimination Act and the applicable Department of Justice regulations, the BOP is charged with investigating all allegations of sexual assault.   However, labelling an incident as related to a sexual assault increases the risk of further harm to the alleged victim.   In light of this continued risk of victimization, the boxes and check-marks indicating the "Type of Incident" and "Cause of Incident" are withheld to avoid labelling any inmate as an alleged victim of a sexual assault.[1]   Every effort has been made to release all segregable information without endangering the life or physical safety of potential sexual assault victims.

---

[1] The boxes and check-marks indicating the "Type of Incident" and "Cause of Incident" on these Reports of Incident were processed differently than the boxes and check-marks on the Reports of Incident processed in FOIA Request Nos. 2010-12533, 2012-00039, and 2012-00975.  To maintain and develop my skills as a FOIA processor, I periodically attend FOIA training and work groups during which BOP FOIA processors discuss emerging trends in the types of records requested by inmates and the ways the inmates are using the requested records, including harm that may come to other inmates from the release

139.    Exemption (b)(7)(F) was applied to withhold in part Documents 4.  The information
        withheld consists of the Bureau's monitoring and classification assignments themselves
        and as applied to third-party inmates.  As previously discussed, the BOP uses monitoring
        and classification information and correctional management techniques to manage the
        inmate population.  Disclosure of this information would enable inmates to evade the
        techniques, which in turn could reasonably be expected to endanger the life or physical
        safety of staff, inmates, and general public.  Every effort has been made to release all
        segregable information without endangering the life or physical safety of individuals.
        Exemption (b)(7)(F) was also applied to withhold Document 6 in its entirety for the same
        reasons.  However, the monitoring and classification information in this document was
        inextricably intertwined with information that was exempt for other reasons, and
        therefore, could not be segregated at this time.

**FOIA Request 2012-00040**

140.    In FOIA Request No. 2012-00040, Pinson sought the "production of all emails sent by
        the North Central Regional Director and Warden of the U.S. Penitentiary Administrative
        Maximum during 2011."  He limited his request to no more than two hours search time
        and no more than 100 pages, and he also asked for a cost estimate of any pages beyond
        the 100 pages he requested.  A true and correct copy of FOIA Request 2012-00040 is
        attached as Exhibit P to this declaration.

---

of the records.  Recently, during one of these discussions, I learned that inmates were using information learned from Reports of Incident involving allegations of sexual assaults to further target victims of sexual assaults.  Based on this information, I have begun withholding all boxes and check-marks indicating the "Type of Incident" and "Cause of Incident" on Reports of Incident to reduce the risk of this harm.  FOIA Request Nos. 2010-12533, 2012-0039, and 2012-00875 were processed and released to Pinson prior to me learning this information, so unfortunately, the boxes and check-marks on those Reports of Incident were released to him.

141.    As previously mentioned, the Bureau has an email archive system in place by which identified staff emails can be searched with specific terms.  However, this email archive system is currently unavailable due to technical issues, and it is not clear when the search capabilities will be restored.  I will request a search of the email archive system for this portion of Pinson's request when it is restored.

142.    By letter dated May 16, 2016, I advised Pinson of the technical difficulties and that a search will be conducted when the search capabilities resume.  A true and correct copy of the May 16, 2016, Letter to Pinson is attached as Exhibit Q to this declaration.  The Bureau's response to this FOIA request will be supplemented when the technical difficulties regarding the email searches are resolved.

**FOIA Request 2012-00039**

143.    In FOIA Request No. 2012-00039, Pinson sought (1) "Report of Incident and After-Action Review Report written, produced or generated in connection with the 2008 U.S. Penitentiary High riot at Florence, CO," and (2) "All emails, memorandums by ADX Florence Executive Staff and/or Department Supervisors written or generated in connection with the 2011 Accreditation review by the ACA and/or making reference or mentioning such review."  He limited his request to no more than two hours search time and no more than 100 pages.  A true and correct copy of FOIA Request 2012-00039 is attached as Exhibit R to this declaration.

144.    As previously mentioned in Paragraphs 8-10, the Report of Incident and After-Action Review Report are maintained at the incident institution by the SIS Department. However, given the notoriety of the 2008 riot, these documents have been requested multiple times by FOIA requesters.  I therefore have the documents saved on CD, which I

keep in my office, so a new search does not need to be conducted with each new FOIA request.

145.    Regarding Pinson's request for emails, as previously mentioned, the Bureau has an e-mail archive system in place by which identified staff emails can be searched with specific terms.  However, this email archive system is currently unavailable due to technical issues, and it is not clear when the search capabilities will be restored.  I will request a search of the email archive system for this portion of Pinson's request when it is restored.

146.    While the email archive system is currently unavailable, individual staff are able to search their "live" email box.  As Pinson identified Executive Staff and department supervisors as the targets of his email search, ADX Florence legal staff asked the department supervisors currently at ADX Florence who were also employed at ADX Florence in 2011 to conduct a search of their email inbox, outbox, and trash using the term "2011 ACA."  Responsive records were located and provided to NCRO for processing.

147.    By letter dated May 16, 2016, NCRO released 1 page of responsive records in full and 11 pages of records in part.  Four pages of records were withheld in full.  A true and correct copy of the May 16, 2016, Letter to Pinson is attached as Exhibit S to this declaration.  The Bureau's response to this FOIA request will be supplemented when the technical difficulties regarding the email searches are resolved.

148.    I have prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2012-00039.  See Exhibit C at 25-26.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(5)

149.    The deliberative process privilege, through Exemption (b)(5), was applied to withhold Documents 2 and 3.  The "inter-agency or intra-agency" threshold is met as these

documents consist of emails between BOP staff regarding proposed steps to take in anticipation of an American Correctional Association (ACA) re-accreditation.  It is not clear if these recommendations were adopted.  Every effort has been made to release all segregable information without releasing the deliberative process information.

150.   The deliberative process privilege, through Exemption (b)(5), was applied to withhold Document 4 in part.  The "inter-agency or intra-agency" threshold is met as the document consists of a Report of Incident prepared by Bureau staff, and the Report is forwarded for review by additional Bureau staff.   The information withheld consists of recommendations regarding the preliminary cause of death of deceased inmates as well as preliminary estimates regarding the cost of the damage to the institution caused by the incident.  The document was prepared within days of the incident, and therefore, the information withheld does not represent the final cause of death or the total cost of the damage.  Every effort has been made to release all segregable information without releasing the deliberative process information.

151.   The deliberative process privilege, through Exemption (b)(5), was applied to withhold in part Document 5.  The "inter-agency or intra-agency" threshold is met as the document consists of an After-Action Review Report prepared by Bureau staff, and the Report is forwarded for review by additional Bureau staff.  The information withheld consists of recommendations regarding whether a use of force was appropriate and suggestions for improving uses of force for the future.  It is not clear if these recommendations were adopted.  Every effort has been made to release all segregable information without releasing the deliberative process information.

Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)

152.   Exemption (b)(6) was applied to withhold Documents 1, 4, and 5 in part.   The information withheld includes the names and personal information of third-party individuals and inmates.   Release of this information would constitute an unwarranted invasion into the inmates' personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.   Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

153.   Exemption (b)(6) was also applied to withhold Document 4 in part.   The information withheld consisted of staff names and personal information.   Staff names mentioned in Reports of Incident are ordinarily released through FOIA absent evidence that release would constitute a clearly unwarranted invasion of personal privacy.   Document 4 is the Report of Incident for a major incident at USP Florence on April 20, 2008.   Hundreds of inmates were involved in the incident; two inmates died as the result of lethal munitions used by staff while trying to contain the incident; and numerous inmates sustained non-lethal injuries.   The incident was traumatic for responding staff, especially for the staff who fired the lethal rounds that ultimately killed inmates, and several staff left their employment with the Bureau of Prisons due to trauma they experienced as a result of the incident.   Therefore, I concluded the release of staff names in Document 4 would constitute a clearly unwarranted invasion of their personal privacy, and Pinson had not identified any interest that outweighs this privacy interest.   Every effort has been made to release all segregable information without invading the privacy interests of the staff named in the records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C. § 552(b)(7)

154.   Document 1 meets the law enforcement threshold of Exemption (b)(7).   Bureau institutions are subject to initial accreditation and periodic re-accreditation by the ACA as part of normal institution operations.   As articulated by the ACA, the "standards created and refined by the American Correctional Association represent fundamental correctional practices that ensure staff and inmate safety and security; enhance staff morale; improve record maintenance and data management capabilities; assist in protecting the agency against litigation; and improve the function of the facility or agency at all levels."   See http://www.aca.org/ACA_Prod_IMIS/ACA_Member/Standards___Accreditation/ACA_ Member/Standards_and_Accreditation/SAC.aspx?hkey=7f4cf7bf-2b27-4a6b-b124- 36e5bd90b93d (last accessed June 7, 2016).   Therefore, the ACA accreditation and re-accreditation processes reinforce the Bureau's mission as a law enforcement agency to protect inmates, staff, and the community.

155.   Documents 4 and 5 meet the law enforcement threshold of Exemption (b)(7). Specifically, these exemptions were applied to withhold documents maintained by the SIS office, which compiles investigatory records for potential criminal activity within an institution and investigates potential misconduct by inmates.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

156.   Exemption (b)(7)(C) was applied to withhold Documents 1, 4, and 5 in part.   The information withheld includes the names and personal information of third-party individuals and inmates.   Release of this information would constitute an unwarranted invasion into the inmates' personal privacy.   Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

157.   Exemption (b)(7)(C) was also applied to withhold Document 4 in part.  The information withheld consisted of staff names and personal information.  As previously mentioned, staff names mentioned in Reports of Incident are ordinarily released through FOIA absent evidence that release would constitute a clearly unwarranted invasion of personal privacy.  However, for the reasons articulated in Paragraph 153, I concluded the release of staff names in Document 4 would constitute a clearly unwarranted invasion of their personal privacy.  Every effort has been made to release all segregable information without invading the privacy interests of the staff named in the records.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

158.   Exemption (b)(7)(E) was applied to withhold Documents 4 and 5.  The information withheld consists of the BOP's monitoring and classification of third-party inmates.  As previously discussed, the BOP uses monitoring and classification information to manage the inmate population.  Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public.  Every effort has been made to release all segregable information without disclosing the classification and monitoring tools.

159.   Exemption (b)(7)(E) was also applied to withhold in part Document 4.  The withheld information includes a discussion of the various law enforcement techniques used by Bureau staff to contain a large-scale riot and prevent further escalation of the incident, including what less-than-lethal and lethal munitions were used, the decision-making process during the incident, and the management of inmates during the incident.  Disclosure of this information would enable inmates to gain a better understanding of the Bureau's law enforcement techniques, which would hinder the Bureau's response to

future critical incidents.  Every effort has been made to release all segregable information without disclosing the specific techniques used to control the incident.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

160.    Exemption (b)(7)(F) was applied to withhold in part Documents 4 and 5.   The information withheld consists of the BOP's monitoring and classification of third-party inmates.   As previously discussed, the BOP uses monitoring and classification information to manage the inmate population.   Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public.   Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

161.    Exemption (b)(7)(F) was also applied to withhold Document 4 in part.   The withheld information consists of staff names and personal information.   Staff names mentioned in Reports of Incident are ordinarily released through FOIA absent evidence that release would endanger their life or physical safety.   As previously mentioned, Document 4 is a Report of Incident for a major incident that resulted in inmate deaths.   If the names of staff responding to the incident were disclosed, those staff would be subject to harassment, threats, and possibly, physical attacks due to their involvement in the Bureau's response to the incident.   Every effort has been made to release all segregable information without endangering the life or physical safety of these staff.

**FOIA Request 2012-00975**

162.    In FOIA Request No. 2012-00975, Pinson sought (1) the "2010-2011 U.S. Penitentiary Admin. Max. – Florence, CO Administrative Remedy Index," and (2) "all 2010-2011 Form 583 Report of Incident from ADX Florence reporting Inmate on Inmate assaults to

the NCRO." He limited his request to no more than two hours search time. A true and correct copy of the FOIA Request 2012-00975 is attached as Exhibit T to this declaration.

163.   Under Program Statement 1330.18, <u>Administrative Remedy Program</u>, the Administrative Remedy Index is a record of administrative remedy requests and appeals received by a Bureau office. The index records the date the request or appeal is received, a summary of the topic of the request or appeal, and other relevant information. It is maintained in SENTRY and is searchable by date and receiving office.

164.   Since Pinson requested two years of the Administrative Remedy Index for ADX Florence, multiple searches needed to be conducted in SENTRY due to date range constraints in the search features. All searches were limited to ADX Florence as the receiving institution, and then each search covered a portion of the date range requested by Pinson until all of 2010 and 2011 were searched. The search results were then printed to a PDF document.

165.   As previously mentioned during the discussion of search efforts for Paragraphs 8-10, Form 583s are maintained at the institution incident by the SIS Department. Since Pinson requested Form 583s from ADX Florence, the SIS Department was asked to conduct a search for responsive records. The search was specifically limited in TRUINTEL to inmate on inmate assaults.

166.   By letter dated May 16, 2016, NCRO released 171 pages of records in full and 43 pages of records in part. A true and correct copy of the May 16, 2016, Letter to Pinson is attached as Exhibit U to this declaration.

167.   I have prepared a *Vaughn* Index describing with specificity the documents withheld in response to FOIA Request No. 2012-00975. <u>See</u> Exhibit C at 27-34.

<u>Justification for Non-Disclosure under FOIA Exemption 5 U.S.C. § 552(b)(6)</u>

168.   Exemption (b)(6) was applied to withhold in part Documents 1-18.  The information withheld includes the names and personal identifying information of third-party inmates and individuals.  Release of this information would constitute an unwarranted invasion into the third-parties' personal privacy, and Pinson has not identified any interest that outweighs this privacy interest.  Every effort has been made to release all segregable information without invading the privacy interests of the third-parties named in these records.

Justification for Threshold Requirement for Exemptions under 5 U.S.C.§ 552(b)(7)

169.   Document 1 meets the law enforcement threshold of Exemption (b)(7).  As part of their incarceration, inmates have the right to seek redress of their grievances through the Bureau's administrative remedy process.  When administrative remedies are filed, the remedies are logged into SENTRY, and Document 1 is the result of a search of SENTRY.  Allowing inmates to seek redress of their grievances is directly related to the Bureau's law enforcement mission of protecting inmates, staff, and the community.

170.   Documents 2-18 meet the law enforcement threshold of Exemption (b)(7).  Specifically, these exemptions were applied to withhold documents maintained by the SIS office, which compiles investigatory records for potential criminal activity within an institution and investigates potential misconduct by inmates.

Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

171.   Exemption (b)(7)(C) was applied to withhold in part Documents 1-18.  The information withheld includes the names and personal identifying information of third-party inmates and individuals.  Release of this information would constitute an unwarranted invasion into the third-parties' personal privacy.  Every effort has been made to release all

segregable information without invading the privacy interests of the third-parties named in these records.

<u>Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(E)</u>

172.   Exemption (b)(7)(E) was applied to withhold in part Documents 2-18.  The information withheld consists of the Bureau's monitoring and classification assignments for third-party inmates.  As previously mentioned, disclosure of the classification and monitoring criteria and the assignments themselves would reveal what types of information have been deemed relevant for monitoring and would assist criminals in evading the monitoring techniques employed by the BOP, leading to threats to the safety and security of the BOP's institutions and/or undetected criminal activity.  Every effort has been made to release all segregable information without disclosing the classification and monitoring information and correctional management techniques used by the BOP.

173.   Exemption (b)(7)(E) was also applied to withhold in part Documents 2-18.   The information withheld includes the factual description of inmates' assaultive behavior as well as attachments to the description.   Disclosure of this factual information would disclose underlying law enforcement techniques, including what conduct rises to the level of an inmate assault, how BOP staff learned of the assault, how BOP staff investigated the assault, and what information the BOP deemed relevant to the investigation. Disclosure of the factual information would disclose the law enforcement techniques, which would in turn enable inmates to minimize the effectiveness of the techniques. Every effort has been made to release all segregable information without disclosing the law enforcement techniques used by the BOP.

<u>Justification for Non-Disclosure Under FOIA Exemption 5 U.S.C. § 552(b)(7)(F)</u>

174.    Exemption (b)(7)(F) was applied to withhold in part Documents 2-18.  The information withheld consists of the BOP's monitoring and classification of third-party inmates.  As previously discussed, the BOP uses monitoring and classification information to manage the inmate population.  Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public.  Every effort has been made to release all segregable information without endangering the life or physical safety of individuals.

175.    Exemption (b)(7)(F) was also applied to withhold in part Documents 2-18.   The information withheld includes the factual description of inmates' assaultive behavior as well as attachments to the description.  Disclosure of this factual information could result in further victimization for the victim of the described assault.  Further, disclosure of the factual information could have the effect of educating inmates on new ways to assault other inmates or staff.  Every effort has been made to release all segregable information without endangering the life or physical safety of inmates or staff.

**FOIA Request  2013-01684**

176.    In FOIA Request No. 2013-01684, Pinson sought "production of all information produced on or after February 25, 2011 which is located in the Central File, SIS File, and any other file maintained on Jeremy Pinson."  A true and correct copy of FOIA Request 2013-01684 is attached as Exhibit V to this declaration.

177.    This request was interpreted as requiring a search for Pinson's Central File, Medical Records, Psychology Records, and SIS records.

178.    In order to effectively manage the inmate population, the Bureau of Prisons maintains information regarding an inmate in his "Central File," which is maintained at the inmate's

current or last institution of confinement if the inmate has been released from BOP custody.  See Program Statement 5800.17, Inmate Central File, Privacy Folder, and Parole Mini-Files.

179.   The BOP also maintains a "Medical Record" for each inmate in its custody in order to deliver health services to the inmate.  See Program Statement 6090.04, Health Information Management.  The BOP transitioned to electronic medical records in approximately 2007.  Generally, the inmate's institution of confinement has access to that inmate's electronic medical records.

180.   Like the inmate Medical Record, the Psychology Data System, or PDS, was created in order to deliver psychology services to the inmate.  See Program Statement 5310.12, Psychology Services Manual.  BOP Psychologists will document professional contacts with an inmate in PDS, including intake screenings, treatment plans, detention reviews, suicide referral and watch summaries, evaluations reports, and memoranda.  See Program Statement 5310.12 at Ch. 2, p. 8.  The PDS notes regarding professional contacts are retrievable by the inmate's register number at the institution where the inmate is currently confined.  Only Psychology staff have access to these records.

181.   At the time a search was requested, Pinson was designated to USP Allenwood, and therefore, Unit Team, Medical, and Psychology staff were asked to provide all Central File, Medical Records, and Psychology records dated after February 25, 2011.

182.   As previously mentioned, SIS records regarding an inmate are maintained at each the institution where the inmate was confined.  From February 25, 2011 to the present, Pinson had been designated at ADX Florence, FDC Houston, USMCFP Springfield, USP Florence, and USP Allenwood.  Therefore, SIS staff at each institution were asked to

conduct a search of their records using search methods described in Paragraphs 8-10 in TRUINTEL.

183.   These total search efforts resulted in an estimated 8,655 pages of responsive records.

184.   By letter dated May 16, 2016, NCRO advised Pinson his request resulted in an anticipated fee of $427.75 (Pg. estimate 8655 -100 pgs.= 8555 pgs. X 5 cents @ pg.= $427.75).   He was further advised that advance payment of the anticipated fee was required before further processing of his request would be done.   He was also given the opportunity to modify his request to meet a lower fee or to receive only the first 100 pages free.   A true and correct copy of the May 16, 2016, Letter to Pinson is attached as Exhibit W to this declaration.

185.   By letter dated May 24, 2016, Pinson indicated he no longer sought documents from his Central File on or before October 1, 2014, or his SIS file between February 25, 2011, and October 2013.   A true and correct copy of Pinson's Letter dated May 24, 2016, is attached as Exhibit X to this declaration.

186.   In light of Pinson's modification, a new search was initiated using the previously described search methods.   As of the date of this declaration, I am waiting for page estimates to determine if an amended fee letter needs to be sent to Pinson or if the records can be processed.   The Bureau's response to this FOIA request will be supplemented when the further processing of this request is resolved.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this $10^{7L}$ day of June, 2016

Kara Christenson
FOIA Paralegal
North Central Regional Office
Rochester, Minnesota

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit A

Freedom of Information Act Request

8-18-10

Received

SEP 2 2010

FOIA/PA Section
Federal Bureau of Prison

Jeremy Pinson # 16267-064
FCI Talladega
PO Box 1000
Talladega, AL, 35160

To: Director, Bureau of Prisons

This letter shall serve as my request under the Freedom of Information Act, 5 U.S.C. 552 et seq. for production of the following information:

1. Admission and Orientation Guide or Inmate Handbook currently issued to inmates at the United States Penitentiary - Administrative Maximum at Florence, Colorado.

2. All documents relevant to Calculated Uses of Force in the Special Housing Unit at USP Florece upon myself during November 2007, and any Administrative Remedy Requests or Appeals therefrom related to such uses of force.

I seek use of no more than 2 hours search time, and production of no more than 100 pages of duplicable information. As provided by the Act, I shall expect a reply in 20 days.

Sincerely,

Jeremy Pinson

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit B



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_                            _Kansas City, KS 66101_

April 11, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:   Information Request No.  2010-12533

Dear Mr. Pinson:

Pursuant to the recent decision in <u>Jeremy Pinson v. U.S. Department of Justice, et al</u>, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of the Admissions and Orientation handbook from ADX Florence, all documents relevant to calculated uses of force involving you in the SHU during November 2007, and any administrative remedies requests or appeals related to such uses of force.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, <u>Release of Information</u>, and Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Commission File</u>.

The records you have requested have been reviewed in this office and it has been determined that a portion of the records (148 pages) are available to you in full and a portion of the records (32 pages) are available to you in part.   The remaining records (15 pages) are not releasable to you.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.  Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit C

VAUGHN INDEX
PINSON v. U.S. DEPARTMENT OF JUSTICE
Civil Action No. 12-cv-1872 (RC) (D.D.C.)
Declaration of Kara Christenson


**FOIA Request No. 2010-12533**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Report of Incident, dated November 18, 2007 | 4 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. On page 4, exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the names of staff members who were force cell team members. |
| 2 | After Action Review Report- Use of Force, dated November 18, 2007 | 2 | (b)(5) (b)(7)(E) (b)(7)(F) | This document was withheld in part. On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. On page 2, exemption (b)(5) was applied to withhold whether the after action was determined appropriate and the recommendation/results. |
| 3 | Memorandum from Senior Officer Specialist, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 4 | Memorandum from Senior Officer Specialist, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the |

| | | | | |
|---|---|---|---|---|
| | | | | name of a staff member who was a calculated use of force team member.

Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 5 | Memorandum from, Senior Officer Specialist, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.

Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member.

Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 6 | Memorandum from Senior Officer, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.

Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member.

Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 7 | Memorandum from Correctional Officer, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.

Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member.

Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 8 | Memorandum from, Case Manager, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.

Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. |

| | | | | |
|---|---|---|---|---|
| | | | | Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 9 | Memorandum from Senior Officer, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 10 | Memorandum from Health Technician, dated November 18, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 11 | Lieutenant's Log for USP Florence, Colorado, dated 11/18/2007 | 2 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6) and (b)(7)(C), were applied to withhold the names and register numbers of third-party inmates, as well as information regarding the correctional management of those inmates. Exemption (b)(7)(F) was applied to withhold security information used by the BOP to manage inmates and ensure the safety of the institution and the times certain activities occurred. |
| 12 | Daily Assignment Roster | 4 | (b)(2) (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in full. Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the staff roster identifying the USP Florence custody staff who worked on November |

| | | | | 18, 2007. |
|---|---|---|---|---|
| 13 | Memorandum from, Michael Nalley, Regional Director, dated January 31, 2008 | 1 | (b)(5) | This document was withheld in part. Exemption (b)(5) was applied to withhold the after action recommendations/results. |
| 14 | Referral of an Inmate Criminal Matter for Investigation | 1 | (b)(7)(C) | This document was withheld in part. Exemption (b)(7)(C) was applied to withhold the name of a FBI agent |
| 15 | Referral of an Inmate Criminal Matter for Investigation | 1 | (b)(7)(C) | This document was withheld in part. Exemption (b)(7)(C) was applied to withhold the name of a FBI agent |
| 16 | Report of Incident, dated December 16, 2007 | 4 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On page 1, exemptions (b)(7)(E), and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson.<br><br>On page 4, exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the names of staff members who were force cell team members. |
| 17 | After Action Review Report- Use of Force, dated December 15, 2007 | 2 | (b)(5) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson.<br><br>On page 2, exemptions (b)(5) was applied to withhold whether the after action was determined appropriate and the recommendation/results. |
| 18 | Memorandum from L. Rittenmeyer, Lieutenant, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the names of the Use of Force Team. |
| 19 | Memorandum from Senior Officer Specialist, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. |

|  |  |  |  | Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
|---|---|---|---|---|
| 20 | Memorandum from Senior Officer, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 21 | Memorandum from Emergency Medical Technician, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 22 | Memorandum from Senior Officer Specialist, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 23 | Memorandum from Recreation Specialist, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member. Exemptions (b)(7)(C) and (b)(7)(F) |

| | | | | were applied to withhold the job assignment of the calculated use of force team member. |
|---|---|---|---|---|
| 24 | Memorandum from Recreation Specialist, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member.<br><br>Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 25 | Memorandum from Chaplain, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the names of staff members who participated in calculated use of force.<br><br>Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 26 | Memorandum from, Case Manager, dated December 16, 2007 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member.<br><br>Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the job assignment of the calculated use of force team member. |
| 27 | Staff Injury Assessment and Follow up | 1 | (b)(6) (b)(7)(C) | This document was withheld in full. Exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and medical information of a staff member. |
| 28 | Use of Force Worksheet | 8 | (b)(5) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. Page 1 was withheld in part, but pages 2 through 8 were withheld in full.<br><br>On page 1, exemptions (b)(7)(C) and (b)(7)(f) were applied to withhold the |

| | | | | name of the camera operator.

On page 1, exemptions (b)(5) and (b)(7)(F) to withhold security information used by the BOP to manage inmates and the plan of action to be followed during a calculated use of force based on various scenarios that could develop.

On pages 2 through 8, exemptions (b)(7)(E) and (b)(7)(F) were the specific procedures used during a calculated use of force. |
|---|---|---|---|---|
| 29 | Lieutenant's Log for USP Florence, Colorado, dated 12/16/2007 | 1 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.

Exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and register numbers of third-party inmates, as well as information regarding the correctional management of those inmates.

Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold security information used by the BOP to manage inmates and ensure the safety of the institution and times certain activities occurred. |
| 30 | Daily Assignment Roster | 3 | (b)(2)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(F) | This document was withheld in full. Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the staff roster identifying the USP Florence custody staff who worked on December 16, 2007. |

**FOIA Request No. 2011-00843/2016-02374**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Memo, dated July 10, 2015, from H.J. Marberry, Regional Director, to W.F. Dalius, Jr., Assistant Director for Administration | 1 | (b)(7)(C) (b)(7)(F) | This document was withheld in part. Exemptions (b)(7)(C) and (b)(7)(F) were applied to withhold the phone number of the Acting Facilities Administrator. |

**FOIA Request No. 2011-01351/2016-02381**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Form 586 After Action Review Report, dated 8/24/2009 | 2 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party inmates.  Further, these exemptions were applied to withhold the file names of evidence relied upon by staff during the review process as the file names included the names of the inmates.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the correctional management techniques used by the BOP for third-party inmates, as well as the BOP's monitoring and classification assignments for these inmates.<br><br>On page 1, exemption (b)(5) was applied to withhold whether the after action was determined appropriate, discrepancies noted, and the recommendation/results. |
| 2 | Form 586 After Action Review Report, dated 8/24/2009 | 2 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party inmates.  Further, these exemptions were applied to withhold the file names of evidence relied upon by staff during the review process as the file names included the names of the inmates.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the correctional management techniques used by the BOP for third-party inmates, as well as the BOP's monitoring and classification |

9

| | | | | |
|---|---|---|---|---|
| | | | | assignments for these inmates.<br><br>On page 1, exemption (b)(5) was applied to withhold whether the after action was determined appropriate, discrepancies noted, and the recommendation/results. |
| 3 | Form 586 After Action Review Report, dated 9/10/2009 | 3 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson.<br><br>On page 1, exemption (b)(5) was applied to withhold whether the after action was determined appropriate, discrepancies noted, and the recommendation/results.<br><br>On pages 2 and 3, exemptions (b)(6) and (b)(7)(C) were applied to withhold the file names of evidence relied upon by staff during the review process as the file names included the names of the inmates. |
| 4 | Form 586 After Action Review Report, dated 4/17/2010 | 2 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party inmates.  Further, these exemptions were applied to withhold the file names of evidence relied upon by staff during the review process as the file names included the names of the inmates.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the correctional management techniques used by the BOP for third-party inmates, as well as the BOP's monitoring and classification assignments for these inmates. |

| | | | | On page 1, exemption (b)(5) was applied to withhold whether the after action was determined appropriate, discrepancies noted, and the recommendation/results. |
|---|---|---|---|---|

**FOIA Request No. 2011-01886/2016-02372**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | ADX General Population Hearing Administrator's Report | 3 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. On page 1, exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold descriptions of evidence submitted by Pinson that contained the names of third-party individuals. On page 2, exemptions (b)(6) and (b)(7)(C) were applied to withhold the name of third-party inmates. |
| 2 | Notice of Hearing on Referral for Transfer to ADX Florence General Population | 3 | (b)(6) (b)(7)(C) | This document was withheld in part. On page 1, exemptions (b)(6) and (b)(7)(C) were applied to withhold the name of third-party inmates. |
| 3 | Email from Chad Lohman to Lee Green, dated 1/4/2013 | 1 | (b)(5) (b)(7)(C) | This document was withheld in part. Exemption (b)(5) was applied to withhold comments made by a staff member regarding the future management of Pinson. Exemption (b)(7)(C) was applied to withhold the telephone, cell, and fax numbers of a staff member. |
| 4 | Statement of Jeremy Pinson (Reg. No. 16267-064) to the Hearing Administrator, on Referral to the U.S.P. Administrative Maximum, dated December 8, 2010 | 5 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part. On pages 2 and 3, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party inmates. On pages 2, 3 and 4, exemption (b)(7)(F) was applied to withhold information regarding gang activity and informant activity within the BOP, in general and regarding Pinson. |
| 5 | Letter from an Assistant U.S. Attorney to the Bureau of Prisons | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in full. Exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of |

12

| | | | | third-party inmates and individuals. Exemptions (b)(7)(E) and (b)(7)(F) were applied to was applied to withhold information regarding gang activity and informant activity within the BOP, in general and regarding Pinson.  The exemptions were also applied to withhold information used by the Bureau to separate Pinson from other inmates. |
|---|---|---|---|---|
| 6 | Letter from Federal Defender to Assistant U.S. Attorney | 1 | (b)(7)(E) (b)(7)(F) | This document was withheld in full. Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information used to by the Bureau to separate Pinson from other inmates. |
| 7 | Request for Administrative Remedy 559712 | 1 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold the name of a third-party inmate from whom Pinson claimed he was separated. |
| 8 | Staff Witness Form – Davis | 1 | (b)(7)(F) | This document was withheld in part. Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 9 | Staff Witness Form – Browning | 1 | (b)(7)(F) | This document was withheld in part. Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 10 | Staff Witness Form – Jackson | 1 | (b)(7)(F) | This document was withheld in part. Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 11 | Staff Witness Form – Ramsey | 1 | (b)(7)(F) | This document was withheld in part. Exemption (b)(7)(F) was applied to withhold a staff member's response |

|  |  |  |  | to questions posed by Pinson regarding his ADX referral. |
|---|---|---|---|---|
| 12 | Staff Witness Form – Movion | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 13 | Staff Witness Form – Brooks | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 14 | Staff Witness Form – Marshall | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 15 | Staff Witness Form – Chatman | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 16 | Staff Witness Form – Burke | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 17 | Staff Witness Form – Pacheco | 1 | (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(F) was applied to withhold a staff member's response to questions posed by Pinson regarding his ADX referral. |
| 18 | Memorandum for R.E. Holt, Regional Director, from John T. Rathman, Warden | 2 | (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On page one, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. |
| 19 | Memorandum for Jose A. Santana, | 1 | (b)(7)(C) (b)(7)(E) | This document was withheld in part. |

| | | | | |
|---|---|---|---|---|
| | Chief of Designations and Sentence Computation Center, from R.E. Holt, Regional Director | | (b)(7)(F) | Exemption (b)(7)(C) was applied to withhold the telephone extension of a staff member.<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. |
| 20 | Administrative Maximum Referral for Jeremy Pinson, Reg. No. 16267-064 | 5 | (b)(6)<br>(b)(7)(C) | This document was withheld in part.<br><br>On pages 1 and 3, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party individuals and statements they made to law enforcement officers.<br><br>On page 1, exemption (b)(7)(C) was applied to withhold the name of a FBI agent.<br><br>On page 3, exemption (b)(7)(F) was applied to withhold a statement made by a third-party individual to a law enforcement officer. |
| 21 | Investigative Report, SIS Case No. TDG 09-0011 | 4 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a third-party inmate who was a victim of Pinson, as well as personal identifying information regarding that inmate, the inmate's witness statement made to law enforcement officers, and his medical information.<br><br>On page 4, exemption (b)(5) was applied to withhold a staff member's recommendation regarding the future management of Pinson.<br><br>On page 4, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. |

15

| 22 | Memorandum to J. Norwood, from B. Hurte, SIS Lieutenant, dated June 3, 2008 | 3 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On page 2 and 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson.<br><br>On page 2, exemption (b)(7)(F) was applied to withhold discussion of an inmate's cooperation with law enforcement officers.<br><br>On pages 2 to 3, exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold a third-party inmate's witness statement that included information regarding gang activity within a Bureau facility and potential consequences of actions by BOP.<br><br>On page 3, exemption (b)(5) was applied to withhold a staff member's recommendation regarding the future management of Pinson. |
| 23 | Memorandum for John B. Fox, Warden, from Kenneth Russo, Special Investigative Supervisor, dated July 11, 2007 | 5 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold the name of a third-party inmate, as well as personal identifying information regarding that inmate, the inmate's witness statement made to law enforcement officers, and information regarding the correctional management of the inmate.<br><br>On page 1, exemption (b)(7)(F) was applied to withhold the type of investigation being conducted.<br><br>Throughout the document, exemptions (b)(7)(E) and (b)(7)(F) |

| | | | | were applied to withhold the BOP's monitoring and classification assignments for Pinson and a third-party inmate.<br><br>On page 3, exemption (b)(7)(F) was applied to withhold a statement Pinson made to law enforcement officer.<br><br>On pages 4-5, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold a factual summary of the investigation and conclusions of the investigator.<br><br>On page 5, exemption (b)(5) was applied to withhold a staff member's recommendation regarding the future management of Pinson. |
|---|---|---|---|---|
| 24 | Memorandum for Sara M. Revell, Warden, from J. Wilner, SIA Criminal Investigator | 1 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold information regarding a third-party inmate.<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were applied wo withhold the BOP's monitoring and classification assignments for Pinson and a third-party inmate. |
| 25 | Memorandum for Sara M. Revell, Warden, from B. Vanek, SIA | 1 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(5) was applied to withhold a staff member's recommendation regarding the future management of Pinson.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold information regarding a third-party inmate.<br><br>Exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson and a third- |

| | | | | |
|---|---|---|---|---|
| | | | | party inmate. |
| 26 | Memorandum from Correctional Counselor, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 27 | Memorandum from Senior Officer Specialist, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 28 | Memorandum from Acting Lieutenant, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 29 | Memorandum from Security Officer, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 30 | Memorandum from General Foreman, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |

| 31 | Memorandum from Maintenance Supervisor, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| --- | --- | --- | --- | --- |
| 32 | Memorandum from Senior Officer, dated 15 August 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 33 | Memorandum from Senior Contract Specialist, dated August 15, 2008 | 1 | (b)(6) (b)(7)(C) (b)(7)(F) | This document was withheld in part.<br><br>Exemptions (b)(6), (b)(7)(C), and (b)(7)(F) were applied to withhold the name of a staff member who was a calculated use of force team member, as well as the job assignment of the calculated use of force team member. |
| 34 | Request for Transfer/Application of Management Variable, dated 7/6/10 | 2 | (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Exemption (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson. |
| 35 | Inmate Investigative Report, SIS Case No. TDG 10-0125 | 5 | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the type of investigation being conducted.<br><br>Throughout the document, exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold the names of a third-party inmates, as well as personal identifying information regarding that |

| | | | | |
|---|---|---|---|---|
| | | | | inmates, the inmates' witness statement made to law enforcement officers, and information regarding the correctional management of the inmate.<br><br>Throughout the document, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for Pinson and third-party inmates.<br><br>On page 5, exemption (b)(5) was applied to withhold a staff member's recommendation regarding the future management of Pinson and third-party inmates. |
| 36 | Presentence Investigation Report for <u>United States v. Jeremy Vaughn Pinson</u>, No. CR06-00114-001-R (W.D. Okl.) | 33 | (b)(7)(F) | This document was withheld in full.<br><br>Exemption (b)(7)(F) was applied to withhold the Presentence Investigation Report for <u>United States v. Jeremy Vaughn Pinson</u>, No. CR06-00114-001-R (W.D. Okl.). |

**FOIA Request No. 2011-02366/2016-2371**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Stipulation for Compromise and Settlement | 5 | (b)(6) (b)(7)(C) | This document was withheld in part. Exemptions were applied on pages 1, 4, and 5.  Pages 2 and 3 were released in full.<br><br>On page 1, exemptions (b)(6) and (b)(7)(C) were applied to withhold the case number.<br><br>On pages 1, 4, and 5, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and addresses of the third-party inmate, inmate's attorney, judges, Assistant U.S. Attorney, and notary public. |
| 2 | Letter regarding an Administrative Tort Claim | 1 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold the administrative tort claim number and case number.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of a third-party inmate and Bureau staff member.  The exemptions were also applied to withhold the inmate's mailing address. |

**FOIA Request No. 2011-07156**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | DSCC ADX Referral Log | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>On pages 1 and 2, exemptions (b)(6) and (b)(7)(C) were applied to withhold inmate names, register numbers, and other personal identifying information of inmates referred to ADX Florence.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third party inmates. |
| 2 | Notice of Executive Panel Review Control Unit Program Referral | 1 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and register number of a third-party inmate, as well as other identifying information related to that inmate. |
| 3 | Email from Jose Santana to GRA-DSC/CIM, dated 9/28/2010 | 1 | (b)(7)(C) | This document was withheld in part. Exemption (b)(7)(C) was used to withhold the telephone and FAX number for a staff member. |
| 4 | Email from TDG/Warden to Catricia Howard, dated 8/31/2010 | 1 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold the names of third-party inmates who were separated from inmate Pinson. |
| 5 | Email from Catricia Howard to Tim A. Simpson, dated 7/29/2010 | 1 | (b)(7)(C) | This document was withheld in part. Exemption (b)(7)(C) was used to withhold the telephone number for a staff member. |
| 6 | Email from Catricia Howard to Aubray Bailey and Tim A. Simpson, dated 7/26/2010 | 1 | (b)(7)(C) | This document was withheld in part. Exemption (b)(7)(C) was used to withhold the telephone number for a staff member. |

**FOIA Request No. 2011-07619**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | DHO Report No. 1639219 | 3 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>On page two, exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and personal identifying information of a third-party inmate. |
| 2 | Incident Report, dated August 21, 2007 | 2 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>On page one, exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and personal identifying information of a third-party inmate. |
| 3 | Statement for the DHO Hearing IR#1639219 | 1 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and personal identifying information of a third-party inmate. |
| 4 | Report of Incident, dated July 19, 2014 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | Each of these documents were withheld in part. As the sections and headers are the same within each document, they are grouped for purposes of this *Vaughn* Index.<br><br>Exemption (b)(7)(F) was applied to withhold the boxes and check-marks indicating the "Type of Incident" and "Cause of Incident".<br><br>Within "Cause of Incident," exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold a cause related to the BOP's monitoring and classification assignments of inmates.<br><br>Within "Inmates Involved," exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates and third-party individuals. Further, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification |
| | Report of Incident, dated March 16, 2014 | 4 | | |
| | Report of Incident, dated October 14, 2015 | 4 | | |
| | Report of Incident, dated May 2, 2010 | 4 | | |
| | Report of Incident, dated August 16, 2009 | 3 | | |
| | Report of Incident, dated July 24, 2011 | 4 | | |
| | Report of Incident, dated August 6, 2015 | 5 | | |
| | Report of Incident, dated January 15, 2011 | 4 | | |
| | Report of Incident, dated January 21, 2010 | 5 | | |
| | Report of Incident, | 2 | | |

| | | | |
|---|---|---|---|
| dated January 7, 2011 | | | assignments for third-party inmates.  If the "Inmates Involved" section spanned a full page, the entire page was withheld.

Within "Description of Incident," exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.

Within "Attachments," exemptions (b)(6) and (b)(7)(C) were applied to withhold file names if the file names contained the names of third-party inmates. |
| Report of Incident, dated August 1, 2015 | 5 | | |
| Report of Incident, dated January 26, 2010 | 3 | | |
| Report of Incident, dated April 21, 2015 | 4 | | |
| Report of Incident, dated January 18, 2010 | 3 | | |
| Report of Incident, dated August 4, 2010 | 5 | | |
| Report of Incident, dated March 6, 2015 | 6 | | |

**FOIA Request No. 2012-00039**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Email from Debbie Straight, dated 6/1/2011 | 1 | (b)(6)<br>(b)(7)(C) | This document was withheld in part.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to withhold the name and personal information of a non-staff member. |
| 2 | Email dated 6/28/2011 | 1 | (b)(5) | This document was withheld in full.<br><br>Exemption (b)(5) was applied to withhold an email discussion between to BOP staff regarding proposed steps to take in anticipation of the ACA re-accreditation |
| 3 | Email from Michael Castle to Debbie Straight, dated 6/28/2011 | 1 | (b)(5) | This document was withheld in part.<br><br>Exemption (b)(5) was applied to withhold information regarding proposed steps to take in anticipation of the ACA re-accreditation |
| 4 | Report of Incident, dated April 20, 2008 | 11 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part. There are partial withholdings on pages 1-5 and 10-11.  Pages 6-8 were withheld in their entirety.<br><br>On pages 2 and 3, exemption (b)(5) was applied to withhold the preliminary cause of death of deceased inmates.  On pages 3 and 4, this exemption was also applied to withhold the estimated cost of the damage associated with incident.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names, personal identifying information, and medical information of staff and third-party inmates.  On page 3, these exemptions were also applied to withhold the identity and contact information for deceased inmates' next-of-kin.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold |

| | | | | |
|---|---|---|---|---|
| | | | | the Bureau's classification and monitoring assignments for third party inmates.  Further, on pages 3 and 4, these exemptions were applied to withhold the names of staff who used munitions and the type of munitions used.<br><br>On pages 10 and 11, exemption (b)(7)(E) was applied to withhold the techniques law enforcement officers used to contain and control a critical incident. |
| 5 | After-Action Review Report – Use of Force, dated April 20, 2008 | 2 | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>On page 1, exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) were applied to withhold the names and personal identifying information of third-party inmates as well as the Bureau's classification and monitoring assignments for the inmates.<br><br>On page 2, exemptions (b)(5) was applied to withhold whether the after action was determined appropriate and the recommendation/results. |

**FOIA Request No. 2012-00975**

| Doc # | Document | Pages | Exemption | Justification |
|---|---|---|---|---|
| 1 | Administrative Remedy Generalized Retrieval, from 01-01-2011 to 06-01-2011 | 37 | (b)(6) (b)(7)(C) | This document was withheld in part.<br><br>On page 21, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names of third-party individuals. |
| 2 | Report of Incident, dated 1/19/2010 | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 3 | Report of Incident, dated 1/24/2010 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and |

| | | | | |
|---|---|---|---|---|
| | | | | (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 4 | Report of Incident, dated 2/6/2010 | 5 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 4, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 5 | Report of Incident, dated 3/7/2010 | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |

| 6 | Report of Incident, dated 3/11/2010 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates. Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 7 | Report of Incident, dated 6/1/2010 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates. Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On pages 2 and 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 8 | Report of Incident, dated 6/5/2010 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to |

| | | | | |
|---|---|---|---|---|
| | | | | withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On pages 2 and 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 9 | Report of Incident, dated 6/15/2010 | 3 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 10 | Report of Incident, dated 8/11/2010 | 2 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names |

| | | | | of the attachments as the file names included the names of the inmates. |
|---|---|---|---|---|
| | | | | On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates. |
| | | | | On pages 2 and 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 11 | Report of Incident, dated 9/9/2010 | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates. On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates. On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 12 | Report of Incident, dated 9/28/2010 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part. Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates. On pages 1 and 2, exemptions (b)(7)(E) |

| | | | | and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On pages 2 and 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
|---|---|---|---|---|
| 13 | Report of Incident, dated 11/19/2010 | 2 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 14 | Report of Incident, dated 11/25/2010 | 3 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates. |

| | | | | On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
|---|---|---|---|---|
| 15 | Report of Incident, dated 3/2/2011 | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.

Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.

On page 1, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.

On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 16 | Report of Incident, dated 7/19/2011 | 2 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.

Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.

On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.

On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form |

| | | | | |
|---|---|---|---|---|
| | | | | 583. |
| 17 | Report of Incident, dated 8/1/2011 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |
| 18 | Report of Incident, dated 11/15/2011 | 3 | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | This document was withheld in part.<br><br>Throughout the document, exemptions (b)(6) and (b)(7)(C) were applied to withhold the names and personal identifying information of third-party inmates.  Further, these exemptions were applied to withhold the file names of the attachments as the file names included the names of the inmates.<br><br>On pages 1 and 2, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold the BOP's monitoring and classification assignments for third-party inmates.<br><br>On page 3, exemptions (b)(7)(E) and (b)(7)(F) were applied to withhold information regarding an assault on an inmate and attachments to the Form 583. |

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit D

FREEDOM OF INFORMATION ACT REQUEST

**Received**

Date: 9-11-10

Jeremy Pinson #16267-064
Federal Correctional Institution
P.O. Box 1000
Talladega, AL, 35160
REQUESTOR

SEP 21 2010

FOIA/PA Section
Federal Bureau of Prison

To: Director, Bureau of Prisons

This letter will serve as my request under the Freedom of Information Act, 5

U.S.C § XXX §§ 552 et seq, for production of the following described information:

1) Rated Capacity Compilation Form (EMS-36), for FCI Talladega (most recent). 2) Site Safety and Control Plan (ICS Form 208), Incident Roster and Activity Log (ICS Form 214), Incident Action And Safety Analysis (ICS Form 215a) for FCI Talladega.

When processing this request please do not use more than 2 hours search time. It is further requested that no more than 100 pages of duplicable information be released to me at this time pursuant to this request.

If records are available under the Privacy Act, 5 U.S.C. § 552a et seq., then consider this request made in conjunction with that statute and provide such information added pursuant to the aforelisted request under the FOIA.

As required by statute I will expect to receive a written response to this request within 20 days.

Sincerely,

Requestor

11-00843

SERO
TDG

Green Ex. 1

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit E



**U.S. Department of Justice**
**Federal Bureau of Prisons**

_Southeast Regional Office_
_Southeast Regional Office_
_3800 Camp CRK PK SW/BDG 2000_
_Atlanta, GA  30331_

March 25, 2016

Jeremy Pinson
 Reg No: 16267-064
USP Allenwood
P.O. Box 3000
White Deer, PA  17887          **Request Number: 2016-02374**

Dear Mr. Pinson:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you requested  1. the most recent rated capacity form(EMS 36) for FCI Talladega  2. the site safety and control plan (ICS Form 208) 3. Incident roster and activity log 4. Incident action plan safety analysis for FCI Talladega.

In response to your request, staff located 4 pages of responsive records, which were forwarded to this office for a release determination.  After careful review, we determined 3 pages are appropriate for release in full; 1 pages are appropriate for release in part; and, 0 pages must be withheld in their entirety. Copies of releasable records are attached.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were redacted or withheld in full from disclosure to you under the following exemptions: (b)(7)(C) (b)(7)(F). An explanation of FOIA exemption is attached.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within 60 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have questions about this response, please feel free to contact this office.

Sincerely,

Craig Simmons
Deputy Regional Counsel

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit F

FREEDOM OF INFORMATION ACT REQUEST

NAME: Jeremy Pinson #16367-064

ADDRESS: PO BOX 1000
         TALLADEGA, AL, 35160

TO: Director, Bureau of Prisons

This letter shall serve as my request pursuant to the Freedom of Information Act, 5 U.S.C. §

552, and Privacy Act, 5 U.S.C. 552 et seq., 552a et seq., for production of the following

described information:

All After-Action Review Reports, pertaining to any inmate
on inmate assault and/or homicide, Occurring at the
Federal Correctional Institution in Talladega, Ala
during 2009-2010.

Verification of my identity is provided as follows: Name Jeremy Pinson

Date of Birth 2-6-86, Last 4 digits of SSN 7608, Place of Birth Milwaukee, WI.

Citizen of USA. I declare this is true under penalty of perjury pursuant

to 28 U.S.C. 1746.

When processing this request please do not produce more than 100 pages of duplicable

information, nor use more than 2 hours' search time when processing this request.

As required by statute I will expect a reply within 20 days.

Sincerely,

11-0351

SERO
TDG

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit G



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*North Central Regional Office*

*Office of the Regional Counsel*                    *Kansas City, KS 66101*

May 25, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:  Information Request No.  2011-01351/2016-02381

Dear Mr. Pinson:

Pursuant to the recent decision in Jeremy Pinson v. U.S. Department of Justice, et al, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of all After Action Reports pertaining to any inmate on inmate assaults and/or homicides occurring at FCI Talladega during 2009 and 2010.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, Release of Information, and Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Commission File.

The records you have requested have been reviewed in this office and it has been determined that the records (9 pages) are available to you in part.   No records have been withheld in their entirety.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy

(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any
individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material
herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing
a written appeal.   Both the appeal letter and face of the envelope should be marked
"Freedom of Information Act Appeal, and should be addressed to the Office of Information
Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington,
D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this
letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit H

FREEDOM OF INFORMATION ACT REQUEST

**Received**

SERO

NOV 2 2 2010

FOIA/PA Section
Federal Bureau of Prison

NAME: Jeremy Pinson # 16267-064

ADDRESS: PO BOX 1000
TALLADEGA, AL, 35160

TO: Director, Bureau of Prisons

This letter shall serve as my request pursuant to the Freedom of Information Act, 5 U.S.C. § : 552, and Privacy Act, 5 U.S.C. 552 et seq., 552a et seq., for production of the following described information:

Referral Packet Pursuant to Program Statement 5100.08 by Warden ___ Rathman of Jeremy Pinson # 16267-064 to the U.S. Penitentiary - Administrative Maximum At Florence, Colo.

Verification of my identity is provided as follows: Name Jeremy Pinson
Date of Birth 7-10-88 , last 4 digits of SSN XXX , Place of Birth Milwaukee WI
Citizen of USA . I declare this is true under penalty of perjury pursuant to 28 U.S.C. 1746.

When processing this request please do not produce more than 100 pages of duplicable information, nor use more than 2 hours search time when processing this request. As required by statute I will expect a reply within 20 days.

Sincerely,

[signature]

11-01886

Green Ex. 10

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit I



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*North Central Regional Office*

*Office of the Regional Counsel*                              *Kansas City, KS 66101*

June 2, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:  Information Request No.  2011-01886/2016-02372

Dear Mr. Pinson:

Pursuant to the recent decision in Jeremy Pinson v. U.S. Department of Justice, et al, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of your referral packet completed pursuant to Program Statement 5109.08, completed by Warden Ratham referring you to the U.S. Penitentiary-Administrative Maximum in Florence, Colorado.  In your request, you state that you wish to receive no more than 100 pages of information, nor do you seek more than two (2) hours of search time be utilized. Please note this is the final agency response to this request.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, Release of Information, and Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Commission File.

The records you have requested have been reviewed in this office and it has been determined that a portion of the records (52 pages) are available to you in full and a portion of the records (48 pages) are available to you in part.   The remaining records (36 pages) are not releasable to you.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.  Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit J

FREEDOM OF INFORMATION ACT REQUEST

NAME: Jeremy Pinson # 16267-064

ADDRESS: PO BOX 1000
TALLADEGA, AL, 35160

TO: EOUSA

11-02366

This letter shall serve as my request pursuant to the Freedom of Information Act, 5 U.S.C. 552, and Privacy Act, 5 U.S.C. 552 et seq., 552a et seq., for production of the following described information:

Copy of any final settlement resulting in a Plaintiff receiving monetary compensation arising from litigation against officers or employees of the Federal Bureau of Prisons in Lewisburg, PA; Oakdale, LA; Talladega, AL from 2006 - Present.

Verification of my identity is provided as follows: Name Jeremy V. Pinson
Date of Birth 2-6-86 , Last 4 digits of SSN 78A8 , Place of Birth Milwaukee, WT
Citizen of USA . I declare this is true under penalty of perjury pursuant to 28 U.S.C. 1746.

When processing this request please do not produce more than 100 pages of duplicable information, nor use more than 2 hoursd search time when processing this request. As required by statute I will expect a reply within 20 days.

Sincerely,

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit K



**U.S. Department of Justice**
**Federal Bureau of Prisons**

*Southeast Regional Office*
*Southeast Regional Office*
*3800 Camp CRK PK SW/BDG 2000*
*Atlanta, GA  30331*

March 28, 2016

Jeremy Pinson
Reg. No.: 16267-064
USP Allenwood
P.O. Box 3000
White Deer, PA  17887          **Request Number: 2016-02371**

Dear Mr. Pinson:

This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you requested  a copy of any financial settlement resulting in a Plaintiff receiving monetary compensation arising from litigation against officers or employees of the BOP in Lewisburg, PA; Oakdale, LA; Talladega, AL from 2006-present.

In response to your request, staff located 6 pages of responsive records, which were forwarded to this office for a release determination.  After careful review, we determined 2 pages are appropriate for release in full; 4 pages are appropriate for release in part; and, 0 pages must be withheld in their entirety. Copies of releasable records are attached.

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, records were redacted or withheld in full from disclosure to you under the following exemptions: (b)(6) (b)(7)(C). An explanation of FOIA exemption is attached.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within 60 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have questions about this response, please feel free to contact this office.

Sincerely,

Craig Simmons
Deputy Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit L

4-24-11

×

FREEDOM   OF   INFORMATION   REQUEST

REQUESTOR: Jeremy Pinson        DATE OF BIRTH:
REG:        16267-064           PLACE OF BIRTH
ADDRESS:    U.S Penitentiary ADX CRIMINAL CASE NO:
            PO Box 8500         DATE OF ARREST
            Florence CO 81226

BRANCH OF GOVERNMENT FROM WHICH REQUEST

Director
Federal Bureau of Prisons
320 First Street N.W.
Washington DC 20534

**Received**

MAY 0 3 2011

FOIA/PA Section
Federal Bureau of Prison

DEAR:

I hereby request that you furnish to me within 10 days as provid-
ed by law, [See Title 5 U.S.C. 552(a)(6)(a)], copies of the fol-
lowing specified documents or information:

1. All ADX Florence Placement Decisions in which Assistant Director Found Placement Not Warranted since Jan. 1, 2009 with inmate names redacted.
2. Emails between Central Office staff regarding my ADX Referral.
3. Emails between SERO Regional Staff regarding my ADX Referral.
4. List of Psychology Treatment Programs at ADX Florence
5.
6.

My request is not limited to the above. It includes all ducoments,
reports, pictures, exhibits, memorandums, letters, summaries, hand
written notes, recordings, and all other information    concerning
this subject which is contained in your offices under the supervi-
sion and administration of the above stated agency or branch    of
government. Request use of no more that 2 hr search, no more than 100 pages.

My above request is made pursuant to the provisions of the Freedom
of Information and privacy Acts, Title 5 U.S.C. 552,552a.

In all of the above I thank you.

Respectfully Submitted:

Signature of Requestor

FREEDOM   OF   INFORMATION   REQUEST          4-22-11

REQUESTOR: Jeremy Pinson          DATE OF BIRTH:
REG:            16267-064          PLACE OF BIRTH
ADDRESS:    U.S. Penitentiary ADX   CRIMINAL CASE NO:
            P.O. Box 8500          DATE OF ARREST
            Florence CO  81226

BRANCH OF GOVERNMENT FROM WHICH REQUEST
    Director
    Federal Bureau of Prisons
    320 First Street NW
    Washington DC  20534

DEAR:

I hereby request that you furnish to me within 10 days as provid-
ed by law, [See Title 5 U.S.C. 552(a)(6)(a)], copies of the fol-
lowing specified documents or information:

1. All DHO Reports by FCI Talladega DHO created since 2008 which
   find a BOP Employee Statement or Memorandum to not be credible.

2. _____

3. _____

4. _____

5. _____

6. _____

My request is not limited to the above. It includes all ducoments,
reports, pictures, exhibits, memorandums, letters, summaries, hand
written notes, recordings, and all other information        concerning
this subject which is contained in your offices under the supervi-
sion and administration of the above stated agency or branch     of
government. Request no more than 2 hrs. search time, no more than 100 pages.

My above request is made pursuant to the provisions of the Freedom
of Information and privacy Acts, Title 5 U.S.C. 552,552a.

In all of the above I thank you.

                              Respectfully Submitted:

                              X Jeremy P.
                              Signature of Requestor

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit M



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_                                                    _Kansas City, KS 66101_

May 16, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:  Information Request No.  2011-07156

Dear Mr. Pinson:

Pursuant to the recent decision in Jeremy Pinson v. U.S. Department of Justice, et al, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of all DHO reports by FCI Talladega DHOs created since 2008, which find a BOP employee's statement or memorandum not credible; all ADX Florence placement decisions in which the Assistant Director found placement not warranted since January 1, 2009; emails between the Central Office staff regarding your ADX referral; emails between Southeast Regional Office (SERO) staff regarding your ADX referral; and the list of psychology treatment programs available to ADX Florence.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, Release of Information, and Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Commission File.

Concerning your request for all DHO reports by FCI Talladega DHOs since 2008 wherein a BOP employee's statement or memorandum was found not credible, please be advised the FOIA does not require federal agencies to create records in response to a FOIA request, but rather is limited to requiring agencies to provide access to reasonably described, nonexempt, and existing agency records.  To the extent that we have records responsive to this portion of your request, locating any such record would require an extensive search of our inmate files.  To obtain the information you seek would require the review of hundreds of

thousands of inmate files in order to determine a response to your inquiry.   Simply put, the BOP does not track information you request in the manner that would allow us to retrieve it with a reasonable amount of effort.  This portion of your request requires an unreasonably burdensome search.

Regarding your request for emails from Central Office and SERO staff about your ADX placement, please be advised the Bureau of Prisons (BOP) is experiencing technical difficulties, which is delaying searches of emails older than a couple of months.  We are unable to estimate how long it will take to conduct a search pursuant to your request. However, in an effort to conduct a thorough search, staff reviewed your central file in for any responsive emails. A thorough search produced no records responsive to this portion of your request.

Regarding the portion of your request wherein you seek all ADX Florence placement decisions in which the Assistant Director found placement not warranted since January 1, 2009, the records you have requested have been reviewed in this office and it has been determined that a portion of the records (2 page) are available to you in full and a portion of the records (7 pages) are available to you in part.   No records have been withheld in their entirety.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.  Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit N

FREEDOM OF INFORMATION REQUEST                5-14-1/

REQUESTOR: Jeremy Pinson          DATE OF BIRTH: _____
REG: 16267-064                    PLACE OF BIRTH: _____
ADDRESS: ADX Florence             CRIMINAL CASE NO: _____
         PO Box 8500              DATE OF ARREST: _____
         Florence, CO, 81226

BRANCH OF GOVERNMENT FROM WHICH REQUEST

Federal Bureau of Prisons

Received

MAY 2 4 2011

FOIA/PA Section
Federal Bureau of Prison

DEAR:

I hereby request that you furnish to me within 10 days as provid-
ed by law, [See Title 5 U.S.C. 552(a)(6)(a)], copies of the fol-
lowing specified documents or information:

1. All Report of Incident (Form 583) regarding homicides
   within the Bureau of Prisons since 2008.

2. _____

3. _____

4. _____

5. _____

6. _____

My request is not limited to the above. It includes all ducoments,
reports, pictures, exhibits, memorandums, letters, summaries, hand
written notes, recordings, and all other information        concerning
this subject which is contained in your offices under the supervi-
sion and administration of the above stated agency or branch      of
government. Request shall use no more than 2 hr. time, no more than 100 pages.
My above request is made pursuant to the provisions of the Freedom
of Information and privacy Acts, Title 5 U.S.C. 552,552a.

In all of the above I thank you. No fees authorized.

Respectfully Submitted

Signature of Requestor

FREEDOM OF INFORMATION REQUEST        5-12-11

REQUESTOR: Jeremy Pinson
REG: 16267-064
ADDRESS: ADX Florence
PO Box 8500
Florence, CO, 81226

DATE OF BIRTH:
PLACE OF BIRTH
CRIMINAL CASE NO:
DATE OF ARREST

BRANCH OF GOVERNMENT FROM WHICH REQUEST
Federal Bureau of Prisons

DEAR:

I hereby request that you furnish to me within 10 days as provid-
ed by law, [See Title 5 U.S.C. 552(a)(6)(a)], copies of the fol-
lowing specified documents or information:

1. Related to Report of Incident Tracking # BMP 332.07

2. Video Recording ECN BMP-07599-A

3. All documents Mentioning, involving or Relevant to
4. Incident Report No's. 1639219, 1639280, 2033413.

5.

6.

My request is not limited to the above. It includes all documents,
reports, pictures, exhibits, memorandums, letters, summaries, hand
written notes, recordings, and all other information    concerning
this subject which is contained in your offices under the supervi-
sion and administration of the above stated agency or branch    of
government. Request should not use more than 2 hr search, 100 pages.

My above request is made pursuant to the provisions of the Freedom
of Information and privacy Acts, Title 5 U.S.C. 552,552a.

In all of the above I thank you. No fees are authorized.

Respectfully Submitted

Signature of Requestor

FREEDOM  OF  INFORMATION  REQUEST          5-15-11

REQUESTOR: Jeremy Pinson          DATE OF BIRTH:
REG:      16267-064               PLACE OF BIRTH:
ADDRESS:  ADX Florence            CRIMINAL CASE NO:
          PO Box 8500             DATE OF ARREST
          Florence CO  81226

BRANCH OF GOVERNMENT FROM WHICH REQUEST
Federal Bureau of Prisons

DEAR:

I hereby request that you furnish to me within 10 days as provid-
ed by law, [See Title 5 U.S.C. 552(a)(6)(a)], copies of the  fol-
lowing specified documents or information:

1. Anything related to removal of televisions from ADX special
   Housing Unit at ADX Florence.

2. Anything related to policies, procedures or guidelines for issuance
   of a clock radio to SHU inmates at ADX Florence.

3. _____

4. _____

5. _____

6. _____

My request is not limited to the above. It includes all ducoments,
reports, pictures, exhibits, memorandums, letters, summaries, hand
written notes, recordings, and all other information  concerning
this subject which is contained in your offices under the supervi-
sion and administration of the above stated agency or branch     of
government. Request no more than 2 hours search time, 100 Pages.

My above request is made pursuant to the provisions of the Freedom
of Information and privacy Acts, Title 5 U.S.C. 552,552a.

In all of the above I thank you. No fees are authorized.


                                   Respectfully Submitted

                                   Jeremy Pinson
                                   Signature of Requestor

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit O



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_      _Kansas City, KS 66101_

June 8, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA 17887

Re: Information Request No. 2011-07619

Dear Mr. Pinson:

Pursuant to the recent decision in <u>Jeremy Pinson v. U.S. Department of Justice, et al</u>, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of records concerning three incident reports, information relating to incident tracking numbers BMP332.07 and BMP07599-A, the removal of televisions from the Special Housing Unit, the issuance of radios in the Special Housing Unit and all Reports of Incidents for homicides occurring within the Bureau of Prisons since 2008. In your request, you state that you wish to receive no more than 100 pages of information, nor do you seek more than two (2) hours of search time be utilized.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, <u>Release of Information</u>, and Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Commission File.</u>

Regarding your request for records relating to incident tracking numbers BMP332.07 and BMP07599-A, SIS staff at USP Beaumont (BMP is the mnemonic code for USP Beaumont) conducted a thorough search for these records  However, no records could be located as regular retention periods for these records have expired and the records have been destroyed.

The records you have requested have been reviewed in this office and it has been determined that a portion of the records (47 pages) are available to you in full and a portion of the records (56 pages) are available to you in part.   The remaining records (5 pages) are not releasable to you.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.   Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit P

NCR      Freedom of Information Act Request

9-3-11

Jeremy Pinson # 16267-064
ADX Florence
PO Box 8500
Florence CO 81726

TO: Bureau of Prisons

This letter shall serve as my request pursuant
to the Freedom of Information Act, 5 U.S.C. 552 for
production of all emails sent by the North Central
Regional Director and Warden of the U.S. Penitentiary
Administrative Maximum during 2011.

I seek use of no more than 2 hours search time
and initial production of no more than 100 pages
of information. Upon production of the 100 pages
please inform me by letter of how many additional
pages are available for production and any cost so
I may determine whether to purchase such.

I request an acknowledgment within 20
days.

Sincerely,

Jeremy Pin

Received

SEP 23 2011

FOIA/PA Section
Federal Bureau of Prison

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit Q



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_                    _Kansas City, KS 66101_

May 16, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:   Information Request No.  2012-00040

Dear Mr. Pinson:

Pursuant to the recent decision in Jeremy Pinson v. U.S. Department of Justice, et al, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of all emails sent by the North Central Regional Director and the Warden of the U.S. Penitentiary-ADX during 2011.

Please be advised, the Bureau of Prisons (BOP) is experiencing technical difficulties, which are delaying searches of emails older than a couple of months.  We are unable to estimate how long it will take to conduct a search pursuant to your request. Once search capabilities have resumed, our search efforts for documents responsive to your request will begin. Please advise Kara Christenson, NCRO FOIA Paralegal located at the Federal Medical Center, 2110 East Center Street, Rochester, MN  55903 if you are no longer interested in these records.

Sincerely,

_for_ Kara Christenson

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit R

NCR

Freedom of Information Act Request

9-6-11

Received Jeremy Pinson # 16267-064

ADX Florence

SEP 2 3 2011    PO BOX 8500

FOIA/PA Section   Florence, CO, 81226
Federal Bureau of Prison

To: BOP

This letter shall serve as my request pursuant to the Freedom of Information Act, 5 U.S.C. 552 et seq. for production of:

1. Report of Incident and After-Action Review Report written, produced or generated in connection with the 2008 U.S. Penitentiary High riot at Florence, CO.

2. All emails, memorandums by ADX Florence Executive Staff and/or Department Supervisors written or generated in connection with the 2011 Accreditation review by the ACA and/or making reference or mentioning such review.

I request no more than 2 hours search time be used in processing this request. I request production of no more than 100 pages of information. I request an acknowledgment of this request in writing.

Sincerely,

Jeremy Pinson

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit S



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_                    _Kansas City, KS 66101_

May 16, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:   Information Request No.  2012-00039

Dear Mr. Pinson:

Pursuant to the recent decision in <u>Jeremy Pinson v. U.S. Department of Justice, et al</u>, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of the Report of Incident and After Action Report concerning the 2008 riot at the U.S. Penitentiary in Florence, Colorado and all emails and memorandums created by the Executive Staff and /or Department Heads at ADX Florence concerning the 2011 accreditation review by the ACA.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, <u>Release of Information</u>, and Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Commission File</u>.

The records you have requested have been reviewed in this office and it has been determined that a portion of the records (1 page) are available to you in full and a portion of the records (11 pages) are available to you in part.  The remaining records (4 pages) are not available to you.  Please be advised that concerning the portion of your request involving emails, the Bureau of Prisons (BOP) is experiencing technical difficulties, which is delaying searches of emails older than a couple of months.  We are unable to estimate how long it will take to conduct a search pursuant to your request.  However, any emails in staff's active email accounts were searched and responsive records were provided.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(5) - inter- or intra-agency correspondence which would not be available to a party other than a party in litigation with the agency
(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy
(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal. Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit T

Freedom of Information Act Request

10-11-11

Received

OCT 21 2011

FOIA/PA Section
Federal Bureau of Prison

Jeremy Pinson # 16267-064
ADX Florence
PO Box 8500
Florence CO 81226

This letter shall serve as my request pursuant
to the Freedom of Information Act 5 U.S.C. 552
for production of the 2010-2011 U.S. Penitentiary
Admin. Max. - Florence, CO Administrative
Remedy Index.

I seek use of no more than 2 hours search
time when processing this request

I request an acknowledgment of this request
within 20 days.

Sincerely,

Jeremy Pip

Freedom of Information Act Request

9-31-11

Jeremy Pinson # 16267-064
ADX Florence
PO Box 8500
Florence CO 81226

This letter shall serve as my request pursuant
to the FOIA 5 U.S.C. 552 for production of
all 2010-2011 Form 583 Report of Incident from
ADX Florence reporting Inmate on Inmate assaults
to the NCRO.

I request use of no more than 2 hours search
time when processing this request.

Sincerely,

Jeremy Pinson

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit U



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*North Central Regional Office*

*Office of the Regional Counsel*                    *Kansas City, KS 66101*

May 16, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:  Information Request No.  2012-00975

Dear Mr. Pinson:

Pursuant to the recent decision in <u>Jeremy Pinson v. U.S. Department of Justice, et al</u>, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of the 2010 and 2011 Administrative Remedy Index for ADX Florence and all 583 Reports of Incident from 2010 and 2011 for ADX Florence reporting inmate on inmate assaults.

The Attorney General has exempted the Bureau of Prisons from certain provisions of the Privacy Act of 1974. Title 5 U.S.C. Section 552a(j). Therefore, all material granted, excised from documents, or denied herein has been processed under the authority of an alternative means of access, which is part of said exemption. The exemption, including the alternative means of access, is set forth in Title 28 Code of Federal Regulations, Section 16.97. Accordingly, your access rights are limited to those provided by the non-exempted portions of the Privacy Act of 1974 and the Freedom of Information Act(FOIA), Title 5 U.S.C. Section 552 and as implemented by Title 28 Code of Federal Regulations, Part 16, Subpart A and D. The procedures established for use by the Bureau of Prisons are outlined in Program Statement 1351.5, <u>Release of Information</u>, and Program Statement 5800.11, <u>Inmate Central File, Privacy Folder and Parole Commission File.</u>

The records you have requested have been reviewed in this office and it has been determined that a portion of the records (171 pages) are available to you in full and a portion of the records (43 pages) are available to you in part.   No records have been withheld in their entirety.

Pursuant to the Freedom of Information Act, 5 U.S.C. 552(b)(2)-(7), portions of the records are exempt in part or in full from disclosure to you under the following exemptions:

(b)(6) - constitutes a clearly unwarranted invasion of personal privacy
(b)(7)(C) - constitutes an unwarranted invasion of personal privacy

(b)(7)(E) - discloses investigative techniques and procedures
(b)(7)(F) - could reasonably be expected to endanger the life or physical safety of any individual

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied in full or in part may be appealed to the Assistant Attorney General, by filing a written appeal.   Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal, and should be addressed to the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., Suite 11050, Washington, D.C. 20530-0001.  Your appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit V

Freedom of Information Act Request

11-5-12

Jeremy Pinson #16267-064
ADX U.S. Penitentiary
P.O. Box 8500
Florence CO 81226

TO: Bureau of Prisons

This letter shall serve as my request pursuant to 5 U.S.C. 552 and 552a for production of all information produced on or after February 25, 2011 which is located in the Central File, SIS File, and any other file maintained on Jeremy Pinson by your agency.

Pursuant to the FOIA I request a response within 20 days.

Sincerely,

Jeremy Pin

Received

NOV 1 3 2012

FOIA/PA Section
Federal Bureau of Prison

Pinson v. U.S. Department of Justice
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit W



**U.S. Department of Justice**

**Federal Bureau of Prisons**

_North Central Regional Office_

_Office of the Regional Counsel_         _Kansas City, KS 66101_

May 16, 2016

Jeremy Pinson
Register No. 16267-064
U.S. Penitentiary
PO Box 3000
White Deer, PA  17887

Re:  Information Request No.  2013-01684

Dear Mr. Pinson:

Pursuant to the recent decision in <u>Jeremy Pinson v. U.S. Department of Justice, et al</u>, Civil No. 12-1892 (RC), the above noted request has been re-opened and re-processed. Specifically, you request copies of any and all information produced on or after February 25, 2011 located in your central file and SIS file.

Pursuant to Title 28 C.F.R. § 16.3, the filing of a FOIA/PA request is considered an agreement by you to pay all applicable fees charged under § 16.11, up to $25.00. Regulations that may be pertinent to your request may be found at Title 28 C.F.R. Part 16, and § 513.30.  Please be advised that pursuant to 28 CFR Part 16, those requests determined or estimated to exceed $250.00 require payment of the fee in advance.  Title 28 Code of Federal Regulations, Part 16, provides that fees may be assessed for any search or release of records when the disclosure constitutes a release in excess of 100 pages; a search for the requested record(s) exceeds two (2) hours; and where the total fees exceed $25.00. The fee for copies of records is 5 cents per page for every page over 100. Search fees are assessed per quarter hour of search time at the rate of $4.75 for clerical/administrative staff searches and $10.00 per quarter hour for professional staff searches.  Search fees may be assessed even in instances where no records are located, produced, or released. We have calculated your estimated cost to be $427.75.

<u>Copies</u>
    5 cents per page over 100 pages
    Pg. estimate <u>8655</u> -100 pgs.= <u>8555</u> pgs. X 5 cents @ pg.= $<u>427.75</u>

The regulation provides that advance payment of the entire anticipated fee must be made prior to our processing of the request. Accordingly, we must receive either your advance payment of the anticipated fees; modification of your request to meet a lower fee; or notification that you wish to receive only the first 100 pages and/or 2 hours of

search time available to you at no cost.  We will hold in abeyance any further action in this matter until we receive your response.  Please advise Kara Christenson, NCRO FOIA Paralegal, at the Federal Medical Center, 2110 East Center Street, Rochester, MN 55903, of your decision.

Pursuant to Title 28 C.F.R., Section 16.9 or 16.45, you may appeal our decision by addressing your appeal to the Assistant U.S. Attorney General.  Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal" and should be addressed to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Avenue NW, Suite 11050, Washington, D.C., 20530. Your written appeal must be received by OIP within 60 days from the date of this letter.

Sincerely,

Richard W. Schott
Regional Counsel

May 24, 2016

Jeremy Pinson #16262-064
PO Box 5000
White Deer PA 17887

Re = 2013-1684 (FOIA)

Dear Ms. Christenson,

    I wish to modify the above referenced FOIA request as follows to narrow the scope of my request:

1. I no longer seek Central File documents produced on or before Oct. 1, 2014;
2. I no longer seek SIS File documents produced between Feb. 25, 2011 and Oct. 2013.

All other responsive records are still sought. Please advise the new fee calculation.

                Sincerely,

<u>Pinson v. U.S. Department of Justice</u>
12-1872 (RC) (D. D.C)

Third Declaration of Kara Christenson
Exhibit X