# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON,                              :
                                           :
    Plaintiff,                          :    Civil Action No.:    12-1872 (RC)
                                           :
    v.                                  :    Re Document No.:    265
                                           :
U.S. DEPARTMENT OF JUSTICE, *et al.*,      :
                                           :
    Defendants.                         :

## MEMORANDUM OPINION

### GRANTING IN PART DEFENDANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

While in prison, *pro se* Plaintiff Jeremy Pinson filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests with different components of the U.S. Department of Justice ("DOJ"). On several occasions, the DOJ has asked Pinson to clarify her[1] records requests, told her that it could not find records that are responsive to her requests, or informed her that the records she sought were exempt from disclosure by law. Pinson took issue with some of these determinations, so she filed a complaint claiming that the DOJ improperly withheld numerous records from her in violation of FOIA. In response, the DOJ filed several pre-answer motions, each asking the Court to dismiss or grant summary judgment in its favor on different portions of Pinson's complaint.

The DOJ previously moved for summary judgment as to Pinson's numerous FOIA claims against the Bureau of Prisons ("BOP"). The Court resolved that prior motion by granting

---

[1] Pinson has begun to self-identify using feminine pronouns. The government has recently acknowledged this use, and has likewise adopted feminine pronouns when referring to Pinson. *See* Defs.' Mot. Dismiss or, Alt., Renewed Mot. Summ. J. at 2 n.1, ECF No. 287. The Court will do the same, although it also cautions that its use of feminine pronouns is not intended to confer any substantive or legal characterization concerning Pinson's gender identity.

summary judgment in part to the DOJ and denying summary judgment in part.  *See Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2016 WL 29245, at *1 (D.D.C. Jan. 4, 2016).  On February 3, 2016, the DOJ filed a second motion for partial summary judgment as to some of Pinson's claims against the BOP.  *See* Defs.' 2d Mot. Summ. J. Respect BOP ("Defs.' 2d MSJ"), ECF No. 265.  Specifically, the DOJ's second motion addresses seven numbered requests, and argues that the searches it conducted were reasonably calculated to identify responsive records, and that any records not produced were properly withheld pursuant to FOIA exemptions.[2]  *See* Defs.' Mem. P. & A., ECF No. 265-2.

On March 18, 2016, the Court advised Pinson of her obligation to timely respond to DOJ's second motion for summary judgment.  *See* Order of Mar. 18, 2016, ECF No. 272; *see also Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam) (holding that a district court must take pains to advise a pro se party of the consequences of the failure to respond to a dispositive motion); *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  In that same order, the Court granted Pinson additional time to respond and explained that if Pinson failed to do so by May 18, 2016, the Court could treat the motion as conceded, grant the motion, and dismiss Pinson's claims as to the BOP.  *See* Order of Mar. 18, 2016.  May 18, 2016, has now passed, and Pinson has still not responded to DOJ's second motion for partial summary judgment.

In light of her failure to respond, Pinson has conceded the DOJ's statement of undisputed facts.  *See* D.D.C. Local Civ. R. 7(h).  With those conceded facts in mind, the Court will address whether granting DOJ's second motion for partial summary judgment is warranted.

---

[2] Because the BOP asserts that it must reprocess certain requests, DOJ's second motion for partial summary judgment does not address all of the requests for which summary judgment was denied.  The present motion only seeks judgment for Request Nos. 2011-4954, 2011-9164, 2011-9398, 2012-3706, 2013-2100, 2013-3342, and 2013-3343.  *See* Defs.' Mem. P. & A. at 2.

# I.  FACTUAL BACKGROUND

This Court has already explained the factual background in detail in its prior Memorandum Opinion.  *See Pinson*, 2016 WL 29245, at *3–5.  The Court assumes familiarity with its prior opinion and confines its discussion to the facts most relevant to the present motion.

## A.  Request No. 2011-4954

In February 2011, Pinson submitted a request to the BOP for the production of "[a]ny Discipline Hearing Officer Report, issued in the years 2010 or 2011, to an inmate assigned to any phase of the ADX Step-Down Program, wherein a Prohibited Act Code 100, 100A, 101, 101A was found to have been committed."  2d Decl. Kara Christenson Ex. 2 ("2d Christenson Decl."), ECF No. 265-4.  This request was assigned number 2011-4954 and, by letter dated October 20, 2011, the DOJ advised Pinson that it had located no responsive records.  *See id.* ¶¶ 5, 10 & Ex. 3. In its first motion for summary judgment, the DOJ argued that Pinson had failed to exhaust her administrative remedies, but the Court denied the DOJ's motion for summary judgment because genuine issues of fact remained concerning whether Pinson ever received BOP's final response for this request.  *See Pinson*, 2016 WL 29245, at *12–13.  Since the Court issued that opinion, the BOP has hand-delivered a copy of the final response letter to Pinson.  *See* 2d Christenson Decl. ¶ 4 & Ex. 1.  In this motion, the DOJ now argues that its search was adequate.  *See* Defs.' 2d MSJ at 1–2.

## B.  Request No. 2011-9164

In July 2011, Pinson submitted a request to the BOP for the production of: (1) "All information regarding debts or encumbrances to [her] inmate trust account including the date, source and amount of each since 1-1-2008"; (2) "All contact data, incoming and outgoing messages in [Pinson's] TRULINCS account from 2-14-08 to 5/30/08"; and (3) "photographs

taken of Pinson "following altercations on Aug. 31, 2007 and Sept. 9, 2007 at USP Beaumont, Oct. 15, 2007 and Dec. 12, 2007 at USP Florence, March 30, 2008 and April 9, 2008 at USP Victorville, Sept. 10, 2009 and June 25, 2010 at FCI Talladega."  *See* 2d Christenson Decl. Ex. 4. In response to this request, the DOJ released 114 pages of responsive records by letter dated July 26, 2012.  *See id.* ¶ 24.  The DOJ informed Pinson that no records could be found concerning the TRULINCS account because it had not existed at the facility in which Pinson was housed during the identified time period.  *See id.* ¶¶ 15, 24 & Ex 5.  Moreover, the BOP advised Pinson that it had only been able to locate photographic records for five of the eight altercations she had listed. *See id.* ¶ 24 & Ex. 5.  The Court denied the DOJ's previous motion for summary judgment with respect to this request, concluding that there was a factual dispute as to whether Pinson had received the DOJ's final response.  *See Pinson*, 2016 WL 29245, at *13.  And, again, after the Court issued its opinion, the BOP hand-delivered a copy of its final response letter to Pinson. *See* 2d Christenson Decl. ¶ 4 & Ex. 1.  The DOJ now argues that its search was adequate.  *See* Defs.' 2d MSJ at 1–2.

### C.  Request No. 2011-9398

On or about July 7, 2011, Pinson submitted Request No. 2011-9398 to the BOP for the "production of all information maintained by [the BOP] on the Florencia X3 gang."  Decl. Eugene E. Baime ¶ 4 & Attach. 1 ("Baime Decl."), ECF No. 265-3.  By letter dated August 25, 2011, the BOP informed Pinson that it had not located any responsive records because "the BOP does not maintain records on the Florencia X3 gang."  *Id.* ¶ 5 & Attach. 2.  As with the prior two requests, the Court denied the DOJ's motion for summary judgment, *see Pinson*, 2016 WL 29245, at *13, the BOP hand-delivered a copy of that final response letter to Pinson, *see* 2d

Christenson Decl. ¶ 4 & Ex. 1, and the DOJ now contends that its search was adequate, *see* Defs.' 2d MSJ at 1–2.

### D.  Request No. 2012-3706

In January 2012, Pinson submitted a request to the BOP for the production of certain ADX Florence institution supplements.  *See* 2d Christenson Decl. ¶¶ 25–26 & Ex. 6.  Those supplements are documents that explain how national BOP policy will be implemented "at a local level."  *See id.* ¶ 26.  The request was assigned number 2012-3706 and, by letter dated March 15, 2012, the DOJ released 25 pages of responsive records in full and informed Pinson that the remaining institution supplements requested either did not exist or were cancelled (and thus no longer in force).  *See id.* ¶¶ 25, 28 & Ex. 7.  The Court denied the DOJ's prior motion for summary judgment with respect to this request, it has been hand-delivered to Pinson, and the DOJ again moves for summary judgment, this time on the ground that its search was adequate. *See* Defs.' 2d MSJ at 1–2.

### E.  Request No. 2013-2100

On or about November 14, 2012, Pinson submitted a request to the BOP for "copies of all public comments submitted in connection with the promulgation" of certain proposed BOP regulations.  *See* Baime Decl. Attach. 3.  On December 4, 2012, the BOP issued a letter informing Pinson that the request—which had been assigned number 2013-2100—would not be processed because the requested records were not held by the BOP.  *See id.* ¶ 6 & Attach. 4.  The request's history follows similar lines as all of the above requests, and DOJ now argues that its search for responsive records was adequate.  *See* Defs.' 2d MSJ at 1–2.

### F.  Request Nos. 2013-3342 and 2013-3343

In December 2012, Pinson submitted a series of requests to the BOP for the production of records relating to third-party inmates who were housed at ADX Florence, including Request Nos. 2013-3342 and 2013-3343, which sought records of inmates with the initials A.M.B. and M.G.S., respectively.  *See* 2d Christenson Decl. ¶¶ 29, 46 & Exs. 8, 10.  Specifically, Pinson requested the Central File for both A.M.B. and M.G.S. and any Office of Internal Affairs records regarding M.G.S.  *See id.* ¶¶ 29–31, 46 & Exs. 8, 10.  Although Pinson included a signed release form from the inmates, the BOP advised Pinson by letter dated January 7, 2014 that it would not provide responsive records because "[i]nmates who are currently designated to the custody of the Bureau of Prisons are not authorized to receive another currently designated inmate's records through the FOIA."  *Id.* Ex. 9; *see also id.* ¶¶ 32, 48 & Ex. 11.  The DOJ withheld each file in its entirety from Pinson.

In its prior decision, this Court denied DOJ's motion for summary judgment because the record did not reflect whether Pinson filed her administrative appeal prior to filing her second amended complaint.  *See Pinson*, 2016 WL 29245, at *16.  Without that information, the Court could not resolve whether Pinson had exhausted her administrative remedies.  The DOJ now contends that that the records were properly withheld pursuant to FOIA Exemptions 7(E) and 7(F).  *See* Defs.' Mem. P. & A. at 16–20; 2d Christenson Decl. ¶¶ 32, 48 & Exs. 9, 11.

## II.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment."  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S.*

*Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting

*Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  To meet its burden, a

defendant may rely on declarations that are reasonably detailed and non-conclusory.  *See*

*Citizens for Ethics & Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C.

2007) ("[T]he Court may award summary judgment solely on the basis of information provided

by the department or agency in declarations when the declarations describe 'the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))).  "Ultimately, an agency's

justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"

*Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100,

1105 (D.C. Cir. 1982)).  Generally, a reviewing court should "respect the expertise of an agency"

and not "overstep the proper limits of the judicial role in FOIA review."  *Hayden v. Nat'l Sec.*

*Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## III.  ANALYSIS

### A.  Adequacy of the BOP's Search

The DOJ seeks summary judgment on the ground that its searches for records in response

to Request Nos. 2011-4954, 2011-9164, 2011-9398, 2012-3706, and 2013-2100 were reasonable

and adequate.  *See* Defs.' Mem. P. & A. at 4–14; *see also* 2d Christenson Decl. ¶¶ 5–28; Baime

Decl. ¶¶ 4–6.  The Court agrees that the DOJ has established that the searches conducted with

respect to four of these requests were adequate.  However, the Court will call for supplemental

briefing with respect to Request No. 2013-2100.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The agency does not have to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg*, 627 F.2d at 370. On the other hand, once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116.

Here, the DOJ has provided two declarations from the BOP showing an organized and thorough search for four of the requests at issue. Specifically, the declarations and the DOJ's memorandum in support of its motion for summary judgment canvass each request in detail, explain to whom the request was sent, the specific databases searched, and, where appropriate, identify the specific search terms used to locate the documents. *See* Defs.' Mem. P. & A. at 5–14; 2d Christenson Decl. ¶¶ 5–28; Baime Decl. ¶¶ 4–6. The declarations' descriptions suffice to provide a "reasonably detailed" account of the scope of the BOP's search for each of these four

requests.  *See Hidalgo v. FBI*, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010)

([S]ubstantial weight traditionally [is] accorded [to] agency affidavits in FOIA 'adequacy of

search' cases." (citing *Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir.

2009))).

For example, with respect to Request No. 2011-4954, which sought any Discipline

Hearing Officer Report for an inmate assigned to any phase of the ADX Step-Down Program for

the years 2010 or 2011, Ms. Christenson attests that the request was assigned to the North

Central Regional Office and then forwarded to the Administrative Maximum Facility at

Florence, Colorado.  *See* 2d Christenson Decl. ¶¶ 5–6.  Ms. Christenson explains that the BOP

only maintains these types of records in SENTRY, a national database that tracks various data

regarding an inmate's confinement and stores information by an inmate's register number or

specific incident report number.  *See id.* ¶ 7; *id.* ¶ 8 (stating that "[h]istorical rosters are not

maintained in any other location").  In addition, Ms. Christenson elaborates on SENTRY's

search capabilities by explaining that an inmate's "[d]iscipline history is searchable by inmate

register number or specific incident report number," and that there is "no way to search

SENTRY based on a specific Prohibited Act Code."  *Id.* ¶ 7.  To address SENTRY's search

limitations, Ms. Christenson asserts that the staff ran a search for the roster of inmates and then

searched those results for the prohibited act codes responsive to Pinson's request.  *See id.* ¶¶ 8–9.

Ultimately, Ms. Christenson states that "no records responsive to [Pinson's] request could be

located."  *Id.* ¶ 10.  Ms. Christensen provides the same type of reasonably detailed information

describing the BOP's searches in response to Request Nos. 2011-9164 and 2012-3706.  *See* 2d

Christenson Decl. ¶¶ 11–28.

With respect to Request No. 2011-9398, Eugene Baime, a supervisory attorney for the FOIA/Privacy Act Section of the BOP, attests that no responsive records were located as to Pinson's request for all information concerning the Florencia X3 gang. *See* Baime Decl. ¶¶ 4–5. As Mr. Baime's declaration demonstrates, the BOP forwarded Pinson's request to the Intelligence Section of the Correctional Program Division, which maintains its records on a computerized shared directory. *See id.* ¶ 5. That section conducted a search using the search term "Florencia" or "Florencia X3," which yielded no responsive results to Pinson's request. *See id.* In light of its unsuccessful search, the BOP forwarded the request to the Sacramento Intelligence Unit, part of the Correctional Programs Division. *See id.* At the time of Pinson's request, the unit maintained its records in a computerized shared drive. *See id.* The unit advised that it neither monitored nor maintained documents concerning Florencia X3, and that the documents it did maintain "did not relate to the search term of Florencia X3." *See id.* Thereafter, BOP advised Pinson that it "does not maintain records on the Florencia X3 gang." *See id.*

Pinson, by virtue of her failure to respond to the DOJ's motion, has produced no "countervailing evidence" that would create a genuine dispute as to the adequacy of the agency's searches for each of these four requests. *Morley*, 508 F.3d at 1116. Accordingly, in light of the conceded facts discussing these searches in detail, the Court will grant the DOJ's motion for summary judgment with respect to the adequacy of the BOP's search for Request Nos. 2011-4954, 2011-9164, 2011-9398, and 2012-3706.

As for the final request, Request No. 2013-2100, however, the Court currently lacks the information necessary to determine whether summary judgment should be granted in the DOJ's favor. In that request, Pinson sought "copies of all public comments submitted in connection

with the promulgation of BOP regulations" set forth in the Federal Register at: 75 Fed. Reg.

21,163, 76 Fed. Reg. 40,229, and 75 Fed. Reg. 76,263.  Baime Decl. Attach. 3.  In his

declaration, Mr. Baime claims that the records "were not agency records," and that the BOP

"does not maintain the Federal Register."  *Id.* ¶ 6.  The letter the BOP sent to Pinson in response

to her request similarly represented that "[t]he records you seek are not Federal Bureau of Prison

(BOP) records."  *Id.* Attach. 4.

Yet, the Court seriously doubts the BOP's assertion that it does not maintain the

particular comments at issue in Pinson's request.  The federal register notices for the proposed or

interim version of each regulation at issue listed the BOP Office of General Counsel as the

relevant agency to contact in order to comment on the proposed rule or interim regulation.

Those notices listed a BOP e-mail address, a mailing address, or both, as methods to comment.

*See* Inmate Communication with News Media: Removal of Byline Regulations, 75 Fed. Reg.

21,163, 21,163 (Apr. 23, 2010); Psychiatric Evaluation and Treatment, 73 Fed. Reg. 33,957,

33,957 (June 16, 2008); Inmate Discipline Rules: Subpart Revision and Clarification, 70 Fed.

Reg. 43,093, 43,094 (July 26, 2005).  And they each list a particular individual, Sarah Qureshi, in

the BOP's Office of General Counsel's Rules Unit, as the individual to contact for further

information.  *See, e.g.*, Inmate Communication with News Media, 75 Fed. Reg. at 21,163.  As a

result, the Court doubts the BOP's contention that the comments Pinson seeks are not BOP

agency records.

In addition, although the DOJ contends that "the Federal Register is available online for

public search," and that "all comments received are made available for public inspection online,"

Defs.' Mem. P. & A. at 14, neither source to which the DOJ points actually contains the

documents Pinson seeks.  First, the federal register notices for each of the final rules merely

paraphrases and describes the content of the comments that were received concerning each proposed or interim regulation.  *See, e.g.*, Inmate Discipline Program/Special Housing Units: Subpart Revision and Clarification, 75 Fed. Reg. 76,263, 76,264 (Dec. 8, 2010) (noting, for example, that an inmate commentator "complained that defective copying machines at her institution resulted in staff making copies of legal materials for inmates on a staff copier only at times convenient for staff").  The full text of the comments are not reproduced in the federal register, so far as the Court can tell.  Second, the publicly available materials online contain material discrepancies with respect to the regulations at issue here.  Specifically, the final rulemaking notices for two of the rules indicates that one comment and four comments, respectively, were received.  *See id.* ("We received only four comments containing several similar issues."); Inmate Communication with News Media: Removal of Byline Regulations, 77 Fed. Reg. 19,932, 19,932 (Apr. 3, 2012) ("We received one comment on the interim rule . . . .").  But the regulations.gov online docket for each of these rules states that zero comments were received.[3]  A different but equally problematic issue is apparent with respect to the third regulation.  The rulemaking notice for that rule states that the BOP received four comments in response to its proposed regulation.  *See* Psychiatric Evaluation and Treatment, 76 Fed. Reg. 40,229, 40,230 (Jul. 8, 2011) ("We received four comments . . . .").  While the regulations.gov

---

[3] For the regulation Pinson refers to as "75 Fed. Reg. 21163," see Docket ID: BOP-2010-0007, *available at* http://www.regulations.gov/docket?D=BOP-2010-0007 (last visited Aug. 10, 2016) (listing "0 comments received").  For the regulation Pinson refers to as "76 Fed. Reg. 40229," see Docket ID: BOP-2012-0001, *available at* http://www.regulations.gov/docket?D=BOP-2012-0001 (last visited Aug. 10, 2016) (listing "0 comments received").

online docket for that request accurately represents that four comments were received, the actual comments, themselves, are not available online.[4]

Contrary to the DOJ's representations, then, the comments do not appear to have been made available for public inspection and the Court believes that the documents might be BOP agency records. As a result, the Court will order the DOJ to file a supplemental brief within two weeks addressing these issues. The Court further points out that recent federal register notices indicate that, at least as of June 2016, Sarah Qureshi was still employed in the Rules Unit of the BOP's Office of General Counsel. *See* Compassionate Release, 81 Fed. Reg. 36,485, 36,485 (June 7, 2016) (listing Ms. Qureshi as contact for further information, and noting that comments must be submitted by August 8, 2016). The BOP should inquire of Ms. Qureshi, or her office, in the course of preparing its supplemental brief concerning Request No. 2013-2100.

## B.  FOIA Exemptions

The DOJ next argues that the BOP properly withheld records responsive to Request Nos. 2013-3342 and 2013-3343 pursuant to FOIA Exemptions 7(E) and 7(F). *See* Defs.' Mem. P. & A. at 14–20; *see also* 2d Christenson Decl. ¶¶ 32, 48. Specifically, the DOJ withheld in full the Central File for inmates M.G.S. and A.M.B. and the Office of Internal Affairs records for inmate M.G.S., despite the fact that Pinson included a purported signed release from both inmates. *See* 2d Christenson Decl. ¶¶ 29–32, 46–49.

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions."

---

[4] For the regulation Pinson refers to as "75 Fed. Reg. 76263," see Docket ID: BOP-2009-0001, *available at* http://www.regulations.gov/docket?D=BOP-2009-0001 (last visited Aug. 10, 2016) (listing "4 comments received" but stating "No comments posted").

*Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)).

"[T]he exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S.

136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)).  And it is the

agency's burden to show that withheld material falls within one of these exemptions.  *See* 5

U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

### 1. Threshold Inquiry

The DOJ argues that it properly invoked Exemption 7 in response to documents

requested in Request Nos. 2013-3342 and 2013-3343.  *See* Defs.' Mem. P. & A. at 14–20.

Exemption 7 protects from disclosure "records or information compiled for law enforcement

purposes," but only to the extent that disclosure would cause an enumerated harm.  5 U.S.C. §

552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "In order to withhold documents

under Exemption 7, the agency must, as a preliminary matter" make a "threshold" showing

demonstrating "that the records were compiled for a law enforcement purpose."  *Kay v. FCC*,

976 F. Supp. 23, 37 (D.D.C. 1997).  "To show that . . . documents were 'compiled for law

enforcement purposes,' the [agency] need only 'establish a rational nexus between [an]

investigation and one of the agency's law enforcement duties and a connection between an

individual or incident and a possible security risk or violation of federal law.'"  *Blackwell v. FBI*,

646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32

(D.C. Cir. 1998)).

BOP's primary responsibility is to protect all persons charged with or convicted of

offenses against the United States, as well as the law enforcement detention staff and the

community.  *See* 2d Christenson Decl. ¶ 35.  The plain language of Pinson's FOIA requests—all

of which pertain to inmates M.G.S. and A.M.B. and prison matters handled by the BOP—and the

location of the responsive records in criminal-related databases, *see, e.g.*, *id.* ¶¶ 29–30, 46, 50, suggest that the requested records relate to a law enforcement purpose, *see generally* 18 U.S.C. § 4042.  In fact, Ms. Christenson explains that these documents were generated as part of BOP's "law enforcement mission of protecting inmates, staff, and the community."  2d Christenson Decl. ¶ 35; *see also id.* ¶¶ 36, 48.  In addition, there is a direct relationship between the BOP's duty to ensure the safety of inmates, staff, and the community and its professional decisions as to how to protect inmates M.G.S. and A.M.B., both of whom are currently incarcerated in BOP's facilities.  Accordingly, the DOJ has established that the responsive records at issue in this case were compiled for law enforcement purposes within the scope of Exemption 7.[5]

## 2. Exemption 7(F)

The DOJ claims that it properly invoked Exemption 7(F) in its responses to Request Nos. 2013-3342 and 2013-3343.  FOIA Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  "That language is very broad," and the exemption "does not require that a particular kind of individual be at risk of harm; 'any individual' will do."  *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 205 (D.C. Cir. 2014).  Moreover, "[d]isclosure need

---

[5]  The DOJ vaguely states that "inmates who are currently in the custody of the Bureau of Prisons are not permitted to receive another inmate's records through FOIA."  Defs.' Mem. P. & A. at 15.  If this statement is intended to refer to a BOP policy that prohibits an inmate's possession of such records in a BOP facility, even if those records would otherwise be disclosable under FOIA, the DOJ provides no citation to or details regarding that policy.  In any event, the D.C. Circuit has recognized that the BOP's obligation to comply with a FOIA request is analytically distinct from the BOP's role as the custodian of documents which BOP policies prohibit an inmate from possessing.  *See Sample v. Bureau of Prisons*, 466 F.3d 1086, 1089 (D.C. Cir. 2006).  Thus, the BOP's policy is not relevant to the Court's analysis of the agency's FOIA obligations, and would "only come[] into play after the FOIA request has been completed."  *Id.*

not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.*

The DOJ argues that the BOP properly withheld the Central Files for M.G.S. and A.M.B. because such information is "likely to endanger both their lives or physical safety if discovered by other individuals." Defs.' Mem. P. & A. at 19; *see Anderson v. Fed. Bureau of Prisons*, 806 F. Supp. 2d 121, 128 (D.D.C. 2011) (holding that Exemption 7(F) was properly invoked to withhold a BOP's prison incident report because "it would likely result in harassment and/or retaliation, to possibly include physical assaults, directed toward individual(s) identified in the investigation and resulting in a threat not only to the named individual but also the safe operation of the institution"); *see also Schotz v. Samuels*, 72 F. Supp. 3d 81, 89 (D.D.C. 2014) (Exemption 7(F) "affords broad protection to the identities of individuals mentioned in law enforcement files . . . , including any individual reasonably at risk of harm." (quoting *Quinto v. U.S. Dep't of Justice*, 711 F. Supp. 2d 1, 8 (D.D.C. 2010)) (omission in original)). An inmate's Central File includes, among other documents, "the inmate's Judgment and Commitment, his sentence computation, Transfer Orders (BP-399), Requests for Transfer, Requests for Management Variables, custody classifications, approved visiting lists, Discipline Hearing Officer (DHO) Packets, and Inmate Requests to Staff." Defs.' Mem. P. & A. at 17. In the Central File, the BOP maintains complete and pertinent information on each inmate confined in bureau institutions. *See generally* Federal Bureau of Prisons, U.S. Dep't of Justice, *Program Statement 5800.17: Inmate Central File, Privacy Folder, and Parole Mini-Files* (Apr. 3, 2015).[6] The DOJ claims that the release of the Central File and other records through FOIA could be used to threaten, manipulate or harm staff members and in particular, inmates M.G.S. and A.M.B., which would

---

[6] *Available at* http://www.bop.gov/policy/progstat/5800_017.pdf.

ultimately compromise security and individual safety at federal prisons.  *See* Defs.' Mem. P. &
A. at 18–20.

     The DOJ also argues that the release of these records could result in other inmates
knowing information regarding an inmate's cooperation with the government, financial
resources, or his or her classification as a sex offender—any of which could lead to an inmate
being threatened or assaulted.  *See id.*; *see also Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142,
172 (D.D.C. 2014) (recognizing that "the court defers to the agency's assessment of danger").
Ms. Christenson attests that, historically, inmates attempted to secure this information by
obtaining another inmate's Presentence Investigation Report or Statement of Reasons.  *See* 2d
Christenson Decl. ¶ 43. This problem led the BOP to prohibit inmates from possessing these
types of documents. *See id.*; *see also Martinez v. Bureau of Prisons*, 444 F.3d 620, 625 (D.C.
Cir. 2006) (recognizing that "FOIA does not entitle [an inmate] to have copies of his
[Presentence Investigation Report]"); *Schotz*, 72 F. Supp. 3d at 89 (same).  Pinson did provide an
executed release for each inmate.  But Ms. Christenson further explains in her declaration that
inmates often are placed in a catch-22: either they are threatened and assaulted if they refuse to
provide the information detailed in their Central Files, or they accede and provide that
information which could, itself, "also lead to [their] being threatened or assaulted."  2d
Christenson Decl. ¶ 43.  As a result, Ms. Christenson attests that there is "no way of knowing if
inmate M.G.S. [and A.M.B. were] coerced into providing the release[s]" and therefore, whether
Pinson "will use the requested information to threaten and/or assault inmate[s] M.G.S. [and
A.M.B.]."  *Id.*  ¶¶ 44, 48.  Ultimately, the DOJ claims that disclosing inmates' Central Files
through FOIA could result in a threat to these inmates' respective safety, the safety of other
inmates, and to those BOP staff committed to their confinement and protection.  *See Carbe v.*

*Bureau of Alcohol, Tobacco & Firearms*, No. 03-1658, 2004 WL 2051359, at *12 n.9 (D.D.C. Aug. 12, 2004) (finding that pursuant to Exemption 7(F), the BOP appropriately withheld records of informants because they could be at risk if other inmates knew that they testified against or provided information concerning another individual).  In light of the DOJ's representations—and Pinson's failure to contest them—the Court agrees that release of these inmates' Central Files "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).

The question remains, however, whether the Central Files contain any segregable, non-exempt information.  The Court "must make specific findings of segregability regarding the documents to be withheld."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (citations omitted).  Specifically, FOIA requires that when a document contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  In general, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman*, 494 F.3d at 1117.  The requester can rebut that presumption, however, and ultimately the "burden lies with the [agency] to demonstrate that no segregable, nonexempt portions were withheld."  *Id.*

Here, the DOJ withheld in full the Central Files pertaining to inmates M.G.S. and A.M.B. To justify withholding these files in their entirety, the BOP asserts that, "[b]ased on the Bureau's collective experience," it fears that allowing inmates to obtain any portion of these documents through FOIA will continue to encourage them to threaten or assault other inmates in an effort to

obtain information showing whether the other inmate "cooperated with the government, has financial resources, is a sex offender, and so forth." Defs.' Mem. P. & A. at 18–19. The BOP's inmate safety concerns, and its assertion that none of the information can be released without raising that concern, reflect a judgment concerning prison administration. This judgment reflects "a reasonable expectation of endangerment." *Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 205. Indeed, the disclosure of portions of an inmate's Central File might enable an inmate to draw inferences about the content of—or even the existence of—the type of material that the BOP fears will provoke threats or intimidation. For example, disclosure of a Central File that includes even limited redactions might imply that an inmate has cooperated with government officials or does possess ample financial resources. A FOIA requester's ability to draw those types of inferences would likely exacerbate the very endangerment the BOP seeks to prevent. Thus, the BOP has provided a plausible explanation for why M.G.S.'s and A.M.B.'s Central Files contain no reasonably segregable information.

In light of Pinson's failure to respond to the DOJ's motion, the Court presently has no reason to doubt or second-guess the BOP's judgment. While the presumption that the DOJ complied with its obligation to disclose reasonably segregable material could possibly be rebutted, by consequence of her failure respond to the DOJ's motion, Pinson has failed to provide any evidence to counter the DOJ's justification for withholding the Central Files in full. Therefore, Pinson has failed to persuade the Court that application of the presumption here would be improper.

Accordingly, the Court finds that the disclosure of such information could reasonably be expected to endanger the safety of these inmates, and thus finds that the DOJ properly invoked

Exemption 7(F).[7]  The Court will grant summary judgment to the DOJ as to Request Nos. 2013-3342 and 2013-3343.

## IV.  CONCLUSION

For the foregoing reasons, the DOJ's motion for partial summary judgment is

**GRANTED IN PART**.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued.

Dated:  August 10, 2016                                           RUDOLPH CONTRERAS
                                                                 United States District Judge

---

[7] The DOJ also invokes Exemption 7(E) as a ground for withholding the Central File and Office of Internal Affairs records.  *See* Defs.' Mem. P. & A. at 16–18, 20.  That exemption protects from disclosure documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Based on the DOJ's representations, the Office of Internal Affairs records related to M.G.S. fall within the exemption's scope.  Those records contain documents gathered during the investigation of BOP staff misconduct, including "misconduct relating to specific inmates."  2d Christenson Decl. ¶ 31.  Because those records "contain factual information gathered through law enforcement intelligence techniques," disclosure of that factual information "would reveal the techniques used to gather the factual information."  2d Christenson Decl. ¶ 40.  In addition, "in some circumstances," the documents "may describe the techniques used to gather the factual information."  *Id.*

At the same time, however, the Court is skeptical of the DOJ's claim that the inmate Central Files are wholly exempt under Exemption 7(E).  Although the agency claims that disclosure of "any portion of the Central File . . . would enable [a] third-party inmate to better understand the Bureau's management techniques and procedures," 2d Christenson Decl. ¶ 39, it is not immediately clear that every portion of the Central File relates to or would disclose investigatory techniques.  For example, the DOJ has not provided a reasonably detailed explanation of why an inmate's judgment and commitment order, his requests to staff, his sentence computation, or his approved visiting lists would necessarily touch upon investigatory techniques—even if those documents could be withheld on other grounds.  The Court is therefore hard-pressed to conclude, based on the current record, that disclosure of any portion of an inmate's Central File would jeopardize the BOP's management techniques.  But because the Court finds that the DOJ properly invoked FOIA Exemption 7(F) to withhold the Central Files in full, the Court will not definitively determine whether those files could also be withheld in full under Exemption 7(E).