# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEREMY PINSON | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:   12-1872 (RC) |
| v. | : | |
| | : | Re Document No.:   293 |
| DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT

While in prison, *pro se* plaintiff Jeremy Pinson filed multiple Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests seeking records from various components of the U.S. Department of Justice ("DOJ").  In addition to releasing a number of records to Pinson, the DOJ asked Pinson to clarify some of her[1] records requests, told her that it could not find records responsive to some of her requests, and informed her that the some of the records she sought were exempt from disclosure by law.  Pinson filed a complaint challenging some of these determinations and alleging that the DOJ improperly withheld records.

In two prior opinions, this Court has granted in part and denied in part the DOJ's first and second requests for summary judgment as to the claims against the Bureau of Prisons ("BOP").  *See* Defs.' Mot. Summ. J. Respect BOP, ECF No. 147; *Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2016 WL 29245, at *1 (D.D.C. Jan. 4, 2016), ECF No. 259; Defs.' 2d Mot. Summ. J.

---

[1] Pinson identifies using feminine pronouns.  The government and this Court follow suit. *See* Defs.' Mot. Dismiss or, Alt., Renewed Mot. Summ. J. at 2 n.1, ECF No. 287.  The Court's use of feminine pronouns is not intended to reflect any substantive or legal characterization.

Respect BOP, ECF No. 265; *Pinson v. U.S. Dep't of Justice*, No. 12-1872, at 21, ECF No. 309.[2]

Now before the Court is the DOJ's third motion for summary judgment as to eleven FOIA

requests.  *See* Defs.' 3d Mot. Summ. J. Respect BOP ("Defs.' 3d MSJ"), ECF No. 293.  The DOJ

argues that, for each request, the BOP conducted adequate searches reasonably calculated to

identify responsive records and made proper withholdings pursuant to FOIA exemptions.  *See*

Defs.' Mem. P. & A., ECF No. 293-2.  For the reasons set forth below, the Court grants in part

and denies in part the DOJ's motion for partial summary judgment.

## I.   FACTUAL BACKGROUND

This Court has already explained the factual background in detail in its prior

Memorandum Opinion.  *See Pinson*, 2016 WL 29245, at *1–5, ECF No. 259 at 3–12.  The Court

assumes familiarity with its prior opinion and confines its discussion to the facts most relevant to

the present motion.

## A.  Request No. 2010-12533

In August 2010, Pinson submitted a request to the BOP for (1) inmate handbooks from

ADX Florence and (2) documents relating to the use of force against Pinson during November

2007 and any related Administrative Remedy Requests.  *See* Corr. 2d Am. Compl. at 2, ECF No.

32; 3d Christenson Decl. ¶ 5 & Ex. A, ECF No. 293-3; Christenson Decl. ¶ 13 & Ex. 2, ECF No.

---

[2] For clarity, the Court summarizes how Pinson's FOIA requests against the BOP have been winnowed down. This Court's first opinion with regard to the BOP dealt with eighteen record requests. *See generally* Memorandum Opinion, ECF No. 259; Order, ECF No. 258.  The Court entered judgment for the BOP on six of those requests in August of 2016, for Request Nos. 2011-4954, 2011-9164, 2011-9398, 2012-3706, 2013-3342, and 2013-3343. *See generally* Order, ECF No. 308; Memorandum Opinion, ECF No. 309.

The parties stipulated to the dismissal of Request No. 13-2100 after additional briefing. *See* BOP's Supplemental Brief Regarding FOIA Request No. 2013-2011, ECF No. 325; Plaintiff Stipulation to Doc. No. 325, ECF No. 329; Minute Order of September 28, 2016.  The remaining eleven requests—Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, 2011-7156, 2011-7619, 2012-39, 2012-40, 2012-975, and 2013-1684—are the subject of this opinion.

147-6.  Pinson limited her request to two hours of search time and 100 pages of information.  3d

Christenson Decl. ¶ 5.  After the BOP was denied summary judgment by this Court, it

reprocessed the request.[3]  *See* 3d Christenson Decl. ¶ 4.

The DOJ released 148 pages of responsive records in full and 32 pages in part, and

informed Pinson that it withheld 15 pages in full.  *Id.* ¶ 12 & Ex. B. Exemption 5 was used to

withhold several sections of the After Action Review Reports, including the determination,

recommendations, and results. *See Vaughn* Index at 1–7, ECF No. 293-3, Ex. C.  Exemption

7(C) and 7(F) were used to withhold a variety of information, including sections of documents

naming government employees and inmates.  *See Vaughn* Index at 1–7.  Exemption 7(F) was

also used to withhold the sections of documents which contained "security information used by

the BOP to manage inmates and ensure the safety of the institution and the times certain

activities occurred" as well as "the BOP's monitoring and classification assignments for Pinson."

*See, e.g.*, *Vaughn* Index at 3, 4, 7.  Exemption 7(C) was used to withhold in full a document

assessing a staff injury, and Exemptions 7(C) and 7(F) were used to withhold the daily

assignment rosters for facility staff.  *See Vaughn* Index at 3, 6–7.  The DOJ now moves for

summary judgment on the grounds that its search was adequate and that it produced to Pinson all

responsive records after properly withholding some records.[4]  *See* Defs.' 3d MSJ at 1–2; *Vaughn*

Index at 1–7.

---

[3] This Court previously rejected the BOP's rationale for not processing this request,
which was based on Pinson's alleged unpaid fees.  *See Pinson*, 2016 WL 29245, at *16, ECF No.
259 at 36.

[4] The BOP also claimed additional, redundant exemptions, but as the Court finds that all
of the material which was properly withheld was exempt from disclosure under either Exemption
5 or Exemption 7 it does not address these exemptions.

### B.  Request No. 2011-843[5]

In October 2010, Pinson submitted a request to the BOP seeking production of the

(1) Rated Capacity Computation Form (EMS-36); (2) Site Safety and Control Plan (ICS Form

208); (3) Incident Roster and Activity Log (ICS Form 214); and (4) Incident Action Plan Safety

Analysis (ICS Form 215a), all for FCI Talladega.  *See* 3d Christenson Decl. ¶ 44 & Ex. D;

Greene Decl. ¶ 7 & Ex. 1, ECF No. 147-5.  A Rated Capacity Computation Form is completed

by institutions "to determine and report their rated capacity and total capacity for overall

strategic planning."  3d Christenson Decl. ¶ 45.  The various ICS forms are part of an incident

management system adopted by the BOP that has not yet been activated at FCI Talladega.  *See*

*id.* ¶¶ 47–48.  Pinson limited her request to two hours of search time and 100 pages of

information.  *See id.* ¶ 44; Greene Decl. Ex. 1.  By letter dated December 2, 2010, the BOP

informed Pinson that no responsive documents had been located.  *See* Greene Decl. ¶ 7 & Ex. 2.

The DOJ's Office of Information Policy ("OIP") closed Pinson's appeal of that determination

due to pending litigation in this case, *see id.* ¶ 7 & Ex. 4, but, in light of the previous litigation,

the BOP later conducted another search "in additional areas" for responsive documents and

located 4 pages that were released to Pinson in full, *see* Blanco Decl. ¶ 10 & Attach. 1, ECF No.

147-4.  The Court denied the DOJ's first motion for summary judgment because the BOP failed

to provide a detailed affidavit setting forth the search terms and type of search performed to

locate records responsive to Request No. 2011-843.  *See Pinson*, 2016 WL 29245, at *18; ECF

No. 259 at 40–41.

---

[5] The Government labels this request as "Request No. 2011-843 (now 2016-2374)."
Defs.' 3d Mot. Summ. J. Respect BOP ("Defs.' 3d MSJ"), ECF No. 293.

After the Court issued that opinion the BOP re-processed Request No. 2011-843.  *See* 3d Christenson Decl. ¶ 4.  The DOJ released 3 additional pages of responsive records in full and 1 page in part, *id.* ¶ 49 & Ex. E,  and informed Pinson that it redacted a staff phone number under Exemptions 7(C) and 7(F), *see Vaughn* Index at 8.  The DOJ now again moves for summary judgment, this time on the grounds that its search was adequate and that it produced all responsive records not properly withheld.  *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 8.

### C.  Request No. 2011-1351[6]

In 2011, Pinson submitted a request to the BOP for the production of "[a]ll After-Action Review Reports, pertaining to any inmate on inmate assault and/or homicide" occurring at FCI Talladega during 2009–2010.  *See* 3d Christenson Decl. ¶ 53 & Ex. F; Greene Decl. Ex. 5.  The BOP initially responded that it would withhold these records in full under Exemptions 6 and 7(C) because the requested records concerned other inmates.  *See* Greene ¶ 8 & Ex. 6.  After Pinson appealed this determination to the OIP, the BOP conducted a search for requested After Action Review Reports and located 97 total pages of responsive records.  *See id.* ¶ 8 & Ex. 7. The BOP ultimately released 58 pages in full and 39 pages in part, withholding the names and register numbers of other inmates pursuant to Exemptions 6 and 7(C).  *See id.* ¶ 8; *id.* Ex. 8; *id.* Ex. 9, at 1–2.  The Court denied the DOJ's first motion for summary judgment because the BOP failed to provide a detailed affidavit setting forth the search terms and type of search performed to locate records responsive to Request No. 2011-1351.  *See Pinson*, 2016 WL 29245, at *18; ECF No. 259 at 40–41.

---

[6] The Government labels this request as "Request No. 2011-1351 (now 2016-2381)." Defs.' 3d MSJ at 1.

After the Court issued that opinion the BOP re-processed Request No. 2011-1351. *See* 3d Christenson Decl. ¶ 4. By letter dated May 25, 2016, the DOJ released 9 pages of responsive records in part. *Id*. ¶ 56 & Ex. G. The BOP withheld the determinations and recommendations of the After Action Review Reports under Exemption 5. *Vaughn* Index at 10–11. The BOP redacted the names of other inmates, and file numbers containing those names, under Exemption 7(C). *Vaughn* Index at 9–11. Exemption 7(F) was also applied to withhold "the correctional management techniques" the BOP used on other inmates, including their classification and monitoring assignments. *Vaughn* Index at 9–11. The DOJ now again moves for summary judgment, this time on the grounds that its search was adequate and that it produced to Pinson all responsive records to which she is entitled after properly withholding some records.[7] *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 9–11.

### D.  Request No. 2011-1886[8]

In 2010, Pinson submitted a request to the BOP for the production of documents associated with her placement at ADX Florence. *See* 3d Christenson Decl. ¶ 64 & Ex. H; Greene Decl. ¶ 9 & Ex. 10. The staff at FCI Talladega, where Pinson had been housed before she was transferred to ADX Florence, searched its facility for responsive documents. *See* Greene Decl. ¶ 9 & Ex. 10. After this request was twice remanded by OIP for reprocessing, the BOP identified 537 responsive pages, released 333 pages in full and 162 pages in part, and withheld 42 pages in full pursuant to Exemptions 6 and 7(C). *See id.* ¶¶ 10–12 & Ex. 17. The Court denied the DOJ's first motion for summary judgment because the BOP failed to provide a

---

[7] The BOP also claimed additional, redundant exemptions, which the Court does not address.

[8] The Government labels this request as "Request No. 2011-1886 (now 2016-2372)." Defs.' 3d MSJ at 1.

detailed affidavit setting forth the search terms and type of search performed.  *See Pinson*, 2016

WL 29245, at *18; ECF No. 259 at 40–41.

After the Court issued that opinion the BOP re-processed Request No. 2011-1886.  *See*

3d Christenson Decl. ¶ 4.  By letter dated June 2, 2016, the DOJ released 52 additional pages of

responsive records in full and 48 pages in part, and informed Pinson that it redacted or withheld

records.  *Id*. ¶ 70 & Ex. I.  The BOP withheld "staff member[s'] recommendation[s] regarding

the future management of Pinson" under Exemption 5.  *Vaughn* Index at 16, 17, 20.  Exemption

7(C) was applied to redact the names of third-party individuals and inmates and contact

information for staff members.  *Vaughn* Index at 12–20.  Exemption 7(F) was applied to

withhold sections of records containing "information regarding gang activity and informant

activity within the BOP," "a staff member's response to questions posed by Pinson regarding

[her] ADX referral," "the BOP's monitoring and classification assignments for Pinson," "a

statement made by a third-party individual to a law enforcement officer," "discussion of an

inmate's cooperation with law enforcement officers," "the type of investigation being

conducted," and "a factual summary of the investigation and conclusions of the investigator."

*Vaughn* Index at 12–20.  Exemption 7(F) was also used to withhold in full a letter containing

"gang activity and informant activity within the BOP" and "information used by the Bureau to

separate Pinson from other inmates," as well as Pinson's presentence report.  *Vaughn* Index at

12–20. The DOJ now again moves for summary judgment, this time on the grounds that its

search was adequate and that it produced to Pinson all responsive records to which she is entitled.[9]

*See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 12–20.

---

[9] The BOP also claimed additional, redundant exemptions, which the Court does not address.

### E.  Request No. 2011-2366[10]

In December 2010, Pinson submitted a request to the BOP seeking copies of "any final

settlement resulting in a [p]laintiff receiving monetary compensation arising from litigation

against officers or employees of the [BOP] in Lewisburg, PA; Oakdale, LA; Talladega, AL, from

2006–[2010]."  3d Christenson Decl. ¶ 95 & Ex. J; Greene Decl. ¶ 13 & Ex. 18.  Pinson limited

her request to two hours of search time and 100 pages of information.  *See* 3d Christenson Decl.

¶ 95 & Ex. J; Greene Decl. Ex. 18.  After an outstanding fee for a prior FOIA request was

resolved, the BOP issued a letter to Pinson on December 10, 2013, informing her that no

responsive documents were located.  *See* Greene Decl. ¶ 13 & Ex. 20.  The Court denied the

DOJ's first motion for summary judgment because the BOP failed to provide a detailed affidavit

setting forth the search terms and type of search performed to locate records responsive to

Request No. 2011-2366.  *See Pinson*, 2016 WL 29245, at *18; ECF No. 259 at 40–41.

After the Court issued that opinion the BOP re-processed Request No. 2011-2366.  *See*

3d Christenson Decl. ¶ 4.  The BOP located a responsive "Stipulation for Compromise and

Settlement" and a responsive letter about an administrative tort claim.  *Vaughn* Index at 21.  The

BOP released 2 pages of records in full and 4 pages in part.  3d Christenson Decl. ¶ 101 & Ex. K.

The BOP withheld the names and addresses of other inmates and other involved individuals

under Exemption 6 and Exemption 7(C).  *Vaughn* Index at 21. Exemption 6 and Exemption 7(C)

were also used to withhold the case numbers and administrative tort claim number.  *Vaughn*

Index at 21.  The DOJ now again moves for summary judgment, this time on the grounds that its

---

[10] The Government labels this request as "Request No. 2011-2366 (now 2016-2371)."
Defs.' 3d MSJ at 1.

search was adequate and that it produced to Pinson all responsive records to which she is entitled.[11] *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 21.

### F. Request No. 2011-7156

In April 2011, Pinson submitted a request to the BOP seeking (1) "All ADX Florence placement decisions in which Assistant Director found placement not warranted since Jan. 1, 2009 with inmate names redacted," (2) "emails between Central Office staff regarding [her] ADX referral," (3) "emails between SERO Regional staff regarding [her] ADX referral," (4) "List of psychology treatment programs at ADX Florence," and (5) "All DHO Reports by FCI Talladega DHO created since 2008 which find a BOP employee statement or memorandum to not be credible."  *See* 3d Christenson Decl. ¶ 105 & Ex. L; Christenson Decl. ¶ 24 & Ex. 6, ECF No. 147-6.  She limited her request to no more than two hours search time and no more than 100 pages.  *See* 3d Christenson Decl. ¶ 105 & Ex. L; 3d Christenson Decl. Ex. 6.  After this Court denied the BOP summary judgment,[12] the BOP reprocessed Request No. 2011-7156.  *See* 3d Christenson Decl. ¶ 4.  The DOJ released 2 pages of responsive records in full and 7 pages in part, *id.* ¶ 117 & Ex. M, and informed Pinson that it redacted staff and inmate names, identifying information, and telephone numbers under Exemption 7(C), *Vaughn* Index at 22.  Exemption 7(F) was also used to withhold the "BOP's monitoring and classification assignments for third party inmates." *Vaughn* Index at 22.

As to Pinson's request for emails, the DOJ initially advised Pinson that technical difficulties prevented it from searching its email archives.  *Id.* ¶ 117 & Ex. M.  The DOJ later

---

[11] The BOP also claimed additional, redundant exemptions, which the Court does not address.

[12] The BOP requested summary judgment because Pinson was behind on her fees.  *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.  This Court denied summary judgment because Pinson was not informed that she needed to either request that the BOP re-open the request or submit an entirely new request.  *See id.*

stated that the search functionality was restored in October of 2016 and that an email search had been performed.  Status Report Regarding Bureau of Prisons Email System (Email Status Report), ECF No. 353.  The DOJ, however, also stated that the results of the email search were being "reviewed for applicable exemptions," and Pinson had therefore not yet received any results.  Email Status Report at 1.  The DOJ now again moves for summary judgment as to all records except for emails,[13] on the grounds that its search was adequate and that it produced all records not properly withheld.[14]  *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 22.

### G.  Request No. 2011-7619

In May 2011, Pinson submitted a request to the BOP seeking  (1) "All Report of Incident (Form 583) regarding homicides within the Bureau of Prisons since 2008," (2) all documents "related to Report of Incident Tracking #BMP 332.07," (3) "Video recording ECN BMP-07599-A," (4) "All documents mentioning, involving, or relevant to Incident Report Nos. 1639219, 1639220, 2033413," (5) "Anything related to the removal of televisions from ADX Special Housing Unit at ADX Florence," and (6) "Anything related to policies, procedures or guidelines for issuance of a clock radio to SHU inmates at ADX Florence."  *See* 3d Christenson Decl. ¶ 126 & Ex. N; Christenson Decl.  ¶ 63 & Ex. 14.  She limited her request to no more than two hours search time and no more than 100 pages.  *See* 3d Christenson Decl. ¶ 126 & Ex. N; Christenson Decl. Ex. 14.  After this Court denied the BOP summary judgment in its previous opinion[15] the

---

[13] The DOJ clarified in its reply that it does not seek summary judgment as to any responsive emails.  *See* Defs.' Reply Supp. Defs.' 3d Mot. Summ. J. Respect BOP ("Defs.' Reply") at 1, ECF No. 321.  This filing predated the DOJ's update on the search tool, but because Pinson has not yet received any results summary judgment remains premature.

[14] The BOP also claimed additional, redundant exemptions, which the Court does not address.

[15] As with Request No. 2011-7156, the BOP unsuccessfully sought summary judgment without responding to the request on the grounds that Pinson had unpaid fees at the time of the request.  *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.

BOP reprocessed the request. *See* 3d Christenson Decl. ¶ 4.  The DOJ released 47 pages of

responsive records in full and 56 pages in part, and informed Pinson that it withheld 5 pages in

full.  *Id*. ¶ 131 & Ex. O.  Under Exemption 7(C), the BOP withheld the names and personal

information of other inmates.  *Vaughn* Index at 23–24.  Exemption 7(F) was used to withhold

information about the types and causes of incidents collected in incident reports, as well as "the

BOP's monitoring and classification assignments of inmates."  *Vaughn* Index at 23–24.  At one

time additional records responsive to Request No. 2011-7619 may have existed, but these

records were destroyed according to BOP policy during the two years Pinson failed to satisfy her

delinquent fees.  *See* Defs.' Reply at 4, ECF No. 321; *see also Pinson*, 2016 WL 29245, at *2;

ECF No. 259 at 4–5.  The DOJ now again moves for summary judgment, this time on the grounds

that its search was adequate and that it produced to Pinson all responsive records to which she is

entitled after properly withholding records.[16]  *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 23–24.

## H.  Request No. 2012-40

In September 2011, Pinson submitted a request to the BOP seeking "production of all

emails sent by the North Central Regional Director and Warden of the U.S. Penitentiary

Administrative Maximum during 2011."  *See* 3d Christenson Decl. ¶ 140 & Ex. P; Christenson

Decl.  ¶ 115 & Ex. 22.  She limited her request to no more than two hours search time and no

more than 100 pages, and she also asked for a cost estimate of any pages beyond the 100 pages

she requested.  *See* 3d Christenson Decl. ¶ 140 & Ex. P; Christenson Decl. Ex. 22.  The BOP has

reprocessed this request, *see* 3d Christenson Decl. ¶ 4, after this Court's previous denial of

---

[16] The BOP also claimed additional, redundant exemptions, which the Court does not address.

summary judgment.[17]  By letter dated May 16, 2016, the DOJ advised Pinson that technical

difficulties prevented the BOP from searching its email archives.  *Id*. ¶¶ 141–42 & Ex. Q.  The

search capacity was repaired in October of 2016 and the search has now been executed.  Email

Status Report, ECF No. 353.  However, as of January of 2017, Pinson had not yet received any

results because the records were still being reviewed for potential FOIA exemptions.  *Id*.  The

DOJ states in its reply that it did not seek summary judgment as to this request while the search

functionality was inoperable.  *See* Defs.' Reply at 1.  Because no email results have yet been

provided to Pinson, summary judgment remains premature.

## I.   Request No. 2012-39

In September 2011, Pinson submitted a request to the BOP seeking (1) "Report of

Incident and After-Action Review Report written, produced or generated in connection with the

2008 U.S. Penitentiary High riot at Florence, CO," and (2) "All emails, memorandums by ADX

Florence Executive Staff and/or Department Supervisors written or generated in connection with

the 2011 Accreditation review by the ACA and/or making reference or mentioning such review."

*See* 3d Christenson Decl. ¶ 143 & Ex. R; Christenson Decl.  ¶ 119 & Ex. 24.  She limited her

request to no more than two hours search time and no more than 100 pages.  *See 3*d Christenson

Decl. ¶ 143 & Ex. R; Christenson Decl. Ex. 24.  The BOP has reprocessed this request, *see* 3d

Christenson Decl. ¶ 4, after this Court denied the BOP summary judgment in its previous

opinion.[18]  The DOJ released 1 page of responsive records in full and 11 pages in part, and

---

[17] As with several of Pinson's other requests, the BOP was previously denied summary judgment after it refused to respond to the request due to Pinson's unpaid fees.  *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.

[18] As with several of Pinson's other requests, the BOP was previously denied summary judgment after it refused to respond to the request due to Pinson's unpaid fees.  *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.

informed Pinson that it withheld 4 pages in full.  *Id.* ¶ 147 & Ex. S.  The BOP applied Exemption

5 to withhold "an email discussion between BOP staff regarding proposed steps to take in

anticipation of the ACA re-accreditation" and "the preliminary cause of death of deceased

inmates . . . [and] the estimated cost of the damage associated with incident."  *Vaughn* Index at

25–26.  The BOP also withheld the conclusion and recommendations from an After Action

Review Report under Exemption 5.  *Vaughn* Index at 26.  The BOP withheld the names and

personal information of individuals including inmates and third-parties under Exemption 7(C).

*Vaughn* Index at 25–26.  The BOP also applied exemption 7(E) to withhold "the techniques law

enforcement officers used to contain and control a critical incident."  *Vaughn* Index at 26.  The

BOP also used exemption 7(F) to withhold "classification and monitoring assignments for third

party inmates."  *Vaughn* Index at 26.

The response to this request was also affected by the malfunction in the BOP's email

search tool.  3d Christenson Decl. ¶ 147 & Ex. S.  That tool has since been repaired and a search

executed, but the results of that search are still being examined for applicable FOIA exemptions

and have thus not been released to Pinson.  Email Status Report, ECF No. 353.  Prior to repairing

the email search tool, the DOJ moved for summary judgment except as to any potentially

responsive emails,[19] on the grounds that its search was adequate and that it produced all records

other than those properly withheld.[20]  *See* Defs.' 3d MSJ at 1–2; *Vaughn* Index at 25–26.  Because

no email results have yet been provided to Pinson, summary judgment remains premature.

---

[19] The DOJ clarified in its reply that it is not moving for summary judgment regarding emails responsive to Request No. 2012-39, only regarding the other components of the request. *See* Defs.' Reply at 1.

[20] The BOP also claimed additional, redundant exemptions, which the Court does not address.

### J.  Request No. 2012-975

In October 2011, Pinson submitted a request to the BOP seeking (1) the "2010–2011 U.S.

Penitentiary Admin. Max. – Florence, CO Administrative Remedy Index," and (2) "all

2010–2011 Form 583 Report of Incident[s] from ADX Florence reporting Inmate on Inmate

assaults to the NCRO."  *See* 3d Christenson Decl. ¶ 162 & Ex. T; Christenson Decl.  ¶ 123 & Ex.

26.  The BOP has reprocessed this request, *see* 3d Christenson Decl. ¶ 4, after this Court denied

the BOP summary judgment in its previous opinion.[21]  By letter dated May 16, 2016, the DOJ

released 171 pages of responsive records in full and 43 pages in part, and informed Pinson that it

redacted or withheld records.  *Id.* ¶ 166 & Ex. U.  The BOP applied Exemption 6 to withhold the

names of third-party individuals from the administrative remedy index.  *Vaughn* Index at 27.

Under Exemption 7(C), the BOP redacted the names and personal information of third-party

individuals and inmates.  *Vaughn* Index at 27–34.  Under Exemption 7(F), the BOP withheld

"the BOP's monitoring and classification assignments for third-party inmates" and "information

regarding an assault on an inmate and attachments [to the form]."  *Vaughn* Index at 27–34.  The

DOJ now again moves for summary judgment on the grounds that its search was adequate and

that it produced all responsive records except those properly withheld.[22]  *See* Defs.' 3d MSJ at 1–2;

*Vaughn* Index at 27–34.

### K.  Request No. 2013-1684

In November 2011, Pinson submitted a request to the BOP seeking the "production of all

information produced on or after February 25, 2011 which is located in the Central File, SIS File,

---

[21] As with several of Pinson's other requests, the BOP was previously denied summary judgment after it refused to respond to the request due to Pinson's unpaid fees.  *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.

[22] The BOP also claimed additional, redundant exemptions, which the Court does not address.

and any other file maintained on Jeremy Pinson." *See* 3d Christenson Decl. ¶ 176 & Ex. V; Christenson Decl. ¶ 132 & Ex. 30. The BOP has reprocessed this request, *see* 3d Christenson Decl. ¶ 4, after this Court denied the BOP summary judgment in its previous opinion.[23] The reprocessing resulted in an estimated 8,655 pages of responsive records at an anticipated fee of $427.75. *See* 3d Christenson Decl. ¶¶ 4, 183–84. By letter dated May 16, 2016, the DOJ advised Pinson that it had paused its processing until she provided advanced payment, and offered her the option of either paying the expected fee, modifying her request to limit the responsive materials, or receiving only the first 100 pages for free. *Id*. ¶ 184 & Ex. W. By letter dated May 24, 2016, Pinson indicated she no longer sought documents from her Central File on or before October 1, 2014, or her SIS file between February 25, 2011, and October 2013. *Id*. ¶ 185 & Ex. X. As of June 10, 2016, the BOP was waiting for new page estimates to determine if an amended fee letter needed to be sent to Pinson or if the records could be processed. *Id*. ¶ 186. Despite not having responded to the request, the DOJ's briefing suggests that it moves for summary judgment on this request. *See* Defs.' 3d MSJ at 1–2.

## II.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*,

---

[23] As with several of Pinson's other requests, the BOP was previously denied summary judgment after it refused to respond to the request due to Pinson's unpaid fees. *See Pinson*, 2016 WL 29245, at *15–16; ECF No. 259 at 33–35.

477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the nonmovant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents.  *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009).  To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements."  *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  To meet its burden, a defendant may rely on declarations that are reasonably detailed and non-conclusory.  *See Citizens for*

*Ethics & Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007)

("[T]he Court may award summary judgment solely on the basis of information provided by the

department or agency in declarations when the declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v.*

*Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))).  "Ultimately, an agency's justification for invoking

a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370,

374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the

proper limits of the judicial role in FOIA review."  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,

608 F.2d 1381, 1388 (D.C. Cir. 1979).

 Even if the nonmovant does not respond to the motion for summary judgment, the court

cannot grant the motion for the reason that it was conceded.  *See Winston & Strawn, LLP v.*

*McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a

motion for summary judgment cannot be 'conceded' for want of opposition.  'The burden is

always on the movant to demonstrate why summary judgment is warranted.  The nonmoving

party's failure to oppose summary judgment does not shift that burden.'  The District Court

'must always determine for itself whether the record and any undisputed material facts justify

granting summary judgment.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C.

Cir. 2015) (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3))).

## III.   ANALYSIS

### A.   Adequacy of the BOP's Search

The DOJ asserts that its searches in response to all eleven requests were adequate.  *See*

Defs.' 3d MSJ at 1–2.  Even where Pinson does not contest the adequacy of a search, the Court

will nonetheless independently determine whether the record and undisputed material facts

justify granting summary judgment.  Under FOIA, an adequate search is one that is "reasonably

calculated to uncover all relevant documents."  *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir.

2007) (internal quotation mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d

1344, 1351 (D.C. Cir. 1983)).  The agency need not to search "every record system" for the

requested documents, but it "must conduct a good faith, reasonable search of those systems of

records likely to possess the requested records."  *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9

(D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

When an agency seeks summary judgment on the basis that it conducted an adequate search, it

must provide a "reasonably detailed" affidavit describing the scope of that search.  *Iturralde v.*

*Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d

at 68).  It is not enough, however, for the affidavit to state in conclusory fashion that the agency

"conducted a review of [the files] which would contain information that [the plaintiff] requested"

and did not find anything responsive to the request.  *Weisberg*, 627 F.2d at 370.  On the other

hand, once the agency has provided a reasonably detailed affidavit describing its search, the

burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a

genuine dispute of material fact exists as to the adequacy of the search.  *Morley*, 508 F.3d at

1116 (citation omitted).

18

Here, the DOJ argues that its searches for records in response to each request were adequate. *See* Defs.' 3d MSJ at 1–2. The Court agrees that the searches conducted with respect to seven of these requests were wholly adequate. However, the Court finds that the BOP has yet to complete its responses to Pinson for Request Nos. 2011-7156, 2012-40, 2012-39, and 2013-1684.

### 1. Request Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, and 2012-975.

The Court agrees with the DOJ that its searches in response to Request Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, and 2012-975 were adequate, which Pinson does not contest. *See* Defs.' 3d MSJ at 1–2; Pl.'s Resp., ECF No. 314. The DOJ provided a declaration from the BOP showing an organized and thorough search for these six requests. *See generally* 3d Christenson Decl. Specifically, the declaration and the DOJ's briefing canvass each request in detail, explain to whom the request was sent, the specific databases searched, and, where appropriate, identify the specific search terms used to locate the documents. *See* Defs.' Mem. P. & A. at 4–21; 3d Christenson Decl. ¶¶ 2–13, 44–50, 53–57, 64–71, 95–101, 162–167. The declaration's descriptions suffice to provide a "reasonably detailed" account of the scope of the BOP's search for each of these six requests. *See Hidalgo v. FBI*, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010) ("[S]ubstantial weight traditionally [is] accorded [to] agency affidavits in FOIA 'adequacy of search' cases." (citing *Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009))).

For example, with respect to Request No. 2011-2366, which sought copies of "any final settlement resulting in a [p]laintiff receiving monetary compensation arising from litigation against officers or employees of the [BOP] in Lewisburg, PA; Oakdale, LA; Talladega, AL, from 2006–[2010]," Ms. Christenson attests that both the Southeast Regional Office of the BOP and the Supervisory Attorneys assigned to the BOP facilities in those cities searched for responsive

records.  *See* 3d Christenson Decl. ¶¶ 95, 98–99.  Ms. Christenson explains that the BOP

maintains these types of records in two different databases created by the BOP's Office of

General Counsel, which track civil litigation handled by BOP attorneys and administrative tort

claims received by a BOP legal office.  *See id.* ¶¶ 96–97.  Ms. Christenson elaborates on the

databases' search capabilities, stating that the databases "are searchable by incident institution,

date, and case disposition."  *Id.* at ¶ 98.  She asserts that the staff ran a search for the settlement

cases based on the criteria provided by Pinson, and the search identified responsive cases, the file

was opened within the database to retrieve any documents showing the final settlement paid.  *Id.*

In addition, Ms. Christenson explains that the supervisory attorneys and legal staff in the

individual legal office in each of the three cities also reviewed their case tracking logs for any

cases identified as settled that fit the criteria of Pinson's request and hand searched the legal file

for responsive settlement documents of any case identified.  *See id.* ¶ 99.  Ultimately, Ms.

Christenson states that "[s]ix pages of responsive documents had been located."  *Id.* ¶ 100.  Ms.

Christenson provides the same type of reasonably detailed information describing the BOP's

searches in response to Request Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, and 2012-

975.  *See id.* ¶¶ 2–13, 44–50, 53–57, 64–71, 162–167; *Vaughn* Index, ECF No. 293-3, Ex. C.

The Court thus concludes that the BOP conducted a good faith, reasonable search in response to

these requests.  Accordingly, the Court grants the DOJ's motion for summary judgment with

respect to the adequacy of the BOP's search for Request Nos. 2010-12533, 2011-843, 2011-

1351, 2011-1886, 2011-2366, and 2012-975.

### 2.  Request No. 2011-7619

Pinson does contest the adequacy of the DOJ's search in response to Request No. 2011-

7619, arguing that the BOP improperly destroyed responsive records.  Pl.'s Resp. at 2.  This

complaint centers on the request for documents related to Report of Incident #BMP 332.07 and

video recording ECN BMP-07599-A.  The BOP informed Pinson that no records could be found

related to either topic because its evidence control log indicated that "the evidence and all

information regarding the evidence had been destroyed," pursuant to "routine evidence retention

policies."  3d Christenson Decl. ¶ 127.  The BOP explained that the records were deleted during

the two year period when the request was closed because Pinson owed fees for a separate

request. Def.'s Reply at 4, ECF No. 321; *see also* Memorandum Opinion at 33–35, ECF No. 259.

The Court agrees with the DOJ that the search was adequate because the records were destroyed

prior to Pinson paying her overdue fees and in accordance with the BOP's established record

retention policies.

It is well established that FOIA does not require an agency to retain records, but only to

provide access to records that have been retained.  *Kissinger v. Reporters Comm. for Freedom of

the Press*, 445 U.S. 136, 151–52 (1980).  It is thus clear that an agency that destroys documents

prior to receiving a FOIA request covering those documents has committed no error.  *See id.* at

155 n.9 ("[A] 'withholding' must here be gauged by the time at which the request is made since

there is no FOIA obligation to retain records prior to that request.").  In this case, the documents

were destroyed not before the initial FOIA request, but while that initial request was closed due

to Pinson's unpaid fees.  Because the request was closed when the documents were

destroyed—and may never have been reopened, if Pinson's bills had languished unpaid—this

situation is equivalent to the situations in which records were destroyed before the request was

filed.  *See Flowers v. IRS*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004) (approving the agency's

conduct when "the federal document-retention machinery lumbered forward on schedule, and the

plaintiff's file was destroyed" during a period after the plaintiff filed a FOIA request but before

the plaintiff corrected procedural errors with that request).  The alternative would bind agencies to indefinitely maintain files potentially related to any procedurally defective FOIA requests, on the possibility that a request might someday ripen into a perfected FOIA request.[24]

Pinson does not otherwise object to the adequacy of the search for Request No. 2011-7619, and the BOP provided a detailed affidavit sufficiently describing its methods, 3d Christenson Decl. ¶¶ 126–132; *Vaughn* Index, ECF No. 293-3, Ex. C.  The Court therefore finds that there is no genuine issue of material fact as to the adequacy of the BOP's search in response to Request No. 2011-7619 and grants the DOJ's motion for summary judgment with respect to adequacy.

### 3.   Request Nos. 2011-7156, 2012-40, and 2012-39

Pinson disputes the adequacy of the BOP's search in response to Request Nos. 2011-7156, 2012-40, and 2012-39, Pl.'s Resp. at 1, all of which involved searches of emails.  The BOP was initially prevented from searching its email archives by technical problems.  *See* 3d

---

[24] Even if the records had been destroyed after Pinson's request was reopened by this Court, the BOP would likely not have violated FOIA.  Of course, an agency cannot, in bad faith, "avoid a FOIA request by intentionally ridding itself of a requested document." *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (citing *Chambers*, 568 F.3d at 1004).  But, the bar on *intentionally* destroying material sought by a FOIA request does not forbid an agency from unintentionally destroying FOIA material in accordance with a neutral record retention policy.  Pinson cites no legal authority in support of the proposition that the documents "should have been automatically preserved particularly once they were the focus of a FOIA request." Pl.'s Resp. at 2.  As the BOP notes, "until the BOP processes a request, it has no way of knowing what records may be responsive." Defs.' Reply at 4.  Adopting Pinson's suggestion would thus paralyze agencies.  Instead, "[t]he critical issue . . . in a dispute over a document that an agency no longer has, is the agency's motivation for disposing of or transferring that document.  If 'the agency is no longer in possession of the document, *for a reason that is not itself suspect*,' FOIA [is satisfied]." *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (emphasis added) (quoting *SafeCard*, 926 F.2d at 1201).  An agency's routine record retention policy—like the one at issue here—is the paradigmatic example of a non-suspect explanation for destroying a document.  *See Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 392 (D.C. Cir. 2007) ("[E]ven if the documents were destroyed [after the FOIA request and before the initial response], their destruction, if performed in accordance with specified guidelines, would not imply bad faith.").

Christenson Decl. ¶¶ 117, 141–42, 145, 147 ("[The] email archive system is currently

unavailable due to technical issues, and it is not clear when it will be restored.  [The BOP] will

request a search of the email archive system for this portion of Pinson's request when it is

restored.").  In October of 2016, the search tool was fixed, and the BOP subsequently performed

searches for records responsive to Request Nos. 2011-7156, 2012-40, and 2012-39. Email Status

Report, ECF No. 353.  Although the searches have been performed, Pinson has not yet received

any response because the search results are still being evaluated for potential FOIA exemptions.

*Id.*  The DOJ clarified in its reply briefing—prior to informing the Court that the search

capability was repaired—that it did not seek summary judgment as to the emails.  *See* Defs.'

Reply at 1.  Because Pinson has not yet received any response to which she may be entitled,

summary judgment is still not appropriate because the agency has not yet fully discharged its

FOIA obligations.  *See Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C.1996) (citing *Weisberg v.*

*DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  The Court thus agrees with Pinson and the DOJ

that summary judgment is not appropriate as to the email portions of Request Nos. 2011-7156[25]

---

[25] In Request No. 2011-7156, Pinson also sought "All DHO Reports by FCI Talladega DHO created since 2008 which find a BOP employee statement or memorandum to not be credible."  *See* 3d Christenson Decl. ¶ 105.  The BOP attempted a search, but determined that it "did not maintain records in a format that would allow a search."  3d Christenson Decl. ¶ 115. This was for three reasons: first, reports of the requested type are searchable only by number or inmate, not by facility, and the search could thus not be easily narrowed to FCI Talladega DHO; second, if an employee's statement was found to be not credible, the report would be expunged and the record would then be indistinguishable from all reports expunged for other reasons; and third, after a record has been expunged, it is not available to be opened to determine the cause for the expungement.  3d Christenson Decl. ¶¶ 115–16.  Pinson does not specifically object to the reasonableness of the BOP's search.  The Court thus finds that the BOP has met its burden and need not perform additional searches because Pinson did not describe the desired records in a way sufficient to "enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."  *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)).

and 2012-39.  Because all of the records sought under Request No. 2012-40 are emails, summary judgment is thus not appropriate as to any portion of Request No. 2012-40. The BOP should file a supplemental motion for summary judgment after the results have been produced to Pinson.

The DOJ does move for summary judgment as to the non-email portions of Request Nos. 2011-7156 and 2012-39 on the grounds that its search was adequate and that all records withheld were properly withheld.  *See* Defs.' 3d MSJ at 1–2; Defs.' Reply at 1.  The DOJ submits affidavits sufficiently describing its search terms and methods for the non-email portions of Request Nos. 2011-7156 and 2012-39.  3d Christenson Decl. ¶¶ 105–118, 143–148; *Vaughn* Index.  Pinson does not object to the adequacy of these searches, and this Court concludes that there is no genuine issue of material fact. The Court thus grants the DOJ's motion for summary judgment as to the adequacy of its search for non-email records responsive to Request Nos. 2011-7156 and 2012-39.

### 4.  Request No. 2013-1684

The DOJ asserts that its search in response to Request No. 2013-1684 was adequate.  *See* Defs.' 3d MSJ at 1–2.  Although Pinson does not specifically object, the Court notes that the BOP has apparently not yet provided any response to Pinson.  *See* 3d Christenson Decl. ¶ 186 ("[A] search was initiated . . . [and] [a]s of the date of this declaration, [the BOP] [is] waiting for page estimates to determine if an amended fee letter needs to be sent to Pinson or if the records can be processed.").  Given that summary judgment is available only when "the agency proves that it has fully discharged its obligations under the FOIA," the Court must deny the DOJ summary judgment as to Request No. 2013-1684.  *See Moore*, 916 F. Supp. at 35.

## B. FOIA Exemptions

Here, the DOJ asserts that the BOP properly invoked Exemptions 5, 6, 7(C), and 7(F)[26] to

redact or withhold certain information from responsive records. *See* Defs.' 3d MSJ at 1–2;

*Vaughn* Index, ECF No. 293-3, Ex. C. The Court will evaluate each invoked exemption in turn.

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force*

*v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only

those documents or portions thereof that fall under one of nine delineated statutory exemptions."

*Elliot v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he

exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151

(1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)).

It is the agency's burden to show that withheld material falls within one of these

exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845. "The [C]ourt . . . 'impose[s]

a substantial burden on an agency seeking to avoid disclosure' through the FOIA exemptions."

*Morley*, 508 F.3d at 1114 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973))

(alteration in original). The agency's documents supporting the exemption, including the

*Vaughn* index, must "permit adequate adversary testing of the agency's claimed right to an

exemption." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp.

2d 226, 230 (D.D.C. 2012) (quoting *Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 950 (D.C.

Cir. 1988)). Accordingly, disclosure exemptions are "narrowly construed," and "'conclusory

and generalized allegations of exemptions' are unacceptable." *See Morley*, 508 F.3d at 1114–15

---

[26] The DOJ also invokes Exemptions 2 and 7(E) as grounds for redacting or withholding materials from its responses. *See generally Vaughn* Index. Because the Court has determined that the withholding of all records stands or falls on the applicability of Exemptions 5, 6, 7(C), and 7(F), the Court does not reach the question of whether Exemptions 2 and 7(E) apply. *See infra* Section III.B.1, III.B.2, and III.B.3.

(quoting *Founding Church of Scientology of Wash., D. C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)).  However, courts generally respect the factual reasoning of agencies, and "[u]ltimately[] an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).  Thus, "a reviewing court should 'respect the expertise of an agency' and not 'overstep the proper limits of the judicial role in FOIA review.'"  *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

### 1. Exemption 5

The DOJ argues that the BOP properly invoked Exemption 5 in its responses to Request Nos. 2010-12533, 2011-1351, 2011-1886, and 2012-39.[27]  *See* Defs.' Mem. P. & A. at 27–28; 3d Christenson Decl. ¶¶ 17–18, 58, 72, 149–51; *Vaughn* Index.  Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption protects documents "normally privileged in the civil discovery context," *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), including "what is sometimes called the 'deliberative process' privilege," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* at 8 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

---

[27] The analysis of Request No. 2012-39 deals only with the non-email materials.  *See supra* Part III.A.3.

For the deliberative process privilege to apply, a court must first determine whether the document is both predecisional and deliberative. *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). "A document is predecisional if it is 'generated before the adoption of an agency policy.'" *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). A document is "deliberative" if it "reflects the give-and-take of the consultative process," *id.* (quoting *Coastal States Gas*, 617 F.2d at 866), "by which the decision itself is made," *Jowett, Inc. v. Dep't of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

The DOJ claims that Exemption 5 justifies withholding sections of multiple After Action Review Reports. *See Vaughn* Index at 1–7, 10–11, 26 (dealing with exemptions from Request Nos. 2010-12533, 2011-1351, and 2012-39). After Action Review Reports are "prepared by Bureau staff, and . . . reviewed by additional Bureau staff . . . ." *See* Statement Mat. Facts Not Genuine Dispute ¶ 11, ECF No. 293-1. The BOP claims that it withheld "recommendations regarding whether a use of force was appropriate and suggestions for improving uses of force for the future" from its disclosures of the reports. *See, e.g.*, 3d Christenson Decl. ¶ 17; *see also Vaughn* Index at 1–7, 10–11, 26 (describing portions of documents withheld in response to Request Nos. 2010-12533, 2011-1351, and 2012-39).

Pinson argues that the DOJ must disclose the After Action Review Reports in their entirety here because it has previously disclosed similar documents during discovery in civil litigation. *See* Pinson Decl. ¶ 6, ECF No. 314. However, FOIA exemptions are not coextensive with civil discovery standards. *See Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009). FOIA permits agencies to make "discretionary disclosures" of information that is exempt from

mandatory disclosures.  *See CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1134 n.1 (D.C. Cir.

1987) (explaining that an agency's FOIA disclosure decision can "be grounded either in its view

that none of the FOIA exemptions applies, and thus that disclosure is mandatory, or in its belief

that release is justified in the exercise of its discretion, even though the data fall within one or

more of the statutory exemptions.").  Therefore, even assuming, *arguendo*, that the DOJ has

disclosed similar documents during discovery in civil lawsuits, that disclosure does not mandate

disclosure in the instant case.

    However, upon its independent inquiry, this Court is not satisfied that the DOJ has

carried its burden of showing that Exemption 5 applies to the After Action Review Reports.  In

dealing with Exemption 5, the need for the agency to describe withheld records is at its height

"because 'the deliberative process privilege is so dependent upon the individual document and

the role it plays in the administrative process.'" *Animal Legal Def. Fund, Inc. v. Dep't of Air

Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States*, 617 F.2d at 867).  The

agency must show that the record was "generated as part of a definable decision-making

process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F.

Supp. 2d 123, 135–36 (D.D.C. 2011) (citing *Petroleum Info. Corp. v. U.S. Dep't of the Interior*,

976 F.2d 1429, 1434 (D.C. Cir. 1992)).  This showing typically includes "(1) the nature of the

specific deliberative process involved, (2) the function and significance of the document in that

process, and (3) the nature of the decisionmaking authority vested in the document's author and

recipient." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate

of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987); *Arthur Andersen & Co.

v. IRS*, 679 F.2d 254, 257–58 (D.C. Cir. 1982); *Coastal States*, 617 F.2d at 867–68).

The BOP's disclosures regarding the After Action Review Reports fall short of meeting this standard.  The BOP does not define the nature of the deliberative process involved.  Is the deliberative process one of how Pinson should be classified?  An ongoing refinement of the BOP's policies on the use of force in general?[28]  While the BOP need not identify a specific policy decision, it must at least describe the decisionmaking process at issue.  Furthermore, the BOP does not sufficiently describe the function or significance of the After Action Review Reports in that process, or the nature of the decisionmaking authority of the author and recipient. Who drafts the Reports?  Who reviews them?  Are the "determinations" withheld from the Reports final, or are they revised later?  For these reasons, the BOP has not yet carried its burden of establishing that the After Action Review Reports are properly withheld under Exemption 5.

The same flaws undercut the BOP's application of Exemption 5 to other records, including a memorandum from one BOP staff member to another BOP staff member;[29] referrals and recommendations regarding Pinson's correctional management;[30] a document discussing steps for re-accreditation;[31] and a document describing the preliminary cause of death of inmates

---

[28] It is also possible that the withheld portions of the reports are not deliberative at all. The BOP's describes the After Action Review Reports as intended to "review the incident to assess whether staff adhered to policy."  *See* 3d Christenson Decl. ¶ 54.  This description suggests that the After Action Review Reports are decisional materials that contain conclusions rather than pre-decisional materials that contain deliberations.  Similarly, the BOP's description of the withheld portions of the reports as "recommendations regarding whether a use of force was appropriate," 3d Christenson Decl. ¶ 17, is reminiscent of a conclusion about the use of force, not a deliberative process.  Of course, if the materials are not deliberative, the BOP must release them.  If they are deliberative, then the BOP must provide a sufficiently detailed *Vaughn* index to explain the deliberative function of the withheld portions.

[29] The BOP redacted or withheld this document from Request No. 2010-12533.

[30] The BOP redacted or withheld these materials from Request No. 2011-1886.

[31] The BOP redacted or withheld this document from Request No. 2012-39.

and estimating costs.[32]  *See also, e.g.*, *Vaughn* Index at 4 ("Memorandum from Michael

Nalley"); *Vaughn* Index at 12 ("Email from Chad Lohman to Lee Green"); *Vaughn* Index at 15

("Investigative Report, SIS Case No. TDG 09-0011"); *Vaughn* Index at 16–17 (Documents 22,

23, and 25); *Vaughn* Index at 19 ("Inmate Investigative Report, SIS Case No. TDG 10-0125");

*Vaughn* Index at 25 (Documents 1, 2, 3, and 4).  For these records, the BOP has likewise failed

to specify the role of the document in the deliberative process, or the nature of the decisionmaking

authority vested in each party.  For example, for one set of documents, the BOP states only that

"these documents consist of referrals and recommendations made from Bureau staff to other

Bureau staff" without specifying the relative position in the decisionmaking chain of each staff

member.  *See* 3d Christenson Decl. ¶ 72.  The Court thus denies the BOP summary judgment as

to its use of Exemption 5 to withhold documents, as reflected in the table *infra* at Part IV.[33]

### 2. Exemption 6

The DOJ argues that the BOP properly invoked Exemption 6 to withhold the names of

individuals, individual's addresses, and case numbers in response to Request No. 2011-2366,

which sought documents relating to the settlement of legal claims against the BOP.[34]  In its

---

[32] The BOP redacted or withheld this information from Request No. 2012-39.

[33] The Court grants the BOP summary judgment as to its withholding of document 28 of Request No. 2010-12533, the Use of Force Worksheet, because the material is properly exempt under Exemption 7(F).  The Court thus does not reach whether Exemption 5 would also apply to the document.

The Court denies the BOP summary judgment as to documents 2, 13, and 17 shown in the *Vaughn* Index for Request No. 2010-12533.  *See Vaughn* Index at 1–4.  The Court denies the BOP summary judgment as to all of the documents shown in the *Vaughn* Index for Request No. 2011-1351.  *See Vaughn* Index at 9–11.  The Court denies the BOP summary judgment for documents 3, 21, 22, 23, 25, and 35 shown in the *Vaughn* Index for Request No. 2011-1886.  *See Vaughn* Index at 12–20.  The Court denies the BOP summary judgment as to documents 2 through 5 shown in the *Vaughn* Index for Request No. 2012-39.  *See Vaughn* Index at 25–26.

[34] The BOP also asserts Exemption 6 in response to other withholdings, but because the Court finds that the other withholdings are justified under different exemptions, it does not address them under Exemption 6.

response to that request, the BOP produced parts of a "stipulation for compromise and settlement" and "letter regarding an administrative tort claim" but withheld the case number and administrative tort claim number, as well as the names and addresses of an inmate, the inmate's attorney, judges, a notary public, the Assistant U.S. Attorney, and a BOP employee. *Vaughn* Index at 21. Pinson does not explicitly challenge this withholding, but this Court independently considers if the BOP has shown that the undisputed material facts entitle it to summary judgment.

Under Exemption 6, an agency may withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation mark omitted). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Private information must also implicate a "significant privacy interest" to trigger protection. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," as a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30.

Where private information in a record does implicate a significant privacy interest, the court determines if disclosing the information  would constitute a "clearly unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation marks omitted) (quoting 5 U.S.C. § 552(b)(6)), by balancing

"the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228. "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Prison Legal News*, 787 F.3d at 1147 (D.C. Cir. 2015) (quoting *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996)). In calculating the public interest, the court considers only "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (alteration in original) (quoting U.*S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

From its response to Request No. 2011-2366, where Pinson sought, in relevant part, "any final settlement resulting in a Plaintiff receiving monetary compensation arising from litigation" against certain BOP sites, the BOP withheld "the names and addresses of individuals involved in the cases" from one "stipulation for compromise and settlement." *Vaughn* Index at 21. The BOP also withheld the names of an inmate and a BOP employee from a letter regarding "an administrative tort claim. *Vaughn* Index at 21. The BOP also withheld "the case numbers and administrative claim number, as this information could be used to circumvent the withholding of the names and identify the involved individuals." 3d Christenson Decl. ¶ 102. The individuals included inmates, court personnel, a prosecutor, BOP employees, and a notary public. *Vaughn* Index at 21. As to all of these withholdings, the BOP states only that releasing the information would "constitute an unwarranted invasion into [] personal privacy." 3d Christenson Decl.

¶ 102. These names and addresses do constitute personal information,[35] and revealing the name of a person involved in litigation with the BOP or their address would implicate more than a de minimis privacy interest.  The Court thus proceeds to balancing the public and private interests.

Pinson's request is very similar to the request at issue in *Prison Legal News v. Samuels*, where the requestors sought "all documents showing money the [BOP] paid in connection with lawsuits and claims brought against it" during a particular time period.[36]  *Prison Legal News*, 787 F.3d at 1145.  In *Prison Legal News*, the BOP withheld "individuals' names and other personal identifying information that would reveal the identity of a person related to a claim" under Exemption 6.  *Id.* at 1147–48.  The BOP provided a more thorough explanation of the private harm possible through disclosure, which the D.C. Circuit characterized as "to prevent the public from knowing an individual suffered some sort of injury or loss, or was subjected to discrimination, because association with the filing of a claim can be stigmatizing."  *Id.* at 1148. However, the D.C. Circuit rejected the BOP's application of Exemption 6 because the BOP's categorical approach provided insufficient explanation of the disparate privacy rights involved. For example, the BOP discussed all different types of claims together, even though "the privacy interest of tort claimants will be different when they are claiming injury from a slip and fall as compared to a sexual assault."  *Id.* at 1150.  The BOP also grouped together all involved individuals, "fail[ing] to distinguish between redacting the identity of the alleged victim and the

---

[35] And, as the BOP notes, the case numbers could be used to determine the names from court records.

[36] The D.C. Circuit treated lawsuits and other types of claims identically.  *See generally Prison Legal News*, 787 F.3d 1142.  Neither Pinson nor the BOP draws any distinction between the administrative claim and lawsuit at issue here. And Pinson does not argue that, for instance, the lawsuit settlement has been placed on the public record.  *See generally* Pl.'s Opp'n. Accordingly, the Court does not address whether these two types of records should be treated differently.

alleged perpetrator." *Id.* at 1150.  The D.C. Circuit concluded that this approach was insufficiently precise because, when such a categorical explanation is used, "[t]he range of circumstances included in the category must 'characteristically support[] an inference that the statutory requirements for exemption are satisfied.'" *Id.* (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088–89 (D.C. Cir. 2013)).  The D.C. Circuit did not bar the possibility of using categories in the future, and provided examples of categories which might share a similar privacy interest, such as "medical professionals who treat inmates" or "prisoners who testify in FTCA claims." *Id.* at 1151.

Here, the BOP likewise does not sufficiently explain the privacy interests of the individuals "involved" in each claim.  Neither claim is described, and, as the D.C. Circuit notes, an alleged sexual assault will trigger very different privacy interests than an alleged slip-and-fall.  Here, as in *Prison Legal News*, the BOP groups together all of the involved individuals, even though the inmates likely have privacy interests that differ from those of the BOP employee, judge, or notary public.  The BOP employee's interest would also depend on whether he or she was involved in the case as a witness or as an alleged perpetrator.  As in *Prison Legal News*, this oversimplification prevents this Court from understanding the privacy interests that weigh against disclosure, and the Court thus cannot correctly balance the public and private interests.[37] The Court will thus deny the BOP summary judgment as to its withholding of the names, addresses, and case numbers in its response to Request No. 2011-2366.[38]

---

[37] Although Pinson does not identify a public interest at issue here, the Court notes that there is likely some level of public interest in understanding "what the government is up to" through an examination of the fact patterns surrounding claims the BOP has settled with inmates.

[38] This denial of summary judgment applies to both documents, 1 and 2, listed in the BOP's *Vaughn* index.  *See Vaughn* Index at 21.  The BOP also claims Exemption 7(C) justifies withholding this material, but as discussed *infra* Section III.B.3.a, the Court disagrees that the threshold requirement of Exemption 7 is met.

### 3. Exemption 7

The DOJ argues that the BOP properly invoked Exemption 7 in response to Request Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, 2011-7156, 2011-7619, 2012-39, and 2012-975.  *See* Defs.' Mem. P. & A. at 30–31.  Exemption 7 protects from disclosure certain "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).

### a. Threshold Inquiry

"In order to withhold documents under Exemption 7, the agency must, as a preliminary matter" make a "threshold" showing demonstrating "that the records were compiled for a law enforcement purpose."  *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997).  Agencies classified as law enforcement agencies receive a special deference in their claims of law enforcement purpose.  *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982) (explaining this deference as based on "the generally accurate assumption that federal agencies act within their legislated purposes").  This review, however, although "necessarily deferential" is "not vacuous."  *Id.* at 421.

Not every document compiled by a law enforcement agency satisfies the law enforcement purpose inquiry.  *See AIC v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245–46 (D.D.C. 2013) (rejecting ICE's argument that all of its records are compiled for a law enforcement purpose (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982))); *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 146–47 (D.D.C. 2011) (rejecting a "per se" rule that all BOP documents are created for law enforcement purposes and finding that the BOP's recordings of inmates' telephone conversations fell outside of law enforcement purposes (citing *Pratt*, 673 F.2d at 416)).  Instead, the withheld records "must be related to the enforcement of federal laws or to the maintenance of national security" and that nexus "must be based on information sufficient to support at least a colorable claim of its rationality." *Pinson v. U.S. Dep't of Justice*,

35

No. 12-1872, 2016 WL 4074130, at \*6–7 (D.D.C. July 29, 2016) (internal quotation marks and citations omitted) (quoting *Pratt*, 673 F.2d at 420–21).

Records relating to an investigation are one common type of record compiled for law enforcement purposes.  For records created in the context of an ongoing investigation[39] the *Pratt* test requires an agency to "identify a particular individual or a particular incident as the object of its investigation and [identify] the connection between that individual or incident and a possible security risk or violation of federal law" in order to satisfy Exemption 7's threshold condition. *Pratt*, 673 F.2d at 420; *see also, e.g.*, *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (applying the *Pratt* test when the records involved an investigation of terrorists); *Long v. ICE*, 149 F. Supp. 3d 39, 48–49 (D.D.C. 2015) (applying the *Pratt* test when the records related to law enforcement databases); *AIC*, 950 F. Supp. 2d at 245 (applying the *Pratt* test when the records related to immigration detention).  Where there is no ongoing investigation, materials may still meet the threshold requirement of Exemption 7 if they are akin to "guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).  With this framework in mind, the Court turns to the BOP's withholdings in this case.

Here, the "BOP is a law enforcement agency and thus deserves [] deference" on its

---

[39] In 1986, Congress amended Exemption 7 to broaden the reach of the threshold requirement from "*investigatory* records compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7) (1982) (emphasis added), to simply "records or information compiled for law enforcement purposes," Anti-Drug Abuse Act of 1986, § 1802(a), Pub. L. No. 99-570, 100 Stat. 3207, 3207-48 (1986); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).  The D.C. Circuit has made clear that, after the amendments, the *Pratt* test applies only "when an agency seeks to invoke Exemption 7 in a situation in which there is an ongoing law enforcement 'investigation,'" but in that context, it "is still good law." *Tax Analysts*, 294 F.3d at 77–78.

claims of law enforcement purpose.[40]   *Pinson v. U.S. Dep't of Justice*, No. 12-1872, 2016 WL

4074130, at *6 (D.D.C. Jul. 29, 2016); *see also Duffin v. Carlson*, 636 F.2d 709, 713 (D.C. Cir.

1980); Mem. Op., ECF No. 306 at 12.   The BOP explains that the documents it withholds under

Exemption 7 were generated as part of the BOP's "law enforcement mission of protecting

inmates, staff, and the community."   3d Christenson Decl. ¶ 26.   Furthermore, many of the

responsive records were located in the BOP's databases.   *See, e.g.*, *id.* ¶¶ 13, 44, 53, 64, 95, 105,

126, 140, 143, 162, 176.   Past decisions in this jurisdiction have held that similar records were

compiled for law enforcement purposes.   *See, e.g.*, *Mingo v. U.S. Dep't of Justice*, 793 F. Supp.

2d 447, 453 (D.D.C. 2011) (holding that records "pertain[ing] to an altercation involving over 50

inmates" and "maintained by the Special Investigative Office at that facility" were compiled for

a law enforcement purpose because they were "created in connection with the BOP's

responsibility to protect[] inmates, staff, and the community" (internal quotation marks and

citations omitted)); *Holt v. U.S. Dep't of Justice*, 734 F. Supp. 2d 28, 41 (D.D.C. 2010) (holding

that records "pertain[ing] to the investigation of an inmate-on-inmate assault" were compiled for

law enforcement purposes because they were "created in connection with the BOP's

responsibility to protect[] inmates, staff, and the community" (internal quotation marks and

citations omitted)).   Many of the records at issue here are similar to those previously found to be

compiled for law enforcement purposes.   For example, the BOP applies Exemption 7 to the

administrative remedy index, which collects complaints by inmates about the conditions of their

confinement.   3d Christenson Decl. ¶ 163.   Like the documents at issue in *Mingo* and *Holt*, the

---

[40] Pinson attempts to argue that the BOP may not qualify as a law enforcement agency. *See* Pl.'s Opp'n at 4.   However, the cases she cites do not support this proposition, but only note the requirement that the BOP and all law enforcement agencies must establish a "nexus" between their law enforcement activities and the withheld documents.   *See, e.g.*, *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003).

administrative remedy index collects records pertaining to wrongful conduct within the prison

that were affirmatively created by the BOP to fulfill its law enforcement responsibility of

protecting inmates.  In conducting its independent evaluation, the Court therefore finds that the

BOP has presented sufficient facts to show that the documents it withholds under Exemption 7

were compiled for law enforcement purposes, with the exception of the settlement-related

documents responsive to Request No. 2011-2366.

Request No. 2011-2366 sought records about settlements paid by certain BOP sites to end

lawsuits.  3d Christenson Decl. ¶ 95 & Ex. J; Greene Decl. ¶ 13 & Ex. 18, ECF No. 147-3.  The

BOP located a compromise stipulation and a letter regarding an administrative tort claim in

response to the request, and applied Exemption 7 to withhold portions of each.  *Vaughn* Index at

21.  The BOP makes no attempt to either satisfy the *Pratt* test by explaining the relationship of

the documents to an investigation, or to show that the documents relate to general law

enforcement guidelines or procedures.  Instead, the BOP claims that the settlement records were

compiled for law enforcement purposes because "the documents were generated pursuant to

litigation challenging the Bureau's performance of its law enforcement mission."  3d Christenson

Decl. ¶ 103.  This goes too far.  The BOP's position comes close to advocating for the rejected

*per se* rule that, because it is a law enforcement agency, any documents it compiles meet

Exemption 7's threshold requirement.  *Cf. AIC v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d

221, 245–46 (D.D.C. 2013) (rejecting such a rule); *Benavides v. Bureau of Prisons*, 774 F. Supp.

2d 141, 146–47 (D.D.C. 2011) (same).

If the records relate to an ongoing investigation, the BOP's explanation does not even

attempt to satisfy the *Pratt* test by identifying "a particular individual or a particular incident as

the object of its investigation and [identifying] the connection between that individual or incident

and a possible security risk or violation of federal law." *Pratt v. Webster*, 673 F.2d 408, 420

(D.C. Cir. 1982).  If the BOP believes that these records meet Exemption 7's threshold

requirement because they are related to an investigation, it must say much more about the

particular incident and threat involved.  Nor does the BOP attempt to claim that the documents

are similar to the general guidelines and procedures that the D.C. Circuit held could still be

protected by Exemption 7 in *Tax Analysts*.[41]  *Cf. Tax Analysts*, 294 F.3d at 78.  On its face,

BOP's role as a defendant in a lawsuit appears distinct from its role as a law enforcement

agency.  Because the BOP does not explain how the settlement documents could satisfy

Exemption 7's threshold requirement through either test, Exemption 7 cannot be applied to the

claimed documents from Request No. 2011-2366.

### b. Exception 7(C)

The DOJ argues that it properly invoked Exemption 7(C) in response to Request Nos.

2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, 2011-7156, 2011-7619, 2012-39,

and 2012-975.[42]  *See* Defs.' Mem. P. & A. at 31–32.  The BOP used the exemption to withhold

the names, personal identifying information, and medical information of staff members, other

---

[41] Settlement documents, by their nature, are related to one particular claim—which makes it difficult to understand how they could relate to the BOP's general law enforcement procedures.

[42] The DOJ also invokes Exemptions 6 and 7(F) as grounds for withholding: the names, personal identifying information, and medical information of staff members, third-party inmates, and individuals; information regarding the correctional management of third-party inmates; the names of FBI agents; an injury assessment for a staff member; and telephone and fax numbers of prison staff members.  *See* 3d Christenson Decl. ¶¶ 21–24, 52, 59, 73–75, 102, 119, 133, 152–53, 168; *Vaughn* Index.  Because the Court has determined that all of the withheld records are protected by Exemption 7(C), the Court does not reach the question of whether Exemption 6 and 7(F) apply to this information as well, except to the extent that the Court has already rejected the application of Exemption 6 to portions of Request No. 2011-2366.

inmates, and individuals;[43] information regarding the correctional management of third-party inmates;[44] the names of FBI agents;[45] an injury assessment for a staff member;[46] and telephone and fax numbers of prison employees.[47]  *See* 3d Christenson Decl. ¶¶ 29–33, 52, 61, 77–81, 104, 122–23, 136, 156–57, 171; *Vaughn* Index.  The DOJ asserts that the release of the withheld information would significantly compromise inmates' and employees' privacy interests, *see* Defs.' Mem. P. & A. at 31–32, and the Court agrees.

Under Exemption 7(C), an agency is exempt from producing "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) is similar to Exemption 6, as both protect private information, but "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)).  *See also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.").

---

[43] The BOP redacted or withheld this information from Request Nos. 2011-1351, 2011-1886, 2011-2366, 2011-7156, 2011-7619, 2012-39, and 2012-975.

[44] The BOP redacted or withheld this information from Request Nos. 2010-12533, 2011-1886, and 2012-39.

[45] The BOP redacted or withheld this information from Request Nos. 2010-12533 and 2011-1886.

[46] The BOP redacted or withheld this document from Request No. 2010-12533.

[47] The BOP redacted or withheld this information from Request Nos. 2011-843, 2011-1886, and 2011-7156.

As in Exemption 6, a court first determines if there is a privacy interest in the information to be disclosed, *ACLU*, 655 F.3d at 6, and then balances the individual's privacy interest against the public interest, considering only the public interest "that focuses on 'the citizens' right to be informed about what their government is up to,'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 773 (1989)).  It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public interest must be significant.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  Moreover, the D.C. Circuit has held that the names of "private individuals appearing in files within the ambit of Exemption 7(C)" are categorically exempt from disclosure unless disclosing such information "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity."  *See Pinson*, 2016 WL 4074130, at *7 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.D.C. 1991)); ECF No. 306 at 14–15.

In response, Pinson articulates only the vague argument that all of the information withheld under Exemption 7(C) should be disclosed because "the public absolutely should know how the BOP treats its inmates especially in situations where it uses live ammunition to kill them."  *See* Pl.'s Resp. at 3–4, ECF No. 314.  Pinson does not identify any specific redactions that are problematic or provide any arguments that would help the Court weigh the public and private interests.  Pinson does not explain why identifying particular staff members would serve the public interest or reveal what the government is up to in a way that understanding the actions of high-ranking BOP officials alone does not.

Here, because Pinson has not presented any compelling evidence of illegal activity by the BOP, the names of the third-party inmates and individuals are categorically exempt from

disclosure. *See Pinson*, 2016 WL 4074130, at *7 (holding that the names of third-party inmates within memoranda were categorically exempt from disclosure absent compelling evidence of illegal activity by the BOP); *SafeCard*, 926 F.2d at 1206 (holding that names of "private individuals appearing in files within the ambit of Exemption 7(C)" are categorically exempt from disclosure unless disclosing such information "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity").

As to the other withheld information, the DOJ has presented sufficient detail to demonstrate that its redactions protect the privacy interests of inmates, staff members, and third-party individuals. In its own independent evaluation, the Court does not identify any public interest in disclosure that would outweigh that private interest. *Cf. Davis*, 968 F.2d at 1282 (holding that "even if a particular privacy interest is minor, nondisclosure remains justified where . . . the public interest in disclosure is virtually nonexistent); *see also* 3d Christenson Decl. ¶¶ 29–33, 52, 61, 77–81, 104, 122–23, 136, 156–57, 171.  The Court thus grants the BOP summary judgment as to its use of Exemption 7(C).

### c. Exemption 7(F)

Finally, the DOJ claims that the BOP properly invoked Exemption 7(F) to withhold records in response to Request Nos. 2010-12533, 2011-1351, 2011-1886, 2011-7156, 2011-7619, 2012-39, and 2012-975.  *See* Defs.' Mem. P. & A. at 35–37.  FOIA Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  The D.C. Circuit has described the reach of Exemption 7(F) as "expansive."  *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 526 (D.C. Cir. 2015), *cert. denied* 136 S. Ct. 876 (2016).  "That language is very broad," and the exemption "does not require that a particular

kind of individual be at risk of harm; 'any individual' will do." *Public Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014).  Moreover, "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.*  Unlike Exemption 7(C), which involves a balancing test, Exemption 7(F) "is an absolute ban against [disclosure of] certain information," *Raulerson v. Ashcroft*, 271 F.Supp.2d 17, 29 (D.D.C. 2002), and "[w]ithin limits, courts defer to the agency's assessment of danger," *Sanchez–Alaniz v. Fed. Bureau of Prisons*, No. 13-1812, 2016 WL 1222214, at *7 (D.D.C. Mar. 28, 2016) (citations omitted).

The DOJ argues that the BOP properly withheld:[48] monitoring and classification assignments for Pinson and third-party inmates;[49] correctional management techniques used for Pinson and third-party inmates,[50] the names and roles of staff who participated in uses of force;[51] information regarding the security procedures of the institution;[52] Daily Assignment Rosters;[53] specific procedures used during a calculated use of force;[54] witness statements used to support

---

[48] In addition, while the BOP labels its withholding of "the techniques law enforcement officers used to contain and control a critical incident" from documents responsive to Request No. 2012-00039 as based in Exemption 7(E), *Vaughn* Index at 26, the Court finds that Exemption 7(F) would justify the withholding and thus does not address Exemption 7(E). Pinson does not object to this withholding.

[49] The BOP redacted or withheld this information from Request Nos. 2010-12533, 2011-1351, 2011-1886, 2011-7156, 2011-7619, 2012-39, and 2012-975.

[50] The BOP redacted or withheld this information from Request Nos. 2011-1351, 2011-1886, and 2011-7156.

[51] The BOP redacted or withheld this information from Request Nos. 2010-12533 and 2012-39.

[52] The BOP redacted or withheld this information from Request No. 2010-12533.

[53] The BOP redacted or withheld these documents from Request No. 2010-12533.

[54] The BOP redacted or withheld this information from Request No. 2010-12533.

Pinson's ADX referral;[55] information regarding gang and informant activity within the BOP;[56] statements that Pinson and third-party inmates and individuals made to law enforcement officers;[57] information regarding law enforcement investigations;[58] the classification of various reported incidents;[59] Pinson's presentence investigation report ("PSR");[60] and factual descriptions of inmates' assaultive behavior.[61]   *See* 3d Christenson Decl. ¶¶ 39–43, 63, 86–94, 125, 138–39, 160–61, 174–75; *Vaughn* Index.   The DOJ asserts that disclosure of the withheld information could reasonably be expected to endanger the life or physical safety of staff and inmates.  *See* Defs.' Mem. P. & A at 35–37.

Pinson first objects to the withholding of the Daily Assignment Rosters and Report of Incident documents, on the basis that the DOJ has disclosed these types of documents in other litigation.  *See* Pinson Decl. ¶¶ 2, 10, ECF No. 314.  However, as discussed *supra* at Section III.B.1, an agency may make a discretionary disclosure of material that would be protected by FOIA without waiving the right to withhold similar documents in the future.  *Cf. CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1134 n.1 (D.C. Cir. 1987).  Therefore, even if the BOP has previously disclosed different Daily Assignment Rosters or Report of Incidents, that disclosure need not control the result here.

---

[55] The BOP redacted or withheld this information from Request No. 2011-1886.

[56] The BOP redacted or withheld this information from Request No. 2011-1886.

[57] The BOP redacted or withheld this information from Request No. 2011-1886.

[58] The BOP redacted or withheld this information from Request No. 2011-1886.

[59] The BOP redacted or withheld this information from Request Nos. 2011-1886 and 2011-7619.

[60] The BOP redacted or withheld this document from Request No. 2011-1886.

[61] The BOP redacted or withheld this information from Request No. 2012-975.

In this case the DOJ has sufficiently demonstrated that the information withheld from the Daily Assignment Rosters could reasonably be expected to endanger the life or physical safety of one or many individuals and thus falls within Exemption 7(F).  As the BOP's declarations explain, the Daily Assignment Rosters "reveal the institution's staffing levels, including how many correctional officers are present on each shift and where those officers are posted throughout the institution. This information could assist individuals in planning incidents, including assaults, homicides, and escape attempts."  3d Christenson Decl. ¶ 42; *cf. Anderson v. Fed. Bureau of Prisons*, 806 F. Supp. 2d 121, 128 (D.D.C. 2011) (holding that Exemption 7(F) was properly invoked to withhold a BOP's prison incident report because "it would likely result in harassment and/or retaliation, to possibly include physical assaults, directed towards individual(s) identified in the investigation and resulting in a threat not only to the named individual but also to the safe operation of the institution"); *see also Schotz v. Samuels*, 72 F. Supp. 3d 81, 89 (D.D.C. 2014) (Exemption 7(F) "affords broad protection to the identities of individuals mentioned in law enforcement files . . . , including any individual reasonably at risk of harm." (quoting *Quinto v. U.S. Dep't of Justice*, 711 F. Supp. 2d 1, 8 (D.D.C. 2010))); 3d Christenson Decl. ¶¶ 42, 138–39.  Accordingly, the Court finds there is no genuine issue of material fact regarding the DOJ's invocation of Exemption 7(F) to withhold the Daily Assignment Rosters and grants the BOP summary judgment.[62]

---

[62] Pinson also cursorily argues that the BOP's claims "about endangering inmate safety or in some way revealing its practices and techniques [are] contradicted by its public policies which identify 'disruptive groups.'"  *See* Pinson Decl. ¶ 7.  However, as explained previously, Exemption 7(F) does not operate as a balancing test, but as an absolute ban against disclosure of certain information.  *See Raulerson*, 271 F. Supp. 2d at 29; *see also Sanchez–Alaniz*, 2016 WL 1222214, at *8 (holding that the BOP properly withheld information under Exemption 7(F) where the BOP determined that "disclosure of the redacted information would endanger the life or physical safety of inmates and staff members named within the report").  Nor has Pinson demonstrated that the precise information withheld here has been previously made public.

Pinson also contests the DOJ's use of Exemption 7(F) to withhold her PSR in response to Request No. 2011-1886. *See* Pl.'s Resp. at 2; *Vaughn* Index at 20. The BOP replies that giving Pinson her PSR could lead to another inmate assaulting her or coercing her into sharing the information. *See* 3d Christenson Decl. ¶ 94. In fact, the BOP has a policy prohibiting inmates from possessing their PSRs, to avoid precisely these harms. The BOP further argues that if Pinson wishes to review her PSR, she may request to do so "according to the procedures outlined on pages 12–13 of Program Statement 1351.05." *Id.* However, "[a]n agency's duty to release information is not predicated on the identity of the requester or the purpose for the request." *Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d 316, 320–21 (D.D.C. 2005) (citing *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771-72 (1989)). The BOP may therefore not withhold the PSR because Pinson in particular, or an inmate in general, requested it. This Court previously noted that whether records "must be disclosed pursuant to FOIA is a separate matter from whether [] Pinson, who is incarcerated, is entitled under BOP rules and regulations to possess the correspondence at issue while [she] is incarcerated," ECF No. 203 at 6, and therefore appointed Pinson counsel "for the limited purpose of receiving and reviewing correspondence withheld by the BOP and FBI and determining compliance with FOIA," Order of Appointment of Pro Bono Counsel, ECF No. 204; *see also Sample v. Bureau of Prisons*, 466 F.3d 1086, 1089 (D.C. Cir. 2006) (distinguishing between the BOP's role as a FOIA administrator and its role as a custodian of inmates).

Past cases in this circuit have permitted inmates conditional access to their PSRs, rather than permitting the document to be withheld entirely under Exemption 7(F). *See, e.g.*, *Martinez v. Bureau of Prisons,* 444 F.3d 620, 625 (D.C. Cir. 2006) ("FOIA does not entitle [the requester] to have copies of his [or her] PSRs" as long as the requester is "afforded a meaningful

opportunity to review his [or her] PSR and to take notes on them." (internal citations omitted));
*Schotz*, 72 F. Supp. 3d at 89 (finding that the PSR was not improperly withheld when plaintiff
could access it through BOP's procedures). In this case, in addition to BOP's procedures for
review, the Court has appointed Pinson counsel to receive correspondence from BOP that Pinson
may not receive in prison. The BOP should thus use Pinson's pro bono counsel to meet its FOIA
obligation with regard to Pinson's PSR, rather than simply denying Pinson's request. As this is
in accordance with the BOP's policy for PSR retention, it would apparently satisfy the BOP's
safety concerns. The DOJ's request for summary judgment as to the withholding of the PSR—
document 36 listed in the *Vaughn* Index for Request No. 2011-1886—under Exemption 7(F) is
thus denied. *See Vaughn* Index at 20.

Although Pinson does not specifically challenge the BOP's other withholdings under
Exemption 7(F), this Court must independently consider if any genuine issues of material fact
exist. The Court identifies significant oversights in several of the BOP's justifications for
withholding documents. First, in response to Request No. 2011-1886, the BOP withheld several
"staff member[s'] response[s] to questions posed by Pinson regarding [her] ADX referral."
*Vaughn* Index at 12–20. These statements appear to have addressed whether or not Pinson
should be placed in the ADX. The DOJ elaborates that "the safety of the staff-witnesses" would
be "at risk" if their "opinions" "regarding whether [Pinson's] placement at ADX was
appropriate" were disclosed. Statement Mat. Facts Not Genuine Dispute ¶ 75, ECF No. 293-1;
*see also* 3d Christenson Decl. ¶ 86, ECF No. 293-3. However, given that the BOP has
anonymized other documents by removing the names of staff under Exemption 7(C), the Court
finds that the BOP's potential harm is too speculative in the absence of some explanation as to

why these responses could not likewise be anonymized.[63]  At a minimum, BOP must

demonstrate that the opinions are so fact specific that even redaction would not conceal the

identity of the persons expressing the opinions.

Second, the BOP insufficiently explained its withholding of certain information from the

Report of Incident documents.  The BOP withheld the checkboxes for "Type of Incident" and

"Cause of Incident" from several Reports of Incident responsive to Request No. 2011-7619.

*Vaughn* Index at 23–24.  The BOP argues that revealing which incidents were classified as

sexual assault "increases the risk of further harm to the alleged victim."  3d Christenson Decl.

¶ 138. However, the BOP does not explain why this risk could not be addressed by redacting the

name of the victim under Exemption 7(C) instead of withholding the entire classification.[64]  In

response to Request No. 2012-975 the BOP similarly used Exemption 7(F) to withhold

"information regarding an assault on an inmate and attachments [to the form]."[65]  *Vaughn* Index

---

[63] The Court thus denies summary judgment to the BOP for documents 8 through 17, inclusive, listed in the *Vaughn* index for Request No. 2011-1886.

[64] It appears that the documents containing these redactions were responsive to Pinson's request for "All Report of Incident (Form 583) regarding homicides within the Bureau of Prisons since 2008" as part of Request No. 2011-7619.  *See, e.g.*, 3d Christenson Decl. ¶¶ 126, 130. Given that these records relate to homicides, the possibility of revictimization must be at its nadir.  Furthermore, given that Pinson did not request reports pertaining to specific incidents, there is no reason to believe that Pinson is already familiar with the identities of any of the victims.  Both of these factors suggest that redacting the names would suffice.
    The Court also notes that the BOP's rationale for withholding the Type of Incident and Cause of Incident boxes from all of the homicide reports of incidents appears to be described in the third Christenson Declaration at ¶ 138, although that paragraph explicitly refers only to the records responsive to a different portion of Request No. 2011-7619.

[65] The BOP also claims that Exemption 7(E) justifies its withholding of the information regarding the assault and attachments. This provision exempts records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E) (2016).  However, the Court is similarly unable to determine from the one scant line of description provided by the BOP how "information regarding assault on an inmate" or an undescribed attachment would

at 27–34.  The DOJ conclusorily asserts that "[d]isclosure of [the factual description of inmates' assaultive behavior] could result in further victimization for the victim of the described assault. Further, disclosure of the factual information could have the effect of educating inmates on new ways to assault other inmates or staff."  Statement Mat. Facts Not Genuine Dispute ¶ 164.  These assertions are too vague to allow the Court to subject them to the adversarial process, and do not explain why the BOP could not simply anonymize the names of the inmates (for example, if the assault is a "routine" physical attack in a recreation yard, could that description reasonably educate another inmate about new methods of assault?).  In addition, the BOP gives no description of the contents of the attachments at all, much less an explanation of the danger posed by their release.  *See Maydak v. U.S. Dep't of Justice*, 362 F. Supp. 2d 316, 321 (D.D.C. 2005) (denying summary judgment to the agency on its withholding of psychiatric reports on an inmate, because its argument that the inmate could learn to manipulate the treatment system was "too speculative and not based upon competent evidence").  Because the BOP has not shown that it has a "reasonable expectation" of harm from disclosure, the Court will deny the BOP summary judgment as to its withholdings of the answers to questions and the information regarding assault and attachments.[66]

## C.  Segregability

FOIA requires that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *See* 5 U.S.C. § 552(b); *see also Johnson v.*

---

disclose law enforcement techniques or guidelines, and thus cannot grant the BOP summary judgment on this ground.

[66] This denial applies to document 4 listed in the *Vaughn* index for Request No. 2011-7916 and documents 2 through 18 listed in the *Vaughn* index for Request No. 2012-975.

*Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability.  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed.  *Id.*

Here, the DOJ provided Pinson with a comprehensive *Vaughn* index, describing each document withheld in part or in full, as well as the exemption under which it was withheld. *Vaughn* Index, ECF No. 293-3, Ex. C.  Ms. Christenson attests to having personally prepared the *Vaughn* Index and that "[e]very effort has been made to release all segregable information without releasing [the protected information]."  *See, e.g.*, 3d Christenson Decl. ¶ 17.  Pinson raises no objection as to the segregability of the information withheld.  *See* Pl.'s Resp.; Pinson Decl.  The combination of the *Vaughn* Index and the declaration of Ms. Christenson are sufficient to fulfill the agency's obligation to show with "reasonable specificity" why a document cannot be further segregated.  *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).

## IV.  CONCLUSION

In light of this Court's conclusions regarding the adequacy of the BOP's searches and the exemptions BOP has invoked, the Court grants summary judgment to the DOJ as shown in the following table:

| Request No. | Document Nos. | Summary Judgement for BOP |
|---|---|---|
| 2010-12533 | 2, 13, 17 | **DENIED**, insufficient showing to apply Exemption 5 |
| | All others (1, 3–12, 14, 15, 16, 18–30) | **GRANTED** |
| 2011-843 | All | **GRANTED** |
| 2011-1351 | All | **DENIED**, insufficient showing to apply Exemption 5 |
| 2011-1886 | 3, 21, 22, 23, 25, 35 | **DENIED**, insufficient showing to apply Exemption 5 |
| | 36 | **DENIED**, insufficient showing to apply Exemption 7(F) |
| | 8–17 | **DENIED**, insufficient showing to apply Exemption 7(F) |
| | All others (1, 2, 4–7, 18, 19, 20, 24, 26–34) | **GRANTED** |
| 2011-2366 | All | **DENIED**, insufficient showing to apply Exemption 6 or 7(C) |
| 2011-7156 | All | **GRANTED** |
| 2011-7619 | 4 | **DENIED**, insufficient showing to apply Exemption 7(F) |
| | All others (1–3) | **GRANTED** |
| 2012-40 | N/A | **DENIED**, BOP has not yet responded to request |
| 2012-39 | 2–5 | **DENIED**, insufficient showing to apply Exemption 5 |
| | All others (1) | **GRANTED** |
| 2012-975 | 1 | **GRANTED** |
| | All others (2–18) | **DENIED**, insufficient showing to apply Exemption 7(F) |
| 2012-1684 | N/A | **DENIED**, BOP has not yet responded to request |

As discussed *supra* at Section III.A and reflected in the table, the BOP's search was not

adequate as to Request Nos. 2012-1684 or 2012-40 in their entirety, because the BOP has not yet

responded to the requests.  Furthermore, although—as discussed above—the Court grants the

BOP summary judgment as to the adequacy of its non-email search for records responsive to

Request Nos. 2011-7156 and 2012-39, summary judgment is denied as to the adequacy of the BOP's email search responsive to those two requests because the BOP has not yet completed its processing of the requests.  Similarly, while—as shown in the table—the Court grants the BOP summary judgment as to some of its withholdings from Request Nos. 2011-7156 and 2012-39, summary judgment would be premature as to any withholdings the BOP may assert from any responsive emails it may identify.[67]  When the BOP has fulfilled all of its FOIA obligations, it should file a supplemental motion for summary judgment as to these requests.

For the foregoing reasons, the DOJ's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 17, 2017                                                      RUDOLPH CONTRERAS
                                                                                           United States District Judge

---

[67] The Court notes that Pinson has recently filed a motion seeking "supplemental briefing" on the issue of whether or not Pinson is entitled to a fee waiver.  *See* Motion for Additional Briefing on Requests, ECF No. 354.  Based on that motion's reference to the BOP's Email Status Report, ECF No. 353, this Court concludes that Pinson seeks a fee waiver as to Requests No. 2011-7156, 2012-40, and 2012-39.  Because the Court denies the BOP summary judgment as to each of these requests, as discussed above, it does not address Pinson's motion for supplemental briefing in this opinion.