# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 12-1872 (RC) |
| v. | : | | |
| | : | Re Document No.: | 318 |
| UNITED STATES DEPARTMENT OF | : | | |
| JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

While in prison, *pro se* plaintiff Jeremy Pinson filed multiple Freedom of Information

Act ("FOIA") requests seeking records from various components of the U.S. Department of

Justice ("DOJ"). In addition to releasing a number of records to Pinson, the DOJ asked Pinson to

clarify some of her[1] records requests, told her that it could not find records responsive to some of

her requests, and informed her that some of the records she sought were exempt from disclosure

by law. Pinson filed a complaint challenging some of these determinations and alleging that the

DOJ improperly withheld records.

At issue in this Opinion is the propriety of the Bureau of Prisons' ("BOP") withholdings

from two memoranda that it released in part. Each memorandum documents the Special

Administrative Measures ("SAMs") imposed on an individual in BOP custody. The DOJ moves

for summary judgment as to the propriety of the withholdings, arguing that the BOP correctly

---

[1] Pinson identifies using feminine pronouns. The government and this Court follow suit. *See* Defs.' Mot. Dismiss or, Alt., Renewed Mot. Summ. J. at 2 n.1, ECF No. 287. The Court's use of feminine pronouns is not intended to reflect any substantive or legal characterization.

applied FOIA Exemptions 6, 7(C), 7(E), and 7(F). *See* Defs.' Suppl. MSJ, ECF No. 318. For the

reasons set forth below, the Court grants the DOJ's motion for summary judgment.

## I.   FACTUAL BACKGROUND

This Court has already explained the factual background in detail in a prior Memorandum

Opinion. *See* Mem. Op., *Pinson v. U.S. Dep't of Justice*, 2016 WL 29245, at *1–5 (D.D.C. Jan.

4, 2016), ECF No. 259. The Court assumes familiarity with its prior opinion and confines its

discussion to the facts most relevant to the present motion.

In 2010, Pinson submitted a FOIA request to the DOJ's Office of Information Policy

("OIP")[2] seeking "any correspondence or electronic messages generated after January 21, 2009

by the Attorney General, or staff within the Attorney General's office, addressed to or intended

for the Director of the Federal Bureau of Prisons." Decl. Vanessa R. Brinkmann (Brinkmann

Decl.) ¶ 4 & Ex. A, ECF No. 131-3. The records responsive to this request included two SAMs

memoranda—one from 2009 and one from 2010.

SAMs are special conditions of confinement implemented by the Attorney General with

regards to a specific inmate as "reasonably necessary to protect persons against the risk of death

or serious bodily injury." 28 C.F.R. § 501.3(a). These measures may include limitations on the

individual's access to the mail, media, telephone, and visitors. *See* Defs.' Mot. Summ. J. at 11–

12, ECF No. 239 (citing Decl. Ronald L. Rodgers ¶ 12(a), ECF No. 239-1). The SAMs

memoranda at issue here memorialize the Attorney General's SAMs decisions with respect to

two inmates and recount in detail the criminal conduct of the individuals subject to the orders,

those individuals' continued threat to public safety, and the terms of the SAMs themselves. *See*

---

[2] OIP assigned this request FOIA tracking number AG-10/R1351. *See* Brinkmann Decl.
¶ 5 & Ex. B, ECF No. 131-3.

Defs.' Mot. Summ. J. at 11–12, ECF No. 239. The 2009 SAMs memorandum concerned a

convicted prisoner, and the 2010 SAMs memorandum concerned a pretrial detainee. 4th

Christenson Decl. ¶¶ 6–7.

In its initial response to Pinson, the DOJ withheld, *inter a*lia, the entirety of both

memoranda. *See* Defs.' Mot. Summ. J. at 11, ECF No. 239. However, after this Court denied the

DOJ summary judgment[3] on its withholdings, the BOP re-processed Pinson's request and

released both SAMs memoranda in part, with some redactions. 4th Christenson Decl. ¶¶ 4–5, 49

& Ex. E; *see also* Mem. Op., *Pinson*, 2016 WL 4074130, at *4, ECF No. 306. The BOP now

claims that it has properly withheld portions of the SAMs memoranda pursuant to FOIA

Exemptions 6, 7(C), 7(E), and 7(F). *See Letter to Pinson*, ECF No. 318-2. The DOJ again moves

for summary judgment on the grounds that it has properly applied FOIA exemptions and released

all segregable material. Defs.' Suppl. MSJ at 1–2.

## II. LEGAL STANDARD

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force

v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only

those documents or portions thereof that fall under one of nine delineated statutory exemptions."

*Elliot v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he

exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151

(1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)).

It is the agency's burden to show that withheld material falls within one of these

exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845. "The [C]ourt . . . 'impose[s] a

---

[3] This Court has also previously held that OIP's search for records responsive to this request was adequate. Mem. Op. at 10–12, *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016), ECF No. 268.

substantial burden on an agency seeking to avoid disclosure' through the FOIA exemptions."
*Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Vaughn v. Rosen*, 484 F.2d 820,
828 (D.C. Cir. 1973)) (alteration in original). Accordingly, disclosure exemptions are "narrowly
construed," and "'conclusory and generalized allegations of exemptions' are unacceptable." *See*
*Morley*, 508 F.3d at 1114–15 (quoting *Founding Church of Scientology of Wash., D. C., Inc. v.*
*Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)). However, courts generally respect the
factual reasoning of agencies, and "[u]ltimately[] an agency's justification for invoking a FOIA
exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75
(D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Thus, "a
reviewing court should 'respect the expertise of an agency' and not 'overstep the proper limits of
the judicial role in FOIA review.'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293
(D.D.C. 2016) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C.
Cir. 1979)).

      "FOIA cases typically and appropriately are decided on motions for summary judgment."
*Defs. of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v.*
*U.S. Agency for Int'l Dev.,* 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Under Rule 56 of the Federal
Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery
and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

      Even when the requester does not explicitly challenge a withholding, the court must
independently consider if the agency has shown that the undisputed material facts entitle it to
summary judgment. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)

("'The nonmoving party's failure to oppose summary judgment does not shift [the moving

party's] burden.' The District Court 'must always determine for itself whether the record and any

undisputed material facts justify granting summary judgment.'" (quoting *Grimes v. District of*

*Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring))). Even though Pinson does

not respond to some portions of the DOJ's motion for summary judgment, the court cannot grant

the motion on the basis that it was conceded. *See id.* at 505 ("Under the Federal Rules of Civil

Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition."

(citing Fed. R. Civ. P. 56(e)(3))).

## III. ANALYSIS

The DOJ argues that it is entitled to summary judgment because it properly applied FOIA

Exemptions 6, 7(C), 7(E), and 7(F) to withhold portions of both SAMs memoranda. *See*

*generally* Defs.' Suppl. MSJ, ECF No. 318; 4th Christenson Decl. Because all of the portions of

the records withheld under Exemptions 6 or 7(F) were also withheld under Exemptions 7(C) or

7(E),[4] and the Court concludes, *infra*, that Exemptions 7(C) and 7(E) were properly applied, the

Court does not reach the arguments concerning Exemption 6 or Exemption 7(F).[5]

---

[4] *See* Defs.' Suppl. MSJ at 8, ECF No. 318 ("The BOP applied Exemption 7(C) to withhold the same information as Exemption 6 . . ."); Defs.' Suppl. MSJ at 11 ("The BOP . . . applied Exemption 7(F) to a subset of the information withheld under Exemptions 6 and 7(C) . . .").

[5] Because the Court does not reach the issues related to Exemption 7(F), it need not address Pinson's contention that the BOP is precluded from raising Exemption 7(F) for the first time in this proceeding. *See* Pl.'s Resp. at 3, ECF No. 328. However, the Court notes that agencies may claim new exemptions at either the administrative or district court level. *See* *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 269 n.6 (D.D.C. 2016) ("[T]he D.C. Circuit has long implied that an agency may invoke a FOIA exemption for the first time before the district court—but not 'for the first time in the appellate court.'" (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc))).

### A.  Exemption 7

The DOJ asserts that the BOP properly invoked Exemptions 7(C) and 7(E) to redact or withhold certain portions of the SAMs memoranda. *See* Defs.' Suppl. MSJ at 2; 4th Christenson Decl. ¶¶ 9–37. As an initial matter, Exemption 7 requires a threshold determination that the information withheld constitutes "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). This Court has previously considered the issue at length and determined that the SAMs memoranda meet this threshold requirement because they reflect BOP's efforts to deal with potential security risks to the public, inmates, and staff and are rationally related to BOP's law enforcement duties. Mem. Op. at 12–14, *Pinson v. U.S. Dep't of Justice*, 2016 WL 4074130, at *7 (D.D.C. July 29, 2016), ECF No. 306. Next, the Court evaluates each invoked exemption in turn.

### 1.  Exemption 7(E)

The DOJ argues that it properly applied Exemption 7(E) to justify withholding a detailed description of the inmate's offense conduct—intertwined with a description of the law enforcement investigation—from the 2010 SAMs memorandum concerning a pretrial inmate. Pinson objects to these withholdings in part.

Exemption 7(E) allows redaction of information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). It affords "categorical protection," *Judicial Watch, Inc. v. FBI*, 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (internal quotation marks omitted), to material that "would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public,"

*Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). The bar

is "relatively low . . . for the agency to justify withholding" information under Exemption 7(E).

*Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

The DOJ applied Exemption 7(E) to withhold a "detailed description of the underlying

offense conduct related to the terrorism charges on pages 1 to 3 [of the 2010 memorandum]"

because "[i]nterspersed throughout the discussion . . . [i]s discussion of how law enforcement

learned of the offense conduct and steps they took to further investigate the alleged illegal

activity." 4th Christenson Decl. ¶ 27. The description of the investigation included the "types of

chemicals revealed in residue testing, locations identified for searches, items seized during the

searches, and individuals identified for interviews." 4th Christenson Decl. ¶ 27. Pinson stipulates

that "the issue regarding chemical agents" is appropriately withheld under Exemption 7(E), Pl.'s

Resp. at 3, ECF No. 328, and this Court thus holds that BOP's chemical agent-related

withholdings were proper.

Turning to the other withholdings, although Pinson objects only to the withholding of the

"names and locations of searches," Pl.'s Resp. at 3. , the Court will independently consider if the

"record and any undisputed material facts justify granting summary judgment," *Winston &*

*Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (quoting *Grimes v. District of*

*Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)). The DOJ argues that

release of information concerning "locations identified for searches, items seized during the

searches, and individuals identified for interviews," could incidentally divulge which search

locations or witnesses law enforcement is interested in during "each point [in] an investigation,

and what property items are of interest for certain types of investigations[,] . . . [which] would

enable targets of investigations to hide evidence at different locations that would not be

identified for search or know when to pressure witnesses to not cooperate during interviews." 4th Christenson Decl. ¶ 29; Defs.' Suppl. MSJ at 10.

According to Pinson, the names and locations of searches are already exposed to the public through, for example, news coverage of law enforcement investigations. Pl.'s Resp. at 3. However, as the DOJ notes, such police news conferences are "rare" and "the fact that a police department may occasionally [give such a press conference] does not suggest that they would welcome film crews to follow them throughout their investigations." Defs.' Reply at 2, ECF No. 330. Indeed, a key feature of such a news conference is that the police department retains strategic control of which locations and facts are presented to the public, yet such control would be lacking if general investigative facts were revealed through FOIA requests.

Given Exemption 7(E)'s "relatively low bar," *see Blackwell*, 646 F.3d at 42, the Court agrees that the law enforcement techniques withheld here are covered under Exemption 7(E). The DOJ has provided specific details as to the types of techniques and procedures that would pose a risk of circumvention of the law and that surpass the "conclusory and generalized allegations of exemptions," *Morley*, 508 F.3d at 1114–15 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)), that this Court previously declined to accept. *Pinson*, 2016 WL 4074130, at *8, ECF No. 306. The Court thus grants the DOJ summary judgment as to its use of Exemption 7(E).

## 2.  Exemption 7(C)

The DOJ argues that it properly invoked Exemption 7(C) to withhold information from both SAMs memoranda. Although Pinson challenges some of these withholdings, the Court agrees that the balance of private and public interests permits the DOJ to withhold the information at issue.

Under Exemption 7(C), an agency need not release "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."[6] 5 U.S.C. § 552(b)(7)(C). In applying Exemption 7(C), a court first determines if there is a privacy interest in the information to be disclosed, *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), and then balances the individual's privacy interest against the public interest, considering only the public interest "that focuses on 'the citizens' right to be informed about what their government is up to,'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 773 (1989)). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public interest must be significant. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

First, the BOP withheld the names of the two individuals subject to the SAMs, and the names of the pretrial inmate's co-defendants and third-party individuals from the 2010 SAMs memorandum. 4th Christenson Decl. ¶¶ 13, 22. The individuals have a privacy interest in not being known to be the subject of SAMs, or to be associated with the SAMs. This Court has previously held that the DOJ properly applied Exemption 7(C) to withhold the names of the

---

[6] Exemption 7(C) is similar to Exemption 6, as both protect private information, but "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions."). Given the broad interpretation of Exemption 6, *see Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015), Exemption 7(C) calls for a less demanding showing of privacy interest. *Id.* at 1146 n.5.

individuals subject to the SAMs, *Pinson*, 2016 WL 4074130, at *7, ECF No. 306, and

reaffirms that conclusion here.

As to the withholding of the names of the co-defendants and other individuals, "the D.C.

Circuit has held that the names of private individuals appearing in files within the ambit of

Exemption 7(C) are categorically exempt from disclosure unless disclosing such information is

necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal

activity." *See Pinson*, 2016 WL 4074130, at *7, ECF No. 306 (quoting *SafeCard Servs., Inc. v.*

*SEC*, 926 F.2d 1197, 1206 (D.D.C. 1991)). Because Pinson does not allege illegal activity by the

BOP, much less present compelling evidence of the same, the names of the co-defendants and

third-parties are categorically exempt from disclosure. *See Reporters Committee*, 489 U.S. at

774–75 ("[I]n none of our cases construing the FOIA have we found it appropriate to order a

Government agency to honor a FOIA request for information about a particular private citizen.");

*SafeCard*, 926 F.2d at 1206 (holding that names of "private individuals appearing in files within

the ambit of Exemption 7(C)" are categorically exempt from disclosure unless disclosing such

information "is necessary in order to confirm or refute compelling evidence that the agency is

engaged in illegal activity"); *Pinson*, 2016 WL 4074130, at *7 (holding that the names of third-

party individuals within memoranda were categorically exempt from disclosure absent

compelling evidence of illegal activity by the BOP).

Pinson argues both that the privacy right of the individuals is lower because these

particular individuals are "murderers and terrorists" subject to "public prosecution" and that

"[t]he public has an enormous interest in all information concerning individuals engaged in

conspiracies to murder our citizens." Pl.'s Resp. at 1–2, ECF No. 328. However, as this Court

has previously noted, "individuals are not precluded from retaining a privacy interest merely on

the basis of their public prosecutions." *Pinson*, 2016 WL 4074130, at *5, ECF No. 306. The

D.C. Circuit has likewise concluded that, although "the disclosure of convictions and public

pleas is at the lower end of the privacy spectrum[,] . . . [t]his is not to say that a convicted

defendant has *no* privacy interest in the facts of his conviction." *ACLU*, 655 F.3d at 7; *see also*

*Harrison v. Exec. Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 148 (D.D.C. 2005) ("The fact

that there might have been prior disclosure of personal information does not eliminate the

privacy interest in avoiding further disclosure by the government."). Inclusion of an individual's

name in the SAMs memoranda would trigger greater concerns than revealing the name of a

convicted individual, because association with the SAMs can be embarrassing and stigmatizing

and the context would identify the person as not only having been convicted (or held pretrial),

but also thought to be so dangerous that he or she required special security measures that are

applied to an extremely small portion of the prison population. *See id.* Furthermore, the public

interest that Pinson articulates is vague and bears little connection to shedding light on what the

*government* is up to. The information withheld concerns the individuals whom Pinson asserts are

engaged in conspiracies, not the BOP. The Court therefore concludes, in keeping with the D.C.

Circuit's categorical rule, that Exemption 7(C) was properly applied to withhold the names of the

subjects of the SAMs memoranda and other individuals.

The DOJ also invoked Exemption 7(C) to withhold (1) from the 2010 SAMs

memorandum[7] concerning a pretrial inmate, "information regarding the pretrial proceedings,"

---

[7] The BOP also applied Exemption 7(C) to justify withholding the same description of underlying offense conduct and investigation withheld under Exemption 7(E). *See* Defs.' Suppl. MSJ at 9, ECF No. 318 ("The BOP . . . applied Exemption 7(E) to withhold a subset of the information withheld under Exemptions 6 and 7(C), *i.e.*, the detailed description of the underlying offense conduct related to the terrorism charges . . ."). Because the Court concludes that this information was properly withheld under Exemption 7(E), *supra*, it does not consider whether Exemption 7(C) would also apply.

"where the pretrial inmate and his co-defendants were housed," and their correctional

management, 4th Christenson Decl. ¶¶ 13, 22; (2) from the 2009 SAMs memorandum

concerning a convicted inmate, details about the criminal case including "the procedural history

of the case, offense conduct, [the individual's] sentence, . . . charges on which the inmate was

acquitted," and "where the sentenced inmate was housed and observations about him," 4th

Christenson Decl. ¶ 21; and (3) from both SAMs memoranda, the identity of the prosecuting

U.S. Attorney's Office, 4th Christenson Decl. ¶ 15. *See* Defs.' Suppl. MSJ at 4–6, 8.

Given that the individual's names are withheld, other information relating to those

individuals implicates a privacy interest to the extent that it could be used to identify the

individuals.[8] If more information is released, it is more likely that a particular inmate could be

identified as the subject of the SAMs. As discussed previously, even convicted persons[9] still

retain a privacy interest under FOIA. The DOJ has thus established that the withheld information

implicates privacy interests of the inmates subject to the SAMs, their co-defendants, and third-

party individuals. As the DOJ notes, the withheld material is "sufficiently distinctive" to identify

individuals because only a small number of inmates are subject to SAMS and most are notorious.

*See* 4th Christenson Decl. ¶ 23. In fact, when assessing the portions of the SAMs memoranda

subject to withholding, the DOJ "conducted an internet search using the details of the pretrial

---

[8] It is well established that the privacy interests protected by Exemptions 6 and 7(C) apply broadly to information beyond a person's name. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) (discussing Exemption 6). *See also N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1992) (approving an agency's withholding of a tape recording under Exemption 6, reasoning that "disclosure . . . would reveal the sound and inflection of the crew's voices," and thus "contain[ed] personal information"). All information that "applies to a particular individual" falls within the ambit of Exemption 6, *Wash. Post Co.*, 456 U.S. at 602, and thus, within Exemption 7(C), *see Samuels*, 787 F.3d at 1146 n.5.

[9] The 2010 SAMs memorandum dealt with a pretrial inmate, and thus the individual had not been convicted at the time the record was created.

inmate's criminal activity . . . [and] [t]he first result from the search identified the pretrial inmate and his codefendants." 4th Christenson Decl. ¶ 23.

Pinson's only articulated public interest, again, involves the general right of the public to know information about "Murderers and Terrorists." Pl.'s Resp. at 2. This vague explanation, which does not in any way implicate the government's actions or what the government is up to, does not meet the burden of showing a substantial public interest in the withheld information. Furthermore, "there is a vast difference between public records that might be found after a diligent search of courthouse files, county archives, and local police stations . . . and a computerized summary" of that information. *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989). If, in fact, the information Pinson seeks is freely available to the public as she implies,[10] "there would be no reason to invoke the FOIA to obtain access to the information." *Id.*

The Court thus proceeds to balance the private interest in privacy and the public interest in disclosure. Upon consideration of Pinson's articulated public interest and its own independent evaluation, the Court concludes that the public interest in the disclosure here is likely very small. The disclosed portions of the SAMs memoranda reveal considerable information about the operation of the SAMs program. The incremental value of revealing the identity of the affected individuals—either directly or indirectly through identifiable information—would provide only a small benefit to the public interest. *Cf. Davis*, 968 F.2d at 1282 (holding that "even if a particular privacy interest is minor, nondisclosure remains justified where . . . the public interest in

---

[10] Nor does Pinson meet the stringent requirements of showing that there has been a prior disclosure, because Pinson has not "point[ed] to specific information in the public domain that appears to duplicate that being withheld." *Black v. U.S. Dep't of Justice*, 69 F. Supp. 3d 26, 35 (D.D.C. 2014) (quoting *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

disclosure is virtually nonexistent"). This conclusion is buttressed by reference to the text of Pinson's FOIA request, which sought "any correspondence or electronic messages generated after January 21, 2009 by the Attorney General, or staff within the Attorney General's office, addressed to or intended for the Director of the Federal Bureau of Prisons." Brinkmann Decl. ¶ 4, ECF No. 131-1. This request appears to seek information on the types of communications which occurred between the Attorney General and the Director, not on the particular types of inmates subject to SAMs or, indeed, the SAMs process at all. Revealing most of the SAMs memoranda, with redactions, meets this public interest in the communications. The Court thus finds that the privacy interest implicated in the withheld information outweighs any public interest in knowing what the government is up to. This result is in accord with this Court's previous decision concerning another of Pinson's FOIA requests that information about the correctional management of inmates is properly withheld under Exemption 7(C). Mem. Op. at 39–42, *Pinson v. Dep't of Justice*, No. 12-1872, 2017 WL 663523, at *17–18 (D.D.C. Feb. 17, 2017), ECF No. 357; *see also Human Rights Watch v. Dep't of Justice Fed. Bureau of Prisons*, No. 13-7360, 2015 WL 5459713, at *10 (S.D.N.Y. Sept. 16, 2015), (approving several of the BOP's redactions from SAMs memoranda because "'the incremental value of the specific information being withheld.' . . . [was] of little value to the public. And other redacted information . . . would make identification of the inmate in the SAM memo substantially more likely by revealing information specific to the inmate. . . . 'Although under this rationale the public interest might be served, the speculative nature of the result is insufficient to outweigh the [inmates'] privacy interest in nondisclosure.'" (first quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003), then quoting *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 290 (2d Cir. 2009)),

*reconsidered in other part*, 2016 WL 3541549 (S.D.N.Y. June 23, 2016).[11] The Court thus grants the BOP summary judgment as to its use of Exemption 7(C).

## B.  Segregability

FOIA requires that any reasonably segregable portion of a record shall be released, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed. *Id.*

Although Pinson mentions segregability in her reply, Pl.'s Resp. at 2, her arguments appear addressed toward the applicability of each exemption. The DOJ has provided Pinson with a comprehensive declaration,[12] describing each withholding and the exemption justifying that withholding. *See generally* 4th Christenson Decl. Ms. Christenson attests to having personally

---

[11] Although the court in *Human Rights Watch* found that it was appropriate to release the identity of the particular U.S. Attorney's Office involved in each SAMs memorandum, it did so on a record in which the requester had "described a specific public interest in identifying patterns in the way SAMs are requested by certain U.S. Attorneys' Offices." *Human Rights Watch*, No. 13-7360, 2015 WL 5459713, at *11. Here, Pinson does not describe any public interest in disclosing the particular U.S. Attorney's Office—nor does the subject of Pinson's initial request suggest any such interest. Pinson has thus not met the requester's burden to articulate the public interest in disclosure. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) ("Exemption 7(C) . . . requires the person requesting the information to establish . . . . that the public interest sought to be advanced is a significant one, . . . [and] the information is likely to advance that interest.").

[12] The DOJ did not prepare a *Vaughn* Index. 4th Christenson Decl. ¶ 8.

reviewed the official files and released all non-exempt information that could be segregated. 4th

Christenson Decl. ¶ 3, 5. The detailed declaration of Ms. Christenson is sufficient to fulfill the

agency's obligation to show with "reasonable specificity" why a document cannot be further

segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).

Moreover, a review of the redacted documents clearly shows that the majority of the information

in the SAMs memoranda was disclosed and only limited redactions were made. *See*

Memorandum for Harley G. Lappin (Aug. 12, 2009) (the 2009 SAMs memorandum, as

released), ECF No. 318-2, Ex. B; Memorandum for Harley G. Lappin (Apr. 1, 2010) (the 2010

SAMs memorandum, as released), ECF No. 318-2, Ex. C. The Court thus finds that the DOJ has

met its burden of releasing all reasonably segregable portions.

## IV. CONCLUSION

For the foregoing reasons, the DOJ's motion for summary judgment is **GRANTED**. An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: March 22, 2017                                      RUDOLPH CONTRERAS
                                                          United States District Judge