# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JEREMY PINSON | : | |
| | : | |
|     Plaintiff, | : | |
| | : | Civil Action No.:    12-1872 (RC) |
|     v. | : | |
| | : | Re Document No.:    300 |
| UNITED STATES DEPARTMENT | : | |
| OF JUSTICE, *et al.*, | : | |
| | : | |
|     Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff Jeremy Pinson, a federal inmate proceeding *pro se*, filed multiple Freedom of Information Act ("FOIA") requests seeking records from various components of the U.S. Department of Justice ("DOJ"). In addition to releasing a number of records, the DOJ asked Pinson to clarify some of her[1] records requests, told her that it could not find records responsive to some of her requests, and informed her that some of the records she sought were exempt from disclosure by law. Pinson filed a complaint challenging some of these determinations and alleging that the DOJ improperly withheld records.

In a prior opinion the Court granted in part and denied in part the DOJ's first request for summary judgment as to the claims against the Federal Bureau of Investigation ("FBI"). *See* Defs.'

---

[1] Pinson identifies using feminine pronouns. The government and the Court follow suit. *See* Defs.' Mot. Dismiss or, Alt., Renewed Mot. Summ. J. at 2 n.1, ECF No. 287. The Court's use of feminine pronouns is not intended to reflect any substantive or legal characterization.

Mot. Partial Summ. J., ECF No. 137; Memorandum Opinion ("Mem. Op."), ECF No. 276; *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56 (D.D.C. 2016).

Now before the Court is the DOJ's second motion for summary judgment as to the remaining twelve FOIA requests.[2] *See* Defs.' 2d Mot. Partial Summ. J. Respect FBI ("Defs.' Mot. Partial Summ. J."), ECF No. 300. The DOJ argues that the FBI conducted an adequate search and made proper withholdings pursuant to FOIA exemptions for each of Pinson's requests. *See* Defs.' Mem. P. & A., ECF No. 300-2. For the reasons set forth below, the Court grants in part and denies in part the DOJ's second motion for summary judgment as to the FBI.

## I.  FACTUAL BACKGROUND

### A.  FOIA Requests 1199153, 1217900, and 1217901

In her response to the DOJ's most recent motion for summary judgment, Pinson stipulated that summary judgment in favor of the DOJ was appropriate as to FOIA Requests

---

[2] For clarity, the Court summarizes the progress of the FOIA requests Pinson submitted to the FBI. The Court's first opinion with regard to the FBI dealt with twenty-three numbered and twelve unnumbered FOIA requests. *See generally* Memorandum Opinion ("Mem. Op."), ECF No. 276; Order, ECF No. 275. In that previous opinion, the Court entered judgment for the FBI on sixteen of the numbered requests, specifically, Request Nos. 1153107, 1171229, 1186051, 1192365, 1194851, 1199078, 1202477, 1210450, 1210449, 1203873, 1217894, 1217895, 1217896, 1217897, 1217898, and 1217899. *See generally* Order, ECF No. 275; Memorandum Opinion ("Mem. Op."), ECF No. 276. Additionally, the Court entered judgment for the FBI on seven of the unnumbered requests: (1) "Records on Jamil Al-Amin," (2) "All Criminal Matter Referrals from USP Victorville," (3) "All Criminal Matter Referrals from ADX Florence," (4) "All Criminal Matter Referrals from USP Lewisburg," (5) "All Criminal Matter Referrals from FCI Talladega," (6) "Letters to Wardens of FCI Talladega," and (7) "Documents Related to Lavallee Prosecution." *See generally* Order, ECF No. 275; Memorandum Opinion, ECF No. 276.

The remaining seven numbered and five unnumbered requests—Nos. 1178465, 1199153, 1199194, 1199202, 1217900, 1217901, 1229060, records related to investigations in 2007–08 of assaults at USP Florence or Victorville, records related into investigations of the California Aryan Brotherhood and Mexican Mafia, FD-302s of USP Victorville Homicide Investigations, the addresses of all FBI offices, and letters to various BOP wardens—are the subject of this opinion.

1199153, 1217900, and 1217901. Pl.'s Resp. Opp'n FBI Mot. Summ. J ("Pl.'s Opp'n") at 1, ECF

No. 313. The Court therefore grants the DOJ summary judgment with respect to its responses to

FOIA Requests Nos. 1199153, 1217900, and 1217901.

### B.  Request No. 1178465

On November 21, 2011, Pinson submitted a request to the FBI for records "produced as a

result of the visit by [two] FBI Agents on Nov. 1, 2011 to the U.S. Penitentiary Max in Florence,

Colorado who spoke to me and took notes of my answers to their questions." 2d Hardy Decl. Ex.

D, ECF No. 137-3. The FBI acknowledged the request and assigned the request number

1178465. 2d Hardy Decl. ¶ 11 & Ex. E. The FBI released three pages with redactions pursuant to

the Privacy Act Exemption (j)(2) and FOIA Exemptions 6 and 7(C). 2d Hardy Decl. ¶ 12 & Ex.

F.

The Court previously denied the DOJ summary judgment on this document because the

DOJ could not establish that Pinson had received the FBI's response. *See* Mem. Op. at 30–31.

Pursuant to the Court's order, the DOJ re-sent the original release letter to Pinson on April 29,

2016. Order, ECF No. 275 at 2; 3d Hardy Decl. ¶ 5 & Ex. B, ECF No. 302. The DOJ now moves

for summary judgment on the grounds that its search was adequate and that it produced to Pinson

all responsive records after properly withholding some records under FOIA Exemption 7(C).[3] *See*

Defs.' Mot. Partial Summ. J. at 2.

### C.  Request No. 1199194

In August 2012, Pinson submitted a request to the FBI for records "regarding

investigations of the California Aryan Brotherhood." *See* 2d Hardy Decl. Ex. Q; Corr. 2d Am.

---

[3] The DOJ also claimed additional, redundant exemptions, but as the Court finds that all
of the material which was properly withheld was exempt from disclosure under Exemption 7(C)
it does not address these exemptions.

Compl. at 6, ECF No. 32. As with other requests, she requested "no more than two hours search time and 100 pages of information in this request." 2d Hardy Decl. ¶ 28. The FBI acknowledged receipt of the request and assigned the request number 1199194. 2d Hardy Decl. ¶ 29 & Ex. R. The FBI then informed Pinson that the information requested on the California Aryan Brotherhood could be accessed free of charge online at the FBI's Vault.[4] 2d Hardy Decl. ¶ 30 & Ex. S.

        The Court previously denied summary judgment because the DOJ could not establish that Pinson had received a response from the FBI concerning this request. *See* Mem. Op. at 30–31. The Court's previous opinion did not contemplate that the FBI had attempted to transmit any records to Pinson.

        The DOJ sent Pinson two letters referring to Request No. 1199194 subsequent to the Court's prior opinion. 3d Hardy Decl. Ex. B & C. The DOJ's most recent declaration states first that "[t]he responsive records pertaining to the California Aryan Brotherhood are located on the FBI's Online Webpage, the Vault." 3d Hardy Decl. ¶ 7. The declaration continues: "[t]he FBI re-reviewed the publically available documents and determined that additional segregable information could be released; therefore, it reprocessed the records and released it to plaintiff on July 22, 2016." 3d Hardy Decl. ¶ 7. The DOJ now moves for summary judgment on the grounds that its search was adequate and that it produced to Pinson all responsive records after properly

---

[4] This appears to be a reference to the file "Aryan Brotherhood," discussing an investigation that began in the California prison system, available at https://vault.fbi.gov/ Aryan%20Brotherhood%20.

withholding some records pursuant to FOIA Exemptions 3 and 7(C).[5] *See* Defs.' Mot. Partial

Summ. J. at 2.

### D.  Request No. 1199202

In August 2012, Pinson submitted a request to the FBI for records "regarding

investigations of the California Mexican Mafia," to which the FBI assigned the request number

1199202. *See* 2d Hardy Decl. ¶¶ 24, 25 & Exs. N, O; Corr. 2d Am. Compl. at 6. As with other

requests, she requested "no more than two hours search time and 100 pages of information in this

request." 2d Hardy Decl. ¶ 24. By two separate letters dated September 27, 2012, the FBI both

acknowledged receipt of the request and advised Pinson that the information requested on the

California Mexican Mafia could be accessed free of charge online at the FBI's Vault, the FBI's

electronic reading room. 2d Hardy Decl. ¶¶ 25, 26 & Exs. O, P.

The Court previously denied summary judgment because the DOJ could not establish that

Pinson had received a response from the FBI on this request. *See* Mem. Op. at 30–31. Pursuant

to the Court's order, the DOJ re-sent the correspondence related to this request to Pinson on

April 29, 2016. Order at 2; 3d Hardy Decl. ¶ 8 & Ex. B. The DOJ now moves for summary

judgment on the grounds that its search was adequate. *See* Defs.' Mot. Partial Summ. J. at 2.

### E.  Request No. 1229060

On September 11, 2013, Pinson submitted a request to the FBI for records "related to a

9/10/13 FBI interview of [Pinson] at ADX Florence." 2d Hardy Decl. ¶ 124 & Ex. ZZZZ. After

acknowledging receipt of the request and assigning the request number 1229060, the FBI

released two pages to Pinson and withheld information pursuant to Privacy Act Exemption (j)(2)

---

[5] The DOJ also claimed additional, redundant exemptions, but as the Court finds that all of the material which was properly withheld was exempt from disclosure under either Exemption 3 or Exemption 7 it does not address these exemptions.

and FOIA Exemptions 6, 7(A), 7(C), 7(D), and 7(F). 2d Hardy Decl. ¶¶ 125, 126 & Exs. AAAAA, BBBBB.

The Court previously denied summary judgment because the DOJ could not establish that Pinson had received a response from the FBI concerning this request. Mem. Op. at 30 n.16. Pursuant to the Court's order, the DOJ re-sent the original release letter to Pinson on April 29, 2016. Order, ECF No. 275 at 2; 3d Hardy Decl. ¶ 11 & Ex. B. The DOJ now moves for summary judgment on the grounds that its search was adequate and that it produced to Pinson all responsive records after properly withholding some records under FOIA Exemptions 6 and 7. *See* Defs.' Mot. Partial Summ. J. at 2.

### F.  Request for Documents Relating to the Californian Mexican Mafia and Aryan Brotherhood; FD-302s of USP Victorville; and Letters to Various Wardens

In response to three of Pinson's requests, the FBI concluded that the requests were not specific enough to permit it to search its records. The affected requests were (1) Pinson's request for all documents "concerning the activities of the California Mexican Mafia and Aryan brotherhood gangs within federal prisons generated since 2007," 2d Hardy Decl. ¶ 150 & Ex. KKKKK,[6] (2) Pinson's request for "all information, specifically Form-302[s], produced during investigation of inmate homicides at the U.S. Penitentiary in Victorville, California between 2004 and 2012," 2d Hardy Decl. ¶129 & Ex. CCCCC; Corr. 2d Am. Compl. at 7; and (3) Pinson's request for "production of all letters written by [the FBI] in California, Colorado to the Wardens of Federal Correctional Complex or institutions in Florence, CO or/and Victorville, CA [and/or Coleman] for any reason from 2008 to the present," 2d Hardy Decl. ¶ 147 & Ex. IIIII.

---

[6] At various points, the DOJ has mis-labeled Pinson's request as pertaining to all documents concerning these gangs "since 2005." *See, e.g.*, 2d Hardy Decl. ¶ 150. The discrepancy has no effect on the Court's analysis.

The FBI asserted that none of these requests were formulated with sufficient detail to permit a search of its records. 2d Hardy Decl. ¶¶ 150–51; 2d Hardy Decl. ¶¶ 130–31 & Ex. LLLLL; 2d Hardy Decl. ¶ 148 & Ex. JJJJJ. The DOJ was previously denied summary judgment as to each of these three requests because it could not establish that Pinson had received any of the three responses from the FBI. *See* Mem. Op. at 31–32. In accordance with the Court's order, the DOJ re-sent the original correspondence related to these requests to Pinson on April 29, 2016. *See* 3d Hardy Decl. ¶¶ 12, 13, 14 & Exs. B, D. These letters each stated that the requests did "not contain enough descriptive information to permit a search," and asked Pinson to "please provide us with more specific information." *See* 3d Hardy Decl. Exs. B, D; 2d Hardy Decl. Exs. JJJJJ, LLLLL. Pinson acknowledges receiving the letters relating to the homicide investigations and letters to wardens, but contends that they did not ask her to clarify her request. *See* Pinson Decl. ¶ 12, ECF No. 313. The DOJ now again moves for summary judgment on all three requests on the grounds that its search was adequate. *See* Defs.' Mot. Partial Summ. J. at 2.

### G.  Request for Documents Relating to Assaults

On May 13, 2011, Pinson submitted a request to the FBI seeking information pertaining to "Inmate on Inmate assaults referred for investigation by Bureau of Prisons during 2007–2008 at the U.S. Penitentiary Florence, Colo. or Victorville, CA." 2d Hardy Decl. ¶ 158 & Ex. RRRRR. The FBI referred this request to the Bureau of Prisons in May of 2011. 3d Hardy Decl. ¶ 16. The DOJ was previously denied summary judgment by the Court as to this request because the Court had insufficient information to assess whether the referral was properly conducted and whether the outcome of the referral was proper. *See* Mem. Op. at 20–21. Pursuant to the Court's Order, the FBI contacted the BOP inquiring about the status of the referral. 3d Hardy Decl. ¶ 16. The BOP advised the FBI that it assigned the referral "Information Request Number 2011-

07767," that it had completed processing of this request, and notified Pinson on March 14, 2012. 3d Hardy Decl. Ex. E. The BOP re-sent this letter to Pinson on July 25, 2016. Mem. P & A at 8–9. Pinson does not claim she never received the letter, nor is there any indication she has appealed the release. The DOJ now again moves for summary judgment. *See* Def.'s Mot. Partial Summ. J. at 2.

### H.  Request for Addresses of FBI Offices

On May 6, 2011, Pinson submitted a request seeking an "[a]ddress directory to all agency departments or field offices." 2d Hardy Decl. ¶ 153 & Ex. MMMMM. The FBI responded stating that her request did not contain enough information to conduct a search. 2d Hardy Decl. ¶ 154 & Ex. NNNNN. Pinson subsequently filed an appeal, on June 8, 2011, to which the Office of Information Policy ("OIP") assigned number AP-2011-02269. 2d Hardy Decl. ¶¶ 155–56 & Exs. OOOOO, PPPPP. In its response on September 26, 2011, the OIP affirmed in part the FBI's actions, and also provided Pinson with a nine-page document, printed from the FBI's website, containing the contact information for all FBI field offices by state. 2d Hardy Decl. ¶ 157 & Ex. QQQQQ.

The DOJ was previously denied summary judgment by the Court because it could not establish that Pinson had received a response from the FBI concerning this request. *See* Mem. Op. at 33–34. Pursuant to the Court's order, the DOJ re-sent the original correspondence related to this request to Pinson on April 29, 2016. *See* Order at 2; 3d Hardy Decl. ¶ 15 & Ex. B. The DOJ now again moves for summary judgment on the grounds that its search was adequate. *See* Defs.' Mot. Partial Summ. J. at 2.

## II.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the nonmovant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must avoid "making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. §

552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C.

2009). To prevail on a motion for summary judgment, "the defending agency must prove that

each document that falls within the class requested either has been produced, is unidentifiable or

is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*,

627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable

Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). To meet its burden, a defendant

may rely on declarations that are reasonably detailed and non-conclusory. *See Citizens for Ethics

& Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("[T]he

Court may award summary judgment solely on the basis of information provided by the

department or agency in declarations when the declarations describe 'the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v.

Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). "Ultimately, an agency's justification for invoking

a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370,

374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). A

reviewing court should generally "respect the expertise of an agency" and not "overstep the

proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,

608 F.2d 1381, 1388 (D.C. Cir. 1979).

Even if the nonmovant does not respond to the motion for summary judgment, the court

cannot grant the motion for the reason that it was conceded. *See Winston & Strawn, LLP v.

McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a

motion for summary judgment cannot be 'conceded' for want of opposition."). "The burden is

always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden. The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* (internal quotation marks omitted) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3)).

## III.  ANALYSIS

The DOJ contends that all its remaining searches related to the FBI are either complete or unfeasible because Pinson's requests were too vague. The DOJ further contends that its claimed exemptions are justified, as supported by its declarations by David Hardy, the Section Chief of the FBI's Record/Information Dissemination Section. Finally, the DOJ argues that it has produced all reasonably segregable material when portions of documents could be released but other portions were justifiably withheld.

Most of Pinson's opposition to the DOJ's motion concern the adequacy of its search. She specifically argues that several searches did not uncover documents that she anticipated, that her requests were definite enough to support a search, and that certain redactions made documents difficult to identify. Although the Court finds that Pinson's arguments relating to desired documents and redactions are inapplicable and that many of the searches were acceptable, it cannot say that two of her requests are too vague to allow for a search, and lacks sufficient information about another to grant summary judgment. And, a lack of details surrounding an FBI "referral" to the BOP leaves the Court unable to determine whether the DOJ's search was adequate.

Pinson may also take issue with some of the DOJ's claimed exemptions, but her filings do not make such objections clear. The Court nonetheless analyzes them and concludes that all of the DOJ's claimed exemptions are justified with the exception of one. With regard to that exception, the Court is unable to ascertain what evidence the DOJ relies upon. The Court also finds that the FBI released all reasonably segregable materials in what it has released so far. Accordingly, the Court grants the DOJ's motion in part and denies it in part.

## A. Adequacy of The FBI's Search

The DOJ asserts that its searches in response to all nine of the contested requests were adequate.[7] *See* Defs.' Mot. Partial Summ. J. at 1–2. For each of these contested requests, the Court will independently consider whether the record and undisputed facts justify granting summary judgment as to the adequacy of the agency's search even where Pinson does not specifically contest that adequacy. The Court agrees that the searches conducted with respect to most of these requests were adequate, but lacks sufficient information to determine the adequacy of the searches with respect to Request No. 1199202, records relating to the investigations of assaults, and certain requests the DOJ claims were too vague to permit searches.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation mark omitted) (quoting *Weisberg*, 705 F.2d at 1351). The agency need not search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993

---

[7] After Pinson stipulated to the propriety of the DOJ's response to three requests, the remaining nine contested requests are Request Nos. 1178465, 1199194, 1199202, and 1229060, as well as the unnumbered request pertaining to investigations of assaults in 2007–08, investigations of the Aryan Brotherhood and Mexican Mafia, FD-302s of USP Victorville homicide investigations, the addresses of all FBI offices, and letters to various wardens.

F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg*, 627 F.2d at 370. On the other hand, once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116.

> 1.  The DOJ Adequately Searched in Response to Request Nos. 1178465, 1199194, and 1229060, but not Request No. 1199202

Pinson disputes the adequacy of the search with respect to a number of her FOIA requests. First, Pinson contests the adequacy of the search as to Request No. 1178465, contending that the FBI did not release certain handwritten notes that she specifically requested. Pinson Decl. ¶ 3. Next, she states that she did not receive any response to Request No. 1199202. *See* Pinson Decl. ¶ 6. Additionally, she argues that although she did receive documents with respect to Request No. 1199194, those documents were old and did not deal with more recent prosecutions, which she contends was the object of her request. *See* Pinson Decl. ¶ 5. For the reasons set forth below, the Court agrees with the DOJ that its searches in response to Request

Nos. 1178465, 1199194, and 1229060[8] were adequate, but disagrees with the DOJ with respect to Request No. 1199202.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents." *Defs. of Wildlife*, 623 F. Supp. 2d at 91 (quoting *Valencia-Lucena v*, 180 F.3d at 325). In general, courts give considerable deference to agency affidavits supporting their searches. *See Hidalgo v. FBI*, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010) ("[S]ubstantial weight [is] traditionally accorded [to] agency affidavits in FOIA 'adequacy of search' cases." (citing *Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009))). Agency affiants are also entitled to a rebuttable presumption of good faith. *See id.* With respect to the results of a search, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (alteration and internal quotation marks omitted) (quoting *Iturralde*, 315 F.3d at 315). Finally, an agency need not conduct a search when the documents are already public because doing so "provide[s] an alternative form of access, . . . satisf[ying] [the] requirement under FOIA to make records available to the public." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 19 (D.D.C. 2013). However, this does not relieve the agency of the requirement that it show an adequate search responsive to the request was conducted at some point. *See Scudder v. CIA*, 25 F. Supp. 3d 19, 49 (D.D.C. 2014).

The DOJ provided a declaration from the FBI showing adequate searches for Request Nos. 1178465, 1199194, and 1229060, but not for No. 1199202. *See generally* 3d Hardy Decl.

---

[8] Pinson admits that she received the materials from Request No. 1229060 and apparently does not take issue with the search process itself, contesting only the "withheld material." Pinson Decl. ¶ 8.

With respect to the actual searches that the FBI conducted in response to these requests—

Requests No. 1178465 and 1229060—the DOJ's declaration describes each request in detail,

explains to whom the request was sent, and specifies the databases searched. Specifically, the

FBI searched the indices to its Central Records System ("CRS"), which holds almost all FBI

records, for responsive materials. *See* 2d Hardy Decl. ¶¶ 11, 29, 125; *Records of the Federal*

*Bureau of Investigation*, National Archives, https://www.archives.gov/research/

investigations/fbi/central-records.html (last accessed 3/22/2017); *see also Jett v. Fed. Bureau of*

*Investigation*, 139 F. Supp. 3d 352, 365 (D.D.C. 2015), *reconsideration denied*, No. 14-CV-

00276 (APM), 2016 WL 107912 (D.D.C. Jan. 8, 2016). The FBI uses the CRS "to conduct

searches that are likely to yield documents responsive to FOIA and Privacy Act requests." 2d

Hardy Decl. ¶ 160. The FBI accesses the CRS through the CRS's indices. 2d Hardy Decl. ¶ 160–

62. Here, the FBI searched the CRS's indices for responsive materials. 2d Hardy Decl. ¶ 125

(with respect to Request No. 1229060, the FBI "search[ed] the indices to its CRS") & Ex.

AAAAA, BBBBB; 2d Hardy Decl. ¶ 11 & Ex. E (same with respect to Request No. 1178465).

This finding is in accord with another court in this district, which found a similar search of the

CRS reasonable under comparable circumstances—in a case in which Mr. Hardy served as the

defendants' affiant, in fact. *See Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7, 23 (D.D.C.

2014). Pinson does not dispute the reasonableness of using the CRS indices or the good faith

nature of the searches. However, she does assert that certain inadequacies existed in the searches

made in response to Requests No. 1178465, 1199202, and 1199194. *See generally* Pl.'s Opp'n.

The Court will address these contentions in turn.

The Court previously denied summary judgment for the DOJ on Request No. 1178465

because Pinson made a sworn declaration that she did not receive the documents, and the

documents themselves were not in the record. *Pinson*, 177 F. Supp. 3d at 77–78. Since then, the

FBI has re-sent the documents to Pinson. *See* 3d Hardy Decl. ¶ 5. Pinson does not dispute that

she received the documents. Rather, she contends that they were too redacted to be useful and

that they did not include a handwritten document that she requested. Pinson Decl. ¶ 3. Neither of

these arguments affect the adequacy of the FBI's search process. The redactions pertain to

exemptions, and are thus examined *infra*. The fact that a particular document was not produced

is irrelevant under *Ancient Coin Collectors Guild*, particularly in the absence of any evidence

suggesting that the search itself was inadequate or that bad faith was afoot. 641 F.3d at 514; *see*

*also Kay v. FCC*, 976 F. Supp. 23, 33 (D.D.C. 1997) (citing *SafeCard Servs., Inc. v. SEC*, 926

F.2d 1197, 1201 (D.C. Cir. 1991)) ("[I]f the agency does not possess the documents at the time

of the FOIA request, even though the documents may have existed at some earlier point in time,

the agency is not improperly withholding them."), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998).

As for Request No. 1199202, the FBI pointed Pinson towards records freely available on

its online portal instead of conducting a specific search. 2d Hardy Decl. ¶¶ 24–27 & Ex. P; 3d

Hardy Decl. ¶ 8 & Ex. B. Pinson claims that she did not receive a response to her request. Pinson

Decl. ¶ 6. She has not challenged the FBI's referral to the online portal or articulated any barriers

to her accessing the portal. Nonetheless, the FBI has not fulfilled its burden of showing that it

conducted a search reasonably calculated to locate responsive documents. Although directing a

requester to a public set of documents that would otherwise be responsive to the request is

acceptable under FOIA, *see Shurtleff*, 991 F. Supp. 2d at 19, the FBI has done nothing more than

assert, in conclusory terms, that the documents available on its vault are responsive. *See* 2d

Hardy Decl. ¶¶ 24–27. The FBI never explains whether there are other responsive documents not

on the vault, how those documents were chosen, or whether the vault was up-to-date at the time

of Pinson's request. *See* 2d Hardy Decl. ¶¶ 24–27 & Ex. P; 3d Hardy Decl. ¶ 8 & Ex. B. There

are also fewer than 100 pages of responsive material available online, the limit that Pinson set for

the search. *See* FBI Records: The Vault, *Freedom of Information and Privacy Acts*: *Mexican*

*Mafia*, https://vault.fbi.gov/Mexican%20Mafia (last accessed March 27, 2017). Accordingly, the

DOJ has not shown that it conducted a search reasonably calculated to uncover all relevant

documents. *Defs. of Wildlife*, 623 F. Supp. 2d at 91. The Court thus denies summary judgment

with respect to the search process in response to Request No. 1199202.

The DOJ also pointed Pinson toward public records for Request No. 1199194. *See* 2d

Hardy Decl. ¶¶ 28–31 & Ex. R; 3d Hardy Decl. ¶ 7. However, with respect to this request, the

FBI met its burden. After the Court's previous order, the FBI re-mailed correspondence related

to this request to Pinson, once again informing her that the requested documents could be

accessed for free on the FBI's public website. Going even further, the FBI also re-reviewed the

already publicly-available documents and determined that it could release further reasonably

segregable material that was previously redacted. 3d Hardy Decl. ¶ 7. Pinson's argument that the

documents she received did not pertain to more recent investigations, *see* Pinson Decl. ¶ 5, is

incongruent with the language of her request. Pinson requested a maximum of 100 pages of

responsive materials. 2d Hardy Decl. ¶ 28. The documents available via the FBI's vault total

over 150 pages. *See* FBI Records: The Vault, *Freedom of Information and Privacy Acts*: *Aryan*

*Brotherhood*, https://vault.fbi.gov/Aryan%20Brotherhood%20/Aryan%20Brotherhood%20Part%

201%20of%201/view (last accessed March 27, 2017). Unlike with request No. 1199202, it is

irrelevant that more documents may exist. If Pinson wanted more pages than her initial request or

pages on a different subject matter, she should have submitted a separate request.

The Court thus concludes that adequate searches were conducted with respect to Requests No. 1178465, 1199194, and 1229060, but that the DOJ has not met its burden of showing that it conducted a search reasonably calculated to uncover all responsive material with respect to Request No. 1199202.

### 2.  The FBI's Referral of the Assaults Request to the BOP does not Warrant Summary Judgment

The DOJ moves for summary judgment on Pinson's request for information about certain assault investigations on the grounds that the FBI referred the request to the BOP, and that BOP completed the processing and notified Pinson that it was going to release certain pages and withhold others under Exemptions 7(C), 7(E), and 7(F). *See* Defs.' Mot. Partial Summ. J. at 8–9. The DOJ further notes that the BOP re-released the records to Pinson's counsel in 2016. *See* Defs.' Mot. Partial Summ. J. at 9. None of the evidence the DOJ cites to details the search process that the BOP took in processing this request. See 2d Hardy Decl. ¶¶ 158–59; 3d Hardy Decl. ¶ 16.

As noted in the Court's previous opinion, "[t]he referral of records does not automatically relieve the FBI of its disclosure responsibility." *Pinson*, 177 F. Supp. 3d at 72. Indeed, "the agency who received the FOIA request . . . is the agency ultimately responsible for responding to the request," and thus "the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere." *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008).

The DOJ has, quite simply, not provided the Court with any details about the search process, documents released, or exemptions claimed with respect to Pinson's assault request. The Hardy Declaration states only that the matter was referred to the BOP, and that the BOP processed the request. 2d Hardy Decl. ¶¶ 158–59 & Ex. RRRRR. Without details of the search

and the BOP's claimed exemptions, the Court cannot determine whether the "agency who received the FOIA request" met its obligations.[9] *See Keys*, 570 F. Supp. 2d at 70. The Court thus denies summary judgment with respect to this request.

### 3. Requests Not Permitting a Search

For the unnumbered requests seeking (1) records relating to investigations of the California Aryan Brotherhood and Mexican Mafia since 2007, (2) FD-302s from USP Victorville homicide investigations, and (3) letters sent to the wardens of USPs Victorville, Florence, Coleman, the FBI claims Pinson did not supply enough information to permit a search. *See* 3d Hardy Decl. ¶¶ 12–15. Pinson contests the adequacy of the FBI's search as to these three requests and contends that, although she received the FBI's letters, they did not ask her to provide information with respect to the final two requests. *See* Pl.'s Opp'n at 1–2.

FOIA requests must describe the desired records in a way sufficient to "enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). "Broad, sweeping requests lacking specificity are not sufficient." *Id.* (citing *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 632 F. Supp. 1272, 1277 (D.D.C. 1986), *aff'd*, 907 F.2d 203 (D.C. Cir. 1990)). A plaintiff's refusal to make a request more specific can bolster the agency's claim that a request was too broad. *See id.* This is because FOIA does not allow requesters to turn agencies into "full-time investigators on behalf of requesters." *Assassination*

---

[9] Notably, the Court has not identified this request having been dealt with in the context of any of BOP's motions for summary judgment. *See generally Pinson v. Dep't of Justice*, No. 12-cv-1872, 2017 WL 663523 (D.D.C. Feb. 17, 2017); *Pinson v. U.S. Dep't of Justice*, No. 12-cv-1872, 2016 WL 29245 (D.D.C. Jan. 4, 2016); *Pinson v. U.S. Dep't of Justice*, 199 F. Supp. 3d 203 (D.D.C. 2016).

*Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990).

The Court agrees with the DOJ that the first request was too vague for the FBI to process. The request at issue was for all documents "concerning the activities of the California Mexican Mafia and Aryan brotherhood gangs within federal prisons generated since 2007," 2d Hardy Decl. ¶ 150 & Ex. KKKKK. On its face, because of the breadth and sweeping nature of the request, this request is too vague to expect an FBI employee familiar with the subject area to conduct a search. *See Dale v. IRS*, 238 F. Supp. 2d at 104. The request is for "all" documents related to two different prison gangs generated during the last decade, which supports Mr. Hardy's assertion that the request was too broad. *See* 2d Hardy Decl. ¶ 150. This conclusion is bolstered by the fact that Pinson did not clarify her request when the FBI asked for her to do so. Indeed, this is the one request in this category that Pinson does not address in her declaration. *See generally* Pinson Decl. Because she did not respond to BOP's request to clarify and the language of the request is broad and sweeping, the Court will grant summary judgment for the DOJ.

In contrast, the Court cannot say that Plaintiff's second or third requests were too vague for the DOJ to respond, at least on this record. Pinson's second request, which is for "all information, specifically Form-302[s], produced during investigation of inmate homicides at the U.S. Penitentiary in Victorville, California between 2004 and 2012," *see* 2d Hardy Decl. ¶ 129 & Ex. CCCCC; Corr. 2d Am. Compl. at 7, seems reasonably narrow so as to allow a professional employee familiar with FBI investigations into homicides at Penitentiary in Victorsville to formulate a search. If this is not the case, the DOJ has not told the Court why. Instead, in conclusory terms, it asserts that it informed Pinson that the request was too vague. *See* 2d Hardy

Decl. ¶ 130. It never explains why it finds the request to be vague, or what factors make this seemingly-straightforward request overbroad. If, for example, inmate homicides are too numerous or the investigations are too broad to make for a reasonable search (both unlikely), the FBI should have said so in its exhibits.[10] The FBI also did not clarify what it found vague in its letter to Pinson. *See* 2d Hardy Decl. Ex. CCCCC. The Court simply cannot grant summary judgment in favor of the DOJ on the record before it.

The same reasoning applies to Pinson's third request, which was for "all letters written by [the FBI] in California, Colorado to the Wardens of Federal Correctional Complex or institutions in Florence, CO or/and Victorville, CA, [and/or Coleman] for any reason from 2008 to the present." 2d Hardy Decl. ¶ 147 & Ex. IIIII. This request cannot be dismissed out of hand. It seems to be confined to a narrow universe of potential documents—letters—produced under a narrow set of circumstances—written by the FBI in certain states to certain wardens within those states—during a specified time—from 2008 to present. Yet the DOJ supplies no details supporting its claim of vagueness by, for example, showing that letters exchanged between the wardens and the FBI were too numerous to make the search reasonable in scope or providing more detail about the manner the records are organized making such a search unreasonable.[11] *See* 2d Hardy Decl. ¶¶ 147–48. Nor did it give Pinson any direction on how she should clarify her request. *See* 2d Hardy Decl. Ex. IIIII.

---

[10] For example, the FBI could indicate that a search of the records from the Field Office with jurisdiction over Victorsville using the search terms "murder and/or homicide" and "Victorsville" still generates too many records to reasonably review in order to locate responsive Form-302 reports.

[11] Are letters to the BOP wardens common, or rare?  The record does not say. If such letters are rare, do they typically come from a certain level of FBI official (for example, a Special Agent in Charge) or are these letters authored by all Special Agents?  Information of this type can assist the Court in determining whether a particular search is feasible.

Accordingly, the Court grants summary judgment with respect to Pinson's "California Aryan Brotherhood and Mexican Mafia" request, but denies it with respect to her homicide and warden correspondence requests.

### 4.   The FBI Adequately Responded to Pinson's Request for FBI Addresses

As noted above, Pinson submitted a request seeking an "[a]ddress directory to all agency departments or field offices." 2d Hardy Decl. ¶ 153 & Ex. MMMMM; *accord Pinson*, 177 F. Supp. 3d at 69. The FBI responded by "provid[ing] [P]laintiff a nine page document, printed from the FBI's website, containing contact information for all FBI field offices . . . ." 2d Hardy Decl. ¶ 157 & Ex. QQQQQ. The FBI also informed Pinson that it did not maintain a directory of all FBI "departments." 2d Hardy Decl. Ex. QQQQQ. Pinson acknowledges receipt of the FBI's response, but maintains that the letter does not "seek additional info[rmation] []or explain the nonsearch." *See* Pinson Decl. ¶ 11.

FOIA does not force agencies to create documents; it only requires them to produce certain nonexempt materials for the public to see. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975). An agency need only *create* those documents "which the law requires the agency to prepare or which the agency has decided for its own reasons to create." *Id.* (citing *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 702 (D.C. Cir. 1971)).

Given the DOJ's explanation and the good faith presumption that the Court gives agency affiants, the DOJ has adequately searched for and produced materials in response to this request. The FBI provided Pinson with a complete list of all FBI field offices. 2d Hardy Decl. ¶ 157. Beyond that, the Court has no reason to question the FBI's assertion that it does not maintain a directory of all its "departments." Under *NLRB v. Sears, Roebuck & Co.*, the FBI is not required to create a document that it otherwise does not possess in order to respond to Pinson's FOIA

request. As a result, the Court will grant the DOJ's motion for summary judgment with respect to the search concerning addresses.[12]

## B. FOIA Exemptions

The DOJ next argues that the FBI properly withheld records, in whole or in part, responsive to Request Nos. 1178465, 1199194, and 1229060 under FOIA Exemptions 3, 6, 7(A),[13] 7(C), and 7(D). *See* Statement of Material Facts Not in Genuine Dispute 1–6, ECF No. 300-1; 3d Hardy Decl. ¶¶ 21–22, 35–51 & pp. 3–5; 2d Hardy Decl. ¶¶ 201. Pinson states that "the enumerated requests which the FBI claims exemption upon are hereby conceded and [will be] subject to no further challenge from [P]laintiff," with the caveat that she reserves her right to contest future withholdings. *See* Pl.'s Opp'n at 2.[14] However, in her declaration, Pinson states that she "contests the withheld material" in Request No. 1229060 and seems to suggest that the material in Request No. 1178465 was overly-redacted. Pinson Decl. ¶¶ 3, 8. In light of the *pro se* nature of the plaintiff and the D.C. Circuit's holding in *Winston & Strawn, LLP*, 843 F.3d at 505, the Court will analyze the DOJ's claimed withholdings notwithstanding Pinson's apparent concessions.

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only

---

[12] The FBI performs most of its functions through its Field Offices. If Pinson wanted the address for a specific office (for example, Headquarters, the training facility at Quantico, or forensics labs), she should have so specified.

[13] The DOJ seemingly invokes Exemption 7(A) for FOIA Request No. 1229060, however; as discussed *infra* at Part III.B.2.d, the Court could not locate the justifications for withholdings relied upon by the DOJ in asserting this exemption.

[14] Pinson's Response contains inconsistent assertions as to whether she contests the exemptions used by the FBI to withhold documents responsive to her FOIA requests. *See* Pl.'s Opp'n at 1–2.

those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliot v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)). It is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

### 1. Exemption 3

The FBI invoked Exemption 3 to withhold information responsive to Request No. 1199194, Pinson's request for information related to the FBI's investigation of the California Aryan Brotherhood. *See* Defs.' Mot. Partial Summ. J. at 5. Portions of the publicly-available materials were withheld because they pertain to grand juries. *See* Defs.' Mot. Partial Summ. J. at 5; 3d Hardy Decl. ¶¶ 21–25. The DOJ argues that the FBI properly invoked Exemption 3 because the withheld information "contain[s] information about the names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to federal grand jury subpoenas." 3d Hardy Decl. ¶ 22.

Exemption 3 permits the withholding of information "specifically exempted from disclosure by [other] statute[s]." 5 U.S.C. § 552(b)(3). Withholding information is proper when the statute either "leave[s] no discretion" or "establishes particular criteria for withholding or refers to particular types of mattes to be withheld." *Id.* §§ 552(b)(3)(A)(i)–(ii). Federal Rule of Criminal Procedure 6(e) prohibits the disclosure of grand jury information. Fed. R. Crim. P. 6(e). Rule 6(e) is a "statute" for purposes of Exemption 3 application. *Boyd v. Exec. Office for United States Attorneys*, 87 F. Supp. 3d 58, 82 (D.D.C. 2015) (citing *Fund for Constitutional Gov't v.*

*Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981)). The scope of Rule 6(e) is

"necessarily broad." *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d

856, 869 (D.C. Cir. 1981). However, "[t]here is no *per se* rule against disclosure of any and all

information which has reached the grand jury chambers." *Senate of the Com. of Puerto Rico on*

*Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). Indeed,

invoking Exemption 3 "require[s] some affirmative demonstration of a nexus between disclosure

and revelation of a protected aspect of the grand jury's investigation." *Id*. at 584. Thus, in

deciding whether grand jury information is protected from disclosure by Exemption 3, "the

touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's

investigation such matters as the identities of witnesses or jurors, the substance of testimony, the

strategy or direction of the investigation, the deliberations or questions of jurors, and the like."

*Id*. at 582 (internal quotation marks omitted). The D.C. Circuit has found that the following may

properly be withheld under the "broad reach of grand jury secrecy": information[] naming or

identifying grand jury witnesses; quoting or summarizing grand jury testimony; evaluating

testimony; discussing the scope, focus and direction of the grand jury investigations; and

identifying documents considered by the grand jury and conclusions reached as a result of the

grand jury investigations."  *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656

F.2d 856, 869 (D.C. Cir. 1981).

The materials withheld under Exemption 3 relate to specific grand jury investigations. 3d

Hardy Decl. ¶ 22. As noted above, the withheld information concerned the identities of

"recipients of federal grand jury subpoenas; information that identifies specific records

subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand

jury in response to federal grand jury subpoenas." 3d Hardy Decl. ¶ 22. All of these categories of

materials embody information that could elucidate the "strategy or direction of the investigation" of the grand jury, and is thus exempt from release. *See Senate of P.R.*, 823 F.2d at 582–84; *see also Fund for Constitutional Gov't*, 656 F.2d at 869 ("Witness names are clearly covered [by Exemption 3], as are documents subpoenaed as exhibits."). Pinson concedes that this exemption applies. *See* Pl.'s Opp'n at 2. The Court is satisfied that it does, and accordingly grants the DOJ summary judgment with respect to its withholdings under Exemption 3.

## 2.  Exemptions 6 and 7(C)

The DOJ also argues the FBI properly invoked Exemptions 6 and 7(C) as to documents responsive to Request Nos. 1178465, 1199194, and 1229060 to prevent the disclosure of names and other identifying information concerning FBI Special Agents, support personnel, third parties of investigative interest, city, local, and state government employees, and third parties who provided information to the FBI. *See* 3d Hardy Decl. ¶ 35–42. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Both exemptions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although the balancing test is applied to both Exemption 6 and 7(C), "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding

material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011)); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions."). Specifically, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects.'" *Braga v. FBI*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012) (quoting *Reporters Comm.*, 489 U.S. at 756). First, Exemption 6 "encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id.* Second, Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id.* The differences in the language between the two exemptions reflect Congress's decision to provide the government with "greater flexibility in responding to FOIA requests for law enforcement records or information" than in responding to requests for personnel, medical, and other similar files. *See Reporters Comm.*, 489 U.S. at 777 n.22.

Accordingly, if the documents withheld and information redacted were "compiled for law enforcement purposes only," the Court need engage only in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535 (D.C. Cir. 2014) (confining its FOIA analysis to Exemption 7(C) because its "privacy language is broader than the comparable language in Exemption 6" (quoting *Reporters Comm.*, 489 U.S. at 756)); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [when] all information that would fall within the scope of Exemption 6

would also be immune from disclosure under Exemption 7(C)"); *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 231 (D.D.C. 2014). Therefore, as an initial matter, the Court must determine whether Exemption 7 applies to the withholdings in this case.

### a. *Threshold Inquiry*

"[T]o withhold documents under Exemption 7, the agency must, as a preliminary matter" make a "threshold" showing demonstrating "that the records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997). Agencies classified as law enforcement agencies, like the DOJ here, receive deference to their assertion that documents were compiled for a law enforcement purpose. *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982) (rooting deference in "the generally accurate assumption that federal agencies act within their legislated purposes"). A court's review of this threshold question is "necessarily deferential," but is "not vacuous." *Id.* at 421.

To be sure, not every document compiled by a law enforcement agency is compiled for a law enforcement purpose. *See, e.g.*, *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245–46 (D.D.C. 2013) (relying on *Pratt* to reject ICE's argument that all of its records are compiled for a law enforcement purpose); *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 146–47 (D.D.C. 2011) (relying on *Pratt* to reject a "per se" rule that all BOP documents are created for law enforcement purposes and finding that the recordings of inmates' telephone conversations were not compiled for law enforcement purposes). To show that it was, the agency must establish "(1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'" *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20,

32 (D.C. Cir. 1998)); *see also Pratt*, 673 F.2d at 420 (setting forth the rational nexus test for the first time in this circuit).

In 1986, Congress amended Exemption 7 to broaden the reach of the threshold requirement from "*investigatory* records compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7) (1982) (emphasis added), to simply "records or information compiled for law enforcement purposes," Anti-Drug Abuse Act of 1986, § 1802(a), Pub. L. No. 99-570; *see also Tax Analysts*, 294 F.3d at 79. The D.C. Circuit has made clear that, after the amendments, the *Pratt* test applies only "when an agency seeks to invoke Exemption 7 in a situation in which there is an ongoing law enforcement 'investigation,'" but in that context, it "is still good law." *Tax Analysts*, 294 F.3d at 77–78. Where there is no ongoing investigation, materials may still meet the threshold requirement of Exemption 7 if they are akin to "guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation." *Id.* at 78.

The FBI is the primary investigative agency of the federal government. Pinson's requests for materials related to "two separate homicide *investigations* that occurred in two Federal Prisons, and the FBI's *investigation* of the Aryan Brotherhood," 3d Hardy Decl. ¶ 24 (emphasis added), clearly show that the sought after materials were created and compiled for law enforcement purposes. Accordingly, the FBI adequately establishes—as Pinson has apparently conceded, *see* Pl.'s Opp'n at 2—that the responsive records at issue here were compiled for law enforcement purposes within the scope of Exemption 7.

b. *Exemption 7(C)*

The DOJ argues that the FBI properly invoked Exemption 7(C) with respect to FOIA Request Nos. 1178465, and 1199194. In applying Exemption 7(C), courts first determine

whether there is a privacy interest in the information requested. *See ACLU*, 655 F.3d at 6. If the court finds a privacy interest, the court next balances the individual's privacy interest against the public interest, considering the public interest only insofar as it pertains to "the citizens' right to be informed about what their government is up to." *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773). It is the FOIA requester's obligation to articulate a public interest sufficient to outweigh the individuals' privacy interest, and the public interest must be significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172–73 (2004).

Courts have "long recognized" that a "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Roth*, 642 F.3d at 1174 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003)). For those reasons, an agency may withhold the identities of targets of a law enforcement investigation, witnesses, informants, and law enforcement officers under Exemption 7(C). *See SafeCard Servs.*, 926 F.2d at 1205. In fact, the D.C. Circuit has adopted "a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker*, 349 F.3d at 661 (quoting *SafeCard Servs.*, 926 F.2d at 1206). The D.C. Circuit has extended this protection to the names of agency employees for similar, if not identical, reasons. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487–88 (D.C. Cir. 1980); *see also Roth*, 642 F.3d at 1174; *Schrecker*, 349 F.3d at 661.

The DOJ argues that the FBI properly invoked Exemption 7(C) to prevent the disclosure of "names and/or identifying information" of law enforcement personnel, their support personnel, and third parties who interacted with law enforcement personnel. 3d Hardy Decl. ¶¶ 38–42. The FBI withheld materials to protect identifying information about FBI Special

Agents, law enforcement support personnel, and city, local, and state law enforcement personnel "who were responsible for conducting, supervising, and/or maintaining the investigative and intelligence activities reported in the documents." 3d Hardy Decl. ¶¶ 38, 40. As for third parties, the FBI invoked Exemption 7(C) to "protect the names and identifying information" of third parties "who are of investigative interest to the FBI and/or law enforcement agencies," "third parties merely mentioned in the responsive documents," and "[third parties] who provided information to the FBI during the course of the investigation described in the responsive documents" 3d Hardy Decl. ¶¶ 39, 42. As the FBI correctly points out, these individuals have a substantial privacy interest in not having their identities disclosed, because disclosure could lead to "harassment or embarrassment [and] undue public attention." 3d Hardy Decl. ¶¶ 39, 41, 42; *Roth*, 642 F.3d at 1174. Pinson does not contest the withholding of records or information compiled for law enforcement purposes under Exemption 7, and thus obviously does not show that the public's interest outweighs these privacy interests, let alone that the agency in any way acted illegally. *See* Pl.'s Opp'n at 2. In light of the substantial privacy interests of these different categories of individuals, the Court determines that the FBI properly withheld identifying information under Exemption 7(C).

c. *Exemption 7(D)*

The DOJ contends that the FBI properly invoked Exemption 7(D) when it withheld information responsive to Request No. 1199194. According to the DOJ, the FBI properly withheld names, identifying information, and information provided to the FBI and/or other law enforcement entities during the course of investigations under express grants of confidentiality. 3d Hardy Decl. ¶ 46. The DOJ also contends that the FBI properly invoked Exemption 7(D) with respect to identifying information and information provided by a third party under circumstances

in which confidentiality can be inferred, in this case an "individual who was associated with top level Aryan Brotherhood members who [was] reporting on activity within the Aryan Brotherhood and other gangs." 3d Hardy Decl. ¶¶ 47–48. Finally, the DOJ claims the FBI properly invoked Exemption 7(D) to prevent the disclosure of "permanent source symbol numbers" assigned to confidential sources of the FBI.[15] 3d Hardy Decl. ¶ 49. Source symbol numbers were assigned to "confidential informants who report information to the FBI on a regular basis [under] express assurance[s] of confidentiality." 3d Hardy Decl. ¶ 49. The Court will first address the information withheld pursuant to express grants of confidentiality— including the permanent source symbols of informants—and then address the information withheld because of implied confidentiality.

*i.* Express Grants of Confidentiality

Exemption 7(D) protects law enforcement information that "could reasonably be expected to disclose the identity of a confidential source . . . which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). The exemption also "protects the ability of law enforcement agencies to obtain relevant information from such sources" and "once an informant's confidentiality has been established almost nothing can eviscerate Exemption 7(D) protection." *Sellers v. U.S. Dep't of Justice*, 684 F. Supp. 2d at 161 (internal quotations and citations omitted). "[A] source is confidential within the meaning of Exemption 7(D) if the source "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (quoting S. Rep. No. 93–1200, at 13, *reprinted in* 1974 U.S.C.C.A.N.

---

[15] "Permanent source symbol numbers" are numbers sequentially assigned to FBI informants that are used to refer to those informants in lieu of their names. 3d Hardy Decl. ¶ 49.

6267, 6291). Source symbol codes assigned under express grants of confidentiality are included in this category. *See Callaway v. U.S. Dep't of Treasury*, 577 F. Supp. 2d 1, 3 (D.D.C. 2008).

Exemption 7(D) plainly applies to the information withheld by the FBI because it was obtained during the course of investigations with "express grants of confidentiality." 3d Hardy Decl. ¶ 46. The same is true for the permanent source symbols assigned to informants operating under express grants of confidentiality. *Callaway*, 577 F. Supp. 2d at 3. Pinson does not contest the applicability of this exception, and does not call into question the good faith nature of the DOJ affiant's credibility.

### *ii.* Implied Confidentiality

In addition to protecting expressly confidential sources, Exemption 7(D) applies to sources that are confidential by implication. *See Landano*, 508 U.S. at 179. The Supreme Court has stated that it is reasonable to assume that the cooperation of paid informants is confidential because informants have an ongoing relationship with the FBI and generally communicate with the FBI covertly. *See id.* The same Court also reasoned that the gang-related nature of a crime would support an inference that a witness would prefer to keep his identity a secret out of fear of reprisal. *See id.* ("Most people would think that witnesses to a gang-related murder likely would be unwilling to speak to the Bureau except on the condition of confidentiality.").

The identities of FBI informants investigating top-level Aryan Brotherhood gang members fit squarely within the reasoning in *Landano*. *See* 508 U.S. at 179. The government seeks to withhold the identities of informants who provided information to the FBI on a continual basis. *See* 3d Hardy Decl. ¶¶ 47–48. Moreover, the violent gang activities of the Aryan Brotherhood support the inference that those informants would not have provided the FBI with information "except on the condition of confidentiality." *See Landano*, 508 U.S. at 179. Once

again, Pinson does not contest the applicability of this exception. The Court concludes that the exception applies.

*     *     *

In sum, all of the information withheld—information about investigations "under express grants of confidentiality" including the permanent source symbols of informants, and the identities of informants on top-level Aryan Brotherhood members—"could reasonably be expected to disclose the identity of a confidential source." *See* 5 U.S.C. § 552(b)(7)(D). Pinson does not contest the applicability of this exception, and does not call into question the good faith nature of the DOJ affiant's credibility. Accordingly, the Court enters summary judgment for the DOJ as to the information withheld pursuant to Exemption 7(D) in response to Request No. 1199194.

### d.   *Request No. 1229060*

With regard to FOIA Request No 1229060—which sought the records related to an FBI interview of Pinson at ADX Florence—the FBI has failed to justify the withholdings under Exemption 7(A). Defs.' Mot. Partial Summ. J. at 7–8. It is unclear which supporting documents in the record the FBI relies upon for justifying withholdings under Exemption 7(A). Nor is it clear, based on the Court's reading of the record, that the redactions under Exemption 7(A) are redundant of other exemptions. *See generally* 2d Hardy Decl. The DOJ's brief directs the Court to paragraph 11 of the third declaration of David Hardy. *See* Defs.' Mot. Partial Summ. J. at 8. This paragraph states that "[j]ustification for withholding of information from these pages is provided in paragraphs 189–193 of the Second Hardy Decl. *See* ECF No. 137, and 35–36 *infra* for FOIA exemption (b)(7)(A)." 3d Hardy Decl. ¶ 11. However, paragraphs 189–93 of the Second Hardy Decl. simply describe the Exemption 7 threshold issue outlined above and general

law surrounding Exemption 7(A). *See* 2d Hardy Decl. ¶¶ 189–93. And, neither *paragraphs* "35–36" nor *pages* 35–36 apply to Exemption 7(A). Paragraphs 35–36 of the third Hardy declaration detail Exemptions b(6) and b(7)(C) and pages 35–36 are part of an irrelevant exhibit. Because the Court cannot divine the justifications DOJ relies upon for Request No. 1229060, the Court denies summary judgment with respect to Exemption (7)(A).

### C.  Segregability

FOIA requires that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed. *Id.*

Here, the DOJ provided Pinson with a "Summary of Justification Categories" index describing each document withheld in part or in full, as well as the exemption under which it was withheld. 3d Hardy Decl. at 9. The table details, with specificity, the nature of the withholdings and the legal justifications. Pinson concedes that the exemptions apply, and thus obviously does not overcome the "presumption that [the FBI] complied with the obligation to disclose reasonable segregable material." *See* Pl.'s Opp'n at 2; *Sussman*, 494 F.3d at 1117. The declaration of Mr. Hardy is therefore sufficient to fulfill the agency's obligation to show with

"reasonable specificity" why a document cannot be further segregated. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).

The only argument by Pinson that the FBI did not produce all reasonably segregable material was that its response to Request No. 1178465—which sought documents related to two visits by the FBI to ADX Florence—was "so heavily redacted it supplied no information about the document's contents."  *See* Pinson Decl. ¶ 3. In general, "no genuine dispute is shown merely because a released record was heavily redacted." *Plunkett v. Dep't of Justice*, 924 F. Supp. 2d 289, 304 (D.D.C. 2013). Pinson's argument is indistinguishable from the rejected argument in *Plunkett*. The conclusory statement that a document is heavily redacted does not suffice to refute an agency's detailed showing that all reasonably segregable material has been released. Accordingly, the Court grants the DOJ summary judgment with respect to issues of segregability.

## IV.  CONCLUSION

For the foregoing reasons, the DOJ's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 29, 2017                                RUDOLPH CONTRERAS

United States District Judge