# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 335, 338, 341, |
| | : | | 345, 346, 347, |
| | : | | 348, 367, 369, |
| UNITED STATES DEPARTMENT OF | : | | 371, 373. |
| JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**DENYING PLAINTIFF'S MOTION TO MODIFY APPOINTMENT OF COUNSEL;
GRANTING DEFENDANTS' MOTION TO FILE UNDER SEAL;
DENYING PLAINTIFF'S MOTION TO ACCESS THE COURTS;
DENYING PLAINTIFF'S MOTION TO ENJOIN BLOCK TO THE COURTS;
DENYING PLAINTIFF'S MOTION FOR LEGAL ACTIONS;
CONSTRUING AS A MOTION AND DENYING PLAINTIFF'S MOTION ON LAW LIBRARY ACCESS;
CONSTRUING AS A MOTION AND DENYING PLAINTIFF'S NOTICE TO THE COURT;
DENYING PLAINTIFF'S MOTION REGARDING WITNESS INTIMIDATION;
DENYING PLAINTIFF'S MOTION FOR A PROTECTIVE OR TEMPORARY RESTRAINING ORDER;
DENYING PLAINTIFF'S MOTION FOR SANCTIONS;
DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

## I. INTRODUCTION

Plaintiff Jeremy Pinson has been enmeshed in litigation against the Bureau of Prisons

(BOP) and other defendants for the past five years. This litigation features two major

strands—first, numerous FOIA requests filed by Pinson, and second, Pinson's claims that BOP

officials retaliated against her[1] for exercising her First Amendment rights. Currently before the

---

[1] Pinson identifies using feminine pronouns. This Court follows suit, as does the
government at times. *See* Defs.' Notice of Repeat Service of FOIA Releases, ECF No. 343;
Defs.' Opp'n to Pl.'s Mot. to Strike, ECF No. 337.

Court are assorted motions seeking miscellaneous relief, which the Court disposes of as described below.

## II.  FACTUAL BACKGROUND

This Court has previously addressed Pinson's multiple FOIA requests at length, and does not repeat that analysis here. The various agencies to which Pinson submitted requests have repeatedly moved for summary judgment. This Court has at times granted, denied, or granted in part and denied in part these motions, resulting in an ever-decreasing number of extant FOIA disputes. *See, e.g.*, Mem. Op., *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56 (D.D.C. 2016), ECF No. 276. This Court appointed Pinson *pro bono* counsel for the limited purpose of reviewing correspondence withheld by the BOP and determining compliance with FOIA. Order of Appointment of Pro Bono Counsel (May 15, 2015), ECF No. 204.

In addition to her FOIA requests, Pinson claims that her constitutional rights were violated by BOP officials Charles Samuels and John Dignam, who allegedly retaliated against her for exercising her First Amendment rights. *See generally* Mem. Op., *Pinson v. United States Dep't of Justice*, --- F. Supp. 3d ---, No. 12-1872, 2017 WL 1247295 (D.D.C. Mar. 30, 2017), ECF No. 366. The Court recently expanded its appointment of *pro bono* counsel to include representing Pinson "as to her claims against [the BOP officials] in their official and individual capacities." Order (Mar. 30, 2017), ECF No. 365.

## III.  ANALYSIS

Pinson raises a variety of motions seeking relief. The Court addresses each in turn.

## A. Motion to Modify Appointment of Counsel

Pinson moves to have her *pro bono* counsel assume "full responsibility of the litigation of this action." Pl.'s Mot. Modify App't Counsel (Pl.'s Mot. Counsel), ECF No. 335. According to Pinson, such representation would be appropriate because Pinson "was recently assaulted and . . . lost her eyeglasses, suffered a possible traumatic brain injury and can no longer read. As a result she will be totally unable due to her disability to prosecute her remaining claims." Pl.'s Mot. Counsel. After Pinson filed this motion, the Court has already expanded the role of her *pro bono* counsel to encompass her claims against Dignam and Samuels. Order (Mar. 30, 2017), ECF No. 365. The Court therefore considers only whether it would be appropriate to now appoint Pinson counsel to represent her as to her FOIA requests.[2]

No "indigent civil litigant is guaranteed counsel." *Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001). Instead, the district court judge controls the "discretionary" decision of whether to appoint counsel, and that decision "will be set aside only for abuse." *Id.* The D.C. Circuit held that Local Civil Rule 83.11 "provides the relevant factors for deciding motions for the appointment of counsel in FOIA cases." *Id.* According to Local Civil Rule 83.11(b)(3), a judge should consider the following factors: "(i) Nature and complexity of the action; (ii) Potential merit of the *pro se* party's claims; (iii) Demonstrated inability of the *pro se* party to retain counsel by other means; and (iv) Degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel." According to the D.C. Circuit, one factor can be controlling. *Willis*, 274 F.3d

---

[2] To the extent that Pinson seeks the appointment of counsel to pursue her claims against Dignam and Samuels, her motion is denied as moot.

at 532 ("[G]iven the magistrate's conclusion that [Plaintiff] was capable of handling his relatively straightforward FOIA case unaided, the magistrate did not need to go any further.").

Two of these factors point strongly away from appointing counsel to litigate Pinson's FOIA claims. First, the nature of the action is a FOIA action. Based on this Court's extensive experience with the FOIA requests, the FOIA issues involved are not complex and discovery will likely not be required. *Cf. id.* (noting with approval that "[t]he magistrate also based his denial on his determination that [the plaintiff's] FOIA case did not involve complex legal or factual issues and, like many FOIA cases, would not require any discovery."). Although Pinson's FOIA claims do involve many requests and agencies, these facts do not increase the complexity by very much because each individual FOIA request is straightforward. *See Saunders v. Davis*, No. 15-2026, 2016 WL 4921418, at *15 (D.D.C. Sept. 15, 2016) ("[T]he Court acknowledges that this case includes a relatively large number of parties and legal concepts. On first glance, this complexity appears to tip the balance in favor of assigning counsel . . . . The complexity, however, is largely the result of [the plaintiff's] decision to raise so many claims and name so many Defendants. The discrete issues themselves are not particularly complex. Nor does this case present complex questions of fact or the need for expert testimony."). Second, the Court does not find that the interests of justice would be served by appointing counsel. Pinson has shown that she is capable of advancing her cause through cogent filings concerning the FOIA matters. *See Pinson v. U.S. Dep't of Justice*, 104 F. Supp. 3d 30, 36 (D.D.C. 2015), ECF No. 203; *see also Willis*, 274 F.3d at 532 ("[C]ounsel need not be appointed because [Plaintiff] had shown through numerous coherent filings that he was capable of representing himself . . . .").

The remaining factors are neutral. While Pinson has not retained counsel by other means, and Pinson's current incarcerated status presents obvious obstacles, Pinson has not clearly

addressed her attempts to retain counsel. Furthermore, the Court has granted in part and denied in part many of the responding agencies' motions for summary judgment, indicating that Pinson's objections to their responses have some merit.

Pinson's arguments concerning her injuries do not squarely address any of the factors. Construing Pinson's position as arguing that the ends of justice would be served by appointing counsel, the Court disagrees. First, due to the need to conserve judicial resources, appointing counsel will not be appropriate in every civil case in which the *pro se* plaintiff becomes unable to litigate. Second, Pinson's condition does not appear to be severe. In the months following her injury, Pinson has filed numerous coherent motions without assistance from counsel. *See, e.g.*, ECF No. 345; ECF No. 346; ECF No. 347; ECF No. 348; ECF No. 367; ECF No. 373. The DOJ also moved under seal to file under seal an opposition containing Pinson's medical records. Def.'s Mot. File Under Seal, ECF No. 338. In the absence of any objection and in order to protect Pinson's privacy, the Court will grant the DOJ's motion to file its opposition under seal. While the Court will speak in generalities to maintain the effectiveness of the seal in protecting Pinson's privacy, the Court notes that the records from Pinson's medical providers indicate that Pinson's condition has been improving and she should be able to see, read, write, and conduct her daily activities. *See generally* Def.'s Opp'n Pl.'s Mot., ECF No. 338-1; Exhibits, ECF No. 338-2. After considering all of the factors, the Court concludes that appointing counsel is not appropriate because the case is not complex and it would not serve the interests of justice, and will therefore deny Pinson's motion.

## B. Motions Concerning Access to the Courts

Next, the Court addresses six of Pinson's motions. Each motion seeks relief from different actions allegedly taken by BOP employees. Each allegation involves the same common theme—alleged injuries to Pinson's ability to participate in litigation.

First, Pinson alleges that BOP employees have impeded her requests to print legal materials and otherwise "deliberately sabotage[d] plaintiff[']s request for legal research."[3] Pl.'s Mot. Order Access Courts (Pl.'s 1st Mot. Access), ECF No. 345. Second, Pinson alleges that BOP employees have wrongfully prevented other inmates from assisting her with her legal research and filings, and that this assistance is especially important because of impairments to her vision.[4] Pl.'s Mot. Order Legal Actions (Pl.'s 2d Mot. Access), ECF No. 346. Third, Pinson alleges that the BOP has not made the law library accessible to prisoners, like Pinson, with

---

[3] Specifically, Pinson seeks an order "compelling DOJ to cease destroying the plaintiff[']s requests for legal material and to hold in contempt USMCFP Springfield employees who deliberately sabotage plaintiff[']s request[s] for legal research." Pl.'s 1st Mot. Access, ECF No. 345. According to Pinson, she must submit requests to have her legal research printed from a queue, but a BOP employee "threw [her] requests and printouts in the trash." Pinson Decl. ¶ 3, ECF No. 345, Ex. A.
The DOJ responds with a declaration from the BOP employee, stating that he printed and delivered approximately 160 pages of Pinson's legal research. Stalhood Decl. ¶ 4, ECF No. 352, Ex. 1.

[4] Specifically, Pinson alleges that, because she was blinded in one eye after being attacked, other inmates had assisted her in preparing legal filings, but BOP employees have begun to prevent this in retaliation for her lawsuits. *See generally* Pl.'s 2d Mot. Access, ECF No. 346; Pinson Decl., ECF No. 346, Ex. 1.
The DOJ responds that prisoners—like Pinson at MCFP Springfield—in locked units do not have direct access to other prisoners and therefore cannot utilize the normal channels of receiving legal assistance from other inmates. *See generally* BOP's Combined Opp'n (Defs.' 1st Opp'n Access), ECF No. 352. Instead, such inmates must formally request from the Warden that they receive legal assistance from another inmate. Stalhood Decl. ¶ 6, ECF No. 352, Ex. 1. The DOJ provides a declaration from a BOP employee that the employee is not aware of any such formal request from Pinson. Stalhood Decl. ¶ 6. Pinson disagrees, and states that she "submitted a Request For Administrative Remedy seeking inmate to inmate legal assistance to [the Warden] on 1-26-17 . . . ." Pinson Decl. ¶ 3, ECF No. 355, Ex. 1.

impaired vision.[5] Pl.'s Mot. Order Legal Actions (Pl.'s 3d Mot. Access), ECF No. 347. Fourth,

Pinson alleges that BOP employees have impaired her legal research by breaking the computer in

the law library.[6] Pl.'s Mot. Notice Law Library Access (Pl.'s 4th Mot. Access), ECF No. 369.

Fifth, Pinson asserts that BOP employees have threatened to "hinder all access to the Court to

leverage Plaintiff off a hunger strike."[7] Pl.'s Notice Court (Pl.'s 5th Mot. Access), ECF No. 371.

---

[5] Specifically, Pinson claims that "BOP lacks legal assistance to inmates such as plaintiff who due to visual disability cannot utilize the law library" and requests an injunction to compel the BOP to provide such access. Pl.'s 3d Mot. Access. Pinson also asserts that this is in retaliation, presumably for her legal activities. Pinson also appears to suggest that the BOP is wrongfully denying assistance to mentally ill inmates who are therefore unable to satisfactorily complete civil actions. *See generally* Pinson Decl., ECF No. 347, Ex. 1; *see also* Pinson Decl., ECF No. 355, Ex. 1 ("BOP has no legal assistance for the vision impaired (like [Pinson], for now), the illiterate, Spanish or other language speakers."). Pinson states that she will file a separate lawsuit concerning these allegations. Pl.'s 3d Mot. Access.

The DOJ responds that this case is not the appropriate vehicle for Pinson's claims, and the Court should deny the motion because Pinson "can litigate her case given the indulgent extensions that the Court has afforded." Defs.' 1st Opp'n Access at 4, ECF No. 352.

[6] Although ECF No. 369 is not styled as a motion in ECF, it appears that Pinson intended to file it as a motion because it is entitled "Motion and Notice on Law Library Access," and the Court therefore construes it as such. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) ("Courts must construe *pro se* filings liberally." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam))).

Pinson's specific allegation is that a BOP employee "informed her [that the employee] deliberately broke the law library computer" to prevent her from using it, in retaliation for her legal activities. Pl.'s 4th Mot. Access.

Pinson also requests that the Court "consider this continuing campaign of retaliation . . . when setting any future deadlines." Pl.'s 4th Mot. Access. The Court does not see the need to grant any relief concerning deadlines, because no motions for extension of time are currently before it and the Court has freely granted Pinson's requests for extensions of time in the past. *See, e.g.,* Minute Order Granting Plaintiff's Motion for Extension of Time (July 19, 2016); Minute Order Granting Plaintiff's Motion for Extension of Time (July 1, 2016); Order Granting Plaintiff's Motion for Extension of Time, ECF No. 281; Order Granting Plaintiff's Motion for Enlargement of Time, ECF No. 272; Minute Order Granting in Part Plaintiff's Motion for Extension of Time (Dec. 31, 2015); Minute Order Granting Plaintiff's Motion for Extension of Time (Dec. 2, 2015).

[7] Although ECF No. 371 is not styled as a motion in ECF, it appears that Pinson intended to file it as a motion because it includes the statement that "Plaintiff seeks help," and the Court therefore construes it as such. *See Richardson*, 193 F.3d at 548 ("Courts must construe *pro se* filings liberally." (citing *Haines*, 404 U.S. at 520–21)).

Sixth, Pinson alleges that BOP employees have moved other inmates to prevent them from providing declarations for use in litigation.[8] Pl.'s Mot. Regarding Witness Intimidation (Pl.'s 6th Mot. Access), ECF No. 367.

The Court will deny each of these six motions because none of Pinson's claims appear in her complaint, and—even if the Court were to reach their merits—Pinson cannot meet the high threshold of showing that she has been injured by lack of access to the courts.

### 1. Pinson Attempts to Add Claims Not in Her Complaint

Each of Pinson's motions state claims that do not appear in her complaint. It is well established that a plaintiff may not amend her complaint by stealth, but must follow the process established by Rule 15 of the Federal Rules of Civil Procedure. *See, e.g.*, *Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 8 (D.D.C. 2014) ("[A] party may not amend its complaint or broaden its claims through summary judgment briefing." (collecting citations)).

Pinson's complaint states that Dignam and Samuels retaliated against her in several ways, including transferring her to ADX Florence and not responding to her administrative complaints. *See generally* 2d Am. Compl. at 13–16, ECF No. 32. Absent from the complaint are the claims

---

Specifically, Pinson states that she is on a hunger strike, but that "DOJ employees are threatening to hinder all access to the court to leverage plaintiff off a hunger strike." *See generally* Pl.'s 5th Mot. Access, ECF No. 371; Pinson Decl., ECF No. 371, Ex. 1.

[8] Specifically, Pinson asserts that "defendants deliberately moved 2 witnesses to prevent their supplying adverse testimony." Pl.'s 6th Mot. Access, ECF No. 367. The other witnesses were inmates who had been housed near Pinson, but were moved "[w]ithin 30 minutes" of a BOP employee seeing that they were reviewing declarations for use in litigation. *See generally* Pinson Decl., ECF No. 367, Ex. A. Pinson states that she intends to file a separate lawsuit, but "in the interim asks this court to warn the defendants to cease and desist such conduct." Pl.'s 6th Mot. Access.

Defendants respond that the two other inmates in question were actually moved two days apart from one another, not on the same day, "contrary to what Pinson alleges." Defs.' Opp'n Mot. Regarding Witness Intimidation, ECF No. 372; *see also* Manci Decl. ¶ 4 (indicating that one of the other inmates was moved out of Pinson's unit on March 1, 2017, and the other on March 3, 2017).

Pinson now describes, including that various BOP employees[9] destroyed her legal research, prevented her from seeking legal assistance from other inmates, did not provide accommodations in the law library, broke the law library computer, or moved other inmates to prevent them from providing declarations. (Indeed, the Court understands the events underlying Pinson's current batch of allegations to have all occurred well after the filing of Pinson's second amended complaint.) Indeed, even the general theme that Pinson has been denied access to the courts is absent from Pinson's complaint.

To the extent that Pinson's filings could be construed as requests to amend her complaint, such a request would be denied. First, Pinson does not articulate any reasons justifying amending the complaint, and this Court does not construct arguments on her behalf. *See Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("[A] court need not act as an advocate for pro se litigants . . . ."). Second, amendment would be inappropriate. The history of this case presents a recent and close analogy in Pinson's previous request to amend her complaint to "add claims against one or more named employees at USP Terre Haute, who Pinson alleges have recently limited her access to postage stamps." Mem. Op., *Pinson v. United States Dep't of Justice*, No. 12-1872, 2017 WL 1247295, at *16 (D.D.C. Mar. 30, 2017), ECF No. 366. The Court denied leave to amend, finding that the proposed claim bore "at most—a tangential relationship to Pinson's original claims" because "[t]he proposed and existing claims are unconnected in time, the identity of the alleged perpetrator, the BOP facility involved, and the type of alleged retaliation." *Id.*

---

[9] In addition to the fact that they are not contained in her complaint, the Court also cannot grant the relief Pinson requests because Pinson appears to seek remedies against various BOP employees, but this Court "lacks the authority to issue a judgment that would bind a non-party." *Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 84 (D.D.C. 2015), *aff'd*, No. 2016-2320, 2017 WL 1349280 (Fed. Cir. Apr. 12, 2017) (citing *Taylor v. Sturgell*, 553 U.S. 880 (2008), and Charles Alan Wright & Arthur R. Miller, et al., 7 Fed. Prac. & Proc. Civ. § 1608 (3d ed.), other citations omitted)).

These same concerns require denying any motion to amend the complaint to add the claims described in Pinson's six motions. The alleged actions (destroying her legal research, preventing her from seeking legal assistance from other inmates, failing to provide accessible legal research tools for people with impaired vision, destroying the computer in the law library, and moving witnesses), occurred at a different time than the retaliation in her complaint, at different facilities, and with the participation of different BOP employees. As with Pinson's previous request to amend her complaint, "Pinson has not stated any reason that she could not pursue these claims in a separate action,[10] and thus it does not appear that she will be prejudiced by denial of the motion to amend. Given the advanced nature of this case, and that Pinson has accumulated three strikes under the PLRA, the Court declines to extend the complaint beyond the original claims. If Pinson wishes to pursue these new claims, she must bring a new case." *Id.*

Finally, to the extent that any of Pinson's claims concerning her access to the courts are related to her claims against Dignam and Samuels, a separate bar prevents this Court from granting any motion by Pinson to amend the complaint. Because Pinson is now represented by *pro bono* counsel on those claims, the Court would deny any *pro se* motion to amend the complaint, as discussed *infra* Part III.E.

---

[10] Pinson's statements concerning the difficulties of bringing new suits fall short of asserting that she is incapable of initiating a new case. *See* Pl.'s Joint Reply, ECF No. 355. "What the defense suggests is that as it moves plaintiff from state to state; district to district; circuit to circuit to circuit plaintiff should file cases anew when government actors employed by defendant retaliate. This only results in them then arguing plaintiff is litigious and not be believed." Furthermore, Pinson mentions at several points that she plans to bring separate lawsuits, thus indicating that she believes it is possible. *See, e.g.*, Pl.'s 3d Mot. Access, ECF No. 347 ("The Court is put on notice that a lawsuit will be filed at a future date against all involved."); Pl.'s 6th Mot. Access, ECF No. 367 (referring to "behavior which plaintiff will pursue with a separate lawsuit"). While the Court recognizes the challenges of engaging in litigation from prison, the Supreme Court has clearly indicated that considerations of ease of litigation by prisoners are not to take precedence over penological concerns such as orderly prison administration. *See generally Lewis v. Casey*, 518 U.S. 343 (1996).

## 2. Pinson's Claims Would Also Fail on the Merits

In addition to the procedural flaws the Court identifies with Pinson's six motions, the Court further notes that, if it reached the merits, it would still deny Pinson's motions.[11] First, Pinson's allegations that she was denied access to the courts stem from the conduct of BOP employees at MCFP Springfield. *See* Pl.'s 1st Mot. Access, ECF No. 345 (referring to "USMCFP Springfield employees"); Defs.' 1st Opp'n Access, ECF No. 352 (characterizing Pinson's claims in ECF No. 345, 346, and 347 as "against officials at her current housing facility, MCFP Springfield"); Pinson Decl., ECF No. 369, Ex. 1 (describing the claims of ECF No. 369 as involving "the USMCFP Springfield most secure isolation cell"); Pl.'s 5th Mot. Access, ECF No. 371 (signature block showing Pinson's location as "Springfield MO"); Pl.'s 6th Mot. Access, ECF No. 367 (signature block showing Pinson's location as "MCFP Springfield"). However, Pinson, is currently located at FMC Rochester. Notice Regarding Pinson's Change Address, ECF No. 384. "Normally, a prisoner's transfer or release from a prison moots any claim [s]he might have for equitable relief arising out of the conditions of [her] confinement in that prison." Mem. Op., *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 474, 478 (D.D.C. 2016), ECF No. 283 (quoting *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998)); *see also, e.g., Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) ("A prisoner's challenge to prison conditions or

---

[11] This also provides an alternative reason that the Court would deny any motion to amend the complaint to add the claims described in Pinson's six motions. *Cf. BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 24 (D.D.C. 2015) ("As is the case when a plaintiff seeks leave to amend a complaint, however, a court may deny a motion to file a supplemental complaint as futile 'if the proposed claim[s] would not survive a motion to dismiss.'" (quoting *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012))).

policies is generally rendered moot by his transfer or release."); *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (same). It therefore appears likely that Pinson's claims are moot.[12]

Second, Pinson characterizes her claims as violations of her constitutional right to access the courts. While such a cause of action exists, Pinson cannot meet the very high bar of showing that she has been injured by lack of access to the courts. Courts are reluctant to interfere in the management of prisons except in egregious cases.[13] *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur.").

The Supreme Court has therefore imposed a requirement that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"—instead:

> the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared

---

[12] In addition, Defendants note that Pinson's proposed claims may be barred by a failure to exhaust her administrative remedies. *See, eg.*, Defs.' 1st Opp'n Access at 4, ECF No. 352. Although Plaintiff argues that she has *begun* to exhaust her administrative remedies, she does not claim that this process has been completed. *See* Pl.'s Joint Reply, ECF No. 355.

[13] Furthermore, the Court notes that for prisoners on administrative lockdown—as Pinson apparently was during at least some of the time period in question, Stalhood Decl. ¶ 3, ECF No. 352—concerns of institutional safety have added weight, even if they burden the inmate's access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 361–62 (1996) ("[The] principle of deference has special force with regard to [prisoners on lockdown], since the inmates in lockdown include the most dangerous and violent prisoners in the Arizona prison system, and other inmates presenting special disciplinary and security concerns. [Even if] lockdown prisoners routinely experience delays in receiving legal materials or legal assistance, some as long as 16 days, [] so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury (which, of course, the District Court did not find here)." (internal quotation marks and citations omitted)).

was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis*, 518 U.S. at 351; *see also Isaac v. Samuels*, 132 F. Supp. 3d. 56, 59 (D.D.C. 2015) ("[I]t is not enough for an inmate to state in a conclusory fashion that he was denied access to the courts; rather, he also must allege actual injuries as a result of the denial by claiming that an actionable claim was rejected, lost, or prevented from being filed." (citing *Akers v. Watts,* 740 F. Supp. 2d 83, 96–97 (D.D.C. 2010))).

Here, Pinson identifies no complaint that she was actually prevented from filing, and is thus far from demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353. As reflected by the sheer number of motions addressed herein, suffice it to say that the Court's docket does not reflect in any way that Pinson has been denied access to this Court. To the extent that Pinson suggests that she has suffered a less severe injury, such as an impairment to her ability to craft more powerful legal arguments than she has to date, that injury would not implicate the right of access to the courts. The Supreme Court has clarified that the right of access to the courts does not include a right to "litigate effectively once in court" because "[t]o demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires." *Lewis*, 518 U.S. at 354.

The infirmities of Pinson's briefing here aside, the Court reminds Defendants that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis*, 518 U.S. at

346 (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). The Court trusts that Defendants will conduct themselves in accordance with their constitutional duties.

### C. Motion to Enjoin Transfer

Although it shares many similarities with the six motions previously discussed, the Court separately addresses Pinson's motion for a protective order or temporary restraining order preventing the BOP from housing her in a "heightened visibility cell" at Federal Transfer Center (FTC) Oklahoma City. Pl.'s Mot. Prot. Order Temp. Restraining Order (Pl.'s Mot. Transfer), ECF No. 341.

Pinson alleges that she has previously been placed in heightened visibility cells at FTC Oklahoma City and that these cells involve restrictions on her access to "pen, paper, pencils or envelopes." Pl.'s Mot. Transfer; *see also* Pinson Decl. ¶ 4, ECF No. 341, Ex. A (indicating that an employee at FTC Oklahoma City told Pinson she would "stop all lawsuits and administrative remedies while you[']re here"). FTC Oklahoma City is a transfer center, which means that prisoners are housed there during the process of transferring between other facilities. Federal Transfer Center Holdover Admission and Orientation Handbook, Federal Bureau of Prisons (Jan. 2015) at 8, https://www.bop.gov/locations/institutions/okl/OKL_holdover_aohandbook.pdf ("In-transit inmates are held at the Federal Transfer Center for a variety of reasons . . . . It is not uncommon for an inmate to be held for more than 60 days . . . . The average length of stay is 4 to 6 weeks."). The Court therefore understands Pinson to be concerned about the conditions while in transit between other facilities.

Multiple obstacles bar this Court from granting Pinson the relief she seeks. First, like the six previous motions, Pinson's claims about her treatment at FTC Oklahoma City do not appear in her complaint. *See supra* Part III.B.

Second, like the six previous motions,[14] this motion primarily focuses on Pinson's ability to access the courts (in this case, due to the deprivation of writing implements and mail). Like the previous six motions, Pinson's request for relief from transfer fails to identify any specific injury that she has suffered, such as a complaint alleging constitutional injury that she was unable to file.

Third, Defendants enjoy an unusually high level of deference from the courts in relation to their penological decisions to transfer inmates. *See Lewis v. Casey*, 518 U.S. 343, 361 (1996) ("There are further reasons why the order here cannot stand. We held in *Turner v. Safley*, 482 U.S. 78 (1987), that a prison regulation impinging on inmates' constitutional rights 'is valid if it is *reasonably related* to legitimate penological interests.'" (emphasis added)); *Pitts v. Thornburgh*, 866 F.2d 1450, 1453 (D.C. Cir. 1989) ("[I]ssues of prison management are, both by reason of separation of powers and highly practical considerations of judicial competence, peculiarly ill-suited to judicial resolution . . . courts should be loath to substitute their judgment for that of prison officials and administrators . . ."); *Tanner v. Fed. Bureau of Prisons*, 433 F. Supp. 2d 117, 124 (D.D.C. 2006) ("Moreover, the defendant has authority to, at any time, 'direct the transfer of a prisoner from one penal or correctional facility to another,' and courts give

---

[14] Unlike the six previous motions, it is not apparent that this claim is moot. Pinson alleges that she has previously been transferred through FTC Oklahoma City, and, in this Court's experience, Pinson is frequently transferred between facilities. *See* Notice Regarding Pinson's Change Address, ECF No. 384 (noting that Pinson was transferred to Minnesota at some time prior to June of 2017); Notice Pl.'s Change Address, ECF No. 333 (noting that Pinson was transferred to Missouri at some time prior to October of 2016); Notice Filing, ECF No. 303 (noting that Pinson was transferred to Indiana at some time prior to July of 2016); Notice Address Change, ECF No. 273 (noting that Pinson was transferred to Pennsylvania at some time prior to March of 2016). The Court further discounts the DOJ's unsupported statement in its opposition that Pinson "is not scheduled to be moved elsewhere," Defs' Opp'n Pl.'s Mot. Transfer (Defs.' Opp'n Transfer) at 2, ECF No. 342, given that Pinson was transferred to Minnesota shortly after filing the instant motion.

deference to prison officials' exercise of this authority. The court is mindful that the defendant is entitled to deference when it acts within its prison management authority." (quoting 18 U.S.C. § 3621(b) and citing *Women Prisoners of the D.C. Dept. of Corr. v. District of Columbia*, 93 F.3d 910, 931–32 (D.C. Cir. 1996))).

Finally, Pinson requests relief in the form of a temporary restraining order or preliminary injunction. "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008)). For the Court to grant a preliminary injunction, Pinson must prove that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014); *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley,* 644 F.3d at 392).[15]

None of the four factors weighs in Pinson's favor. As previously discussed, the deference given to prisoner transfer decisions and Pinson's lack of an identifiable injury to her ability to access the courts combine to convince the Court that she is not likely to succeed on the merits. Nor has Pinson made a clear showing that she will imminently be sent to FTC Oklahoma, or that she will be prevented from accessing writing implements and mail while there. *See Power Mobility Coal. v. Leavitt*, 404 F.Supp.2d 190, 204 (D.D.C. 2005) ("Proving irreparable injury is a

---

[15] Traditionally, the D.C. Circuit evaluates the four factors for a preliminary injunction on a "sliding scale" whereby a movant's unusually strong showing on one factor could compensate for weaker showings on the other factors. *See, e.g., Davis v. Billington*, 76 F. Supp. 3d 59, 63–64 (D.D.C. 2014) (citing *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). However, it remains unclear whether the Supreme Court invalidated the D.C. Circuit's sliding scale in *Winter v. Natural Resources Defense Council. See* Mem. Op., *Pinson v. DOJ*, 177 F. Supp. 3d 474, 476 (D.D.C. 2016), ECF No. 283.

considerable burden, requiring proof that the movant's injury is certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985))). Given the high deference given to the BOP's penological decisions, the Court cannot conclude that the balance of the equities tips in Pinson's favor or that the public interest favors injunctive relief. Thus, the Court will deny Pinson's motion for a temporary restraining order or preliminary injunction.

Although the Court rejects the relief Pinson requests, the Court notes that Pinson may move for extensions of filing deadlines if she is negatively impacted by future transfers, and that both Defendants and the Court have been sympathetic to such requests in the past. Furthermore, the Court fully expects that the BOP will comply with its constitutional duties within the context of its penological concerns and Pinson's medical needs. *See Bounds v. Smith*, 430 U.S. 817, 824–5 (1977) ("It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.").

### D.  Motion for Sanctions

Pinson requests that this Court sanction Defendants' counsel. Pl.'s Mot. Sanctions DOJ Counsel (Pl.'s Mot. Sanctions), ECF No. 348. Pinson appears to argue that sanctions are appropriate for two reasons. First, because Defendants' counsel incorrectly stated that Pinson was at Terre Haute and was not scheduled to be moved, when in fact Pinson had already been moved and was then moved again. Pl.'s Mot. Sanctions at 1. Second, because Defendants' counsel "cavalier[ly]" discounted Pinson's concerns that she may be denied writing implements at FTC Oklahoma City. Pl.'s Mot. Sanctions at 1–2. Pinson also requests that "BOP agree to a

phone call to counsel once a week to keep the Court aware of her access to the [c]ourts." Pl.'s

Mot. Sanctions at 2.

Under Federal Rule of Civil Procedure 11(b), the Court may impose sanctions if "a

pleading, written motion, or other paper . . . [is] presented for any improper purpose[;] . . . the

allegations and other factual contentions have [no] evidentiary support[; or] the denials of factual

contentions are [un]warranted on the evidence[.]" Fed. R. Civ. P. 11(b). The Court applies "an

objective standard of reasonable inquiry on represented parties who sign papers or pleadings."

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 554 (1991). Justifying

sanctions requires "clear and convincing evidence . . . of the predicate misconduct" and "of bad

faith." *3E Mobile, LLC v. Global Cellular, Inc.*, 222 F. Supp. 3d 50, 53–54 (D.D.C. 2016) (citing

*Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995)). "The Court has discretion to

determine both whether a Rule 11 violation has occurred and what sanctions should be imposed

if there has been a violation." *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, 305 F.R.D. 3, 6

(D.D.C. 2014) (internal quotation marks and citations omitted). Furthermore, "the imposition of

Rule 11 sanctions is not something courts take lightly; instead, Rule 11 sanctions are an extreme

punishment for filing pleadings that frustrate judicial proceedings." *Id.*

Here, the imposition of Rule 11 sanctions is not appropriate. First, Rule 11 requires that

the party seeking sanctions must serve the allegedly offending party with the motion for

sanctions at least twenty-one days before filing it with the court, in order to give the allegedly

offending party the opportunity to correct its filing. Fed. R. Civ. P. 11(c)(2). Here, Pinson filed

her motion directly with the Court and does not appear to have given Defendants' counsel any

opportunity to respond—therefore, sanctions are not appropriate.[16] *See Brown v. FBI*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (declining to consider sanctions when *pro se* party seeking sanctions failed to provide adequate notice to the allegedly offending party).

Furthermore, Pinson has presented no evidence of bad faith, much less clear and convincing evidence. Although it is unfortunate that the DOJ attorneys misstated Pinson's current location—and indeed, the Court fully expects that they will attain a higher standard of accuracy in the future—the Court cannot conclude that the DOJ attorneys fell below an objective standard of reasonable inquiry, given the frequency of Pinson's transfers. *See* Defs.' 1st Opp'n Access, ECF No. 352 ("[C]ounsel erroneously stated that she is being held in the Terre Haute, Indiana, facility, when in fact she is at MCFP Springfield. . . . This inadvertent misstatement, however, was entirely immaterial . . . ."). Furthermore, the misstatement did not materially affect this Court's decision and did not delay the progress of the litigation. Nor does the Court understand why any "cavalier" statement by the DOJ attorneys would warrant sanctions under Rule 11. Pinson therefore has not met the high bar and the Court will not exercise its discretion to sanction the DOJ attorneys. Nor does the Court believe that the additional measures Pinson suggests, such as a weekly phone call, are necessary as Pinson has proven able in the past to maintain contact with the courts. While the Court understands Pinson to argue that certain circumstances could render her incapable of petitioning for relief (for example, a total deprivation of writing implements), Pinson has not shown that such a situation is imminent and the Court believes that the more prudent course of action would be to address any such issues as they arise within a concrete factual context.

---

[16] Furthermore, it appears that Defendants' counsel has essentially rectified the error by acknowledging that "counsel erroneously stated that [Pinson] is being held in the Terre Haute, Indiana, facility, when in fact she is at MCFP Springfield." Defs.' 1st Opp'n Access, ECF No. 352.

Finally, the Court reminds Pinson that an accusation of wrongdoing is also serious. The Court notes that Pinson has repeatedly requested Rule 11 sanctions, and repeatedly been denied. *See, e.g.*, Mem. Op., *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 474, 478 (D.D.C. 2016), ECF No. 283 ("[T]the Court finds that Rule 11 sanctions against Defendants are inappropriate in this case given the current ruling denying [Pinson's] preliminary injunction motion."); Mem. Op., *Pinson v. U.S. Dep't of Justice*, 104 F. Supp. 3d 30, 40 (D.D.C. 2015), ECF No. 203 ("Neither has [Pinson] shown that the Defendants' statements in opposition to his motion to compel production are sanctionable under Rule 11."); Mem. Op., *Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 32 (D.D.C. 2013), ECF No. 26 ("[Pinson] provides insufficient evidence to support [the Rule 11] claim and the Court denies the motion."); *see also* Pl.'s Opp'n , ECF No. 340 (requesting sanctions against "[e]mployees . . . at MCFP Springfield"). "Rule 11 is not a toy," and the Court hopes that Pinson will "think twice," *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988), before requesting sanctions in the future, or her "cavalier approach to sanctions motions could result in [her] being sanctioned [herself]," *Jordan v. U.S. Dep't of Labor*, No. 16-1868, 2017 WL 3382057, at *20 (D.D.C. Aug. 4, 2017).

### E.  Motion to File Supplemental Complaint

Pinson seeks to file a supplemental complaint under Federal Rule of Civil Procedure 15(d). Mot. File Suppl. Compl. (Pl.'s Mot. Suppl.), ECF No. 373. The proposed modifications appear to relate to Pinson's claims that she has been retaliated against for exercising her constitutional rights. *See* Pl.'s Mot. Suppl. ("The plaintiff remains in . . . solitary confinement . . . . Thomas Kane . . . has continued Samuels's actions of isolating Plaintiff."). In addition to being held in solitary confinement, Pinson alleges that she has been prevented from taking outdoor recreation and driven to attempt suicide. Pl.'s Mot. Suppl.

Defendants argue that the Court should deny Pinson's motion because "Pinson is a represented party with respect to the claims in question" and *pro bono* counsel "should be permitted to fulfill his role." Defs.' Opp'n Pl.'s Mot. Suppl. Compl. (Defs.' Opp'n Suppl.) at 1, ECF No. 377. Pinson herself notes that these claims will now be handled by her *pro bono* counsel, stating that "[a]ssuming [counsel] will be taking over this is plaintiff's final word on the *Bivens* claims." Pl.'s Mot. Suppl. at 2. This Court agrees that to permit Pinson to file motions *pro se* while represented by counsel may impede judicial efficiency and lead to duplicative briefing. Other courts have likewise concluded that they need not consider motions filed *pro se* while the movant is represented by counsel. *See, e.g.*, *United States v. Drew*, 422 Fed. App'x 1, 2 (D.C. Cir. 2011) ("Likewise, the district court did not err in declining to rule on appellant's *pro se* motion to dismiss, because appellant and his counsel simply requested that the motion be made part of the record, not that it be ruled upon . . . ."); *In re Miller*, No. 96-00431, 2009 WL 4730755, at *3 n.3 (Bankr. D.D.C. Dec. 3, 2009) ("[Plaintiff] filed this motion *pro se*, although he was represented by counsel at the time. . . . [T]his is a grounds for striking the motion."); *cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (holding that a trial judge need not permit "hybrid" representation with both represented and *pro se* features in a criminal trial).

Because these claims relate to Pinson's existing claims of retaliation—on which Pinson is now represented by *pro bono* counsel—the Court will deny Pinson's motion to file a supplemental complaint. The Court's denial is without prejudice to any future motion to amend or supplement the complaint that may be filed by Pinson's counsel.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to modify appointment of counsel (ECF No. 335) is **DENIED**; Defendants' motion to file under seal (ECF No. 338) is **GRANTED**;

Plaintiff's motion to access the courts (ECF No. 345) is **DENIED**; Plaintiff's motion to enjoin block to the courts (ECF No. 346) is **DENIED**; Plaintiff's motion for legal actions (ECF No. 347) is **DENIED**; **CONSTRUING** Plaintiff's motion on law library access (ECF No. 369) as a motion and **DENYING** that motion; **CONSTRUING** Plaintiff's notice to the Court (ECF No. 371) as a motion and **DENYING** that motion; Plaintiff's motion regarding witness intimidation (ECF No. 367) is **DENIED**; Plaintiff's motion for a protective order or temporary restraining order (ECF No. 341) is **DENIED**; Plaintiff's motion for sanctions (ECF No. 348) is **DENIED**; and Plaintiff's motion for leave to file supplemental complaint (ECF No. 373) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 26, 2017                              RUDOLPH CONTRERAS
                                               United States District Judge