# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 332, 336 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson has filed multiple Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests with various components of the U.S. Department of Justice (DOJ). At issue here are certain requests she[1] submitted to the Executive Office of the United States Attorneys (EOUSA). Although the EOUSA responded to the requests, Pinson challenged its responses. This Court has already granted in part and denied in part two motions for summary judgment concerning these requests. *See generally* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1 (D.D.C. 2015), ECF No. 246; 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137 (D.D.C. 2016), ECF No. 291.

---

[1] Pinson identifies using feminine pronouns. This Court adopts Pinson's usage, and the government has occasionally done the same. *See* Defs.' Notice Repeat Service of FOIA Releases, ECF No. 343; *see also* Defs.' Opp'n Pl.'s Mot. Strike, ECF No. 337. The Court's use of feminine pronouns does not convey any substantive or legal characterization.

Now before the Court is the DOJ's third motion for summary judgment as to the five remaining FOIA requests,[2] Def.'s 3d Mot. Summ. J., ECF No. 332, as well as a motion by Pinson to strike the DOJ's motion, Mot. Strike, ECF No. 336. For the reasons stated below, the Court will again grant in part and deny in part the DOJ's motion for summary judgment, and deny Pinson's motion to strike.

## II. BACKGROUND

This Court has explained the factual background in detail in its prior Memorandum Opinions. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 5–7 (D.D.C. 2015), ECF No. 246; 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 141–45 (D.D.C. 2016), ECF No. 291. The Court therefore confines its discussion to the facts most relevant to the five requests at issue in the present motion.

---

[2] Pinson initially submitted eighteen numbered requests and twenty-one unnumbered requests to the EOUSA. *See generally* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1 (D.D.C. 2015), ECF No. 246; 1st Order, ECF No. 245. After filing and immediately withdrawing a motion for summary judgment in 2015, Defs.' Mot. Summ. J., ECF No. 150; Defs.' Mot. Withdraw, ECF No. 158, the EOUSA submitted its "first" motion for summary judgment. Defs.' 1st Mot. for Summ. J., ECF No. 170. Based upon the first motion, the Court granted the EOUSA summary judgment as to Request Nos. 12-1752 and 12-3947, and all twenty-one of the unnumbered requests. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 10 (D.D.C. 2015), ECF No. 246. In addition, the Court granted the EOUSA summary judgment on eight requests (Nos. 10-4127, 10-4177, 12-1751, 12-1761, 12-1762, 12-3065, 12-3094, and 12-3096) because Pinson "expressly concede[d] all claims with respect to" them. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 5 n.2 (D.D.C. 2015), ECF No. 246; Pl.'s Resp. at 1, ECF No. 223.

The EOUSA subsequently filed a second motion for summary judgment. Defs.' 2d Mot. for Summ. J., ECF No. 254. In resolving that motion, the Court granted the EOUSA summary judgment as to Request Nos. 11-3289, 11-4508, 12-1748, 12-1764, 12-3095, and 12-3097. *See generally* 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137 (D.D.C. 2016), ECF No. 291; 2d Order, ECF No. 290. Five numbered requests, therefore, remain at issue here—Nos. 12-1754, 12-1757, 12-1758, 12-1760, and 13-1085.

## A. Request No. 12-1754

Request No. 12-1754 sought the "production of all documents, emails, [and] records" related to Case No. SACR 07-202(A)-DOC in the Central District of California. *See* 3d Luczynski Decl. ¶ 3, ECF No. 332–3;[3] Freedom of Information Act Request, ECF No. 254-4, Ex. P.[4] Pinson did not specifically limit the amount of search time or pages produced by this request. Freedom of Information Act Request, ECF No. 254-4, Ex. P. Pinson later clarified as part of an appeal that this request included public records. Freedom of Information Act Appeal (Oct. 31, 2013), ECF No. 254-4, Ex. T (complaining that the agency "failed to release public records").[5]

After the Court denied the DOJ's second motion for summary judgment concerning this request,[6] the DOJ performed another search for "responsive records, including public records." 3d Luczynski Decl. ¶ 6. The FOIA coordinator interpreted the (A) at the end of the case number to refer to the records concerning one of the defendants in the overall case, Jesse Vasquez. Rhedrick Decl. ¶ 7, ECF No. 332-3, Ex. A. The FOIA coordinator determined that the case was

---

[3] Consistent with its prior practice, the Court refers to the document docketed at ECF No. 332-3 as the "3d Luczynski Decl," although the Court notes that the DOJ has titled this document "Second Declaration Addressing Court's June 1, 2016[] Order."

[4] Pinson's request sought documents from multiple federal districts, but the EOUSA separated them into different numbered requests. Request No. 12-1754 deals only with the documents sought from the Central District of California. 3d Luczynski Decl. ¶ 3.

[5] Although the appeal that refers to seeking public records does not list Request No. 12-1754, the DOJ has apparently treated Pinson as also seeking public records concerning Request No. 12-1754. 3d Luczynski Decl. ¶ 5.

[6] Request No. 12-1754 was not addressed in the DOJ's first motion for summary judgment. *See generally* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 4 n.1 (D.D.C. 2015), ECF No. 246. In its second motion for summary judgment, the DOJ argued that all responsive documents were exempt from release under Exemption 7(A) because the case was currently pending appeal. *See* Salazar Decl. ¶¶ 4–5, ECF No. 254-4, Ex. X1. The Court denied the DOJ's second motion for summary judgment because the DOJ failed to inform Pinson of its determination. *See* 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 143, 148–49 (D.D.C. 2016), ECF No. 291. The case has now been closed. Rhedrick Decl. ¶¶ 11–12, ECF No. 332-3.

closed, and obtained twenty physical boxes of records relating to Case No. SACR 07-202. Rhedrick Decl. ¶¶ 11–12. The FOIA coordinator performed a manual search of all twenty boxes by looking for Jesse Vasquez's name in the caption or header of documents. Rhedrick Decl. ¶¶ 13–14. This search resulted in 78 responsive pages, which the FOIA coordinator transmitted to the EOUSA. Rhedrick Decl. ¶ 15. The EOUSA released all of the pages—in full and without redactions—to Pinson. *See* 3d Luczynski Decl. ¶ 7; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. B.[7]

Although the EOUSA has previously asserted that FOIA Exemption 7(A) justified withholding some responsive documents while the underlying case was pending appeal, *see* ECF No. 254-2 at 7–8, the case is now closed and the Court understands that the EOUSA searched for all responsive records and did not withhold any documents from the results of the current search. *See* Rhedrick Decl. ¶ 9 ("Case View is the computer case tracking system used by the USA . . . to locate *any and all* corresponding files." (emphasis added)); Rhedrick Decl. ¶ 11 ("*[A]ll documents* concerning closed cases are to be stored [within the twenty boxes searched]." (emphasis added)); Rhedrick Decl. ¶¶ 13–14 ("I personally searched through twenty boxes of documents . . . Due to the large number of documents in the 20 boxes of records relating to this case, it took me approximately two hours to search them by hand."). The DOJ now moves for summary judgment on the grounds that it conducted a search reasonably calculated to identify all responsive records and it has released all responsive records in full. *See* Defs.' Mem. Supp. 3d Mot. for Summ. J. (Defs.' 3d MSJ) at 5, ECF No. 332-2.

---

[7] The Rhedrick declaration states that 78 responsive pages were located, and the release letter states that 78 pages were disclosed in full. Rhedrick Decl. ¶ 15; Letter to Jeremy Pinson from Thomas Anderson (Oct. 27, 2016), ECF No. 332-3, Ex. B. However, the third Luczynski declaration states that 57 pages of records were released. The Court assumes that the "57" is a typographical error.

## B. Request No. 12-1757

Request No. 12-1757 sought the "production of all documents, emails, or records" for cases 11-cv-1906,[8] 11-cv-1346, and 10-cv-949 in the Middle District of Pennsylvania. *See* 3d Luczynski Decl. ¶ 8; Freedom of Information Act Request, ECF No. 254-4, Ex. Y.[9] Pinson did not explicitly limit the number of pages produced or search time occupied by this request. Freedom of Information Act Request, ECF No. 254-4, Ex. Y. Pinson later clarified during an appeal that this request also sought public records. Freedom of Information Act Appeal (Oct. 31, 2013), ECF No. 254-4, Ex. T (complaining that the agency "failed to release public records").

After the Court denied the DOJ's second motion for summary judgment,[10] the EOUSA conducted a new search. *See* 2d Matuszewski Decl. ¶ 14, ECF No. 332-3, Ex. C. The FOIA

---

[8] Because Pinson's original, handwritten request is difficult to read, the DOJ noted that it was not certain if Pinson sought records from 11-cv-19**06**, or from 11-cv-19**08**. 3d Luczynski Decl. ¶ 13. However, a search for 11-cv-1908 revealed that the EOUSA would have no records relating to it because no U.S. attorney was ever served or entered an appearance. 3d Luczynski Decl. ¶ 13. The search therefore proceeded for 11-cv-1906, although the EOUSA separately sent Pinson 43 pages of public docket information concerning case 11-cv-1908 out of an abundance of caution. 3d Luczynski Decl. ¶ 13; Letter from Thomas Anderson to Jeremy Pinson (Oct. 28, 2016), ECF No. 332-3, Ex. D2. The Court understands the two isolated references to "13-cv-1096" and "13-cv-1098" in the DOJ's briefing to be typographical errors. *See* Defs.' 3d MSJ at 6 n.1, ECF No. 332-2.

[9] Pinson's request sought documents from multiple federal districts, but the EOUSA separated them into different numbered requests. Request No. 12-1757 deals only with the documents sought from the Middle District of Pennsylvania. 3d Luczynski Decl. ¶ 10.

[10] Initially, the EOUSA did not release any records to Pinson, on the grounds that the requested records concerned a third party and therefore "cannot be released absent express authorization and consent of the third party, proof that the subject of the request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest." 3d Luczynski Decl. ¶ 10. Pinson appealed the EOUSA's determination that the records could not be released, but the EOUSA closed the appeal after Pinson filed this lawsuit. *See* 1st Luczynski Decl. ¶ 27, ECF No. 170-4. The Court denied the DOJ's first motion for summary judgment concerning this request because the DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 8–12 (D.D.C. 2015), ECF No. 246. The DOJ then performed a search, identified thirty-seven pages of records, and withheld them all pursuant to FOIA Exemption 7(C). *See* 1st Matuszewski Decl. ¶ 13, ECF No. 254-4, Ex. DD. The Court denied the DOJ's

coordinator used the Middle District of Pennsylvania's electronic case management system to identify records relating to case 11-cv-1906 and 10-cv-949,[11] and obtained those case files from the National Archives. 2d Matuszewski Decl. ¶ 15. A search of the case files produced a total of 197 responsive pages of documents, which were forwarded to the EOUSA. 2d Matuszewski Decl. ¶¶ 17–18. The EOUSA's declaration does not explain what type of search was performed on the files, or how examining the files "produced" the stated number of pages. *See* 2d Matuszewski Decl. ¶¶ 16–18 ("A request to the Federal Records Center was made to retrieve case files 11-CV-1906 and 10-CV-949. A second search of 11-CV-1906 produced 22 pages of correspondence, e-mails, declarations and inmate data from the Bureau of Prisons as well as 67 pages of court-filed documents. . . . A second search of 10-CV-949 produced 14 pages of correspondence and e-mails as well as 94 pages of court-filed documents."). Similarly, while the EOUSA's declaration states that "[a]n additional computer search of the USAO MDPA files was performed and no documents were located for neither [sic] civil numbers 11-CV-1906 nor 10-CV-949," the declaration does not explain how the search was performed, or what search terms were used. 2d Matuszewski Decl. ¶ 19.

---

second motion for summary judgment for several reasons, including that the DOJ contradicted itself concerning whether a search had been conducted, the DOJ did not specify which search terms it used, and the DOJ released some public records to Pinson despite claiming to withhold records. 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 147–48 (D.D.C. 2016), ECF No. 291.

[11] The FOIA coordinator had previously determined that the electronic case management system contained no records relating to 11-cv-1346. 2d Matuszewski Decl. ¶ 11. A search of PACER suggested that the EOUSA had no records because that case was dismissed before the U.S. Attorney's office was served. 2d Matuszewski Decl. ¶ 12. It does not appear that a second search was performed for files relating to 11-cv-1346.

The EOUSA subsequently released 200 pages of records[12] in full to Pinson. 3d Luczynski Decl. ¶ 13, ECF No. 332-3; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. D. This 200 pages appears to have included both the 67 and 94 pages of "court-filed documents" identified from the two cases as well as 22 and 14 pages of correspondence, emails, and other Bureau of Prisons documents. 2d Matuszewski Decl. ¶¶ 17–18. It is unclear from the EOUSA's filings if the search was intended to produce *all* responsive documents, or the search was only for public records (or, alternatively, if non-public records were withheld from the release). *See* 2d Matuszewski Decl. ¶ 14 ("I was directed . . . to perform a second search of the files located . . . and to provide all documents contained within the files."); 2d Matuszewski Decl. ¶ 20 ("All systems of records located within USAO/MDPA that were likely to contain records responsive to Pinson's request have been searched. The searches were reasonably calculated to uncover all relevant records responsive to Pinson's request."). *But see* 3d Luczynski Decl. ¶ 13 ("A new search for publicly filed responsive records . . . has revealed 200 pages of responsive public records to plaintiff's request."). The DOJ now again moves for summary judgment, this time on the basis that its search was reasonably calculated to identify all responsive records without withholdings. *See* Defs.' 3d MSJ at 8.

## C. Request No. 12-1758

Request No. 12-1758 sought the "production of all documents, emails, or records" regarding cases 11-cv-140-KSF, 11-cv-96-HRW, and 10-cv-299-HRW in the Eastern District of Kentucky. *See* 3d Luczynski Decl. ¶ 14; Freedom of Information Act Request, ECF No. 254-4,

---

[12] Adding together the 67, 22, 94, and 14 pages enumerated in the Matuszewski declaration suggests that a total of 197 pages were identified. *See* 2d Matuszewski Decl. ¶ 17–18. The Court is therefore at a loss to explain the three additional pages apparently released to Pinson.

Ex. Y.[13] Pinson did not limit the search time or number of pages generated by this request.

Freedom of Information Act Request, ECF No. 254-4, Ex. Y. Pinson later clarified as part of an

appeal that this request also sought public records. Freedom of Information Act Appeal (Oct. 31,

2013), ECF No. 254-4, Ex. T (complaining that the agency "failed to release public records").

After the Court denied the DOJ's second motion for summary judgment,[14] the EOUSA

performed a new search for responsive records. Long Decl., ECF No. 332-3, Ex. F. The FOIA

coordinator for the Eastern District of Kentucky searched the district's electronic case

management system and PACER for records responsive to each of the case numbers. Long Decl.

¶¶ 8–9. The search of the case management system did not produce any records relating to 11-

cv-96 or 11-cv-140. Long Decl. ¶ 11. A PACER search for the two cases revealed that "[the]

office was never served or involved in [these] cases," Long Decl. ¶ 11, explaining the lack of

records. The case management system did contain files relating to 11-cv-299. Long Decl. ¶ 11.

According to the FOIA coordinator, these files comprised four volumes of pleadings, two

---

[13] Pinson's request sought documents from multiple federal districts, but the EOUSA separated them into different numbered requests. Request No. 12-1754 deals only with the documents sought from the Eastern District of Kentucky. 3d Luczynski Decl. ¶ 14.

[14] Initially, the EOUSA did not release any records to Pinson, explaining that the requested records concerned a third party which "generally cannot be released absent express authorization and consent of the third party, proof that the subject of the request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest." 3d Luczynski Decl. ¶¶ 9, 15. Pinson appealed that determination, but the appeal was closed when she filed this lawsuit. 3d Luczynski Decl. ¶¶ 16–18. Similar to Request No. 12-1757, the Court denied the DOJ's first motion for summary judgment with respect to this request, concluding that Pinson had constructively exhausted her administrative remedies and that the DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 8–12 (D.D.C. 2015), ECF No. 246. The Court denied the DOJ's second motion for summary judgment for several reasons, including that the DOJ contradicted itself concerning whether a search had been conducted, the DOJ did not specify which search terms it used, and the DOJ released some public records to Pinson despite claiming to withhold records. 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 147–48 (D.D.C. 2016), ECF No. 291.

volumes of correspondence, and several file folders. Long Decl. ¶ 11. The FOIA coordinator then "forwarded all documents in these files" to the EOUSA. Long Decl. ¶ 12. The EOUSA released 100 pages in full to Pinson free of charge and informed her that there were approximately 1,000 additional pages available for a fee of $100. *See* 3d Luczynski Decl. ¶ 18; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. E.

Although the EOUSA has previously argued that FOIA Exemption 7(C) would justify withholding some or all of the records responsive to this request, *see* ECF No. 254-4 at 4–7, the Court now understands that the EOUSA undertook to search for all responsive records and did not withhold any identified records. *See* Long Decl. ¶ 11 ("[Case number 10-cv-299] consists of 4 volumes of pleadings, 2 volumes of correspondence, and numerous [Redwelds]."); Long Decl. ¶ 12 ("I forwarded all documents in these files to EOUSA on disc. . . . I included Court Filed Public Records in the documents provided to EOUSA."). The DOJ now again moves for summary judgment, contending that its search was reasonably calculated to identify all responsive records without withholdings. *See* Defs.' 3d MSJ at 9.

### D. Request No. 12-1760

Request No. 12-1760 sought "copies [of] all documents, email[s], or records in . . . Northern District of West Virginia Case No. 11-CR-51." *See* 2d Zumpetta-Parr Decl. ¶ 6, ECF No. 332-3, Ex. G; Freedom of Information Act Request, ECF No. 254-4, Ex. Y.[15] Pinson did not explicitly limit the search time or pages produced by this request. Freedom of Information Act Request, ECF No. 254-4, Ex. Y. Pinson later clarified as part of an appeal that this request

---

[15] Pinson's request sought documents from multiple federal districts, but the EOUSA separated them into different numbered requests. Request No. 12-1754 deals only with the documents sought from the Northern District of West Virginia. 3d Luczynski Decl. ¶¶ 8, 19.

included public records. Freedom of Information Act Appeal (Oct. 31, 2013), ECF No. 254-4, Ex. T (complaining that the agency "failed to release public records").

After the Court denied the DOJ's second motion for summary judgment,[16] the EOUSA performed a new search for responsive records. 2d Zumpetta-Parr Decl. ¶ 7. The FOIA coordinator for the district searched PACER for 11-cr-51. Zumpetta-Parr Decl. ¶ 9. This search identified three different cases with this number. Zumpetta-Parr Decl. ¶ 9. The FOIA coordinator consulted an "attorney for EOUSA" and decided to focus on the *Hackett* case, which "involved a prosecution of 6 co-defendants for a conspiracy to commit assault against fellow prison inmates, a type of case similar to the others on which Pinson sought records." Zumpetta-Parr Decl. ¶ 9. The FOIA coordinator then searched all public records on two case management systems and PACER, and "located everything on PACER and in our case files themselves, which included three case files, and scanned the entire file and sent [it] to EOUSA, which consisted of more than 165 scanned files." Zumpetta-Parr Decl. ¶¶ 10–11. According to the EOUSA, this comprised 900

---

[16] Initially, the EOUSA did not release any records to Pinson, explaining that the requested records concerned a third party which "generally cannot be released absent express authorization and consent of the third party, proof that the subject of the request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest." *See* 3d Luczynski Decl. ¶¶ 20–21. Pinson appealed that determination, but the appeal was closed when she filed this lawsuit. 3d Luczynski Decl. ¶¶ 22–23. Similar to Request Nos. 12-1757 and 12-1758, the Court denied the DOJ's first motion for summary judgment with respect to this request, concluding that Pinson had constructively exhausted her administrative remedies and that the DOJ had failed to provide a reasonably detailed affidavit supporting the agency's search for responsive documents. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 8–10, 13 (D.D.C. 2015), ECF No. 246. The DOJ argued in its second motion for summary judgment that the EOUSA properly refused to conduct a search for documents responsive to request 12–1760. *See* Defs.' 3d MSJ at 4–7, ECF No. 254-2. The Court denied the DOJ's second motion for summary judgment for several reasons, including that the DOJ contradicted itself concerning whether a search had been conducted, the DOJ did not specify which search terms it used, the DOJ released some public records to Pinson despite claiming to withhold records, and the DOJ apparently limited its search with the term "Jeremy Pinson" against the text of the FOIA request. 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 147–48 (D.D.C. 2016), ECF No. 291.

pages of records. 3d Luczynski Decl. ¶ 24. Of those, 100 pages were released to Pinson for free

in full, and Pinson was informed that the others could be obtained for an $80 fee. 3d Luczynski

Decl. ¶ 25; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. H.

Although the EOUSA has previously argued that FOIA Exemption 7(C) would justify

withholding some or all of the records responsive to this request, *see* Mem. P. & A. Supp. Defs.'

2d Mot. Summ. J. at 4–7, ECF No. 254-2, the Court now understands that the EOUSA undertook

to search for all responsive records and did not withhold any identified records. *See* Zumpetta-

Parr Decl. ¶ 10 ("I performed a search of all public records . . . and scanned the entire file and

provided those records to USAEO."); Zumpetta-Parr Decl. ¶ 10[17] ("I interpreted [the request] to

mean all documents, including publicly filed ones. Accordingly, I located everything in PACER

and in our case files themselves . . . and sent to EOUSA . . . ."). The DOJ now again moves for

summary judgment, this time on the grounds that its search was reasonably calculated to identify

all responsive records without withholdings. *See* Defs.' 3d MSJ at 10–11.

### E. Request No. 13-1085

Pinson submitted a FOIA request seeking "copies of all discovery material" in case

number 11-cr-68-EJL, in the District of Idaho, and 12-cr-236-IEG, in the Southern District of

California. Freedom of Information Act Request, ECF No. 332-3, Ex. I; 3d Luczynski Decl.

¶ 26. Pinson limited her request to "no more than 150 pages, per case, of information and no

more than 2 hours search time per district." Freedom of Information Act Request, ECF No. 332-3,

Ex. I. After the EOUSA informed Pinson that it could not release the information because such

third-party information was protected under the Privacy Act and FOIA Exemptions 6 and 7(C),

---

[17] The Zumpetta-Parr declaration includes two paragraphs numbered ten. This citation is to the second one.

Pinson agreed to limit the scope of her request to "seek *only* public records." Letter from Jeremy Pinson (Apr. 22. 2013), ECF No. 170-5, Ex. UUU (emphasis added); *see also* 1st Luczynski Decl. ¶¶ 82–83, ECF No. 170-4.

After this Court denied its second motion for summary judgment,[18] the EOUSA submitted with its renewed motion two FOIA response letters sent to Pinson. The letters appear to indicate that Pinson was sent 100 pages—in full—for free concerning each case, with the option to pay to receive an additional 16,000 pages concerning the 11-cr-68 case and an additional 162 pages concerning the 12-cr-236 case. Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. J; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. L. Although it is not precisely clear what the 100 pages comprised, for the 12-cr-236 case the EOUSA states that the 100 pages were "docket material." 3d Luczynski Decl. ¶ 27.

The EOUSA provides a declaration from an Assistant United States Attorney involved in the 12-cr-236 case stating that the case is ongoing and that all of the discovery material is subject to a protective order. *See* McGrath Decl. ¶ 5, ECF No. 332-3, Ex. M ("Discovery material in the

---

[18] Before the Court adjudicated the EOUSA's first summary judgment motion, the EOUSA apparently released 100 pages to Pinson (on two occasions after the first was not received), although it is not clear what material was included in the release or what search led to the released material. Letter from Susan B. Gerson to Jeremy Pinson (Dec. 13, 2013), ECF No. 170-5, Ex. VVV; Letter from Susan B. Gerson to Jeremy Pinson (Feb. 11, 2015), ECF No. 170-5, Ex. VVV1; 1st Luczynski Decl. ¶¶ 84–85, ECF No. 170-4. The DOJ's first motion for summary judgment argued that summary judgment was warranted because Pinson failed to exhaust her administrative remedies. The Court denied the DOJ's motion as to this request because there was a genuine dispute of material fact regarding whether Pinson received the documents, potentially precluding her ability to file an appeal or exhaust her administrative remedies. *See* 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 10–11 (D.D.C. 2015), ECF No. 246. The Court denied the DOJ's second motion for summary judgment because the DOJ did not articulate a basis on which summary judgment might be granted. 2d Mem. Op., *Pinson v. DOJ*, 189 F. Supp. 3d 137, 147 (D.D.C. 2016), ECF No. 291.

[12-cr-236] case cannot be released under FOIA at this time. There is a protective order in place, which prevents release of any of the discovery material."); *see also* Defs.' 3d MSJ at 11 ("Because here is a protective order in [12-cr-236], . . . the USAO is unable to release discovery material therefrom."). Although the EOUSA does not submit a similar declaration relating to the 11-cr-68 case, it points to the docket for 11-cr-68, which it argues establishes that "discovery is subject to a protective order." Defs.' 3d MSJ at 12. The DOJ now again moves for summary judgment, this time on the grounds that all records responsive to this request are properly withheld under Exemption 7(A). *See* Defs.' 3d MSJ at 11–12.

### F. Pinson's Receipt of Responses

As discussed above, the DOJ asserts that it has released documents to Pinson under each of the five FOIA requests at issue here. Pinson initially argued in her opposition to the instant motion for summary judgment that she had not received any of the releases. Pl.'s Response, ECF No. 340 ("[T]his plaintiff never received the releases on FOIA requests 12-1754, 12-1757, 12-1758, 12-1760, 13-1085. Nor did plaintiff's counsel[19] as has been customary."); Pinson Decl. ¶ 7, ECF No. 340, Ex. A ("At no time have I received a response to EOUSA Request No's. 12-1754, 12-1757, 12-1758, 12-1760 and 13-1085."). On December 19, 2016, this Court received a "surreply" from Pinson stating that she "still [had not] received the 4 recent FOIA releases" although she had received a response from the BOP concerning her request for an administrative remedy concerning her mail.[20] Pinson Decl. ¶ 2, ECF No. 344, Ex. 1; Request for Administrative Remedy, ECF No. 344, Att. A. On that same day, the Court received a notice from the DOJ

---

[19] At the time of these filings, Pinson had been appointed counsel for the limited purpose of reviewing correspondence withheld by the BOP and determining compliance with FOIA. Order Appt. *Pro Bono* Counsel, ECF 204.

[20] In the context of this case, the Court understands Pinson to refer to all five of the FOIA requests she listed elsewhere in her filing.

indicating that—in order to ensure that Pinson received the FOIA releases—it had (1) "provided the releases directly to plaintiff's counsel, who confirmed receipt by email dated December 14, 2016" and (2) "on December 19, 2016, . . . re-released the records to Pinson at MCFP Springfield using certified mail (as opposed to legal mail)." Notice Repeat Service FOIA Releases, ECF No. 343.

The Court finds that the discrepancy between Pinson's and the DOJ's account may be explained by their missives crossing in the mail, given that both filings were received by this Court on December 19. In addition, the DOJ subsequently notified the Court that "Pinson has now signed for receipt" of the certified mail package containing the five FOIA releases. Notice Hand Delivery EOUSA Releases, ECF No. 350. Furthermore, Pinson has not reiterated any complaint concerning her receipt of the releases after December 19, 2016, despite filing several other documents with this Court. The Court therefore concludes that Pinson has now received the FOIA releases for these five requests.

## III. LEGAL STANDARD

"[T]o prevail in a Freedom of Information Act suit, 'the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements.'" *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *National Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). At the summary judgment stage, the agency must do so by showing that no material facts remain in dispute. *Id.* at 367. This showing requires the agency to demonstrate both that its search was adequate and that all responsive records were either released or properly withheld.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks and citation omitted). The agency need not to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. DOJ*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). In order to receive summary judgment, the agency must provide a "reasonably detailed" affidavit describing the scope of its search. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg*, 627 F.2d at 370. On the other hand, once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (citation omitted).

If responsive records are located, the agency must either disclose them or justify its withholding through one of the FOIA's nine exclusive statutory exemptions. *See* 5 U.S.C. § 552(b); *see also Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) ("[A]gencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions."). In a case such as this one, where the requester initially challenges the agency's response but does not consistently articulate specific objections to the agency's releases, the Court is mindful that summary judgment cannot be granted as conceded and that it must independently evaluate whether any issues of material fact exist. *See Winston &*

*Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil

Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. 'The

burden is always on the movant to demonstrate why summary judgment is warranted. The

nonmoving party's failure to oppose summary judgment does not shift that burden.' The District

Court 'must always determine for itself whether the record and any undisputed material facts

justify granting summary judgment.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97

(D.C. Cir. 2015) (Griffith, J., concurring))).

## IV. ANALYSIS

The DOJ's instant motion for summary judgment argues that it has performed an

adequate search with respect to each of the five requests and released all non-exempt documents.

Pinson initially objected that she had not received the releases, but, as discussed *supra* Part II.F,

the Court concludes that Pinson has now received them. Pinson raises several collateral

objections, which this Court rejects.[21] *See generally* Pl.'s Opp'n, ECF No. 340. Pinson does not

---

[21] First, Pinson's opposition contains a paragraph stating that "[e]mployees . . . at MCFP Springfield, are extremely hostile to this litigation and have acted to thwart plaintiff's access to the Court. Plaintiff seeks sanctions under Rule 11" against the employees and two BOP attorneys who "actively encouraged the misbehavior." Pl.'s Opp'n , ECF No. 340. Pinson does not articulate a theory on which the Court could grant such relief, and this Court does not construct one for her. *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("[A] court need not act as an advocate for pro se litigants . . . ."). In brief, the Court must deny Pinson's request for relief because these allegations are not reflected in her complaint and she identifies no cause of action; the employees are not parties to this action and the Court likely lacks personal jurisdiction over them; Pinson has not shown a specific instance of lack of access to the courts, such as a missed filing deadline; Rule 11 sanctions are only appropriate against counsel and parties; and Pinson is no longer being held at MCFP Springfield and thus any request for prospective relief would be moot. *See Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 84 (D.D.C. 2015) ("This Court, however, lacks the authority to issue a judgment that would bind a non-party."), *aff'd*, No. 2016-2320, 2017 WL 1349280 (Fed. Cir. Apr. 12, 2017); *Isaac v. Samuels*, 132 F. Supp. 3d 56, 59 (D.D.C. 2015) ("[I]t is not enough for an inmate to state in a conclusory fashion that he was denied access to the courts; rather, he also must allege actual injuries as a result of the denial by claiming that an actionable claim was rejected, lost, or prevented from being filed."); *see also*

challenge the adequacy of the searches or the DOJ's withholdings, *see generally* Pl.'s Opp'n, but the Court nonetheless considers if the DOJ has demonstrated that it is entitled to summary judgment.

## A. Request No. 12-1754

The DOJ asserts that the EOUSA adequately searched and properly released records responsive to Request No. 12-1754, Defs.' 3d MSJ at 4–5, and the Court agrees. The Rhedrick declaration sufficiently explains that all record systems likely to contain responsive records were searched, and describes how the FOIA coordinator searched the applicable boxes of physical files by hand using the name of the defendant. *See generally* Rhedrick Decl., ECF No. 332-3, Ex. A. This description includes the search term used and sufficiently explains that the agency's search was reasonably calculated to uncover all responsive documents. Nor has Pinson challenged the agency's assertion that its search was adequate.

---

Fed. R. Civ. P. 11(b)(1) (requiring that "attorney[s] or unrepresented part[ies]" not present any filings for an improper purposes "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

Second, Pinson moves to strike the DOJ's third motion for summary judgment because she asserts she did not receive it. *See* Pl.'s Mot. Strike, ECF No. 336. Pinson also objects in light of the *Fox/Neal* order that she received on November 4, 2016, Pl.'s Mot. Strike, which the Court interprets as an objection to the time limit for her response provided in the *Fox/Neal* order based on the alleged non-receipt of the DOJ's motion. The Court understands that Pinson has now received the third motion for summary judgment—indeed, she has filed an opposition—and she has not articulated any prejudice resulting from any delay. *See generally* Pl.'s Resp., ECF No. 340; *see also* Defs.' Opp'n at 1, ECF No. 337 (noting Pinson signed for legal mail on November 4, 2016 at MCFP Springfield, and ECF Nos. 332 and 333 are "the *only* documents that . . . [were] mailed to Pinson at that facility"); *see also* Defs.' Opp'n at 3 (indicating that the DOJ mailed an additional copy of the third motion for summary judgment along with its opposition to Pinson on November 17, 2016). In any event, striking a filing is an extreme remedy that is not appropriate for a failure to serve. *Cf. Riddick v. Holland*, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) ("Motions to strike are 'drastic remed[ies] that courts disfavor, and the decision to grant or deny a motion to strike is vested in the trial judge's sound discretion.'" (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1 (D.D.C. 2015))).

Although the FOIA coordinator exercised a small amount of judgment in concluding that the (A) at the end of the case number referred to defendant Jesse Vasquez, that is proper because an agency may reasonably interpret an ambiguous FOIA request. 5 U.S.C. § 552; *see also Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 153 (D.D.C. 2010) (finding that once a plaintiff agrees to an agency's interpretation of an ambiguous request, "plaintiff cannot allege that the agency failed to produce responsive records when the records he now identifies fall outside the scope of his appropriately narrowed request" (quoting *Kenney v. DOJ,* 603 F. Supp. 2d 184, 189 (D.D.C. 2009)). Here, Pinson has not clarified her request or objected to the EOUSA's interpretation.

All of the 78 responsive pages that were identified were released in full to Pinson. *See* 3d Luczynski Decl. ¶ 7; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. B. The Court therefore need not consider the propriety of any FOIA exemptions. Having determined that no genuine issues of material fact exist, the Court thus grants the DOJ summary judgment as to Request No. 12-1754.

### B. Request No. 12-1757

The DOJ asserts that the EOUSA adequately searched and properly released records responsive to Request No. 12-1757. Defs.' 3d MSJ at 5–8. However, because the EOUSA has not explained how the searches were conducted with sufficient detail, summary judgment is inappropriate.

The EOUSA's declaration provides a general description of the search, including describing all of the records systems that were searched and explaining why those systems were likely to contain all responsive records. *See generally* 2d Matuszewski Decl. ¶ 14, ECF No. 332-3, Ex. C.

However, although the declaration makes some reference to using case numbers, it is not clear precisely how the searches were conducted. For example, the FOIA coordinator states that

the case files for 11-cv-1906 and 10-cv-949 were obtained, and then simply concludes that "[a] second search of 11-CV-1906 produced 22 pages of correspondence [and other documents]" and "[a] second search of 10-CV-949 produced 14 pages of correspondence [and other documents]." 2d Matuszewski Decl. ¶¶ 17–18. The Court does not know how the search "produced" those results. Were additional search terms applied, or does the EOUSA's accounting represent all documents in the case files? The D.C. Circuit has emphasized that, in order to justify summary judgment, an agency must explain the search in detail. *See Aguiar v. DEA*, --- F.3d ---, No. 16-5029, 2017 WL 3318758, at *6 (D.C. Cir. Aug. 4, 2017) ("The DEA's declarations explain how it found the two case files, but not how it searched within those files. . . . That description, we held, was 'not sufficiently detailed to support a summary judgment because it does not disclose the search terms . . . and the type of search performed.'" (quoting *DeBrew v. Atwood*, 792 F.3d 118 (D.C. Cir. 2015))); 1st Mem. Op., *Pinson v. DOJ*, 145 F. Supp. 3d 1, 13 (D.D.C. 2015), ECF No. 246 ("Furthermore, the Declaration's claim that each U.S. Attorney's Office conducted a 'systematic search for records' is merely conclusory and fails to clearly define any iteration of the search methods used, or the search terms employed, to locate responsive documents."). Likewise, although the declarations state that electronic records were searched, they do not explain how or what search terms were used. *See* 2d Matuszewski Decl. ¶ 19 ("An additional computer search of the USAO MDPA files was performed and no documents were located for neither [sic] civil numbers 11-CV-1906 nor 10-CV-949.").

The Court must therefore deny the EOUSA summary judgment as to its response to Request No. 12-1757.[22] The DOJ should renew its motion for summary judgment including a

---

[22] The Court does not understand the EOUSA to be claiming either that it cut short its search because the free search time had elapsed or that it cut short its release of documents because the 100 free pages had been exceeded. *See generally* Matuszewski Decl., ECF No. 332-3,

declaration that adequately describes the search terms used to perform the search. The agency should also clarify if the search and released documents were limited to only public records. The Court understands that Pinson expanded her request to *also* encompass public records, but not that she has given up any request for any other responsive records. Therefore if the EOUSA believes it may withhold any responsive non-public records under a FOIA exemption it must plainly state and justify its position. Finally, the DOJ should address the discrepancy between the 197 pages located and the 200 pages apparently released, if relevant in light of the DOJ's renewed motion. However, the Court finds that the EOUSA's search as to case 11-cv-1346—the case for which no responsive records were found because the U.S. Attorney's Office had not been served—was reasonable because the agency has sufficiently explained where it searched and why no responsive records are likely to be found elsewhere. Likewise, the agency need take no further action concerning the possible case number 11-cv-1908, because the agency also determined that it did not possess any responsive records because the U.S. Attorney's Office was never served.

### C.  Request No. 12-1758

The DOJ asserts that the EOUSA adequately searched and properly released records responsive to Request No. 12-1758, Defs.' 3d MSJ at 8–9, and the Court agrees. The EOUSA's declarations clearly explain how the search was performed, including that the record systems selected were reasonably calculated to contain all responsive records, and that the case numbers

---

Ex. C; *see also* Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. D ("All of the records you seek are being made available to you. . . . After reviewing all of the documents, we have determined that we can make a full release."). If that is the EOUSA's position, it must inform Pinson of either the estimated search fee or estimated duplication fee, as applicable, and provide her with the opportunity to pay the fee and continue the search.

were used as search terms to locate the appropriate files. *See generally* Long Decl., ECF No. 332-3, Ex. F. Nor has Pinson challenged the adequacy of the EOUSA's search.

Although the EOUSA's declarations could be more clear, the Court understands that all responsive records, and not merely public records, were searched for and released, despite the EOUSA's prior reference to withholding documents, 3d Luczynski Decl. ¶ 15. *See* 3d Luczynski Decl. ¶ 18 ("Declaration . . . explaining the search for responsive records, including public records, is attached . . . ."); Long Decl. ¶ 12 (I forwarded all documents in these files to EOUSA on disc. . . . I included Court Filed Public Records in the documents provided to EOUSA.").

The DOJ released 100 pages to Pinson—in full—for free and offered to release an additional 1000 pages after receiving an appropriate fee. *See* 3d Luczynski Decl. ¶ 18; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. E. The Court therefore need not consider the propriety of any FOIA exemptions. Having determined that no genuine issues of material fact exist, the Court thus grants the DOJ summary judgment as to Request No. 12-1758.

### D. Request No. 12-1760

The DOJ asserts that the EOUSA adequately searched and properly released records responsive to Request No. 12-1757, Defs.' 3d MSJ at 10–11, and the Court agrees. The EOUSA provided a declaration that sufficiently describes its search. *See generally* Zumpetta-Parr Decl., ECF No. 332-3, Ex. G. The FOIA coordinator searched for the relevant case number using the electronic case management system and PACER, and then sent the entire resulting file to the EOUSA, which released the first 100 pages to Pinson and offered the remaining pages after payment of a fee. Zumpetta-Parr Decl. ¶¶ 10–11; 3d Luczynski Decl. ¶ 25; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. H. This explanation adequately

describes the records systems searched and the search terms used, and Pinson has not challenged the adequacy of the EOUSA's search.

Although the FOIA coordinator did exercise judgment in selecting which case of the three sharing the same case number was responsive to Pinson's request, that decision was reasonable, especially in light of Pinson's lack of subsequent objection or clarification. 5 U.S.C. § 552; *see also Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 153 (D.D.C. 2010) (finding that once a plaintiff agrees to an agency's interpretation of an ambiguous request, "plaintiff cannot allege that the agency failed to produce responsive records when the records he now identifies fall outside the scope of his appropriately narrowed request" (quoting *Kenney v. DOJ,* 603 F. Supp. 2d 184, 189 (D.D.C. 2009)). Given that all responsive documents were released to Pinson, there is no question of the applicability of FOIA exemptions. Having determined that no genuine issues of material fact exist, the Court thus grants the DOJ summary judgment as to Request No. 12-1760.

### E.  Request No. 13-1085

The DOJ asserts that the EOUSA adequately searched and properly released records responsive to Request No. 12-1757. Defs.' 3d MSJ at 11–12. Although the Court agrees that summary judgment is appropriate for the materials related to 12-cr-236, it disagrees as to the materials concerning 11-cr-68 because the agency does not provide an affidavit explaining why it believes no responsive records exist. As an initial matter, although the EOUSA apparently released 200 pages in total to Pinson, because these documents do not respond to Pinson's

request for *discovery materials* they cannot satisfy the agency's FOIA burden.[23] The Court therefore turns to the EOUSA's other arguments.

The EOUSA argues that it possesses no materials responsive to Pinson's request. Pinson first requested discovery materials, Freedom of Information Act Request, ECF No. 332-3, Ex. I, and later narrowed her request to "only public records," Letter from Jeremy Pinson (Apr. 22. 2013), ECF No. 170-5, Ex. UUU. According to the EOUSA, no records that meet both descriptions exist because both cases are subject to protective orders such that there are no public discovery materials.[24]

An agency need not perform a search when the agency has sufficiently established that it would be fruitless. *See All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*, 134 F. Supp. 3d 201, 205–06 (D.D.C. 2015) (holding that "no search [was] required" when the agency's affidavits established that "a search for the documents requested would be futile" because the topic of the request was not within the agency's role); *Reyes v. EPA*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014) ("An agency is not required to expend its limited resources on searches for which it is clear at the outset that no search will produce the records sought."); *see also Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("The adequacy of an agency's

---

[23] *See* Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. J; Letter from Thomas Anderson to Jeremy Pinson (Oct. 27, 2016), ECF No. 332-3, Ex. L. These documents appear to be publicly available documents relating to the cases, such as docket information, and not discovery material. *See* 3d Luczynski Decl. ¶ 27 ([T]here are no other records responsive to the request except for the docket material, of which 100 pages have been released to plaintiff . . . ."); Defs.' 3d MSJ at 12, ECF No. 332-2 ("EOUSA released 100 pages of public records pertaining to Request 13-1085, although those records were not discovery materials."). This material is not responsive to Pinson's request for discovery materials, and thus, while the Court applauds the EOUSA's desire to provide Pinson with some material, the Court does not analyze these releases in the context of satisfying the EOUSA's FOIA-mandated duties.

[24] The Court notes that any discussion of Exemption 7(A) is a red herring because Pinson has explicitly limited her request to *only* publicly available materials, and therefore whether materials can be withheld as exempt is not at issue. Letter from Jeremy Pinson (Apr. 22. 2013), ECF No. 170-5, Ex. UUU.

search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." (internal quotation marks and citations omitted)).

In this case, the EOUSA has adequately demonstrated that a search for public discovery materials in 12-cr-236 would be fruitless because of the protective order. *See* McGrath Decl. ¶ 5 ("Discovery material in [12-cr-236] cannot be released under FOIA at this time. There is a protective order in place, which prevents release of any of the discovery material."). The EOUSA therefore need not perform a search relating to 12-cr-236, and summary judgment is therefore appropriate for the DOJ. However, the EOUSA has not provided a similarly persuasive affidavit relating to 11-cr-68. Instead, the EOUSA points this Court toward the docket entry for c11-cr-68. *Cf.* Defs.' 3d MSJ at 12, ECF No. 332-2 ("[11-cr-68], however, also remains pending, and discovery is subject to a protective order." (citing the docket sheet for 11-cr-68)). This falls short of the agency's obligation to produce a "reasonably detailed" affidavit. *Iturralde*, 315 F.3d at 313–14 (quoting *Oglesby*, 920 F.2d at 68). Therefore, rather than attempting to interpret the docket entries itself, the Court will deny summary judgment as related to 11-cr-68 until the agency produces an affidavit from a person with knowledge explaining why a search for public discovery materials would be futile.

## V.  CONCLUSION

For the foregoing reasons, the DOJ's third motion for summary judgment with respect to the EOUSA (ECF No. 332) is **GRANTED IN PART** and **DENIED IN PART**. Pinson's motion to strike (ECF No. 336) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 31, 2017                                          RUDOLPH CONTRERAS
                                                                              United States District Judge