# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEREMY PINSON             )
                                 )
     Plaintiff,          )
                                 )    Civil Action No.:    12-1872 (RC)
     v.                )
                                 )    Re Document No.:    403
DEPARTMENT OF JUSTICE, *et al.*,   )
                                 )
     Defendants.        )

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' FOURTH MOTION FOR SUMMARY JUDGMENT

Jeremy Pinson is a *pro se* plaintiff who, while in prison, has filed multiple Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552, requests seeking records from various components of
the United States Department of Justice ("DOJ"). DOJ has filed its fourth motion for summary
judgment on Pinson's requests to the Federal Bureau of Prisons ("BOP"), claiming that it has
performed adequate searches for records responsive to Pinson's requests, released a number of
records, and informed Pinson that some of the records she[1] sought were exempt from disclosure
by law. Pinson did not file an opposition to DOJ's motion.

In its prior opinions, this Court has granted in part and denied in part DOJ's first, second,
and third motions for summary judgment as to claims against BOP. *See Pinson v. U.S. Dep't of
Justice*, No. 12–1872, 2016 WL 29245, at *1 (D.D.C. Jan. 4, 2016); *Pinson v. U.S. Dep't of
Justice*, 199 F. Supp. 3d 203 (D.D.C. 2016); *Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338

---

[1] Pinson identifies using feminine pronouns. This Court adopts Pinson's usage. *See
Pinson v. U.S. Dep't of Justice*, 273 F. Supp. 3d 1, at 4 n.1 (D.D.C. 2017). The Court's use of
feminine pronouns does not convey any substantive or legal characterization.

(D.D.C. 2017). Now before the Court is DOJ's fourth motion for summary judgment as to the ten remaining FOIA requests to BOP. [2] *See* Defs.' 4th Mot. Summ. J. Respect BOP ("Defs.' 4th MSJ"), ECF No. 403. DOJ argues that BOP has conducted searches reasonably calculated to identify records responsive to Pinson's requests and has released to Pinson those records not withheld pursuant to the applicable FOIA exemptions. *See* Defs.' Mem. P. & A. ("Defs.' Mem.") at 4, ECF No. 403-1. For the reasons set forth below, the Court grants in part and denies in part DOJ's motion for summary judgment.

## I. FACTUAL BACKGROUND

The Court has already explained the factual background in this case in its first Memorandum Opinion. *See Pinson*, 2016 WL 29245, at *1–8. The Court assumes familiarity with its prior opinion and confines its discussion to the facts most relevant to the present motion. The current motion concerns BOP's searches for records responsive to Requests Nos. 2011-7156, 2012-39, 2012-40, and 2013-1684; BOP's withholding of records responsive to such requests pursuant to several FOIA exemptions; and BOP's reprocessing of Request Nos. 2010-12533, 2011-1351, 2011-1886, 2011-2366, 2011-7619, 2012-39,[3] and 2012-975.

### A. Request Nos. 2011-7156, 2012-39, and 2012-40 (E-mail Searches)

Request No. 2012-40 and the portions of Request Nos. 2011-7156 and 2012-39 that were not yet processed at the time of this Court's third memorandum opinion concern certain BOP email records. BOP initially could not perform a search of its email archives due to technical

---

[2] While DOJ's filings state that it moves for summary judgment with respect to nine remaining requests, the Court counts ten remaining requests. *See* Defs.' Mem. at 1–2 (requesting summary judgment as to Request Nos. 2010-12533, 2011-1351, 2011-1886, 2011-2366, 2011-7156, 2011-7619, 2012-39, 2012-40, 2012-975, and 2013-1684).

[3] BOP has reprocessed the non-email portions of Request No. 2012-39 following the Court's previous opinion.

problems, but in October 2016, the search tool was fixed and BOP subsequently performed searches for responsive records. *See Pinson*, 236 F. Supp. 3d at 356–57. However, at the time of DOJ's third request for summary judgment, Pinson had not yet received a response because the search results were still being evaluated for potential FOIA exemptions. *See id.* at 357. Thus, this Court deemed that summary judgment as to the email portions of these requests was "still not appropriate because the agency has not yet fully discharged its FOIA obligation." *Id.* BOP has since completed evaluating these records for potential exemptions and responded to Pinson.

In Request No. 2011-7156, Pinson sought, among other records,[4] "emails between Central Office staff regarding [her] ADX referral" and "emails between SERO Regional staff regarding [her] ADX referral." 7th Decl. of Kara Christenson ("7th Christenson Decl.") ¶ 8, ECF No. 403-3. Pinson limited her request to no more than two hours search time and no more than 100 pages. *Id.* After completing its search, BOP responded to Pinson in a letter dated February 28, 2017, informing her that there were no records responsive to her request for emails. *See id.* ¶ 11 & Ex. B. DOJ now moves for summary judgment on the grounds that BOP's search was "reasonably calculated to uncover all documents in its files responsive to [Pinson's] requests." Defs.' Mem. at 4.

In Request No. 2012-39, Pinson sought, among other records,[5] "[a]ll emails, memorandums by ADX Florence Executive Staff and/or Department Supervisors written or generated in connection with the 2011 Accreditation review by the ACA and/or making

---

[4] This Court granted summary judgment as to the adequacy of BOP's search for non-email records responsive to Request No. 2011-7156 in its previous opinion. *See Pinson*, 236 F. Supp. 3d at 357.

[5] This Court granted summary judgment as to the adequacy of BOP's search for non-email records responsive to Request No. 2012-39 in its previous opinion. *See Pinson*, 236 F. Supp. 3d at 357.

reference or mentioning such review." 7th Christenson Decl. ¶ 12 & Ex. C. Pinson limited this request to no more than two hours search time and no more than 100 pages. 7th Christenson Decl. ¶ 12. In a letter dated April 6, 2017, BOP responded to Pinson's request and released seventy-five pages of records in full and eighteen pages in part. *Id.* ¶ 16 & Ex. D. Under Exemption 6, BOP withheld the "telephone extensions and direct telephone numbers of Bureau staff"; "the names of third-party, non-BOP employees who would be conducting an ACA audit"; and "the name of a third-party, non-BOP employee who assisted with a pre-ACA audit." *Id.* ¶¶ 19–21; *Vaughn* Index at 1–3, ECF No. 403-3. BOP also invoked Exemption 7 to withhold "information . . . related to the institution's policies [on] tools and keys." 7th Christenson Decl. ¶¶ 26–27; *Vaughn* Index at 1–3. DOJ now moves for summary judgment on the grounds that BOP's search was adequate and that it released to Pinson all non-exempt records responsive to her request. *See* Defs.' Mem. at 4.

In Request No. 2012-40, Pinson sought "production of all emails sent by the North Central Regional Director and Warden of the U.S. Penitentiary Administrative Maximum during 2011." 7th Christenson Decl. ¶ 28. Pinson limited this request to no more than two hours search time and no more than 100 pages. *Id.* In a letter dated February 28, 2017, BOP informed Pinson that there were no records responsive to her request. *Id.* ¶ 31 & Ex. G.  DOJ now moves for summary judgment on the grounds that BOP's search was "reasonably calculated to uncover all documents in its files responsive to [Pinson's] requests." Defs.' Mem. at 4.

### B.  Request No. 2013-1684

In November 2011, Pinson requested "production of all information produced on or after February 25, 2011 which is located in the Central File, SIS File, and any other file maintained on Jeremy Pinson." 7th Christenson Decl. ¶ 32 & Ex. H. After an initial fee was assessed, Pinson

modified her request to no longer seek documents from her Central File on or before October 1, 2014, or her SIS file between February 25, 2011 and October 2013. *Id.* ¶ 33 & Ex. I. In a letter dated October 23, 2017, BOP responded to Pinson's request and released 13,690 pages of records in full and 1481 pages of records in part, and it withheld 2,325 pages in full. *Id.* ¶ 45 & Ex. L.

Claiming both Exemptions 6 and 7(C), BOP withheld "the names, register numbers, medical information, statements made to law enforcement officers, and correctional management of third-party inmates"; "the names, injuries and other medical information, photographs of their faces, injuries and property, and employment information for [BOP] staff"; "the names of staff who participated in calculated uses of force and their role on the team"; "the Daily Assignment Rosters for institutions"; "the telephone extensions, direct numbers, and facsimile extensions of Bureau staff"; "the names and personal identifying information of individuals associated with a statute-based programming assignment used to manage Pinson"; and "the name of a criminal Assistant U.S. Attorney and the names of law enforcement investigative agents associated" with certain agencies, as well as their "contact information, such as telephone numbers, e-mail addresses, and addresses." 7th Christenson Decl. ¶¶ 53–72.

Using Exemption 7(E), BOP withheld "information . . . consist[ing] of the Central Inmate Monitoring (CIM), separations, and other internal assignments used to classify and monitor Pinson and other third-party inmates"; "discussions of gang and informant activity within the [BOP]"; "techniques for investigating criminal activity within a prison facility [and] factual information developed using these underlying techniques"; "documents associated with a statute-based programming assignment used to manage Pinson"; "steps used to resolve major crises in a Bureau facility"; "description of the Bureau's calculated use of force technique and a photo of

the technique being used"; and "investigative reports from an intelligence database used by BOP staff during law enforcement investigations." *Id.* ¶¶ 81–96.

Using Exemption 7(F), BOP withheld "factual information [which], if known, would adversely affect Pinson's safety"; "the Bureau's monitoring and classification assignments for Pinson and third-party inmates"; "'yes' and 'no' response areas to [certain] questions on an Intake Screening Form"; "a portion of Pinson's Administrative Detention Order Forms that elaborates on the reason for removal from general population"; "techniques for investigating criminal activity within a prison facility"; "the names and register numbers of third-party inmates from whom . . . Pinson needed to be separated"; "documents associated with a statute-based programming assignment used to manage Pinson"; "the institution's policies [on] tools and keys"; "photographs of locks on cell door and hand restraints"; "steps used to resolve major crises in a Bureau facility"; "'yes' or 'no' response areas to questions on a Screening for Risk of Victimization and Abusiveness Form completed for Pinson"; "the names of staff who participated in calculated uses of force and their role on the team"; "the Daily Assignment Rosters for institutions"; and "a description of the Bureau's calculated use of force technique and a photo of the technique being used." *Id.* ¶¶ 81–96.

DOJ now moves for summary judgment on the grounds that BOP's search was adequate and that it has released to Pinson all non-exempt records responsive to her request. Defs.' Mem. at 4.

### C. Request No. 2010-12533 (Reprocessing)

In August 2010, Pinson requested from BOP "(1) inmate handbooks from ADX Florence and (2) documents relating to the use of force against Pinson during November 2007 and any related Administrative Remedy Requests." *Pinson*, 236 F. Supp. 3d at 345. DOJ subsequently

released responsive records, with some withholdings, and moved for summary judgment. *Id*. In its previous opinion, this Court agreed with DOJ that BOP's search was adequate, but denied summary judgment regarding the use of Exemption 5 to withhold sections of multiple After Action Review Reports because BOP failed to "define the nature of the deliberative process involved." *See id.* at 360.

BOP has reprocessed this request and, in a letter dated April 6, 2017, released two pages in full and three pages in part. 7th Christenson Decl. ¶ 97 & Ex. M. Upon reprocessing, the information regarding "after action recommendation/results" and "whether the after action was determined appropriate and the recommendations/results," previously withheld under Exemption 5, was released. 7th Christenson Decl. ¶ 100; *Vaughn* Index at 87–88. Sections of an After Action Review Report from November 18, 2007, previously withheld under Exemption 5, was again withheld, this time under Exemption 7(E). 7th Christenson Decl. ¶ 99; *Vaughn* Index at 87–88. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

### D. Request No. 2011-1351 (Reprocessing)

In 2011, Pinson submitted a request to BOP for production of "'[a]ll After-Action Review Reports, pertaining to any inmate on inmate assault and/or homicide' occurring at FCI Talladega during 2009-2010." *Pinson*, 236 F. Supp. 3d at 347; *see also* 3d Christenson Decl. ¶ 53 & Ex. F, ECF No. 293-3. After releasing some responsive documents—with withholdings under Exemptions 5 and 7(F)—DOJ moved for summary judgment. *See Pinson*, 236 F. Supp. 3d at 347. In its previous opinion, this Court agreed with DOJ that its search in response to Request No. 2011-1351 was adequate, but denied summary judgment as to the use of Exemption 5 to

withhold sections of multiple After Action Review Reports because BOP failed to "define the nature of the deliberative process involved." *Id.* at 360; *Vaughn* Index at 89–93.

BOP has reprocessed this request and, in a letter dated April 6, 2017, released to Pinson nine pages of records in part. 7th Christenson Decl. ¶ 101 & Ex. N. Upon reprocessing, BOP released sections on whether the use of force was appropriate, but it applied Exemption 7(E) to withhold the remaining sections on discrepancies noted and recommendations/results regarding the use of force. 7th Christenson Decl. ¶ 103; *Vaughn* Index at 89–93. After reprocessing Document 2 in the request, BOP released information previously withheld under Exemption 5. 7th Christenson Decl. ¶ 104; *Vaughn* Index at 90–91. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

### E. Request No. 2011-1886 (Reprocessing)

In 2010, Pinson requested from BOP the production of "documents associated with her placement at ADX Florence." *Pinson*, 236 F. Supp. 3d at 347; *see* 3d Christenson Decl. ¶ 64 & Ex. H. In its disposition of DOJ's third motion for summary judgment, the Court denied DOJ's motion as to the use of Exemption 5 to withhold comments and recommendations made by staff regarding the future management of Pinson because BOP "failed to specify the role of the document in the deliberative process, or the nature of the decisionmaking authority vested in each party." *Pinson*, 236 F. Supp. 3d at 361. Furthermore, the Court denied summary judgment as to the use of Exemption 7(F) to withhold several staff members' responses to questions posed by Pinson regarding her ADX referral because the "potential harm is too speculative in the absence of some explanation as to why these responses could not . . . be anonymized." *Id.* at 371. Additionally, the Court denied summary judgment as to the use of Exemption 7(F) to withhold

Pinson's Presentence Investigation Report ("PSR") because it would satisfy both BOP's safety concerns and its FOIA obligations to release the PSR to Pinson's appointed counsel rather than simply denying the request. *See id.* at 371–72. This Court granted summary judgment as to all other documents within the request. *See id.* at 374.

BOP has now reprocessed Pinson's request, and in a letter dated April 6, 2017, explained that it has released seventy-seven pages in full and fifty-seven pages in part, and three pages were withheld in full. 7th Christenson Decl. ¶ 105 & Ex. O. "[C]omments made by a staff member regarding the future management of Pinson," previously withheld under Exemption 5, were released. *Vaughn* Index at 94; *see* 7th Christenson Decl. ¶ 107. BOP also removed the application of Exemption 5 to "a staff member's recommendation regarding the future management of Pinson" in Documents 21–23, 25, and 35 and released what it determined was segregable from information this Court previously held exempt under Exemptions 6, 7(C), 7(E), and 7(F). 7th Christenson Decl. ¶ 108; *Vaughn* Index at 97–102. As for the responses to witness forms used during Pinson's referral hearing to ADX Florence that were previously withheld under Exemption 7(F), BOP released some responses, but not all. 7th Christenson Decl. ¶ 109. BOP determined that it could release the responses to other questions, but releasing responses to questions number eight and nine in Documents 8–11 and questions number three, four, and eight in Documents 12–17 would increase the risk to Pinson of being targeted for assault. *Id.* ¶¶ 109–111. Pinson's PSR, however, was disclosed in full to counsel for Pinson. *Id.* ¶ 112; *Vaughn* Index at 102. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

## F. Request No. 2011-2366 (Reprocessing)

In December 2010, Pinson submitted a request to BOP to produce copies of "any final settlement resulting in a [p]laintiff receiving monetary compensation arising from litigation against officers or employees of the [BOP] in Lewisburg, PA; Oakdale, LA; Talladega, AL, from 2006-[2010]." *Pinson*, 236 F. Supp. 3d at 348; 3d Christenson Decl. ¶ 95 & Ex. J. BOP subsequently released responsive records to Pinson—with some withholdings—and filed its third motion for summary judgment. *See Pinson*, 236 F. Supp. 3d at 348. This Court granted DOJ's motion as to the adequacy of its search in response to Request No. 2011-2366. *See id.* at 355. However, it denied summary judgment as to the use of Exemptions 6 and 7(C) to withhold the names of individuals, individuals' addresses, and case numbers because BOP did not "sufficiently explain the privacy interests of the individuals 'involved' in each claim." *Id.* at 363.

Following this Court's opinion, BOP reprocessed Pinson's request and, by letter dated April 6, 2017, released two pages in full and four pages in part. 7th Christenson Decl. ¶ 113 & Ex. P. Regarding a settlement agreement in a federal case, BOP conducted a privacy analysis for each individual involved and released the name of the federal district court involved in the case, the name and address of the plaintiff's attorney's law firm, and the notary public's information. *Id.* ¶¶ 115, 118–19. However, BOP again applied Exemption 6 to withhold the plaintiff's name, signature, and case number; the Assistant U.S. Attorney's ("AUSA") name, signature, and direct telephone number; and the plaintiff's attorney's name and signature. *Id.* ¶¶ 116–19; *Vaughn* Index at 103–04. As to a settlement offer letter made to an inmate in a BOP administrative claim process, BOP reviewed the privacy interests of the claimant and staff member and released the name of the Regional Counsel involved. 7th Christenson Decl. ¶¶ 120, 122. However, BOP applied Exemption 6 to withhold the claimant's name, address, administrative claim number, and

10

civil case number, as well as the Regional Counsel's signature. *Id.* ¶¶ 120–21; *Vaughn* Index at 103–04. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

### G. Request No. 2011-7619 (Reprocessing)

In May 2011, Pinson requested from BOP "(1) All Report of Incident (Form 583) regarding homicides within the Bureau of Prisons since 2008, (2) all documents related to Report of Incident Tracking #BMP 332.07, (3) Video recording ECN BMP-07599-A, (4) All documents mentioning, involving, or relevant to Incident Report Nos. 1639219, 1639220, 2033414, (5) Anything related to the removal of televisions from ADX Special Housing Unit at ADX Florence, and (6) Anything related to policies, procedures or guidelines for issuance of a clock radio to SHU inmates at ADX Florence." *Pinson*, 236 F. Supp. 3d at 350–51; 3d Christenson Decl. ¶ 126 & Ex. N. BOP subsequently released records responsive to Pinson's request—with some withholdings—and noted that additional records responsive to the request may have existed at some point, but were destroyed according to BOP policy during the two years Pinson failed to satisfy her delinquent fees. *See id.* at 355–56.The Court granted summary judgment as to the adequacy of BOP's search and the use of Exemptions 6, 7(C), and 7(E) to withhold information in multiple Incident Reports. *See id.* at 355–56, 374. However, the Court denied summary judgment as to the use of Exemption 7(F) to withhold the classification of various reported incidents because BOP failed to explain why the purported increased risk of harm to Pinson from disclosure "could not be addressed by redacting the name of the victim . . . instead of withholding the entire classification." *Id.* at 371–72.

BOP has reprocessed the request following the Court's prior opinion, and in a letter dated April 6, 2017, released fifty-four pages in full and eight pages in part, and withheld two pages in

full. *See* 7th Christenson Decl. ¶ 123 & Ex. Q. The information in the "Type of Incident" and "Cause of Incident" sections previously withheld under Exemption 7(F) was released. 7th Christenson Decl. ¶ 125; *Vaughn* Index at 105–06. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

### H. Request No. 2012-39 (Reprocessing)

In September 2011, Pinson sought, "Report of Incident and After-Action Review Report written, produced or generated in connection with the 2008 U.S. Penitentiary High riot at Florence, CO" and some email records.[6] *Pinson*, 236 F. Supp. 3d at 351. BOP released responsive records—with some withholdings—and DOJ subsequently requested summary judgment. This Court granted summary judgment as to the adequacy of the non-email portions of the search. *Id.* at 357. However, this Court denied summary judgment as to the use of Exemption 5 to withhold information in an After Action Review Report, a document discussing steps for re-accreditation, and a document describing the preliminary cause of death of inmates and estimating costs because BOP "failed to specify the role of the document[s] in the deliberative process, or the nature of the decisionmaking authority vested in each party." *Id.* at 361.

Following this Court's opinion, BOP reprocessed this request and, in a letter dated April 6, 2017, released to Pinson five pages in full and eight in part, and it withheld three pages in full. *See* 7th Christenson Decl. ¶ 126 & Ex. R. BOP withdrew its previous withholdings and redactions under Exemption 5. 7th Christenson Decl. ¶¶ 128–29. However, within a section previously withheld under Exemption 5 in an incident report dated April 20, 2008, it applied

---

[6] As noted above, portions of the response to this request was affected by a malfunction in BOP's email search tool. This reprocessing only pertains to non-email searches and emails that were not affected by the malfunction at the time of this Court's third memorandum opinion.

Exemption 7(E) to withhold information on the weapons used during the incident. *Id.* ¶ 129; *Vaughn* Index 107–08. DOJ now moves for summary judgment on the ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.' Mem. at 4.

## I. Request No. 2012-975 (Reprocessing)

In October 2011, Pinson submitted a request to BOP for "the '2010-2011 U.S. Penitentiary Admin. Max. - Florence, CO Administrative Remedy Index'" and "all 2010-2011 Form 583 Report of Incident[s] from ADX Florence reporting Inmate on Inmate assaults to the NRCO." *Pinson*, 236 F. Supp. 3d at 351; 3d Christenson Decl. ¶ 162 & Ex. T. BOP subsequently released responsive records—with some withholdings—and DOJ moved for summary judgment. This Court granted DOJ's motion as to the adequacy of its search. *See Pinson*, 236 F. Supp. 3d at 355. However, the Court denied summary judgment as to the application of Exemption 7(F) to "information regarding an assault on an inmate and attachments [to the form]" in multiple incident reports because BOP's assertions of risk of harm were "too vague" and did not "explain why BOP could not simply anonymize the names of the inmates." *Id.* at 372. Furthermore, BOP gave no description of the contents of the attachments or an explanation of the danger posed by their release. *Id.*

After this Court's previous opinion, BOP, in a letter dated April 6, 2017, released to Pinson eight pages in full and forty pages in part. 7th Christenson Decl. ¶ 130 & Ex. S. BOP removed its application of Exemption 7(E) and 7(F) from the "Description of Incident and Attachments Sections," and instead applied Exemptions 6 and 7(C) to these documents, using them to withhold "inmate names and register numbers" and "file names that included names of inmates." *Id.* ¶ 133; *Vaughn* Index at 110–23. DOJ now moves for summary judgment on the

ground that BOP has released all non-exempt records responsive to Pinson's request. Defs.'
Mem. at 4.

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment."
*Defs. Of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v.
U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is
appropriate where "the movant shows that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is
one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a
reasonably jury to return a verdict for the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 380
(2007).

In a motion for summary judgment, the movant "always bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those [records] . . . on file,
together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue
of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmovant
must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *Id.* at
324. In considering a motion for summary judgment, the court "must view the evidence in the
light most favorable to the nonmoving party, . . . draw all reasonable inferences in her favor, and
eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475
F.3d 360, 363 (D.C. Cir. 2007).

When a court assesses a summary judgment motion in a FOIA case, it must determine
whether the defending agency has shown "beyond material doubt [] that it has conducted a

search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks and citations omitted). In determining the adequacy of a search methodology, the court applies a reasonableness test. *Id.* (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)). Furthermore, the court makes a *de novo* assessment of whether the agency has properly withheld the requested documents under a FOIA exemption. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Thus, to prevail on a motion for summary judgment, the defending agency "must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable or is wholly [or partially] exempt from the Act's inspection requirements.'" *Citizens for Ethics & Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

To meet its burden, a defendant agency may rely on declarations that are reasonably detailed and non-conclusory. *See id.* "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Moreover, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits

of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

Even if the nonmovant has not responded to a motion for summary judgment, the court cannot grant the motion because it has been conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) "Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. 'The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.' The District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring) and citing Fed. R. Civ. P. 56(e)(3)).

## III. ANALYSIS

### A. Adequacy of BOP's Search

In its fourth motion for summary judgment, DOJ asserts that BOP's searches in response to Request Nos. 2011-7156, 2012-39, 2012-40 and 2013-1684 were adequate.[7] *See* Defs.' 4th MSJ; Defs.' Mem. at 4–8. Though Pinson has not contested the adequacy of these searches, the Court will nonetheless independently determine whether undisputed material facts justify granting summary judgment. The Court agrees that the searches with respect to Request Nos. 2011-7156, 2012-39, 2012-40, and 2013-1684 were adequate, and therefore grants DOJ summary judgment on the adequacy of these searches.

---

[7] In its previous opinion, this Court granted summary judgment as to the adequacy of BOP's searches in response to Request Nos. 2010-12533, 2011-843, 2011-1351, 2011-1886, 2011-2366, 2011-7619 2012-975, and the non-email portions of Request Nos. 2011-7156 and 2012-39. *See Pinson*, 236 F. Supp. 3d at 354–58.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114 (internal citations omitted). The agency need not search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 68). It is not enough, however, for the affidavit to state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980). On the other hand, once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (citation omitted). However, even when the nonmovant does not respond to a motion for summary judgment, as is the case here, the Court will "determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Grimes*, 794 F.3d at 95.

### 1. Request Nos. 2011-7156, 2012-39, and 2013-1684

The Court agrees with DOJ that its searches in response to Request Nos. 2011-7156, 2012-39 and 2013-1684 were adequate. *See* Defs.' Mem. at 4–8. DOJ provides a declaration from BOP showing that the searches were thorough and reasonably calculated to uncover all relevant documents. *See generally* 7th Christenson Decl. The declaration describes in detail the

requests for documents; the specific databases searched and why they were likely to contain responsive documents;[8] the search methodology employed; and the specific search terms used to locate the documents. *See* Defs.' Mem. at 4–8; 7th Christenson Decl. ¶¶ 2–6, 11–16. The declaration is thus a "reasonably detailed" description of the scope of BOP's search for each of these requests. *See Iturralde*, 315 F.3d at 313–14; *see also Hidalgo v. FBI*, No. 10-5219, 2010 WL 5110399, at *1 (D.C. Cir. Dec. 15, 2010) ("[S]ubstantial weight traditionally [is] accorded [to] agency affidavits in FOIA 'adequacy of search' cases." (citing *Chambers v. U.S. Dep't of the Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009))). However, the Court deems it appropriate, despite a lack of response from Pinson, to specifically address the searches in response to Request Nos. 2011-7156 and 2012-39 because of the results of these searches.

The D.C. Circuit has held that FOIA does not require a perfect search, only an adequate one. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Moreover, "a search is not unreasonable simply because it fails to produce all relevant material." *Id.* at 952–53. "Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Furthermore, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims

---

[8] Regarding Request No. 2013-1684, which sought "production of all information produced on or after February 25, 2011 which is located in the Central File, SIS File, and any other file maintained on Jeremy Pinson," BOP interpreted "any other file maintained on Jeremy Pinson" as a request for Medical and Psychology Records. 7th Christenson Decl. ¶ 35. Though Ms. Christenson does not provide a detailed explanation for this interpretation, Pinson has not contested the interpretation, and this Court finds no reason in the record to rebut the presumption that the interpretation was made in good faith and based on BOP's expertise on what records are maintained on inmates. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.").

about the existence and discoverability of other documents." *SafeCard Servs., Inc.*, 926 F.2d at

1200 (quoting *Ground Saucer Watch, Inc. v CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Regarding Request No. 2011-7156, although BOP's search produced no responsive

materials, Ms. Christenson's declaration provides a reasonably detailed explanation of the search

terms used, the reasoning for the date range applied, and why the email directories searched were

likely to produce responsive records. 7th Christenson Decl. ¶ 9. As such, the declaration is

sufficiently detailed to demonstrate the "appropriateness of the methods used to carry out the

search." *Ancient Coin Collectors Guild*, 641 F.3d at 514.

Similarly, although BOP's search in response to Request No. 2012-39 produced some

corrupted emails[9]—which were counted in BOP's 200-page search limit and possibly foreclosed

additional, uncorrupted emails from being included in the release to Pinson—this Court similarly

finds that the description of the search methods employed is sufficient to establish that the search

was adequate. The corrupted emails contain blank bodies and only identify the sender, subject

line, and date. However, Pinson has not challenged the responsiveness of these records to her

request for emails at least "making reference or mentioning" the 2011 Accreditation. 7th

Christenson Decl. ¶ 12. Furthermore, a finding that the search was inadequate because inclusion

of the corrupted emails foreclosed inclusion of uncorrupted emails would merely be a

"speculative claim about the existence and discoverability of other documents." *SafeCard Servs.*,

926 F.2d at 1200. Accordingly, the Court grants DOJ's motion for summary judgment with

respect to the adequacy of BOP's searches for records responsive to Request Nos. 2011-7156,

2012-39, and 2013-1684.

---

[9] BOP searched the email directories of Peter Bludworth and Chris Synsvoll, but only the emails located in Bludworth's directory were corrupted. 7th Christenson Decl. ¶ 15.

## 2. Request No. 2012-40

Lastly, the Court finds that BOP's search for records responsive to Request No. 2012-40, which sought "production of all emails sent by the North Central Regional Director and Warden of the U.S. Penitentiary Administrative Maximum during 2011," was adequate. 7th Christenson Decl. ¶ 28.

FOIA does not require an agency to retain records, but only to provide access to records that have been retained. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 151–52 (1980). Furthermore, "[a]n agency need not establish beyond doubt that it does not possess a document." *Whitaker v. CIA*, 31 F. Supp. 3d 23, 46 (D.D.C. 2014) (internal citation and quotation marks omitted). However, if the agency is no longer in possession of responsive records, it cannot be for a reason that is itself "suspect." *See SafeCard Servs., Inc.*, 926 F.2d at 1201 (finding that an agency's search was adequate because the agency's affidavit had explained that the FOIA contact had determined that certain documents were of the type that the agency did not keep).

In the present case, Ms. Christenson attests that a search for "*all* emails sent" by Michael Nalley, North Central Regional Director of BOP, and Blake Davis, Warden of ADX Florence, during the entirety of 2011 produced no responsive records. 7th Christenson Decl. ¶¶ 29–30. Ms. Christenson provides some clarity by explaining that, under the Netmail system, "[r]egular email messages are flagged for a seven year retention and emails flagged as trash are subject to a 45-day retention period." *Id.* ¶ 5. While one could question as "suspect" the fact that two high-level BOP officials sent no emails for a year (or that BOP failed to retain any of those emails after their departure from the agency), Pinson has not presented any countervailing evidence to indicate that BOP does in fact still maintain these emails. For example, it is possible that both of

these officials marked all of their emails as trash during that year or at the time of their departure if more than forty-five days prior to the time the searches were conducted. Because Pinson has not raised any countervailing evidence to indicate that BOP's search was inadequate, the Court grants DOJ summary judgment as to the adequacy of BOP's search for records responsive to Request No. 2012-40.

## B. FOIA Exemptions

DOJ asserts that BOP properly invoked Exemptions 6, 7(C), 7(E), and 7(F) when it redacted or withheld certain information from responsive records. *See* Defs.' 4th MSJ; Defs.' Mem. at 4; *see generally Vaughn* Index. The Court will evaluate each invoked exemption in turn.

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliot v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)).

The agency has the burden of showing that withheld material falls within one of the statutory exemptions, *see* 5 U.S.C. § 552(a)(4)(B); *see also Elliot*, 596 F.3d at 845, and "the [C]ourt . . . 'impose[s] a substantial burden on an agency seeking to avoid disclosure' through the FOIA exemptions." *Morley*, 508 F.3d at 1114 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)) (alteration in original). The agency's documents supporting the exemption, including its *Vaughn* index, must "permit adequate adversary testing of the agency's claimed right to an exemption." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 230 (D.D.C. 2012) (quoting *Kimberlin v. U.S. Dep't of Justice*, 139 F.3d

944, 950 (D.C. Cir. 1998)). Accordingly, disclosure exemptions are "narrowly construed," and "'conclusory and generalized allegations of exemptions' are unacceptable." *Morley*, 508 F.3d at 1114–15 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)). However, courts generally respect the factual reasoning of agencies, and "[u]ltimately[] an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Thus, "a reviewing court should 'respect the expertise of an agency' and not 'overstep the proper limits of the judicial role in FOIA review.'" *Pinson v. U.S. Dep't of Justice*, 160 F. Supp. 3d 285, 293 (D.D.C. 2016) (quoting *Hayden*, 608 F.2d at 1388).

### 1. Exemption 6

DOJ argues that BOP properly invoked Exemption 6 in response to Request Nos. 2011-2366, 2012-39, 2012-975, and 2013-1684.[10] *See* Defs.' Mem. at 23–25; 7th Christenson Decl. ¶¶ 18–22; 53–60; 113–22; 130–33. BOP has withheld the names and addresses of individuals involved in cases against certain BOP sites; the names of an inmate and BOP employee from a letter regarding an administrative claim; the case numbers and administrative claim number in a settlement agreement; the telephone extensions and direct telephone numbers of BOP staff; the names of third-party, non-BOP employees who would be conducting an ACA audit; and the name of a third-party, non-BOP employee who assisted with a pre-ACA audit. 7th Christenson Decl. ¶¶ 18–22, 113–22; *Vaughn* Index at 1–3, 103–04. As explained below, the Court agrees

---

[10] BOP also claims Exemption 6 in its response to Request No. 2013-1684 and its reprocessing of Request No. 2012-975, but because the Court finds that Exemption 7(C) is applicable to these other withholdings, it does not address them under Exemption 6.

that almost all of these withholdings are covered by Exemption 6, and may therefore be withheld.

Under Exemption 6, an agency may withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation marks omitted). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Private information must also implicate a "significant privacy interest" to trigger protection. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," as a significant interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. "[S]omething, even a modest privacy interest, outweighs nothing every time" under the balancing test. *Billington v. U.S. Dep't of Justice*, 245 F. Supp. 2d 79, 86 (D.D.C. 2003) (quoting *Horner*, 879 F.2d at 879).

When private information in a record implicates a significant privacy interest, the court must determine if disclosing the information would constitute a clearly unwarranted invasion of personal privacy by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Multi Ag Media*, 515 F.3d at 1228. "The scope of a privacy interest under Exemption 6 will always be dependent on the context in

which it has been asserted." *Prison Legal News*, 787 F.3d at 1147 (D.C. Cir. 2015) (quoting

*Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996)). "The only

relevant public interest in disclosure to be weighed in this balance is the extent to which

disclosure would . . . contribut[e] significantly to public understanding of the operations or

activities of the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997)

(internal quotations and citations omitted). "Information that 'reveals little or nothing about an

agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d

1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of

the Press*, 489 U.S. 749, 773 (1989)).

In its previous opinion, the Court denied summary judgment as to the application of

Exemption 6 to withhold information including names, case numbers, and administrative claim

numbers involved in settlement agreements with certain BOP sites because BOP did not

"sufficiently explain the privacy interests of the individuals involved in each claim" and thus the

Court could not "correctly balance the public and private interests." *Pinson*, 236 F. Supp. 3d at

363. BOP has since filed a supplemental affidavit to address the Court's concerns and

sufficiently identified the privacy interests of the individuals involved. *See* 7th Christenson Decl.

¶¶ 113–122. For example, BOP explained that it determined that it was proper to withhold the

plaintiff's name and signature and the case number in a suit over negligent medical care received

for HIV/AIDS because such disclosure would "increase the likelihood of the plaintiff's private

medical information becoming more widely known," and "a medical diagnosis of HIV/AIDS is

incredibly stigmatizing" and "leads to potentially false assumptions about . . . drug use and

unprotected homosexual sex." *Id.* ¶ 116.

With this new explanation, the Court is now able to perform its balancing test. First, this Court finds that the public interest in discovering what the government is up to is not served by disclosing the name and signature of the plaintiff in a lawsuit against BOP; the name and signature of that plaintiff's attorney; the name, address, administrative claim number, and civil case number of the plaintiff in an administrative claim under the FTCA; or the signature of the Regional Counsel involved in that claim. The Court finds it significant that the information withheld involves only one government official, and the Court cannot see how disclosing her signature would inform citizens about the inner workings of their government. Accordingly, because even a "modest privacy interest" outweighs nothing "every time," *Billington*, 245 F. Supp. 2d at 86, these individuals' privacy interests outweigh the nonexistent public interest in disclosure, and the application of Exemption 6 to withhold such information is appropriate.

BOP also asserts that telephone extensions and direct telephone numbers of BOP staff were properly withheld because the staff members may be reached through a "general telephone number for the institution," and they therefore "maintain a privacy interest in not being contacted directly at their extensions." 7th Christenson Decl. ¶ 19. Courts in this district have varied in their approach to determining whether work telephone numbers can be withheld pursuant to Exemption 6. Some courts have found that work telephone numbers are not personal or intimate enough to constitute "similar files," and therefore can never be protected under Exemption 6. *See, e.g.*, *Brown v. FBI*, 873 F. Supp. 2d 388, 402 (D.D.C. 2012) ("Work telephone numbers are different from personal information that would be protected . . . such as 'place of birth, date of birth, date of marriage, employment history, and comparable data."); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding that names and work numbers of paralegals are not "similar to a 'personnel' or 'medical' file[s]" or "personal or

intimate information, such as a home address or a social security number, that normally would be considered protected information under . . . Exemption 6"); *Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262, 282 (D.D.C. 2013) (same). Other courts have assumed that work telephone numbers and email addresses do constitute "similar files," and have therefore proceeded to examining the privacy and public interests at stake. *See, e.g.*, *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18–19 (D.D.C. 2013) (finding that the EPA Administrator and White House employees had a privacy interest in preventing the disclosure of their work email addresses); *Competitive Enterprise Inst. v. EPA*, 12 F. Supp. 3d 100, 123 (D.D.C. 2014) (questioning whether a retired government employee had a privacy interest in preventing the disclosure of their defunct work email address).

The Court is in agreement with the courts in the latter set of cases—in some instances, employees' direct contact information may be personal information, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Here, the release of BOP employees' direct telephone extensions could possibly lead to the same sort of harassment that courts have feared other government employees might suffer if their direct work contact information is divulged. *See, e.g.*, *Brown*, 873 F. Supp. 2d at 403 (discussing the possible, though unlikely, harassment of FBI employees when analyzing the withholding of work telephone numbers under Exemption 7(C)). Because Pinson has presented no public interest to justify this potential invasion of personal privacy, the Court grants Defendants' motion as to the office telephone numbers and extensions.

However, BOP has failed to demonstrate why the third-party, non-BOP employee who assisted with a pre-ACA audit has a privacy interest in not disclosing his or her name that outweighs the public interest in disclosure. The record maintains the possibility that this

individual was a government employee or a paid government consultant, and "information that 'merely identifies the names of government officials who authored documents and received documents' does not generally fall within Exemption 6." *Aguirre v. S.E.C.*, 551 F. Supp. 2d 33, 53 (D.D.C. 2008). However, there are instances where merely identifying names may lead to clearly unwarranted invasions of privacy interests. *See, e.g., U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) ("[D]isclosure of the interviewees' identities could subject them or their families to embarrassment in their social and community relationships.") (internal quotations omitted). Accordingly, "whether disclosure of a list of names is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Ray*, 502 U.S. at 176 n.12 (internal quotations omitted). Here, without providing any further details, BOP merely concludes that this individual has a privacy interest in not being identified and that this privacy interest outweighs the "limited additional value" of disclosure. *See* 7th Christenson Decl. ¶ 21. It did not attempt to explain how merely identifying the individual's name would be a clearly unwarranted invasion of privacy. As mentioned above, "'conclusory and generalized allegations of exemptions' are unacceptable." *See Morley*, 508 F.3d at 1115. As such, Exemption 6 is inappropriate because BOP has failed to adequately establish a significant privacy interest.

Conversely, the Court agrees with DOJ that BOP properly invoked Exemption 6 to withhold the names of the third-party, non-BOP employees who conducted the ACA audit. As BOP has explained, there is a significant privacy interest at stake here because revealing the names of individuals who conduct ACA audits could threaten their objectivity during the audit process. *See* 7th Christenson Decl. ¶ 20. Pinson has not presented any countervailing public interest in such a disclosure. Therefore, this privacy interest outweighs any public interest in

disclosure. While disclosing other details about the ACA audit would certainly inform citizens about "what their government is up to," *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994), disclosing the names of the ACA auditors would contribute little, if anything, to this purpose. Accordingly, the use of Exemption 6 to withhold these individuals' names is appropriate.

## 2. Exemption 7

DOJ next argues that BOP properly invoked Exemption 7, which protects from disclosure certain "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), when it withheld certain documents in response to Request Nos. 2010-12533, 2011-1351, 2011-1886, 2012-39, 2012-975, and 2013-1684. *See* Defs.' Mem. at 25–32. For the reasons set forth below, the Court grants summary judgment to BOP on each of its withholdings pursuant to Exemption 7, except for its withholdings pursuant to Exemptions 7(E) and 7(F) of documents responsive to Request No. 2013-1684 associated with Pinson's statute-based programming assignment.

### a. Threshold Inquiry

"In order to withhold documents under Exemption 7, the agency must, as a preliminary matter," make a "threshold" showing "that the records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997). Agencies classified as law enforcement agencies receive a special deference in their claims of law enforcement purpose. *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982) (explaining this deference stems from "the generally accurate assumption that federal agencies act within their legislated purposes"). However, this review, although "necessarily deferential," is "not vacuous." *Id.* at 421.

Not every document compiled by a law enforcement agency satisfies the law enforcement purpose inquiry. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245–46 (D.D.C. 2013) (rejecting ICE's argument that all of its records are compiled for a law enforcement purpose (citing *Pratt*, 673 F.2d at 419)); *Benavides v. Bureau of Prisons*, 774 F. Supp. 2d 141, 146–47 (D.D.C. 2011) (rejecting a "per se" rule that all BOP documents are created for law enforcement purposes and finding that BOP's recordings of inmates' telephone conversations fell outside of law enforcement purposes (citing *Pratt*, 673 F.2d at 416)). Instead, the withheld records "must be related to the enforcement of federal laws or to the maintenance of national security," and that nexus "must be based on information sufficient to support at least a colorable claim of its rationality." *Pinson*, 236 F. Supp. 3d at 364.

Records relating to an investigation are one common type of record compiled for law enforcement purposes. Under the D.C. Circuit's two-part test, "the government can show that its records are law enforcement records" if (1) "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,'" and (2) "there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002) (citing *Pratt*, 673 F.2d at 420–21). However, where there is no ongoing investigation, materials may still meet the threshold requirement if they are akin to "guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

In its previous opinions, the Court has outlined this framework as it relates to BOP. "[T]he 'BOP is a law enforcement agency and thus deserves [] deference' on its claims of law enforcement purpose." *Pinson*, 236 F. Supp. 3d at 365 (citing *Pinson*, 202 F. Supp. 3d at 101).

Courts in this district have previously held that certain records generated as part of BOP's law enforcement mission of protecting inmates, staff, and the community, were compiled for law enforcement purposes. *See, e.g.*, *id.* (holding that an "administrative remedy index, which collects complaints by inmates about the conditions of their confinement," were compiled for law enforcement purposes because they pertain to BOP's "law enforcement responsibility of protecting inmates"); *Mingo v. U.S. Dep't of Justice*, 793 F. Supp. 2d 447, 453 (D.D.C. 2011) (holding that records "pertain[ing] to an altercation involving over 50 inmates" and "maintained by the Special Investigative Office at that facility" were compiled for law enforcement purposes because they were "created in connection with BOP's responsibility to protect[] inmates, staff, and the community" (internal quotation marks and citations omitted)); *Holt v. U.S. Dep't of Justice*, 734 F. Supp. 2d 28, 41 (D.D.C. 2010) (holding that records "pertain[ing] to the investigation of an inmate-on-inmate assault" were compiled for law enforcement purposes because they were "created in connection with BOP's responsibility to protect[] inmates, staff, and the community" (internal quotation marks and citation omitted)). The Court thus analyzes BOP's withholdings under this framework.

The records at issue in this motion are similar to those previously found to have been compiled for law enforcement purposes. For instance, BOP applied Exemption 7 to "records . . . generated by FCC Florence staff in preparation for an ACA accreditation audit," which address "the institution's handling of threats to its security, handling of inmate escapes, processing of criminal violations, and internal discipline procedures." 7th Christenson Decl. ¶ 25. BOP also applied Exemption 7 to withhold documents in Pinson's "Central File, Medical Records, and Psychology Records," and records "maintained by the SIS office, which compiles investigatory records for potential criminal activity within an institution and investigates potential misconduct

by inmates." *Id.* ¶¶ 62–63. Like the records in *Mingo*, *Holt*, and this Court's prior opinions in this case, BOP documents at issue here—which pertain to how BOP handles threats to security, how it monitors and maintains the health and safety of its inmates and staff, and how it investigates criminal activity—were created by BOP to fulfill its responsibility of protecting inmates and prison staff. Thus, the Court finds that BOP has presented sufficient facts to show that the documents it withheld under Exemption 7 were compiled for law enforcement purposes.

### b. Exemption 7(C)

DOJ argues that BOP properly invoked Exemption 7(C) in response to Request Nos. 2012-975 and 2013-1684. BOP used the exemption to withhold: "inmate names and register numbers" and "file names that included names of inmates"; "the names, register numbers, medical information, statements made to law enforcement officers, and correctional management of third-party inmates"; "the names, injuries and other medical information, photographs of their faces, injuries and property, and employment information for [BOP] staff"; "the names of staff who participated in calculated uses of force and their role on the team"; "the telephone extensions, direct numbers, and facsimile extensions of Bureau staff"; "the names and personal identifying information of individuals associated with a statute-based programming assignment used to manage Pinson"; and "the name of a criminal Assistant U.S. Attorney and the names of law enforcement investigative agents associated" with certain agencies, as well as their "contact

information, such as telephone numbers, e-mail addresses, and addresses."[11, 12] 7th Christenson

Decl. ¶¶ 64–72, 133. DOJ argues that the disclosure of this information "could reasonably be

expected to constitute an unwarranted invasion of [the] personal privacy" of other inmates, staff

members, and other third-party individuals. *See* Defs.' Mem. at 26–28. The Court agrees.

Under Exemption 7(C), an agency is exempt from producing "records or information

compiled for law enforcement purposes . . . to the extent that the production of such law

enforcement records or information . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). Exemption 7(C), like

Exemption 6, protects private information, but "Exemption 7(C) is more protective of privacy

than Exemption 6 and thus establishes a lower bar for withholding material." *Prison Legal News*,

787 F.3d at 1146 n.5 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *ACLU v. U.S.*

*Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). In an Exemption 7(C) analysis, the court must

first determine if there is a privacy interest in the information to be disclosed, and then it

balances the individual's privacy interest against the public interest in disclosure, considering

only the extent to which disclosure "further[s] the citizens' right to be informed about 'what their

government is up to.'" *ACLU*, 655 F.3d at 6 (quoting *Reporters Comm.*, 489 U.S. at 773). And as

this Court previously stated, "[i]t is a FOIA requester's obligation to articulate a public interest

sufficient to outweigh the individuals' privacy interest, and the public interest must be

---

[11] BOP withheld the foregoing information from Request No. 2013-1684. BOP also applied Exemption 7(C) to withhold "the Daily Assignment Rosters for institutions," but because the Court has determined that these records are protected by Exemption 7(F), the Court does not address the question of whether Exemption 7(C) applies as well.

[12] DOJ also invokes Exemption 6 as grounds for these withholdings. Because the Court reviews the withholding of these records under Exemption 7(C), the Court does not address whether Exemption 6 may be applied to these withholdings as well.

significant." *Pinson*, 236 F. Supp. 3d at 367 (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Here, BOP has sufficiently demonstrated that private individuals, BOP staff, and other inmates have a privacy interest in withholding their names and other identifying information that outweighs the public interest in disclosure. For example, BOP withheld the "names, dates of birth, telephone numbers, social security numbers, [and] driver's license numbers . . . for third-party individuals"; the "names, injuries and other medication information, [and] photographs of . . . faces" of BOP staff; and the names and contact information of "a criminal Assistant U.S. Attorney" and "law enforcement investigative agents associated with" the FBI, DOJ and BOP. 7th Christenson Decl. ¶¶ 66–67, 72. Pinson has not presented any evidence showing illegal activity by the agency or any other significant public interest in disclosure, and the Court does not find any such evidence in the record. Accordingly, the Court finds that withholding this information under Exemption 7(C) is appropriate.

BOP also properly withheld the work telephone numbers of some staff members using Exemption 7(C). While "a name and work telephone number is not . . . information . . . that normally would be considered protected," disclosure of the work telephone numbers of law enforcement officials could "subject [them] to harassing telephone calls," *Brown v. FBI*, 873 F. Supp. 2d 388, 402–03 (D.D.C. 2012), and would thus be protected. In the present case, while the "likelihood of disruptive and harassing phone calls is debatable," the disclosure of these numbers when the general institution number is provided creates only a *de minimis* public interest, and "[a]ny amount of privacy expectation outweighs the virtually nonexistent public interest." *Id.* at 403. Accordingly, the Court grants DOJ summary judgment as to BOP's use of Exemption 7(C).

### c. Exemption 7(E)

DOJ next argues that BOP properly invoked Exemption 7(E) in response to Request Nos. 2010-12533, 2011-1351, 2012-39, and 2013-1684. BOP used Exemption 7(E) to withhold: "recommendations for improving future uses of force and corrective measures to be taken for errors identified in the use of force under review" in an After Action Review Report; "discrepancies noted and recommendation/results" in Form 586 After Action Review Reports; a list of "weapons used during the institution disturbance" from an April 20, 2008 Report of Incident; "information . . . consist[ing] of the Central Inmate Monitoring (CIM), separations, and other internal assignments used to classify and monitor Pinson and other third-party inmates"; "techniques for investigating criminal activity within a prison facility [and] factual information developed using these law enforcement techniques"; "documents associated with a statute-based programming assignment used to manage Pinson"; "description of the Bureau's calculated use of force technique and a photo of the technique being used"; and "investigative reports from an intelligence database used by BOP staff during law enforcement investigations."[13] 7th Christenson Decl. ¶¶ 73–74, 76–77, 79–80, 96, 103, 129. DOJ argues that the disclosure of this information "would give insight into investigative techniques or processes" and thus enable inmates to "circumvent the effectiveness of the law enforcement techniques." *See* Defs.' Mem. at 28–30. The Court agrees with DOJ except as to the use of Exemption 7(E) to withhold the documents associated with Pinson's statute-based programming assignment.

---

[13] BOP also applied Exemption 7(E) to withhold "discussions of gang and informant activity within the [BOP]" and "steps used to resolve major crises in a Bureau facility," 7th Christenson Decl. ¶ 75, 78, but because this Court has determined that such information is protected under Exemption 7(F), it does not address whether Exemption 7(E) applies as well.

Exemption 7(E) protects law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has "set[] a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). Such information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Moreover, "[t]he first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures used in law enforcement investigations or prosecutions," *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 168 (D.D.C. 2012) (citing *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n* ("*PEER*"), 839 F. Supp. 2d 304, 327 (D.D.C. 2012)); whereas the second clause "separately protects 'guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law.'" *Id.* (alteration in original). Furthermore, "[t]he government 'must show that the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Elkins v. Fed. Aviation Admin.*, 134 F. Supp. 3d 1, 4 (D.D.C. 2015) (quoting *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013)).

BOP has sufficiently shown that the "recommendations for improving future uses of force and corrective measures to be taken for errors identified in the use of force under review"

in an After Action Review Report; the "discrepancies noted and recommendation/results" in Form 586 After Action Review Reports; the list of "weapons used during the institution disturbance" from an April 20, 2008 Report of Incident; and the "description of the Bureau's calculated use of force technique and a photo of the technique being used" that it withheld are not generally known to the public and could reasonably be expected to risk circumvention of the law. 7th Christenson Decl. ¶¶ 79, 96, 103, 129.

Regarding the information in the After Action Review Reports, BOP asserts that such information mentions "equipment to be used during the use of force technique, which staff members were to perform what role during the use of force, and steps to be taken if the inmate remained noncompliant." *Id.* ¶¶ 99, 103. According to BOP, disclosing such information would allow inmates to "target certain staff or equipment during a use of force or anticipate what steps staff would be taking based on their noncompliance," thus allowing circumvention and rendering the procedures ineffective. *Id.* BOP asserts similar concerns about disclosing a description of BOP's calculated use of force technique and a photo of the technique being used. *Id.* ¶ 79. The Court agrees that disclosing this information could reasonably be expected to create a risk of circumvention by revealing the techniques involved in the use of force and the effectiveness of such techniques, rendering them ineffective in future uses. Pinson has not challenged these withholdings, and similar materials have been withheld by other courts in this jurisdiction. *See, e.g.*, *Whitfield v. U.S. Dep't of Treasury*, No. 04-0679, 2006 WL 2434923, at *6 (D.D.C. Aug. 22, 2006) (holding that Exemption 7(E) protects documents detailing arrest location, equipment used, and law enforcement personnel involved in the arrest); *Shore v. FBI*, 185 F. Supp. 2d 77, 85 (D.D.C. 2002) (holding that inmate was not entitled to information regarding the effectiveness

of investigative techniques). Therefore, the Court grants DOJ summary judgment as to BOP's use of Exemption 7(E) to withhold this information.

BOP has also sufficiently shown that "techniques for investigating criminal activity within a prison facility [and] factual information developed using these underlying techniques" and "investigative reports from an intelligence database used by BOP staff during law enforcement investigations" that it withheld are not generally known to the public and could reasonably be expected to risk circumvention of the law. 7th Christenson Decl. ¶¶ 76, 80. Ms. Christenson attests that the withheld documents include information on "who might be interviewed or the types of data reviewed for a particular investigation" and "how the data was collected and organized within the database, how staff searched the database, and how the information can be reported." *Id.* Knowledge of such information could purportedly "enable potential criminals to manipulate witnesses [and] hide evidence" or "reveal the BOP's methods of intelligence gathering [that are] not generally known" and thus allow inmates to circumvent such techniques and methods. *Id.* With these assertions, BOP has "demonstrate[d] logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. The information withheld here is similar to the information that other courts in this jurisdiction have found to be appropriately withheld under Exemption 7(E). *See, e.g.*, *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1 (D.D.C. 2009) (finding application of Exemption 7(E) appropriate to withhold Custom and Border Protection's examination and inspection procedures, internal reporting requirements, and instructions on how to process international travelers); *Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54 (D.D.C. 2009) (finding application of 7(E) appropriate to withhold records indicating when and why an investigator chose to investigate and listen to a prisoner's telephone conversations). In the

present case, the Court agrees that disclosing information such as the subjects of interviews, what data may be reviewed, and how data is collected would enable inmates to manipulate witnesses, hide evidence, avoid methods of data collection, and otherwise circumvent the law. Accordingly, the Court grants DOJ summary judgment as to BOP's use of Exemption 7(E) to withhold this information.

BOP has failed, however, to show that the disclosure of "documents associated with a statute-based programming assignment used to manage Pinson" could reasonably be expected to risk circumvention of the law. 7th Christenson Decl. ¶ 77. While Exemption 7(E) protects law enforcement techniques from disclosure when "public knowledge of those techniques could result in the circumvention of statutes or regulations," *Clemente v. FBI*, 741 F. Supp. 2d 64, 83 (D.D.C. 2010), the agency has the burden of showing that "the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Elkins*, 134 F. Supp. 3d at 4. Here, BOP merely asserts, without explaining in any further detail, that disclosure of the statute-based programming assignment would enable inmates to circumvent reporting requirements. BOP does not explain whether, because this programming assignment is statute-based, the withheld information is available in the statute and is therefore generally known to the public. Thus, BOP's bald assertion is too conclusory for the Court to find the application of Exemption 7(E) appropriate. *See Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496 (D.D.C. 1997) (finding Exemption 7(E) withholding inappropriate because agency merely claimed that it withheld "details" of various techniques not already known to the general public). The Court therefore denies DOJ summary judgment as to BOP's use of Exemption 7(E) to withhold this information.

**d. Exemption 7(F)**

Finally, DOJ claims that BOP properly invoked Exemption 7(F) to withhold records in response to Request Nos. 2011-1886, 2012-39 and 2013-1684. BOP used Exemption 7(F) to withhold: certain answers to questions in "witness forms used during Pinson's referral hearing to ADX Florence"; "discussions of gang and informant activity within the [BOP]"; information that would adversely affect Pinson's safety; answers to certain questions on an Intake Screening Form; "a portion of Pinson's Administrative Detention Order Forms"; "names and register numbers of third-party inmates from whom . . . Pinson needed to be separated"; "documents associated with a statute-based programming assignment used to manage Pinson"; the "institution's policies [on] tools and keys"; "photographs of locks on cell door and hand restraints"; "steps used to resolve major crises in a Bureau facility"; answers to certain questions on a "Screening for Risk of Victimization and Abusiveness Form completed for Pinson"; and the "Daily Assignment Rosters for institutions."[14] 7th Christenson Decl. ¶¶ 81–95, 109. Court agrees that this withheld material falls under Exemption 7(F), excepting the documents associated with Pinson's statute-based programming assignment.

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The D.C. Circuit has described the reach of Exemption 7(F) as "expansive." *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 526

---

[14] BOP also applied Exemption 7(F) to withhold other information, but because the Court finds that Exemption 7(C) protects the "names of staff who participated in calculated uses of force and their role on the team," and Exemption 7(E) protects "techniques for investigating criminal activity" and "a description of the Bureau's calculated use of force technique and a photo of the technique being used," the Court does not address whether Exemption 7(F) also applies.

(D.C. Cir. 2015). Under this broad language, the exemption "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *PEER*, 740 F.3d at 205. Moreover, "[d]isclosure need not *definitely* endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.* (emphasis in original). There is no balancing test in an Exemption 7(F) analysis, as it is "an absolute ban against [disclosure of] certain information," *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002), and "[w]ithin limits, courts defer to the agency's assessment of danger," *Sanchez-Alaniz v. Fed. Bureau of Prisons*, No. 13-1812, 2016 WL 1222214, at *7 (D.D.C. Mar. 28, 2016); *see also Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982) ("Once satisfied that . . . the information logically falls into the exemption claimed, the courts need not go further to test the expertise of the agency.").

In its previous opinion, the Court held that the application of Exemption 7(F) to withhold answers to every question in witness forms used during Pinson's referral hearing to ADX Florence was inappropriate because the risk of harm was too speculative in the absence of some explanation as to why these responses could not be anonymized. *See Pinson*, 236 F. Supp. 3d at 371–72. After reprocessing Request No. 2011-1886, BOP disclosed the answers to some questions, but continued to withhold the answers to others. *See* 7th Christenson Decl. ¶¶ 109–12. In the present motion, BOP has sufficiently explained its reasoning for withholding this information. For instance, Ms. Christenson asserts that disclosing answers to questions such as "Do you believe there are dangers to this inmate's safety?" would "potentially lend[] credibility to the conclusion that there are threats to Pinson's safety" or that she is a weak inmate and thereby risk Pinson being targeted for assault. *Id.* ¶ 110. Ms. Christenson also attests that disclosing the answer to questions such as "Do you personally believe that inmate Pinson is a threat to any person?" would "increase the risk Pinson would be targeted for a preemptive

assault." *Id.* ¶ 111. Thus, BOP has provided a sufficiently detailed affidavit to establish a "reasonable expectation of endangerment," *PEER*, 740 F.3d at 205, and the Court grants DOJ summary judgment as to BOP's use of Exemption 7(F) to withhold this information.

Regarding BOP's withholding of documents associated with Pinson's statute-based programming assignment, BOP fails to consider how the withholding of names under Exemption 7(C) affects the need for withholding the documents in full under Exemption 7(F). BOP asserts that "[i]f inmates know they are subject to reporting requirements and who the information is being reported to, the lives and physical safety of those individuals receiving the information is potentially compromised." 7th Christenson Decl. ¶ 89. But as stated above, this Court has granted summary judgment as to the application of Exemption 7(C) to withhold the names and personal identifying information of third-party individuals in these documents. *See supra* at Section III.B.2.b. Although the Court defers to an agency assessment of danger, it does so within reason, *see Sanchez-Alaniz*, 2016 WL 1222214, at *7, and reason suggests that the application of Exemption 7(C) to withhold names and identifying information of third-party individuals in these documents will likely dispel any danger to those individuals from disclosing the documents. Therefore, because BOP failed to demonstrate a reasonable expectation of endangerment, the Court denies DOJ summary judgment as to the use to Exemption 7(F) to withhold these documents.

As to the other withheld information, BOP has sufficiently demonstrated that the application of Exemption 7(F) is appropriate. Pinson has not challenged these withholdings, and the Court, in its own independent evaluation, does not identify any reason to doubt BOP's assessment of the endangerment to individual safety that would be caused by disclosure.[15] BOP

---

[15] Regarding BOP's withholding of "information regarding gang and informant activity within the [BOP]" and the "Daily Assignment Rosters for institutions," this Court has already

determined that disclosure of documents that could reveal information such as: Pinson's possible status as an "informant[], sex offender[], or former law enforcement agent"; whether Pinson "had concerns about being placed into general population, . . . had assisted law enforcement with criminal investigations, [or] testified against anyone in court"; "reasons for [Pinson's] removal from general population"; and whether Pinson has been "approached for sex or threatened with sexual assault while incarcerated [or] been the victim of a sexual assault," would endanger Pinson's life or physical safety, and it withheld those documents accordingly. 7th Christenson Decl. ¶¶ 82, 85–86, 93. Because BOP is an agency with expertise in the prison setting—and because the Court finds no reason to doubt that knowledge of such information in a prison setting would make Pinson a target for physical or sexual violence—the Court will "defer to the agency's assessment of danger." *Sanchez-Alaniz*, 2016 WL 1222214, at *7. BOP also withheld the "names and register numbers of third-party inmates from whom . . . Pinson needed to be separated," *Id.* ¶ 88, and the Court agrees that this withholding is appropriate under Exemption 7(F) because disclosure of such information could reasonably be expected to endanger the safety of those individuals. *See Anderson v. U.S. Marshals Serv.*, 943 F. Supp. 37 (D.D.C. 1996) (holding that Exemption 7(F) was properly applied to withhold the identity and location of an individual who required separation from the plaintiff). Finally, BOP withheld the "institution's policies [on] tools and keys"; "photographs of locks on cell door and hand restraints"; and the "steps used to resolve major crises in a Bureau facility." 7th Christenson Decl. ¶¶ 90–92. BOP has sufficiently explained that disclosure of such information would enable inmates to use the staff's resources against them, allow capable inmates to pick cell locks and hand restraints, and

determined in its previous opinion that such withholdings are appropriate under Exemption 7(F), *see* Pinson, 236 F. Supp. 3d at 369, and it applies that same reasoning here.

enable individuals to circumvent the staff's techniques in crises situations—such as a hostage negotiation—thus endangering the life or physical safety of inmates, staff, and the public. *Id.* Therefore, the Court finds that BOP has sufficiently established that the disclosure of the above information would create a "reasonable expectation of endangerment." Accordingly, the Court grants DOJ summary judgment as to BOP's use of Exemption 7(F) to withhold this information.

## C. Segregability

FOIA requires that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). However, the agency is not required to provide so much detail that the exempt material would effectively be disclosed. *Id.*

DOJ has provided Pinson with a comprehensive *Vaughn* Index that describes each document withheld in part or in full and the exemption under which it was withheld. *See generally Vaughn* Index. Ms. Christenson attests to having prepared the *Vaughn* Index and that "[e]very effort has been made to release all segregable information without [releasing protected information]." *See, e.g.,* 7th Christenson Decl.¶¶ 17, 22. Pinson has not challenged this attestation. The combination of the *Vaughn* Index and Ms. Christenson's declaration are sufficient to fulfill the agency's obligation to show with "reasonable specificity" why a

document cannot be further segregated. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–80 (D.C. Cir. 1996).

## IV. CONCLUSION

In light of this Court's conclusions regarding the adequacy of BOP's searches and the exemptions BOP has invoked, the Court grants summary judgment to DOJ as shown in the following table:

| Request No. | Document Nos. | Summary Judgment for BOP |
|---|---|---|
| 2010-12533 | All | **GRANTED** |
| 2011-1351 | All | **GRANTED** |
| 2011-1886 | All | **GRANTED** |
| 2011-2366 | All | **GRANTED** |
| 2011-7156 | All | **GRANTED** |
| 2011-7619 | All | **GRANTED** |
| 2012-39 | 7, 8, 17, 18 | **DENIED,** insufficient showing to apply Exemption 6 |
| | All others (1–6, 9–16) | **GRANTED** |
| 2012-40 | N/A | **GRANTED** |
| 2012-975 | All | **GRANTED** |
| 2013-1684 | 69 | **DENIED**, insufficient showing to apply Exemptions 7(E) and 7(F). |
| | All others (1–68, 70–555) | **GRANTED** |

If, following the issuance of this opinion, BOP still maintains that the documents for which summary judgment has been denied fall within any FOIA exemptions, DOJ shall file its renewed motion for summary judgment addressing the concerns the Court has raised by June 25, 2018.

For the foregoing reasons, DOJ's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 23, 2018

RUDOLPH CONTRERAS
United States District Judge
