**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiffs | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 435, 437, 455, 464 |
| | : | | |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION;**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT;**
**DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

*Pro se* Plaintiff Jeremy Pinson brought this case to challenge the government's response

to multiple requests she filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

with different departments of the U.S. Department of Justice ("DOJ"), including the Executive

Office of the United States Attorneys ("EOUSA") and Federal Bureau of Prisons ("BOP"). On

May 23, 2018, the Court granted in part the DOJ's fourth motion for summary judgment with

respect to FOIA requests directed at the BOP, which Pinson did not oppose. *See Pinson v. U.S.*

*Dep't of Justice* ("*Pinson I*"), 313 F. Supp. 3d 88 (D.D.C. 2018). Pinson now moves to vacate

that judgment under Fed. R. Civ. P. 60, arguing that she did not get the opportunity to oppose the

motion because she never received it. Although both parties treat the motion as one under Rule

60, the Court treats it as a motion for reconsideration under Fed. R. Civ. P. 54, and because

Pinson has not sufficiently established that she is entitled to relief, the Court denies the motion.

In addition, before the Court are two renewed motions for summary judgments by DOJ

with respect to the remaining requests directed at the EOUSA and BOP. This Court has granted in part and denied in part three past DOJ motions for summary judgment with respect to the EOUSA, and denied a motion for summary judgment with respect to two remaining FOIA requests directed at the EOUSA in May 2018. *See Pinson v. U.S. Dep't of Justice* ("*Pinson II*")*, 313 F. Supp. 3d 122 (D.D.C. 2018). DOJ now files a renewed motion for summary judgment with respect to those two requests, arguing that it has adequately described the search terms used to perform the searches and responded to all requests. With respect to the BOP, the Court has granted in part and denied in part four past motions for summary judgment by DOJ. *See generally Pinson I*, 313 F. Supp. 3d at 88. In its renewed motion, DOJ argues that the BOP properly withheld records from disclosure under FOIA Exemption 7(F). For the reasons set forth below, the Court grants both DOJ motions for summary judgment.

Finally, Pinson has moved for sanctions and for a preliminary injunction, arguing that the BOP is improperly interfering with her access to the courts. Because Pinson has not shown that she is substantially likely to prevail on the merits of a right of access claim, the Court denies the motion.

## II. BACKGROUND

This Court has already discussed the factual background for this case in detail in its prior Memorandum Opinions. *See Pinson II*, 313 F. Supp. 3d at 125-26; *Pinson I*, 313 F. Supp. 3d at 99-104. The Court assumes familiarity with its prior opinions and confines its discussion to the facts most relevant to the present motions.

### A. Requests Nos. 2012-39 and 2013-1684

Pinson filed this case in 2012, claiming that DOJ had unlawfully failed to comply with many of her FOIA requests. *See* Compl. ¶¶ 5–25, ECF No. 1. Several of those requests were

directed at BOP, including Requests No. 2012-39 and 2013-1684. With respect to Request No. 2012-39, "Pinson sought, among other records, '[a]ll emails, memorandums by ADX Florence Executive Staff and/or Department Supervisors written or generated in connection with the 2011 Accreditation review by the ACA and/or making reference or mentioning such review.'" *Pinson I*, 313 F. Supp. 3d at 99 (citation omitted). And with respect to Request No. 2013-1684, Pinson sought files "located in the Central File, SIS File, and any other file maintained on Jeremy Pinson." *Id.* at 100.

On October 23, 2017, after several motions, responses, and orders arising from the complaint and after the government fulfilled several of the requests, DOJ filed its fourth motion for partial summary judgment on Requests No. 2012-39 and 2013-1684, which were the last remaining FOIA requests with respect to the BOP. *See* Defs.' 4th Renewed BOP Mot. Summ. J ("BOP's 4th MSJ"), ECF No. 403; Defs.' Opp'n Mot. Vacate ("BOP's Opp'n") 1, ECF No. 439. The next day, this Court issued a *Fox/Neal* order advising Pinson to respond to the motion before November 22, 2017. *See Fox/Neal* Order 1, ECF No. 404. On October 26, 2017, Pinson signed a legal mail log at the FMC Rochester prison facility, acknowledging the receipt of mail from defense counsel. *See* BOP's Opp'n Ex. A, ECF No. 439-1. On November 3, 2017, Pinson filed a motion for a 60-day stay of proceedings to permit settlement discussions. *See* Pl.'s Mot. Stay Proceedings ("Pl.'s Mot. Stay"), ECF No. 407. In the motion, Pinson also asserted that if the defendants did not agree to such a stay, she would seek an enlargement of time to respond to DOJ's summary judgment motion, stating that she "would seek enlargement of time to respond to the most recent motion (Doc. 403) by 30 days." *Id.* On December 6, 2017, this Court denied Pinson's motion to stay proceedings and further ordered that Pinson respond to DOJ's fourth summary judgment motion as to the BOP by January 5, 2018. Min. Order (Dec. 6, 2017).

Pinson did not respond to the motion by January 5, 2018. On May 23, 2018, four months after the extended deadline, this Court granted in part and denied in part the DOJ's motion for partial summary judgment. *Pinson I*, 313 F. Supp. 3d at 122. The Court granted summary judgment on most of the documents for which the BOP invoked exemptions in requests 2012-39 and 2013-1684. *See id.* However, the Court rejected the BOP's argument that FOIA Exemption 6 precluded the production of Document Nos. 7, 8, 17, and 18 under Request No. 2012-39 because "BOP ha[d] failed to demonstrate why the third-party, non-BOP employee who assisted with a pre-ACA audit ha[d] a privacy interest in not disclosing his or her name that outweigh[ed] the public interest in disclosure." *Id.* at 112. It also held that DOJ did not sufficiently show that Exemptions 7(E) and 7(F) were applicable to Document No. 69 under Request No. 2013-1684. *See id.* at 122.

On July 2, 2018, Pinson filed a motion to vacate the May 23 judgment. *See* Pl.'s Mot. Vacate, ECF No. 437. Pinson claims she did not respond to DOJ's motion due to "withholding [of the motion for summary judgment] . . . by BOP officials," "never receiv[ing] a Fox notice from the Court clerk," and more generally not receiving communications from the court clerk or counsel on this matter. *Id.* at 2. Pinson asserts that if she had received DOJ's motion for partial summary judgment and the *Fox/Neal* Order, she would have responded to it in time. *See id.*

On June 29, 2018, DOJ filed a motion for leave to file *in camera* a renewed motion for summary judgment with respect to the BOP. *See* Defs.' Mot. Leave File in camera, ECF No. 434. The Court granted DOJ's motion. Min. Order (July 2, 2018). DOJ then renewed its motion for summary judgment with respect to the BOP *in camera* on July 2, 2018, which it filed a public, redacted version of on March 1, 2019. *See* Defs.' 5th Renewed BOP Mot. Summ. J. ("BOP Mot. Summ. J."), ECF No. 456-1. In the motion, DOJ solely argues that the BOP

properly withheld Document 69 under Request No. 2013-1684 pursuant to FOIA Exemption 7(F), asserting that it has demonstrated a reasonable expectation of endangerment to Pinson or other inmates should the document be released. *See* Defs.' 5th Renewed BOP Mem. Supp. Summ. J. ("BOP Mem. Supp. Summ. J.) 4–5, ECF No. 456-1. DOJ supports its claim with a supplemental declaration by BOP employee Kara Christenson. *See* 8th Christenson Decl., BOP Mot. Summ. J. Ex. B. DOJ does not renew its motion for summary judgment with respect to Request No. 2012-39, and represents in its motion that the BOP will release the relevant documents without redactions, in line with this Court's holding. *See* BOP Mem. Supp. Summ. J. 2.

After the Court directed her to respond and denied her motion to appoint counsel, *see* Order Denying Mot. Appointment Counsel, ECF No. 461, Pinson filed her opposition on June 3, 2019, *see* Pl.'s Opp'n BOP Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 462. In her opposition, Pinson asked that the Court "resolve the Motion by conducting an in camera review of the FOIA release, evidence and Motion." *Id.* at 1.[1]

---

[1] In her opposition, Pinson also noted that she had been placed in the Segregated Housing Unit ("SHU") of her prison, that "her access to any related case law [was] non-existent, access to paper and postage very limited," and that she was "at a complete loss to substantively oppose the Motion in any effective way." Pl.'s Opp'n 1. After DOJ filed its reply, *see* Defs.' Reply Supp. BOP Mot., ECF No. 463, the Court accordingly directed the BOP to file a status report informing the Court about Pinson's access to her prison's law library, *see* Min. Order (June 12, 2019). Defendants filed a status report on July 12, 2019, indicating that Pinson had been placed in the SHU between April 20, 2019 and May 23, 2019, then again starting on June 13, 2019. *See* Defs.' Status Report 2, ECF No. 466. Defendants indicated that Pinson had access to a computer terminal that includes access to an electronic law library while placed in the SHU, and that she had accessed the law library for a combined total of 72 minutes during her SHU placement between April and May, and for a combined total of 58 minutes since her renewed SHU placement starting on June 13, 2019. *See id.*

Given those representations, the Court here is satisfied that Pinson has had a meaningful opportunity to oppose the BOP's motion. Pinson has had access to the redacted motion since March 6, 2019, and was placed in the SHU over two weeks after the Court denied her motion for the appointment of counsel on May 3, 2019. Pinson had the opportunity to access a law library

## B.  Request Nos. 13-1085 and 12-1757

On May 23, 2018, the Court denied DOJ's motion for summary judgment with respect to

the remaining two requests concerning the EOUSA, Requests Nos. 13-1085 and 12-1757.  *See*

*Pinson II,* 313 F. Supp. 3d at 128.  Under Request No. 13-1085, Pinson sought records in the

District of Idaho case *United States v. Garcia*, No. 11–cr–68 (D. Idaho).  *See id.* at 127.  In its

opinion, the Court denied DOJ's motion for summary judgment with regards to Request No. 13-

1085 because EOUSA had not "clarif[ied] that the correct search terms were used to perform a

search reasonably calculated to uncover all relevant documents" sought in the request.  *Id.* at

128.  EOUSA had provided a general description of the search, including details of the records

system that was searched, the amount of time used to conduct the search, and the scope of the

search, which was limited to public records, but had failed to clearly indicate which docket

number was used to conduct the search.  *See id.* at 127-28.  And, in his declaration in support of

the motion, David Luczynski, Attorney Advisor at EOUSA, had referenced "12–cr–236" rather

than "11–cr–68" as the case to which the materials produced were related.  *Id.*  The Court thus

determined that the wrong case number may have been used in responding to Request No. 13-

1085.  *See id.* at 127-28.

In Request No. 12-1757, Pinson sought "production of all documents, email, or records"

for, *inter alia*, two Middle District of Pennsylvania cases, *Wiggins v. Bledsoe*, 10-cv-949 (M.D.

Pa.) and *Gomez v. Holt*, 11-cv-1906 (M.D. Pa.).  *Id.* at 125 (citation omitted).  The Court denied

DOJ's motion for summary judgment because EOUSA's declaration did not provide

"clarification of whether 'the search and released documents were limited to only public records'

---

while in the SHU, and was also in the general population between May 23, 2019 and June 13,
2019, where she presumably did not have restricted access to legal research.

nor d[id] it contain an explanation of 'the discrepancy between the 197 pages located and the 200 pages apparently released.'" *Id.* at 128 (citation omitted). The Court stated it would continue to deny summary judgment until EOUSA "provide[d] a declaration that adequately explain[ed] whether the FOIA contact's search was limited to public documents, as well as the discrepancy between the pages located and those released." *Id.*

On July 3, 2018, DOJ filed a renewed motion for summary judgment with respect to the EOUSA. *See* Defs.' Renewed EOUSA Mot. Summ. J ("EOUSA Mot. Summ. J."), ECF No. 435. Pinson did not oppose the motion. In its renewed motion, DOJ asserts that Pinson was provided with the correct documents with respect to Request No. 13-1085, and that there was no error in the search terms used to generate the documents. *See* Defs.'s Renewed EOUSA Mem. Supp. Summ. J. ("EOUSA Mem. Supp.") 5–6, ECF No. 435-1. In a supplemental declaration, Danielle Haws, a FOIA contact for the United State Attorney's Office for the District of Idaho, states that correct docket numbers were used to complete the search for Request No. 13-1085. *See* Haws Supp. Decl. ("Haws Decl."), EOUSA Mot. Summ. J. Ex. 4, ECF No. 435-4. DOJ attributes the discrepancy between the docket number searched for and the docket number referenced in its initial declaration to a typographical error by the declarant at EOUSA. EOUSA Mem. Supp. 6, ECF No. 435-1. Luczynski notes in a supplemental declaration that "[w]hen referring back to the plaintiff's original request for records from the District of Idaho, [he] inadvertently used the case number directly below the correct number, 11-cr-68." Luczynski Decl. ¶ 2, EOUSA Mot. Summ. J. Ex. 3, ECF No. 435-3. He further states that "[t]he actual search and release of responsive records to the plaintiff was in actuality related to case number 11-cr-68." *Id.* ¶ 3.

In the renewed motion for summary judgment, DOJ also clarifies its search terms with respect to Request No. 12-1757. *See* EOUSA Mem. Supp. 4. DOJ asserts that with respect to Request No. 12-1757, the search "encompassed both public and nonpublic records." EOUSA Mem. Supp. 4. In a supplemental declaration, Jodi Matuszewski, a FOIA coordinator for the United States Attorney's Office for the Middle District of Pennsylvania, states that the search resulted in 22 pages of non-public information and 67 pages of public documents with respect to *Gomez*. Matuszewski Decl. ¶ 7, EOUSA Mot. Summ. J. Ex. 5, No. 435-5. With respect to *Wiggins*, Matuszewski states that the search resulted in 14 pages of non-public documents and 97 pages of public documents. *Id.* ¶ 18. Matuszewski further declares that her previous tabulation of 94 pages of public records was incorrect, and that the correct number of pages is 97. *Id.* ¶ 19. DOJ asserts that the incorrect tabulation led to the 3-page discrepancy between the 200 pages released to Pinson and the 197 pages mentioned in Matuszewski's previous declaration. *See* EOUSA Mem. Supp. 4.

### C. Pinson's Motion for Sanctions and a Preliminary Injunction

On June 14, 2019, Pinson filed a motion for sanctions and preliminary injunction. *See* Pl.'s Mot. Prelim. Inj., ECF No. 464. In a declaration attached to the motion, Pinson represented that the BOP had interfered with her access to this Court when it placed her in the SHU in April 2019, by seizing her legal file relating to *Pinson v. U.S. Dep't of Justice*, No. 18-486 (D.D.C.), denying her legal postage, and banning her from making legal calls. *See* Pinson Decl. ¶¶ 1–2, 4, 6, ECF No. 464-1. Pinson asked that the Court "enjoin such interference" with her right of access to the courts. Pl.'s Mot. Prelim. Inj. 2. Defendants filed their response on July 18, 2019. *See* Defs.' Opp'n Mot. Prelim. Inj., ECF No. 468.

### III.  LEGAL STANDARD

### A.  Motion for Reconsideration

Motions for reconsideration of interlocutory orders under Rule 54(b) are "within the discretion of the trial court." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21 (D.D.C. 2007) (quoting *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C.2003)).  The Court may enter reconsideration "as justice requires." *Id.* (quoting *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006)).  Although this standard is not expressly stated, a trial court has more discretion in applying Rule 54(b) than it does under Rules 59(e)[2] or 60(b).[3]  *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (acknowledging that "it is clear that 'courts have more flexibility in applying Rule 54(b)' than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)" (quoting *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004))).  "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant

---

[2] Rule 59(e) allows a court to alter its judgment within 28 days after it is entered, but such a decision is "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, . . . new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (internal quotation marks omitted).  "Motions under Rule 59(e) are 'disfavored' and the moving party bears the burden of establishing 'extraordinary circumstances' warranting relief from final judgment." *Schoenman v. FBI*, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)).

[3] Rule 60(b) allows a court to alter its judgment for reasons including "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and "fraud, . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b). As with Rule 59, the burden is on the movant to show that relief is warranted. *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 95 (D.D.C. 2014).

change in the law or facts has occurred since the submission of the issue to the Court.'" *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (alteration omitted) (quoting *Cobell*, 224 F.R.D. at 272). Errors of apprehension may include the consideration of incorrect or incomplete factual information. *See id.*

### B. Motion for Summary Judgment

"[T]o prevail in a Freedom of Information Act suit, 'the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements.'" *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). At the summary judgment stage, the agency does this by showing "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). This showing requires the agency to demonstrate that its search was adequate and that all responsive records were either released or properly withheld.

An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks and citation omitted). "To meet that burden, the agency may submit, and [the Court] may rely on, reasonably detailed affidavit[s], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir. 2017) (internal citation and quotation marks omitted). The affidavits must do more than state in conclusory fashion that the agency "conducted a review of [the files] which would contain information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg*, 627 F.2d at 370–71.

Furthermore, the court makes a *de novo* assessment of whether the agency has properly

withheld the requested documents under a FOIA exemption. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Thus, to prevail on a motion for summary judgment, the defending agency "must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable or is wholly [or partially] exempt from the Act's inspection requirements.'" *Citizens for Ethics & Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). To meet its burden, a defendant agency may rely on declarations that are reasonably detailed and non-conclusory. *See id.* A court may grant summary judgment solely on the basis of agency declarations "when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (citation omitted). However, the court is mindful that "[t]he burden is always on the movant to demonstrate why summary judgment is warranted." *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring). "The nonmoving party's failure to oppose summary judgment does not shift that burden," and "a District Court must always

determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* (citing Fed. R. Civ. P. 56(e)(3)).

### C. Motion for Preliminary Injunction

Preliminary injunctions provide "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). In order to obtain a preliminary injunction, the moving party "must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in h[er] favor, and that an injunction is in the public interest." *Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 17 (D.D.C. 2018) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial." *Id.* (citing *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

### IV. ANALYSIS

The Court reviews the three motions in turn. First, Pinson asserts that the Court should reconsider its opinion and order related to BOP Request Nos. 2012-39 and 2013-1684 because she was unaware of DOJ's motion for summary judgment. The Court disagrees, and therefore denies the motion to vacate. Second, DOJ asserts in its motions for summary judgment that it has performed adequate searches with respect to EOUSA Request Nos. 13–1085 and 12–1757, and released all non-exempt documents. In addition, it also asserts that it properly withheld Document 69 under BOP Request No. 2013-1684. The Court agrees that the searches were adequate, and that DOJ properly withheld Document 69. Therefore, the Court grants DOJ's

motions for summary judgment with respect to the EOUSA and BOP. Finally, because the Court finds that Pinson is not likely to succeed on the merits, it denies her motion for sanctions and a preliminary injunction.

## A. Motion to Vacate

The Court first reviews Pinson's motion to vacate. In her motion, Pinson asks the Court to vacate its grant of partial summary judgment under Rule 60 of the Federal Rules of Civil Procedure. Pl.'s Mot. Vacate at 1. As an initial matter, Pinson does not specify which section of Rule 60 applies to her motion, and DOJ responds to the motion by also referencing Rule 60 as the applicable rule. *See generally* BOP's Opp'n. However, Rule 60 is not applicable to this motion because Pinson is not seeking relief from a final judgment. *See* Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party or its legal representative from a final judgment."). Instead, Pinson asks the Court to reconsider its partial summary judgment to the BOP, an interlocutory order governed by Rule 54(b). *See, e.g.*, *Alaska v. FERC*, 980 F.2d 761, 764 (D.C. Cir. 1992) ("[G]rants of partial summary judgment are generally considered interlocutory orders."). Because the standards are similar and the Court construes *pro se* parties' pleadings liberally, it evaluates Pinson's motion as one for reconsideration under Rule 54(b). As described below, the Court denies Pinson's motion because it does not state sufficient grounds to justify relief.

Pinson asserts that the Court should reconsider its May 23, 2018 order entering partial summary judgment as to the BOP because she did not receive the motion and thus never had an opportunity to respond to DOJ's motion. *See* Pl.'s Mot. Vacate at 2. DOJ argues that the motion was sent with appropriate *Fox/Neal* language by legal mail on October 23, 2017, BOP's Opp'n at 1, while Pinson claims that she never received either. *See* Pl.'s Mot. Vacate at 2. However, three days later on October 26, 2017, Pinson acknowledged receipt of mail from defense counsel

at the U.S. Attorney's Office for the District of Columbia by signing a legal mail log at the FMC Rochester prison facility. *See* BOP's Opp'n Ex. A. In addition, although Pinson states that she did not receive the motion, she filed a motion to stay proceedings less than ten days later acknowledging its filing. *See* Pl.'s Mot. Stay. In that motion, Pinson asked as an alternative to a stay that she be granted an "enlargement of time to respond to the most recent motion (Doc. 403) by 30 days." *Id.* Even if Pinson were to dispute the veracity of the BOP's mail log, her motion to stay proceedings is evidence that she was at least aware of the motion and on notice of the pending deadline to respond.

Separately, Pinson also has an obligation to monitor the dockets of the cases in which she is a party. *See Halmon v. Jones Lang Wootton USA*, 355 F. Supp. 2d 239, 244 (D.D.C. 2005); *Oladokun*, 309 F.R.D. at 99. If indeed she never received DOJ's motion or the *Fox/Neal* order, these issues should have been raised in a timely manner once she noticed on the docket that DOJ had filed a motion for summary judgment in October 2017. Pinson waited until July 2, 2018, and almost two months after this Court issued an opinion on May 23, 2018, to raise the issue of non-delivery. Pinson had ample time to raise these issues. This failure to raise the alleged lack of receipt is compounded by the fact that Pinson was aware of both the pending motion and the deadline to respond, and yet did not respond.

In its opinion, the Court independently determined whether undisputed material facts justified granting summary judgment. Thus, even had the Court received a response to DOJ's motion from Pinson, its decision to grant DOJ's motion in part and deny it in part would have been the same. Pinson has not shown that justice requires the Court to reconsider its interlocutory order, and the Court denies her motion for reconsideration.

## B. Motions for Summary Judgment

Next, DOJ has filed motions for summary judgment with respect to the EOUSA and BOP. In those motions, DOJ asserts that all of the searches it conducted were adequate and all responsive records were either released or properly withheld. For the reasons set forth below, the Court grants the motions for summary judgment with respect to the EOUSA and BOP.

### 1. EOUSA

DOJ asserts that this court should grant summary judgment as to the EOUSA because it has resolved the remaining issues the Court previously raised relating to the searches conducted in response to Pinson's requests. The Court agrees, and it accordingly grants DOJ's motion for summary judgment with respect to the EOUSA.

#### a. Request No. 13-1085

Under Request No. 13-1085, Pinson sought records from the District of Idaho case *United States v. Garcia*, No. 11–cr–68. DOJ asserts that the EOUSA searched for records responsive to the request using correct docket numbers and properly released all responsive records. EOUSA Mem. Supp. at 6. The Court agrees and grants summary judgment as to Request No. 13-1085.

FOIA searches are inadequate when the incorrect search term is used to retrieve responsive records. *See Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 87–88 (D.D.C. 2015) (holding that an agency's search was inadequate when the agency used an incorrect spelling of requester's name during its search). In its prior opinion, the Court held that the EOUSA had provided a general description of its search, including details of the records system that was searched, the amount of time used to conduct the search, and the scope of the search, which was limited to public records, but had failed to clearly indicate which docket number was used to conduct the search. *See Pinson II*, 313 F. Supp. 3d at 127-28. Discrepancies in the

15

materials provided in support of DOJ's previous renewed motion for summary judgment indicated that the wrong docket number may have been used to search for the requested materials. *See id.*

In a supplemental declaration, DOJ now indicates that "[t]he search previously performed was completed using District of Idaho criminal case number 11-cr-68, United States v. Apodaca, et al.," indicating that the correct docket number was in fact used. Haws Decl. ¶ 1. DOJ also explains that the discrepancy in docket numbers between the records previously produced to Pinson and the earlier declaration resulted from a typographical error by Luczynski, the declarant in the EOUSA's declaration in support of the previous motion for summary judgment. EOUSA Mem. Supp. at 6. In a supplemental declaration, Luczynski states that he "inadvertently used the case number directly below the correct number, 11-cr-68" in the earlier declaration. Luczynski Decl. ¶ 2. He further states that "[t]he actual search and release of responsive records to the plaintiff was in actuality related to case number 11-cr-68." *Id.* ¶ 3. Pinson has not disputed this assertion.

With the clarification that the correct docket number was used in the search, the Court finds that the EOUSA has performed a search reasonably calculated to uncover all relevant documents in response to Request No. 13-1085. For this reason, the Court grants DOJ's motion for summary judgment as to Request No. 13-1085.

### b. Request No. 12-1757

Under Request No. 12-1757, Pinson sought production of documents, emails, or records from Middle District of Pennsylvania cases *Wiggins v. Bledsoe*, No. 10–cv–949, and *Gomez v. Holt*, No. 11–cv–1906. DOJ asserts that the EOUSA "searched for and released to Pinson all public and nonpublic records responsive to her request and has explained the apparent numerical

discrepancy between the pages located and pages released" regarding Request No. 12-1757. EOUSA Mem. Supp. at 5. Again, Pinson has not disputed this assertion. Based on EOUSA's supplemental declaration, the Court finds that the EOUSA has described the search with sufficient detail. For this reason, the Court grants DOJ's motion for summary judgment as to Request No. 12-1757.

In its May 23, 2018 opinion, the Court denied the previous motion for summary judgment as to Request No. 12-1757 because DOJ did not indicate whether "the search and released documents were limited to only public records," nor did DOJ provide an explanation for "the discrepancy between the 197 pages located and the 200 pages apparently released" to Pinson. *Pinson II,* 313 F. Supp.3d at 128 (citing *Pinson v. U.S. Dep't of Justice*, No. 12-cv-1872, 2017 WL 6887041 at *10 (D.D.C. Aug. 31, 2017)). In a supplemental declaration filed with EOUSA's instant motion, EOUSA declarant Matuszewski clarifies that the search encompassed both public and nonpublic records. *See generally* Matuszewski Decl. With respect to *Gomez*, Matuszewski states that the search resulted in 22 pages of non-public information including correspondence, emails, declarations, and BOP inmate data, and 67 pages of public documents including pleadings. Matuszewski Decl. ¶ 7. With respect to *Wiggins*, Matuszewski represents that the search resulted in 14 pages of non-public documents including correspondence, emails, declarations, and BOP inmate data, and 97 pages of public documents including pleadings. *Id.* ¶ 18. In the same supplemental declaration, Matuszewski explains that the discrepancy between the number of pages the EOUSA previously indicated it had located and the different number it claimed to have released was due to an error in the tabulation of the pages. *Id.* ¶ 19. After recounting the pages, Matuszewski indicates that the number of public records located totaled 97 pages, and not 94. *Id*. DOJ argues that this explains the 3-page discrepancy between the 200

pages released to Pinson and the 197 pages mentioned in Matuszewski's previous declaration. EOUSA Mem. Supp. at 4-5. The Court finds the explanation reasonable, and that Pinson received all the pages associated with Request No. 12-1757.

With the clarification that the EOUSA searched for both public and non-public records using the terms provided by Pinson, and an explanation of the discrepancy between the page numbers located and released, the Court finds that the EOUSA has performed a search reasonably calculated to uncover all relevant documents in response to Request No. 12-1757. Therefore, the Court grants DOJ summary judgment as to Request No. 12-1757.

## *2. BOP*

DOJ has filed a renewed motion for summary judgment as to Request No. 2013-1684 *in camera*, asserting that the BOP properly invoked FOIA Exception 7(F) when it withheld Document 69 from the records released in response to Request 2013-1684. *See* BOP Mem. Supp. at 4–5. After reviewing the motion and the relevant document *in camera*, the Court agrees and grants the motion.

As an initial matter, DOJ submitted its motion and supporting documents *ex parte* and *in camera*. Section 552(a) of FOIA, 5 U.S.C. § 552(a)(4)(B), allows for the review of withheld documents *in camera*. "The decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'" *Lam Lek Chong v. DEA*, 929 F.2d 729, 735 (D.C. Cir. 1991) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)). However, the D.C. Circuit disfavors the use of *in camera* filings because such filings "are at odds with the 'strong presumption in favor of public access to judicial proceedings.'" *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 110–11 (D.D.C. 2017) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991)). When using such filings, the

Court "must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party." *Armstrong v. Exec. Office*, 97 F.3d 575, 580 (D.C. Cir. 1996).

The Court does not take lightly "the limitations to the adversarial process that result from *in camera* filings." *Jarvik v. CIA*, 741 F. Supp. 2d 106, 112 (D.D.C. 2010). However, *in camera* review is appropriate to "permit meaningful review of exemption claims" where there is a reasonable chance of harm if any further details of the documents were released. *Lam Lek Chong*, 929 F.2d at 735; *see Jarvik*, 741 F. Supp. 2d at 112. Here, the memorandum in support of DOJ's renewed motion and the other attachments to the motion contain sensitive information necessary for the Court's determination of the motion, and which is reasonably likely to cause harm if released. The Court accordingly considers the motion *in camera*.

In response to a FOIA request, an agency "may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliot v. USDA*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). The agency has the burden of showing that withheld material falls within one of the statutory exemptions, *see* 5 U.S.C. § 552(a)(4)(B); *see also Elliot*, 596 F.3d at 845, and "the [C]ourt . . . 'impose[s] a substantial burden on an agency seeking to avoid disclosure' through the FOIA exemptions." *Morley*, 508 F.3d at 1114 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)) (alteration in original). The agency's documents supporting the exemption, including its *Vaughn* index, must "permit adequate adversary testing of the agency's claimed right to an exemption." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 230 (D.D.C. 2012) (quoting *Kimberlin v. U.S. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998)). Accordingly, disclosure exemptions are "narrowly construed," and "'conclusory and generalized

allegations of exemptions' are unacceptable." *Morley*, 508 F.3d at 1114–15 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979)). However, courts generally respect the factual reasoning of agencies, and "[u]ltimately[] an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374–75 (quoting *Gardels*, 689 F.2d at 1105).

DOJ argues that the BOP properly withheld records in response to Request No. 2013-1684 under Exemption 7(F), which protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "In order to withhold documents under Exemption 7, the agency must, as a preliminary matter," make a "threshold" showing "that the records were compiled for a law enforcement purpose." *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997). The Court already held in its previous opinion that the BOP has made this threshold showing. *See Pinson I,* 313 F. Supp.3d at 113-14.

The D.C. Circuit has described the reach of Exemption 7(F) as "expansive." *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 526 (D.C. Cir. 2015). The exemption "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *PEER*, 740 F.3d at 205. Moreover, "[d]isclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Id.* There is no balancing test in an Exemption 7(F) analysis, as it is "an absolute ban against [disclosure of] certain information*," Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002), and "[w]ithin limits, courts defer to the agency's assessment of danger," *Sanchez-Alaniz v. Fed. Bureau of Prisons*, No. 13-1812, 2016 WL 1222214, at *7 (D.D.C. Mar. 28, 2016); *see also Gardels*, 689 F.2d at 1104 ("Once satisfied that . . . the information logically falls into the

exemption claimed, the courts need not go further to test the expertise of the agency.").

The Court previously denied summary judgment as to the applicability of Exemption 7(F) to document 69 because it found that the DOJ had not adequately explained why redaction of certain portions of the document would not be sufficient to prevent any endangerment of life or physical safety. *See Pinson I*, 313 F. Supp.3d at 120. In a supplemental declaration in support of DOJ's renewed motion, Christenson, a BOP employee, provides additional information regarding the sensitive information contained in Document 69. *See* 8th Christenson Decl. ¶ 6-7. Christenson also explains that, in her correctional experience, the release of the document would create a risk of harm even with the personally identifying information redacted. *Id.* at ¶ 8-9. After review *in camera* and consideration of the BOP's explanation for withholding the document in its entirety, the Court finds that BOP's explanation is "logical" and "plausible." *Wolf*, 473 F.3d at 374–75 (quoting *Gardels*, 689 F.2d at 1105). The Court finds that there is a reasonable expectation of endangerment and defers to BOP's expertise in assessing the plausible danger. *See, e.g.*, *Hayden*, 608 F.2d at 1388 (acknowledging that reviewing court should respect agency expertise and not overstep its role in judicial review). Accordingly, the Court grants DOJ summary judgment as to BOP's use of Exemption 7(F) to withhold Document 69 in response to Request 2013-1684.

## C. Motion for Sanctions and Preliminary Injunction

Finally, the Court briefly reviews Pinson's motion for sanctions and a preliminary injunction. In her motion, Pinson argues that preliminary injunctive relief is warranted because "Defendants employees [sic] have banned legal phone calls, postage, or her legal files in their entirety," and have thereby interfered with her right of access to the courts. Pl.'s Mot. Prelim. Inj. 1. As an initial matter, Pinson provides no explanation for why sanctions are warranted, or

against whom, and her only request appears to be that the Court "enjoin . . . interference" by the BOP, *id.* at 2. The Court accordingly construes her motion as one for a preliminary injunction only. Next, Defendants respond that Pinson's motion should be denied because she has not established a factual basis for her allegations of interference. Defs.' Opp'n Mot. Prelim. Inj. 2. The Court agrees and denies the motion because Pinson has not established that she is substantially likely to succeed on the merits.

First, while Pinson represents that she has been denied access to her legal files, postage, and phone calls, it is unclear that this is actually the case. As Defendants point out, Pinson does not allege that her legal files in this case have been taken from her, only the files relating to her related case *Pinson v. U.S. Dep't of Justice*, No. 18-cv-486 (D.D.C.). Defs.' Opp'n Mot. Prelim. Inj. 3–4. And as to her access to stamps and legal phone calls, the BOP disputes Pinson's representations. It indicates that Pinson is not banned from receiving calls from her attorney, but rather that her attorney has not contacted the BOP to schedule a call. *See id.* at 2–3. And it represents that Pinson has been provided stamps in the past, but cannot be provided stamps at BOP expense if she has a sufficient commissary balance to purchase them herself. *See id.* at 3. It is therefore unclear to the Court that Pinson is likely to succeed in showing that there was a denial of access to her legal files in this case, stamps, and to legal counsel.

In any event, as the Court noted in denying a similar motion in her related case, a plaintiff making a claim for lack of access to the courts must show actual injury from the conduct challenged. *See Pinson v. U.S. Dep't of Justice*, No. 18-cv-486, 2018 WL 5464706, at *5 (D.D.C. Oct. 29, 2018); *see also Isaac v. Samuels*, 132 F. Supp. 3d 56, 59–60 (D.D.C. 2015) (granting motion to dismiss when plaintiff could not show "actual prejudice or injury" from challenged BOP conduct); *Akers v. Watts*, 740 F. Supp. 2d 83, 96 (D.D.C. 2010) ("It is not

enough for an inmate to state in a conclusory fashion that [s]he was denied access to the courts; rather, [s]he also must allege actual injuries as a result of the denial by claiming that an actionable claim was rejected, lost, or prevented from being filed." (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996))). This is because courts are generally reluctant to interfere with the management of prisons, which are "for the political branches of the State and Federal Governments to manage." *Lewis*, 518 U.S. at 353.

Here, Pinson has not alleged *any* injury stemming from the BOP's alleged actions. Nor is the Court able to discern an actual injury stemming from the conduct she points to. Pinson's prolific motions practice in both this case and her related case before this Court suggests that she has not been injured by the BOP's alleged withholding of stamps. It is also unclear to the Court how the BOP's withholding of only some of Pinson's legal files, relating to a different case, injured her ability to pursue her claims in this case. And finally, Pinson does not explain how the alleged denial of legal calls has injured her ability to bring her claims—indeed, *pro bono* counsel appears to be engaging in discovery on her behalf with the BOP, and most recently participated in a telephone conference with this Court on May 20, 2019. *See* Min. Entry (May 20, 2019). Absent anything more than Pinson's conclusory allegations that she was denied access to the courts, the Court cannot find that she is likely to succeed on the merits of a right of access claim. It accordingly denies Pinson's motion for a preliminary injunction.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration (ECF No. 437) is

**DENIED**; Defendants' motions for summary judgment as to the BOP and EOUSA (ECF Nos.

435; 455) are **GRANTED**; and Plaintiff's motion for sanctions and a preliminary injunction

(ECF No. 464) is **DENIED**. An order consistent with this Memorandum Opinion is separately

and contemporaneously issued.


Dated:  August 30, 2019                                            RUDOLPH CONTRERAS
                                                                   United States District Judge