UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEREMY PINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 12-1872 (RC) |
| | : | | |
| v. | : | Re Document No.: | 503 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING PLAINTIFF'S MOTION TO VACATE AND FOR LIMITED APPOINTED COUNSEL

### I.  INTRODUCTION

Plaintiff Jeremy ("Grace") Pinson ("Pinson" or "Plaintiff"), proceeding *pro se*, brought the instant suit against the Bureau of Prisons ("BOP"), BOP officials, and other government defendants ("Defendants") alleging, among other things, that BOP officials retaliated against her[1] for exercising her First Amendment rights.  Relevant here, Pinson alleged that BOP officials had retaliated against her by transferring her to a supermax prison.  Defendants moved to dismiss, and the Court granted Defendants' motion.  In doing so, the Court held that Pinson's claims for injunctive relief relating to her transfer to the supermax prison were moot.  Pinson now moves to vacate that portion of the Court's order and opinion.  She also moves for limited appointment of counsel.  For the reasons that follow, Pinson's motions are denied.

### II.  BACKGROUND

The Court assumes familiarity with its earlier opinions in this matter, which recounted the factual background of this case.  *See Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232, 237

---

[1] Pinson identifies using feminine pronouns, so the Court follows suit.

(D.D.C. 2021); *Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211, 214–16 (D.D.C. 2017); *Pinson v. U.S. Dep't of Just.*, No. 12-cv-1872, 2016 WL 29245, at *8–9 (D.D.C. Jan. 4, 2016). It thus confines its discussion to the facts and procedural background necessary to resolve the instant motion.

> As the Court previously explained:
>
> Pinson has been incarcerated for over a decade. In that time, she has filed over one thousand administrative grievances, she has regularly contacted and written for various news outlets, and she has filed or helped other inmates file numerous lawsuits. She says that these First Amendment-protected activities earned her the ire of [Charles] Samuels, formerly the BOP's Director, and [John] Dignam, who used to be Chief of the BOP's Office of Internal Affairs ("OIA"). Neither official still works with the BOP.

Mem. Op. at 3, ECF No. 491 (internal citations omitted). In her complaint, Pinson "allege[d] that Samuels transferred her to ADX Florence (the BOP's most secure facility) in retaliation for her complaints, press contacts, and lawsuits against the BOP." *Id.* at 4; *see also id.* (detailing the evidentiary support related to this claim). In October 2014, the "BOP transferred Pinson [out of] ADX Florence . . . and she has not been housed there since." *Id.*

On February 5, 2020, Defendants moved to dismiss Pinson's claims for injunctive relief related to her transfer to ADX Florence. *See* Defs.' Mot. Dismiss at 32–35, ECF No. 477. Defendants argued that "Pinson's retaliatory transfer claim against Samuels in his official capacity [was] moot and should be dismissed for want of jurisdiction." Mem. Op. at 6. The Court agreed. In doing so, it explained that "[b]ecause the BOP transferred Pinson away from ADX Florence," to the extent Pinson continued to seek injunctive relief, it was only to "prohibit[] BOP officials from transferring [her] to ADX [Florence] in the future." *Id.* at 17 (internal citations and quotation marks omitted). That being so, the Court stated that "for a live controversy to remain, there must be a 'more-than-speculative chance' that BOP officials will transfer her back to ADX Florence in the future because she exercised her First Amendment

rights." *Id.* (quoting *Am. Bar Ass'n v. F.T.C.*, 636 F.3d 641, 645 (D.C. Cir. 2011)). And after surveying the parties' arguments and evidence, the Court held that "[t]here [was] no reasonable, more-than-speculative chance that BOP officials will again transfer Pinson to ADX Florence in retaliation for her exercising First Amendment rights." *Id.* at 18–22.

The Court based this conclusion on multiple factors. First, the Court explained that, because "Dignam and Samuels [we]re no longer employed by the BOP," "the sources of the retaliatory motive that Pinson asserts [we]re gone." *Id.* (internal citations omitted). Second, the Court explained that "there [was] no 'reasonable expectation' that," with Samuels gone, "his successors w[ould] again transfer Pinson to ADX Florence in retaliation for her First Amendment activities." *Id.* at 19. On that front, the Court observed that "in the six years since Pinson was transferred from ADX Florence and the five years since Samuels left the BOP, there ha[d] been no effort to transfer Pinson back to the supermax prison." *Id.* Third, the Court explained that "[u]pdated BOP guidance on the handling of prisoners who suffer from mental illness ma[de] a second retaliatory transfer even more speculative." *Id.* To be more specific, "[w]hile Pinson was housed at ADX Florence, the BOP issued policies that require input by mental health professionals in the designation process for mentally ill inmates." *Id.* While these policies did not outright "prohibit the BOP from transferring Pinson back to ADX Florence, they certainly ma[de] it harder for officials to do so without a legitimate basis." *Id.* at 20. All that being so, the Court concluded that "there is no evidence that BOP officials will again retaliate against Pinson by assigning her to ADX Florence" and that "[h]er removal from that facility thus moots her official-capacity claim for retaliatory transfer." *Id.* at 21.

Over two years passed. Then, on March 20, 2023, Pinson filed the instant motion to vacate the Court's prior order and opinion to the extent it granted Defendants' motion to dismiss

3

her retaliatory transfer claim for injunctive relief. *See* Pl.'s Mot. Vacate and Limited Appointed Counsel ("Pl.'s Mot."), ECF No. 503. Pinson's motion alleges that "[i]n recent days[,] plaintiff was informed by BOP officials she is pending redesignation to ADX Florence or the 'Secure Admin Unit' by Samuels' successor[,] Colette S. Peters[,] at the request of Warden Mark Gutierrez." *Id.* at 1–2. She argues that this undermines the Court's previous finding that "there is no evidence that BOP officials will again retaliate against Pinson." *Id.* at 2. She therefore moves for "limited appointment of counsel to gather evidence and brief the Court on the necessity of vacatur as to the official-capacity injunctive relief claim," and, pursuant to Federal Rule of Civil Procedure 60, to "vacate [the] [j]udgment as to the official-capacity injunctive relief claim." *Id.* at 2–3. Alternatively, she asks the Court to order the "Clerk to sever this claim into a new civil action with 30 days to file a Complaint pursuant to Fed. R. Civ. P. 8(a)." *Id.* at 3. Defendants oppose Pinson's motion, *see* Defs.' Opp'n Pl.'s Mot. Vacate and Limited Appointed Counsel ("Defs.' Opp'n"), ECF No. 505, and the motion is ripe for review, *see* Pl.'s Reply Opp'n Mot. Vacate and Limited Appointment of Counsel ("Pl.'s Reply"), ECF No. 506.

### III.  ANALYSIS

### A.  Legal Standards

Under Federal Rule of Civil Procedure 60(b), parties may seek relief from a final judgment "within a reasonable time" following the entry of the judgment for any of six enumerated reasons. Fed. R. Civ. P. 60(b), (c); *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 97 (D.D.C. 2015). Those reasons are:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . . misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6). Rule 60(b) therefore "preserve[s] 'the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). The Rule "cannot . . . be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *Id.*

District courts enjoy "a large measure of discretion" in deciding Rule 60(b) motions. *Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987); *see also* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2857 (3d ed. 2012). "The party seeking relief under Rule 60(b) bears the burden of showing that he or she is entitled to relief." *Oladokun*, 309 F.R.D. at 97; *see also Green v. AFL-CIO*, 287 F.R.D. 107, 109 (D.D.C. 2012); *Jarvis v. Parker*, 13 F. Supp. 3d 74, 77 (D.D.C. 2014).

### B.  Motion to Vacate

Generously construed, Pinson's motion argues that Rules 60(b)(2), (b)(3), (b)(5), and (b)(6) justify vacatur of the Court's prior order. *See* Pl.'s Reply at 3. The Court addresses each in turn.

#### 1. Rule 60(b)(2)

Under Rule 60(b)(2), a court may relieve a party of a final judgment on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in

5

time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To obtain relief under Rule 60(b)(2), the moving party must demonstrate that:

> (1) the newly discovered evidence is of facts that existed at the time of the trial or merits proceeding; (2) the party seeking relief was "justifiably ignorant of the evidence despite due diligence"; (3) the evidence is admissible and is "of such importance that it probably would have changed the outcome"; and (4) the evidence is not merely cumulative or impeaching.

*Almerfedi v. Obama*, 904 F. Supp. 2d 1, 3 (D.D.C. 2012) (quoting *Duckworth v. United States*, 808 F. Supp. 2d 210, 216 (D.D.C. 2011)). As the moving party, Pinson bears the burden of proving that "the proffered evidence is 'of such a material and controlling nature as will probably change the outcome.'" *Epps v. Howes*, 573 F. Supp. 2d 180, 185 (D.D.C. 2008) (quoting *In re Korean Air Lines*, 156 F.R.D. 18, 22 (D.D.C. 1994)).

The only evidence Pinson cites in support of her motion are two affidavits—her own and that of another prisoner. Both declarations assert that, on March 6, 2023, Pinson was informed by "Warden Mark Gutierrez that the BOP [was] going to redesignate [her] to 'ADX Florence or the Secure Admin Unit.'" Ex. 1, Decl. of Jeremy Pinson, Pl.'s Mot. ("Pinson Decl.") at 1, ECF No. 503-1; *see also* Ex. 2, Decl. of Ernesto Zaragosa-Solis III ("Zaragosa-Solis III Decl.") at 1, ECF No. 503-1 (providing a nearly verbatim retelling of the same facts). Critically, however, the Court issued its opinion on January 8, 2021. Pinson was not informed that she allegedly may be transferred to ADX Florence until over two years later. By definition, then, none of the evidence Pinson cites qualifies as "newly discovered evidence . . . of facts *that existed at the time of the*" dispositive proceeding in this case. *Almerfedi*, 904 F. Supp. 2d at 3 (emphasis added). That being so, the Court need not consider whether the other requirements for granting relief under Rule 60(b)(2) have been satisfied, as Pinson has failed to satisfy the first prong of the test described in *Almerfedi*.

2. Rule 60(b)(3)

Rule 60(b)(3) allows a court to set aside or grant relief from a final judgment for fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3). The burden falls on the party seeking relief to "prove such fraud or misrepresentation with 'clear and convincing evidence.'" *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.* ("*PETA*"), 226 F. Supp. 3d 39, 55 (D.D.C. 2017) (quoting *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995)). Furthermore, Rule 60(b)(3) motions will only be granted if the moving party can "show actual prejudice, that is, [s]he must demonstrate that the defendant's conduct prevented [her] from presenting [her] case fully and fairly." *Ramirez v. Dep't of Just.*, 680 F. Supp. 2d 208, 210 (D.D.C. 2010); *see also Walsh v. Hagee*, 10 F. Supp. 3d 15, 19 (D.D.C. 2013). The moving party needs to do more than simply present allegations of fraud, it must present evidence of actual fraud that "prevented it from presenting its own case." *PETA*, 226 F. Supp. 3d at 56–57; *see also Am. Cetacean Soc. v. Smart*, 673 F. Supp. 1102, 1105 (D.D.C. 1987).

Here, Pinson argues that "[D]efendants misled this Court" by claiming that they would not "transfer [Pinson] to an ADX or ADX-type unit." *See* Pl.'s Reply at 3. She also argues that Defendants continue to retaliate against her "by returning her to solitary confinement" despite their prior "promise[]" not to do so. *See id.* at 4–5. Put simply, Pinson's allegations are a far cry from the "clear and convincing evidence" necessary to show fraud or misrepresentation on the part of Defendants. *See PETA*, 226 F. Supp. 3d at 55 (quoting *Shepherd*, 62 F.3d at 1477). The only purported evidence that Pinson cites are the declarations claiming that Warden Gutierrez threatened to transfer her to "ADX Florence or the Secure Admin Unit.'" Pinson Decl. at 1; Zaragosa-Solis III Decl. at 1. Even assuming the veracity of Pinson's declarations, such a

statement does not suggest that Defendants previously misrepresented their intentions, especially in light of the fact that Pinson has *not*, in fact, been transferred to ADX Florence.[2] Nor is there any evidence to support Pinson's claim that Defendants "keep retaliating [against her] by returning her to solitary confinement." *See* Pl,'s Reply at 4.  Instead, Pinson's allegations amount to the type of "speculative assertions" that are insufficient to demonstrate entitlement to relief under Rule 60(b)(3).  *See PETA*, 226 F. Supp. 3d at 56.

3. Rule 60(b)(5)

Rule 60(b)(5) provides, in pertinent part, that the Court may relieve a party from a final judgment or order where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  The moving party "bears the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009).  "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

Largely for the reasons described above, Pinson has not demonstrated a significant change in the factual conditions relating to her incarceration such that the Court's order should be vacated.  That is because Pinson has not demonstrated any *actual* changed factual conditions. Her motion is entirely based on one statement that she alleges shows Defendants intend to transfer her back to ADX Florence or another similar facility—something that has not happened, and which Pinson has not convincingly shown is likely to happen.  *See supra* note 2; *cf. Jordan*

---

[2] Indeed, since Pinson filed her motion, she has been transferred to U.S. Penitentiary Allenwood S.A.U. in White Deer, Pennsylvania.  *See* Notice of Change of Address, ECF No. 508.

*v. U.S. Dep't of Lab.*, 331 F.R.D. 444, 453 (D.D.C. 2019) (denying Rule 60(b)(5) motion where movant "fail[ed] to assert, or provide any evidence for, actually changed circumstances that may 'warrant revision' of the prior judgment" (quoting *Brown v. Dalton*, 312 F.R.D. 239, 243 (D.D.C. 2015))).

4. Rule 60(b)(6)

Finally, Rule 60(b)(6) is a catch-all provision that empowers a court to grant relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief may be granted under Rule 60(b)(6) only if the motion for relief is "not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)), and "should only be granted in 'extraordinary circumstances,'" *Riley v. BMO Harris Bank, N.A.*, 115 F. Supp. 3d 87, 94 (D.D.C. 2015) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). Extraordinary circumstances exist "[w]hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Salazar*, 633 F.3d at 1121 (citing *Good Luck Nursing Home*, 636 F.2d at 577). This is a "high bar." *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852 (D.C. Cir. 2016). For the reasons already discussed, Pinson fails to come close to surmounting that bar.

Moreover, Rule 60(b)(6) motions "must be filed within a reasonable time." *Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 105 (D.D.C. 2015). "In this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment." *Carvajal v. Drug Enf't Admin.*, 286 F.R.D. 23, 26 (D.D.C. 2012). Pinson filed

9

the present motion over two years after judgment. Thus, to the extent she seeks relief under Rule 60(b)(6), her motion is also denied on timeliness grounds.[3]

### C.  Motion to Appoint Counsel

Pinson also moves for "limited appointment of counsel to gather evidence and brief the Court on the necessity of vacatur as to [her] official-capacity injunctive relief claim." Pl.'s Mot. at 3. While a civil litigant is not guaranteed counsel, *see Gaviria v. Reynolds*, 476 F.3d 940, 943 (D.C. Cir. 2007), federal courts are authorized by statute to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1); *accord Willis v. FBI*, 274 F.3d 531, 532 (D.C. Cir. 2001). "[T]he district court judge controls the 'discretionary' decision of whether to appoint counsel, and that decision 'will be set aside only for abuse.'" *Pinson v. U.S. Dep't of Just.*, 273 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting *Willis*, 274 F.3d at 532). Local Civil Rule 83.11 applies in determining whether appointment of counsel is appropriate. *See Willis*, 274 F.3d at 533. The Court must balance several factors: (i) the nature and complexity of the action; (ii) the potential merit of the *pro se* party's claims; (iii) the demonstrated inability of the *pro se* party to retain counsel by other means; and (iv) the degree to which the interests of justice will be served by appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel. LCvR 83.11(b)(3). Any one factor may be controlling. *See Willis*, 274 F.3d at 532.

None of the four factors listed in Local Civil Rule 83.11 persuade the Court that appointment of counsel is appropriate here. First, Pinson does not assert that her claims are likely to raise complex legal or factual issues that will require representation, nor do the claims

---

[3] The Court also denies Pinson's alternative request to "sever [her] claim into a new civil action." *See* Pl.'s Mot. at 3; Pl.'s Reply at 9.

themselves appear to present complex legal or factual issues. Second, her claim that Defendants intend to retaliate against her by transferring her back to ADX Florence or a like-facility appear to be meritless. Third, Pinson has not demonstrated to the Court through any filings that she is unable to obtain counsel on her own. None of Pinson's communications with the Court have indicated her efforts or inability to obtain counsel. Thus, "[t]aking the unusual step of appointing civil counsel would be particularly inappropriate in light of [Pinson's] failure to show that [s]he has previously sought counsel." *See Saunders v. Davis*, No. 15-cv-2026, 2016 WL 4921418, at *15 (D.D.C. Sept. 15, 2016). Finally, Pinson has a history of litigation in federal court, repeatedly engaging in litigation against federal agencies *pro se*—demonstrating her ability to engage in litigation without the assistance of counsel. The degree to which the interests of justice will be served by the assistance of appointed counsel thus does not seem to outweigh the burden placed on, and limited resources of, the Civil Pro Bono Panel.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Vacate and for Limited Appointed Counsel (ECF No. 503) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 3, 2024                                                                 RUDOLPH CONTRERAS
                                                                                                          United States District Judge